IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRYCE CARRASCO**, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: SAG-21-532 |
| **M&T BANK**, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT M&T BANK'S MOTION TO DISMISS**

Defendant M&T Bank ("M&T"), through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint filed by Plaintiff Bryce Carrasco. As explained below, Plaintiff is unable to state a plausible claim for relief, and his Complaint against M&T should be dismissed.

## I.   INTRODUCTION

Plaintiff's claims in this case arise out of: (1) Plaintiff's failure to understand and comply with his basic repayment obligations under the Credit Agreement he entered into with M&T; and (2) Plaintiff's failure to check his mail or otherwise monitor his account during a 3-month-long sojourn away from the address that he provided to M&T when he opened the credit card account—and to which address all correspondence with Plaintiff was sent.

While Plaintiff's bombastic Complaint rails against M&T, alleging that "the Defendant weaponizes their [*sic*] position of power against defenseless consumers to destroy their credit scores," (ECF No. 1, ¶ 20), and describing Plaintiff's freely contracted-for Credit Agreement as being "the definition of inequitable" and a "farse" [*sic*], (*id.* ¶¶ 63-63), Plaintiff himself is hardly

the unsophisticated consumer that his self-represented Complaint suggests. According to his public LinkedIn page, Mr. Carrasco received a bachelor's degree in Business Administration from one of Maryland's top universities in 2019, and he is currently employed as an investment banking analyst in the Baltimore office of a global financial institution. And despite his having penned technical personal finance articles for popular websites such as "Seeking Alpha" (www.seekingalpha.com), his Complaint now alleges his inability to comply with the terms of a common credit agreement—despite his undisputed receipt and possession of that agreement (attached as Exhibit 3 to his Complaint). Thus, while the *pro se* Plaintiff may be entitled to certain solicitudes as to his ability to plead a claim, his alleged plight does not merit any special sympathy.

As explained in detail below, Plaintiff's Complaint should be dismissed because the several statutory causes of action alleged fail to state a plausible claim for relief. **First**, Plaintiff's Fair Credit Reporting Act ("FCRA") claim (Count 1) fails as a matter of law because Plaintiff has not alleged a "bona fide dispute" with M&T. **Second**, Plaintiff's claim under the Truth in Lending Act ("TILA") (Count 2) is facially implausible and premised on conclusory allegations that are contradicted by the attachments to his pleading. **Third**, the Fair Credit Billing Act ("FCBA") claim (Count 3) fails as a matter of law because the Complaint and exhibits thereto demonstrate that Plaintiff did not send his notice to M&T at the statutorily-mandated address for FCBA correspondence and because Plaintiff has failed to allege a "billing error" as defined by the Act. **Fourth**, Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim (Count 4) fails as a matter of law because M&T is not a "debt collector" for purposes of the FDCPA. **Finally**, there is no private cause of action under the Federal Trade Commission Act ("FTC Act") (Count 5). Accordingly, Plaintiff's Complaint should be dismissed.

## II.     FACTUAL ALLEGATIONS

On July 17, 2020, Plaintiff applied and was approved for an M&T Visa Credit Card with Rewards. (ECF No. 1, ¶ 5). Subsequently, on or around July 21, 2020, Plaintiff received an undated letter that included the physical credit card, a disclosure identifying the various finance charges associated with the credit card, and the Credit Agreement. (*Id.*, ¶¶ 8, 9, 20; Exhibits 1 and 3).[1] These documents were mailed to Plaintiff at 100 East Redwood Street, Apt 2013, Baltimore, MD 21202, Plaintiff's residence and "the address on file with M&T." (*Id.*, ¶ 15; Exhibit 1).

Shortly after receiving the Letter and the Credit Agreement, Plaintiff activated the credit card by transferring to the new card a $2,200 balance that Plaintiff owed on a credit card account with Bank of America. (ECF No. 1, ¶ 12). The balance transfer took place on August 3, 2020. Despite the fact that Plaintiff's new M&T account now carried a balance, Plaintiff did not make any payments on the account until December 17, 2020. Plaintiff did not make any payments during that period in spite of his agreement to "pay at least the Minimum Monthly Payment", defined in the Credit Agreement as the "greater of (a) $15.00; or (b) 2.5% of the Outstanding Balance[2] . . . plus any past due amounts". (*Id.*, ¶ 13, 21; *see also* ECF No. 15-5, "Method of Payment" and "Minimum Monthly Payment").

In September 2020, Plaintiff "relocated" from his residence in Baltimore and moved in with his parents in Arnold, Maryland. (ECF No. 1, ¶ 15). Plaintiff lived with his parents for approximately three months, during which time Plaintiff never returned to his residence to pick

---

[1] The Credit Agreement attached as Exhibit 3 to the Complaint is incomplete and illegible. However, Plaintiff also has filed a legible and complete version of the same Credit Agreement, albeit in a different format, as part of ECF No. 15. For purposes of clarity, M&T will cite to the Credit Agreement filed at ECF No. 15-5, rather than the illegible version attached to the Complaint.

[2] "Outstanding Balance" is defined as "the total dollar amount of Your obligation under this Agreement for all Transactions, interest, finance charges, fees and any other costs."

3

up his mail. (*Id.*, ¶ 17). As a result, Plaintiff did not receive any of the letters sent by M&T advising him that his credit card account was past due and that he was in default of his payment obligations until he returned to his apartment in the mid-December 2020.[3] (*Id.*, ¶ 18; Exhibit 2).

As indicated in the collection letter dated November 5, 2020, M&T reported Plaintiff's delinquency to the consumer credit reporting agencies. (ECF No. 1, Exhibit 2). Plaintiff objected and filed disputes with Experian, TransUnion, and Equifax. (ECF No. 1, ¶ 22). According to the Complaint, Plaintiff complained that M&T "never provided adequate disclosure of the material terms of the credit card" despite the fact that the reverse side of the letter that is attached as Exhibit 1 "contained material terms underlying the credit card." (*Id.*, ¶¶ 9, 37; Exhibit 1). Plaintiff also complained about M&T's alleged failure to produce "the current contract underlying the account"—in spite of the fact that M&T provided Plaintiff with the Credit Agreement at the same time it provided him the credit card. (*Id.*, ¶¶ 8, 32, 37). Notably, Plaintiff does not deny the existence of the debt; nor does Plaintiff deny his failure to make a monthly payment for three months. As a result, "[a]fter investigating the disputed with the CRAs, [M&T] did not make any material changes to the reporting made to the CRAs. The M&T Account was reported as delinquent and verified as such with no other comments." (*Id.*, ¶ 27).

This lawsuit followed.

### III. STANDARD OF REVIEW

Rule 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. "[A] plaintiff's obligations to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[3] In accordance with the Credit Agreement, each collection letter was sent to Plaintiff at the address he provided to M&T. (ECF No. 15-5; "Communications Regarding Account, Statements and Notices").

A plaintiff is required to plead facts in a complaint that show an entitlement to relief that is "plausible on its face." *Id.* at 570. This 'plausibility' standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). In reviewing a motion under Rule 12(b)(6), the Court "assum[es] as true the complaint's factual allegations and constru[es] 'all reasonable inferences' in favor of the plaintiff." *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).

*Pro se* plaintiffs generally are held to a "less stringent standard[ ]" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pled." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *Robb v. Md. Aviation Admin.*, JKB-14-1421, 2014 WL 4056030, at *3 (D. Md. Aug. 15, 2014). While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from…fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

IV. **ARGUMENT**

**A. Plaintiff's FCRA Claim Fails as a Matter of Law Because He Cannot Allege a "Bona Fide" Dispute with M&T (Count 1).**

Plaintiff alleges that M&T willfully violated the FCRA, and, specifically, 15 U.S.C. § 1681s-2(b), "by failing to report the fact that plaintiff was disputing ***the underlying credit terms*** with the Defendant." (ECF No. 1, ¶ 35) (emphasis added). That is, Plaintiff never disputed the existence of the debt, the amount of the debt, the fact of his non-payment, or that the charges assessed were inconsistent with the terms of his Credit Agreement with M&T. Rather,

5

Plaintiff only disputed "the underlying credit terms" themselves and M&T's purported failure to provide a copy of the Credit Agreement to him (*id.* ¶ 37)—despite Plaintiff's admission that he received the Credit Agreement along with the credit card itself (*id.* ¶ 5). Thus, because Plaintiff never challenged the accuracy of the information furnished to the consumer credit reporting agencies, M&T was under no obligation to report the account as disputed, and Plaintiff's FCRA claim fails as a matter of law.

Section 1681 s–2(b) outlines the duties a furnisher of information has when given notice of a dispute concerning inaccurately reported information. 15 U.S.C. § 1681s–2(b)(1). To bring a claim under § 1681s–2(b), "a plaintiff must establish three elements: (1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information." *Ausar-El v. Barclay Bank Delaware*, PJM-12-0082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012). The federal courts have recognized that only a "bona fide dispute" may give rise to liability under the FCRA. *See, e.g., Shap v. Cap. One Fin. Corp.*, 2012 WL 1080127, at *4, n. 27 (E.D. Pa. Mar. 30, 2012) (collecting cases). This is because furnishers of information are under no obligation to mark an account as disputed if "the dispute is frivolous or irrelevant". 15 U.S.C. § 1681s-2(a)(8)(F)(i). Section 1681s–2(a)(8)(D), which provides clear guidance to consumers seeking to dispute the accuracy of information furnished to the consumer reporting agencies, is instructive in determining whether a consumer dispute is "bona fide":

> A consumer who seeks to dispute the accuracy of information shall provide a dispute notice directly to such person at the address specified by the person for such notices that--
> (i) identifies the specific information that is being disputed;
> (ii) explains the basis for the dispute; and

>   (iii) includes all supporting documentation required by the furnisher to substantiate the basis of the dispute.

15 U.S.C.A. § 1681s–2(a)(8)(D). *See Palouian v. FIA Card Servs.*, 2013 WL 1827615, at *3 (E.D. Pa. May 1, 2013) (utilizing the statutory guidance to determine whether the dispute at issue was "bona fide").

The well-pleaded allegations of the Complaint indicate that Plaintiff's purported "dispute" is not a bona fide dispute for purposes of the FCRA. Nowhere in his Complaint (or in the correspondence that comprises his purported "dispute") did Plaintiff "identif[y] the specific information that is being disputed," "explain[] the basis for the dispute," or "include[] all supporting documentation required by the furnisher to substantiate the basis of the dispute." 15 U.S.C.A. § 1681s–2(a)(8)(D). Rather, as the Complaint makes clear, Plaintiff's disagreement with M&T merely pertained to (1) "the underlying credit terms" themselves, and (2) "the fact that M&T never provided adequate disclosure of the material terms of the credit card and failed to produce documentation when requested multiple times by Plaintiff." (ECF No. 1, ¶¶ 30, 37).[4] Thus, while Plaintiff may quibble with M&T's customer relations practices—indeed, he later contacted M&T's Investor Relations office, *see infra*—he never actually challenged the accuracy of *the information* that M&T provided to the consumer reporting agencies or asserted that this information was inconsistent with the terms of the Credit Agreement. Accordingly, Plaintiff's purported "dispute" with M&T is not a "bona fide dispute" for purposes of the FCRA, and M&T was under no obligation to report Plaintiff's account as disputed. As a result, Plaintiff's claims in Count 1 fail as a matter of law.

---

[4] In this regard, Plaintiff's claims are readily distinguishable from those at issue in *Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008), where the plaintiff specifically disputed the imposition of late charges and penalties on his account. Here, however, Plaintiff does not dispute that M&T's reporting was entirely consistent with the terms of the Credit Agreement—only that M&T failed to provide him a copy of that Agreement on demand.

B. <u>**Plaintiff Fails to State a Plausible TILA Claim (Count 2)**</u>.

Plaintiff accuses M&T of violating TILA in two respects. First, Plaintiff claims that M&T failed to "establish and maintain an Internet site on which the creditor shall post the written agreement between the creditor and the consumer for each credit card account under an open-end consumer credit plan" in violation of 15 U.S.C. § 1632(d)(1). (ECF No. 1, ¶ 41). Next, Plaintiff contends that M&T did not "clearly and conspicuously set forth 'any minimum or fixed amount which could be imposed" in violation of 15 U.S.C. § 1663(1). (*Id.*, ¶ 42). Not only has Plaintiff failed to state a claim for either alleged violation, but, even if Plaintiff could allege sufficient facts, Plaintiff is not entitled to the relief he seeks.

As to the first claim, Plaintiff baldly asserts that M&T has "failed to post a written agreement pertaining specifically to open-end credit plans categorized as M&T Visa Credit Card with Rewards", but does not include any allegations setting forth Plaintiff's effort to locate such agreement on M&T's website in order to support his conclusory allegation that M&T "failed to post" it. (ECF No. 1, ¶ 41). The absence of such allegations in the Complaint is telling; the very written agreement that Plaintiff contends is not posted on the Internet is readily available on M&T's website and has been available there at all times relevant hereto. *See* https://www.rewards.mtb.com/ProgramInfo/4216/media/MT_Bank_Rewards_TCs.pdf (accessed March 30, 2021).[5] This agreement is accessible through the "Terms and Conditions" link on the landing page for the M&T Visa Credit Card with Rewards, the credit card that Plaintiff received from M&T. *See* rewards.mtb.com (accessed March 30, 2021). Accordingly, Plaintiff has failed to state a plausible claim against M&T under 15 U.S.C. § 1632(d)(1).

---

[5] A copy of the website is attached as **Exhibit A** for the Court's convenience.

Much of the same can be said for Plaintiff's claim under 15 U.S.C. § 1663(1), albeit for a different reason.  This section of TILA (and Regulation Z, 12 C.F.R. § 1026.16 (2014)) regulates the advertising for open-end credit plans by requiring advertisements describing one or more of the favorable terms of an open-end credit plan to reflect the terms actually available and to disclose other important terms of the plan.  *See* 12 Hawkland UCC Series § 3:26.  In other words, a creditor may not single out one or more favorable aspects of the advertised credit plan without mentioning other important terms.  *See generally* 15 U.S.C. § 1663.  For purposes of 15 U.S.C. § 1663(1), "the minimum or fixed fees" that are required to be disclosed "are those that are considered finance charges under Regulation Z (12 C.F.R.) § 226.4."  1 Consumer Law Sales Practices and Credit Regulation § 307, n. 2.

As evidenced by the exhibits attached to Plaintiff's Complaint, M&T fully complied with the disclosure requirements of 15 U.S.C. § 1663(1).  The reverse side of the letter attached as Exhibit 1 is a table titled "Important Information about your M&T Visa Credit Card with Rewards"; this table discloses the interest rate and all of the other finance charges associated with the M&T Visa Credit Card with Rewards that Plaintiff received.  Plaintiff appears to take issue with the fact that the disclosure does not identify "any minimum payment obligation".  Yet, that is not what 15 U.S.C. § 1663(1) requires and, in any event, the Credit Agreement that was included with the letter disclosed Plaintiff's minimum payment obligation.  (*Id.*, ¶ 8, 20; ECF No. 15-5, "Method of Payment" and "Minimum Monthly Payment").  Accordingly, Plaintiff is wrong on both the law and the facts.

Plaintiff artfully tries to obscure the defects in his claim.  That is, rather than address the documents that pertain to his credit card, he refers to and attaches to the Complaint a document that relates to an entirely different credit card: the M&T Visa Signature Credit Card.  (ECF No.

1, ¶¶ 43-44, Exhibit 4). Because Plaintiff admits that he obtained the M&T Visa Credit Card with Rewards, his reliance on a document that concerns the M&T Visa Signature Credit Card is misplaced and does not support his claim against M&T. Plaintiff, therefore, has failed to allege a disclosure violation under 15 U.S.C. § 1663.

In addition to Plaintiff's failure to state a claim under TILA, Plaintiff also has failed to allege any actual injury. Instead, Plaintiff seeks the imposition of a financial penalty against M&T pursuant to 15 U.S.C. § 1611. (ECF No. 1, ¶¶ 40, 47). "Plaintiff[], however, cannot seek to recover criminal penalties in a civil action." *Vrabel v. JP Morgan Chase Bank, N.A.*, 2009 WL 2421856, at *2 (N.D. Cal. Aug. 6, 2009) (rejecting the plaintiff's claim to recover penalties under 15 U.S.C. § 1611). Accordingly, even if Plaintiff could state a claim, he is not entitled to the relief he seeks and otherwise lacks standing to pursue the claim. *See, e.g., Gutierrez v. First Nat'l Bank of Am.*, GJH-18-479, 2018 WL 4562959, at *4–5 (D. Md. Sept. 21, 2018) (dismissing TILA claim for lack of standing because bare procedural violation of TILA did not cause injury in fact). Accordingly, the TILA claim should be dismissed.

C. **Plaintiff's FCBA Claim Fails as a Matter of Law Because He Did Not Comply with Statutory Notice Requirements (Count 3).**

Section 1666(a) provides a procedural framework to govern correction of billing errors on consumer credit card statements. 15 U.S.C. § 1666(a). This section imposes specific requirements for the form and contents of a billing error notice. *Id.* Importantly, a creditor's obligation to follow the FCBA's error resolution procedures is only triggered by *valid* notice of a billing error. *Id.* (establishing requirements for a valid notice); *Dawkins v. Sears Roebuck & Co.*, 109 F.3d 241, 243 (5th Cir. 1997) (writing that failed to satisfy requirements of Section 1666 did not require response from creditor); *Greisz v. Household Bank,* 8 F. Supp. 2d 1031, 1042 (N.D. Ill. 1998) (improper billing error notice requires no response from creditor), *aff'd* 176 F.3d 1012

(7th Cir. 1999). Accordingly, "[t]o succeed on an FCBA claim, a plaintiff must show (1) the existence of a billing error, (2) timely notification of the billing error, and (3) failure of the bank issuing the card to comply with the procedural requirements of § 1666." *Farrish v. Navy Fed. Credit Union*, DKC-16-1429, 2017 WL 4418416, at *3 (D. Md. Oct. 5, 2017) (citation omitted), *aff'd*, 711 F. App'x 189 (4th Cir. 2018).

Here, Plaintiff alleges that he "delivered proper notice to M&T on 12/31/2020" of potential billing errors and that M&T violated the Fair Credit Billing Act when it failed to provide Plaintiff with copies of certain documents. (ECF No. 1, ¶¶ 48, 49-50). As an initial matter, to the extent Plaintiff's claim is predicated on an alleged notice provided on December 31, 2020, he has failed to state a plausible claim under the FCBA because nowhere in his 91-paragraph Complaint does Plaintiff allege that he sent any notice to M&T on December 31, 2020. Nor, for that matter, does Plaintiff allege the substance of that notice. Assuming, however, that Plaintiff is referring to the December 30, 2021 email alleged in paragraph 22 of the Complaint, Plaintiff has failed to allege that he transmitted a valid billing notice sufficient to trigger any obligations under the FCBA because: (1) the email was not sent to the address specified in the "Notice of Your Billing Rights"; and (2) the email did not provide notice of a "billing error", as that phrase is defined under the FCBA and Regulation Z. *See* 15 U.S.C. § 1666; 12 C.F.R. § 226.13. Accordingly, no obligations under the FCBA were triggered and, Count 3 of the Complaint should be dismissed.

1. **Plaintiff failed to send any notice to the FCBA-specified address.**

First, Plaintiff's email is legally ineffective because it was not sent to the address specified in the billing statements; instead, Plaintiff's email was sent to M&T's investor relations

11

department. (ECF No. 16-1 at 25-26).[6] "[A] creditor's obligations under Section 1666 are not triggered unless, within sixty days of transmitting a billing statement, it 'receives *at the address disclosed under section 1637(b)(10) of this title*' a written notice from the obligor detailing the alleged error." *Maranto v. CitiFinancial Retail Servs., Inc.*, 448 F. Supp. 2d 758, 760-61 (W.D. La. 2006) (quoting 15 U.S.C. § 1666) (emphasis added). Section 1637(b)(10), which governs disclosures regarding open-end consumer credit plans, provides that creditors shall disclose in each billing statement sent to a cardholder "the address to be used by the creditor for the purpose of receiving billing inquiries from the obligor." 15 U.S.C. § 1637(b)(10). In *Maranto*, the creditor's billing rights summary provided that billing error notices be sent "to the return address shown on the front of your statement," which was P.O. Box 22060 in Tempe, Arizona. 448 F. Supp. 2d at 761. The cardholder, however, sent the notices to P.O. Box 22066, which, coincidentally, was also assigned to the creditor. *Id.* The court rejected the argument that notice was sufficient because it was received by the creditor:

> Section 1666 specifically provides that the creditor must receive the notice *at the specified address.* Since [plaintiff] does not dispute that he did not send written notice addressed to the specified address, he cannot maintain his claim pursuant to Section 1666.

*Id.* at 761 (emphasis in original). Thus, a creditor's obligations under FCBA are not triggered unless a valid billing error notice is received by the creditor *at its specified address*.[7]

Here, beyond the conclusory allegation that "proper notice" was provided, Plaintiff does not contend that his email notice constituted a valid billing error notice sufficient to trigger any obligations under the FCBA. As Plaintiff's own exhibits demonstrate, Plaintiff was notified of

---

[6] This Court can consider Plaintiff's December 30, 2020 email without converting this motion into one for summary judgment because Plaintiff expressly relies and refers to the email in his Complaint (ECF No. 1, ¶ 22). *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

[7] Only when a valid billing notice is sent to the correct address must a creditor adhere to the steps set forth in Section 1666 for resolving the dispute. *See* 15 U.S.C. § 1666.

the address to which to send a notice of billing errors.  (ECF No. 15-5, "What To Do If You Find A Mistake On Your Account").  Plaintiff's Credit Agreement sets forth the "Notice of Your Billing Rights" which specifically provides in pertinent part:

> If you think there is an error on Your statement, write Us at:
>
> **M&T Bank**
> **P.O. Box 8405**
> **Wilmington, DE 19899-8405**
>
> In Your letter, give Us the following information:
> - *Account information:* Your name and account number
> - *Dollar Amount:* The dollar amount of the suspected error
> - Description of the problem:  If You think there is an error on Your bill, describe what You believe is wrong and why You believe it is a mistake
>
> \* \* \*
>
> You must notify Us of any potential errors *in writing*.  **You may call US, but if You do We are not required to investigate any potential errors** and You may have to pay the amount in question.

*Id.* (emphasis added).[8]  *See also* Plaintiff's monthly credit card statement dated December 16, 2020, attached as **Exhibit B** (same).[9]  Plaintiff readily acknowledges that he did not send the alleged billing error notice to P.O. Box 8405, Wilmington, DE 19899-8405. Instead, Plaintiff alleges—and the exhibits attached to the Complaint confirm—that he sent an email to investor relations at M&T on December 30, 2020.  (ECF No. 1, ¶ 22; ECF No. 16-1 at 25-26 ("To: ir@mtb.com")).  An email, however, is insufficient to trigger any duties under the FCBA where, as here, the "Notice of Your Billing Rights" specified that all such notices must be received at a specified post office box in Wilmington, Delaware—and warned that failure to follow the specific procedure would not preserve the cardholder's rights.  Accordingly, Plaintiff is unable to

---

[8] The "Notice of Your Billing Rights" provided to Plaintiff in the Credit Agreement attached as Exhibit 3 to the Complaint (and reflected in the account statement attached hereto as Exhibit B) is virtually identical to the Billing Rights form in Appendix G to Regulation Z, 12 C.F.R. § 226.1 *et seq*.

[9] *See* fn. 6, *supra.*, and ECF No. 1, ¶ 70 (alleging what appears "on page 2 of each monthly statement").

allege that he provided notice of a billing error sufficient to trigger any obligations under Sections 1666 or 1666a.  As a result, his FCBA claim must be dismissed.

**2. Plaintiff's email does not constitute notice of a valid "billing error."**

Second, and equally fatal to his claim, Plaintiff is unable to allege that his email contained a notice of an error that falls within the definitions and standards for "billing errors" under the FCBA and its implementing regulations.

> For purpose of [the FCBA], a "billing error" consists of any of the following:
>
> (1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.
>
> (2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereo
>
> (3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction.
>
> (4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.
>
> (5) A computation error or similar error of an accounting nature of the creditor on a statement.
>
> (6) Failure to transmit the statement required under §1637(b) as entitled to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than 20 days before the end of the billing cycle for which this statement is required.
>
> (7) Any other error described in the regulations of the board.

15 U.S.C. § 1666(b).  Applicable regulations define a "billing error" as follows:

> (1) A reflection on or with a periodic statement of an extension of credit that is not made to the consumer or to a person who has the actual, implied or apparent authority to use the consumer's credit card or open end credit plan.
>
> (2) A reflection on or with a periodic statement of an extension of credit that is not identified in accordance with the requirements of §226.7(b) and 226.8.
>
> (3) A reflection on or with a periodic statement of an extension of credit for property or services not accepted by the consumer or the consumer's designee, or not delivered to the consumer or the consumer's designee as agreed.
>
> (4) A reflection on a periodic statement of the creditor's failure to credit properly a payment or other credit issued to the consumer's account.

14

> (5) A reflection on a periodic statement of a computational or similar error of an accounting nature that is made by the creditor.
>
> (6) A reflection on a periodic statement of an extension of credit for which the consumer requests additional clarification, including documentary evidence.
>
> (7) The creditor's failure to mail or deliver a periodic statement to the consumer's last known address if that address was received by the creditor, in writing, at least 20 days before the end of the billing cycle for which the statement was required.

12 C.F.R. 226.13(a).

Here, Plaintiff's December 30, 2020 email is not a proper notice of billing error under the FCBA, but, rather, a complaint directed at M&T's investor relations department regarding the bank's reporting to the consumer credit reporting agencies. (ECF No. 1, ¶ 22; ECF No. 16-1 at 25-26). Indeed, Plaintiff does not allege (and his email does not reference): a specific extension of credit that was not made to him or a person who had the authority to use his card; a reflection on a periodic statement that is not identified as required; an extension of credit for property or services not accepted by him or his designee; a reflection on the statement of the failure to properly credit his account or a computational error. Absent any such alleged "billing error", Plaintiff is unable to state a claim under the FCBA. *See Esquibel v. Chase Manhattan Bank U.S.A., N.A.*, 2008 WL 1881494, at *3 (5th Cir. Apr. 29, 2008) (affirming dismissal of FCBA claim because complained-of charges "do not constitute billing errors" as defined in Section 1666); *Langenfeld v. Chase Bank USA, N.A.,* 537 F. Supp. 2d 1181, 1194 (N.D. Okla. 2008) (the "written notice must meet the statutory definition of 'billing error' contained in 15 U.S.C. § 1666(b)"); *Greisz,* 8 F. Supp. 2d at 1042 (consumer's notice insufficient to trigger compliance duties because alleged dispute regarding the quality of an accepted good or service did not meet definition of "billing error" under § 1666(b)); *Thomas v. Discover Fin. Servs.*, 2007 WL 2746846, at *4 (N.D. Ill. Sept. 13, 2007) (complaint dismissed because alleged errors did not qualify as "billing errors").

### D. Plaintiff's FDCPA Claim Fails as a Matter of Law Because M&T is Not a "Debt Collector" Under the FDCPA (Count 4).

"To establish a FDCPA claim, a plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 333 (4th Cir. 2012) (internal citations and quotation marks omitted). Even assuming that Plaintiff alleged sufficient facts to establish the first and third elements of his claim, he has not and cannot allege any set of facts that would make M&T a debt collector under the FDCPA.

It is well-settled that provisions of the FDCPA apply only to debt collectors. *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir. 2000). Thus, Plaintiff must, as a threshold matter, demonstrate that M&T is a "debt collector." *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 777 (E.D.N.C. Sept. 29, 2011) (noting that a court must determine whether the defendant is a "debt collector" as contemplated by the FDCPA before assessing whether "Plaintiffs have validly stated claims of violations"); *Moore v. Commonwealth Trs., LLC*, 2010 WL 4272984, at *2 (E.D. Va. Oct. 25, 2010) (same). A "debt collector" is narrowly defined by the FDCPA as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

15 U.S.C. § 1692a(6) (emphasis added).

Not only does Plaintiff's Complaint fail to allege that M&T's principal purpose is the collection of debts or that it regularly collects debts owed to another, but all of the allegations of

16

the Complaint are founded upon M&T's alleged collection activities with respect to its own account with Plaintiff. (ECF No. 1, ¶¶ 11, 17-20). These allegations are fatal to Plaintiff's claim. "The FDCPA does not…apply to creditors collecting debts in their own names and whose primary business is not debt collection." *Ramsay v. Sawyer Prop. Mgmt., LLC*, 948 F. Supp. 2d 525, 531 (D. Md. May 31, 2013) (quoting *Kennedy v. Lendmark Fin. Servs.*, RDB 10–02667, 2011 WL 4351534, at *3 (D.Md. Sept. 15, 20110). For this reason, Plaintiff's claim under the FDCPA must be dismissed. *See Okoro v. Wells Fargo Bank, N.A.*, PX-16-0616, 2016 WL 5870031, at *10 (D. Md. Oct. 6, 2016) (dismissing FDCPA claim against lender because creditors are "statutorily exempt from FDCPA liability"); *Crowley v. JPMorgan Chase Bank, Nat'l Ass'n*, RDB-15-00607, 2015 WL 6872896, at *5 (D. Md. Nov. 9, 2015) (dismissing FDCPA claim because plaintiff "concedes that Chase extended her credit creating a debt, and that she owes Chase repayment of that debt. This is the definition of a creditor under the FDCPA, and the FDCPA, generally, does not apply to creditors."), *aff'd,* 684 F. App'x 324 (4th Cir. 2017); *Ramirez v. Wells Fargo Bank, N.A.*, PWG-14-3819, 2015 WL 5052787, at *6 (D. Md. Aug. 25, 2015) ("'[C]reditors are not liable under the FDCPA.' Therefore, Wells Fargo, as the creditor, cannot be liable under the FDCPA." (internal citations omitted)), *aff'd*, 684 F. App'x 324 (4th Cir. 2017); *Ausar-El*, PJM-12-0082, 2012 WL 3137151, at *2 (dismissing FDCPA claim finding that "Barclays is a creditor seeking to collect debts [plaintiff] allegedly owes, hence [it] is not subject to the FDCPA); *Kennedy v. Ace Cash Express*, CCB–10–1900, 2011 WL 1769444, at *3 (D. Md. May 9, 2011) (dismissing FDCPA claim because defendants are creditors and therefore not "debt collectors" as defined by the FDCPA). Accordingly, Plaintiff's FDCPA claim must be dismissed.

**E.   There is No Private Cause of Action Under Section 5 of the FTC Act (Count 5).**

Plaintiff devotes the last nine-pages of his complaint accusing M&T Bank of violating Section 5 of the Federal Trade Commission Act ("FTC Act"), which proscribes "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1).  Like his other claims, this claim fails as a matter of law because there is no private right of action for consumers under the FTC Act. *See Larson v. Nationstar Mortg., LLC*, PX-18-0780, 2018 WL 5921406, at *4 (D. Md. Nov. 13, 2018) ("The FTC Act…does not allow for a private cause of action.  Consequently, Plaintiff's claim under the FTC Act can go no further.") (internal citation omitted). *Michaud v. J.P. Morgan Chase Bank, N.A.*, WDQ-12-0815, 2012 WL 1454859, at *2 (D. Md. Apr. 25, 2012) (collecting cases where courts have held that private parties did not have standing to sue under the FTC Act); *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *13 (D. Md. Aug. 8, 2011) ("Plaintiffs have no standing to bring an action under Section 5 because 'under the [FTC Act] no private party—consumer or competitor—has standing to sue.'") (quoting *Penn–Plax, Inc. v. L. Schultz, Inc.*, 988 F. Supp. 906, 911 n. 1 (D. (D.Md.1997)); *see also A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 675 (4th Cir.1986) ("courts have declined to imply any private right of action [under the FTC Act] and have relied upon the regulatory scheme to police the industry").  Accordingly, Plaintiff's claim under the FTC Act fails as a matter of law, and must be dismissed with prejudice.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint fails to state a claim against M&T Bank and should be dismissed.

Respectfully submitted,

*/s/ Brian L. Moffet*
Brian L. Moffet (Fed. Bar No. 13821)
Michael B. Brown (Fed. Bar No. 19641)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
Tel: (410) 727-6464
bmoffet@milesstockbridge.com
mbbrown@milesstockbridge.com

*Attorneys for Defendant M&T Bank*
