## bocarrasco47@outlook.com

| | |
|---|---|
| **From:** | Bryce Carrasco |
| **Sent:** | Thursday, February 11, 2021 3:26 PM |
| **To:** | Office of the President |
| **Cc:** | Janker, Caitlin; ckay@mtb.com |
| **Subject:** | FCRA |
| **Attachments:** | saunders_v._branch_banking_and_trust.pdf |

I have not heard back from you regarding the derogatory information which remains on my credit report, which was furnished by M&T. Now, it is established that M&T is the furnisher of derogatory information, therefore, it takes on specific duties to maintain compliance pursuant to § 1681s-2(b) of the Fair Credit Reporting Act (FCRA).

I am writing to ensure you are aware that there is a meritorious case that M&T has willfully violated provisions of the FCRA, and each day that my credit score is adversely affected by information provided by M&T is support for the willful violation argument. Attached is a strong legal precedent to build the framework for my case, which I intend to do if necessary.

Below is an excerpt from *Saunders v. Branch Banking and Trust Co. of Va., 526 F.3d 142 (4th Cir. 2008)*:

>    We consider first the relevant legal principles governing this FCRA claim and then the arguments offered by BB&T.
>
>                                       A.
>
>    "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2205-06 (2007) (citing 84 Stat. 1128, 15 U.S.C. § 1681). To this end, FCRA requires CRAs to follow procedures in reporting consumer credit information that both "meet[ ] the needs of commerce" and are "fair and equitable to the consumer." 15 U.S.C.A. § 1681(b).
>
>    In addition to the duties it imposes on CRAs, FCRA also imposes duties on "furnishers of information." § 1681s-2. Under § 1681s-2(a), FCRA prohibits any person from furnishing information to a CRA that the person knows is inaccurate. Additionally, any person who "regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies" must correct and update the information provided so that it is "complete and accurate."
> § 1681s-2(a)(2).
>
>    At issue in this appeal are the additional duties a furnisher incurs under § 1681s-2(b) if a consumer disputes the accuracy of information that the furnisher reports. If a consumer notifies a CRA that he disputes the accuracy of an item in his file, FCRA requires the CRA to notify the furnisher of the dispute. § 1681i(a)(2). Upon receipt of this notice, a furnisher must:
>
>>    (A)   conduct an investigation with respect to the disputed information;
>>
>>    (B)   review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

    (C)    report the results of the investigation to the consumer reporting agency; [and]

    (D)    if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis . . . .

§ 1681s-2(b)(1).

Thus, FCRA requires furnishers to determine whether the information that they previously reported to a CRA is "*incomplete* or inaccurate." § 1681s-2(b)(1)(D) (emphasis added). In so mandating, Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading. Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression. *See, e.g.*, *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *see also Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40-42 (D.C. Cir. 1984) (reasoning that incomplete reporting can violate FCRA when it is "misleading"); *Alexander v. Moore & Assocs., Inc.*, 553 F. Supp. 948, 952 (D. Haw. 1982).[3]

Of particular relevance here, in *Dalton* we addressed the duty of a CRA to report accurately pursuant to § 1681e. 257 F.3d at 415. We held that a report "is inaccurate" not only "when it is 'patently incorrect'" but also "when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ]' effect." *Id.* (quoting *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998)). Thus, we held that a consumer report that contains technically accurate information may be deemed "inaccurate" if the statement is presented in such a way that it creates a misleading impression. *See id.* at 415-16. The Fifth Circuit reached a similar conclusion, affirming a jury verdict finding a CRA's report inaccurate when the report described an account as "[l]itigation [p]ending," because the report omitted the fact that the consumer, as opposed to the creditor/furnisher, had brought suit. *See Pinner v. Schmidt*, 805 F.2d 1258, 1262-63 (5th Cir. 1986).

Finally, FCRA imposes civil liability on "[a]ny person" violating duties under the Act. §§ 1681n(a); 1681*o*(a). A consumer may recover compensatory damages *or* statutory damages of not more than $1,000, punitive damages, and attorneys fees from any person who "willfully fails to comply" with the requirements of the Act. § 1681n. Only compensatory damages and attorneys fees are available for negligent violations of the Act. § 1681*o*. FCRA explicitly bars private suits for violations of § 1681s-2(a), but consumers can still bring private suits for violations of § 1681s-2(b). *See* § 1681s-2(c); *see also Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431-32 (4th Cir. 2004) (affirming jury verdict in consumer suit for violation of § 1681s-2(b)).

With these principles in mind, we turn to the arguments in the case at hand.

---

Please forward this to your legal team so they are aware of how I am planning to build my case. I am happy to speak with your legal department to discuss the merits of potential litigation. Once again, I do not prefer this as I would rather the issue be resolved by M&T, and I am willing to sign a formal agreement or out of court settlement with a pledge that I will not pursue legal action if certain actions are taken by M&T to resolve the issue at hand.

Thank you for your consideration.

Bryce Carrasco
Cell: 410-858-7432