IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **Bryce Carrasco,**<br>Plaintiff<br><br>v.<br><br>**M&T Bank,**<br>Defendant | *<br><br>*<br><br>*<br><br>*<br><br>* | Case No. 1:21-cv-00532-SAG |

\* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S RESPONSIVE BRIEF

### I.      Procedural Background

1.      On March 2, 2021, Plaintiff brought suit in the United States District Court, Northern District of Maryland, alleging certain practices by defendant M&T Bank ("M&T") in violation of Chapter 41 of Title 15 of the United States Code (ECF 1 *et seq*).

2.      On March 4, 2021, a Summons was served on Ken Stewart, Manager of M&T Bank, at 1 Light Street, Baltimore, Maryland 21202. (ECF 10, 14). Upon serving the defendant, the deadline for a responsive pleading was March 25, 2021 (ECF 10).

3.      On March 19, 2021, M&T, through its counsel of record, Brian L. Moffet, filed a motion for an extension of time to respond to the Complaint to April 9, 2021 (ECF 13).

4.      On March 19, 2021, Plaintiff filed a response in opposition to the defendant's motion for an extension of time to respond to the Complaint (ECF 14).

5.      On March 23, 2021, Plaintiff filed 11 exhibits, as evidence in support of the claims alleged in the Complaint (ECF 15 *et seq*; 16 *et seq* and 17 *et seq*).

6. Shortly after filing the above exhibits on March 23, Plaintiff filed a Memorandum in Further Support of the Opposition (*see* ECF 14) to an extension of the time to respond to the Complaint (ECF 18). Plaintiff alleged that defendant's counsel filed the motion for continuance in bad faith, for the purpose of causing unnecessary delay, based on plaintiff's phone call with Brian Moffet where he made the assumption that his request would be granted, despite having failed to show good cause in his motion asking for said extension. *Id* at ¶¶ 1-5.

7. On March 24, the day before the responsive pleading was due, the Court granted defendant's motion in part, resulting in the new deadline for filing a responsive pleading to and including April 2, 2021 (ECF 20). Plaintiff respected the Court's judgement in extending the deadline by one week.

8. On March 25, Plaintiff filed 4 additional exhibits into evidence (ECF 21 *et seq*)

9. On April 2, 2021, defendant's attorney of record, Brian L. Moffet, filed a motion to dismiss for failure to state a claim upon which relief can be granted (ECF 22). Attached to the motion to dismiss was a "memorandum of law" in support of the motion to dismiss (ECF 22-1).

10. Plaintiff timely filed a motion to strike the motion to dismiss on the same day, pursuant to Rule 12(f), Fed. R. Civ. P. (ECF 24).

11. I will first provide a brief response to the motion by M&T.

## II.     Plaintiff's Response to M&T's Memorandum of Law

*Introduction*

12.     ***First***, plaintiff's FCRA claim (Count 1) succeeds as a matter of law because he has alleged a bona fide dispute, and also filed evidence with the Court, which shows that the dispute with M&T is bona fide in all respects. ***Second***, Plaintiff's claim under the Truth in Lending Act (TILA) is not only *plausible* but proven by undisputed factual evidence filed with the Court. ***Third***, the Fair Credit Billing Act claim (Count 3) is valid and actionable but plaintiff will *voluntarily* dismiss this claim and focus on the FCRA and TILA claims in Counts 1 and 2. ***Fourth***, plaintiff will now *voluntary* dismiss the FDCPA claim (count 4). ***Finally***, plaintiff will *voluntarily* dismiss the FTC Act claim. ***Importantly***, those allegations set forth in the Complaint (Counts 3-5) are still to be incorporated by reference as to Counts 1 and 2 as they provide contextual support for the FCRA and TILA claims. Plaintiff will focus on FCRA and TILA claims in this lawsuit for the purpose of judicial economy.

*Count 1*

13.     Defendant argues that Plaintiff's FCRA claim fails as a matter of law because he cannot allege a "bona fide" dispute with M&T. This is a poorly constructed argument as a matter of common sense.

14.     Plaintiff has alleged that he made a bona fide dispute in his Complaint (ECF 1 at ¶ 37). Nothing on the record would support the conclusion that the dispute was not "bona fide" as alleged by M&T, and thus this argument lacks merit. Even if M&T could show that the dispute was not bona fide, this is a disputed question of material fact, and plaintiff preserves his right to jury trial for such findings of fact. The plaintiff acknowledges that he must shoulder the burden of proof through a preponderance of evidence.

15. The record shows that plaintiff notified M&T on numerous separate occasions that the reported information was inaccurate or incomplete in violation of the FCRA:

16. Plaintiff sent emails to M&T at the proper email address at all times between 12/31/2020 and 2/28/2021 (ECF 16-1).

17. M&T directly consented to the use of email for written correspondence and explicitly provided an email address for all communications in the email to Plaintiff on 12/31/2020:

> We'd like to confirm that we have received your correspondence on December 31, 2020 and are currently researching your concerns with the appropriate areas of M&T…Please know that we will respond to your concerns in writing, by sending you a secure e-mail…Should you have any questions in the meantime, feel free to reply to this email, officeofthepresident@mtb.com or call us at 716-635-4517."

ECF 27-1; 28,1-3.

18. Plaintiff sent a demand for an automatic stay to M&T on all payments until the investigations were concluded to the proper email address for such matters on January 17, 2021. See ECF 27-2, 27-3.

19. On February 5, 2021, Plaintiff directly cited inaccurate information reflected on his credit report in an email to M&T, "I have factual evidence that my account is still open and was never closed. My credit report also says that my account is still overdue which is false."

20. Plaintiff provided detailed information in his written correspondence to M&T citing specific instances of inaccurate reporting to the CRAs.

21. Plaintiff even cited relevant case law in this circuit notifying M&T that they were violating the interpretation of the statute as published by the 4th Circuit Court in *Saunders*.

ECF 28-3.

22.     Plaintiff submitted 8 disputes with the CRAs between December 31, 2020 and February 25, 2021.

ECF 29.

23.     Accordingly, it has been assumed that each of the eight disputes resulted in a notification sent to M&T of the dispute, likely through an automated consumer dispute verification form (ACDV), and thus triggering M&T's re-investigation obligations pursuant to 15 U.S.C. § 1681s-2(b).

24.     Plaintiff disputed the account status as it was being reported ("closed by credit grantor"), payment history, past due amount, delinquencies reported and the balance reported. Therefore the ACDV should have reflected that the disputes were comprehensive and thus requiring M&T to perform a reasonable investigation as to the disputed information and report the results of the investigation to the CRA which includes any omissions which render the reported information misleading.

25.     Each dispute initiated by the plaintiff was verified as accurate. The information verified as accurate, however, was inaccurate. The verified information showed that the account was still past due even though plaintiff has made a payment on December 17, 2020 for the billing cycle ending December 16, 2020. M&T even reversed the imposition of the late fee for that billing cycle (notable is the practice that M&T pre-emptively charges late fees on the same day as the closing date of each billing cycle, without any observation of the required 5-day grace period under TILA).

26.     In *Gorman v. Wolpoff & Abramson*, 584 F. 3d 1147 (9th Cir. 2009), the Court re-affirmed the persuasive authority of the 4th Circuit's opinion in *Saunders V. Branch Banking & Trust Co. of Va.*, 526 F. 3d 142 (4th Cir. 2008) that verifying derogatory information upon

receipt of a ACDV from a CRA and then verifying the previously furnished information as accurate, without also reporting affirmative defenses raised by the consumer related to the underlying debt presents a cognizable claim under § 1681s-2(b).

27. As in *Gorman* and *Saunders,* plaintiff argues that M&T's verification delinquency and account status as reported, without a notation that the debt was disputed, represents an "incomplete or inaccurate" entry on his credit file that M&T failed to correct after its investigation. It is well established by *Saunders* and *Gorman* that after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute represents a cognizable claim under § 1681s-2(b).

28. The Fourth Circuit also noted that a consumer's failure to pay a debt that is not really due "does not reflect financial irresponsibility," and thus the omission of the disputed nature of a debt could render the information sufficiently misleading so as to be "incomplete or inaccurate" within the meaning of the statute.

29. However, in *Gorman,* the 9th Circuit added that holding that there is a private cause of action under § 1681s-2(b) does not mean that a furnisher could be held liable on the merits simply for a failure to report that a debt is disputed, "the consumer must still convince the finder of fact that the omission of the dispute was misleading," but rather it is the failure to report a *bona fide* dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s-2(b). In the current case at issue, plaintiff alleges that the dispute was *bona fide*, insofar as that term represents its Latin translation of "good faith" which the disputes currently presented before the Court reflect.

30. Black's Law Dictionary defines "Bona Fide" as meaning:

In or with good faith; honestly, openly and sincerely; without deceit or fraud. Truly; actually; without simulation or pretense.

Source: https://thelawdictionary.org/bona-fide/

31.     Plaintiff, at all times, was disputing the debt in good faith, honestly and openly without deceit or any pretense. Plaintiff was genuinely disputing the reporting because he believed that the information on the credit reports was misrepresentative of the underlying debt and he argued that the way it was reported, especially without any notation that there was an ongoing dispute regarding the default previously reported, was misleading in such a way that it had an adverse effect.

32.     The non-payment during the "three-month sojourn" was due to plaintiff's understanding that there would be a 0% APR during the first twelve months of the account. Therefore, the fact that plaintiff did not make payments on the account during the sojourn do not reflect financial irresponsibility but rather were the result of the inadequate representations made to the plaintiff regarding the underlying credit when the account was opened. As detailed in the analysis of Count 2, these arguments possess an abundance of merit when considering the pretext under which the account was opened, and the inferences that were made based on the disclosures regarding the account and its payment obligations.

33.     In conclusion, the plaintiff has indeed pled a cognizable claim under § 1681s-2b and the argument by the defendant is thus lacking even slight merit. The evidence and the record support that the disputes were bona fide. Also, the record would support that (i) M&T did not have reasonable procedures in place to investigate consumer disputes from CRAs, (ii) M&T did not conduct a reasonable investigation after it received the 8 dispute notifications, (iii) M&T recklessly disregarded the rights of consumers in how it handled its re-investigation duties under commonly understood interpretations of the statute and (iv) M&T failed to uphold its duties as a furnisher of information by not reporting the disputed nature of the account when it verified the accuracy of the previously furnished information. Further, the fact that it verified the accuracy of

8 separate dispute notifications without including reference to said dispute further shows that M&T acted willfully and is thus liable for statutory and punitive damages under § 1681s-2b.

34. Thus, the plaintiff has pleaded an actionable claim and is entitled to the relief he seeks which includes:

   a. Statutory damages of $1,000

   b. Punitive Damages of $5,884,495.20

*Count 2*

35. Defendant is utterly mistaken in his motion to dismiss as to Count 2 for the alleged violation of the Truth in Lending Act. As it relates to 15 U.S.C. § 1663, the defendant is liable for its advertisements – this is quite clearly shown on the record (ECF 1-5 and 15-1). M&T is further liable for this action pursuant to 15 U.S.C. § 1640 as it relates to the account opening disclosure provisions of TILA, which is also reflected on the record, namely, by the credit application filed with the court (ECF 17-2). The account opening disclosures impose liability under 15 U.S.C. § 1640.

36. The account opening disclosures provide for the appropriate relief in *this* lawsuit as it was *these* inaccurate disclosures which caused the events leading up to *this* suit. *These* inaccurate account disclosures directly resulted in emotional distress, loss of sleep, foregone interest, time, and reputational injury. For such injuries, plaintiff prays for relief from the Court.

37. Thus, in response to defendant's counsel, plaintiff says that he has successfully stated a claim for TILA violations, has provided factual evidence in support thereof, and is thus entitled to the relief he now seeks.

38. To reiterate, M&T has in fact failed to post the written agreement which accurately describes the M&T Visa Credit Card with Rewards. The link provided by defendant's

counsel is not even closely related to a credit agreement – it is a program for voucher points and has nothing to do with an extension of credit. The misunderstanding is telling; the defendant's counsel lacks the requisite financial acumen to discern what a credit agreement actually consists of. This blunder shows either total lack of financial IQ or simply inadequate due diligence. Plaintiff will refrain from inferring the underlying cause of such a blatant mishap.

39. Plaintiff has searched far and wide to locate an internet accessible agreement for the M&T Visa Credit Card with Rewards – to no avail.

40. As will be described below, M&T failed to disclose the required costs of the credit card in all of their documents and grossly understated the APRs on every disclosure which quite robustly provides a plausible claim for violations of the Truth in Lending Act.

41. First, it is important to review the terminology of Regulation Z and then we can examine whether the disclosures were adequate in relation to the requirements of the Truth in Lending Act.

42. A *finance charge* comprises the cost of consumer credit as a dollar amount and includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. § 226.4.

43. As such, the finance charge includes any dollar amount imposed as *an incident* of the extension of credit. Therefore, a balance transfer represents the extension of credit, and any charges imposed thereafter as an incident of that extension of credit are finance charges. *Id*.

44. Regulation Z provides specific examples of what charges are finance charges, including balance transfer fees pursuant to § 226.4 (a)(2) and amortization charges pursuant to § 226.4 (b)(2). Amortization charges, or mandatory periodic repayments of the outstanding

balance, are clearly finance charges. *See* § 226.4 (b) examples of finance charges, "carrying charges." *Id.*

45. Carrying charges represent a periodic cost imposed as a percentage applied against the outstanding balance of the credit card. Plaintiff uses the terms "amortization" out of general familiarity with terminology used in corporate credit transactions. However, the same principles apply for consumer credit although the terminology may differ slightly. But the essence of the matter remains unchanged, nevertheless.

46. Thus, for all intents and purposes, "amortization" and "carrying charges" refer to the same form of debt service cost, that is, one which refers to the mandatory periodic repayment of the principal amount of the underlying debt obligation, typically calculated as a fixed percentage of the outstanding amount of the credit instrument.

47. Regulation Z sets forth the disclosure requirements for open end consumer credit plans. Further, § 226.5a, *Credit and Charge Card Applications*, proscribes the mandatory disclosures required on an application to open a credit or charge card account. M&T has violated these requirements in spades (ECF 17-2).

48. Instructively, the regulation mandates that certain information be contained in tabular format pursuant to the model form Appendix G-10, included as an exhibit to this document. The same table as provided by M&T is also included as an exhibit and can be found by following the following link: https://www3.mtb.com/content/dam/mtb-web/mtb-migration/pdfs/summary-visa-account-terms.pdf (Retrieved 4/7/2021). This agreement can be found in the footnote directly below the one referred to by the defendant's counsel, see "Pricing Information" link on the landing page for the M&T Visa Credit Card with Rewards, the credit card that plaintiff received from M&T. There is no need to waste the Court's time by attaching a

copy of the website as an exhibit. Accordingly, plaintiff has succeeded in stating a plausible claim against M&T under 15 U.S.C. 1632(d)(1).

49. Nevertheless, the Appendix G model disclosure form sets forth the required disclosures for open end credit applications. It includes a section specifically dedicated to minimum interest/minimum charges. This section is absent from the disclosure provided by M&T for the Visa Credit Card with Rewards. This is a violation of Regulation Z in and of itself as I understand it, but I am not an expert in the regulatory framework.

50. The determination of annual percentage rate is set forth in § 226.14 of Reg Z. In general, the annual percentage rate, or APR, is a representative benchmark designed to measure the cost of credit, expressed as a yearly percentage rate.

51. The formula for the APR, as set forth in Regulation Z, is engineered using the quotient of two figures: (1) the numerator and (2) the denominator.

52. The numerator is equal to the finance charge. The denominator is equal to the principal balance. I will walk through these two parts in turn.

53. The numerator is equal to the sum of the finance charges over the course of a year. When there are 12 billing cycles in a year, the annual finance charge is found by multiplying the finance charge imposed for each billing cycle by 12.

54. If there is a transaction fee associated with the original extension of credit, that fee shall be included in the annual finance charge for the 12-month period which is being measured.

55. For the account with M&T, the original extension of credit was $2,200.

56. For the account with M&T, the balance transfer fee was $88.

11

57. For the account with M&T, the monthly finance charge was $57. In aggregate for the first twelve months, the finance charge was $684.

58. The annual finance charge for the first twelve months was $772.

59. For the avoidance of any doubt, the credit card in question, which represented an original extension of credit in the aggregate principal amount of $2,200, incurred the following finance charges in the first 12 months where it was supposed to have a 0% APR:

   a. **Balance Transfer Fee**: $88

   b. **Amortization Charges**: $684 ($57 x 12 billing cycles per annum)

60. The minimum payment obligations for the first twelve months applied a fixed percentage of 2.5% against the grossed-up balance (inclusive of balance transfer fee) of $2,888 for each billing cycle, for a total of 12 finance charges imposed in the first year upon account opening.

61. As a result, 12 finance charges of $57 each were imposed, which amounts to $684 (12 x $57) of fixed rate finance charges, in addition to the $88 finance charge imposed as a balance transfer fee.

62. Therefore, a total finance charge of $772.00 ($684 + $88), or an ***Annual Percentage Rate of 35.1%*** ($772 / $2,200), was imposed on an account which was advertised to have a 0% Annual Percentage Rate for the first twelve months.

63. In effect, the APR for balance transfers was ~35%, not 0%.

64. In the case of plaintiff's account, which was supposed to have an APR of 0% for the first 12 months, M&T understated the actual effective APR significantly, and thus the mistake is not protected by the margin of error afforded by Regulation Z.

65. In conclusion, M&T Bank violated the Truth in Lending Act by grossly understating the APRs of plaintiff's account, which directly resulted in plaintiff having to take the time to prepare this lawsuit after going through emotional distress. These disclosure violations directly resulted in plaintiff incurring the filing fee with the Court for $402. These disclosure violations directly resulted in plaintiff's reputation and credit score being adversely affected. These disclosure violations resulted in plaintiff incurring a debt with M&T of $2,200 which plaintiff would have never incurred had he been provided an accurate representation of the terns of said debt. These disclosure violations directly resulted in foregone interest that could have been earned on the cash required to service the debt which was the subject of these disclosure violations. At a minimum, these disclosure violations resulted in the entitlement to financial relief from M&T Bank of $10,000. These disclosure violations and systematic understatement of the APR by M&T should also provide relief for the informational injury caused by the violation of a federally protected interest, which is the accurate disclosure of the cost of credit as provided by the Trust in Lending Act. The statutory damage should be at least $5,000.

66. Therefore, as a result of M&T's TILA violations, plaintiff prays for financial relief of an amount equal to the sum of: (i) $10,000, (ii) $5,000 and (iii) $402.

### III.     Prayer for Relief

WHEREFORE, Plaintiff seeks the following relief under FCRA and TILA:

| | |
|---|---:|
| FCRA Statutory damages of: | $1,000 |
| FCRA Punitive Damages of | $5,884,495.20 |
| TILA Actual Damages | $10,000.0 |
| TILA Statutory Damages | $5,000.0 |
| **Total** | **$5,900,495.20** |

*/s/Bryce Carrasco*

_____

Bryce Carrasco

bocarrasco47@outlook.com

410-858-7432

## IV.   Exhibits

G-10(A) Applications and Solicitations Model Form (Credit Cards) (§226.5a(b))

### G-10(A) Applications and Solicitations Model Form (Credit Cards)

| Interest Rates and Interest Charges | |
|---|---|
| Annual Percentage Rate (APR) for Purchases | [Purchase rate]<br><br>[Description that rate varies and how it is determined, if applicable] |
| APR for Balance Transfers | [Balance transfer rate]<br><br>[Description that rate varies and how it is determined, if applicable] |
| APR for Cash Advances | [Cash advance rate]<br><br>[Description that rate varies and how it is determined, if applicable] |
| Penalty APR and When it Applies | [Penalty rate]<br><br>[Description of events that may result in the penalty rate]<br><br>[Description of how long penalty rate may apply] |
| [How to Avoid Paying Interest on Purchases/ Paying Interest] | [Description of grace period for purchases or statement that no grace period applies] |
| [Minimum Interest Charge]/[Minimum Charge] | [Description of minimum interest charge or minimum charge] |
| For Credit Card Tips from the Federal Reserve Board | [Reference to Board's website] |

| Fees | |
|---|---|
| [Annual Fee]/[Set-up and Maintenance Fees] | [Notice of available credit, if applicable]<br><br>[Description of fees for availability or issuance of credit, such as an annual fee, if applicable] |
| Transaction Fees | |
| • Balance Transfer | [Description of balance transfer fee] |
| • Cash Advance | [Description of cash advance fee] |
| • Foreign Transaction | [Description of foreign transaction fee] |
| Penalty Fees | |
| • Late Payment | [Description of late payment fee] |
| • Over-the-Credit Limit | [Description of over-the-credit limit fee] |
| • Returned Payment | [Description of returned payment fee] |
| Other Fees | |
| • Required [insert name of required insurance, or debt cancellation or suspension coverage] | [Description of cost of insurance, or debt cancellation or suspension plans] [Cross reference to additional information, if applicable] |

How We Will Calculate Your Balance: [Description of balance computation method]

Loss of Introductory APR  [Circumstances in which introductory rate may be revoked and rate that applies if introductory rate is revoked, if applicable]

[Description that rate that applies after introductory rate is revoked varies and how it is determined, if applicable]

15

| M&T Bank Visa Credit Card with Rewards ||
|---|---|
| **Interest Rates and Interest Charges** ||
| Annual Percentage Rate (APR) for Purchases | M&T Visa® Credit Card Accounts: **0.00%** Introductory APR for the first 12 billing cycles from account opening. After that, your APR will be between **10.24 and 17.24%** based on your creditworthiness and will vary with the market based on the Prime Rate.<br><br>M&T Visa® Credit Card with Rewards Accounts: **0.00%** Introductory APR for the first 12 billing cycles from account opening. After that, your APR will be between **11.24 and 18.24%** based on your creditworthiness and will vary with the market based on the Prime Rate.<br><br>M&T Visa® Signature Credit Card Accounts: **0.00%** Introductory APR for the first 12 billing cycles from account opening. After that, your APR will be between **11.24 and 18.24%** based on your creditworthiness and will vary with the market based on the Prime Rate.<br><br>M&T Secured Credit Card Accounts: Your APR will be **17.24%** and will vary with the market based on the Prime Rate. |
| APR for Balance Transfers | M&T Visa® Credit Card Accounts: 0.00% Introductory APR for the first 12 billing cycles from account opening. After that, your APR will be between 10.24 and 17.24% based on your creditworthiness and will vary with the market based on the Prime Rate.<br><br>M&T Visa® Credit Card with Rewards Accounts: 0.00% Introductory APR for the first 12 billing cycles from account opening. After that, your APR will be between 11.24 and 18.24% based on your creditworthiness and will vary with the market based on the Prime Rate.<br><br>M&T Visa® Signature Credit Card Accounts: 0.00% Introductory APR for the first 12 billing cycles from account opening. After that, your APR will be between 11.24 and 18.24% based on your creditworthiness and will vary with the market based on the Prime Rate.<br><br>M&T Secured Credit Card Accounts: Your APR will be 17.24% and will vary with the market based on the Prime Rate. |
| APR for Cash Advances | 22.24%. This APR will vary with the market based on the Prime Rate. |
| APR for Overdraft Advances | 22.24%. This APR will vary with the market based on the Prime Rate. |
| Penalty APR and When it Applies | 24.99%. This APR may be applied to your account if your account is past due 60 days.<br><br>**How Long Will the Penalty APR Apply?** If your APRs are increased, the Penalty APR will apply until you make 6 consecutive minimum payments when due. |
| Paying Interest | Your due date is at least 25 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire account balance by the due date each month. We will begin charging interest on balance transfers, cash advances and overdraft advances on the transaction date. |
| For Credit Card Tips from the Consumer Financial Protection Bureau | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/learnmore. |

16

**Signature Page**

/s/Bryce Carrasco
Bryce Carrasco
bocarrasco47@outlook.com
410-858-7432