UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

| | |
|---|---|
| Bryce Carrasco,<br><br>          Plaintiff<br><br><br>V.<br><br><br>M&T Bank<br><br>          Defendant | CIVIL ACTION<br><br>CASE NO. 21-532 (SAG)<br><br>:_____<br><br><br><br><br>~~JURY TRIAL DEMANDED~~AMENDED<br><br>COMPLAINT NO. 1 |

## AMENDED COMPLAINT

COMES NOW Plaintiff **Bryce Carrasco**, ("Plaintiff")~~, representing himself~~, to file~~s~~ this

Amended Complaint ~~for brings suit~~ against M&T Bank Corporation, for the reasons that follow.

## ~~Executive~~ Summary

1. Plaintiff seeks relief ~~in a form and substance commensurate with the emotional, financial and reputational damages incurred as a result of Defendant's conduct, including (i) monetary award necessary to deter future violations by the Defendant, (ii) Statutory damages are also sought, as well as reimbursement for all filing fees and expenses incurred by plaintiff in the course of these legal proceedings.~~ as follows:

- Non-Economic Emotional Damages: $60,000.00

- Economic Damages – Lost Wages: $100,000.00

- Punitive Damages: $5,884,495.20

~~1.~~

## ~~Jurisdiction and Venue~~

~~2.     **Jurisdiction**: This court has subject matter jurisdiction under 28 U.S.C. §§ 1331 as the action involves federal questions under Title 15 of the United States Code.~~

~~3.     **Venue**: Venue is proper under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this district.~~

## Applicable Law

2. Fair Credit Reporting Act (FCRA); 15 U.S.C. § ~~1601~~ 1681s-2(b)~~et seq.~~,

~~4.~~3. Truth in Lending Act (TILA); 15 U.S.C. §§ 1601-1667f~~, as amended, Fair Credit Billing Act; 15 U.S.C. § 1666, FTC Act; 15 U.S.C. 45(a).~~

## Background and Statement of Facts

4. Plaintiff applied for an M&T Visa Credit Card with Rewards at the Light and Redwood Branch, located at 1 Light Street, Baltimore, MD 21202, and the credit card was opened on July 17, 2020.

5.      A binding agreement was never executed in regard to the Credit Card.

6.      On July 20, Plaintiff emailed an M&T Branch Manager named Drew Solstice, asking, "Is there a way I can look at documentation online?"

7.      On July 21, the M&T Branch Manager replied to the email stating, "What documentation are you looking for there is a letter that comes separate from the card that has your approval information but typically with a credit card there isn't further documentation outside of what I gave when you filled out the application."

8.      Plaintiff received an undated letter via mail from M&T Bank sometime around July 21, which, based upon belief and understanding, was the "letter that comes separate from the card that has your approval information" referred to in Drew Solstice's email in ¶ 7 of this Complaint, hereinafter referred to as the "**Letter,**" and attached hereto as **Exhibit 1**. In addition to this Letter was a generic-looking and undated pamphlet, which Defendant has represented as being the Credit Agreement. Whether this Agreement qualifies as a legally binding and enforceable contract is beyond the scope of this Complaint but nevertheless it is still a worthwhile question to consider, since the Defendant uses this same contract universally.

9.      The Letter included the physical charge card, with instructions to activate the card. The Letter described the key terms of the credit plan, including (i) Account Number: ####-6414, (ii) Total Credit Line: $3,500, (iii) Cash Limit: $1,500, (iv) Number of Cards: 1, (v) Current APRs; Purchases: 0.00%, Balance Transfer: 0.00%. On the back of the Letter was a table with the heading "Important information about your M&T Visa Credit Card with Rewards" which contained material terms underlying the credit card, such as Interest Rates and Interest Charges, Penalty APRs and Penalty Fees.

10.     The Letter does not include any schedules associated with the repayment of principal balance and the only payment provision is under the sub-heading "Paying Interest." Plaintiff assumed that the Letter contained all material provisions governing the credit card account based on the email from the M&T Bank employee (¶ 7-8).

11.     The M&T credit card was opened under an introductory offer which provided, among other things, 0% Annual Percentage Rate (APR) for the first 12 months (Purchases and Balance Transfers). The account was approved with a limit of $3,500.

12.     Plaintiff initiated a balance transfer with M&T to repay a previous credit card account with Bank of America of $2,200 shortly after receiving the Letter.

13.     The balance transfer was completed by M&T and $2,200 was sent to Bank of America on August 3, 2020.

14.     After the balance transfer was completed, the outstanding balance of the account with Bank of America was -$70, and the account was closed and Plaintiff received a check for the negative balance from Bank of America for $70. After the account with Bank of America was closed, Plaintiff only had one credit card which was the M&T Card with Rewards.

15.     In September 2020, due to COVID-19, Plaintiff temporarily relocated from his Baltimore residence, located at 100 East Redwood Street, Baltimore, MD 21202, which was the address on file with M&T Bank, to his parent's residence, located at 334 Ternwing Drive, Arnold, MD 21012 and did not return to his Baltimore residence until December 2020.

16.     While living at his parent's residence in Arnold, Plaintiff did not receive a phone call or email from M&T Bank, so it was assumed that there were not issues with the account.

17.     Plaintiff returned to his apartment at 100 East Redwood Street for the first time since September on or around December 12, 2020. Upon checking his mailbox, Plaintiff

discovered 6 letters from M&T Bank to collect a debt (hereinafter referred to individually as a "**Debt Collection Letter**" and collectively as the "**Debt Collection Letters**").

18.     Specifically, in a Debt Collection Letter dated November 5, 2020, attached hereto as **Exhibit 2**, it was stated that the amount past due was equal to $114.00. Going further, it conveyed the following message:

> Our records indicate that your account is 50 days past due. If you have already sent this payment to us, thank you, and please disregard this letter. If not, please remit the Amount Past Due referenced above to M&T Bank, P.O. Box 62085, Baltimore, MD 21264-2146....It is important that you respond to this letter by either making your payment or by contacting us. If you do not resolve the payment default described above, we may pursue our remedies pursuant to your credit agreement. *Please note that we have told a credit bureau about a late payment, missed payment or other default on your account. This information may be reflected in your credit report*. (Emphasis Added).

19.     Thus, in an effort to intimidate and bully Plaintiff, the Debt Collection Letter baselessly claimed that the account was in "serious delinquency" and that the Defendant would pursue remedies pursuant to the credit agreement– which remedies this refers to, is still a mystery. These so-called "remedies" are ambiguous at best, and hence this letter is evidence of a pre-meditated, malicious, and knowing misrepresentation made by M&T in their attempt to intimidate and embarrass Plaintiff and submit to their unjustifiable demands for payment. This harassment by the Defendant is shameless and unjustified, and most importantly unlawful.

20.     The M&T Visa Credit Agreement (The "**Credit Agreement,**" or "**Agreement**") attached hereto as **Exhibit 3**, makes clear the bad faith with which the Defendant conducts its predatory program against consumers, and reveals that the *modus operandi* is obfuscation and ambiguity, and then the Defendant weaponizes their position of power against defenseless consumers to destroy their credit scores with full knowledge that they have no contractual basis for declaring an event of default, and thus they are systematically violating their mandated responsibilities under Title 15 of the United States Code.

21.     On December 17, 2020 Plaintiff called M&T and completed a check by phone in the amount of $231, the amount that was claimed by Defendant to be overdue. On that same call, Plaintiff disputed late fees charged  and the M&T representative made an adjustment to reverse two late fee charges ($35 each; $70 total) on the account.

22.     On December 30, Plaintiff sent an email to Defendant to notify them that disputes had been submitted to Experian, Transunion and Equifax in regard to information reflected on Plaintiff's credit reports from all three agencies, based on information furnished by the Defendant. In addition to notifying M&T of disputes with CRAs, Plaintiff also provided a formal statement describing why such furnished information was misleading and overall misrepresentative based on the underlying terms of the credit. Plaintiff also requested Defendant to issue a written apology for the grievances and reputational damage caused by this false reporting (ex. 7, pg.17).

23.     Defendant confirmed receipt of the email on December 31, stating "we'd like to confirm that we have received your correspondence on December 31, 2020, and are currently researching your concerns with the appropriate area(s) of M&T." (ex. 7, pg. 16).

24.     On January 10, 2021, Plaintiff sent another email to Defendant, saying:

I am reaching out….to request that you lift the minimum payment requirements until all outstanding investigations are concluded and we have reached a mutual understanding regarding the credit agreement. I am losing patience with the lack of transparency and misrepresentations made to all 3 credit reporting agencies…(ex. 7, pg. 15 ¶ 23-34).

25.     On January 12, 2021, Plaintiff sent another email expressing frustration that credit documentation was never delivered when requested from the relationship manager at the branch office in August 2020. Plaintiff copied email correspondence between said branch manager from August 2020 where he had asked him to provide documentation, to which he replied:

What documentation are you looking for there is a letter that comes separate from the card that has your approval information but typically with a credit card there isn't further

documentation provided outside of what I gave you when you filled out the application (ex. 7, pg. 15 ¶ 6-12)

26.     Further, Plaintiff said, "thus I was provided no clear documentation that made clear I would be subjected to an accelerated principal repayment schedule with obscenely high minimum payments for a 12-month promotional offer." (ex. 7, pg 15 ¶ 13-15).

27.     After investigating the disputes with the CRAs, Defendant did not make any material changes to the reporting made to the CRAs.

28.     Also, Defendant did not make any statement/representation to any CRA that the underlying debt was being disputed, in direct violation of 15 U.S.C. § 1681s-2(b).

29.     Plaintiff then proceeded to file a complaint with the Consumer Financial Protection Bureau on February 1, 2020, and then sent another email to Defendant:

> I never received an email or phone call from M&T regarding the account and when I asked the branch manager for documentation when I opened the account I was told that there was no documentation available….Nevertheless, M&T proceeded to demand minimum payments and reported my delinquency to each of the three major CRAs prior to December 18, 2020. It was also reported that my account was closed at the credit grantor's request, which is inaccurate since my account was never closed. My credit report still shows this despite disputing the information multiple times with each CRA, which suggests that M&T willfully neglected to correct inaccurate/misleading information they furnished to all three CRAs. This resulted in my FICO score dropping to 565 which prevents me from obtaining credit and could effect future employment background checks. I reached out to M&T Bank multiple times and received an email from the Office of the President on December 31, which confirmed that an investigation was in process regarding my dispute. I have not heard back since then, but my credit report still shows the adverse information and my FICO is still 565…M&T has not fulfilled its duty as a furnisher of information in accordance with the FCRA and thus has violated federal statute under the U.S. Code. (§ 1681s-2(b)).

30.     M&T responded on February 2, "We'd like to confirm that we have received your correspondence on February 1, 2021, via the CFPB portal." At this time, M&T still had not responded to the direct dispute and request for documentation that was made on December 31, 2020. Despite this, the investigations were completed regarding my disputes filed with the three CRAs with the result being that no material changes were made to the information and that M&T

had verified this information as accurate, while omitting that there was ongoing investigation as a result of my direct dispute with M&T initiated on December 30.

31.     This is a blatant disregard for the law and clear violation of § 1681s-2(b). M&T finally responded to the various disputes on February 5, 2021 (ex. 4.2). Attached to the response letter was the "M&T Bank Visa Credit Card Agreement" which was the first time Plaintiff had received anything resembling credit documentation. However, the agreement which was attached to this inadequate response letter had a disclaimer on page 1 as follows: "Please Note: If you are approved and qualify for any promotional offer, the specific account disclosures for that promotional offer will be mailed to you with your Agreement." Therefore, the Defendant made a willful misrepresentation, in complete bad faith, claiming that this agreement was applicable to my card when it clearly states that it does not represent the terms for accounts opened under promotional offers. This transcends any inadvertent mistakes and reveals the intentional conduct underpinning Defendant's activities.

32.     The Defendant never responded to the multiple requests made by Plaintiff for the current contract underlying the account and thus was never able to discern to the terms and conditions of the credit card. Plaintiff was never provided with adequate disclosures to be able to maintain compliance or evaluate the terms to avoid violations.

33.     Nevertheless, after Defendant responded to the CFPB complaint in the letter dated February 5, the following conclusion was made by M&T:

> After a review of your account, we have determined that no bank error occurred in this case. As such, we are unable to remove the late reporting associated with your credit card. Please be advised that under the Fair Credit Reporting, M&T is required to report all factual information to the various credit bureaus.

34.     With this in mind, we can now evaluate the facts and evaluate the legal principles involved, and Plaintiff thus claims as follows:

---

### Count 1: Defendant Willfully Neglected its Obligations under the FCRA

---

#### A.  15 U.S.C. §1681s-2(b)

35.     Plaintiff alleges that M&T violated its duties as a furnisher of information under FCRA, 15 U.S.C. § 1681s-2(b), by failing to report the fact that plaintiff was disputing the underlying credit terms with the Defendant.

36.     If a consumer notifies a CRA that he disputes the accuracy of an item in his file, FCRA requires the CRA to notify the furnisher of the dispute. § 1681i(a)(2). Upon receipt of this notice, a furnisher must: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. § 1681s-2(b)(1). In Saunders v Branch Banking & Trust, the court found that:

> FCRA requires furnishers to determine whether the information that they previously reported to a CRA is "*incomplete* or inaccurate" § 1681s-2(b)(1)(D) (emphasis added). In so mandating, Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading. Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression.

37.     In the present case, Plaintiff had initiated a dispute with the Defendant regarding the legitimacy of the previously reported information that the account was in delinquency. The dispute is meritorious by virtue of the fact that M&T had never provided adequate disclosure of the material terms of the credit card and failed to produce documentation when requested multiple times by Plaintiff. Despite the foregoing, *Defendant did not report that the account was*

*being disputed* and thus resulted in the creation of a misleading representation of the underlying account. In Saunders, it was established that CRAs do not consider the furnisher's reporting of a dispute superfluous:

> For instance, when a furnisher responds to a dispute verification form and relates an ongoing dispute, Transunion records the dispute in the credit report and does not include the derogatory information in assessing the credit score…In sum, given the evidence before it, the jury could reasonably conclude that BB&T's decision to report the debt without *any* mention of a dispute was 'misleading in such a way and to such an extent that it can be expected to have an adverse effect' The district court did not err in so holding.

38.    Thus, it can be said that M&T's failure to report the *ongoing dispute* but to verify the accuracy of the prior reporting was misleading in such a way and to such an extent that it could be expected to have an adverse effect.

39.    The adverse effect is evidenced in the dramatic decrease in Plaintiff's credit score as a result of the information provided by M&T.

40.    Plaintiff went through embarrassment and mental anguish as a result of the false credit reporting by the defendant. The plaintiff suffered from sleep deprivation, acute depression, anxiety and emotional distress. For the emotional damage caused by M&T's willful noncompliance with FCRA, the plaintiff seeks compensation of $60,000 in non-economic emotional damages.

41.    Plaintiff was unable to focus on his full-time job as an investment banking analyst and lost interest in activities which formerly brought him joy such as reading history books and walking his dog. Plaintiff's performance at work suffered and caused him not to earn a promotion which resulted in loss of wages of $100,000 Due to the economic damages incurred as a direct result of M&T's willful noncompliance with FCRA, the plaintiff seeks economic damages in the amount of $100,000.

42.     In addition to the actual damages of $160,000 plaintiff also seeks punitive damages as a result of the willful noncompliance with FCRA by the defendant. The punitive damages which are sought equal $5,884,495.20

38.43.  The harm caused by Defendant's willful violation of § 1681s-2(b) is the first claim upon which Plaintiff seeks relief from this Honorable Court.Also, plaintiff seeks injunctive relief whereby M&T is ordered to remove all reported information regarding its relationship with the plaintiff to all CRAs.

### Count 2: Truth in Lending Act (TILA); 15 U.S.C. §§ 1601-1667f

39.44.  15 U.S.C. 1601 states that its purpose is to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices which serves to promote economic stability and enhance competition among the various financial institutions and other firms engaged in the extension of consumer credit. The statute goes on to state that a creditor is the party to whom the debt arising from the consumer credit transaction is initially payable on the face of evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

2.     §1611 imposes criminal liability for anyone who willfully or knowingly violates provisions of the TILA and provides for monetary penalties up to $5,000 or one-year imprisonment, or both. Plaintiff seeks monetary damages from M&T Bank in the amount of $5,000 and seeks the imposition of maximum one-year prison sentence for Chris Kay and Michael Rosenberry for knowingly providing false and inaccurate information required for the extension of consumer credit. Plaintiff seeks relief based on the following Claims under the Truth in Lending Act:

## ~~C.~~B.   15 U.S.C. § 1632(d)(1)

~~40.~~45.   §1632(d)(1) requires the creditor to establish and maintain an internet site on which the creditor shall post the written agreement between the creditor and the consumer for each credit card account under an open-end consumer credit plan. Defendant has failed to post a written agreement pertaining specifically to open-end credit plans categorized as M&T Visa Credit Card with Rewards that are adjusted based on the promotional offers advertised. Thus a consumer is unable to access pertinent information regarding specific terms and conditions for the credit obligation when such obligation is subject to a 12-month promotional period.

## ~~D.~~C.   15 U.S.C. § 1663

~~41.~~46.   Defendant violated §1663 by issuing detailed and specific advertisements (e.g., interest rates, balance transfer fees and Penalty APRs) associated with the *M&T Credit Card with Rewards*, an open-end consumer credit plan, and did not clearly and conspicuously set forth "any minimum or fixed amount which could be imposed" as required pursuant to Title 15 of the United States Code, Section 1663(1).

~~42.~~47.   Exhibit #4 contains an online advertisement for an open-end credit plan which describes various specific terms and provisions underlying the credit plan but does not set forth any minimum amount which may be imposed. §1663 specifically states that such disclosure be made "clearly and conspicuously" which is clearly meant to deter advertisements from deceiving consumers of the true costs of any credit plan offered.

~~43.~~48.   M&T Bank not only fails to state the minimum charge that may be imposed clearly and conspicuously but totally omits from the full advertisement the minimum charge which the underlying plan would be subjected to. The Credit Card in Exhibit #4 mirrors the account opened by Plaintiff, which requires strict minimum monthly payments equal to the

greater of (a) $15 or (b) 2.5% of the Outstanding Balance, plus the greater of (x) any amounts over limit and (y) any past due amounts. The only disclosure of this absurd and unreasonable payment regime is page 7 of the "summary visa account terms" document and is blatantly obfuscated to the detriment of the unknowing prospective consumer.

44.49.  Exhibit 1 shows the Defendant's intentional violation of § 1663 and is even more reprehensible as it omits any minimum payment obligation on the account activation letter, despite including a term sheet with all other material terms and provisions such as the interest rate and penalty fees. It is inexplicable that Defendant misrepresents its credit plans in such a clear and rapacious fashion.

45.50.  As a result of Defendant's failure to provide proper documentation, Plaintiff was unaware of the definitions and payment requirements required to maintain compliance with the credit and thus was unfairly affected by not having been notified of how to maintain compliance with such credit agreement.

46.    Plaintiff prays for relief is entitled to of actual damages of $160,000relief and requests financial penalty imposed on Defendant.

_____

**Count 3: Fair Credit Billing Act; 15 U.S.C. § 1666**

47.51.  §1666 requires creditors to take certain actions following the receipt of formal notice from an obligor regarding potential billing errors. Plaintiff delivered proper notice to M&T Bank on 12/31/2020 and filed a complaint with the CFPB thereafter. Defendant responded only to the complaint filed with the CFPB and has yet to deliver an adequate response addressing the errors set forth by Plaintiff in written correspondence as set forth in § 1666TILA mandates timely responses to consumer requests for documentation. Despite explicitly requesting

documentation from several M&T Bank employees and the head of M&T Consumer Credit

Division, Christopher Kay, I received correspondence signed by Michael Rosenberry on

2/23/2021, and at saying that:

> I am in receipt of your follow up correspondence to M&T's Executive Offices regarding
> your M&T Visa Credit Card with Rewards ending-6414. We previously received similar
> correspondence from you, and M&T responded in letters dated February 5, 2021, and
> February 18, 2021. We feel that these responses adequately addressed all of your
> concerns; I have enclosed these responses for your records….Please be advised that
> unless you have new information or information to refute M&T records, M&T will no
> longer respond to your requests, and considers this matter closed. Sincerely, Michael
> Rosenberry, Office of the President.

48.52.  Mr. Rosenberry implies that Defendant had provided the Plaintiff access to "M&T

Records" which is an absolute lie and further M&T blatantly ignores my repeated requests for (i)

a copy of my account application as it appears on file at the branch office at One Light Street,

Baltimore MD 21202, (ii) documentary evidence of the underlying credit agreement which these

assertions are based and (iii) the current credit documents governing the underlying obligation

between Plaintiff and Defendant.

49.    None of these three items has ever been provided despite multiple direct requests

to senior level managers and executive officers at M&T.

⸻

**YY.    15 U.S.C. § 1666**

52.    Defendant failed to provide documentary evidence of indebtedness upon request

after receiving the proper written notice of billing errors from Plaintiff.

53.    Defendant still fails to provide documentary evidence to Plaintiff of the

underlying indebtedness and terms and provisions governing such indebtedness.

54.     Defendant responded with vague and indirect answers as to why there were no billing errors to be corrected, despite Plaintiff making specific requests for documentation on multiple occasions.

55.     At no point has Defendant provided ANY documentation ~~as required by § 1666~~ to support their claims and assertions.

56.     Plaintiff has filed multiple complaints with the Consumer Financial Protection Bureau stating that M&T Bank never provided documentation to Plaintiff and, Defendant only responded with evasive explanations which fail to address specific requests and issues set forth in the written complaints.

~~57.     Thus, Defendant has violated Title 15 of the United States Code, Section 1666 and Plaintiff seeks maximum monetary damages from M&T Bank in addition to one year imprisonment for Officers of M&T Bank Chris Kay and Michael Rosenberry, who both have willfully and knowingly violated the § 1666 and are thus criminally liable as such.~~

~~**Count 4: Violations of FTC Act**~~

~~**GGG.  15 U.S.C. 45(a)**~~

~~60.     Engaging in unfair or deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the FTC Act, as amended, 15 U.S.C. §45(a).~~

~~61.~~57.  To expose this systematic exploitation fully, it is necessary to perform a closer examination of the Credit Agreement which the Defendant has and continues to use against unsuspecting consumers with malicious intent to impose harm.

~~62.~~58.  First, the Credit Agreement does not have a date and does not even have Plaintiff's name on it. There are no page numbers which makes the task of referencing sections of the Agreement unreasonably burdensome, which is intentional to obfuscate and confuse and

not in the interest of commerce. "Payment Due Date" is defined under the heading "Paying Interest," so it creates the impression that the Payment Due Date is applicable to interest charges, and it is not reasonable to expect that a card holder should conclude that the Payment Due Date also applies to amounts calculated as a percentage of the Outstanding Balance, and that failure to meet the same deadlines for interest expenses are also to be applied to those amounts which are effectively repayments of principal outstanding, and would resemble a mandatory amortization provision, but there is not clear section outlining the mandatory amortization requirements and thus it is baseless to make the claim that events of default are triggered by failing to make mandatory amortization payments on the same terms as interest expenses.

63.59.  According to the Agreement, you will be in default if "We [M&T] believe Your ability to pay what is owed under this Agreement has been substantially reduced" which means whenever the Defendant feels like saying you are in default, you are in default and they have the right to accelerate the outstanding balanced owed immediately. This is inequitable and unlawful and violates the most fundamental protections of consumers and their ability to make informed credit decisions. M&T basically blackmails its customers through defamatory reporting to the credit bureaus to unfairly ruin your credit and limit your economic opportunities, simply because they thought you might not be able to pay a certain amount which is ill-defined.

64.60.  The following sections of the Agreement are central to the abusive scheme to render consumers essentially defenseless with zero protections. The Defendant makes clear that the Agreement does not require you to sign it to be valid, which is patently ridiculous considering that the Agreement is one-sided and can be construed in any way that benefits the Defendant as a result of its ambiguity: basically, the agreement claims that you can be in default whenever M&T feels like it.

| Paying Interest | Your due date will be at least 25 days after the close of each billing cycle. If a monthly statement includes new purchases, You may avoid paying interest on those new purchases by paying the entire new balance reflected on that monthly statement (the "New Balance" for that month) in full by the payment due date for that monthly statement (the "**Payment Due Date**" for that month). If We do not receive the entire New Balance by the Payment Due Date, interest will be charged on the purchases from the date of the transaction. Interest charges on balance transfers, cash advances, and overdraft advances begin to accrue on the transaction date and continue to accrue until paid in full, and will be assessed even if Your entire New Balance is paid by the Payment Due Date. |
|---|---|
| Penalty Rate | A Penalty APR of 24.99% (Daily Periodic Rate of .06847%) will apply to all balance categories instead of the introductory APR or regular APRs if You fail to pay the Minimum Monthly Payment within 60 days after its due date. If You promptly remedy the default, Your Account will return to the regular APRs for each balance after 6 consecutive cycles in which Your Account is deemed current and is not in default. Otherwise, Your APRs will remain at 24.99% (Daily Periodic Rate of .06847%) until Your Outstanding Balance is paid in full. The APR increase will occur regardless of whether We exercise any other right or remedy permitted under this Agreement or by law for Your default. |
| Fees and Charges | Late Payment Charge of $25 ($35 if You make a late payment within 6 billing cycles of any previous late payment). We add the late charge to Your purchase balance. |
| Method of Payment | You must pay Us Your Outstanding Balance. You can pay it in full at any time without any penalty, or You can pay it in installments. You must pay it in United States dollars drawn on funds on deposit in a United States financial institution or the United States branch of a foreign financial institution using a payment check, money order or automatic debit payable to our order that will be honored by Your financial institution. By the date shown on any statement for Your Account, You must pay at least the Minimum Monthly Payment shown on the statement. |
| Monthly Minimum Payment | The "**Minimum Monthly Payment**" is the greater of: <br> (a)  $15; or <br> (b)  2.5% of the Outstanding Balance of Your Account at the end of a billing period plus the greater of (i) any amount over limit or (ii) any past due amounts. <br> Your Minimum Monthly Payment will be rounded to the nearest dollar. |
| Default | Except to the extent prohibited by applicable law, You will be in default if: <br> 1)  You fail to make any payment when due under this Agreement or to comply with any of the other terms of this Agreement in existence now or in the future; <br> 2)  You die, file for bankruptcy or become insolvent; <br> 3)  You make any false or misleading statements in any credit application or credit update, or violate any other provision of this Agreement; <br> 4)  We believe Your ability to pay what is owed under this Agreement has been substantially reduced; <br> 5)  You fail to pay any other indebtedness owed to Us or our affiliates existing now or coming into existence in the future by the date it becomes due; <br> 6)  Legal proceedings are commenced to take any property belonging to You whether now existing or hereafter acquired; or <br> 7)  Any tax or other involuntary lien is filed or recorded against any property belonging to You now or in the future, <br> If you are in default, we may declare the outstanding balance and any other amounts you owe to be immediately due, prohibit further transactions (without prior notice), cancel the Cards, terminate the account, and revoke any privileges associated with the card or account. We may increase your APRs to the Penalty APR under the circumstances described in this section in this Agreement headed "Penalty Rate" |

65.61.  So, according to the Agreement, "by the date shown on any statement for Your Account, You must pay at least the Minimum Monthly Payment shown on the statement." One good question to this provision would be, what exactly M&T means when it says, "by the date shown on any statement"? Since "Payment Due Date" is previously defined as at least 25 days after the end of each billing cycle, it must mean some other date shown on any statement. Well, since it could be *any date* on *any* statement, how should one decide which of the several different dates that appear on any given statement should be considered the date to which this clause applies. One could argue that since the language says explicitly that it could be any date on any

17

statement, it is reasonable to argue that it could be the end date for the promotional period on

page 2 of each monthly statement, as shown below for instance.

| Type of Balance | Annual Percentage Rate (APR) | Promo Rate End Date | Balance Subject to Interest Rate | Interest Charge |
|---|---|---|---|---|
| **Your Annual Percentage Rate (APR) is the annual interest rate on your account.** | | | | |
| Purchases | 0.00% | 07/16/2021 | $20.96 | $0.00 |
| Cash Advances | 22.24% (v) | - | $0.00 | $0.00 |
| Overdraft Protection | 22.24% (v) | - | $0.00 | $0.00 |
| Convenience Checks | 22.24% (v) | - | $0.00 | $0.00 |
| Balance Transfers | 0.00% | 07/16/2021 | $2,146.83 | $0.00 |
| (v) = Variable Rate | | | | |

**Payment Information**

| | |
|---|---|
| New Balance | $2,117.00 |
| Past Due Amount | $60.00 |
| Total Minimum Payment Due | $113.00 |
| Payment Due Date | 02/13/2021 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35.00 and your APRs may be increased up to the Penalty APR of 24.99%.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance.
For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 15 years | $4,255 |

If you would like information about credit counseling services, please call 1-800-388-2227.

**Summary of Account Activity**

| | | |
|---|---|---|
| Previous Balance | | $2,383.00 |
| Payments | - | $231.00 |
| Credits | - | $70.00 |
| Purchases | + | $0.00 |
| Debits | + | $0.00 |
| **Fees Charged** | **+** | **$35.00** |
| **Interest Charged** | **+** | **$0.00** |
| **New Balance** | | **$2,117.00** |
| | | |
| Total Credit Line | | $3,500.00 |
| Available Credit | | $1,383.00 |
| Cash Limit | | $1,050.00 |
| Available Cash | | $1,050.00 |
| | | |
| Days In Billing Cycle | | 31 |
| Closing Date | | 01/16/2021 |

66.62.  "Minimum Monthly Payment," as defined in the credit agreement, does not

include a definition for the Payment Due Date associated with such a Minimum Monthly

Payment, such as the "Payment Due Date" defined under the section "Paying Interest" so it is not

reasonably possible to determine any date by which such payment, when not accounted for as an

interest charge, shall be due, or when failure to pay such non-interest portion of the minimum

monthly payment would give rise to an event of default. Therefore, Plaintiff was unfairly,

unreasonably and irrationally expected to determine the dates which minimum payments, that are

not interest charges, would be due, and to make such payments before a payment due date which

is not defined in the credit agreement.

67.63.  In the screenshots from Plaintiff's February 2021 Account Statement, there are three unique dates listed on the account, so what should guide Plaintiff in determining the proper date for the Minimum Monthly Payment. Since no interest has been charged, and the Payment Due Date is a defined term in the Credit Card Agreement specific to the section named Paying Interest, it can be reasonably argued that the only amounts due by the Payment Due Date is the interest expense, which is $0.00.

68.64.  But M&T claims that they can change the rules whenever they feel like it and without notice and without consent, so if they want to change it, then that is fair game and within their rights. Regardless of what technicality M&T wants to use to justify their abuse of consumers, it is violating basic ethics and it is in bad faith, and Plaintiff believes that the evidence supports the assertion that the Defendant is intentionally operating in bad faith to do harm to unsophisticated consumers without the financial resources to defend themselves against this malicious behavior.

69.65.  Worse still, M&T expected Plaintiff to know the circumstances under which failure to pay the mandatory amortization of principal would trigger an event of default. It is inexplicable for the Defendant to claim that Plaintiff was responsible to pay non-interest charges by a date that cannot be determined based on the underlying contractual provisions of the Credit Card Agreement. It is even more heinous and reprehensible to act as if such arbitrary rules would be qualification for an event of default, based on blatantly opaque and weak contractual language in the Credit Agreement.

70.66.  Notwithstanding the obtuse language in the Credit Agreement, Plaintiff does not believe that M&T had any remedies at the time of sending the letter on November 5 based on the terms of the agreement. M&T implies that Plaintiff had defaulted by virtue of being "50 days

overdue," in the November 5 Debt Collection Letter which is absurd and violates the FDCPA.

Even more reprehensible, Defendant took the initiative to report baseless and derogatory

information to all three credit reporting agencies (Experian, Transunion, and Equifax) in

violation of the FCRA.

71.67.   Below is a table of the transactions associated with my M&T Account since

inception. M&T charged inexplicable and arbitrary late fees aggressively after opening my

account and also took the initiative to report misleading derogatory information to all three credit

reporting agencies. The effect this has had on my credit score is unreasonable and unjustified.

| Date | DESCRIPTION | Card Number | Debit (-) | Credit (+) |
|---|---|---|---|---|
| 02/08/2021 | PAYMENT - THANK YOU | xxxx-xxxx-xxxx-6414 | | $60.00 |
| 1/15/2021 | PAYMENT - THANK YOU | xxxx-xxxx-xxxx-6414 | | $60.00 |
| 12/22/2020 | PAYMENT - THANK YOU | xxxx-xxxx-xxxx-6414 | | $231.00 |
| 12/17/2020 | LATE FEE | xxxx-xxxx-xxxx-6414 | –$35.00 | |
| 12/17/2020 | LATE PAYMENT FEE ADJUSTMENT | xxxx-xxxx-xxxx-6414 | | $35.00 |
| 11/17/2020 | LATE PAYMENT FEE ADJUSTMENT | xxxx-xxxx-xxxx-6414 | | $35.00 |
| 11/17/2020 | LATE FEE | xxxx-xxxx-xxxx-6414 | –$35.00 | |
| 10/19/2020 | LATE FEE | xxxx-xxxx-xxxx-6414 | –$35.00 | |
| 09/17/2020 | LATE FEE | xxxx-xxxx-xxxx-6414 | –$25.00 | |
| 08/04/2020 | BALANCE TRANSFER FEE | xxxx-xxxx-xxxx-6414 | –$88.00 | |
| 08/03/2020 | BANK OF AMERICA WILMINGTON | xxxx-xxxx-xxxx-6414 | –$2,200.00 | |

72.68.   Furthermore, it is criminal to knowingly engage in such a deceptive and

manipulative scheme to defraud unsophisticated consumers and seek to intimidate them, in bad

faith and full intention to do harm, by reporting them as "seriously delinquent" and reports that

derogatory information to all three credit reporting agencies and knowingly furnished

information and indications that the Account was closed at the Creditor's request under the

impression that it is uncollectible.

73.69.   This type of conduct is absolutely unjustified and inequitable and has no place in

a developed system of commerce such as the United States financial system. It is criminal,

predatory and unacceptable for any participant in our free-market system to debase our ethical

20

standards intentionally to cause irreparable harm to its victims' reputations and ability to obtain credit on reasonable terms in the future. Defendant should be prohibited from engaging in any activities relating to consumer credit indefinitely until each officer responsible for carryout these strategies is brought to justice. The problem will not be solved until these bad actors are replaced by people with decency and a regard for fundamental business ethics. Plaintiff believes the court should permanently revoke the ability of Chis Kay and Michael Rosenberry and any other bad faith actors to work in any capacity in the financial services industry based on their demonstrated malicious intent, disregard for basic commercial standards and total lack of respect for consumers, and the rapacious and repulsive methods by which they devise schemes to exploit unsophisticated retail customers.

74.70.  Immediate action against Defendant is absolutely critical considering that the offenses are willful and pre-meditated and M&T is doing great damage to consumers and hindering commerce from functioning properly. Plaintiff brings this action before this honorable court in pursuit of justice and for the sake of our free market economic system.

75.71.  M&T has demonstrated clearly its intentional bad faith dealings with unknowing consumers and continues to operate unrestricted, doing more harm with each passing day. If there is any question regarding M&T's intent look no further than exhibit 8, which is the account activation letter sent to me by Defendant which shows the misleading and unlawful representations of the terms of the credit card.

76.72.  Plaintiff had a credit score of 715 on a report from July 16, 2020 compared to 575 average currently (as of 2/26/2021). The chart below illustrates the detrimental impact M&T's false and inaccurate reporting has had on Plaintiff's ability to obtain credit.



Source: 7/16/2020 data based on Exhibit 9. 2/26/2021 data via Experian (see ex. 9.1).

77.73.  Prior to the reversal, total late fees charged to the account as of December 17, 2020 amounted to $130. $60 of the penalty still remains accrued to the outstanding balance. Plaintiff continues to dispute the legitimacy of this amount and demands payment from Defendant for $60 to be settled in due course. Thus, current outstanding balance is overstated by $60 in the view of Plaintiff.

78.74.  M&T Bank is not using fair and equitable underwriting practices between its various customer groups, such as for commercial credit.

79.75.  Further, M&T is employing a double standard to its covenants on revolving credits with a clear bias in favor of non-consumer borrowers. It is not in the name of commerce to capitalize on a inadequately informed counter party and this type of conduct serves to intimidate, discourage and embarrass consumers by shifting all blame based on arbitrary clauses purported to be set forth in inaccessible agreements that were never properly delivered at the time of account commencement.

80.76.  M&T makes clear that its modus operandi is to evade requests for information and deceive its customers and intimidate them through blackmail and defamatory reporting to the credit bureaus. The Defendant is engaged in a pre-meditated stratagem which seeks to leverage its position of power against defenseless consumers with no recourse to fight back. In so doing, Defendant is irreparably damaging the reputation of countless consumers and knowingly is misrepresenting its credit terms and setting consumers up for failure.

81.77.  To understand why the Defendant would engage in such a reprehensible scheme, one needs to look no further than the economics of conducting this routine. Forecasting cash flows would lead one to the following figures:

| | | | | |
|---|---|---|---|---|
| Cumulative Cash Inflow to Defendant | | | | $3,077.9 |
| Cumulative Cash Outflow by Defendant | | | | $2,200.0 |
| Cash on Cash Multiple to Defendant | | | | 1.40x |
| IRR to Defendant | | | | 21.4% |
| *Annual Summary (Calendar Years)* | **2020** | **2021** | **2022** | **2023** |
| **Beg Principal Balance** | - | **$2,117.0** | **$1,548.9** | **$652.7** |
| Balance Transfer to Refinance Legacy Credit | $2,200.0 | - | - | - |
| Fees Charged by Defendant | $218.0 | - | - | - |
| Fee Reversal | ($70.0) | - | - | - |
| Interest Expense | - | $151.9 | $483.8 | $94.2 |
| Cash Payments made by Plaintiff | ($231.0) | ($720.0) | ($1,380.0) | ($746.9) |
| **End Principal Balance** | **$2,117.0** | **$1,548.9** | **$652.7** | **-** |

82.78.  Figures shown in the exhibit above reflect actual cash flows through Feb-21, and thereafter are based on projections for the time it takes to repay principal in full, assuming constant interest at a per annum rate of 22.24% APR starting in August 2021 with flat $60 monthly payments. Based on these assumptions, the outstanding balance would be repaid by December 2023, and the Defendant would have extracted an annualized rate of return of ~21%.

83.79.  The attractive returns are a product of (i) penalty APRs of 24.99% imposed after the promotional period, and (ii) elimination of refinancing risk of the account by impairing the victim's credit to such an extent that the ability to obtain credit elsewhere is no longer feasible.

84.80.  The damage this does to our overall economic productivity is severe when considering the potential scale of the Defendant's operations.

85.81.  Plaintiff seeks immediate injunctive relief from this Honorable Court. Plaintiff is not the only victim of these activities and the harm can have potentially permanent consequences when considering missed employment opportunities as a result of poor credit history.

86.82.  Most importantly, Defendant distorts the credit profile for reasons that are not financial irresponsibility but rather are the result of deceptive and unfair practices, which indeed affect commerce. While it may be implied that consumers do not have a private right of action for suits involving unfair and deceptive acts affecting commerce, it is nevertheless essential to include these violations so that they can be brought to the fore and Plaintiff strongly urges the FTC to take action to prevent M&T from causing harm to commerce.

## Prayer for Relief

1.  Actual, punitive and statutory damages as determined by jury trial.

2.  Action for equitable and declaratory relief.

3.  Recovery of costs and attorney fees.

4.  Any other relief that is necessary for justice.

**Trial by Jury is Demanded.**

| Schedule of Damages | |
|---|---:|
| *Statutory* | |
| FCRA | $1,000.0 |
| TILA | $5,000.0 |
| *Actual* | |
| Emotional, Mental Anguish, and Fees | $60,000.0 |
| Economic - Lost wages | $100,000.0 |
| *Punitive* | |
| FCRA 1681s-2(b) | $5,884,495.2 |
| **Total** | **$6,050,495.24** |