IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
-------------------------------------------------- x
BRYCE CARRASCO,                                    :      Civil Action
         Plaintiff,                                :
   v.                                              :      Case No. 21-532 (SAG)
M&T BANK,                                          :
         Defendant.                                :
-------------------------------------------------- x
```

**PLAINTIFF'S INTERIM REPORT ON THE PROGRESS OF DISCOVERY**

Plaintiff demands that discovery end immediately and also would like to provide notice that he plans to file a motion for summary judgement on all matters so that this case can be fully disposed of by the Court. Defendant's counsel of record, Brian Moffet, has violated the Federal Rules Of Civil Procedure. The defendant has had their chance to obtain discovery and the plaintiff does not need any additional evidence in order to prevail in summary judgement. Therefore discovery must end as the plaintiff states that he can and will file a properly supported motion for summary judgement and that the defendant is unable to create a genuine issue of material fact. Right now, I am stating that I am no longer going to engage in any communications with Brian Moffet or M&T without the Court being directly involved and without the matters being heard in open court as is my right under the Constitution. I do not think the Court took into account the possibility that Brian Moffet could not be trusted with the responsibility he had in facilitating discovery, but I do think the Court could have been more involved considering the fact that I am alone and going against such a large corporation. That is maybe one lasting takeaway that can be used to improve the local rules for discovery in self-represented cases. There was no accountability for anything Brian did and I felt cornered, which

1

probably is the natural outcome when a self-represented party has to try and cooperate with a lawyer during discovery. The Court should not allow the lawyer to have free reign because it creates an unfair process and is subject to easy abuse by lawyers. I suspect that many lawyers would have probably acted the way Brian did in his situation, but that does not make it acceptable and he still could have handled himself with some more class but I understand that he is just doing his job but he could have at least tried to be nice to me which would have made me much less negative in how I am now going to describe his improper actions throughout the course of this discovery process.

## I. Running List of Improper Conduct by Brian Moffet

- Engaging in tactics aimed at intentionally delaying the process of discovery in ways contrary to the spirit of the Federal Rules of Civil Procedure.

- Failing to properly follow the notice requirements of Fed.R.Civ.P. 45(a)(4), by serving a third party subpoena on Oppenheimer & Co. Inc. on May 28, 2021 before notifying me that he intended to do so.

    - While plaintiff did not object to the form or substance of the subpoena addressed to Oppenheimer, he did make note of Mr. Moffet's violation of the notice requirement of Fed.R.Civ.P. 45(a)(4), which plaintiff originally had no intention of making an issue about, but now after multiple demonstrations of bad faith in this discovery process, plaintiff changed his mind and now makes an issue, and making a note of an attorney's professional showing of impropriety, dishonesty and lack of sincerity in his treatment of the adverse party in this civil action.

- o Plaintiff's personal experience dealing with Mr. Moffet has been extremely demoralizing so far. Despite plaintiff trying his best to respond to the defendants discovery requests, Mr. Moffet consistently makes rude and condescending remarks in his emails to the plaintiff, which make him feel like he does not deserve Mr. Moffet's attention or respect. While I admit that I am young and have no professional legal experience or training prior to filing this action, I do not think Mr. Moffet is acting in good spirits when he says mean-spirited things to plaintiff, in addition to boasting of his superior knowledge of civil procedure based on a thirty-year career working as a professional lawyer.

    - ▪ Mr. Moffet's treatment has hurt the plaintiff's feelings on multiple occasions and made him feel like an outsider who does not belong. While I certainly recognize the accomplishment of sustaining a legal career for as long as Mr. Moffet, I do think that he should be less mean-spirited and more humble in dealing with other parties in litigation. The adversarial process naturally fosters a combative spirit, so I think it should be that parties involved in an adversarial process conduct themselves in a way that is not intentionally mean-spirited or meant to hurt the feelings of someone else because they are in a superior position by way of knowledge or career experience.

- o The plaintiff feels hopeless and sad because of the way Mr. Moffet has treated him during these proceedings. These are real emotions – which victory demands be ignored or otherwise suppressed by the plaintiff in his thoughts and focus – but they are nonetheless still important because doing so helps to ensure the sound

administration of justice and fair treatment of all parties to a civil action. I think Mr. Moffet should learn from this and be more pleasant and humble in the future so he does not spark the ire of his adversary which is not likely in his long term best interests from a career perspective. One should always be aware of basic principles of human decency and respect rather than just only thinking about winning at all costs because in this case it was not worth it for Brian to act the way he did, and it would have been the wiser career decision to exercise more discretion in his interactions with me. Of course, if he possessed greater skill as a lawyer generally he would have recognized how hopeless this case is for M&T and then done the prudent thing which would have been to do the bare minimum to earn a decent fee for providing his services. I think human beings should generally treat each other with a level of respect consistent with the collaborative nature by which humans have prospered since the beginning of time.

- Engaging in intimidation tactics seeking to take advantage of plaintiff's lack of legal experience to delay the progress of this action and prevent plaintiff from developing his case through full access to the discovery devices provided to all parties by the Federal Rules of Civil Procedure.

    o For example, on June 26, 2021, the plaintiff sent Mr. Moffet various emails relating to discovery. Since the emails sent by the plaintiff were unorganized and sent in an ad hoc manner, he offered an apology in advance for bombarding his inbox, but explained that since the plaintiff has no assistance in preparing his responses and discovery requests, it is impracticable to format everything neatly because it would simply take too much time. Plaintiff believes that since he is a self-represented

4

litigant, Mr. Moffet should be more understanding of the immense workload associated with prosecuting a case in federal court and at least be somewhat empathetic to the plaintiff's circumstance in the current action. Mr. Moffet has consistently belittled the plaintiff, who is 24 years of age, self-represented and is prone to mistakes as he has no familiarity with litigation procedure prior to this action.

- Mr. Moffet sent an email dated June 28, 2021, which the plaintiff perceived as rude and which hurt his feelings. The contents of the email are less important but they made a condescending reference to plaintiff's various emails sent over the weekend despite the plaintiff trying to explain in advance that he is not intentionally being unorganized or informal but rather he does not possess the resources to format papers and communications like a typical lawyer does.

- On May 6, 2021, the plaintiff served his first discovery request on the defendant which requested production of "my original account application for the credit card", and specified further that the request was for "the application I filled out on July 17, 2020", and to provide additional guidance by referencing a blank application, "it should look similar to ECF 17-2 but filled out in my handwriting." Plaintiff further stated in the same request that he was "concerned that this document has not been retained by M&T since they have never responded to my request for a copy of the application." *See* ECF 28-4.

  o In addition to the request, plaintiff suggested a good time for physical inspection would be the week of 5/10/2021 – 5/15/2021 and that the plaintiff would make himself available at a convenient time for the defendant's counsel. Plaintiff asked

as a courtesy, if he knew that this document did not exist or could not be produced by M&T, to notify him as soon possible that the defendant would not be able to produce the document in response to the request in the spirit of avoiding unnecessary delay and ensuring an efficient discovery process. Plaintiff then stated that "to wait 30 days after reading this email just to tell me that the application cannot be produced would significantly decrease my confidence in the prospect of conducting discovery without direct court oversight. In any event, I expect to receive a response to this request within 30 days of sending this email pursuant to Fed.R.Civ.P. 34. Signed and served 5/6/2021."

- Moffet responded to this request with an email on 6/7/2021, 32 days after serving the request, a response which stated that "M&T does not have any documents responsive to Request No. 1."

- First, Moffet is literally did everything he could to prolong his response to the last possible day which would not be an explicit violation of the Federal Rules of Civil Procedure. In addition to being unprofessional and immature, it is a slap across the face and literally send the message that "I am intentionally not going to be transparent and there is nothing you can do about it."

- Furthermore, I refuse to engage with Brian Moffet in any way at any time other than in open court in front of the presiding judge of this case. If Moffet wants my testimony, I am happy to testify in open court at a hearing in front of the presiding judge of this case. Otherwise, I revoke my agreement to be deposed on July 8th, and further request that Moffet never

> speak to me outside of hearings, trials or other conferences where the presiding judge is present and the matters are being heard in open court pursuant to the procedural due process rights guaranteed by the fourteenth amendment of the United States constitution.

- Brian has shown that he is simply a low-caliber, second-rate attorney with mediocre intelligence.

- In addition to exposing Moffet's low level skillset, the General Counsel for M&T may be even less suited to make competent decisions and has repeatedly made inexplicable decisions which are irrational. Laura O'Hara is maybe one of the most unqualified people to ever exercise as much authority as she currently does at M&T. If she was qualified whatsoever to be in her current position, she would have never allowed the events which led up to me filing this lawsuit to occur. What is unique in this case is how easily M&T could have avoided all of this simply by making an obvious common sense choice to fix my report and wash their hands of the matter. Any seasoned corporate attorney, finance professional or anyone with basic common sense would have realized the rational thing to do would have been to just remove the adverse reporting because I had a reasonable basis, provided notice right away, made payments just to get them to leave me alone, and paid off the debt in full before twelve months had even lapsed since I opened the account. Keep in mind that I opened this account pursuant to a promotional offer, which is supposed to serve as a marketing tool to win market share from competing banks and introduce prospective customers to M&T, and then retain the customer for the associated repeat business they bring because they are satisfied with the customer service of M&T which is one of the fundamental principles of any successful banking operation, which is

7

a heavily customer service oriented market. My mother, who is a nurse, even recognized the total lack of any logic to anything M&T did in dealing with this matter. Laura O'Hara undoubtedly is the decision maker and thus she made the decision at the final hour that M&T was going to hold the line and refuse to make any reasonable changes to my credit report. I think it is worth considering just how incompetent the decision maker was in handling the situation, because it is pretty shocking. This is one of the largest companies in the United States, and they have someone making decisions like this. It is hard to even grasp how someone so ill-equipped obtains such authority at such a massive enterprise. Like I have said earlier, Laura O'Hara and the rest of the managers at M&T need to be exposed for the sake of capitalism. None of these executives have the slightest clue how to run this business, and hence the reason I am suspicious of the controversial series of events which occurred following Robert Wilmers death on December 17, 2017 and the transition of management and executive control to Rene Jones on December 20, 2017 and I think it merits close scrutiny. The approval process by the board of directors which was claimed to have occurred was only three days following the unexpected death of the CEO; this type of turnaround in making such an important decision is incredibly unlikely and normally a company would have a longer transition period, especially when there is not a designated CEO in the event of an unexpected death. When I think about it more, something is just not right about the way Rene Jones assumed his position. Unexpected deaths of a Chairman of the Board and CEO with full control of a company is not something any company likely has plans in place for; and thus the death of Robert Wilmers and subsequent transition to Rene Jones and his co-conspirators controlling the company likely would not have been handled in such an expeditious manner under

normal circumstances, especially considering that I could not find any mention in conference calls or annual reports written by Wilmers prior to his death which suggested that Rene Jones was the shoe-in successor once he retired or stepped away from his active involvement with the company. This critical transition period must be closely investigated to ascertain whether Rene Jones was lawfully appointed to the position of CEO, or whether he assumed his current role using unlawful methods and without authority to have assumed the position he now holds. I have never seen a company so poorly managed and it just does not make any sense how it happened but I think it comes down to this simple fact: Rene Jones illegally seized control of the company following the death of Robert Wilmers on December 17, 2017, and then quickly instituted unilateral changes to corporate charter agreements to secure his position without risk of being exposed for his scheme and without any requirement for shareholder approval, and that is how the company has devolved into its current state. There is no other explanation for the rapid level in the deterioration of M&T Bank's business and this is the only thing that makes sense after reviewing all of the documents filed with the SEC going back to 2000. I think, it might be possible that Rene Jones was never actually appointed to his current position and was never a legitimate CEO of this company and rather took control of it illegally. I challenge him to prove otherwise. And this case is honestly as simple as it seems, and the circumstances are so idiosyncratic that this happened to me and that I prosecuted this case and exposed these people. It is pretty crazy but I do think everything happens for a reason. /s/Bryce Carrasco