**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

---------------------------------------------- x
BRYCE CARRASCO, :
Plaintiff, :
v. :
M&T BANK, :
Defendant. :
---------------------------------------------- x

Civil Action

Case No. 21-532 (SAG)

**PLAINTIFF'S REPLY TO M&T'S RESPONSE**

While I can respect Mr. Moffet's will power, I now feel obligated to supply the Court with the second half of the interim response which contains a more thorough analysis of Mr. Moffet's and the Plaintiff's emails and also includes a more detailed examination of the precarious condition of M&T Bank's operations, including some of their unethical accounting standards, misstatements in SEC filings as to certain stock based compensation arrangements which for all intents and purposes would constitute a material and knowing misstatement and being that Rene Jones certified the reports, if it is confirmed that these misstatements regarding the nature of the "stock options" which M&T executives have been using to pay themselves per diem compensation through an active program of equity dilution and illicit off balance sheet transactions with shell companies with no assets or operations such as Bayview Lending all the named "high ranking officers" which is really surprising choice of words considering the backdrop. Brian continues to show that he does not quite comprehend the gravity of the allegations made by the plaintiff because if he did he would be wise enough to probably just leave the matter alone, but his response now makes me offer to the Court a scathing review of M&T Bank's management team, which includes possible crimes such as the Sarbanes Oxley act

which carries a prison sentence of up to 20 years for knowingly certifying misleading financial reports. Brian's willingness to test the plaintiff was not in the best interest of his client as I am now forced to provide my analysis of M&T potential widescale fraudulent activities over the past three years. Rene Jones, Darren King, Kevin Pearson, Richard Gold and Laura O'Hara are the main conspirators and it has become increasingly clear these are dark individuals who should likely be enjoined and restrained from participating in society as they are dangerous to the citizenry and represent a threat to the economic interests of the state.

I also categorically refuse to step foot in Moffet's office and am willing to face whatever consequences that entails. I refuse to entertain any of his gimmicks or let him try to fabricate a set of facts which I guess he thinks could potentially allow him to provide a defense to this action, and surprisingly he still has the audacity to say he is prepared to file a motion for summary judgement. Such a motion by M&T would represent a bad faith motion, once again in violation of the Federal Rules of Civil Procedure, which apparently don't seem to apply to Brian in his opinion. This would be another sanctionable act by the defendant's counsel for submitting a motion solely for the purpose of delay, and the Court would be well positioned to adjudge him in contempt for filing such a motion for the purpose of the delaying a determination of these proceedings. The amount of evidence which the plaintiff possesses is overwhelming and Moffet should be noticed that whatever claim he tries to make, I will likely have admissible evidence directly disproving whatever he plans to state, because any set of facts he tries to construct will be flimsy and without any factual support which would justify him to file a motion for summary judgement.

I cut the following portions of the interim status report which discuss in depth the email correspondence between the plaintiff and Moffet and also briefly review red flags on M&T's

Form 10-K and Proxy Statement for the fiscal year ending December 31, 2020. Accordingly, the plaintiff sets forth the remainder of the interim status report which was excluded from the first report filed with the Court earlier today:

***** REVIEW OF SELECTED EMAIL CORRESPONDENCE*****

Mr. Moffet sent an email to the plaintiff at 10:59 a.m. on Monday, June 28th in response to various emails I sent over the weekend. The entirety of the email follows:

> Dear Mr. Carrasco –
>
> Among the more than twenty (20) emails you sent me between Friday morning and Saturday morning were requests to take the depositions of four high-ranking corporate executives at M&T Bank Corporation – the parent company of Defendant M&T Bank. Specifically, you are requesting to depose: (1) Rene Jones, Chairman and Chief Executive Officer; (2) Kevin Pearson, Vice Chair; (3) Darren J. King, Executive Vice President & Chief Financial Officer; and (4) Laura O'Hara, Senior Vice President and General Counsel. None of these individuals have any direct knowledge – let alone personal knowledge – of any relevant facts nor were any of them involved in this matter. Your emails requesting their depositions support this reality as do your answers to interrogatories.
>
> For example, you indicate that you want to depose Messrs. Jones and King because they each signed the publicly available financial statements of M&T Bank Corporation. However, the internal controls at and financial reporting of M&T Bank Corporation and its subsidiaries are not relevant to your claims under the Fair Credit Reporting Act or the Truth in Lending Act. You do not necessarily dispute this but rather contend that these senior corporate executives have knowledge of M&T Bank Corporation's financial condition, which is relevant to your claim for punitive damages. While M&T believes that discovery on the issue of punitive damages is premature, the financial position and/or net worth of M&T Bank Corporation is publicly available. You do not need to burden Messrs. Jones and King with a deposition for this information. Indeed, your emails indicate that you already obtained M&T Bank Corporation's financial statements, which is more than sufficient at this time.
>
> Similarly, you indicate that you want to depose Ms. O'Hara regarding certain of her individual transactions of M&T Bank Corporation stock dating back to 2017, but these transactions – which are publicly disclosed in SEC Form 4

> filings – have nothing to do with the issues in this case. The Amended Complaint raises three discrete issues: (1) whether M&T was obligated to report that you were disputing the underlying credit terms of the credit card; (2) whether M&T posted the credit card agreement governing your credit card account on the Internet; and (3) whether a certain on-line advertisement for an M&T credit card contained adequate disclosures. Ms. O'Hara's acquisition and/or disposition of M&T Bank Corporation stock is irrelevant to all three issues. You also indicate that you want to depose Ms. O'Hara because "she is a key decision maker in M&T's legal division." While Ms. O'Hara is the General Counsel for M&T Bank Corporation, she had no personal involvement in this matter and therefore, does not have knowledge of any relevant facts.
>
> And, as for Mr. Pearson, you do not provide any reason or basis for wanting to depose him.
>
> Your request to depose these senior corporate executives is an abuse of discovery and amounts to nothing more than harassment. Accordingly, M&T requests that you withdraw the deposition requests. To the extent you refuse or decline to do so, M&T will seek the appropriate relief from the Court, including a protective order. Please let me know if this will be necessary. In the meantime, attached please find the notice of your deposition for July 8th as previously agreed upon. A hard copy of the notice will be sent by mail.
>
> Thank you.
>
> Brian
>
> ---

To contextualize the email sent by Moffet, I will provide a chronological narrative of the emails I sent to Moffet, starting with an email sent by me at 12:30 a.m. on the morning of Friday, June 25th:

> Mr. Moffet, please find attached plaintiff's responses to defendant M&T Bank's first set of RFAs. Served 6/25/2021.
>
> ---

I sent another email to Moffet at 6:18 a.m. the same morning:

> Mr. Moffet,
>
> Attached find my sworn affidavit which provides a particularized statement of the damage I have incurred as a result of M&T's criminal conduct. Simply put, M&T has completely ruined all of my prospects for a successful career in the

financial services industry and what they have done has literally robbed me of a career which I loved. My last day of employment with Oppenheimer was 5/31/2021 which you will find out shortly based on the documents Oppenheimer discloses in response to your subpoena. What their disclosures will not show is the toll this has taken on me personally over the past six months. I am sure you can tell by now that this lawsuit has utterly consumed my life because honestly at this point I have nothing else due to false and misrepresentative information published by your client regarding my credit history. As a professional in the financial services industry, credit history undoubtedly plays a critical role in evaluating the credentials of my employment and with the way my credit score is being reported currently, I am unemployable in the finance industry. I was never bound to make any minimum monthly payment and if you honesty analyze the facts of this case you will come to the same conclusion. I had no reason to believe, based on the representations made by M&T when I opened the account, that I would be expected to make any minimum monthly payments for the first twelve months of the account. I had the exact same type of promotional account with Bank of America and I was under no obligation to make the minimum monthly payments of that account and therefore it is more than reasonable that I had expected nothing materially different under my account with M&T Bank. I asked for documentation and they failed to provide notice of such an obligation, despite my direct requests in July 2020. Nevertheless, I have struggled over the past six months dealing with this issue and it is solely based on M&T's violations of the fair credit reporting act. Regardless of what you receive from Oppenheimer, I challenge any one of my coworkers to testify that I was anything but exceptional at my job prior to January 2021 when I started having to deal with the false information on my credit report which was solely due to M&T misrepresenting the credit terms I would be subjected to and then failing to uphold their statutorily mandated obligations under section 1681s-2b of the FCRA. I received $45,000 bonus in August 2020 in addition to my regular base salary at the time of $80,000 which reflects my high level of performance as analyst relative to my peers. Anyone who worked with me would be unable to testify under penalty of perjury that I was not performing at an above-average level. I sent you my performance review from December 2019 which highlights my work performance. Below are a few quotations directly from my colleagues:

"Bryce is a great asset to the Rental Services team and performs well above the level of a first year analyst today."

"Demonstrates an interest in learning and consistently goes above and beyond to meet expectations and client deliverables."

"Bryce is a remarkably intelligent person with a real passion for finance."

> Now consider the fact that this has all been stolen by M&T's gross indifference and lack of consideration even after they failed to even proffer the application which I completed with respect to the underlying credit obligation. Where do you think the scales of justice will tip at the end of the day? The fact that my credit score is still 590 is an assault on my integrity and trustworthiness and it makes me simply unemployable in any financial services role and therefore the lost earnings continues to accrue, for which I will do everything to make sure your client is held accountable. The damage your client has done to my self esteem and sense of purpose is beyond repair and that is nothing but my honest testimony which I will stand before any tribunal and argue to the truth thereof. My credit history is the only objective benchmark by which a disinterested third-party could evaluate my honesty and M&T has destroyed it. The damage that has done especially at this early stage in my career cannot be encapsulated by a dollar figure.
>
> I swear that the foregoing is true and to the best of my knowledge. Under penalty of perjury. /s/Bryce Carrasco
> ---

At 6:24 a.m. the plaintiff forward a number of email messages that were responsive to M&T's requests for production of documents. These emails have been omitted as most of them have been filed on the docket already. At 6:36 a.m. I sent another email which included the resume of my mental health doctor who treats me for ADHD, Dr. David Goodman, and I said that Moffet is free to subpoena him for any records if he wants to obtain information related to my claimed damages for emotional distress. At 6:49 a.m. I sent another email which attached a scanned copy of the marketing brochure I retrieved from an M&T branch office which has also already been filed on the docket. This brochure is the evidence of plaintiff's claim that M&T violated 15 U.S.C. § 1663 by issuing marketing materials without including the minimum or fixed amount which could be imposed. The Court is in a position to adjudicate this claim as it is a question of pure statutory interpretation and thus properly suited for a judgement as a matter of law. At 6:56 a.m. I sent an excel spreadsheet which contained all of the phone calls for my cell phone since July 2020 and extending through April 2021 as evidence of the calls I made to various numbers

provided by M&T, as well as the numerous phone calls I made to Experian, Trans Union and Equifax beginning in December of 2020.

At 7:02 a.m. of the same day, I sent another email to Moffet which is copied verbatim below:

> Please let me know if you have any questions as I tried to provide documents and information responsive to your discovery requests but I may be missing something so please do not hesitate to let me know if there is anything else which you need in response to your discovery requests. I do not have the resources to format everything neatly and am trying my best but I am limited due to the fact that I do not have any help in preparing the responses. I apologize for blowing up your inbox but I figure it is better to provide more than less. Thanks.
> ---

At 8:30 a.m. I sent another email to Moffet, which was my first message in reference to depositions I was requesting to take:

> Mr. Moffet, I hereby give notice that I would like to schedule a deposition with Rene Jones and Kevin Pearson immediately after our deposition on July 8th. Thank you. Signed by Bryce Carrasco.
> ---

Another email was sent shortly after as a supplementation to the first request for depositions, which was sent 8:35 a.m. the same morning:

> And [I want to schedule an additional deposition with] Elizabeth Bailey. Thanks.
> ---

Mr. Moffet responded on Friday morning in an email which I received at 11:17 a.m., copied verbatim below:

> Mr. Carrasco –
>
> I am not in the office today and will respond to your deposition requests when I return on Monday.
>
> Thank you.

> Brian
> ---

Plaintiff's replied at 4:36 p.m. on the same day, Friday, June 26th:

> Ok that works. One last change upon closer examination of the audited financial statements. Please note that I would also like to depose Darren King.
>
> Also – if you could still forward Oppenheimer's responses to the subpoena when received that would be much appreciated. Feel free to have one of your colleagues email me if you are out of pocket today. Thank you.
> ---

***

Sidebar: for context as to plaintiff's next cohort of emails sent on Saturday morning (June 26), it is necessary to review a settlement offer which M&T made via an email sent by Brian Moffet to plaintiff on May 28th:

> **Subject**: Carrasco v. M&T – For Settlement Purposes Only – Without Prejudice
>
> Mr. Carrasco –
> M&T authorized me to make the following settlement offer: M&T will pay you $1,500 and request deletion of the trade line associated with the credit card in exchange for the dismissal with prejudice of the pending litigation and a general release of all claims. Please let me know if this is acceptable.
> Thank you. Brian

Plaintiff replied in email sent to Moffet on the same day (May 28th):

> Mr. Moffet, thank you for reaching out and providing this information. Unfortunately, I find your client's offer inadequate to settle the pending civil action; a few reasons readily come to mind. Compared with precedent cases involving similar FCRA claims in this circuit, $1,500 would appear to be far too low to entertain a settlement at the current stage of this case. I stated an amount which I believe is appropriate for settlement in part 3 of my rule 26 initial disclosures, which may help to serve as guidance. If you believe my analysis is misguided I would welcome any feedback you might have, as I certainly could be wrong. Thank you again. Bryce.
> ---

Moffet then responded in another email sent to plaintiff on the same day:

> Mr. Carrasco –
>
> Thank you for the timely response. While I am not clear on which "precedent cases" you are referring to in your email, M&T believes that its settlement offer is more than fair and reasonable under the circumstances. Given that you apparently disagree and are demanding $6 million to settle the matter, I do not believe further settlement discussions will be a productive use of anyone's time. Following this email, you will receive another email with M&T's written discovery.
>
> Thank you.
>
> Brian
>
> ---

End of Sidebar.

***

I will now return to the next cohort of emails that I sent to Brian Moffet on Saturday morning on June 26th. The next email sent by Plaintiff was a request made to Moffet to identify the person who authorized M&T's first settlement offer which was made on May 28th. The first email in the next cohort of emails was sent by the plaintiff to Brian Moffet at 6:33 a.m. on Saturday, June 26th:

> Mr. Moffet, can you tell me who the person is that authorized your first settlement offer. I would predict it is the same individual who thought it was a good idea to not fix the credit report in the first place. I need to depose this person. Does she think she is doing a good job? I'm genuinely curious. I know it is not Elizabeth Bailey. I am looking for the person who Elizabeth reports to. Whoever it is needs to be exposed for the sake of capitalism.
>
> ---

Plaintiff sent another email to Moffet at 6:50 a.m. (June 26):

> It has to be Laura O'Hara. I absolutely need to take her deposition. I do not need to depose Elizabeth Bailey. So essentially the two people I need to depose

> on July 8th are Rene Jones and Laura O'Hara. Thanks.
> ---

Plaintiff sent another email to Moffet at 7:48 a.m. which included a memorandum in support of his request for deposition testimony from Laura O'Hara and Rene Jones. The email is copied verbatim below:

> Please find attached my statement supporting deposition. This also represents my good faith attempt in answering any objections you might have had so this also constitutes my efforts to handle any potential discovery disagreement which may arise, although I do not expect that the scheduling of these depositions will be a problem as they are justified in this civil action for the reasons set forth in the attached memorandum. Thanks.
> ---

The memorandum was approximately five pages, double-spaced, and described the reasons why deposition testimony was justified for both O'Hara and Jones. In the spirit of full disclosure, the memorandum is stated below, verbatim:

> This discussion and analysis seeks to clarify the analytical framework utilized in forming an estimate of the appropriate punitive damages award in the above-styled action against M&T Bank Corporation. A sound valuation methodology is critical in assessing punitive damages, especially when larger corporations are involved. The core principle guiding the sound fundamental analysis must maintain the proper perspective with a keen focus on the relative nature of corporate finance. First, the legal and regulatory framework will be reviewed, followed by an analysis of precedent cases relevant in establishing an appropriate benchmark, starting with Saunders v. Branch Banking and Trust Co. of Va., 526 F.3d 142 (4th Cir. 2008) to lay the foundation which is built upon by the application in the more recent case of Daugherty v. Ocwen Loan Servicing, 701 F. App'x 246 (4th Cir. 2017). These two cases provide an appropriate universe of analogous precedents for benchmarking punitive damages imposed against furnishers who willfully violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2(b) in the Fourth Circuit Court of Appeals. The valuation methodology employs a relative analytical framework based on a metric which accounts for relative differences in the asset base of the companies involved, which is achieved by calculating the percent ratio of punitive damages awards to the net worth, or shareholders' equity of the defendants in Saunders and Daugherty, and then taking the average of those two percentages and applying it to the reported book value of shareholder's

equity of M&T Bank as of December 31, 2020. The net worth, which is often used interchangeably with the shareholders' equity line item on the balance sheet, is pulled from the most recent audited financial statements, filed with Securities and Exchange Commission (SEC) on Form 10-K, pursuant to the disclosure requirements set forth in the Securities and Exchange Act of 1934.

Sarbanes-Oxley was enacted in 2002 after the bankruptcy of Enron which exposed the plethora of corporate accounting gimmicks which obfuscated the financial position of large publicly traded corporations. The Sarbanes-Oxley act is also known as the "Public Company Accounting Reform and Investor Protection Act" and "Corporate and Auditing, Accountability, Responsibility, and Transparency Act."

The corporate CEOs and CFOs are directly responsible to ensure SOX compliance, and they are also obligated to assure that financial records are accurate and that reports submitted to the SEC are accurate. Failure to comply renders the executives personally liable. The act added mandatory financial disclosures including insider trading and off balance sheet transactions.

As well, the act specifies that the CEO must be the one to sign the corporate tax return – and is therefore responsible for any misstatements to the IRS. Attached as Exhibit A is a signed certification regarding the financial statements for M&T Bank Corporation for the fiscal year ending December 31, 2020. Rene Jones signed the statement under 18 U.S.C. § 1350, which was passed as part of the Sarbanes-Oxley Act of 20020. The statute sets forth the CEOs obligations to certify financial reports, and sets forth the following requirements:

[full text of 18 U.S.C. § 1350 followed and is omitted from this restatement]

Plaintiff must be given the opportunity to obtain discovery through deposing Rene Jones because he is responsible for overseeing the procedures and controls in preparing M&T Bank's audited financial statements, and it is necessary to obtain his testimony as to the financial position of the defendant M&T Bank so that the factual record can be developed as it relates to the building a case for the proper levy of punitive damages in the event the court finds defendant liable for willful noncompliance of the FCRA. Rene Jones is the party who plaintiff has the right to examine through deposition testimony or else the question of the defendant's net worth could be subject to questions once discovery concludes and the case proceeds to the next stage. This would be impermissible curtailment of plaintiff's right to discovery as a civil litigant.

The purpose of punitive damages is to punish and deter the wrongdoer from repeating the same actions in the future, and therefore the analysis as to the appropriate amount necessary to achieve the twin purposes of punitive awards

requires consideration of a defendant's financial position and net worth. See e.g., TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 462 n.28 (1993) (noting that it is well settled that a defendant's net worth is typically considered in assessing punitive damages); Johansen v. Combustion Engine Inc., 170 F.3d 1320, 1338-39 (11th Cir. 1999) (allowing $4.35 million punitive damages award because a larger award is needed to attract the attention of large corporations); accord Saunders v. Branch Banking & Trust Co. of VA., 526 F.3d 142, 154-55 (4th Cir. 2008).

Plaintiff also must be provided the opportunity to depose Laura O'Hara as she is a key decision maker in M&T's legal division and therefore it is necessary to obtain testimony on the stance she has taken with respect to plaintiff's account and underlying legal rationale for failing to uphold her employer's statutorily mandated obligations. The Eleventh Circuit Court of Appeals recently issued instructive guidance as to the broad scope of discovery and the right of civil litigants to obtain full discovery in civil actions in the United States trial courts. The opinion is attached hereto. [*See* Adkridge v. Alfa Mutual Insurance Company, No. 19-10827 (11th Cir. June 21, 2021).].

--- (End of Memorandum)---

Now that the relevant emails have been reviewed, we can return to the running list of improper conduct by Moffet and the overall inadequate progression of the discovery stage of this civil action.

M&T continues to stall in their responses to the plaintiff's discovery requests and has demonstrated an overall unwillingness to cooperate with respect to plaintiff's right to obtain full discovery. The plaintiff has become disillusioned with any hopes that he had of conducting further discovery in a way that will yield anything that would be of material importance to the Court's adjudication of this lawsuit in its entirety. It has become clear that a jury trial would be meaningless in resolving this case because there are no triable issues of fact which are in need of finding so as to require a full jury trial. Since the defendant is unable to establish a genuine dispute with respect to any material fact, the Court must take matters into their own hands

pursuant to Rule 56 of the Federal Rules of Civil Procedure. At present, there exists no genuine issues of material fact which can be established by M&T and therefore it is necessary to enter judgement on the two outstanding claims resting before the Court, as it is clear that the Plaintiff is now entitled to judgement as a matter of law.

Several conclusions can be drawn from Moffet's recalcitrant tone in the emails sent Monday, June 28th. The first conclusion that can be drawn is that M&T is simply unable produce any evidence to support their defense and is now seeking to engage in stalling tactics to delay the outcome which the facts and the law require in this case.

Brian Moffet sent another email to plaintiff at 5:40 p.m. on Monday, June 28, which I hope is the last email I will ever receive from Brian Moffet as I am now reaching my physical limits of exhaustion and I want to move on with my life. The game which Moffet is now seeking to play is one which plaintiff categorically refuses to participate in. The email is restated verbatim below:

> Mr. Carrasco –
> Attached please find M&T's Responses to Plaintiff's Second Set of Request for Production of Documents.  M&T anticipates making its initial production later this week and will provide those documents electronically.  At that time, M&T also will produce documents responsive to Plaintiff's Third Set of Request for Production of Documents, which are the documents that my office received in response to the subpoena served on Oppenheimer.  There are a number of requested documents – namely policies and procedures -- that are confidential and proprietary and M&T cannot make those documents available for inspection until we have a confidentiality order signed by the court, protecting the documents against disclosure to third parties.  I hope to be able to provide you with a draft confidentiality order tomorrow.  Once we agree on the language, we can provide it to the court for approval.  Upon approval, M&T will make the documents available for inspection at my office during regular business hours.
>
> A hard copy of the attached responses will follow by regular mail. If you have any questions, please let me know.  Thank you. Brian

The responses will be covered in a different section but in summary, M&T did not produce any documents and despite it being over 30 days since I initially served the requests referred to; Moffet continues to dictate terms to me while concurrently violating the Federal Rules of Civil Procedure and falsifying previously made statements by the plaintiff to twist the narrative and manipulate the record. M&T and their counsel treat the plaintiff as if he is an afterthought and not worth even a mere scintilla of his respect.

Moffet continues to manipulate the narrative of our interactions which is frustrating because he is very selective as to disclosing facts and continues to provide “half-truths” for reasons plaintiff cannot figure out, as it was clear he lost this case when I filed ECF 30. Indeed, the subsequently filed Answer to the Complaint which did not seem to make a serious effort in building a defense and seemed to be more of a formality that he had filed it rather than as a legitimate component in building any defense, which is impossible to do without lying or manipulating evidence, which Plaintiff is concerned about when it comes to anything M&T offers, for reasons that I hope would be self-explanatory when evaluating the current situation.

The discovery process has been inherently unfair and provided benefit only to the Defendant and prejudiced the plaintiff by creating numerous obstacles and requirements before using discovery, while the counsel for the defendant has been able to reap all the benefits and rights typically available to all parties during discovery, and it has effectively been open season for the defendant while the plaintiff was forced to withstand bullying, intimidation, and fraudulent manipulation of my own statements to fit a fabricated narrative which the defendant thinks will constitute a defense in the face of zero evidence, no witnesses, and executives who are scared to have their deposition taken by the plaintiff.

## III. M&T HAS A CLEAR HISTORY OF DECEPTIVE PRACTICES AND UNSCRUPULOUS CONDUCT

It appears as though M&T, once a proud institution and pillar of the community, has devolved into a house of cards dressed up as a bank. Which leads me to the subject of the business fundamentals and the questionable activities of Rene Jones and his three cronies, Kevin Pearson, Darren King, and Richard Gold, as well as the questionable character profile of the chief legal executive, Laura O'Hara, who seems to be afraid of the plaintiff taking her deposition, as evidenced by the explosive reaction to his request for depositions, which is not the likely reaction for a person who runs an honest business and has a clear conscience. Honestly, the reaction of M&T to the deposition request is all the evidence I need to show that this is an entity which can fairly said to be characterized by dishonesty, predatory lending, possibly fraud, suspicious accounting practices, and unsavory executives whose primary motivation is self-enrichment and indifferent to its current scorched earth policy when it comes to shareholder value. I have read hundreds, maybe thousands, of 10-K's filed by a wide variety of companies and it is fairly obvious when a company is cooking their books and misrepresenting their financial condition; some common red flags include significant off-balance sheet transactions with affiliated shell companies which have no legitimate business operations other than shifting expenses or offsetting litigation settlements or penalties imposed by regulatory agencies, lack of coherence in explaining the fundamental dynamics of the business and operating results, vagueness in answering questions from equity research analysts on quarterly conference calls, confusing disclosures and descriptions of the business, and in many cases it is difficult to ascertain what product or service the company actually provides or who its primary customers are; and M&T currently resembles a caricature of this type of company based on their 2020 annual report filed with SEC.

M&T is a Fortune 500 company with over 16,000 employees, which makes this consequential to the economic well-being of sizeable number of citizens, especially in Baltimore as M&T is historically one of the largest employers in the city and has been a pillar of the community, and even has an NFL football stadium named after it. Unfortunately things for M&T seem to have deteriorated precipitously after the death of long-time CEO Robert Wilmers, a legendary banking figure and close friend of Warren Buffet. When Wilmers died in December 2017, the company came under the control of Rene Jones and within just three years the company hardly resembles what it was under Wilmers, who was probably a person who people liked working for and respected. Now, there are four unsavory characters calling the shots at M&T and it is clear they do not value things like treating their employees with a high level of respect and fairness. Wilmers always held a large amount of the common shares of M&T which is sign of shareholder alignment and confidence in the prospects of the business. Conversely, Rene Jones has not purchases a share of the company and his holdings of stock are all based on "stock based compensation" which is "performance based" but how performance is actually evaluated or measured remains less clear when reviewing the companies annual report and proxy statements. Moreover, it would appears more like these compensation arrangements are being materially misstated in violation of federal securities laws, including the Sarbanes Oxley act which carries a prison sentence of up to twenty years for knowing violators, such as the CEO and CFO, if they certify financial reports which are found to be misleading or not based on clear accounting standards and not subject to manipulation. So it is understandable that Rene Jones would react strongly to a request to be deposed such as the one made over the weekend. If he had nothing to hide he would be fighting back against what I am alleging and defending his honesty and integrity as a manager of M&T, but it is clear that is not the reality currently in play and the

response to my deposition request is revealing of the types of characters who are responsible for managing this massive banking franchise. The implications of a potential fraud taking place at M&T are tremendous and therefore represent an interest of the United States government and financial regulators, including the Federal Reserve, Securities and Exchange Commission, Federal Trade Commission, Department of the Treasury and the Office of the Comptroller of the Currency.

Mr. Moffet makes a reference to the SEC filings which contain financial information for M&T, saying that there is no need to depose Rene Jones, which is nonsensical because there is a decent chance that M&T is cooking their books and engaging in illegal insider trades while misrepresenting material aspects of their accounting policies and operating performance. Moffet also mentions how the General Counsel for M&T Bank had no knowledge of any of the facts pertaining to this case, which in all likelihood is a brazen lie. I will concede that securities fraud and insider trading are not relevant to this lawsuit but I apologize for being curious as to whether or not one of the largest employers in the city of Baltimore is conducting a wide-scale act of fraud against consumers, investors, employees and other people who would be affected if it turned out that M&T is reporting numbers with the SEC which are being manipulated by intercompany transactions with various shell companies which coincidentally make "distributions" which nearly offset all legal settlement costs incurred by M&T for its various criminal acts perpetuated by unsavory individuals like Rene Jones.

## IV. PLAINTIFF MOVES THE COURT TO GRANT JUDGEMENT AS A MATTER OF LAW

Despite the uphill battle of these proceedings, the Court now has the power to do what justice requires and enter summary judgement in plaintiff's favor and allow him to move on with his life and resolve the misleading information on his credit report, which is the heart of

everything currently at issue. Plaintiff would like a credit report which accurately and fairly reflects his credit history and is not tarnished as a result of defendant's willful noncompliance with the FCRA. M&T is clearly unable to offer admissible evidence which would preclude summary judgement. Further, the defendant cannot establish a genuine issue of material fact thus there is no need for a finder of factual disputes which do not existence. The plaintiff has pleaded his claims, provided evidence which clearly establishes the elements needed to prevail on his claims, including sworn statements under penalty of perjury, self-authenticating documents which have been filed with the Court and are currently reflected in the record for this action, supporting evidence of lost income as a result of the defendant's unlawful conduct and therefore it is proper to move for the Court's entry of summary judgement in his favor. Further, my response to M&T's motion to dismiss can be viewed as a quasi-statement of undisputed material facts which can be incorporated into this integrated filing to establish properly the evidentiary basis by which the Court may grant judgement as a matter of law under Fed.R.Civ.P. 56. (See ECF 30). My responsive brief as well as the amended complaint and various exhibits filed into evidence contain all necessary facts stated with specific references to the materials on the record in support thereof and in satisfaction of the elements of his claims under the FCRA and TILA, with proper identification to evidentiary material which is already filed on the record as required under the operative summary judgement standard.