

# Equal Employment Opportunity Commission (EEOC) reporting

In order to ensure compliance with federal civil rights laws and regulations, Oppenheimer must provide equal employment opportunity reports to the Equal Employment Opportunity Commission and other appropriate governmental agencies on a periodic basis. To aid in this reporting process, we request that you identify your race and national origin status on this form. The completion of this form is voluntary. The information you furnish will be used only for the purposes of reporting data to governmental agencies.

**Group Status:**

## Are you Hispanic or Latino?
☑ Yes  ☐ No

## If above answer is no, then please select your race from the below list:
☐ White

☐ Black or African American

☐ Native Hawaiian or other Pacific Islander

☐ Asian

☐ American Indian or Alaska Native

☐ Two or more races

Bryce Carrasco
**Employee's Name (please print)**

*Bob*
**Employee's Signature**

IBO - Baltimore - AB
**Branch # and Location or Department Name**

07/02/2019
**Date**

CONFIDENTIAL
RETURN COMPLETED FORM TO: Human Resources ● 3310 W. Big Beaver Road ● Suite 205 ● Troy, MI 48084 ● Fax: 248-637-8390

OPCO_0001

# OPPENHEIMER

## PERSONNEL CHANGE NOTICE (PCN)

| NAME Carrasco (LAST) Bruce (FIRST) (INITIAL) | JOB TITLE Investment Banking Analyst | EMPLOYEE ADP NO. |
|---|---|---|
| | BUSINESS TITLE | |

| DATE OF BIRTH 09/11/1996 | SEX | EEO | ☒ Non-Nominal Employee (refer to FPM 165 for further assistance) | OTHER | IMMEDIATE SUPERVISOR Robert Lowenthal |
|---|---|---|---|---|---|

| STREET ADDRESS 100 East Redwood Street | CITY, STATE, ZIP Baltimore, MD 21202 | APT. NO. |
|---|---|---|

| HOME TELEPHONE (INCLUDE AREA CODE) ( ) | DEPT./CODE AB - BC Baltimore (LD) | CRD NO. | RR NO. |
|---|---|---|---|
| | BRANCH OFFICE | | |

| HIRE | TERMINATION | SALARY | STATUS |
|---|---|---|---|
| ☒ NEW EMPLOYEE | ☐ RESIGNED | STARTING AT: $ 70,000 PER YEAR | FINANCIAL ADVISOR |
| | ☐ VOLUNTARY ☐ INVOLUNTARY* | SALARY CHANGE (STATE REASON BELOW) | STAFF: |
| ☐ REHIRE *ORIGINAL EMPLOYMENT DATE* | ☐ DISCHARGED* (detail below or attach explanation) | FROM $ _____ PER YEAR | REGISTERED _____ |
| ☐ LEAVE OF ABSENCE | ☐ SUSPENDED* | TO $ _____ PER YEAR | NON REGISTERED _____ |
| ☐ RETURN FROM LEAVE OF ABSENCE | * COPY MUST BE SENT TO REGISTRATION IMMEDIATELY | TRANSFER * | NOTES & EXPLANATIONS |
| ☐ ADDITION ☐ REPLACEMENT | ☐ LAID OFF | FROM _____ | |
| NAME OF EMPLOYEE REPLACED: | ☐ AUTHORIZED LEAVE WITHOUT PAY | TO _____ | |
| _____ | ☐ DECEASED | * Manager must e-mail support@opco.com if employees email review group is changing. | |
| ☐ SINGLE | ☐ OTHER _____ | TERMS | |
| ☐ MARITAL STATUS: ☐ MARRIED | PAY _____ DAYS VACATION | | |
| ☐ DIVORCED | PAY _____ DAYS SEVERANCE | | |
| ☒ Exempt ☐ Non Exempt | | | |

| EFFECTIVE DATE OF ABOVE ACTIONS 7/8/19 | FINAL APPROVAL: _____ |
|---|---|

| 7/8/19 | | Lisa Damato | _____ |
|---|---|---|---|
| DATE | DEPARTMENT OR BRANCH MANAGER | HUMAN RESOURCES | |

ABOVE EMPLOYEE HAS CHANGED:    NAME    ADDRESS    PHONE    MARITAL STATUS

**RETURN COMPLETED FORM TO:**    Human Resources ● 3310 W. Big Beaver Road ● Suite 205 ● Troy MI  48084  Fax: 248-637-8390

CONFIDENTIAL



**Purpose.** Complete Form MW507 so that your employer can withhold the correct Maryland income tax from your pay. Consider completing a new Form MW507 each year and when your personal or financial situation changes.

**Basic Instructions.** Enter on line 1 below, the number of personal exemptions you will claim on your tax return. However, if you wish to claim more exemptions, or if your adjusted gross income will be more than $100,000 if you are filing single or married filing separately ($150,000, if you are filing jointly or as head of household), you must complete the Personal Exemption Worksheet on page 2. Complete the Personal Exemption Worksheet on page 2 to further adjust your Maryland withholding based on itemized deductions, and certain other expenses that exceed your standard deduction and are not claimed at another job or by your spouse. However, you may claim fewer (or zero) exemptions.

**Additional withholding per pay period under agreement with employer.** If you are not having enough tax withheld, you may ask your employer to withhold more by entering an additional amount on line 2.

**Exemption from withholding.** You may be entitled to claim an exemption from the withholding of Maryland income tax if:

a. Last year you did not owe any Maryland income tax and had a right to a full refund of any tax withheld; AND,

b. This year you do not expect to owe any Maryland income tax and expect to have a right to a full refund of all income tax withheld.

If you are eligible to claim this exemption, complete Line 3 and your employer will not withhold Maryland income tax from your wages.

Students and Seasonal Employees whose annual income will be below the minimum filing requirements should claim exemption from withholding. This provides more income throughout the year and avoids the necessity of filing a Maryland income tax return.

**Certification of nonresidence in the State of Maryland.** Complete Line 4. This line is to be completed by residents of the District of Columbia, Virginia or West Virginia who are employed in Maryland and who do not maintain a place of abode in Maryland for 183 days or more.

Residents of Pennsylvania who are employed in Maryland and who do not maintain a place of abode in Maryland for 183 days or more, should complete line 5 to exempt themselves from the state portion of the withholding tax. These employees are still liable for withholding tax at the rate in effect for the Maryland county in which they are employed, unless they qualify for an exemption on either line 6 or line 7. Pennsylvania residents of York and Adams counties may claim an exemption from the local withholding tax by completing line 6. Pennsylvania residents living in other local jurisdictions which do not impose an earnings or income tax on Maryland residents may claim an exemption by completing line 7. Employees qualifying for exemption under 6 or 7, should also write "EXEMPT" on line 4.

Line 4 is **NOT** to be used by residents of other states who are working in Maryland, because such persons are liable for Maryland income tax and withholding from

their wages is required.

If you are domiciled in the District of Columbia, Pennsylvania or Virginia and maintain a place of abode in Maryland for 183 days or more, you become a statutory resident of Maryland and you are required to file a resident return with Maryland reporting your total income. You must apply to your domicile state for any tax credit to which you may be entitled under the reciprocal provisions of the law. If you are domiciled in West Virginia, you are not required to pay Maryland income tax on wage or salary income, regardless of the length of time you may have spent in Maryland.

Under the Servicemembers Civil Relief Act, as amended by the Military Spouses Residency Relief Act, you may be exempt from Maryland income tax on your wages if (i) your spouse is a member of the armed forces present in Maryland in compliance with military orders; (ii) you are present in Maryland solely to be with your spouse; and (iii) you maintain your domicile in another state. If you claim exemption under the SCRA enter your state of domicile (legal residence) on Line 8; enter "EXEMPT" in the box to the right on Line 8; and attach a copy of your spousal military identification card to Form MW507. **In addition, you must also complete and attach Form MW507M.**

**Duties and responsibilities of employer.** Retain this certificate with your records. You are required to submit a copy of this certificate and accompanying attachments to the Compliance Division, Compliance Programs Section, 301 West Preston Street, Baltimore, MD 21201, when received if:

1. You have any reason to believe this certificate is incorrect;

2. The employee claims more than 10 exemptions;

3. The employee claims an exemption from withholding because he/she had no tax liability for the preceding tax year, expects to incur no tax liability this year and the wages are expected to exceed $200 a week;

4. The employee claims an exemption from withholding on the basis of nonresidence; or

5. The employee claims an exemption from withholding under the Military Spouses Residency Relief Act.

Upon receipt of any exemption certificate (Form MW507), the Compliance Division will make a determination and notify you if a change is required.

Once an exemption is revoked by the Comptroller, the employer must send any new certificate from the employee to the Comptroller for approval before implementing the new certificate.

If an employee claims exemption under 3 above, a new exemption certificate must be filed by February 15th of the following year.

**Duties and responsibilities of employee.** If, on any day during the calendar year, the number of withholding exemptions that the employee is entitled to claim is less than the number of exemptions claimed on the withholding exemption certificate in effect, the employee must file a new withholding exemption certificate with the employer within 10 days after the change occurs.

---

**FORM**
# MW507  Employee's Maryland Withholding Exemption Certificate

| Print full name | Social Security Number |
|---|---|
| Bryce Carrasco | ▮▮▮ |

| Street Address, City, State, ZIP | County of residence (Nonresidents enter Maryland county (or Baltimore City) where you are employed.) |
|---|---|
| 100 East Redwood St, Baltimore, MD 21202 | Baltimore City |

☒ Single    ☐ Married (surviving spouse or unmarried Head of Household) Rate    ☐ Married, but withhold at Single rate

1. Total number of exemptions you are claiming not to exceed line f in Personal Exemption Worksheet on page 2. .......... 1. __0__

2. Additional withholding per pay period under agreement with employer. .......... 2. __0__

3. I claim exemption from withholding because I do not expect to owe Maryland tax. See instructions above and check boxes that apply.

  ☐ a. Last year I did not owe any Maryland income tax and had a right to a full refund of all income tax withheld and

  ☐ b. This year I do not expect to owe any Maryland income tax and expect to have the right to a full refund of all income tax withheld.
      (This includes seasonal and student employees whose annual income will be below the minimum filing requirements).
      If both a and b apply, enter year applicable _____ (year effective) Enter "EXEMPT" here .......... 3. _____

4. I claim exemption from withholding because I am domiciled in one of the following states. Check state that applies.

  ☐ District of Columbia    ☐ Virginia    ☐ West Virginia

   I further certify that I do not maintain a place of abode in Maryland as described in the instructions above. Enter "EXEMPT" here. ......... 4. _____

5. I claim exemption from Maryland **state** withholding because I am domiciled in the Commonwealth of Pennsylvania and I do not maintain a place of abode in Maryland as described in the instructions on Form MW507. Enter "EXEMPT" here. .......... 5. _____

6. I claim exemption from Maryland **local** tax because I live in a local Pennsylvania jurisdiction within York or Adams counties. Enter "EXEMPT" here and on line 4 of Form MW507. .......... 6. _____

7. I claim exemption from Maryland **local** tax because I live in a local Pennsylvania jurisdiction that does not impose an earnings or income tax on Maryland residents. Enter "EXEMPT" here and on line 4 of Form MW507. .......... 7. _____

8. I certify that I am a legal resident of the state of _____ and am not subject to Maryland withholding because I meet the requirements set forth under the Servicemembers Civil Relief Act, as amended by the Military Spouses Residency Relief Act. Enter "EXEMPT" here.... 8. _____

**Under the penalty of perjury,** I further certify that I am entitled to the number of withholding allowances claimed on line 1 above, or if claiming exemption from withholding, that I am entitled to claim the exempt status on whichever line(s) I completed.

| Employee's signature | Date |
|---|---|
| BC | 6/8/2019 |

| Employer's name and address including ZIP code (For employer use only) | Federal Employer Identification Number |
|---|---|
| | |

COM/RAD-036    18-49

# PERSONAL COMPUTER USAGE AGREEMENT

We understand that personal computers are being utilized in our industry as a financial planning and sales tool with respect to investments. We anticipate that such use will continue to increase and we believe that this technology will prove to be quite useful.

We caution, however, that great care must be taken in connection with the use of such technology and in the implementation and development of software and in the transmission or generation of information to clients. Carelessness in the use of inaccurate or incomplete data could easily result in faulty information or reports in the service of our clients. Clients may also misinterpret the range of usefulness or the proper purpose of the information being provided.

With this information at hand, under no circumstances should any employees provide any transmission or otherwise produce and generate personal computer documents to any client, or prospective client, unless the use of documents and the information contained therein has been reviewed and verified by management in advance. This restriction does not apply towards information generated by the in-house client account database (FINET System) currently in use firm wide. (Please recall that all correspondence requires the prior approval of your branch manager and retention in the central branch records.)

To evidence your understanding and intended compliance with this directive, please sign below.

_____          7/2/2019
Signature                                 Date

CONFIDENTIAL



**Post-Review Attestation**

I, _Bryce Carrasco_ _____ of the
(Print Full Name)

_Investment Banking Division — APB_ _____ branch
(Branch/Department Code and Location)

office/department represent that I understand I am being granted permission to have my external outgoing and incoming emails through the Firm's email system reviewed on a post- review basis. In consideration of such permission, granted on my behalf, allowing my Branch / Department Manager (or as applicable the Reviewing Branch Control Officer,) to perform these supervisory reviews I hereby affirm that I will:

> ***Abide by Oppenheimer's general communications policies (Compliance Manual Section VIII & Appendix 10 "Electronic Communications")***

Moreover, I understand and acknowledge that any failure to abide by Firm policy concerning email and related communications may result in the removal of such permission and place all of my email communications on a pre-review requirement. In such event the Branch /Department Manager may disallow my use of emails altogether. In addition failure to sign and return this acknowledgement form in the required time will result in a pre-review requirement of all of my email communications.

_R86_ _____  _07/02/2019_
Employee Signature                         Date

***Please note that the Firm reserves the right to disapprove post-review of outgoing external e-mails for any employee at its sole discretion. Moreover, the failure of any employee to abide by Firm policy concerning e-mail and related communications or to return the original signed current Post Review Attestation form in the allotted time will result in the return of their outgoing external e-mails to a pre-review basis, subject to permission by the Branch / Department Manager, with the approval of Private Client Services, for the employee's continued use of e-mail.***

version 5/18



# ACKNOWLEDGMENT OF RECEIPT

# GLOBAL ANTI-MONEY LAUNDERING POLICY

**TO:**  New Hire

**RE:**  Acknowledgment of receipt of the Oppenheimer & Co. Inc., Global Anti-Money Laundering Policy, May 10, 2018 electronic version

---

The undersigned hereby acknowledges that he/she has electronically received, and read the Oppenheimer & Co. Inc.'s ("the Firm") Global Anti-Money Laundering Policy dated May 10, 2018 ("AML Manual") and understands that compliance with the Policies and Procedures as set forth in the AML Manual, including any and all amendments or updates thereto (which will appear on the Firm's Intranet system) is required of all employees. This Acknowledgement will remain in effect at all times during the undersigned's association with the Firm.

The AML Manual shall remain the sole property of the Firm and its content may not be reproduced or furnished to anyone who is not an employee of the Firm without prior written consent of the Compliance Department.

By signing this form, the undersigned attests to the foregoing acknowledgements.


Bryce Carrasco
_____
Employee's Name (please print)

_____
Employee's Signature


Baltimore - IBD
_____
Branch # and Location or Department Name

7/2/2019
_____
Date


The electronic version of the Global Anti-Money Laundering Policy is located on the AML Resources page of the Compliance section of the Firm's Intranet.

Version 5/2018

CONFIDENTIAL

OPCO_0006



## ACKNOWLEDGEMENT OF RECEIPT

## CODE OF CONDUCT AND BUSINESS ETHICS FOR DIRECTORS, OFFICERS, AND EMPLOYEES

**TO:**     All New Employees

**RE:**     Acknowledgment of receipt of Oppenheimer & Co. Inc.'s Code of Conduct and Business Ethics for Directors, Officers, and Employees

---

I acknowledge that I have read and understand Oppenheimer & Co. Inc.'s Code of Conduct and Business Ethics for Directors, Officers, and Employees. I hereby agree to adhere to the provisions thereof at all times during my association with Oppenheimer and acknowledge that any failure on my part to comply with the code of conduct and business ethics may result in my being subject to disciplinary action by Oppenheimer, including termination.

Bryce Carrasco
Employee's Name (please print)

Employee's Signature

RBD - AB
Branch No.

07/02/2019
Date

Version 6/04

# Oppenheimer Service Portal

## Incident Assigned Directly to You

**Dear Todd,**

An Incident has been assigned directly to you. Please follow up accordingly.

The full work item may be viewed <u>here</u>.

## Incident Request Summary

**Id:**          IR426946

**Title:**       Create Lan Id and email: Employee Provisioning Request for Bryce Carrasco

**Created:**     6/13/2019 9:22:02 AM

**Description:**

```
Hi guys,

Please create Lan Id and email for the below.

Thanks
Mandy

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
::::: Items For Provisioning :::::::::::::::::::::::::::::::::::::::::
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

EMPLOYEE'S MANAGER
INFORMATION::::::::::::::::::::::::::::::::::::::::::::::::

Employee's Manager's Name: ROBERT LOWENTHAL
Employee's Manager's E-mail: ROBERT.LOWENTHAL@OPCO.COM
Employee's Manager's Phone#: 21266753600

PERSON MAKING REQUEST:::::::::::::::::::::::::::::::::::::::::::::::::
Person Making Request: CEELENA KADIR
Person Making Request's E-Mail: CEELENA.KADIR@OPCO.COM
Person Making Request's Phone Number: 2126677427

EMPLOYEE INFORMATION:::::::::::::::::::::::::::::::::::::::::::::::::::
Employee Last Name: CARRASCO
Employee First Name: BRYCE
```

CONFIDENTIAL                                                              OPCO_0008

```
Employee Middle Name: O.
Employee Title: Analyst
Employee Category: Employee
Employee Request Type: New
Branch Code (Department ID - Branch Name): IBK - BG - IB Industrial
Growth & Energy
Date Hired/Termed: 07/8/2019
Employee Rep Numbers (Employee Owns): na
Employee Additional Comments: LOCATION: 100 International Dr.
BALTIMORE OFFICE
SHOULD BE IN THE PDF READ WRITE GROUP
SHOULD BE IN THE DGRP INVESTMENT BANKING GROUP

LAN ID::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
Is this person to be part of a group directory?:
Drive(s) and/or groupfolder names:
Any Additional comments? CMS etc: SHOULD BE GIVEN THE SAME ACCESS AS
████████████████
SHOUDL BE ADDED TO US.ICB.IB.Z.ANALYSTS

EMPLOYEE EMAIL:::::::::::::::::::::::::::::::::::::::::::::::::::::::
Any Additional comments?: SHOULD BE IN THE IBK-IB-BG-RENTAL SERVICES

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
::::: Form End ::::::::::::::::::::::::::::::::::
:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
```

REDACTED



# Authorization and Release

I authorize Oppenheimer & Co. Inc., as a potential employer, to obtain from any jurisdiction or self-regulatory agency, any information they deem appropriate with respect to my creditworthiness, character, ability, business activities, educational background, general reputation, and history of my employment (including complete reasons for my termination).

This release will provide Oppenheimer & Co. Inc. with sufficient authorization to make a formal inquiry of any former employer or self-regulatory agency as to any and all disciplinary proceedings, client or labor disputes to which I am currently, or may have been, a party to.

07/02/2019
Date

Signature

Social Security Number

Bryce Carrasco
Name - Printed

Matt Hudson
Branch Manager

Rob Lowenthal

**faqs/prehire**
08/2003

# Bryce Carrasco

Telephone: (410) 858-7432 | E-mail: bocarrasco47@outlook.com

## EDUCATION

**Loyola University Maryland – Sellinger School of Business and Management**  **Baltimore, MD**
*Bachelor of Business Administration in Finance – Cum Laude*  *May 2019*
- **Cumulative GPA:** 3.6 / 4.0; **Major GPA:** 3.9 / 4.0
- Division I Student-Athlete – Member of Men's Lacrosse Team
- Patriot League Academic Honor Roll 2016, 2017, 2018 & 2019
- Contributor for Seeking Alpha
**Seeking Alpha Investment Articles:**

  – Micron: Compelling Opportunity with Wide Margin of Safety

  – Daseke: Out of Favor, Underfollowed, and Materially Undervalued

## WORK EXPERIENCE

**Harris Williams & Co.**  **Boston, MA**
*Investment Banking Summer Analyst – TMT Group*  *June 2018 – August 2018*
- Worked on three live deals throughout the summer, each valued at over $400 million in enterprise value – Harris Williams was the sole advisor on all three deals and was responsible for facilitating the entire sell-side process for each company
- Conducted in-depth research on potential strategic buyers, listened to earnings calls for relevant industry players, and monitored acquisition activity across the technology sector to identify M&A trends and average transaction multiples

Selected Transaction Experience:
- **Project Fusion – IQMS Manufacturing ERP Software Company**
  – Worked with deal team in facilitating broad sell-side M&A process for IQMS, a privately held, global software company based in Paso Robles, California. Dassault Systèmes acquired IQMS for $425 million in January 2019
  – Assisted the deal team with financial model build and analyzed revenue and expense constructs; applied SaaS valuation framework to build out revenue projections using SaaS revenue waterfall and management earnings guidance
- **Project Apollo – Financial Technology / Payment Processing Company**
  – Worked with deal team to process data requests from potential buyers and facilitated conversations with various strategic buyers that submitted indications of interest based on the summary fact sheet and preliminary teaser
  – Conducted in-depth buyer research in preparation for early-look meetings; focused on high-potential financial technology and payment processing buyers with large cash balances that were pursuing inorganic growth initiatives

**Alpha Tree Investing Service**  **Baltimore, MD**
*Equity Research Analyst*  *August 2017 – May 2018*
- Performed due diligence and assisted in idea generation for private fund manager; focused on value-driven investment opportunities with attractive risk-adjusted return profiles
- Worked to identify asymmetrical investment opportunities; focused on equities with superior financial prospects, sufficient downside protection, shareholder-friendly management teams, and high levels of cash flow visibility

Selected Equity Research Experience:
- **SuperValu, Inc. (NYSE: SVU)**
  – Performed fundamental analyses to arrive at a stock price target of ~$30/share; stock price doubled from $16/share to $32/share after United Natural Foods announced they had reached an agreement to acquire SuperValu for $32.50/share

**The Capital Funding Group**  **Baltimore, MD**
*Summer Analyst – Capital Financial Ventures*  *May 2017 – August 2017*
- Worked directly with CFO to analyze property acquisitions and build out return analyses for the real estate portfolio which consisted of cross-collateralized, triple-net leases on various senior living facilities across the U.S. (Blue Mountain)
- Forecasted pro-forma P&L statement for a recently acquired ALF in Florida. Analyzed contracts and financing structure, and identified value creation opportunities through additional leverage and cost-cutting initiatives with operating company

Selected Investment Analysis Experience:
- **Blue Mountain Real Estate Investment Portfolio**
  – Constructed an IRR analysis for a $70 million equity investment in various senior healthcare facilities, referenced key financing terms and debt covenants when evaluating cash flow assumptions and potential equity proceeds upon exit
  – Projected pro-forma NOI's for acquired real estate to assess capitalization rates and cash-on-cash return potential

## ACHIEVEMENTS, SKILLS & INTERESTS

**Interests:** Stoic Philosophy; Special Situations Investing; Technology Investing
**Skills:** Advanced in Microsoft Excel, PowerPoint, and Word; Equity Research; Public Financial Markets; Security Analysis
**Volunteer Experience:** Special Olympics; Harlem Lacrosse Foundation; Winter Relief Homeless Program

# New Employee Form Checklist

Use this checklist for the required forms to be completed and returned.

*209132*
60BC17   60ABI7

File Number

Department
(HR Use Only)

## EMPLOYEE INFORMATION

Name: Bruce Carrasco

Date of Hire: 7/8/19

Rate of Pay: $ 70K  annual / hourly

Job Title: IBK Analyst

Department: IB 80 PCN

Rep Number:

Immediate Supervisor: Rob Lowenthal

Branch Location: Baltimore Branch

EXEMPT / NON-EXEMPT (CIRCLE ONE)     FULL TIME / PART TIME (CIRCLE ONE)

## REQUIRED FORMS - PRE-HIRE - SCAN AND SEND TO KRISTY.DECKER@OPCO.COM

1. ____ Application for Employment
2. ____ Political Contribution/Activity Form

3. ____ Disclosure Regarding Private Placements (Rule 506(d)) form
4. ____ Reference Check Documentation

## REQUIRED FORMS - PERSONNEL FILE - RETURN TO TROY, MI HR DEPT WITHIN 3 DAYS FROM DATE OF HIRE

1. ____ Addendum to Application
2. ____ Personal Change Notice (PCN)
3. ____ Authorization & Release
4. ____ Fingerprint Appointment made
   ____ 7/19 Date of Appointment

**\* ALL new employees must make appointment to get fingerprinted**

(HR USE ONLY): Date Transmitted: 7/8/19

5. ____ State Tax form (if applicable)
6. ____ City Tax form (if applicable)
7. ____ Federal Tax form (W4)
8. ____ Electronic Communication
9. ____ Post-Review Attestation
   *(Found in Electronic Communications packet)*
10. ____ Insider Trading Confirmation
11. ____ EE Securities Acct. Acknowledge

12. ____ Compliance Manual Acknowledgement form
    *(refer to electronic version of the manual on the Company Intranet.)*
13. ____ Code of Conduct Acknowledgement
14. ____ Financial Reporting and Whistleblower Policy Acknowledgement
15. ____ Outside Employment Disclosure
16. ____ Outside Investment Disclosure
17. ____ Computer Use
18. ____ Global Anti-Money Laundering Acknowledgment
    *(refer to the electronic version of the manual on the Company Intranet.)*
19. N/A LinkedIn Self Reporting Acknowledgement (RETAIL BRANCHES ONLY)
20. ____ Arbitration Agreement
21. ____ Understanding and Acknowledgment of Oppenheimer Handbook
    *(Item 21 can be found in the back of the Employee Handbook)*
22. ____ Offer Letter
23. N/A Acknowledgement of Pay Rate letter
    *(all NY Employees and Non-Exempt CA Employees)*

## REQUIRED FORMS - FINANCIAL ADVISORS ONLY

____ FA Plan Acknowledgment (NY and CA FA's)
*(Will be provided by HR for signature once new hire paperwork is received)*

____ Soliciting Former Clients Attestation

## REQUIRED FORMS - OTHER

____ I-9 Form (Completed and verified by branch)

____ Medical Emergency Form (Branch to retain copy)

## OPTIONAL FORMS

A. Direct Deposit Form     B. Money Market Fund     C. Equal Employment Reporting (EEOC)

## REVIEWED BY

Branch/Dept. Manager Signature

Date

CONFIDENTIAL
Branch/Dept. Manager Printed Name

7/12/19 KD   8/28/19 KD   KD

File complete date   Scan complete/date   HR Review
                     (HR use only)

OPCO_0012

REV 09 25 2017



# FINRA Fingerprint

# Bryce Carrasco

| | |
|---|---|
| CLIENT | CLIENT CODE |
| **Oppenheimer & Co. - NRF** | **400-00751** |
| REQUESTER | REPORT # |
| **Shelly Samaroo-Hargrove / 21012** | **15367457** |
| REQUEST DATE | DELIVERY DATE |
| **07/02/2019** | **07/03/2019** |
| CASE CREATED DATE | |
| **07/02/2019** | |

**Personal & Confidential**

This report is only to be used in strict adherence to the terms and conditions set forth in the Agreement between Business Information Group, Inc. and its client. © Business Information Group, Inc. 2019. All rights reserved. Business Information Group, Inc. is a subsidiary of Vertical Screen, Inc. Direct any questions to Business Information Group, P.O. Box 541, Southampton, PA 18966, (800) 803-0331, Fax: 215 396-9879.

SERVICE                                                          STATUS

# Subject Data

**Name:**              **Bryce Carrasco**                    REDACTED

**Date of Birth:**     09/11/1996
**Social Security /ID#:**  ███████████
**Current Address:**   100 E Redwood St
                       Apt #2013
                       Baltimore, MD 21202
                       United States

**Other Addresses:**   None
**Other Names:**       None
**Comments:**          None

| SERVICE | STATUS |
|---|---|

# Fingerprint

| | |
|---|---|
| **Source:** | FINRA |
| **Date Ordered:** | 07/02/2019 |
| **Subject Covered:** | Bryce Carrasco |
| **Status:** | Transmitted |
| **Fingerprint Site:** | 822 Guilford Avenue Mount Vernon Shopping Center; next to Dunkin Donuts<br>Baltimore, MD 21202-<br>Livescan Site |
| **Scheduled Date:** | 07/03/2019 |
| **Collection Date:** | 07/03/2019 |
| **Transmitted Date:** | 07/03/2019 |
| **Collection Note:** | |
| | |
| **City of Birth:** | Washington D.C. |
| **State/Province of Birth:** | District of Columbia |
| **Country of Birth:** | United States of America (USA) |
| **Sex:** | Male |
| **Citizenship:** | United States of America (USA) |
| **Height (ft):** | 5 |
| **Height (in):** | 8 |
| **Weight (lbs):** | 170 |
| **Hair color:** | Brown |
| **Eye color:** | Brown |
| **Race:** | Caucasian/Spanish Descent |
| **Employment Address 1:** | 85 Broad Street |
| **Employment Address 2:** | not available |
| **Employment City:** | New York |
| **Employment State:** | NEW YORK (NY) |
| **Employment Zip Code:** | 10004 |
| | |
| **Comments:** | 07/02/2019 FINRA Barcode/Transaction Number: 2540866159 |

**End of Report**

209132

REDACTED

**Please check status:**    New ✓    Replacing _____    In addition _____

### Authorization Agreement for Automatic Deposits (Credits)

I hereby authorize Oppenheimer & Co. Inc. to initiate credit entries to my checking and/or savings account(s) listed below and the banking institution named below to credit the same to each account. I acknowledge that Oppenheimer & Co. Inc. is not requiring me to accept wages in the form of an automatic deposit. I also understand and acknowledge that I will not be charged for any fees for services necessary for me to access my wages in full.

I understand and agree that, in the event funds are deposited to my account under this agreement, resulting from an error by Oppenheimer or the sudden termination of my employment by either Oppenheimer or myself, Oppenheimer's Originating Debit Financial Institution (ODFI) has my permission to request the return of such funds via ACH As part of this agreement I agree to hold harmless and indemnify Oppenheimer, its ODFI and my bank from any and all claims, demands, losses, liability or expense, including attorneys' fees and costs, resulting directly or indirectly from compliance by my bank with such request for return of funds.

**Checking Account**

Banking Institution: Bank of America    Branch: Roland

City: Baltimore    State: MD    Phone: 410-235-8700

Checking Account Number: ▮▮▮▮▮▮▮▮▮▮

Amount of Deposit: TOTAL NET PAY
(Write "TOTAL NET PAY" as full amount)

Bank Transit / Routing Number: ▮▮▮▮▮▮▮▮
(Call your banking institution for this number)

**Savings Account**

Banking Institution: _____    Branch: _____

City: _____    State: _____    Phone: _____

Savings Account Number: _____

Amount of Deposit: _____
(Write "TOTAL NET PAY" as full amount)

Bank Transit / Routing Number: _____
(Call your banking institution for this number)

This authority is to remain in full force and effect until Oppenheimer & Co. Inc. has received written notification from me of its termination in such time and in such manner as to afford Oppenheimer opportunity to act on it.

Employee Name Printed: Bryce Carrasco

Employee Signature: _BC_    Date: 07/02/2019



## OPPENHEIMER

<u>NEW EMPLOYEE ACKNOWLEDGEMENT FORM</u>

RE:  OUTSIDE EMPLOYMENT, DIRECTORSHIP, OFFICER DISCLOSURE FORM

Oppenheimer & Co. Inc. expects their full time employees to devote their entire business day to the work of the Firm, and all employees are expected to avoid any outside activity, employment, position, association that might interfere or appear to interfere with the independent exercise of the employee's judgment regarding the best interests of the Firm and its clients. This form is intended to facilitate the disclosure of such activity, employment, position or association, as required by NYSE Rule 346. Please list as follows:

<u>Company/Organization/Activity/Position/Association:</u>

_None_

*(If NONE, please state above.)*        *(If more space is needed, please use the reverse side.)*

Please be advised that clearance of activities must be approved first by the Branch Office or Department Manager and forwarded to the Compliance Department for final review. Approval is based on an assessment of the actual or potential conflicts of interest, Firm policy and industry rules and regulations. <u>If seeking approval, please complete the "Outside Employment, Outside Directorship, Outside Officer application form"</u> which can be found on the Intranet under 'Applications and Printable forms'.

If this form is 'NOT APPLICABLE' or 'NONE' please state so in the space provided above. Your signature below is an attestation that the information provided above is accurate as of the date of this form.

Print Name:  _Bryce Carrasco_

Signature:  _____    Date: _7/2/2019_

Your Title:  _Investment Banking Analyst — AB_

Branch No. /Dept. Name:  _I80_

SEND TO:  HUMAN RESOURCES
COPY TO:  COMPLIANCE DEPT.

**Version 8/04**

CONFIDENTIAL                                                                    OPCO_0017





85 Broad Street, New York, NY 10004

# EMPLOYEE SECURITIES ACCOUNT ACKNOWLEDGEMENT FORM

I HEREBY AGREE, as part of my employment with Oppenheimer & Co. Inc., that I will maintain with Oppenheimer & Co. Inc. <u>any</u> securities account I wish to carry for myself, for which I have a direct or indirect beneficial interest in, for any member of my household or for any person of my immediate family and,

I HEREBY UNDERSTAND, that if for any reason, any of the types of accounts referenced above are to be opened at or maintained by another broker/dealer, including any one of the Firm's affiliates, permission to do so <u>must</u> be obtained from my Branch or Department Manager and then cleared through the Compliance Department. Each request must be in writing (<u>Outside Account Approval Form</u>) and include a reason justifying such request consistent with the exceptions permitted by the Firm and, if such permission is granted, that for such accounts, duplicate trade confirmations and monthly account statements will be forwarded to the attention of my Branch or Department Manager as well as the Compliance Department.

Please list any brokerage accounts currently maintained at broker/dealers other than Oppenheimer & Co. Inc.

| **Firm** | **Account Name** | **Account No.** |
|---|---|---|
| Interactive Brokers | Bryce Carrasco | ████████ |
| Robinhood Financial | Bryce Carrasco | ████████ |
| TD Ameritrade | Bryce Octavio Carrasco | ████████ |
| | | |
| | | |

I AFFIRMATIVELY STATE that there are NO outside account(s) as referenced in the above first paragraph that have not been disclosed to the Compliance Department.

Bryce Carrasco
**Employee's Name      (Print)**

*[signature]*
**Employee's Signature**

07/02/2019
**Date**

Investment Banking - AB
**Branch or Department**

410-858-7432
**Phone Number**

July 8, 2019
**Hire Date**

SEND TO: HUMAN RESOURCES
COPY TO: COMPLIANCE DEPT.

version 3/2014

CONFIDENTIAL

OPCO_0018



# Investment Banking Analyst (2019)

Investment Banking Analyst (2019)

Bryce Carrasco
Saturday, May 25, 2019 5:13 PM
Requisition Id: 1032159

* Indicates a required field

**Oppenheimer**

Oppenheimer & Co. Inc. is an equal employment opportunity employer. Federal law prohibits discrimination because of race, sex, color, religion, national origin, handicap and age. State laws prohibit such discrimination and some states prohibit discrimination because of height, weight and marital status.

## APPLICATION FOR EMPLOYMENT

Incomplete applications will be rejected.

| First Name * | Middle Name | Last Name * |
|---|---|---|
| Bryce | | Carrasco |

Place of Residence

**Street Address ***

334 Ternwing Dr

**Address Line 2**

| City * | State or Province * | Zip/Postal Code * |
|---|---|---|
| Arnold | Maryland ▾ | 21012 |

**Country ***

UNITED STATES▾

| Primary Phone Number * | Type * | Secondary Phone Number | Type |
|---|---|---|---|
| 4108587432 | ⦿ Mobile | | ◯ Mobile |
| | ◯ Home | | ◯ Home |
| | ◯ Work | | ◯ Work |
| | ◯ Other | | ◯ Other |

CONFIDENTIAL

OPCO_0019

**Email Address \***

bocarrasco47@outlook.com

**Do you now or have you ever worked for Oppenheimer or any of its affiliates as an employee, consultant, independent contractor, or as an employee of a temporary/staffing agency with placement at Oppenheimer? \***

○ Yes

◉ No

**How did you hear about this job? \***

Other                              ▼

**If Referral, Agency, Other Internet Posting, Other, then list source:**

Network Connections

**Names of any relatives and/or acquaintances employed by Oppenheimer:**

**Minimum Annual Salary Desired: \***

$70,000

| School or Institution | Degree | Major/Discipline | Location |
|---|---|---|---|
| Loyola University Maryland | Bachelors Degree | Finance | Baltimore, MD |

Please list your work experience for the previous ten (10) years beginning with your most recent employer.

**Earliest Date Available to Start Work: \***

7/8/2019

*[handwritten: 08/2019 unemployed]*
*[handwritten: Loyola University 08/2015 - 05/2019]*
*[handwritten: St Marys HS 08/2011 - 07/2015]*
*[handwritten: Magothy River MS 08/2008 - 07/2011]*

**Company Name \***

Harris Williams & Co.

| Address \* | City \* | State \* |
|---|---|---|
| One International Place, Suite 2620 | Boston | Massachusetts |

| Position Title \* | Start Date \* | End Date \* | Supervisor's Name \* |
|---|---|---|---|
| Investment Banking Summer Analyst | 6/1/2018 | 8/10/2018 | Michael Quealy |

☐ Present

**State each and every reason for leaving and/or termination and whether voluntary or involuntary \***

Internship Ended, Voluntary

**Company Name \***

Capital Funding Group, Inc.

**Address \***        **City \***        **State \***

1422 Clarkview Road    Baltimore    Maryland

**Position Title \***    **Start Date \***    **End Date \***    **Supervisor's Name \***

Summer Analyst    5/1/2017    8/31/2017    Daniel Baird

☐ Present

**State each and every reason for leaving and/or termination and whether voluntary or involuntary \***

Internship Ended, Voluntary

Do not list expired licenses or certifications

**Please list all license/certifications you have and their appropriate issuing organization:**

**Please provide three (3) professional references**

**Name in Full \***        **Complete Address \***

Michael Quealy        One International Place, Suite 2620, Boston, MA 02110

**Telephone Number \***

617-654-2126

**Company Name \***        **Occupation \***        **Email Address \***

Harris Williams & Co.    Investment Banking Associate    mquealy@harriswilliams.com

**Name in Full \***    **Complete Address \***        **Telephone Number \***

Andrew Leed        575 Market Street, 31st Floor San Francisco, CA 94105    857-265-4041

**Company Name \***        **Occupation \***        **Email Address \***

Harris Williams & Co.    Director - TMT Group    aleed@harriswilliams.com

**Name in Full \***        **Complete Address \***

Danny Schatzman        575 Market Street, 31st Floor San Francisco, CA 94105

**Telephone Number \***

415-217-3408

**Company Name \***        **Occupation \***        **Email Address \***

Harris Williams & Co.    Investment Banking Analyst    dschatzman@harriswilliams.com

**Are you over 18 years old? \***

CONFIDENTIAL    OPCO_0021

◉ Yes

○ No

Are you legally authorized to work for Oppenheimer in the country in which the job is located? *

◉ Yes

○ No

Will you now or in the future require visa sponsorship for employment at Oppenheimer? *

○ Yes

◉ No

Are you currently subject to any post-termination employment restrictions (including, but not limited to, notice period, garden leave, non-diclosure of confidential information, non-compete/non-solicitation restrictions, etc.) *

○ Yes

◉ No

Are you currently or have you ever been a registered representative in the securities industry? *

○ Yes

◉ No

Have you ever been denied membership or registration by any national securities exchange, national securities association or any federal or state agency? *

○ Yes

◉ No

Has any national securities exchange, national securities association or federal or state agency ever, (a) taken any disciplinary action against you, (b) imposed sanctions upon you or (c) otherwise determined that you have violated any law? *

○ Yes

◉ No

Has any broker or dealer or any member firm of either any securities exchange or securities association with respect to which you have been previously associated in any capacity ever had its membership or registration denied, suspended or revoked during your association therewith? *

○ Yes

◉ No

Has any permanent or temporary injunction ever been issued against either you or against any broker or dealer or any member firm of any securities exchange or member firm of any securities association with respect to which you were previously associated in any capacity during your association therewith? *

○ Yes

◉ No

**Are you currently the subject or target of, or a party to a regulatory or compliance related inquiry or investigation? ***

○ Yes

◉ No

## VOLUNTARY SELF-IDENTIFICATION

**Race and Ethnicity ***

○ I choose not to self-identify at this time

◉ Hispanic or Latino

○ White (Not Hispanic or Latino)

○ Black or African American (Not Hispanic or Latino)

○ Native Hawaiian or Other Pacific Islander (Not Hispanic or Latino)

○ Asian (Not Hispanic or Latino)

○ American Indian or Alaska Native (Not Hispanic or Latino)

○ Two or More Races (Not Hispanic or Latino)

**Gender ***

○ I choose not to self-identify at this time.

○ Female

◉ Male

**Veteran Status Pre-Offer**
Sensitive Data - Click to Show

## APPLICANT AGREEMENT

**PLEASE READ CAREFULLY**

"I affirm that the statements made in the Application for Employment are true and that all information provided in this Application for Employment is correct and complete. I understand that this information will be verified, for which purpose I authorize and request any and all of my former employers and any other person to furnish to Oppenheimer & Co. Inc., or any agent acting on its behalf, any information that they may have concerning my credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, mode of living, ability, and business or employment activities, together with, in the case of former employers, a history of my employment by them and the reasons for the termination thereof. Moreover, I hereby release each such employer and each such other person from any liability of whatsoever nature by reason of furnishing such information to Oppenheimer & Co. Inc. or to any agent acting on its behalf. I agree to accept the decisions of the New York Stock Exchange, Inc. or any other regulatory authority on approval or denial of my employment upon applications for registration.

I hereby waive written notice from my former employers regarding the disclosure of disciplinary reports, letters of reprimand, or other notices of disciplinary action contained in my personnel records.

I understand that prior to my acceptance for employment and from time to time after I have been hired by Oppenheimer & Co. Inc. I may be required to submit to a medical test to detect the current use of illegal drugs or other controlled substances.

I understand that I may be discharged if any of the information furnished in this application is at any time found to be untrue, or if any material information is found to have been omitted.

Further, I recognize that I may be the subject of an investigative consumer report ordered by Oppenheimer & Co. Inc. requesting any of the above described information, and that I have the right to make a written request for complete and accurate disclosure by Oppenheimer & Co. Inc. of the nature and scope of the investigation requested and a copy of "A Summary of Your Rights Under the Fair Credit Reporting Act," as prescribed by the Federal Trade Commission."

In consideration of my employment, I agree to conform to the policies and procedures and the securities rules and regulations applicable to the business activities of Oppenheimer & Co. Inc. and I agree and understand that my employment and compensation can be terminated, with or without cause and with or without notice, at any time at the sole and absolute discretion of the Oppenheimer & Co. Inc. I understand that no employee or other representative of Oppenheimer & Co. Inc. has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing except with respect to: (1) variances to this policy authorized in writing by the chief executive officer of the Company or (2) formal written EMPLOYMENT AGREEMENTS, with sales trainees or financial advisors signed by an officer of the rank of executive vice president or above but only to the extent expressly so authorized in such agreements.

If you live or are appying for a job in the state of New York, please review the additional notices:

**NEW YORK.** The consumer has the right, upon written request, to be informed of whether or not an investigative consumer report was requested. If a consumer report is requested, the consumer will be provided with the name and address of the consumer-reporting agency furnishing the report. The consumer may inspect and receive a copy of the report by contacting that agency.

**Signature of Applicant (First and Last Name) ***          **Today's Date ***

Bryce Carrasco                                              5/25/2019

**Please confirm you read and understand the above. ***

☑ I Agree



Oppenheimer & Co. Inc.
85 Broad Street
New York, NY 10004

# Prospective Employee Disclosure of Political Contribution / Activity

Oppenheimer & Co. Inc., Oppenheimer Asset Management Inc. and certain of their subsidiaries (collectively the "Company") are registered investment advisers and as such are required to comply with federal, state and municipal regulations regarding payments to officials of government entities. Rule 206(4)-5 adopted under the Investment Advisers Act of 1940 prohibits investment advisers from receiving advisory fees from a government entity for two years after the adviser or certain of its employees make or coordinate contributions to certain elected officials or candidates.

Accordingly, before you may be hired by the Company, the Company needs to be informed whether or not you have made any contributions or coordinated contributions during the past two years.

For purposes of this disclosure form, a "government entity" includes all state and local governments, their agencies and instrumentalities, and all public pension plans and other collective government funds including participant directed plans such as 403(b), 457 and 529 plans. "Contributions" include donations, gifts, subscriptions, loans, and advances, payment of debts incurred in connection with an election campaign or inaugural or transition expenses of a successful candidate.

Complete all information below.

List any Contributions made by you, any member of your immediate family (spouse, children or parents who reside with you) or any PAC controlled by you or by any member of your immediate family during the past two years. If more than one Contribution, please attach additional page(s).

| Names of Contributor (if not you and relationship to you)<br>**None** | Name of recipient: |
|---|---|
| Office of (and office sought by) recipient: | Amount of contribution: |
| Relationship between you and the recipient: | If recipient was a candidate, were you permitted to vote for this person (check one) |
| Date of contribution: | ____YES ____NO |

Describe all political activity engaged in by you or any member of your immediate family during the past two years. The term "political activity" means (a) soliciting contributions, money, gifts, loans or anything else of value for or on behalf of any public official or political candidate; (b) causing a political contribution to be made through any PAC controlled by you or any member of your immediate family; (c) requesting, causing or unduly influencing any other person or entity (including members of your immediate family) to participate in the activities described above; or (d) volunteer activities in which expenses were incurred by you or any member of your immediate family.

Person(s) involved in the political activity:

Description of the political activity:

Name of and office of person or organization that benefitted from the political activity

Amount of expenses incurred as part of the political activity:

Do you have clients that are government entities? ____YES ✓ NO
If yes, provide names of all such clients below and a description of the type of account (brokerage, advisory, municipal finance or other):

Do you expect to solicit government entities for business? ____YES ✓ NO
If yes, describe the type of business to be solicited ( brokerage, advisory, municipal finance or other):

I understand that any information provided in this form is part of a decision by the Company to hire me and that any false statements made in this form may be grounds for termination of my employment with the Company.

| Name<br>Bryce Carrasco | Signature | Date<br>5/25/2019 |
|---|---|---|

CONFIDENTIAL

# ARBITRATION AGREEMENT

By entering into this Arbitration Agreement on this 2 day of July, 2019, you and Oppenheimer & Co. Inc. ("Oppenheimer") agree as set forth below. For purposes of this Arbitration Agreement, "Oppenheimer" shall include Oppenheimer and any and all of its former, existing and future parents, subsidiaries, partners, predecessors, successors and affiliated or related corporations and business entities:

1.    <u>Binding Mutual Arbitration</u>.  You and Oppenheimer agree that any Covered Claims (defined below) will be resolved by final and binding arbitration as set forth in this Arbitration Agreement.  This Arbitration Agreement applies with respect to all Covered Claims, whether initiated by you or Oppenheimer, and makes arbitration the required and exclusive forum for the resolution of all Covered Claims.  By entering into this Arbitration Agreement, you and Oppenheimer each acknowledge and agree that, to the fullest extent permitted by law, you and Oppenheimer are giving up your and its right to a jury trial in any forum.

2.    <u>Covered Claims</u>.  Except for Excluded Claims (defined below), and to the fullest extent permitted by law, Covered Claims include any and all claims or disputes between you and Oppenheimer or any of its current, former, and future officers, directors, employees, representatives, and agents, including but not limited to all claims and disputes based upon, arising out of, or which arose out of or in any way relate to your employment, compensation, and terms and conditions of employment with Oppenheimer, or the termination thereof, and claims based on, arising out of, or which arose out of or in any way relate to your recruitment or application for employment and hiring.  Covered claims include but are not limited to contract, tort, defamation, breach of fiduciary duty and other common law claims, wage and hour claims, statutory discrimination, harassment and retaliation claims and claims arising under, based on, or relating to any federal, state or local constitution, statute or regulation of any state or municipality, including, but not limited to, the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Worker Adjustment and Retraining Notification Act ("WARN"), the Equal Pay Act ("EPA"), the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and any other federal, state or local wage and hour, discrimination or employment law, and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized.  This Arbitration Agreement applies to all Covered Claims, including any Covered Claims based upon, arising out of, or which arose out of or in any way relate to acts and omissions that occurred before you and Oppenheimer entered into this Arbitration Agreement.

3.    <u>Excluded Claims</u>.  The following claims and disputes are not subject to this Arbitration Agreement:  (i) applications by any party for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, (ii) claims for workers' compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation benefits, (iii) claims for unemployment compensation benefits, (iv) claims under the National Labor Relations Act, as amended within the exclusive jurisdiction of the National Labor Relations Board,

CONFIDENTIAL         OPCO_0026

and (v) any claim that is expressly precluded from arbitration by a federal statute, law or regulation. Nothing in this Arbitration Agreement shall prohibit you from filing a charge, claim, or complaint or communicating or cooperating with, providing information to, or participating in an investigation by the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, any self-regulatory organization or any other federal, state or local administrative agency. You also have the right to challenge the validity of the terms and conditions of this Arbitration Agreement on any grounds that may exist in law and equity, and Oppenheimer shall not discipline, discharge, or engage in any retaliatory actions against you in the event you choose to do so or engage in other protected legal activity. Oppenheimer, however, reserves the right to enforce the terms and conditions of this Arbitration Agreement in any appropriate forum.

4.    **WAIVERS.    TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, YOU AND OPPENHEIMER AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD OR DETERMINED ON A CLASS ACTION, COLLECTIVE ACTION, OR REPRESENTATIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT YOU ARE NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION MEMBER OR REPRESENTATIVE OR TO RECEIVE ANY RECOVERY FROM A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR IN ARBITRATION.** You further agree that if you are included within any class action, collective action, or representative action in court or in arbitration involving a Covered Claim, you will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. Any issue concerning the validity or enforceability of any of the class action, collective action, and representative action waivers contained in this Arbitration Agreement ("Waivers") shall be governed by and determined under and in accordance with the Federal Arbitration Act ("FAA"), and shall be decided by a court of competent jurisdiction, and not by an arbitrator. Any issue concerning arbitrability of a particular issue or claim pursuant to this Arbitration Agreement (except for issues concerning the validity or enforceability of the class action, collective action, or representative action Waivers) must be resolved by the arbitrator, not the court. Insofar as any Covered Claim is permitted to proceed on a class action, collective action, or representative action basis, it must do so only in a court of competent jurisdiction and not in arbitration. Nothing in this Arbitration Agreement shall preclude you from pursuing or participating in a class action, collective action, or representative action in court where your claim is based solely on your status as a customer or an investor and does not arise out of or in any way relate to your employment relationship with Oppenheimer.

5.    Selection and Rules. Except as specified herein, the applicable arbitration rules will be the rules of the selected arbitration forum as indicated below, or any successor rules or, if none exist, the rules most applicable to employment claims and disputes and, if the forum no longer exists, the successor forum or, if neither the forum nor a successor forum exists, the rules most applicable to employment claims and disputes of a similar forum.

CONFIDENTIAL                                                          OPCO_0027

a. <u>Forum:</u>

<u>Registered Employees</u>. Except as specified herein, any arbitration of a Covered Claim will be conducted under the auspices and rules of the Financial Industry Regulatory Authority ("FINRA") in accordance with the FINRA Code of Arbitration Procedure for Industry Disputes ("FINRA Arbitration Rules").[1] If a Covered Claim may not be arbitrated before FINRA or is otherwise excluded from or not subject to arbitration before FINRA, then such Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Arbitration Rules"),[2] except as specified herein. In addition, employment discrimination claims under or based on any federal, state or local law (including claims of harassment and retaliation under those laws) will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Arbitration Rules, except as specified herein. To the extent any of the terms, conditions or requirements of this Arbitration Agreement conflict with the JAMS Arbitration Rules or FINRA Arbitration Rules, the terms, conditions or requirements of this Arbitration Agreement shall govern.

<u>Non-Registered Employees</u>. Except as specified herein, any arbitration of a Covered Claim will be conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Arbitration Rules. To the extent any of the terms, conditions or requirements of this Arbitration Agreement conflict with the JAMS Arbitration Rules, the terms, conditions or requirements of this Arbitration Agreement shall govern.

b. <u>Hearing Location</u>. Arbitration shall be held in the county of your current or last principal place of employment with Oppenheimer or, if not practicable, in the county closest to your current or last principal place of employment with Oppenheimer where the arbitration can be held. If your current or last principal place of employment with Oppenheimer is outside of the U.S., the arbitration shall be held in New York, New York.

c. <u>Arbitration Awards</u>. Arbitrators are required to issue a written award, and, subject to the parties' rights to appeal and seek vacatur under applicable law, their awards shall be final and binding, and any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction. No arbitration award or decision will have any preclusive effect as to any issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the arbitration.

d. <u>Remedies</u>. Arbitrators are authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of

---

[1]     Information about FINRA, including its FINRA Arbitration Rules, can be found at www.finra.org.

[2]     Information about JAMS, including its JAMS Arbitration Rules, can be found at www.jamsadr.com.

CONFIDENTIAL                                                                                          OPCO_0028

competent jurisdiction, including attorneys' fees and costs. As part of your costs, you may recover expert fees incurred by you to the same extent as you could in court.

e. Additional Provisions Applicable to Arbitration of Statutory Claims and Counterclaims. Subject to any applicable fee-shifting provisions, if you initiate arbitration of statutory claims with FINRA or JAMS or assert any statutory claims as counterclaims, you shall be responsible for the filing fee required to initiate arbitration of such claims or to assert such counterclaims up to the amount of the filing fee you would have incurred had you filed such claims or counterclaims in court and Oppenheimer shall be responsible for all additional arbitration filing fees, forum fees, arbitration fees, and other administrative fees and costs of the arbitration forum. In addition, you shall be entitled to recover attorney's fees and costs (including reasonable expert fees) in any such arbitration in which you prevail on your statutory claims or counterclaims to the same extent as you could in court.

f. Additional Provisions Applicable to Arbitration before JAMS.[3] Any arbitration before JAMS shall be conducted before a single arbitrator, unless all parties to the arbitration agree in writing to conduct the arbitration before a panel of three arbitrators. In any arbitration before JAMS, the parties may file and the arbitrator shall hear and decide at any point in the proceedings any motion permitted by the Federal Rules of Civil Procedure, including but not limited to motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine. In addition, the arbitration shall be subject to the same burdens of proof and statutes of limitations as if the Covered Claim was being heard in court. Except as provided by law and as provided above for statutory claims and counterclaims, in any arbitration before JAMS, you shall be responsible for any filing fee required to initiate arbitration or to assert any counterclaims up to the amount of the filing fee if any you would have incurred had you filed such claims in court, and Oppenheimer shall be responsible for all additional arbitration filing fees, forum fees, arbitrator fees, and other administrative fees and costs of the arbitration forum.

6. Severability. The provisions of this Arbitration Agreement shall be severable and, if any provision hereof shall be determined to be legally unenforceable or void, such unenforceable or void provision shall not affect the legality, validity or enforceability of the remaining provisions hereof and may be severed from the remaining provisions as appropriate, to the extent permitted by law, except that, in the event any of the Waivers set forth in Paragraph 4 of this Arbitration Agreement are determined to be invalid, unenforceable or void with respect to any Covered Claim, that Covered Claim and only that Covered Claim shall proceed in a court of competent jurisdiction and not in arbitration (and such court shall be the exclusive forum for such claim) and the Waivers set forth in Paragraph 4 above shall remain effective and enforceable with respect to all other Covered Claims. If a court of competent jurisdiction determines that a particular provision set forth herein is invalid, unenforceable or void under the applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall

---

[3] The provisions in this Paragraph 5(f) only apply to arbitrations before JAMS. They do not apply to arbitration before FINRA.

CONFIDENTIAL                                                                OPCO_0029

remain effective and enforceable in all other jurisdictions. <u>Binding</u>. The terms of this Arbitration Agreement shall extend to and be binding upon the beneficiaries, heirs, executors, administrators, successors and assigns of the undersigned.

7.      <u>Employment "at-will"</u>.  This Arbitration Agreement does not constitute, and may not be construed by you, as a guarantee of employment for any length of time.  Your employment with Oppenheimer is on an "at-will" basis.  Accordingly, your employment can be terminated with or without cause and with or without notice at any time at the option of either you or Oppenheimer.

8.      <u>Governing Law</u>.    This Arbitration Agreement, including the class action, collective action, and representative action Waivers set forth in Paragraph 4 of this Arbitration Agreement, shall be governed by and interpreted in accordance with the Federal Arbitration Act, but to the extent any issue relating to the Arbitration Agreement is governed by state law, it shall be governed by the laws of the state of New York without regard to choice of law principles.

9.      <u>Acknowledgement</u>.    You acknowledge and agree that, before agreeing to this Arbitration Agreement, you have had the opportunity and a reasonable period of time to review and consider this Arbitration Agreement, to review and discuss this Arbitration Agreement with counsel of your choice, and to raise any questions you wish of Oppenheimer.

OPPENHEIMER & CO. INC.

By: _Lenore P Denps_

(Manager)

Name:

Title:   Managing Director

Dated: _8|8|19_


_B26_

(Employee)

Name: _Bryce Carrasco_

Title: _Investment Banking Analyst_

Dated: _07/02/2019_



Date: July 1, 2019

To: Andrew Leed

Re: Bryce Carrasco

Dear Sir / Madam:

    Your name has been provided to Oppenheimer & Co. Inc. ("Oppenheimer") as a reference for **Bryce Carrasco.** Oppenheimer strives to hire professionals and support personnel who will further its corporate principles, as stated in its Code of Conduct and Business Ethics, which states that each employee must:

- Adhere to the rules and regulations that control the securities industry and to obey the law.

- Avoid any appearance of a conflict of interest.

- Maintain customer confidentiality and safe keep Oppenheimer and client assets.

- Treat everyone fairly, equitably and respectfully, including customers, suppliers, competitors, employees and others who deal with Oppenheimer.

    Oppenheimer asks that you take a moment and share with Oppenheimer any information that might impact Oppenheimer's decision to offer employment to the candidate referred to in this letter. Please return this letter with your comments, signature and date in the self-addressed,

stamped envelope.  If we do not receive a response from you, we will assume that you have nothing negative to report about the candidate.

If you have any questions, please contact the undersigned at 212-667-5355.  Many thanks for your input.


Oppenheimer & Co. Inc.,


By: _Pairig Crello_


(Please check as appropriate)


_____    I recommend the candidate to become an employee of Oppenheimer.

_____    I do not recommend the candidate to become an employee of Oppenheimer, for the following reasons:

_____

_____

CONFIDENTIAL

OPPENHEIMER

Date: July 1, 2019

To: Michael Quealy

Re: Bryce Carrasco

Dear Sir / Madam:

Your name has been provided to Oppenheimer & Co. Inc. ("Oppenheimer") as a reference for **Bryce Carrasco**. Oppenheimer strives to hire professionals and support personnel who will further its corporate principles, as stated in its Code of Conduct and Business Ethics, which states that each employee must:

- Adhere to the rules and regulations that control the securities industry and to obey the law.

- Avoid any appearance of a conflict of interest.

- Maintain customer confidentiality and safe keep Oppenheimer and client assets.

- Treat everyone fairly, equitably and respectfully, including customers, suppliers, competitors, employees and others who deal with Oppenheimer.

Oppenheimer asks that you take a moment and share with Oppenheimer any information that might impact Oppenheimer's decision to offer employment to the candidate referred to in this letter. Please return this letter with your comments, signature and date in the self-addressed,

stamped envelope. If we do not receive a response from you, we will assume that you have nothing negative to report about the candidate.

If you have any questions, please contact the undersigned at 212-667-5355. Many thanks for your input.

Oppenheimer & Co. Inc.,

By: _Paurse Prallos_

(Please check as appropriate)


_____ I recommend the candidate to become an employee of Oppenheimer.

_____ I do not recommend the candidate to become an employee of Oppenheimer, for the following reasons:

_____

_____

CONFIDENTIAL



85 Broad Street, New York, NY 10004

## ***INSIDER TRADING***

## CONFIRMATION OF RECEIPT AND

## ACKNOWLEDGMENT OF RESPONSIBILITY

Your signature is confirmation that you have in fact received this eight (8) page document.  Your signature is also confirmation that you will read <u>and understand</u> the foregoing procedures and will comply in <u>all</u> respects with such procedures.

*Bryce Carrasco*
_____
Employee's Name (please print)

*BOB*
_____
Employee's Signature

*Investment Banking — AB*
_____
Branch No. or Dept. Name

*07 / 02 / 2019*
_____
Date

IMPORTANT:    Detach this page from the policy before returning it, signed, to the Compliance Department.  Please keep the *Procedural Memorandum* for future reference.

Version 5/18



# ACKNOWLEDGMENT OF RECEIPT

# FINANCIAL REPORTING AND WHISTLEBLOWER POLICY

**TO:** New Hire

**RE:** Acknowledgment of Receipt of the Oppenheimer & Co. Inc. Financial Reporting and Whistleblower Policy

Supplement to Code of Business Conduct and Ethics for Directors, Officers and Employees

---

I acknowledge that I have read and understand Oppenheimer & Co. Inc.'s Financial Reporting and Whistleblower Policy, Supplement to Code of Business Conduct and Ethics for Directors, Officers and Employees. I hereby agree to adhere to the procedures thereof at all times during my association with Oppenheimer & Co. Inc.

Bryce Carrasco
Employee's Name (please print)

Bryce Carrasco
Employee's Signature

Baltimore - IBD
Branch # and Location or Department Name

7/2/2019
Date

CONFIDENTIAL

PPENHEIMER

The Financial Industry Regulatory Authority (FINRA) must approve all employees to work in the securities industry. Fingerprints will be checked through the FBI. If you have a felony conviction or have pled guilty or nolo contendere to a felony, we may rescind an offer of employment or terminate your employment. This may also be true of some misdemeanors if they involve theft, extortion, bribery, gambling, counterfeiting, forgery of any negotiable instruments involving money or wrongful taking of property.

## ADDENDUM TO APPLICATION FOR EMPLOYMENT

Date of Addendum __July 2__ 20 __19__

Name __Bryce Carrasco__

IN THE PAST TEN YEARS, HAVE YOU EVER BEEN CONVICTED IN A DOMESTIC, FOREIGN OR MILITARY COURT, OF A CRIME, FELONY OR MISDEMEANOR, INCLUDING NON-SECURITIES RELATED CASES SUCH AS MAJOR TRAFFIC VIOLATIONS (IE. DRIVING UNDER THE INFLUENCE?)  ☐ YES  ☒ NO

IF YES, GIVE DATE, NATURE AND DISPOSITION OF EACH CASE AND INDICATE WHETHER A FELONY OR MISDEMEANOR. (FIRM MAY REQUEST COPIES OF RELEVANT DOCUMENTS.) PLEASE REFER TO BOX ABOVE. _____

_____

_____

_____

ARE ANY FELONY CHARGES PENDING AGAINST YOU AT THE PRESENT TIME?  ☐ YES  ☒ NO
IF SO, GIVE DETAILS _____

_____

## CONVICTIONS

1.  Have you ever been convicted of or pled guilty or nolo contendere ("no contest") to any felony or for any misdemeanor pertaining to securities,commodities, banking, insurance or real estate (including but not limited to acting as or being associated with a broker-dealer investment company, investment adviser, futures sponsor, bank or savings and loan association), fraud, false statements or omissions, wrongful taking of property or bribery, forgery, counterfeiting or extortion?

    Yes ____  No ✓

2.  Have you ever used or otherwise been known by any other name or names?

    Yes ____  No ✓

3.  Have you ever been denied application for personal bond?

    Yes ____  No ✓

## BONDING

4.  Has any personal bond issued on you ever been revoked?

    Yes ____  No ✓

5.  Has a bonding company ever been required to make payment with respect to any personal bond issued on you?

    Yes ____  No ✓

CONFIDENTIAL

OPCO_0037

**Item 1**  Please provide copies of all court records and other official documents related to any such arrest or indictment.

None

**Item 2**  Please list any such name or names:

N/a

**Item 3**  Please give complete details of any such denial or personal bond.

N/a

**Item 4**  Please give complete details of any such revocation of personal bond.

None

**Item 5**  Please give complete details of any such payment by a bonding company.

N/a

I affirm that the foregoing statements are true and that all information provided is correct and complete. I understand that I may be discharged if any information furnished in this Addendum is at any time found to be untrue, or if any material information is found to have been omitted.

Signature of Applicant _____  Date 07/02/2019

For Office Use Only

Department _____

Branch _____

Position Title_____

CONFIDENTIAL

OPCO_0038

**OPPENHEIMER** Oppenheimer & Co. Inc.
85 Broad Street
New York, NY 10004

**Prospective Employee
Disclosure Regarding Private
Placements (Rule 506(d))**

By signing below, I represent and warrant that I am answering the following questions truthfully and to the best of my knowledge. If any question is answered "Yes," I agree to attach a separate sheet to this Questionnaire explaining that answer. I agree to inform Oppenheimer & Co. Inc. immediately if any of my responses provided in this Questionnaire change or if any situation arises that could, in the future, cause any of such responses to change.

1. **Have you been convicted, within the last ten years, of any felony or misdemeanor**
   (A) In connection with the purchase or sale of any security;
   (B) Involving the making of any false filing with the U.S. Securities and Exchange Commission (the "Commission"); or
   (C) Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities?
   �☐YES ☐NO

2. **Are you subject to any order, judgment or decree of any court of competent jurisdiction, entered within the last five years, that restrains or enjoins you from engaging or continuing to engage in any conduct or practice**
   (A) In connection with the purchase or sale of any security;
   (B) Involving the making of any false filing with the Commission; or
   (C) Arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of purchasers of securities?
   ☐YES ☐NO

3. **Are you currently subject to a final order of a state securities commission (or an agency or officer of a state performing like functions); a state authority that supervises or examines banks, savings associations, or credit unions; a state insurance commission (or an agency or officer of a state performing like functions); an appropriate federal banking agency; the U.S. Commodity Futures Trading Commission; or the National Credit Union Administration that**
   (A) Bars you from:
      1. Association with an entity regulated by such commission, authority, agency, or officer;
      2. Engaging in the business of securities, insurance or banking; or
      3. Engaging in savings association or credit union activities; or
   (B) Constitutes a final order based on a violation of any law or regulation that prohibits fraudulent, manipulative, or deceptive conduct entered within the last ten years?
   ☐YES ☐NO

4. **Are you subject to an order of the Securities and Exchange Commission entered pursuant to section 15(b) or 15B(c) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(b) or 78o-4(c)) or section 203(e) or (f) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-3(e) or (f)) that**
   (A) Suspends or revokes your registration as a broker, dealer, municipal securities dealer or investment adviser;
   (B) Places limitations on your activities, functions or operations; or
   (C) Bars you from being associated with any entity or from participating in the offering of any penny stock?
   ☐YES ☐NO

5. **Are you subject to any order of the Securities and Exchange Commission entered within the last five years that orders you to cease and desist from committing or causing a violation or future violation of**

(A) Any scienter-based anti-fraud provision of the federal securities laws, including without limitation section 17(a)(1) of the Securities Act of 1933 (15 U.S.C. 77q(a)(1)), section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) and 17 CFR 240.10b-5, section 15(c)(1) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(c)(1)) and section 206(1) of the Investment Advisers Act of 1940 (15 U.S.C. 80b-6(1)), or any other rule or regulation thereunder; or

(B) Section 5 of the Securities Act of 1933 (15 U.S.C. 77e)?

☐YES ☐NO

6. Are you suspended or expelled from membership in, or suspended or barred from association with a member of, a registered national securities exchange or a registered national or affiliated securities association for any act or omission to act constituting conduct inconsistent with just and equitable principles of trade?

☐YES ☐NO

7. Have you filed (as a registrant or issuer), or been named as an underwriter in, any registration statement or Regulation A offering statement filed with the Commission that, within the last five years, was the subject of a refusal order, stop order, or order suspending the Regulation A exemption, or are you the subject of an investigation or proceeding to determine whether a stop order or suspension order should be issued?

☐YES ☐NO

8. Are you subject to a United States Postal Service false representation order entered within the last five years, or are you subject to a temporary restraining order or preliminary injunction with respect to conduct alleged by the United States Postal Service to constitute a scheme or device for obtaining money or property through the mail by means of false representations?

☐YES ☐NO

The undersigned has executed this Questionnaire this day     of     May 25                    , 20  19  .

Bryce Carrasco
_____
Print Name

_Bryce Carrasco_
_____
Signature

CONFIDENTIAL



# Form W-4 (2019)

**Future developments.** For the latest information about any future developments related to Form W-4, such as legislation enacted after it was published, go to *www.irs.gov/FormW4*.

**Purpose.** Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. Consider completing a new Form W-4 each year and when your personal or financial situation changes.

**Exemption from withholding.** You may claim exemption from withholding for 2019 if **both** of the following apply.

• For 2018 you had a right to a refund of **all** federal income tax withheld because you had **no** tax liability, **and**

• For 2019 you expect a refund of **all** federal income tax withheld because you expect to have **no** tax liability.

If you're exempt, complete **only** lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2019 expires February 17, 2020. See Pub. 505, Tax Withholding and Estimated Tax, to learn more about whether you qualify for exemption from withholding.

## General Instructions

If you aren't exempt, follow the rest of these instructions to determine the number of withholding allowances you should claim for withholding for 2019 and any additional amount of tax to have withheld. For regular wages, withholding must be based on allowances you claimed and may not be a flat amount or percentage of wages.

You can also use the calculator at *www.irs.gov/W4App* to determine your tax withholding more accurately. Consider using this calculator if you have a more complicated tax situation, such as if you have a working spouse, more than one job, or a large amount of nonwage income not subject to withholding outside of your job. After your Form W-4 takes effect, you can also use this calculator to see how the amount of tax you're having withheld compares to your projected total tax for 2019. If you use the calculator, you don't need to complete any of the worksheets for Form W-4.

Note that if you have too much tax withheld, you will receive a refund when you file your tax return. If you have too little tax withheld, you will owe tax when you file your tax return, and you might owe a penalty.

**Filers with multiple jobs or working spouses.** If you have more than one job at a time, or if you're married filing jointly and your spouse is also working, read all of the instructions including the instructions for the Two-Earners/Multiple Jobs Worksheet before beginning.

**Nonwage income.** If you have a large amount of nonwage income not subject to withholding, such as interest or dividends, consider making estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. Otherwise, you might owe additional tax. Or, you can use the Deductions, Adjustments, and Additional Income Worksheet on page 3 or the calculator at *www.irs.gov/W4App* to make sure you have enough tax withheld from your paycheck. If you have pension or annuity income, see Pub. 505 or use the calculator at *www.irs.gov/W4App* to find out if you should adjust your withholding on Form W-4 or W-4P.

**Nonresident alien.** If you're a nonresident alien, see Notice 1392, Supplemental Form W-4 Instructions for Nonresident Aliens, before completing this form.

## Specific Instructions

### Personal Allowances Worksheet

Complete this worksheet on page 3 first to determine the number of withholding allowances to claim.

**Line C. Head of household please note:** Generally, you may claim head of household filing status on your tax return only if you're unmarried and pay more than 50% of the costs of keeping up a home for yourself and a qualifying individual. See Pub. 501 for more information about filing status.

**Line E. Child tax credit.** When you file your tax return, you may be eligible to claim a child tax credit for each of your eligible children. To qualify, the child must be under age 17 as of December 31, must be your dependent who lives with you for more than half the year, and must have a valid social security number. To learn more about this credit, see Pub. 972, Child Tax Credit. To reduce the tax withheld from your pay by taking this credit into account, follow the instructions on line E of the worksheet. On the worksheet you will be asked about your total income. For this purpose, total income includes all of your wages and other income, including income earned by a spouse if you are filing a joint return.

**Line F. Credit for other dependents.** When you file your tax return, you may be eligible to claim a credit for other dependents for whom a child tax credit can't be claimed, such as a qualifying child who doesn't meet the age or social security number requirement for the child tax credit, or a qualifying relative. To learn more about this credit, see Pub. 972. To reduce the tax withheld from your pay by taking this credit into account, follow the instructions on line F of the worksheet. On the worksheet, you will be asked about your total income. For this purpose, total income

------------------------------------------------ Separate here and give Form W-4 to your employer. Keep the worksheet(s) for your records. ------------------------------------------------

| Form **W-4** Department of the Treasury Internal Revenue Service | **Employee's Withholding Allowance Certificate** ► Whether you're entitled to claim a certain number of allowances or exemption from withholding is subject to review by the IRS. Your employer may be required to send a copy of this form to the IRS. | OMB No. 1545-0074 **2019** |

| 1 | Your first name and middle initial | Last name | 2 | Your social security number |
|---|---|---|---|---|
| | Bryce O | Carrasco | | ████████ |

Home address (number and street or rural route)

100 East Redwood Street

**3** ☑ Single ☐ Married ☐ Married, but withhold at higher Single rate.

Note: If married filing separately, check "Married, but withhold at higher Single rate."

City or town, state, and ZIP code

Baltimore, MD, 21202

**4** If your last name differs from that shown on your social security card, check here. You must call 800-772-1213 for a replacement card. ► ☐

| 5 | Total number of allowances you're claiming (from the applicable worksheet on the following pages) | 5 | |
| 6 | Additional amount, if any, you want withheld from each paycheck | 6 | $ |
| 7 | I claim exemption from withholding for 2019, and I certify that I meet **both** of the following conditions for exemption. | | |

• Last year I had a right to a refund of **all** federal income tax withheld because I had **no** tax liability, **and**

• This year I expect a refund of **all** federal income tax withheld because I expect to have **no** tax liability.

If you meet both conditions, write "Exempt" here . . . . . . . . . . . . . . . . . ► **7**

Under penalties of perjury, I declare that I have examined this certificate and, to the best of my knowledge and belief, it is true, correct, and complete.

**Employee's signature**
(This form is not valid unless you sign it.) ► *BOE*      Date ► 07/02/2019

| 8 | Employer's name and address (**Employer:** Complete boxes 8 and 10 if sending to IRS and complete boxes 8, 9, and 10 if sending to State Directory of New Hires.) | 9 First date of employment | 10 Employer identification number (EIN) |
|---|---|---|---|
| | Opennumera Co Inc 85 Broad St NY, NY 10004 | 7/8/19 | 135657518 |

For Privacy Act and Paperwork Reduction Act Notice, see page 4.      Cat. No. 10220Q      Form **W-4** (2019)

CONFIDENTIAL

# OPPENHEIMER

## PERSONNEL CHANGE NOTICE (PCN)

| NAME | | | JOB TITLE | BUSINESS TITLE | EMPLOYEE ADP # |
|---|---|---|---|---|---|
| CARRASCO (LAST) | BRYCE (FIRST) | (MIDDLE INITIAL) | ANALYST | | 209132 |

| DATE OF BIRTH | SEX | EEO | ☐ Non-Nominal Employee (Refer to the Compliance Manual for clarification) | IMMEDIATE SUPERVISOR MATT HUDSON |
|---|---|---|---|---|

| STREET ADDRESS | CITY, STATE, ZIP | APT. # |
|---|---|---|

| HOME TELEPHONE (INCLUDE AREA CODE) ( ) | DEPT./CODE DEPT BC | BRANCH OFFICE BALTIMORE | CRD # | FA/FC # |
|---|---|---|---|---|

| HIRE | TERMINATION | SALARY | STATUS |
|---|---|---|---|
| ☐ NEW EMPLOYEE | ☐ RESIGNED | STARTING AT: $_____PER YEAR | ☐ FINANCIAL ADVISOR/FINANCIAL CONSULTANT |
| ☐ REHIRE  *ORIGINAL EMPLOYMENT DATE* | ☐ VOLUNTARY  ☐ INVOLUNTARY* | **SALARY CHANGE** (STATE REASON BELOW) | ☐ STAFF |
| ☐ LEAVE OF ABSENCE | ☐ DISCHARGED* (detail below or attach explanation) | FROM $ 70,000 PER YEAR | ☑ REGISTERED_____ |
| ☐ RETURN FROM LEAVE OF ABSENCE | ☐ SUSPENDED* | TO $ 80,000 PER YEAR | ☐ NON-REGISTERED_____ |
| ☐ ADDITION  ☐ REPLACEMENT | * COPY MUST BE SENT TO REGISTRATION IMMEDIATELY @DL-REGISTRATIONDEPT@OPCO.COM | **TRANSFER** * | |
| NAME OF EMPLOYEE REPLACED: | | FROM_____ | |
| _____ | ☐ LAID OFF | TO_____ | NOTES & EXPLANATIONS |
| ☐ SINGLE | ☐ AUTHORIZED LEAVE WITHOUT PAY | * Manager must e-mail support@opco.com if employees email review group is changing | |
| ☐ MARITAL STATUS: ☐ MARRIED | ☐ DECEASED | **TERMS** | |
| ☐ DIVORCED | ☐ OTHER_____ | FIRST YEAR ANALYST | |
| ☐ Exempt  ☐ Non Exempt | PAY_____DAYS VACATION | TO SECOND YEAR ANALYST  $3333.³³ Semi | |

| EFFECTIVE DATE OF ABOVE ACTIONS  8/3/2020 | FINAL APPROVAL: |
|---|---|

| 7/14/2020 | Beth Kingsbury | |
|---|---|---|
| DATE | DEPARTMENT OR BRANCH MANAGER | HUMAN RESOURCES |

ABOVE EMPLOYEE HAS CHANGED: ☐ NAME ☐ ADDRESS ☐ PHONE ☐ MARITAL STATUS

**RETURN COMPLETED FORM TO:** DL-HumanResources@opco.com or Fax: 248-637-8390

REDACTED



Welcome to Oppenheimer & Co. Inc. We are excited to have you join our team!
Upon your acceptance of employment, please complete the below information and return to your hiring manager.

# NEW HIRE DATA COLLECTION FORM

Work Location: **Baltimore, MD**   Department: **Rental Serv**   Manager: **Matthew Hudson**

Job Title: **Analyst**   Expected first day of work: **July 8, 2019**

## Personal Information

Full Name: **Carrasco**   **Bryce**   **O**
(Legal)   Last   First   M.I.

Address: **334 Ternwing Drive**
Street Address   Apartment/Unit #

**Arnold**   **MD**   **21012**
City   State   ZIP Code

Phone: **(410) 858-7432**   E-mail: **bocarrasco47@outlook.com**

Social Security Number: ▮▮▮▮▮▮▮   Date of Birth: **09 / 11 / 1996**

Are you a citizen of the United States?  YES ☑  NO ☐    If no, are you authorized to work in the U.S.?  YES ☐  NO ☐

Marital Status:  Single ☑  Married ☐  Divorced ☐

## EEOC Reporting* (Optional)

Are you Hispanic or Latino?  YES ☑  NO ☐

If above answer is no, the please indicate your race from the below list:

☐ White

☐ Black or African American

☐ Native Hawaiian or other Pacific Islander

☐ Asian

☐ American Indian or Alaska Native

☐ Two or More races

*In order to ensure compliance with federal, civil rights laws and regulations, Oppenheimer & Co. Inc. must provide employment reports to the Equal Employment Opportunity Commission on a periodic basis. We will use your above answers to aid in this reporting process. The completion of this section is voluntary.





# Employment Eligibility Verification
## Department of Homeland Security
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-9**
OMB No. 1615-0047
Expires 08/31/2019

▶ **START HERE:** Read instructions carefully before completing this form. The instructions must be available, either in paper or electronically, during completion of this form. Employers are liable for errors in the completion of this form.

**ANTI-DISCRIMINATION NOTICE:** It is illegal to discriminate against work-authorized individuals. Employers **CANNOT** specify which document(s) an employee may present to establish employment authorization and identity. The refusal to hire or continue to employ an individual because the documentation presented has a future expiration date may also constitute illegal discrimination.

## Section 1. Employee Information and Attestation *(Employees must complete and sign Section 1 of Form I-9 no later than the first day of employment, but not before accepting a job offer.)*

| Last Name *(Family Name)* | First Name *(Given Name)* | Middle Initial | Other Last Names Used *(if any)* |
|---|---|---|---|
| Carrasco | Bryce | O | N/A |

| Address *(Street Number and Name)* | Apt. Number | City or Town | State | ZIP Code |
|---|---|---|---|---|
| 100 East Redwood Street | 2013 | Baltimore | MD | 21202 |

| Date of Birth *(mm/dd/yyyy)* | U.S. Social Security Number | Employee's E-mail Address | Employee's Telephone Number |
|---|---|---|---|
| 09/11/1996 | ▓▓▓▓▓▓▓ | bocarrasco47@outlook.com | 1-(410)-858-7432 |

I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form.

**I attest, under penalty of perjury, that I am (check one of the following boxes):**

- [x] 1. A citizen of the United States
- [ ] 2. A noncitizen national of the United States *(See instructions)*
- [ ] 3. A lawful permanent resident    (Alien Registration Number/USCIS Number): _____
- [ ] 4. An alien authorized to work    until (expiration date, if applicable, mm/dd/yyyy): _____

Some aliens may write "N/A" in the expiration date field. *(See instructions)*

*Aliens authorized to work must provide only one of the following document numbers to complete Form I-9:*
*An Alien Registration Number/USCIS Number OR Form I-94 Admission Number OR Foreign Passport Number.*

**1.** Alien Registration Number/USCIS Number: _____
**OR**
**2.** Form I-94 Admission Number: _____
**OR**
**3.** Foreign Passport Number: _____
Country of Issuance: _____

QR Code - Section 1
Do Not Write In This Space

| Signature of Employee | Today's Date *(mm/dd/yyyy)* |
|---|---|
| Boo | 07/02/2019 |

## Preparer and/or Translator Certification (check one):

- [x] I did not use a preparer or translator.
- [ ] A preparer(s) and/or translator(s) assisted the employee in completing Section 1.

*(Fields below must be completed and signed when preparers and/or translators assist an employee in completing Section 1.)*

I attest, under penalty of perjury, that I have assisted in the completion of Section 1 of this form and that to the best of my knowledge the information is true and correct.

| Signature of Preparer or Translator | Today's Date *(mm/dd/yyyy)* |
|---|---|
| | |

| Last Name *(Family Name)* | First Name *(Given Name)* |
|---|---|
| | |

| Address *(Street Number and Name)* | City or Town | State | ZIP Code |
|---|---|---|---|
| | | | |

 *Employer Completes Next Page* 



### Employment Eligibility Verification
### Department of Homeland Security
U.S. Citizenship and Immigration Services



## Section 2. Employer or Authorized Representative Review and Verification

*(Employers or their authorized representative must complete and sign Section 2 within 3 business days of the employee's first day of employment. You must physically examine one document from List A OR a combination of one document from List B and one document from List C as listed on the "Lists of Acceptable Documents.")*

| Employee Info from Section 1 | Last Name *(Family Name)* Carrasco | First Name *(Given Name)* Bryce | M.I. O | Citizenship/Immigration Status Citizen |
|---|---|---|---|---|

| List A | OR | List B | AND | List C |
|---|---|---|---|---|
| Identity and Employment Authorization | | Identity | | Employment Authorization |

| List A | List B | List C |
|---|---|---|
| **Document Title** Passport | **Document Title** | **Document Title** |
| **Issuing Authority** USA | **Issuing Authority** | **Issuing Authority** |
| **Document Number** ███████ | **Document Number** | **Document Number** |
| **Expiration Date** *(if any)(mm/dd/yyyy)* 05/31/2025 | **Expiration Date** *(if any)(mm/dd/yyyy)* | **Expiration Date** *(if any)(mm/dd/yyyy)* |
| **Document Title** | | |
| **Issuing Authority** | | |
| **Document Number** | **Additional Information** | **QR Code - Sections 2 & 3** Do Not Write In This Space |
| **Expiration Date** *(if any)(mm/dd/yyyy)* | | |
| **Document Title** | | |
| **Issuing Authority** | | |
| **Document Number** | | |
| **Expiration Date** *(if any)(mm/dd/yyyy)* | | |

**Certification:** I attest, under penalty of perjury, that (1) I have examined the document(s) presented by the above-named employee, (2) the above-listed document(s) appear to be genuine and to relate to the employee named, and (3) to the best of my knowledge the employee is authorized to work in the United States.

**The employee's first day of employment (mm/dd/yyyy):** 07/08/2014 *(See instructions for exemptions)*

| Signature of Employer or Authorized Representative Lisa Damato | Today's Date *(mm/dd/yyyy)* 07/08/2014 | Title of Employer or Authorized Representative Associate |
|---|---|---|
| Last Name of Employer or Authorized Representative Damato | First Name of Employer or Authorized Representative Lisa | Employer's Business or Organization Name Oppenheimer Co Inc |
| Employer's Business or Organization Address (Street Number and Name) 85 Broad Street | City or Town NY | State NY | ZIP Code 10004 |

## Section 3. Reverification and Rehires *(To be completed and signed by employer or authorized representative.)*

| A. New Name *(if applicable)* | | | B. Date of Rehire *(if applicable)* |
|---|---|---|---|
| Last Name *(Family Name)* | First Name *(Given Name)* | Middle Initial | Date *(mm/dd/yyyy)* |

**C.** If the employee's previous grant of employment authorization has expired, provide the information for the document or receipt that establishes continuing employment authorization in the space provided below.

| Document Title | Document Number | Expiration Date *(if any) (mm/dd/yyyy)* |
|---|---|---|

I attest, under penalty of perjury, that to the best of my knowledge, this employee is authorized to work in the United States, and if the employee presented document(s), the document(s) I have examined appear to be genuine and to relate to the individual.

| Signature of Employer or Authorized Representative | Today's Date *(mm/dd/yyyy)* | Name of Employer or Authorized Representative |
|---|---|---|



## OPPENHEIMER

### NEW EMPLOYEE ACKNOWLEDGEMENT FORM

RE: OUTSIDE INVESTMENTS DISCLOSURE FORM

Oppenheimer & Co. Inc. expects their full-time employees to avoid any outside investment that might interfere or appear to interfere with the independent exercise of the employee's judgment regarding the best interests of the Firm and its clients. This form is intended to facilitate the disclosure of such investments.

Approval of any outside investment in a securities, financial or kindred business will *not* be required with regard to stock ownership or financial interest in any such business if it is publicly owned UNLESS you hold a controlling interest herein. However, securities must be held in a brokerage account at Oppenheimer & Co. Inc. (unless an exception has been granted initially by the Branch/Dept. Manager and finally by the Compliance Dept.)

**List of Outside Investments:**

Micron Technology, Inc. (MU)

Daske, Inc. (DSKE, DSKEW)

Bewhere Holdings (BEW-V)

Armada Data Corp (ARD-V)

*(If NONE, please state above.)*      *(If more space is needed please use the reverse side.)*

Please be advised that clearance of activities must be approved first by the Branch Office or Department Manager and forwarded to the Compliance Department for final review. Approval is based on an assessment of the actual or potential conflicts of interest, Firm policy and industry rules and regulations. If seeking approval, please complete the "Outside Investments application form" which can be found of the Intranet under 'Applications and Printable forms'.

If this form is 'NOT APPLICABLE' or 'NONE' please state so in the space provided above. Your signature below is and attestation that the information provided above is accurate as of the date on this form.

**Print Name:** Bryce Carrasco

**Signature:** Bryce Carrasco          **Date:** 7/2/2019

**Your Title:** Investment Banking Analyst

**Branch No./Dept. Name:** Rental Services  -AB

**SEND TO: HUMAN RESOURCES**
**COPY TO: COMPLIANCE DEPT**
CONFIDENTIAL



85 Broad Street, New York, NY 10004

## *ELECTRONIC COMMUNICATIONS*

## CONFIRMATION OF RECEIPT AND

## ACKNOWLEDGMENT OF RESPONSIBILITY

Your signature is confirmation that you have in fact received this nine (9) page document. Your signature is also confirmation that you will read <u>and understand</u> the foregoing procedures and will comply in <u>all</u> respects with such policies. All employees are required to comply.

PRINT NAME: Bryce Carrasco

BRANCH/DEPARTMENT: Investment Banking — AB

EMPLOYEE
SIGNATURE:

DATE: 07 / 02 / 2019

IMPORTANT: Detach this page from the policy before returning it, signed, to the Compliance Department. Please keep the *Electronic Communications Policy* for future reference.

Version 8/16

# FORM U4
# UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

**OPPENHEIMER & CO. INC.(249)**                     Rev. Form U4 (05/2009)

**Individual Name: Carrasco, Bryce (6969159)**      U4 Initial - Filing ID: 52092695

                                                    Filing Date:

## 1. General Information

| First Name: | Middle Name: | Last Name: | Suffix: |
|---|---|---|---|
| Bryce | | Carrasco | |

| *Firm* CRD #: | *Firm* Name: | Employment Date (MM/DD/YYYY): |
|---|---|---|
| 249 | OPPENHEIMER & CO. INC. | 07/08/2019 |

| *Firm* Billing Code: | *Individual CRD #:* | Individual SSN: |
|---|---|---|
| BC | 6969159 | xxx-xx-xxxx |

**Do you have an independent contractor relationship with the above named *firm*?:**

◯ Yes  ◉ No

**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Address | Private Residence | Type of Office | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| 492607 | A832 | A832 | 85 BROAD STREET 23RD FLOOR NEW YORK, NY 10004 United States | No | Supervised From | 07/08/2019 | |
| 358097 | EC | EC | 100 INTERNATIONAL DRIVE 19TH FLOOR BALTIMORE, MD 21202 United States | No | Located At | 07/08/2019 | |

## 2. Fingerprint Information

Electronic Filing Representation

◉  By selecting this option, I represent that I am submitting, have submitted, or promptly will submit to the appropriate *SRO* a fingerprint card as required under applicable *SRO* rules; or

   Fingerprint card barcode

◯  By selecting this option, I represent that I have been employed continuously by the *filing firm* since the last submission of a fingerprint card to CRD and am not required to resubmit a fingerprint card at this time; or,

◯  By selecting this option, I represent that I have been employed continuously by the *filing firm* and my fingerprints have been processed by an *SRO* other than FINRA. I am submitting, have submitted, or promptly will submit the processed results for posting to CRD.

Exceptions to the Fingerprint Requirement

◯  By selecting one or more of the following two options, I affirm that I am exempt from the federal fingerprint requirement because I/*filing firm* currently satisfy(ies) the requirements of at least one of the permissive exemptions indicated below pursuant to Rule 17f-2 under the Securities Exchange Act of 1934, including any notice or application requirements specified therein:

CONFIDENTIAL

☐ Rule 17f-2(a)(1)(i)

☐ Rule 17f-2(a)(1)(iii)

Investment Adviser Representative Only Applicants

○ I affirm that I am applying only as an investment adviser representative and that I am not also applying or have not also applied with this *firm* to become a broker-dealer representative. If this radio button/box is selected, continue below.

   ○ I am applying for registration only in *jurisdictions* that do not have fingerprint card filing requirements, or

   ○ I am applying for registration in *jurisdictions* that have fingerprint card filing requirements and I am submitting, have submitted, or promptly will submit the appropriate fingerprint card directly to the *jurisdictions* for processing pursuant to applicable *jurisdiction* rules.

### 3. Registration With Unaffiliated Firms

Some *jurisdictions* prohibit "dual registration", which occurs when an individual chooses to maintain a concurrent registration as a representative/agent with two or more *firms* (either BD or IA *firms*) that are not affiliated. *Jurisdictions* that prohibit dual registration would not, for example, permit a broker-dealer agent working with brokerage *firm* A to maintain a registration with brokerage *firm* B if *firms* A and B are not owned or controlled by a common parent. Before seeking a dual registration status, you should consult the applicable rules or statutes of the *jurisdictions* with which you seek registration for prohibitions on dual registrations or any liability provisions.

Please indicate whether the individual will maintain a "dual registration" status by answering the questions in this section. (Note: An individual should answer 'yes' only if the individual is currently registered and is seeking registration with a *firm* (either BD or IA) that is not affiliated with the individual's current employing *firm*. If this is an initial application, an individual must answer 'no' to these questions; a "dual registration" may be initiated only after an initial registration has been established).

Answer "yes" or "no" to the following questions:                      **Yes   No**

**A.** Will *applicant* maintain registration with a broker-dealer that is not *affiliated* with the *filing firm*? If you answer "yes", list the *firm*(s) in Section 12 (Employment History).    ○   ⊙

**B.** Will *applicant* maintain registration with an investment adviser that is not *affiliated* with the *filing firm*? If you answer "yes", list the *firm*(s) in Section 12 (Employment History).    ○   ⊙

### 4. SRO Registrations

**Select appropriate *SRO* Registration requests.**

**Qualifying examinations will be automatically scheduled if needed. If you are only scheduling or rescheduling an exam, skip this section and complete Section 7 (EXAMINATION REQUESTS).**

### REPRESENTATIVE LEVEL REGISTRATION CATEGORIES

| REGISTRATION CATEGORIES | FINRA | NYSE | NYSE-AMER | NYSE-ARCA | NYSE-CHI | NYSE-NAT | CBOE | CBOE C2 | CBOE BYX | CBOE BZX | CBOE EDGA | CBOE EDGX | NQX | BX | ISE | ISE GEMX | ISE MRX | PHLX | MIAX Emerald | MIAX Options | MIAX PEARL | BOX | IEX |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| IR - Investment Company and Variable Contracts Products Rep. (S6TO) | ☐ | | | | | | | | | | | | | | | | | | | | | | |
| GS - Full Registration/General Securities | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Representative
(S7TO)

DR - Direct
Participation Program
Representative
(S22TO)

MR - Municipal
Securities
Representative
(S52TO)

TD - Securities
Trader (S57TO)

IB - Investment
Banking
Representative
(S79TO)

PR - Limited
Representative -
Private Securities
Offerings (S82TO)

RS - Research
Analyst (S86 and
S87)

OS - Operations
Professional (S99TO)

Other

_____
(Paper Form Only)

**RETIRED
REGISTRATION
CATEGORIES**

AR - Assistant
Representative/Order
Processing

CD - Canada-Limited
General Securities
Registered
Representative

CN - Canada-Limited
General Securities
Registered
Representative

CS - Corporate
Securities
Representative

FA - Foreign
Associate

IE - United Kingdom
- Limited General
Securities Registered
Representative

OR - Options

Representative

RG - Government ☐
Securities
Representative

## PRINCIPAL LEVEL REGISTRATION CATEGORIES

| REGISTRATION CATEGORIES | FINRA | NYSE | NYSE-AMER | NYSE-ARCA | NYSE-CHI | NYSE-NAT | CBOE | CBOE C2 | CBOE BYX | CBOE BZX | CBOE EDGA | CBOE EDGX | NQX | BX | ISE | ISE GEMX | ISE MRX | PHLX | MIAX Emerald | MIAX Options | MIAX PEARL | BOX | IEX |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OP - Registered Options Principal (S4) | ☐ | | ☐ | ☐ | | | ☐ | ☐ | | ☐ | | ☐ | | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ | ☐ | ☐ | |
| SU - General Securities Sales Supervisor (S9 and S10) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | |
| CO - Compliance Official (S14) | | ☐ | ☐ | | ☐ | ☐ | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ |
| CR - Compliance Officer (S14) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | | | | | | | | | | | | | | | | |
| SA - Supervisory Analyst (S16) | ☐ | ☐ | ☐ | | | | | | | | | | | | | | | | | | | | |
| GP - General Securities Principal (S24) | ☐ | ☐ | ☐ | ☐ | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | | |
| RP - Research Principal (S24) | ☐ | | | | | | | | | | | | | | | | | | | | | | |
| BP - Investment Banking Principal (S24) | ☐ | | | | | | | | | | | | | | | | | | | | | | |
| TP - Securities Trader Principal (S24) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| PO - Private Securities Offerings Principal (S24) | ☐ | | | | | | | | | | | | | | | | | | | | | | |
| IP - Investment Company and Variable Contracts Products Principal (S26) | ☐ | | | | | | | | | | | | | | | | | | | | | | |
| FN - Financial and Operations Principal (S27) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| FI - Introducing Broker-Dealer/Financial and Operations Principal (S28) | ☐ | ☐ | ☐ | | ☐ | ☐ | | | | | | | | | | | | | | | | | ☐ |

DP - Direct Participation Program Principal (S39)

FP - Municipal Fund (S51) ☐

MP - Municipal Securities Principal (S53) ☐ ☐ ☐    ☐

PG - Government Securities Principal ☐

Other

_____

(Paper Form Only)

**RETIRED REGISTRATION CATEGORIES**

SM - Securities Manager ☐ ☐

## EXCHANGE-SPECIFIC REGISTRATION CATEGORIES

| REGISTRATION CATEGORIES | FINRA | NYSE | NYSE-AMER | NYSE-ARCA | NYSE-CHI | NYSE-NAT | CBOE | CBOE C2 | CBOE BYX | CBOE BZX | CBOE EDGA | CBOE EDGX | NQX | BX | ISE | ISE GEMX | ISE MRX | PHLX | MIAX Emerald | MIAX Options | MIAX PEARL | BOX | IEX |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AP - Approved Person | | ☐ | ☐ | ☐ | | | ☐ | ☐ | | | | | | | | | | | | | | ☐ | |
| CF - Compliance Official Specialist | | ☐ | ☐ | | | | | | | | | | | | | | | | | | | | |
| FE - Floor Employee | | ☐ | ☐ | ☐ | | | | | | | | | | | | | | ☐ | | | | ☐ | |
| LE - Securities Lending Representative | | ☐ | ☐ | | | | | | | | | | | | | | | | | | | | |
| LS - Securities Lending Supervisor | | ☐ | ☐ | | | | | | | | | | | | | | | | | | | | |
| ME - Member Exchange | | ☐ | | | ☐ | | | | | | | | | | | | | | | ☐ | | ☐ | |
| MT - Market Maker Authorized Trader-Equities | | ☐ | ☐ | ☐ | ☐ | ☐ | | | ☐ | ☐ | ☐ | | | | | | | | | | | | |
| OM - Options Member (S57TO) | | | ☐ | ☐ | | | | | | | | | | | | | | | | | | | |
| CT - Securities Trader Compliance Officer (S14) | | | | | ☐ | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| FL - Floor Clerk - Equities (S19) | | ☐ | | | | | | | | | | | | | | | | | | | | | |

## 5. Jurisdiction Registration

Check appropriate *jurisdiction(s)* for broker-dealer agent (AG) and/or investment adviser representative

CONFIDENTIAL

**(RA) registration requests.**

| JURISDICTION | AG | RA | JURISDICTION | AG | RA | JURISDICTION | AG | RA | JURISDICTION | AG | RA |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | ☐ | ☐ | Illinois | ☐ | ☐ | Montana | ☐ | ☐ | Puerto Rico | ☐ | ☐ |
| Alaska | ☐ | ☐ | Indiana | ☐ | ☐ | Nebraska | ☐ | ☐ | Rhode Island | ☐ | ☐ |
| Arizona | ☐ | ☐ | Iowa | ☐ | ☐ | Nevada | ☐ | ☐ | South Carolina | ☐ | ☐ |
| Arkansas | ☐ | ☐ | Kansas | ☐ | ☐ | New Hampshire | ☐ | ☐ | South Dakota | ☐ | ☐ |
| California | ☐ | ☐ | Kentucky | ☐ | ☐ | New Jersey | ☐ | ☐ | Tennessee | ☐ | ☐ |
| Colorado | ☐ | ☐ | Louisiana | ☐ | ☐ | New Mexico | ☐ | ☐ | Texas | ☐ | ☐ |
| Connecticut | ☐ | ☐ | Maine | ☐ | ☐ | New York | ☐ | ☐ | Utah | ☐ | ☐ |
| Delaware | ☐ | ☐ | Maryland | ☐ | ☐ | North Carolina | ☐ | ☐ | Vermont | ☐ | ☐ |
| District of Columbia | ☐ | ☐ | Massachusetts | ☐ | ☐ | North Dakota | ☐ | ☐ | Virgin Islands | ☐ | ☐ |
| Florida | ☐ | ☐ | Michigan | ☐ | ☐ | Ohio | ☐ | ☐ | Virginia | ☐ | ☐ |
| Georgia | ☐ | ☐ | Minnesota | ☐ | ☐ | Oklahoma | ☐ | ☐ | Washington | ☐ | ☐ |
| Hawaii | ☐ | ☐ | Mississippi | ☐ | ☐ | Oregon | ☐ | ☐ | West Virginia | ☐ | ☐ |
| Idaho | ☐ | ☐ | Missouri | ☐ | ☐ | Pennsylvania | ☐ | ☐ | Wisconsin | ☐ | ☐ |
| | | | | | | | | | Wyoming | ☐ | ☐ |

**AGENT OF THE ISSUER REGISTRATION (AI)** ☐ **Indicate 2 letter *jurisdiction* code(s):**_____

## 6. Registration Requests with Affiliated Firms

Will *applicant* maintain registration with *firm*(s) under common ownership or control with the *filing firm*? ☐ Yes ⦿ No
If "yes", fill in the details to indicate a request for registration with additional *firm*(s).

## 7. Examination Requests

**Scheduling or Rescheduling Examinations** Complete this section only if you are scheduling or rescheduling an examination or continuing education session. Do not select the Series 63 (S63) or Series 65 (S65) examinations in this section if you have completed Section 5 (JURISDICTION REGISTRATION) and have selected registration in a *jurisdiction*. If you have completed Section 5 (JURISDICTION REGISTRATION), and requested an AG registration in a *jurisdiction* that requires that you pass the S63 examination, an S63 examination will be automatically scheduled for you upon submission of this Form U4. If you have completed Section 5 (JURISDICTION REGISTRATION), and requested an RA registration in a *jurisdiction* that requires that you pass the S65 examination, an S65 examination will be automatically scheduled for you upon submission of this Form U4.

| | | | | |
|---|---|---|---|---|
| ☐ SIE | ☐ S14 | ☐ S28 | ☐ S51 | ☐ S79TO |
| ☐ S3 | ☐ S16 | ☐ S30 | ☐ S52TO | ☐ S82TO |
| ☐ S4 | ☐ S22TO | ☐ S31 | ☐ S53 | ☐ S86 |
| ☐ S6TO | ☐ S23 | ☐ S32 | ☐ S57TO | ☐ S87 |
| ☐ S7TO | ☐ S24 | ☐ S34 | ☑ S63 | ☐ S99TO |
| ☐ S9 | ☐ S26 | ☐ S39 | ☐ S65 | ☐ S101 |

☐ S10        ☐ S27        ☐ S50        ☐ S66        ☐ S201

Other _____ (Paper Form Only)

OPTIONAL: Foreign Exam City _____      Date (MM/DD/YYYY) _____

If you have taken an exam prior to registering through the CRD system please enter the exam type and date taken.

**Exam type:**                **Date taken:**

## 8. Professional Designations

**Select each designation you currently maintain.**

☐ Certified Financial Planner

☐ Chartered Financial Consultant (ChFC)

☐ Personal Financial Specialist (PFS)

☐ Chartered Financial Analyst (CFA)

☐ Chartered Investment Counselor (CIC)

## 9. Identifying Information/Name Change

| **First Name:** | **Middle Name:** | **Last Name:** | **Suffix:** |
|---|---|---|---|
| Bryce | | Carrasco | |

| **State of Birth** | **Province of Birth** | **Country of Birth** |
|---|---|---|
| District of Columbia | | United States |

| **Date of Birth(MM/DD/YYYY)** | **Sex** | **Hair Color** | **Eye Color** |
|---|---|---|---|
| 09/11/1996 | ◉ Male ○ Female | Brown | Brown |

| **Height (ft)** | **Height (in)** | **Weight (lbs)** |
|---|---|---|
| 5 | 8 | 170 |

## 10. Other Names

No Information Filed.

## 11. Residential History

| From | To | Street Address |
|---|---|---|
| 07/2019 | PRESENT | 100 East Redwood Street<br>Baltimore, MD 21202<br>United States |
| 09/1996 | 06/2019 | 334 Ternwing Drive<br>Arnold, MD 21012<br>United States |

## 12. Employment History

| From | To | Name of Firm or Company | Address | Investment Related | Position Held |
|---|---|---|---|---|---|

| From | To | Name of Firm or Company | Address | Investment Related | Position Held |
|------|-----|------------------------|---------|--------------------|--------------|
| 07/2019 | PRESENT | Oppenheimer Co. Inc. | Baltimore, MD United States | Yes | Investment Banking Analyst |
| 09/2015 | 05/2019 | Loyola University Maryland | Baltimore, MD United States | No | full-time student |
| 06/2018 | 08/2018 | Harris Williams & Co. | Boston, MA United States | Yes | Investment Banking Summer Analyst |
| 05/2017 | 08/2017 | The Capital Funding Group, Inc. | Baltimore, MD United States | Yes | Summer Analyst |
| 06/2015 | 08/2015 | No Employer | Annapolis, MD United States | No | Unemployed |
| 07/2009 | 05/2015 | St. Mary's Annapolis | Annapolis, MD United States | No | full-time student |

### 13. Other Business

Are you currently engaged in any other business either as a proprietor, partner, officer, director, employee, trustee, agent or otherwise? (Please exclude non *investment-related* activity that is exclusively charitable, civic, religious or fraternal and is recognized as tax exempt.) If YES, please provide the following details: the name of the other business, whether the business is *investment-related*, the address of the other business, the nature of the other business, your position, title, or relationship with the other business, the start date of your relationship, the approximate number of hours/month you devote to the other business, the number of hours you devote to the other business during securities trading hours, and briefly describe your duties relating to the other business.

   ○ **Yes**   ● **No**

If 'Yes', please enter details below.

### 14. Disclosure Questions

IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IS 'YES', COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S)

**REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U4 INSTRUCTIONS FOR EXPLANATIONS OF ITALICIZED TERMS.**

#### Criminal Disclosure

**14A. (1) Have you ever:**             **Yes No**

     (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to any *felony*?    ○   ●

     (b) been *charged* with any *felony*?    ○   ●

   **(2) Based upon activities that occurred while you exercised *control* over it, has an organization ever:**

     (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to any *felony*?    ○   ●

     (b) been *charged* with any *felony*?    ○   ●

**14B. (1) Have you ever:**             **Yes No**

     (a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses?    ○   ●

     (b) been *charged* with a *misdemeanor* specified in 14B(1)(a)?    ○   ●

   **(2) Based upon activities that occurred while you exercised *control* over it, has an organization ever:**

(a) been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court    ○    ◉
to a *misdemeanor* specified in 14B(1)(a)?

(b) been *charged* with a *misdemeanor* specified in 14B(1)(a)?    ○    ◉

**Regulatory Action Disclosure**

**14C. Has the U.S. Securities and Exchange Commission or the Commodity Futures Trading**    **Yes No**
**Commission ever:**

(1) *found* you to have made a false statement or omission?    ○    ◉

(2) *found* you to have been *involved* in a violation of its regulations or statutes?    ○    ◉

(3) *found* you to have been a cause of an *investment-related* business having its authorization to do    ○    ◉
business denied, suspended, revoked, or restricted?

(4) entered an *order* against you in connection with *investment-related* activity?    ○    ◉

(5) imposed a civil money penalty on you, or *ordered* you to cease and desist from any activity?    ○    ◉

(6) *found* you to have willfully violated any provision of the Securities Act of 1933, the Securities    ○    ◉
Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of
1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of
the rules of the Municipal Securities Rulemaking Board, or *found* you to have been unable to
comply with any provision of such Act, rule or regulation?

(7) *found* you to have willfully aided, abetted, counseled, commanded, induced, or procured the    ○    ◉
violation by any person of any provision of the Securities Act of 1933, the Securities Exchange
Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the
Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules
of the Municipal Securities Rulemaking Board?

(8) *found* you to have failed reasonably to supervise another person subject to your supervision,    ○    ◉
with a view to preventing the violation of any provision of the Securities Act of 1933, the
Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company
Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or
any of the rules of the Municipal Securities Rulemaking Board?

**14D. (1) Has any other Federal regulatory agency or any state regulatory agency or *foreign***    **Yes No**
*financial regulatory authority* ever:

(a) *found* you to have made a false statement or omission or been dishonest, unfair or unethical?    ○    ◉

(b) *found* you to have been *involved* in a violation of *investment-related* regulation(s) or statute(s)?    ○    ◉

(c) *found* you to have been a cause of an *investment-related* business having its authorization to do    ○    ◉
business denied, suspended, revoked or restricted?

(d) entered an *order* against you in connection with an *investment-related* activity?    ○    ◉

(e) denied, suspended, or revoked your registration or license or otherwise, by *order*, prevented    ○    ◉
you from associating with an *investment-related* business or restricted your activities?

**(2) Have you been subject to any *final order* of a state securities commission (or any agency**
**or officer performing like functions), state authority that supervises or examines banks,**
**savings associations, or credit unions, state insurance commission (or any agency or**
**office performing like functions), an appropriate *federal banking agency*, or the National**
**Credit Union Administration, that:**

(a) bars you from association with an entity regulated by such commission, authority, agency, or    ○    ◉
officer, or from engaging in the business of securities, insurance, banking, savings association
activities, or credit union activities; or

(b) constitutes a *final order* based on violations of any laws or regulations that prohibit fraudulent,    ○    ◉
manipulative, or deceptive conduct?

**14E. Has any *self-regulatory organization* ever:**    **Yes No**

(1) *found* you to have made a false statement or omission?    ○    ◉

(2) *found* you to have been *involved* in a violation of its rules (other than a violation designated as a

"*minor rule violation*" under a plan approved by the U.S. Securities and Exchange Commission)?    ○   ⦿

(3) *found* you to have been the cause of an *investment-related* business having its authorization to do business denied, suspended, revoked or restricted?    ○   ⦿

(4) disciplined you by expelling or suspending you from membership, barring or suspending your association with its members, or restricting your activities?    ○   ⦿

(5) *found* you to have willfully violated any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board, or *found* you to have been unable to comply with any provision of such Act, rule or regulation?    ○   ⦿

(6) *found* you to have willfully aided, abetted, counseled, commanded, induced, or procured the violation by any person of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board?    ○   ⦿

(7) *found* you to have failed reasonably to supervise another person subject to your supervision, with a view to preventing the violation of any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Advisers Act of 1940, the Investment Company Act of 1940, the Commodity Exchange Act, or any rule or regulation under any of such Acts, or any of the rules of the Municipal Securities Rulemaking Board?    ○   ⦿

**14F. Have you ever had an authorization to act as an attorney, accountant or federal contractor that was revoked or suspended?**    ○   ⦿

**14G. Have you been notified, in writing, that you are now the subject of any:**    **Yes No**

(1) regulatory complaint or *proceeding* that could result in a "yes" answer to any part of 14C, D or E? (If "yes", complete the *Regulatory Action* Disclosure Reporting Page.)    ○   ⦿

(2) *investigation* that could result in a "yes" answer to any part of 14A, B, C, D or E? (If "yes", complete the *Investigation* Disclosure Reporting Page.)    ○   ⦿

**Civil Judicial Disclosure**

**14H. (1) Has any domestic or foreign court ever:**    **Yes No**

(a) *enjoined* you in connection with any *investment-related* activity?    ○   ⦿

(b) *found* that you were *involved* in a violation of any *investment-related* statute(s) or regulation(s)?    ○   ⦿

(c) dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against you by a state or *foreign financial regulatory authority*?    ○   ⦿

**(2) Are you named in any pending *investment-related* civil action that could result in a "yes" answer to any part of 14H(1)?**    ○   ⦿

**Customer Complaint/Arbitration/Civil Litigation Disclosure**

**14I. (1) Have you ever been named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that you were *involved* in one or more *sales practice violations* and which:**    **Yes No**

(a) is still pending, or;    ○   ⦿

(b) resulted in an arbitration award or civil judgment against you, regardless of amount, or;    ○   ⦿

(c) was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;    ○   ⦿

(d) was settled, on or after 05/18/2009, for an amount of $15,000 or more?    ○   ⦿

**(2) Have you ever been the subject of an *investment-related*, consumer-initiated (written or oral) complaint, which alleged that you were *involved* in one or more *sales practice violations,* and which:**

(a) was settled, prior to 05/18/2009 for an amount of $10,000 or more, or;    ○   ⦿

OPCO_0057

10/15

(b) was settled, on or after 05/18/2009, for an amount of $15,000 or more?    ○   ◉

**(3) Within the past twenty four (24) months, have you been the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under question 14I(2) above, which:**

  (a) alleged that you were *involved* in one or more *sales practice violations* and contained a claim for compensatory damages of $5,000 or more (if no damage amount is alleged, the complaint must be reported unless the *firm* has made a good faith determination that the damages from the alleged conduct would be less than $5,000), or;    ○   ◉

  (b) alleged that you were *involved* in forgery, theft, misappropriation or conversion of funds or securities?    ○   ◉

**Answer questions (4) and (5) below only for arbitration claims or civil litigation filed on or after 05/18/2009.**

**(4) Have you ever been the subject of an *investment-related*, consumer-initiated arbitration claim or civil litigation which alleged that you were *involved* in one or more *sales practice violations*, and which:**

  (a) was settled for an amount of $15,000 or more, or;    ○   ◉

  (b) resulted in an arbitration award or civil judgment against any named respondent(s)/defendant(s), regardless of any amount?    ○   ◉

**(5) Within the past twenty four (24) months, have you been the subject of an *investment-related*, consumer-initiated arbitration claim or civil litigation not otherwise reported under questions 14I(4) above, which:**

  (a) alleged that you were *involved* in one or more *sales practice violations* and contained a claim for compensatory damages of $5,000 or more (if no damage amount is alleged, the arbitration claim or civil litigation, must be reported unless the *firm* has made a good faith determination that the damages from the alleged conduct would be less than $5,000), or;    ○   ◉

  (b) alleged that you were *involved* in forgery, theft, misappropriation or conversion of funds or securities?    ○   ◉

### Termination Disclosure

                                                                **Yes No**

**14J.**   **Have you ever voluntarily *resigned*, been discharged or permitted to *resign* after allegations were made that accused you of:**

  (1) violating *investment-related* statutes, regulations, rules, or industry standards of conduct?    ○   ◉

  (2) fraud or the wrongful taking of property?    ○   ◉

  (3) failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct?    ○   ◉

### Financial Disclosure

                                                                 **Yes No**

**14K.**   **Within the past 10 years:**

  (1) have you made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition?    ○   ◉

  (2) based upon events that occurred while you exercised *control* over it, has an organization made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition?    ○   ◉

  (3) based upon events that occurred while you exercised *control* over it, has a broker or dealer been the subject of an involuntary bankruptcy petition, or had a trustee appointed, or had a direct payment procedure initiated under the Securities Investor Protection Act?    ○   ◉

**14L.**   **Has a bonding company ever denied, paid out on, or revoked a bond for you?**    ○   ◉

**14M.**   **Do you have any unsatisfied judgments or liens against you?**    ○   ◉

### 15. Signatures

Please Read Carefully

All signatures required on this Form U4 filing must be made in this section.

A "signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

15A   INDIVIDUAL/APPLICANT'S ACKNOWLEDGMENT AND CONSENT

This section must be completed on all initial or Temporary Registration form filings.

15B   FIRM/APPROPRIATE SIGNATORY REPRESENTATIONS

This section must be completed on all initial or Temporary Registration form filings.

15C   TEMPORARY REGISTRATION ACKNOWLEDGMENT

This section must be completed on Temporary Registration form filings to be able to receive Temporary Registration.

15D   INDIVIDUAL/APPLICANT'S AMENDMENT ACKNOWLEDGMENT AND CONSENT

This section must be completed on any amendment filing that amends any information in Section 14 (Disclosure Questions) or any Disclosure Reporting Page (DRP).

15E   FIRM/APPROPRIATE SIGNATORY AMENDMENT REPRESENTATIONS

This section must be completed on all amendment form filings.

15F   FIRM/APPROPRIATE SIGNATORY CONCURRENCE

This section must be completed to concur with a U4 filing made by another *firm* (IA/BD) on behalf of an individual that is also registered with that other *firm* (IA/BD).

### 15A. INDIVIDUAL/*APPLICANT*'S ACKNOWLEDGMENT AND CONSENT

1. I swear or affirm that I have read and understand the items and instructions on this form and that my answers (including attachments) are true and complete to the best of my knowledge. I understand that I am subject to administrative, civil or criminal penalties if I give false or misleading answers.

2. I apply for registration with the *jurisdictions* and SROs indicated in Section 4 (SRO REGISTRATION) and Section 5 (JURISDICTION REGISTRATION) as may be amended from time to time and, in consideration of the *jurisdictions* and SROs receiving and considering my application, I submit to the authority of the *jurisdictions* and SROs and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the *jurisdictions* and SROs as they are or may be adopted, or amended from time to time. I further agree to be subject to and comply with all requirements, rulings, *orders*, directives and decisions of, and penalties, prohibitions and limitations imposed by the *jurisdictions* and SROs, subject to right of appeal or review as provided by law.

3. I agree that neither the *jurisdictions* or SROs nor any person acting on their behalf shall be liable to me for action taken or omitted to be taken in official capacity or in the scope of employment, except as otherwise provided in the statutes, constitutions, certificates of incorporation, by-laws or the rules and regulations of the *jurisdictions* and SROs.

4. I authorize the *jurisdictions*, SROs, and the *designated entity* to give any information they may have concerning me to any employer or prospective employer, any federal, state or municipal agency, or any other SRO and I release the *jurisdictions*, SROs, and the *designated entity*, and any person acting on their behalf from any and all liability of whatever nature by reason of furnishing such information.

5. I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction.*

6. For the purpose of complying with the laws relating to the offer or sale of securities or commodities or investment advisory activities, I irrevocably appoint the administrator of each *jurisdiction* indicated in Section 5 (JURISDICTION REGISTRATION) as may be amended from time to time, or such other person designated by law, and the successors in such office, my attorney upon whom may be served any notice, process, pleading, subpoena or other document in any action or *proceeding* against me arising out of or in connection with the offer

or sale of securities or commodities, or investment advisory activities or out of the violation or alleged violation of the laws of such *jurisdictions*. I consent that any such action or *proceeding* against me may be commenced in any court of competent *jurisdiction* and proper venue by service of process upon the appointee as if I were a resident of, and had been lawfully served with process in the *jurisdiction*. I request that a copy of any notice, process, pleading, subpoena or other document served hereunder be mailed to my current residential address as reflected in this form or any amendment thereto.

7.   I consent that the service of any process, pleading, subpoena, or other document in any *investigation* or administrative *proceeding* conducted by the SEC, CFTC or a *jurisdiction* or in any civil action in which the SEC, CFTC or a *jurisdiction* are plaintiffs, or the notice of any *investigation* or *proceeding* by any SRO against the *applicant*, may be made by personal service or by regular, registered or certified mail or confirmed telegram to me at my most recent business or home address as reflected in this Form U4, or any amendment thereto, by leaving such documents or notice at such address, or by any other legally permissible means.

I further stipulate and agree that any civil action or administrative *proceeding* instituted by the SEC, CFTC or a *jurisdiction* may be commenced by the service of process as described herein, and that service of an administrative subpoena shall be effected by such service, and that service as aforesaid shall be taken and held in all courts and administrative tribunals to be valid and binding as if personal service thereof had been made.

8.   I authorize all my employers and any other person to furnish to any *jurisdiction*, SRO, *designated entity*, employer, prospective employer, or any agent acting on its behalf, any information they have, including without limitation my creditworthiness, character, ability, business activities, educational background, general reputation, history of my employment and, in the case of former employers, complete reasons for my termination. Moreover, I release each employer, former employer and each other person from any and all liability, of whatever nature, by reason of furnishing any of the above information, including that information reported on the Uniform Termination Notice for Securities Industry Registration (Form U5). I recognize that I may be the subject of an investigative consumer report and waive any requirement of notification with respect to any investigative consumer report *ordered* by any *jurisdiction*, SRO, *designated entity*, employer, or prospective employer. I understand that I have the right to request complete and accurate disclosure by the *jurisdiction*, SRO, *designated entity*, employer or prospective employer of the nature and scope of the requested investigative consumer report.

9.   I understand and certify that the representations in this form apply to all employers with whom I seek registration as indicated in Section 1 (GENERAL INFORMATION) or Section 6 (REGISTRATION REQUESTS WITH *AFFILIATED FIRMS*) of this form. I agree to update this form by causing an amendment to be filed on a timely basis whenever changes occur to answers previously reported. Further, I represent that, to the extent any information previously submitted is not amended, the information provided in this form is currently accurate and complete.

10.  I authorize any employer or prospective employer to file electronically on my behalf any information required in this form or any amendment thereto; I certify that I have reviewed and approved the information to be submitted to any *jurisdiction* or SRO on this Form U4 Application; I agree that I will review and approve all disclosure information that will be filed electronically on my behalf; I further agree to waive any objection to the admissibility of the electronically filed records in any criminal, civil, or administrative *proceeding*.

*Applicant* or *applicant*'s agent has typed *applicant*'s name under this section to attest to the completeness and accuracy of this record. The *applicant* recognizes that this typed name constitutes, in every way, use or aspect, his or her legally binding signature.

**Date (MM/DD/YYYY)**                    **Signature of *Applicant***
07/11/2019                                Bryce Carrasco
                                          **Signature** _____

## 15B. *FIRM/APPROPRIATE SIGNATORY* REPRESENTATIONS

To the best of my knowledge and belief, the *applicant* is currently bonded where required, and, at the time of approval, will be familiar with the statutes, constitution(s), rules and by-laws of the agency, *jurisdiction* or SRO with which this application is being filed, and the rules governing registered persons, and will be fully qualified for the position for which application is being made herein. I agree that, notwithstanding the approval of such agency, *jurisdiction* or SRO which

hereby is requested, I will not employ the *applicant* in the capacity stated herein without first receiving the approval of any authority that may be required by law.

This *firm* has communicated with all of the *applicant*'s previous employers for the past three years and has documentation on file with the names of the persons contacted and the date of contact. In addition, I have taken appropriate steps to verify the accuracy and completeness of the information contained in and with this application.

I have provided the *applicant* an opportunity to review the information contained herein and the *applicant* has approved this information and signed the Form U4.

| **Date (MM/DD/YYYY)** | **Signature of *Appropriate Signatory*** |
|---|---|
| 07/11/2019 | ~~Matthew Hudson~~ *Patrick Locke* **Signature** _____ |

### Bankruptcy / SIPC / Compromise with Creditors

No Information Filed

### Bond DRP

No Information Filed

### Civil Judicial DRP

No Information Filed

### Criminal DRP

No Information Filed

### Customer Complaint DRP

No Information Filed

### Investigation DRP

No Information Filed

### Judgment Lien DRP

No Information Filed

### Regulatory Action DRP

CONFIDENTIAL

No Information Filed

## Termination DRP

No Information Filed

© 2019 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.
Privacy | Legal | Terms & Conditions



## Form U4 Pre-Dispute Arbitration Clause

**FINRA Rule 2263 requires that you are provided with the following:**

The Form U4 contains a pre-dispute arbitration clause. It is in item 5 of Section 15A of the Form U4. You should read that clause now. Before signing the Form U4, you should understand the following:

(1) You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

(2) A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated under FINRA rules. Such a claim may be arbitrated at the FINRA only if the parties have agreed to arbitrate it either, before or after the dispute arose. The rules of other arbitration forums may be different.

(3) A dispute arising under a whistleblower statute that prohibits the use of pre-dispute arbitration agreements is not required to be arbitrated under FINRA rules. Such a dispute may be arbitrated only if the parties have agreed to arbitrate it after the dispute arose.

(4) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

(5) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

(6) The arbitrators do not have to explain the reason(s) for their award.

(7) The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

(8) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

I hereby acknowledge receipt of this notification pursuant to FINRA Rule 2263.

Signature: _____ Date: 07/11/2019

Printed Name: Bryce Carrasco

**Please review, sign and return this form along with your U4.**

Version 11/2015
CONFIDENTIAL

 Oppenheimer & Co. Inc.
85 Broad Street
New York, NY 10004

Background Verification Form

In accordance with FINRA Supervision Rule 3010(e) the following information must be obtained for purposes of investigating the background of any newly registered or newly hired registered personnel ("Registered Applicant").

Registration Applicant's Name:

_Bryce Carrasco_

**Former Employer(s) Over the Past 3 Years**

Name of Former Employer: _Full time student – Loyola University_

Former Employer Contact Person: _____ Title: _____

Former Employer Contact Person Phone: _____

Date of Contact: _____

Verified Employment Dates: _8/15_ to _5/19_   Termination (Check One): ☐ Voluntary  ☐ Other  ☐ Not Provided

    If Other, Please Describe: _____

Any Known Pending CRD Updates (Please Check One):  ☐ Yes  ☐ No  ☐ Not Provided

    If Yes, Please Describe: _____

Any Additional Comments to be Noted: _____

_____
_____

---

Name of Former Employer: _____

Former Employer Contact Person: _____ Title: _____

Former Employer Contact Person Phone: _____

Date of Contact: _____

Verified Employment Dates: _____ to _____   Termination (Check One): ☐ Voluntary  ☐ Other  ☐ Not Provided

    If Other, Please Describe: _____

Any Known Pending CRD Updates (Please Check One):  ☐ Yes  ☐ No  ☐ Not Provided

    If Yes, Please Describe: _____

Any Additional Comments to be Noted: _____

_____
_____

**The completed form must be sent to Registrations in Compliance along with the employees Form U-4. Attach additional sheets if needed.**

By signing below I am confirming that I contacted the Registration Applicant's previous employer(s) over the past three years and verified the information noted above.

By: _Stephanie Legu_
    Name – Please Print

    _Stephanie Legg_      _6/21/19_
    Signature              Date

Rev. 7/15

FOR INTERNAL USE ONLY

CONFIDENTIAL

# Fingerprint Cards

**Individual CRD#:** 6969159       **Individual Name: Carrasco, Bryce**

| Firm Name | BarCode | Received Date | Status Date | Status | BarCode Re-Associated |
|---|---|---|---|---|---|
| OPPENHEIMER & CO. INC. (249) | 2540866159 | 07/03/2019 | 07/03/2019 | CLER | N |

© 2019 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.
Privacy | Legal | Terms & Conditions

# Exam Information

**Individual CRD#:** 6969159      **Individual Name:** CARRASCO, BRYCE

**Exam Appointments**

| Exam | Enrollment ID | Appointment Status | Appointment Date | Vendor | Confirmation Number | Vendor Center ID | Location | Window Begin Date | Window End Date |
|------|---------------|--------------------|------------------|--------|---------------------|------------------|----------|-------------------|-----------------|
| S63 | 38279976 | | | | | | | 07/13/2019 | 11/10/2019 |
| S79TO | 38279977 | | | | | | | 07/13/2019 | 11/10/2019 |

**Exam History**

| Exam | Enrollment ID | Exam Status | Status Date | Exam Date | Grade | Score | Window Begin Date | Window End Date | Exam Validity |
|------|---------------|-------------|-------------|-----------|-------|-------|-------------------|-----------------|---------------|
| SIE | 38279975 | Official Result | 05/07/2019 | 05/07/2019 | Passed | | 04/16/2019 | 08/13/2019 | Valid until 05/07/2023 |

© 2019 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.
Privacy | Legal | Terms & Conditions

REDACTED

7/16/19



# SCREENING REPORT

**Bryce Carrasco**

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

REPORT #

**15412649**

## CASE STATUS

## Review ⊗

| SERVICE | DESCRIPTION | STATUS |
|---|---|---|
| Subject Data | Bryce Carrasco ▓▓▓▓▓▓▓ | ⊗ |
| Financial | Financial History (Credit) | ◉ |
| Bankruptcy | Bankruptcy (Credit) | ◉ |
| County Criminal and Other Offenses | Felony, Misdemeanor and Other Offenses - Baltimore City, Maryland | ◉ |
| County Criminal and Other Offenses | Felony, Misdemeanor and Other Offenses - Anne Arundel, Maryland | ◉ |
| County Civil | Major & Minor - Baltimore City, Maryland | ◉ |
| County Civil | Major & Minor - Anne Arundel, Maryland | ◉ |
| Federal Criminal and Other Offenses | Felony, Misdemeanor and Other Offenses - Anne Arundel, MD; Baltimore City, MD | ◉ |
| Federal Civil | Major & Minor - Anne Arundel, MD; Baltimore City, MD | ◉ |
| National Criminal Database | Subject Name: BRYCE CARRASCO | ◉ |
| ActionsBase | Producer ActionsBase - Carrasco, Bryce | ◉ |

KEY: ◉ Pass  ⊗ Review  ⚠ Pending

◉ **Please Notice**

Please be advised that Business Information Group's "Pass/Review" ratings are exclusively based on objective standards of interpreting background information legally obtained under The Fair Credit Reporting Act (15 U.S.C. section 1681). Such "Pass/Review" assessments should not be inferred nor understood as legally binding indications, recommendations or consumer rating assessments by Business Information Group. Any and all interpretive procedures utilized in characterizing what constitutes all "Pass/Review" ratings are established individually by each client of Business Information Group and are merely included in said report for that client's specific requirements. Business Information Group does not make any employment or contracting decisions for its clients based on background information in accordance with section 1681m of the FCRA.



**REDACTED**

# Screening Package

# Bryce Carrasco

████████████

| | |
|---|---|
| CLIENT | CLIENT CODE |
| **Oppenheimer & Co. - Registration** | **523-001** |
| REQUESTER | REPORT # |
| **Nydia Burgos / BC** | **15412649** |
| REQUEST DATE | DELIVERY DATE |
| **07/15/2019** | **07/16/2019** |
| CASE CREATED DATE | |
| **07/15/2019** | |

⚙ Personal & Confidential

This report is only to be used in strict adherence to the terms and conditions set forth in the Agreement between Business Information Group, Inc. and its client. © Business Information Group, Inc. 2019. All rights reserved. Business Information Group, Inc. is a subsidiary of Vertical Screen, Inc. Direct any questions to Business Information Group, P.O. Box 541, Southampton, PA 18966, (800) 803-0331, Fax: 215 396-9879.



REDACTED

SERVICE                                                      STATUS

## Subject Data                                      **Review**    ⊗

**Name:**        **Bryce Carrasco**

**Date of Birth:**     09/11/1996

**Social Security /ID#:**   █████████████

| SSN/ID# Validation | |
|---|---|
| **State Issued:** | MD |
| **Date Issued:** | 10/02/1996-07/01/1997 |
| **DOB Scan:** | Clear |
| **Death Index:** | Clear |
| **Valid SSN/ID#:** | Yes |

**Current Address:**     100 East Redwood Street
Baltimore, MD 21202
Baltimore City
United States

**Other Addresses:**     334 TERNWING DR
ARNOLD, MD 21012
Anne Arundel County
United States

**Comments:**     Credit Report Databases indicate the subject's most recent
address is in 334 TERNWING DR ARNOLD, MD.

| SERVICE | STATUS |
|---|---|
| **Financial** | **Pass**  |

| | | |
|---|---|---|
| **Total Installment Balance:** | $ | not available |
| **Total Real Estate Balance:** | $ | not available |
| **Total Revolving Credit Balance:** | $ | 121.00 |
| **Total Revolving Credit:** | $ | 300.00 |
| **Total Revolving Credit Available:** | $ | 179.00 |
| **Total lines of trade on credit report:** | | 2 |
| **Lines of trade reported current/satisfied:** | | 2 |
| **Lines of trade reported past due or in collection:** | | 0 |
| **Total Report inquires in past 24 months:** | | 1 |

**Source:** TransUnion Databases

**Search Date:** 07/15/2019

**Comments:** None

| SERVICE | STATUS |
|---|---|
| **Bankruptcy** | **Pass** |

| | |
|---|---|
| **Source Searched:** | TransUnion Databases (10 years) |
| **Date of Search:** | 07/15/2019 |
| **Subject Covered:** | Bryce Carrasco |
| **Search Results:** | No records found |
| **Comments:** | None |

## SERVICE

### County Criminal and Other Offenses

STATUS

**Pass** 

| | |
|---|---|
| **Source Searched:** | Baltimore City 8th Judicial Circuit & District Courts |
| **State:** | Maryland |
| **Records Covered:** | Felony, Misdemeanor and Other Offenses |
| **Date of Search:** | 07/16/2019 |
| **Subject Covered:** | Bryce Carrasco |
| **Search Results:** | No records found |
| **Comments:** | None |

## SERVICE

### County Criminal and Other Offenses

STATUS

**Pass** 

| | |
|---|---|
| **Source Searched:** | Anne Arundel County 5th Judicial Circuit & District Courts |
| **State:** | Maryland |
| **Records Covered:** | Felony, Misdemeanor and Other Offenses |
| **Date of Search:** | 07/15/2019 |
| **Subject Covered:** | Bryce Carrasco |
| **Search Results:** | No records found |
| **Comments:** | None |

## SERVICE

### County Civil

STATUS

**Pass** 

| | |
|---|---|
| **Source Searched:** | Baltimore City 8th Judicial Circuit and District Courts |
| **Records Covered:** | Major & Minor |
| **Date of Search:** | 07/15/2019 |
| **Subject Covered:** | Bryce Carrasco |
| **Search Results:** | No records found |
| **Comments:** | None |

## SERVICE
STATUS

# County Civil
**Pass**  

| | |
|---|---|
| **Source Searched:** | Anne Arundel County Judicial Circuit and District Courts |
| **Records Covered:** | Major & Minor |
| **Date of Search:** | 07/15/2019 |
| **Subject Covered:** | Bryce  Carrasco |
| **Search Results:** | No records found |
| **Comments:** | None |

## SERVICE
STATUS

# Federal Criminal and Other Offenses
**Pass**  

| | |
|---|---|
| **Source Searched:** | USDC - District of MD |
| **Records Covered:** | Felony, Misdemeanor and Other Offenses |
| **Date of Search:** | 07/15/2019 |
| **Subject Covered:** | Bryce  Carrasco |
| **Search Results:** | No records found |
| **Comments:** | None |

## SERVICE
STATUS

# Federal Civil
**Pass**

| | |
|---|---|
| **Source Searched:** | USDC - District of MD |
| **Records Covered:** | Major & Minor |
| **Date of Search:** | 07/15/2019 |
| **Subject Covered:** | Bryce  Carrasco |
| **Search Results:** | No records found |
| **Comments:** | None |



---

SERVICE | STATUS

# National Criminal Database

**Pass** 

| | |
|---|---|
| **Source Searched:** | National Criminal Database |
| **Date of Search:** | 07/15/2019 |
| **Subject Covered:** | Bryce Carrasco |
| **Search Results:** | No records found |
| **Comments:** | None |

---

SERVICE | STATUS

# Producer ActionsBase + OFAC

**Pass** 

| | |
|---|---|
| **Source Searched:** | BIG's Producer ActionsBase |
| **Date of Search:** | 07/15/2019 |
| **Subject Covered:** | Bryce Carrasco |
| **Search Results:** | No records found |
| **Comments:** | None |

**Note:** The Producer ActionsBase is a proprietary database of disciplinary and regulatory actions taken against individuals and organizations. It also includes the Office of Foreign Asset Control (OFAC) list and other national terrorist watch lists. Regulatory sources include State Insurance, Banking & Securities Departments, FINRA, SEC, OTS, OCC, CFTC, AMEX, NYSE and more.

### End of Report

### Copy of Trans Union Employment Credit Attached

```
TRANSUNION EMPLOYMENT CREDIT REPORT FOR:    USER REF:
523 OPPENHEI                                 DATE REPORT PRINTED:  07/15/2019
FPH2609852    BUREAU: 17                      CENTRAL STANDARD TIME:  08:23
                                              IN OUR FILES SINCE:   02/2017


  SUBJECT NAME:
    CARRASCO, BRYCE
                                             SOCIAL SECURITY NUMBER:▮▮▮▮
                                             PHONE:              410-858-7432
  CURRENT ADDRESS REPORTED: 02/2017
   334 TERNWING DR., ARNOLD MD. 21012
                             CREDIT INFORMATION
  ------------------------------------------------------------------------
  SPECIAL MESSAGES:
  ***ADDRESS ALERT: CURRENT INPUT ADDRESS DOES NOT MATCH FILE ADDRESS(ES)
  ****IDVISION ALERTS : CLEAR FOR ALL SEARCHES PERFORMED***
  ------------------------------------------------------------------------
  THE FOLLOWING CREDIT SUMMARY REPRESENTS THE SUBJECT'S TOTAL FILE HISTORY:
```

```
PUBLIC RECORDS:     0     CURRENT NEGATIVE ACCTS:  0     REVOLVING ACCTS:  1
COLLECTIONS:        0     PREVIOUS NEGATIVE ACCTS: 0     INSTALLMENT ACCTS:0
TRADE ACCTS:        2     PREVIOUS TIMES NEGATIVE: 0     MORTGAGE ACCTS:   0
CREDIT INQUIRIES:   1     EMPLOYMENT INQUIRIES:    1     OPEN ACCTS:       1
```

```
               HIGH CRED   CRED LIMIT   BALANCE    PAST DUE   MNTHLY    AVAIL
REVOLVING:     $121        $300         $121       $0         $27       60%
OPEN:          $8588       $0           $6261      $0         $0        27%
TOTALS:        $8709       $300         $6382      $0         $27
```
------------------------------------------------------------------------
THE FOLLOWING ACCOUNT INFORMATION IS PRINTED IN ORDER BY MOST NEGATIVE MANNER
OF PAYMENT (MOP) AND DATE MOST RECENTLY UPDATED.

```
  KOHLS/CAPONE              D 12EN005         REVOLVING ACCOUNT
                                             CHARGE ACCOUNT
   VERIF'D  06/2019  BALANCE: $121           INDIVIDUAL ACCOUNT
   OPENED   05/2019  MOST OWED:  $121        CREDIT LIMIT: $300
                     PAST DUE:$0
   STATUS AS OF 06/2019  CURRENT; PAID OR PAYING AS AGREED
CONTACT SUBSCRIBER:   KOHLS/CAPONE              PH#:  (800) 564-5740
                      PO BOX 3115              MILWAUKEE, WI 53201
```

```
  AMEX                     B 21WB001         OPEN ACCOUNT
                                             CREDIT CARD
   VERIF'D  06/2019  BALANCE: $6261          AUTHORIZED ACCOUNT
   OPENED   01/2017  MOST OWED:  $8588
                     PAST DUE:$0
   STATUS AS OF 06/2019  CURRENT; PAID OR PAYING AS AGREED
IN PRIOR 28 MONTH/S FROM DATE VERIF'D NEVER LATE
PAYMENT PATTERN:1111111111111111111111111
CONTACT SUBSCRIBER:   AMEX                      PH#:  (800) 874-2717
                      P.O. BOX 981537           EL PASO, TX 79998
```
------------------------------------------------------------------------
THE FOLLOWING COMPANIES HAVE REQUESTED A COPY OF THE SUBJECT'S CREDIT REPORT:

```
  DATE         SUBCODE      SUBSCRIBER NAME

  04/02/2018   D3279220     MACYS/DSNB                    (800) 243-6552
                            PO BOX 8218
                            MASON, OH 45040
```
------------------------------------------------------------------------
THE FOLLOWING COMPANIES HAVE REQUESTED A COPY OF THE SUBJECT'S FILE FOR
EMPLOYMENT USE:

```
  DATE         SUBCODE      SUBSCRIBER NAME

  07/15/2019   F2609852     523 OPPENHEI
```
------------------------------------------------------------------------
EMPLOYMENT CREDIT REPORT SERVICED BY:

```
TRANSUNION
2 BALDWIN PLACE, P.O. BOX 1000
CHESTER, PA 19016
800-888-4213
CONSUMER DISCLOSURES CAN BE OBTAINED ONLINE THROUGH TRANSUNION AT:
     HTTP://WWW.TRANSUNION.COM
```

```
                  END OF TRANSUNION REPORT
        A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT

PARA INFORMACION EN ESPANOL, VISITE WWW.CONSUMERFINANCE.GOV O ESCRIBE A LA
CONSUMER FINANCIAL PROTECTION BUREAU, 1700 G STREET N.W., WASHINGTON,DC 20552.
```

THE FEDERAL FAIR CREDIT REPORTING ACT (FCRA) PROMOTES THE ACCURACY, FAIRNESS, AND PRIVACY OF INFORMATION IN THE FILES OF CONSUMER REPORTING AGENCIES.  THERE ARE MANY TYPES OF CONSUMER REPORTING AGENCIES, INCLUDING CREDIT BUREAUS AND SPECIALTY AGENCIES (SUCH AS AGENCIES THAT SELL INFORMATION ABOUT CHECK WRITING HISTORIES, MEDICAL RECORDS, AND RENTAL HISTORY RECORDS). FOR MORE INFORMATION, INCLUDING INFORMATION  ABOUT ADDITIONAL RIGHTS,
GO TO WWW.CONSUMERFINANCE.GOV/LEARNMORE, OR WRITE TO: CONSUMER FINANCIAL PROTECTION BUREAU, 1700 G STREET N.W., WASHINGTON, DC 20552.

- YOU MUST BE TOLD IF INFORMATION IN YOUR FILE HAS BEEN USED AGAINST YOU. ANYONE WHO USES A CREDIT REPORT OR ANOTHER TYPE OF CONSUMER REPORT TO DENY YOUR APPLICATION FOR CREDIT, INSURANCE, OR EMPLOYMENT - OR TO TAKE ANOTHER ADVERSE ACTION AGAINST YOU - MUST TELL YOU, AND MUST GIVE YOU THE NAME, ADDRESS, AND PHONE NUMBER OF THE AGENCY THAT PROVIDED THE INFORMATION.

- YOU HAVE THE RIGHT TO KNOW WHAT IS IN YOUR FILE. YOU MAY REQUEST AND OBTAIN ALL THE INFORMATION ABOUT YOU IN THE FILES OF A CONSUMER REPORTING AGENCY (YOUR "FILE DISCLOSURE").  YOU WILL BE REQUIRED TO PROVIDE PROPER IDENTIFICATION, WHICH MAY INCLUDE YOUR SOCIAL SECURITY NUMBER. IN MANY CASES, THE DISCLOSURE WILL BE FREE. YOU ARE ENTITLED TO A FREE FILE DISCLOSURE IF:

- A PERSON HAS TAKEN ADVERSE ACTION AGAINST YOU BECAUSE OF INFORMATION IN YOUR CREDIT REPORT;

- YOU ARE THE VICTIM OF IDENTITY THEFT AND PLACE A FRAUD ALERT IN YOUR FILE;

- YOUR FILE CONTAINS INACCURATE INFORMATION AS A RESULT OF FRAUD;

- YOU ARE ON PUBLIC ASSISTANCE;

- YOU ARE UNEMPLOYED BUT EXPECT TO APPLY FOR EMPLOYMENT WITHIN 60 DAYS. IN ADDITION, ALL CONSUMERS ARE ENTITLED TO ONE FREE DISCLOSURE EVERY 12 MONTHS UPON REQUEST FROM EACH NATIONWIDE CREDIT BUREAU AND FROM NATIONWIDE SPECIALTY CONSUMER REPORTING AGENCIES. SEE WWW.CONSUMERFINANCE.GOV/LEARNMORE FOR MORE INFORMATION.

- YOU HAVE THE RIGHT TO ASK FOR A CREDIT SCORE. CREDIT SCORES ARE NUMERICAL SUMMARIES OF YOUR CREDIT-WORTHINESS BASED ON INFORMATION FROM CREDIT BUREAUS. YOU MAY REQUEST A CREDIT SCORE FROM CONSUMER REPORTING AGENCIES THAT CREATE SCORES OR DISTRIBUTE SCORES USED IN RESIDENTIAL REAL PROPERTY LOANS, BUT YOU WILL HAVE TO PAY FOR IT. IN SOME MORTGAGE TRANSACTIONS, YOU WILL RECEIVE CREDIT SCORE INFORMATION FOR FREE FROM THE MORTGAGE LENDER.

- YOU HAVE THE RIGHT TO DISPUTE INCOMPLETE OR INACCURATE INFORMATION. IF YOU IDENTIFY INFORMATION IN YOUR FILE THAT IS INCOMPLETE OR INACCURATE, AND REPORT IT TO THE CONSUMER REPORTING AGENCY, THE AGENCY MUST INVESTIGATE UNLESS YOUR DISPUTE IS FRIVOLOUS. SEE WWW.CONSUMERFINANCE.GOV/LEARNMORE FOR AN EXPLANATION OF DISPUTE PROCEDURES.

- CONSUMER REPORTING AGENCIES MUST CORRECT OR DELETE INACCURATE, INCOMPLETE, OR UNVERIFIABLE INFORMATION. INACCURATE, INCOMPLETE, OR UNVERIFIABLE INFORMATION MUST BE REMOVED OR CORRECTED, USUALLY WITHIN 30 DAYS. HOWEVER, A CONSUMER REPORTING AGENCY MAY CONTINUE TO REPORT INFORMATION IT HAS VERIFIED AS ACCURATE.

- CONSUMER REPORTING AGENCIES MAY NOT REPORT OUTDATED NEGATIVE INFORMATION. IN MOST CASES, A CONSUMER REPORTING AGENCY MAY NOT REPRT NEGATIVE INFORMATION THAT IS MORE THAN SEVEN YEARS OLD, OR BANKRUPTCIES THAT ARE MORE THAN 10 YEARS OLD.

- ACCESS TO YOUR FILE IS LIMITED. A CONSUMER REPORTING AGENCY MAY PROVIDE INFORMATION ABOUT YOU ONLY TO PEOPLE WITH A VALID NEED - USUALLY TO CONSIDER AN APPLICATION WITH A CREDITOR, INSURER, EMPLOYER, LANDLORD, OR OTHER

BUSINESS. THE FCRA SPECIFIES THOSE WITH A VALID NEED FOR ACCESS.

- YOU MUST GIVE YOUR CONSENT FOR REPORTS TO BE PROVIDED TO EMPLOYERS. A
  CONSUMER REPORTING AGENCY MAY NOT GIVE OUT INFORMATION ABOUT YOU TO YOUR
  EMPLOYER, OR A POTENTIAL EMPLOYER, WITHOUT YOUR WRITTEN CONSENT GIVEN TO THE
  EMPLOYER. WRITTEN CONSENT GENERALLY IS NOT REQUIRED IN THE TRUCKING INDUSTRY.
  FOR MORE INFORMATION, GO TO WWW.CONSUMERFINANCE.GOV/LEARNMORE.

- YOU MAY LIMIT "PRESCREENED" OFFERS OF CREDIT AND INSURANCE YOU GET BASED ON
  INFORMATION IN YOUR CREDIT REPORT. UNSOLICITED "PRESCREENED" OFFERS FOR
  CREDIT AND INSURANCE MUST INCLUDE A TOLL-FREE PHONE NUMBER YOU CAN CALL IF
  YOU CHOOSE TO REMOVE YOUR NAME AND ADDRESS FROM THE LISTS THESE OFFERS ARE
  BASED ON. YOU MAY OPT-OUT WITH THE NATIONWIDE CREDIT BUREAUS AT
  1-888-5-OPTOUT (1-888-567-8688).

- CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE.    YOU HAVE A RIGHT TO
  PLACE A "SECURITY FREEZE" ON YOUR CREDIT REPORT, WHICH WILL PROHIBIT A
  CONSUMER REPORTING AGENCY FROM RELEASING INFORMATION IN YOUR CREDIT REPORT
  WITHOUT YOUR EXPRESS AUTHORIZATION. THE SECURITY FREEZE IS DESIGNED TO
  PREVENT CREDIT, LOANS, AND SERVICES FROM BEING APPROVED IN YOUR NAME WITHOUT
  YOUR CONSENT. HOWEVER, YOU SHOULD BE AWARE THAT USING A SECURITY FREEZE TO
  TAKE CONTROL OVER WHO GETS ACCESS TO THE PERSONAL AND FINANCIAL INFORMATION
  IN YOUR CREDIT REPORT MAY DELAY, INTERFERE WITH, OR PROHIBIT THE TIMELY
  APPROVAL OF ANY SUBSEQUENT REQUEST OR APPLICATION YOU MAKE REGARDING  A NEW
  LOAN, CREDIT, MORTGAGE, OR ANY OTHER ACCOUNT INVOLVING THE EXTENSION OF
  CREDIT.

  A SECURITY FREEZE DOES NOT APPLY TO A PERSON OR ENTITY, OR ITS AFFILIATES,
  OR COLLECTION AGENCIES ACTING ON BEHALF OF THE PERSON OR ENTITY,  WITH WHICH
  YOU HAVE AN EXISTING ACCOUNT THAT REQUESTS INFORMATION IN YOUR CREDIT REPORT
  FOR THE PURPOSES OF REVIEWING OR COLLECTING THE ACCOUNT.   REVIEWING THE
  ACCOUNT INCLUDES ACTIVITIES RELATED TO ACCOUNT MAINTENANCE, MONITORING,
  CREDIT LINE INCREASES, AND ACCOUNT UPGRADES AND ENHANCEMENTS.

- AS AN ALTERNATIVE TO A SECURITY FREEZE,  YOU HAVE THE RIGHT TO PLACE AN
  INITIAL OR EXTENDED FRAUD ALERT ON YOUR CREDIT FILE AT NO COST. AN INITIAL
  FRAUD ALERT IS A 1-YEAR ALERT THAT IS PLACED ON A CONSUMER'S CREDIT FILE.
  UPON SEEING A FRAUD ALERT DISPLAY ON A CONSUMER'S CREDIT FILE, A BUSINESS IS
  REQUIRED TO TAKE STEPS TO VERIFY THE CONSUMER'S IDENTITY BEFORE EXTENDING
  NEW CREDIT. IF YOU ARE A VICTIM OF IDENTITY THEFT, YOU ARE ENTITLED TO AN
  EXTENDED FRAUD ALERT, WHICH IS A FRAUD ALERT LASTING 7 YEARS.

- YOU MAY SEEK DAMAGES FROM VIOLATORS. IF A CONSUMER REPORTING AGENCY, OR,
  IN SOME CASES, A USER OF CONSUMER REPORTS OR A FURNISHER OF INFORMATION TO A
  CONSUMER REPORTING AGENCY VIOLATES THE FCRA, YOU MAY BE ABLE TO SUE IN STATE
  OR FEDERAL COURT.

- IDENTITY THEFT VICTIMS AND ACTIVE DUTY MILITARY PERSONNEL HAVE ADDITIONAL
  RIGHTS. FOR MORE INFORMATION, VISIT WWW.CONSUMERFINANCE.GOV/LEARNMORE.

STATES MAY ENFORCE THE FCRA, AND MANY STATES HAVE THEIR OWN CONSUMER REPORTING
LAWS. IN SOME CASES, YOU MAY HAVE MORE RIGHTS UNDER STATE LAW. FOR MORE
INFORMATION, CONTACT YOUR STATE OR LOCAL CONSUMER PROTECTION AGENCY OR YOUR
STATE ATTORNEY GENERAL. FOR INFORMATION ABOUT YOUR FEDERAL RIGHTS, CONTACT:

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. BANKS, SAVINGS ASSOCIATIONS, AND CREDIT UNIONS WITH TOTAL ASSETS OF OVER $10 BILLION AND THEIR AFFILIATES | CONSUMER FINANCIAL PROTECTION BUREAU 1700 G STREET, N.W. WASHINGTON, DC 20552 |
| b. SUCH AFFILIATES THAT ARE NOT BANKS, | FEDERAL TRADE COMMISSION: |

SAVINGS ASSOCIATIONS, OR CREDIT UNIONS ALSO SHOULD LIST, IN ADDITION TO THE CFPB:

CONSUMER RESPONSE CENTER -FCRA
WASHINGTON, DC 20580
1-877-382-4357

2. TO THE EXTENT NOT INCLUDED IN ITEM 1 ABOVE:

OFFICE OF THE COMPTROLLER OF THE CURRENCY

a. NATIONAL BANKS, FEDERAL SAVINGS ASSOCIATIONS, AND FEDERAL BRANCHES AND FEDERAL AGENCIES OF FOREIGN BANKS

CUSTOMER ASSISTANCE GROUP
1301 McKINNEY STREET, SUITE 3450
HOUSTON, TX 77010-9050

b. STATE MEMBER BANKS, BRANCHES AND AGENCIES OF FOREIGN BANKS (OTHER THAN FEDERAL BRANCHES, FEDERAL AGENCIES AND INSURED STATE BRANCHES OF FOREIGN BANKS), COMMERCIAL LENDING COMPANIES OWNED OR CONTROLLED BY FOREIGN BANKS, AND ORGANIZATIONS OPERATING UNDER SECTION 25 OR 25A OF THE FEDERAL RESERVE ACT

FEDERAL RESERVE CONSUMER HELP CENTER
P.O. BOX. 1200
MINNEAPOLIS, MN 55480

c. NONMEMBER INSURED BANKS, INSURED STATE BRANCHES OF FOREIGN BANKS, AND INSURED STATE SAVINGS ASSOCIATIONS

FDIC CONSUMER RESPONSE CENTER
1100 WALNUT STREET BOX #11
KANSAS CITY, MO 64106

d. FEDERAL CREDIT UNIONS

NATIONAL CREDIT UNION ADMINISTRATION
OFFICE OF CONSUMER PROTECTION (OCP)
DIVISION OF CONSUMER COMPLIANCE AND OUTREACH (DCCO)
1775 DUKE STREET
ALEXANDRIA, VA 22314

3. AIR CARRIERS

ASST. GENERAL COUNSEL FOR AVIATION ENFORCEMENT & PROCEEDINGS
AVIATION CONSUMER PROTECTION DIVISION
DEPARTMENT OF TRANSPORTATION
1200 NEW JERSEY AVENUE, S.E.
WASHINGTON, DC 20590

4. CREDITORS SUBJECT TO THE SURFACE TRANSPORTATION BOARD

OFFICE OF PROCEEDINGS, SURFACE TRANSPORTATION BOARD
DEPARTMENT OF TRANSPORTATION
395 E STREET, S.W.
WASHINGTON, DC 20423

5. CREDITORS SUBJECT TO THE PACKERS AND STOCKYARDS ACT, 1921

NEAREST PACKERS AND STOCKYARDS ADMINISTRATION AREA SUPERVISOR

6. SMALL BUSINESS INVESTMENT COMPANIES

ASSOCIATE DEPUTY ADMINISTRATOR FOR CAPITAL ACCESS
UNITED STATES SMALL BUSINESS ADMINISTRATION
409 THIRD STREET, S.W., 8TH FLOOR
WASHINGTON, DC 20416

7. BROKERS AND DEALERS

SECURITIES AND EXCHANGE COMMISSION
100 F STREET, N.E.
WASHINGTON, DC 20549

8. FEDERAL LAND BANKS, FEDERAL LAND BANK ASSOCIATIONS, FEDERAL INTERMEDIATE CREDIT BANKS, AND

FARM CREDIT ADMINISTRATION
1501 FARM CREDIT DRIVE
McLEAN, VA 22102-5090

```
   PRODUCTION CREDIT ASSOCIATIONS

9. RETAILERS, FINANCE COMPANIES, AND        FTC REGIONAL OFFICE FOR REGION IN
   ALL OTHER CREDITORS NOT LISTED ABOVE     WHICH THE CREDITOR OPERATES OR
                                            FEDERAL TRADE COMMISSION: CONSUMER
                                            RESPONSE CENTER- FCRA
                                            WASHINGTON, DC 20580
                                            1-877-382-4357
```

## Torres, Nydia

The report for this case is now available at the following location.

https://www.myBIG.net/signin/vdoc.jsp?f=15412649-523-001.doc&t=R&h=Y

CONFIDENTIALITY/INTENDED RECIPIENT: This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

GENERAL GUIDANCE:  Please be advised that the information and/or samples that we have provided is intended as general guidance and not legal advice.  Please consult competent counsel for specific legal advice.  We assume no legal liability for any use or reliance upon any of the information or documentation provided.

SECURITY WARNING: Sending email that contains private personal information poses a security and privacy risk and we request that you not do so.

CONFIDENTIAL

OPCO_0079

<u>View Profile in New CRD</u>

# Composite Information



**Individual CRD#:** <u>6969159</u>            **Individual Name: CARRASCO, BRYCE**

| | | | | | |
|---|---|---|---|---|---|
| **Full Legal Name** | CARRASCO, BRYCE | | | | |
| **Social Security Number** | ▉▉▉▉▉ | | | | |
| **Date Of Birth** | 09/11/1996 | | | | |
| **Employment** | **Name** | **OPPENHEIMER & CO. INC. (**249**)** | | | |
| | **Firm Billing Code** | BC | | | |
| | **Position** | **Registered Representative** | | | |
| | **Independent Contractor** | **No** | | | |
| | **CRD Branch Number** | **FINRA OSJ** | **Address** | **Firm Billing Code** | **NYSE Branch Code Number** |
| | <u>358097</u> **- Located At** | **No** | **100 INTERNATIONAL DRIVE 19TH FLOOR BALTIMORE, MD 21202, United States** | **EC** | **EC** |
| | <u>492607</u> **- Supervised From** | **Yes** | **85 BROAD STREET 23RD FLOOR NEW YORK, NY 10004, United States** | **A832** | **A832** |
| **Residential Address** | 100 EAST REDWOOD STREET BALTIMORE, MD 21202, United States | | | | |
| **Reportable Disclosures?** | The specified individual has no disclosure that qualifies under this section (i.e., disclosure required to be reported on Form U4 or Form U5). Regulatory and Broker/Dealer Users: Please note that there are three types of disclosure in Web CRD: Reportable, Legacy and Archive disclosure. An individual with no reportable disclosure may or may not have Legacy or Archive disclosure. Investment Adviser Users: Please note that IARD does not include Legacy disclosure. Information reported on previous form filings through IARD is available under Filing History. | | | | |
| <u>Statutory Disqualification Status</u> | | **Last Updated** | | | |
| **Has Material Difference in Disclosure?** | No | | | | |
| <u>Current CE Status</u> | No CE Status | | | | |
| **Disclosure Counts - Current Disclosures** | **Criminal** | **Regulatory Action** | **Customer Complaint** | | **Other** |
| | 0 | 0 | 0 | | 0 |
| **Disclosure Counts - Historical Disclosures** | **Criminal** | **Regulatory Action** | **Customer Complaint** | | **Other** |
| | 0 | 0 | 0 | | 0 |

© 2019 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.
Privacy Legal Terms & Conditions

CONFIDENTIAL





myRapid Requests

Report Parameters

Request Client: Oppenheimer - Registration ▾
Report Level: Screening Package ▾
Request Date: 07/15/2019

Notes:

For special requests email customer service

Billing Code BC

First: BRYCE *
Middle:
Last: CARRASCO *
Suffix:
ID Issuing Country: United States ▾ *
SSN/ID: ▮▮▮▮ *
Date of Birth: 09/11/1996 * [mm/dd/yyyy]
Address 1: 100 EAST REDWOOD STREET *
Address 2:
City: BALTIMORE *
State: Maryland ▾ *
Zip: 21202 *
Country: United States ▾ *

*required information

OTHER ADDRESSES          CLOSE          SUBMIT

my **BIG** .com™

myRapid Requests

Confirmation

Your request on  BRYCE  CARRASCO   has been successfully submitted. It should appear in your myInProcess Reports shortly.

Click **NEW** to enter another request.

| CLOSE | NEW |
| --- | --- |

# U4 CHECKLIST

**AGENT NAME:** _Bryce Carrasco_

☐ PRE-HIRE CONSENT FORM  *N/A*

☐ INITIATED BIG SEARCH –REPORT REQUESTED ON _7_/_15_/2019

REPORT REVIEWED ON  _7_/_16_/2019

☐ WRITTEN/EMAIL PCS CONFIRMATION  *N/A*

☑ BACKGROUND VERIFICATION (3 YEARS)

☐ NFA/IAPD REPORTS (IF APPLICABLE)  *NO NFA*

☑ ORIGINAL SIGNED U4

☑ RULE 2263

☐ U5 FROM PREVIOUS FIRM

REVIEWED BY: _____  DATE: _7_/_12_/2019_

PROCESSED BY: _____  DATE: _7_/_12_/2019_

CONFIDENTIAL

**TO:** All Employees

**FROM:** Human Resources Department

Please complete the following information that might be needed in an emergency situation

1. **Employee Name:** Bryce Carrasco

2. In Emergency, Notify:

| Name | Relationship | Area code and Phone Number |
|------|--------------|----------------------------|
| 1. Sally Carrasco | Mother | 410 - 858 - 7435 |
| 2. Luis Carrasco | Father | 410 - 858 - 7899 |

3. Doctor to be notified:

Name: David Goodman

Area Code and Phone Number: 410-583-2723

4. Should hospitalization be necessary, please indicate, in order or preference, the Hospital of your choice.

| Name | City | State |
|------|------|-------|
| 1. AAMC | Annapolis | Maryland |
| 2. Johns Hopkins | Baltimore | Maryland |

**Employee Signature:** _BE_          **Date:** 07/02/2019



**ACKNOWLEDGMENT OF RECEIPT**

**COMPLIANCE MANUAL – POLICIES
AND PROCEDURES**

**TO**:   New Hire

**RE**:   Acknowledgment of receipt of the
Oppenheimer & Co. Inc., Compliance Manual – Policies and Procedures,
December 2017 electronic version

The undersigned hereby acknowledges that he/she has electronically accessed the Oppenheimer & Co. Inc.'s ("the Firm") Compliance Manual via the Compliance Policy Portal, has read and understands that compliance with the Policies and Procedures as set forth in the Compliance Manual, including any and all amendments or updates thereto (which will be announced with Compliance Alerts) is required of all employees. This Acknowledgement will remain in effect at all times during the undersigned's association with the Firm.

The Compliance Manual shall remain the sole property of the Firm and its content may not be reproduced or furnished to anyone who is not an employee of the Firm without prior written consent of the Compliance Department.

_Bryce Carrasco_
Employee's Name (please print)

_[signature]_
Employee's Signature

_Investment Banking – AB_
Branch # and Location or Department Name

_07/02/2019_
Date

Version 1/2018

# 13. Understanding and Acknowledgement by Employee

I acknowledge that I have received the Oppenheimer Co. Inc.'s Employee Handbook. I understand that I am responsible for reading the handbook, familiarizing myself with its contents and adhering to all of the policies and procedures of the Company, whether set forth in this handbook or elsewhere.

I understand that the information in the employee handbook represents guidelines only and that the Company reserves the right to modify this handbook or amend or terminate any policies, procedures, or employee benefit programs whether or not described in this handbook at any time, or to require and/or increase contributions toward these benefit programs. I understand this handbook replaces any previous handbook, and to the extent inconsistent, any previous understanding, practice, policy or representation concerning the subject matters covered by this handbook.

I understand that this handbook is not a contract of employment, express or implied, between me and the Company and that I should not view it as such, or as a guarantee of employment for any specific duration. I understand and agree that my employment is at-will, meaning that I may terminate my employment with the Company at any time either or without cause or notice, and the Company may terminate or change the terms of my employment at any time with or without cause or notice.

I further understand that no manager or representative of the Company, other than the Chief Executive Officer, has any authority to enter into any agreement guaranteeing employment for any specified period of time. I also understand that any such agreement, if made, will not be enforceable unless it is in a formal written agreement signed by the Chief Executive Officer.

Bryce Carrasco     Bryce Carrasco     6 / 29 / 2019
(Print Name of Employee)     Employee's Signature     Date

*CONFIDENTIAL*

December 19, 2018

Bryce Carrasco
334 Ternwing Drive
Arnold, MD 21012

Dear Bryce:

We are pleased to offer you a position as an Analyst (Class of 2019) in the Investment Banking Department of Oppenheimer & Co. Inc. ("Oppenheimer"). We anticipate that you will commence employment in early July 2019. We expect that you will be located at Oppenheimer's Baltimore office located at 100 International Drive, Baltimore, MD 21202, which may be subject to change, and will be reporting to Mr. Matthew Hudson and Mr. David Hartzell, Co-Heads of the Rental Services Investment Banking Group.

From the commencement of your employment and at all times that you are an active, full-time employee, Oppenheimer will pay you an annual salary (your "Salary") in the amount of $70,000, less any applicable payroll deductions, payable semi-monthly, as in accordance with Oppenheimer's normal payroll practices. You will also be eligible for a discretionary bonus in July 2020. The foregoing does not, however, in any way constitute a guarantee of, or commitment by Oppenheimer, with respect to the payment of any such discretionary bonus. 

In order to be eligible for any such discretionary bonus, or any compensation from Oppenheimer, you must be in an "active working status" on the bonus payment date. For purposes of this letter, "active working status" shall mean that you have not: (i) resigned from Oppenheimer (nor have you given notice of your intention to resign); (ii) been suspended by Oppenheimer; (iii) become "disabled" (as defined in Oppenheimer's short-term disability insurance policy generally applicable to all employees); or (iv) been terminated by Oppenheimer for any reason. Furthermore, prorated bonuses, if any are paid, will not be paid to any employee who experiences any of the events set forth in (i) – (iv) above prior to the payment of any such bonus(es) by Oppenheimer.

While employed, you (and where applicable, your eligible dependents) will be eligible to participate in the Oppenheimer benefits plans available to similarly-situated employees, which, as of your start date, includes comprehensive healthcare coverage, dental insurance, life insurance, disability insurance, and a 401(k) plan. These benefits will be available to you on your first day of eligibility, which (for all plans except the 401(k) plan) is the first day of the month immediately following your start date and you may participate, subject to the terms and conditions of the applicable benefit plan. The employee welcome package you will receive on your first day of employment will provide an overview of our plans. Please note that you must sign up for this coverage and submit completed forms within thirty (30) days of employment. Oppenheimer reserves the right to modify, suspend or terminate these plans, in whole or in

part, at any time and for any reason in its sole discretion. The full terms and conditions of these plans can only be determined by reviewing the official plan documents for these plans. In the event of any inconsistency between this letter and the official plan documents, the official plan documents shall control in all cases.

By accepting our offer and signing this letter, you affirm that you have the full right and authority to perform any services required of you during your employment with Oppenheimer and that by doing so you are not breaching any contract or legal obligation you may have with any third party.

This job offer is contingent upon your execution of Oppenheimer's standard employment agreement and Arbitration Agreement, which is included in your New Hire Packet, successfully completing the undergraduate degree in which you are currently enrolled, the satisfactory completion of various pre-employment background checks (which may include reference checks, employment and education verification and a criminal background check), your providing us with verification of your identity and ability to work legally for Oppenheimer in the United States in accordance with the Form I-9 requirements, your obtaining all licenses necessary for you to perform your job at Oppenheimer, specifically your Series 79 and Series 63 Licenses, within forty-five (45) days of the date your employment with Oppenheimer commences, as well as your agreement to comply with all Oppenheimer policies applicable to you or your employment, including but not limited to policies governing confidential information and non-disclosure obligations, and all other policies in Oppenheimer's Code of Conduct. By signing the Pre-Hire Information Consent Form, you give your consent for Oppenheimer to verify your previous employment, registration and, if applicable, disciplinary history through the FINRA-CRD system.

You confirm that you have no outside business activities or private investments that will reduce or impair your ability to apply all of your working efforts to Oppenheimer's business or that would create a conflict or an appearance of conflict for Oppenheimer or for you in your performance of your duties at Oppenheimer. Your continuance of any such activities or investments is at Oppenheimer's sole discretion.

This offer is extended to you based on your representations to Oppenheimer that: (1) you have fully disclosed to Oppenheimer your involvement in any pending legal, regulatory or administrative proceeding or matter relating to you or Oppenheimer or any past or current client or employee of Oppenheimer; (2) you are not subject to any restrictive covenants or non-competition agreements that in any way restrict your ability to accept this offer, commence employment with Oppenheimer, perform your job duties for Oppenheimer or to engage in or solicit any business of any type engaged in by Oppenheimer and you are not required to obtain the consent of any person, firm, corporation or entity of any kind whatsoever in order to accept this offer and commence employment with Oppenheimer; (3) you need not and will not use any confidential information of any third party to which you owe a duty of non-use or non-disclosure to perform your employment services for Oppenheimer or to engage in or solicit any business of the type engaged in by Oppenheimer; and (4) you will notify Oppenheimer in the event any of the above circumstances shall change specifically if you become subject to any legal, regulatory or administrative proceeding or matter relating to you or Oppenheimer or any past or current client or employee of Oppenheimer or you become subject to any disciplinary action taken by your University. Oppenheimer's Legal Department manages Oppenheimer's contacts with governmental, regulatory and administrative authorities, as well as with attorneys for private litigants, regarding all legal, regulatory or administrative proceedings or matters relating to Oppenheimer's business. Therefore, all regulatory inquiries seeking a response on behalf of Oppenheimer, including

inquiries directed to you seeking a response from or on behalf of Oppenheimer, should be directed to the Legal Department, which alone is authorized to respond on behalf of the firm. You are not authorized or permitted to respond to any such inquiries on behalf of Oppenheimer without appropriate authorization from the Legal Department.

Notwithstanding the foregoing, nothing in this letter agreement shall prohibit or restrict you from lawfully (A) initiating communications directly with, cooperating with, providing relevant information to or otherwise assisting in an investigation by the SEC, FINRA, or any other governmental or regulatory body or official or SRO regarding a possible violation of any applicable law, rule or regulation; (B) responding to any inquiry from any such governmental or regulatory body or official or SRO or governmental authority; or (C) testifying, participating or otherwise assisting in an action or proceeding relating to a possible violation of any such law, rule or regulation. Nor does this letter agreement require you to notify Oppenheimer of any such communications, cooperation, assistance, responses to inquiries, testimony or participation as described in this paragraph, except for such communications or inquiries seeking information or documents from or on behalf of Oppenheimer and responses to such communications or inquiries by or on behalf of Oppenheimer.

Employment with Oppenheimer is at the mutual consent of each employee and Oppenheimer. While Oppenheimer has every hope that your employment will be beneficial and rewarding, your employment is on an "at-will" basis and both you and Oppenheimer retain the right to terminate your employment relationship, at any time, for any reason, with or without cause. By signing this letter, you agree that this offer of employment is not intended to be and should not be construed to be a contract of employment for a definite term or any specific or particular period of time and that Oppenheimer retains the right to rescind this offer of employment between now and your commencement date. Please note that no individual has the authority to make any contrary agreement or representation. Accordingly, this constitutes a final and fully binding integrated agreement with respect to the "at-will" nature of your employment.

As required by the Application for Employment, you will be required to provide three references. You acknowledge that this offer may be revoked or your employment may be terminated upon receipt of negative comments by Oppenheimer from your references.

The Arbitration Agreement applicable to your anticipated employment with Oppenheimer is included in your New Hire Packet. The Arbitration Agreement provides, among other things, that you and Oppenheimer agree to have all Covered Claims (as defined in the Arbitration Agreement between you and Oppenheimer), including any claims or disputes between you and Oppenheimer based on, arising out of, or which arose out of or in any way relate to your employment, compensation, and terms and conditions of employment with Oppenheimer, or the termination thereof, and any claims or disputes based on, arising out of, or which arose out of or in any way relate to this letter agreement be resolved by final and binding arbitration on a non-class, non-collective, and non-representative action basis in accordance with and subject to the terms of the Arbitration Agreement, and the class action, collective action, and representative action waivers set forth therein. The Arbitration Agreement is incorporated by reference and constitutes a material part of Oppenheimer's offer of employment to you. The Arbitration Agreement, including the waivers set forth in Paragraph 4 thereof, will governed by and interpreted in accordance with the Federal Arbitration Act, but to the extent any issue relating to the Arbitration Agreement is governed by state law, it shall be governed by the laws of the state of New York without regard to choice of law principles. If you have any questions about the Arbitration Agreement, please contact the Human Resources Department at (248) 637-8338.

This offer letter agreement supersedes and replaces any and all prior offers, agreements, statements and representations made, whether written or oral, including statements and representations made in any advertisement or in the course of any job interviews, discussions, or negotiations for this position, except for those set forth in the Arbitration Agreement which shall be binding on you and Oppenheimer in accordance with its terms. No oral modification to this offer letter and agreement shall be valid and any changes to this offer letter and agreement must be in a writing signed by both you and an authorized representative of Oppenheimer. If any provision in this offer letter and agreement is held to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision herein and this offer letter and agreement will be enforced and construed as if such invalid or unenforceable provisions had not been included. This offer letter will be governed, construed and enforced in accordance with the laws of the state of New York without regard to choice of law principles.

Although Oppenheimer does not guarantee the tax treatment of any payment or benefit referred to in this letter, to the extent applicable, any payments or benefits referred to herein are intended to comply with, or be exempt from, the applicable requirements of Internal Revenue Code Section 409A.

We are genuinely pleased to have you join the firm, and are looking forward to your contribution to our team. To indicate that you accept the terms of this offer, please sign and return this letter and return it by no later than December 21, 2018. If you have any questions about any part of this letter, please do not hesitate to contact me at (617) 556-3738 or via email at emily.proud@opco.com. If you have any questions regarding Oppenheimer's standard employee benefits, please contact the Benefits Department at (248) 637-8338.

Sincerely,

Emily P. Proud
Director – Business Strategy & Development

Offer Accepted: _Bryce Carrasco_     12/20/2018
Bryce Carrasco                        Date

**W-2** Employee Reference Copy
Wage and Tax Statement **2019**
OMB No. 1545-0008

Copy C for employee's records.

| Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 209132 CLI2/DQ1 | 00BC17 | A | 470 |

Employer's name, address, and ZIP code
OPPENHEIMER & CO INC
SUITE 260
3310 W.BIG BEAVER RD 205
TROY MI 48084

Batch #01996

This blue section is your Earnings Summary which provides more detailed information on the generation of your W-2 statement and W-4 profile. The reverse side includes instructions and other general information.

**REDACTED**

**1. Your Gross Pay was adjusted as follows to produce your W-2 Statement.**

|  | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | MD. State Wages, Tips, Etc. Box 16 of W-2 |
|---|---|---|---|---|
| Gross Pay | 33,698.75 | 33,698.75 | 33,698.75 | 33,698.75 |
| Plus GTL (C-Box 12) | 5.00 | 5.00 | 5.00 | 5.00 |
| Less 401(k) (D-Box 12) | 1,575.00 | N/A | N/A | 1,575.00 |
| Less Other Cafe 125 | 230.00 | 230.00 | 230.00 | 230.00 |
| Reported W-2 Wages | 31,898.75 | 33,473.75 | 33,473.75 | 31,898.75 |

**2. Employee Current W-4 Profile.** To make changes, file a new W-4 with your payroll department.

BRYCE O CARRASCO
100 EAST REDWOOD STREET
APT 2013
BALTIMORE MD 21202

Social Security Number:
Taxable Marital Status: SINGLE
Exemptions/Allowances:
FEDERAL: 1
STATE: 0  Baltimo City w/ MD SIT
Single

© 2019 ADP, LLC

---

| | |
|---|---|
| ff Employee's name, address, and ZIP code | |

BRYCE O CARRASCO
100 EAST REDWOOD STREET
APT 2013
BALTIMORE MD 21202

| b Employer's FED ID number 13-5657518 | a Employee's SSA number |
|---|---|

| 1 Wages, tips, other comp. 31898.75 | 2 Federal income tax withheld 4217.40 |
|---|---|
| 3 Social security wages 33473.75 | 4 Social security tax withheld 2075.37 |
| 5 Medicare wages and tips 33473.75 | 6 Medicare tax withheld 485.37 |
| 7 Social security tips | 8 Allocated tips |
| | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12  C 5.00 |
| 14 Other | 12b D 1575.00 |
| | 12c |
| | 12d |
| | 13 Stat emp. Ret. plan X  3rd party sick pay |

| 5 State MD | Employer's state ID no. 08311438 | 16 State wages, tips, etc. 31898.75 |
|---|---|---|
| 7 State income tax 2450.71 | | 18 Local wages, tips, etc. |
| 9 Local income tax | | 20 Locality name |

---

| 1 Wages, tips, other comp. 31898.75 | 2 Federal income tax withheld 4217.40 |
|---|---|
| 3 Social security wages 33473.75 | 4 Social security tax withheld 2075.37 |
| 5 Medicare wages and tips 33473.75 | 6 Medicare tax withheld 485.37 |

| Control number 209132 CLI2/DQ1 00BC17 | Corp. A | Employer use only 470 |
|---|---|---|

c Employer's name, address, and ZIP code
OPPENHEIMER & CO INC
SUITE 260
3310 W.BIG BEAVER RD 205
TROY MI 48084

| b Employer's FED ID number 13-5657518 | a Employee's SSA number |
|---|---|
| 7 Social security tips | 8 Allocated tips |
| | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a See instructions for box 12  C 5.00 |
| 4 Other | 12b D 1575.00 |
| | 12c |
| | 12d |

ff Employee's name, address and ZIP code
BRYCE O CARRASCO
100 EAST REDWOOD STREET
APT 2013
BALTIMORE MD 21202

| 5 State MD | Employer's state ID no. 08311438 | 16 State wages, tips, etc. 31898.75 |
|---|---|---|
| State income tax 2450.71 | | 18 Local wages, tips, etc. |
| 9 Local income tax | | 20 Locality name |

**W-2** Federal Filing Copy
Wage and Tax Statement **2019**
CONFIDENTIAL
OMB No. 1545-0008
Copy C to be filed with employee's Federal Income Tax Return.

---

| 1 Wages, tips, other comp. 31898.75 | 2 Federal income tax withheld 4217.40 |
|---|---|
| 3 Social security wages 33473.75 | 4 Social security tax withheld 2075.37 |
| 5 Medicare wages and tips 33473.75 | 6 Medicare tax withheld 485.37 |

| Control number 209132 CLI2/DQ1 00BC17 | Corp. A | Employer use only 470 |
|---|---|---|

c Employer's name, address, and ZIP code
OPPENHEIMER & CO INC
SUITE 260
3310 W.BIG BEAVER RD 205
TROY MI 48084

| b Employer's FED ID number 13-5657518 | a Employee's SSA number |
|---|---|
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a |
| 14 Other | 12b C 5.00 |
| | 12b D 1575.00 |
| | 12c |
| | 12d |
| | 13 Stat emp. Ret. plan X  3rd party sick pay |

e/f Employee's name, address and ZIP code
BRYCE O CARRASCO
100 EAST REDWOOD STREET
APT 2013
BALTIMORE MD 21202

| 15 State MD | Employer's state ID no. 08311438 | 16 State wages, tips, etc. 31898.75 |
|---|---|---|
| 17 State income tax 2450.71 | | 18 Local wages, tips, etc. |
| 19 Local income tax | | 20 Locality name |

**W-2** MD.State Reference Copy
Wage and Tax Statement **2019**
OMB No. 1545-0008
Copy 2 to be filed with employee's State Income Tax Return.

---

| 1 Wages, tips, other comp. 31898.75 | 2 Federal income tax withheld 4217.40 |
|---|---|
| 3 Social security wages 33473.75 | 4 Social security tax withheld 2075.37 |
| 5 Medicare wages and tips 33473.75 | 6 Medicare tax withheld 485.37 |

| Control number 209132 CLI2/DQ1 00BC17 | Corp. A | Employer use only 470 |
|---|---|---|

c Employer's name, address, and ZIP code
OPPENHEIMER & CO INC
SUITE 260
3310 W.BIG BEAVER RD 205
TROY MI 48084

| b Employer's FED ID number 13-5657518 | a Employee's SSA number |
|---|---|
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a |
| 14 Other | 12b C 5.00 |
| | 12b D 1575.00 |
| | 12c |
| | 12d |
| | 13 Stat emp. Ret. plan X  3rd party sick pay |

e/f Employee's name, address and ZIP code
BRYCE O CARRASCO
100 EAST REDWOOD STREET
APT 2013
BALTIMORE MD 21202

| 15 State MD | Employer's state ID no. 08311438 | 16 State wages, tips, etc. 31898.75 |
|---|---|---|
| 17 State income tax 2450.71 | | 18 Local wages, tips, etc. |
| 19 Local income tax | | 20 Locality name |

**W-2** MD.State Filing Copy
Wage and Tax Statement **2019**
OMB No. 1545-0008
Copy 2 to be filed with employee's State Income Tax Return.

# 2020 W-2 and EARNINGS SUMMARY

ADP

This blue section is your Earnings Summary which provides more detailed information on the generation of your W-2 statement. The reverse side includes instructions and other general information.

REDACTED

## W-2 Wage and Tax Statement 2020

Employee Reference Copy
OMB No. 1545-0008
Copy C for employee's records.

| Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 209132 CLI2/DQ1 | 00BC17 | A | 430 |

Employer's name, address, and ZIP code

OPPENHEIMER & CO INC
SUITE 260
3310 W.BIG BEAVER RD 205
TROY MI 48084

Batch #01947

ff Employee's name, address, and ZIP code

BRYCE O CARRASCO
100 EAST REDWOOD STREET
APT 2013
BALTIMORE MD 21202

| Employer's FED ID number 13-5657518 | a Employee's SSA number |
|---|---|
| Wages, tips, other comp. 109268.68 | 2 Federal income tax withheld 18044.74 |
| 3 Social security wages 116418.68 | 4 Social security tax withheld 7217.96 |
| 5 Medicare wages and tips 116418.68 | 6 Medicare tax withheld 1688.07 |
| Social security tips | 8 Allocated tips |
| | 10 Dependent care benefits |
| 1 Nonqualified plans | 12a See instructions for box 12 C 12.00 |
| 4 Other | 12b D 7150.00 |
| | 12c |
| | 13 Stat emp Ret. plan X 3rd party sick pay |

| 5 State MD | Employer's state ID no. 08311438 | 16 State wages, tips, etc. 109268.68 |
|---|---|---|
| 7 State income tax 8929.05 | | 18 Local wages, tips, etc. |
| 9 Local income tax | | 20 Locality name |

### 1. Your Gross Pay was adjusted as follows to produce your W-2 Statement.

| | Wages, Tips, other Compensation Box 1 of W-2 | Social Security Wages Box 3 of W-2 | Medicare Wages Box 5 of W-2 | MD. State Wages, Tips, Etc. Box 16 of W-2 |
|---|---|---|---|---|
| Gross Pay | 119,166.68 | 119,166.68 | 119,166.68 | 119,166.68 |
| Plus GTL (C-Box 12) | 12.00 | 12.00 | 12.00 | 12.00 |
| Less 401(k) (D-Box 12) | 7,150.00 | N/A | N/A | 7,150.00 |
| Less Other Cafe 125 | 2,760.00 | 2,760.00 | 2,760.00 | 2,760.00 |
| Reported W-2 Wages | 109,268.68 | 116,418.68 | 116,418.68 | 109,268.68 |

### 2. Employee Name and Address.

BRYCE O CARRASCO
100 EAST REDWOOD STREET
APT 2013
BALTIMORE MD 21202

© 2020 ADP, Inc.

---

| 1 Wages, tips, other comp. 109268.68 | 2 Federal income tax withheld 18044.74 |
|---|---|
| Social security wages 116418.68 | 4 Social security tax withheld 7217.96 |
| Medicare wages and tips 116418.68 | 6 Medicare tax withheld 1688.07 |

| Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 209132 CLI2/DQ1 | 00BC17 | A | 430 |

OPPENHEIMER & CO INC
SUITE 260
3310 W.BIG BEAVER RD 205
TROY MI 48084

| Employer's FED ID number 13-5657518 | a Employee's SSA number |
|---|---|
| Social security tips | 8 Allocated tips |
| | 10 Dependent care benefits |
| 1 Nonqualified plans | 12a See instructions for box 12 C 12.00 |
| 4 Other | 12b D 7150.00 |
| | 12c |
| | 12d |
| | 13 Stat emp Ret. plan X 3rd party sick pay |

ff Employee's name, address and ZIP code

BRYCE O CARRASCO
100 EAST REDWOOD STREET
APT 2013
BALTIMORE MD 21202

| 15 State MD | Employer's state ID no. 08311438 | 16 State wages, tips, etc. 109268.68 |
|---|---|---|
| 17 State income tax 8929.05 | | 18 Local wages, tips, etc. |
| 19 Local income tax | | 20 Locality name |

### W-2 Federal Filing Copy Wage and Tax Statement 2020
CONFIDENTIAL
OMB No. 1545-0008
Copy B to be filed with employee's Federal Income Tax Return.

---

| 1 Wages, tips, other comp. 109268.68 | 2 Federal income tax withheld 18044.74 |
|---|---|
| 3 Social security wages 116418.68 | 4 Social security tax withheld 7217.96 |
| 5 Medicare wages and tips 116418.68 | 6 Medicare tax withheld 1688.07 |

| d Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 209132 CLI2/DQ1 | 00BC17 | A | 430 |

c Employer's name, address, and ZIP code

OPPENHEIMER & CO INC
SUITE 260
3310 W.BIG BEAVER RD 205
TROY MI 48084

| b Employer's FED ID number 13-5657518 | a Employee's SSA number |
|---|---|
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a C 12.00 |
| 14 Other | 12b D 7150.00 |
| | 12c |
| | 12d |
| | 13 Stat emp Ret. plan X 3rd party sick pay |

e/f Employee's name, address and ZIP code

BRYCE O CARRASCO
100 EAST REDWOOD STREET
APT 2013
BALTIMORE MD 21202

| 15 State MD | Employer's state ID no. 08311438 | 16 State wages, tips, etc. 109268.68 |
|---|---|---|
| 17 State income tax 8929.05 | | 18 Local wages, tips, etc. |
| 19 Local income tax | | 20 Locality name |

### W-2 MD.State Reference Copy Wage and Tax Statement 2020
OMB No. 1545-0008
Copy 2 to be filed with employee's State Income Tax Return.

---

| 1 Wages, tips, other comp. 109268.68 | 2 Federal income tax withheld 18044.74 |
|---|---|
| 3 Social security wages 116418.68 | 4 Social security tax withheld 7217.96 |
| 5 Medicare wages and tips 116418.68 | 6 Medicare tax withheld 1688.07 |

| d Control number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 209132 CLI2/DQ1 | 00BC17 | A | 430 |

c Employer's name, address, and ZIP code

OPPENHEIMER & CO INC
SUITE 260
3310 W.BIG BEAVER RD 205
TROY MI 48084

| b Employer's FED ID number 13-5657518 | a Employee's SSA number |
|---|---|
| 7 Social security tips | 8 Allocated tips |
| 9 | 10 Dependent care benefits |
| 11 Nonqualified plans | 12a C 12.00 |
| 14 Other | 12b D 7150.00 |
| | 12c |
| | 12d |
| | 13 Stat emp Ret. plan X 3rd party sick pay |

e/f Employee's name, address and ZIP code

BRYCE O CARRASCO
100 EAST REDWOOD STREET
APT 2013
BALTIMORE MD 21202

| 15 State MD | Employer's state ID no. 08311438 | 16 State wages, tips, etc. 109268.68 |
|---|---|---|
| 17 State income tax 8929.05 | | 18 Local wages, tips, etc. |
| 19 Local income tax | | 20 Locality name |

### W-2 MD.State Filing Copy Wage and Tax Statement 2020
OPCO
OMB No. 1545-0008

# Earnings Statement

Period Beginning: 07/16/2019
Period Ending: 07/31/2019
Pay Date: 07/31/2019

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | | 2,916.67 | |
| Straight O/t | | | 1,615.38 | |
| | Gross Pay | $ | 4,532.05 | |

| Important Notes |
|-----------------|
| Rate Type: Salaried |

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 656.60– | |
| | Social Security Tax | 280.99– | |
| | Medicare Tax | 65.71– | |
| | MD Withholding Tax | 349.98– | |
| | **Other** | | |
| | Net Pay | $ | 3,178.77 |
| | Net Check | $ | 3,178.77 |

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Payroll check number: 0000458278
Period Beginning: 07/16/2019
Period Ending: 07/31/2019
Pay Date: 07/31/2019
Employee ID: 209132

Pay to the order of **BRYCE O CARRASCO**

This Amount: THREE THOUSAND ONE HUNDRED SEVENTY-EIGHT AND 77/100 DOLLARS | $3,178.77

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning:    08/01/2019
Period Ending:    08/15/2019
Pay Date:    08/15/2019

Taxable Marital Status:    Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| | **Gross Pay** | | **$ 2,916.67** | |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Withholding Tax | 395.79– |
| | Social Security Tax | 180.86– |
| | Medicare Tax | 42.30– |
| | MD Withholding Tax | 224.42– |
| | **Other** | |
| | **Net Pay** | **$ 2,073.30** |
| | Checking 1 | 2,073.30– |
| | **Net Check** | **$ 0.00** |

**Important Notes**
Rate Type:  Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number:    0000330238
Period Beginning:    08/01/2019
Period Ending:    08/15/2019
Pay Date:    08/15/2019
Employee ID:    209132

Pay to the
order of    **BRYCE O CARRASCO**

This Amount:    **NO AND 00/100 DOLLARS**    **$0.00**

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning: 08/16/2019
Period Ending: 08/31/2019
Pay Date: 08/30/2019

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| Gross Pay | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 357.29– | |
| | Social Security Tax | 180.87– | |
| | Medicare Tax | 42.30– | |
| | MD Withholding Tax | 210.51– | |
| | **Other** | | |
| | *401K | 175.00– | |
| | Net Pay | $ | 1,950.70 |
| | Checking 1 | 1,950.70– | |
| | Net Check | $ | 0.00 |

**Important Notes**
Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000350229
Period Beginning: 08/16/2019
Period Ending: 08/31/2019
Pay Date: 08/30/2019
Employee ID: 209132

Pay to the
order of   **BRYCE O CARRASCO**
This Amount:   NO AND 00/100 DOLLARS                                    $0.00

# NON-NEGOTIABLE
## (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning: 09/01/2019
Period Ending: 09/15/2019
Pay Date: 09/13/2019

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| **Gross Pay** | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 357.29– | |
| | Social Security Tax | 180.86– | |
| | Medicare Tax | 42.30– | |
| | MD Withholding Tax | 210.51– | |

| | Other | | |
|---|-------|---|---|
| | *401K | 175.00– | |
| | **Net Pay** | $ | 1,950.71 |
| | Checking 1 | 1,950.71– | |
| | **Net Check** | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

**Other Benefits and**

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000370229
Period Beginning: 09/01/2019
Period Ending: 09/15/2019
Pay Date: 09/13/2019
Employee ID: 209132

Pay to the
order of **BRYCE O CARRASCO**

This Amount: **NO AND 00/100 DOLLARS** | $0.00

# NON-NEGOTIABLE
(THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning:      09/16/2019
Period Ending:       09/30/2019
Pay Date:           09/30/2019

Taxable Marital Status:     Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| Gross Pay | $ | | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 357.29– | |
| | Social Security Tax | 180.87– | |
| | Medicare Tax | 42.30– | |
| | MD Withholding Tax | 210.51– | |

| | Other | | |
|---|---|---|---|
| | *401K | 175.00– | |
| | Net Pay | $ | 1,950.70 |
| | Checking 1 | | 1,950.70– |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type:  Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number:      **0000390227**
Period Beginning:    09/16/2019
Period Ending:      09/30/2019
Pay Date:         09/30/2019
Employee ID:       209132

Pay to the
order of     **BRYCE O CARRASCO**

This Amount:   **NO AND 00/100 DOLLARS**               **$0.00**

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

# Earnings Statement

Period Beginning: 10/01/2019
Period Ending: 10/15/2019
Pay Date: 10/15/2019

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| | Gross Pay | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 357.29- | |
| | Social Security Tax | 180.86- | |
| | Medicare Tax | 42.30- | |
| | MD Withholding Tax | 210.51- | |
| | | | |
| | Other | | |
| | *401K | 175.00- | |
| | Net Pay | $ | 1,950.71 |
| | Checking 1 | 1,950.71- | |
| | Net Check | $ | 0.00 |

**Important Notes**
Rate Type: Salaried

**Other Benefits and**

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000410230
Period Beginning: 10/01/2019
Period Ending: 10/15/2019
Pay Date: 10/15/2019
Employee ID: 209132

Pay to the
order of **BRYCE O CARRASCO**

This Amount: **NO AND 00/100 DOLLARS** | $0.00

# NON-NEGOTIABLE
## (THIS IS NOT A CHECK)

CONFIDENTIAL

OPCO_0098

# Earnings Statement

Period Beginning: 10/16/2019
Period Ending: 10/31/2019
Pay Date: 10/31/2019

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| **Gross Pay** | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 357.29– | |
| | Social Security Tax | 180.86– | |
| | Medicare Tax | 42.30– | |
| | MD Withholding Tax | 210.51– | |
| | **Other** | | |
| | *401K | 175.00– | |
| | **Net Pay** | $ | 1,950.71 |
| | Checking 1 | 1,950.71– | |
| | **Net Check** | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

**Other Benefits and**

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000440230
Period Beginning: 10/16/2019
Period Ending: 10/31/2019
Pay Date: 10/31/2019
Employee ID: 209132

Pay to the
order of **BRYCE O CARRASCO**

This Amount: **NO AND 00/100 DOLLARS** $0.00

# NON-NEGOTIABLE
(THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning:    11/01/2019
Period Ending:    11/15/2019
Pay Date:    11/15/2019

Taxable Marital Status:    Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| **Gross Pay** | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 357.29– | |
| | Social Security Tax | 180.87– | |
| | Medicare Tax | 42.30– | |
| | MD Withholding Tax | 210.51– | |
| | **Other** | | |
| | *401K | 175.00– | |
| | **Net Pay** | $ | 1,950.70– |
| | Checking 1 | 1,950.70– | |
| | **Net Check** | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

Other Benefits and

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number:    **0000460237**
Period Beginning:    11/01/2019
Period Ending:    11/15/2019
Pay Date:    11/15/2019
Employee ID:    209132

Pay to the
order of    **BRYCE O CARRASCO**

This Amount:    **NO AND 00/100 DOLLARS**    **$0.00**

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

# Earnings Statement

Period Beginning: 11/16/2019
Period Ending: 11/30/2019
Pay Date: 11/29/2019

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| Gross Pay | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 357.29- | |
| | Social Security Tax | 180.86- | |
| | Medicare Tax | 42.30- | |
| | MD Withholding Tax | 210.51- | |
| | **Other** | | |
| | *401K | 175.00- | |
| | Net Pay | $ | 1,950.71 |
| | Checking 1 | 1,950.71- | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|---------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000480234
Period Beginning: 11/16/2019
Period Ending: 11/30/2019
Pay Date: 11/29/2019
Employee ID: 209132

Pay to the
order of **BRYCE O CARRASCO**

This Amount: **NO AND 00/100 DOLLARS** | **$0.00**

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning:    12/01/2019
Period Ending:    12/15/2019
Pay Date:    12/13/2019

Taxable Marital Status:    Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| | Gross Pay | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 331.99– | |
| | Social Security Tax | 173.74– | |
| | Medicare Tax | 40.63– | |
| | MD Withholding Tax | 201.37– | |
| | **Other** | | |
| | *Flex Parki | 115.00– | |
| | *401K | 175.00– | |
| | Net Pay | $ | 1,878.94 |
| | Checking 1 | 1,878.94– | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type:  Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number:    **0000500233**
Period Beginning:    12/01/2019
Period Ending:    12/15/2019
Pay Date:    12/13/2019
Employee ID:    209132

Pay to the
order of    **BRYCE O CARRASCO**
This Amount:    **NO AND 00/100 DOLLARS**    **$0.00**

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. |
|-----|------|-------|-------|-----------|
| DQ1 | 209132 | 00BC17 | | 0000520235 |

# Earnings Statement

Period Beginning: 12/16/2019
Period Ending: 12/31/2019
Pay Date: 12/31/2019

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| **Gross Pay** | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Federal Withholding Tax | 331.99– | |
| | Social Security Tax | 173.73– | |
| | Medicare Tax | 40.63– | |
| | MD Withholding Tax | 201.37– | |
| | **Other** | | |
| | *Flex Parki | 115.00– | |
| | *401K | 175.00– | |
| | **Net Pay** | $ | 1,878.95 |
| | Checking 1 | 1,878.95– | |
| | **Net Check** | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000520235
Period Beginning: 12/16/2019
Period Ending: 12/31/2019
Pay Date: 12/31/2019
Employee ID: 209132

Pay to the
order of **BRYCE O CARRASCO**

This Amount: NO AND 00/100 DOLLARS | $0.00 |

# NON-NEGOTIABLE
## (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

| | |
|---|---|
| Period Beginning: | 01/01/2020 |
| Period Ending: | 01/15/2020 |
| Pay Date: | 01/15/2020 |

Taxable Marital Status:     Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| Gross Pay | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 328.21– | |
| | Social Security Tax | 173.73– | |
| | Medicare Tax | 40.63– | |
| | MD Withholding Tax | 202.20– | |
| | | | |
| | Other | | |
| | *Flex Parki | 115.00– | |
| | *401K | 175.00– | |
| | Net Pay | $ | 1,881.90 |
| | Checking 1 | 1,881.90– | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type:  Salaried

| Other Benefits and Information | this period | year to date |
|--------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

| | |
|---|---|
| Advice number: | **0000020235** |
| Period Beginning: | 01/01/2020 |
| Period Ending: | 01/15/2020 |
| Pay Date: | 01/15/2020 |
| Employee ID: | 209132 |

Pay to the
order of     **BRYCE O CARRASCO**

This Amount:     NO AND 00/100 DOLLARS     $0.00

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL                                    OPCO_0104

# Earnings Statement

Period Beginning:      01/16/2020
Period Ending:      01/31/2020
Pay Date:      01/31/2020

Taxable Marital Status:      Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| **Gross Pay** | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 328.21– | |
| | Social Security Tax | 173.74– | |
| | Medicare Tax | 40.63– | |
| | MD Withholding Tax | 202.20– | |

| | Other | | |
|---|-------|---|---|
| | *Flex Parki | 115.00– | |
| | *401K | 175.00– | |
| | **Net Pay** | $ | 1,881.89 |
| | Checking 1 | 1,881.89– | |
| | **Net Check** | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

**Other Benefits and**

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number:      0000050242
Period Beginning:      01/16/2020
Period Ending:      01/31/2020
Pay Date:      01/31/2020
Employee ID:      209132

Pay to the
order of      **BRYCE O CARRASCO**

This Amount:      **NO AND 00/100 DOLLARS**      $0.00

# NON-NEGOTIABLE
## (THIS IS NOT A CHECK)

CONFIDENTIAL      OPCO_0105

# Earnings Statement

Period Beginning:     02/01/2020
Period Ending:        02/15/2020
Pay Date:             02/14/2020

Taxable Marital Status:     Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| Gross Pay | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 328.21– | |
| | Social Security Tax | 173.73– | |
| | Medicare Tax | 40.63– | |
| | MD Withholding Tax | 202.20– | |
| | Other | | |
| | *Flex Parki | 115.00– | |
| | *401K | 175.00– | |
| | Net Pay | $ | 1,881.90 |
| | Checking 1 | 1,881.90– | |
| | Net Check | $ | 0.00 |

| Important Notes |
|-----------------|
| Rate Type: Salaried |

| Other Benefits and Information | this period | year to date |
|--------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number:        0000070235
Period Beginning:     02/01/2020
Period Ending:        02/15/2020
Pay Date:             02/14/2020
Employee ID:          209132

Pay to the
order of     **BRYCE O CARRASCO**
This Amount:     NO AND 00/100 DOLLARS                                   $0.00

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL                                                          OPCO_0106

# Earnings Statement

Period Beginning: 02/16/2020
Period Ending: 02/29/2020
Pay Date: 02/28/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| | Gross Pay | $ | 2,916.67 | |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Withholding Tax | 328.21– |
| | Social Security Tax | 173.74– |
| | Medicare Tax | 40.64– |
| | MD Withholding Tax | 201.20– |
| | **Other** | |
| | *Flex Parki | 115.00– |
| | *401K | 175.00– |
| | Net Pay | $ | 1,882.88 |
| | Checking 1 | 1,882.88– |
| | Net Check | $ | 0.00 |

**Important Notes**
Rate Type: Salaried

**Other Benefits and**

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000090239
Period Beginning: 02/16/2020
Period Ending: 02/29/2020
Pay Date: 02/28/2020
Employee ID: 209132

Pay to the
order of    **BRYCE O CARRASCO**

This Amount:  **NO AND 00/100 DOLLARS**              $0.00

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning: 03/01/2020
Period Ending: 03/15/2020
Pay Date: 03/13/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| Gross Pay | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 328.21– | |
| | Social Security Tax | 173.73– | |
| | Medicare Tax | 40.63– | |
| | MD Withholding Tax | 201.20– | |
| | Other | | |
| | *Flex Parki | 115.00– | |
| | *401K | 175.00– | |
| | Net Pay | $ | 1,882.90 |
| | Checking 1 | 1,882.90– | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|--------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: **0000110241**
Period Beginning: 03/01/2020
Period Ending: 03/15/2020
Pay Date: 03/13/2020
Employee ID: 209132

Pay to the
order of **BRYCE O CARRASCO**
This Amount: **NO AND 00/100 DOLLARS** | **$0.00**

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning: 03/16/2020
Period Ending: 03/31/2020
Pay Date: 03/31/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| | **Gross Pay** | | $ 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Federal Withholding Tax | 328.21– | |
| | Social Security Tax | 173.74– | |
| | Medicare Tax | 40.63– | |
| | MD Withholding Tax | 201.20– | |

| | Other | | |
|--|-------|--|--|
| | *Flex Parki | 115.00– | |
| | *401K | 175.00– | |
| | **Net Pay** | $ 1,882.89 | |
| | Checking 1 | 1,882.89– | |
| | **Net Check** | $ 0.00 | |

**Important Notes**

Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

| | | |
|--|--|--|
| Advice number: | **0000130240** | |
| Period Beginning: | 03/16/2020 | |
| Period Ending: | 03/31/2020 | |
| Pay Date: | 03/31/2020 | |
| Employee ID: | 209132 | |

Pay to the
order of **BRYCE O CARRASCO**
This Amount: **NO AND 00/100 DOLLARS** | $0.00

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

# Earnings Statement

Period Beginning: 04/01/2020
Period Ending: 04/15/2020
Pay Date: 04/15/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| Gross Pay | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 328.21– | |
| | Social Security Tax | 173.73– | |
| | Medicare Tax | 40.63– | |
| | MD Withholding Tax | 201.20– | |

| | Other | | |
|---|-------|---|---|
| | *Flex Parki | 115.00– | |
| | *401K | 175.00– | |
| | Net Pay | $ | 1,882.90 |
| | Checking 1 | 1,882.90– | |
| | Net Check | $ | 0.00 |

**Important Notes**
Rate Type: Salaried

**Other Benefits and**

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

| Advice number: | 0000150243 |
|----------------|------------|
| Period Beginning: | 04/01/2020 |
| Period Ending: | 04/15/2020 |
| Pay Date: | 04/15/2020 |
| Employee ID: | 209132 |

Pay to the
order of    **BRYCE O CARRASCO**

This Amount:    **NO AND 00/100 DOLLARS**                                    $0.00

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning:    04/16/2020
Period Ending:    04/30/2020
Pay Date:    04/30/2020

Taxable Marital Status:    Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| Gross Pay | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 328.21- | |
| | Social Security Tax | 173.74- | |
| | Medicare Tax | 40.63- | |
| | MD Withholding Tax | 201.20- | |
| | | | |
| | Other | | |
| | *Flex Parki | 115.00- | |
| | *401K | 175.00- | |
| | Net Pay | $ | 1,882.89 |
| | Checking 1 | 1,882.89- | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type:  Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number:    0000180237
Period Beginning:    04/16/2020
Period Ending:    04/30/2020
Pay Date:    04/30/2020
Employee ID:    209132

Pay to the
order of    **BRYCE O CARRASCO**

This Amount:    NO AND 00/100 DOLLARS    $0.00

# NON-NEGOTIABLE
## (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning: 05/01/2020
Period Ending: 05/15/2020
Pay Date: 05/15/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| Gross Pay | $ | | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 328.21– | |
| | Social Security Tax | 173.73– | |
| | Medicare Tax | 40.63– | |
| | MD Withholding Tax | 201.20– | |
| | **Other** | | |
| | *Flex Parki | 115.00– | |
| | *401K | 175.00– | |
| | Net Pay | $ | 1,882.90 |
| | Checking 1 | 1,882.90– | |
| | Net Check | $ | 0.00 |

**Important Notes**
Rate Type: Salaried

**Other Benefits and**
| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

| | |
|---|---|
| Advice number: | 0000200238 |
| Period Beginning: | 05/01/2020 |
| Period Ending: | 05/15/2020 |
| Pay Date: | 05/15/2020 |
| Employee ID: | 209132 |

Pay to the
order of **BRYCE O CARRASCO**

This Amount: **NO AND 00/100 DOLLARS** | $0.00 |

# NON-NEGOTIABLE
## (THIS IS NOT A CHECK)

# Earnings Statement

Period Beginning: 05/16/2020
Period Ending: 05/31/2020
Pay Date: 05/29/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| Gross Pay | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Withholding Tax | 328.21– | |
| | Social Security Tax | 173.74– | |
| | Medicare Tax | 40.63– | |
| | MD Withholding Tax | 201.20– | |

| | Other | | |
|---|---|---|---|
| | *Flex Parki | 115.00– | |
| | *401K | 175.00– | |
| | Net Pay | $ | 1,882.89 |
| | Checking 1 | 1,882.89– | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|---|---|---|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000220237
Period Beginning: 05/16/2020
Period Ending: 05/31/2020
Pay Date: 05/29/2020
Employee ID: 209132

Pay to the order of **BRYCE O CARRASCO**

This Amount: NO AND 00/100 DOLLARS     $0.00

# NON-NEGOTIABLE
(THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

| | |
|---|---|
| Period Beginning: | 06/01/2020 |
| Period Ending: | 06/15/2020 |
| Pay Date: | 06/15/2020 |

Taxable Marital Status:     Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| | Gross Pay | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 328.21– | |
| | Social Security Tax | 173.73– | |
| | Medicare Tax | 40.64– | |
| | MD Withholding Tax | 201.20– | |
| | | | |
| | Other | | |
| | *Flex Parki | 115.00– | |
| | *401K | 175.00– | |
| | Net Pay | $ | 1,882.89 |
| | Checking 1 | 1,882.89– | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type:  Salaried

| Other Benefits and Information | this period | year to date |
|--------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

| | |
|---|---|
| Advice number: | 0000240239 |
| Period Beginning: | 06/01/2020 |
| Period Ending: | 06/15/2020 |
| Pay Date: | 06/15/2020 |
| Employee ID: | 209132 |

Pay to the
order of     **BRYCE O CARRASCO**

This Amount:     NO AND 00/100 DOLLARS                              $0.00

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

OPCO_0114

# Earnings Statement

| | |
|---|---|
| Period Beginning: | 06/16/2020 |
| Period Ending: | 06/30/2020 |
| Pay Date: | 06/30/2020 |

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| Gross Pay | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 328.21- | |
| | Social Security Tax | 173.73- | |
| | Medicare Tax | 40.63- | |
| | MD Withholding Tax | 201.20- | |
| | | | |
| | Other | | |
| | *Flex Parki | 115.00- | |
| | *401K | 175.00- | |
| | Net Pay | $ | 1,882.90 |
| | Checking 1 | 1,882.90- | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type:  Salaried

| Other Benefits and Information | this period | year to date |
|---|---|---|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

| | |
|---|---|
| Advice number: | 0000260239 |
| Period Beginning: | 06/16/2020 |
| Period Ending: | 06/30/2020 |
| Pay Date: | 06/30/2020 |
| Employee ID: | 209132 |

Pay to the
order of    **BRYCE O CARRASCO**

This Amount:    **NO AND 00/100 DOLLARS**                         **$0.00**

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

OPCO_0115

# Earnings Statement

Period Beginning: 07/01/2020
Period Ending: 07/15/2020
Pay Date: 07/15/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| Gross Pay | | $ | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Federal Withholding Tax | 328.21- | |
| | Social Security Tax | 173.74- | |
| | Medicare Tax | 40.63- | |
| | MD Withholding Tax | 201.20- | |

| | Other | | |
|--|-------|--|--|
| | *Flex Parki | 115.00- | |
| | *401K | 175.00- | |
| | Net Pay | $ | 1,882.89 |
| | Checking 1 | 1,882.89- | |
| | Net Check | $ | 0.00 |

**Important Notes**
Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000280245
Period Beginning: 07/01/2020
Period Ending: 07/15/2020
Pay Date: 07/15/2020
Employee ID: 209132

Pay to the order of **BRYCE O CARRASCO**

This Amount: **NO AND 00/100 DOLLARS** | **$0.00**

# NON-NEGOTIABLE
(THIS IS NOT A CHECK)

# Earnings Statement

Period Beginning:     07/16/2020
Period Ending:     07/31/2020
Pay Date:     07/31/2020

Taxable Marital Status:     Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 2916.6700 | 86.67 | 2,916.67 | |
| Gross Pay | $ | | 2,916.67 | |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Federal Withholding Tax | 328.21- | |
| | Social Security Tax | 173.73- | |
| | Medicare Tax | 40.63- | |
| | MD Withholding Tax | 201.20- | |
| | Other | | |
| | *Flex Parki | 115.00- | |
| | *401K | 175.00- | |
| | Net Pay | $ | 1,882.90 |
| | Checking 1 | 1,882.90- | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

Other Benefits and

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number:     0000310244
Period Beginning:     07/16/2020
Period Ending:     07/31/2020
Pay Date:     07/31/2020
Employee ID:     209132

Pay to the
order of     **BRYCE O CARRASCO**

This Amount:     NO AND 00/100 DOLLARS     $0.00

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

OPCO_0117

# Earnings Statement

Period Beginning: 07/16/2020
Period Ending: 07/31/2020
Pay Date: 07/31/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Bonus | | | 45,000.00 | |
| Gross Pay | | $ | 45,000.00 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 9,306.00– | |
| | Social Security Tax | 2,790.00– | |
| | Medicare Tax | 652.50– | |
| | MD Withholding Tax | 3,785.85– | |
| | | | |
| | Other | | |
| | *401K | 2,700.00– | |
| | Net Pay | $ | 25,765.65 |
| | Checking 1 | 25,765.65– | |
| | Net Check | $ | 0.00 |

**Important Notes**
Rate Type: Salaried

Other Benefits and
| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000310245
Period Beginning: 07/16/2020
Period Ending: 07/31/2020
Pay Date: 07/31/2020
Employee ID: 209132

Pay to the
order of   **BRYCE O CARRASCO**
This Amount: **NO AND 00/100 DOLLARS**                    **$0.00**

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. |
|-----|------|-------|-------|-----------|
| DQI | 209132 | 00BC17 | | 0000330248 |

# Earnings Statement

Period Beginning: 08/01/2020
Period Ending: 08/15/2020
Pay Date: 08/14/2020

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

Taxable Marital Status:     Single

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| | | Gross Pay | $      3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Federal Withholding Tax | 414.38- | |
| | Social Security Tax | 199.57- | |
| | Medicare Tax | 46.67- | |
| | MD Withholding Tax | 232.34- | |

| | Other | | |
|--|-------|--|--|
| | *Flex Parki | 115.00- | |
| | *401K | 200.00- | |
| | Net Pay | $      2,125.37 | |
| | Checking 1 | 2,125.37- | |
| | Net Check | $         0.00 | |

**Important Notes**

Rate Type:  Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number:     0000330248
Period Beginning:   08/01/2020
Period Ending:      08/15/2020
Pay Date:           08/14/2020
Employee ID:        209132

Pay to the
order of     **BRYCE O CARRASCO**

This Amount:    NO AND 00/100 DOLLARS                                 $0.00

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

# Earnings Statement

Period Beginning: 08/16/2020
Period Ending: 08/31/2020
Pay Date: 08/31/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| **Gross Pay** | | $ | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 414.38- | |
| | Social Security Tax | 199.57- | |
| | Medicare Tax | 46.68- | |
| | MD Withholding Tax | 232.34- | |
| | **Other** | | |
| | *Flex Parki | 115.00- | |
| | *401K | 200.00- | |
| | **Net Pay** | $ | 2,125.36 |
| | Checking 1 | 2,125.36- | |
| | **Net Check** | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

Other Benefits and

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000350249
Period Beginning: 08/16/2020
Period Ending: 08/31/2020
Pay Date: 08/31/2020
Employee ID: 209132

Pay to the
order of    **BRYCE O CARRASCO**

This Amount:  NO AND 00/100 DOLLARS                                              $0.00

# NON-NEGOTIABLE
(THIS IS NOT A CHECK)

# Earnings Statement

Period Beginning: 09/01/2020
Period Ending: 09/15/2020
Pay Date: 09/15/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| Gross Pay | | $ | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Federal Withholding Tax | 414.38– | |
| | Social Security Tax | 199.57– | |
| | Medicare Tax | 46.67– | |
| | MD Withholding Tax | 232.34– | |
| | **Other** | | |
| | *Flex Parki | 115.00– | |
| | *401K | 200.00– | |
| | Net Pay | $ | 2,125.37 |
| | Checking 1 | 2,125.37– | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

| Advice number: | 0000370244 |
|----------------|------------|
| Period Beginning: | 09/01/2020 |
| Period Ending: | 09/15/2020 |
| Pay Date: | 09/15/2020 |
| Employee ID: | 209132 |

Pay to the
order of     **BRYCE O CARRASCO**

This Amount:  NO AND 00/100 DOLLARS                    $0.00

# NON-NEGOTIABLE
(THIS IS NOT A CHECK)

CONFIDENTIAL

OPCO_0121

# Earnings Statement

Period Beginning: 09/16/2020
Period Ending: 09/30/2020
Pay Date: 09/30/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| Gross Pay | $ | | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Federal Withholding Tax | 414.38– | |
| | Social Security Tax | 199.56– | |
| | Medicare Tax | 46.67– | |
| | MD Withholding Tax | 232.34– | |

| | Other | | |
|--|-------|--|--|
| | *Flex Parki | 115.00– | |
| | *401K | 200.00– | |
| | Net Pay | $ | 2,125.38 |
| | Checking 1 | 2,125.38– | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|--------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000390245
Period Beginning: 09/16/2020
Period Ending: 09/30/2020
Pay Date: 09/30/2020
Employee ID: 209132

Pay to the order of **BRYCE O CARRASCO**

| This Amount: | **NO AND 00/100 DOLLARS** | $0.00 |
|--------------|---------------------------|-------|

# NON-NEGOTIABLE
(THIS IS NOT A CHECK)

CONFIDENTIAL

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. |
|-----|------|-------|-------|-----------|
| DQ1 | 209132 | 00BC17 | | 0000420246 |

# Earnings Statement

Period Beginning: 10/01/2020
Period Ending: 10/15/2020
Pay Date: 10/15/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| | Gross Pay | $ | 3,333.33 | |

| Deductions | Statutory | |
|------------|-----------|--|
| | Federal Withholding Tax | 414.38– |
| | Social Security Tax | 199.57– |
| | Medicare Tax | 46.68– |
| | MD Withholding Tax | 232.34– |

| | Other | |
|--|-------|--|
| | *Flex Parki | 115.00– |
| | *401K | 200.00– |
| | Net Pay | $ 2,125.36 |
| | Checking 1 | 2,125.36– |
| | Net Check | $ 0.00 |

**Important Notes**

Rate Type:  Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000420246
Period Beginning: 10/01/2020
Period Ending: 10/15/2020
Pay Date: 10/15/2020
Employee ID: 209132

Pay to the
order of    **BRYCE O CARRASCO**

This Amount:  NO AND 00/100 DOLLARS                           $0.00

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

# Earnings Statement

| | |
|---|---|
| Period Beginning: | 10/16/2020 |
| Period Ending: | 10/31/2020 |
| Pay Date: | 10/30/2020 |

Taxable Marital Status:     Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| Gross Pay | | $ | 3,333.33 | |

| Deductions | Statutory | |
|------------|-----------|---|
| | Federal Withholding Tax | 414.38- |
| | Social Security Tax | 199.57- |
| | Medicare Tax | 46.67- |
| | MD Withholding Tax | 232.34- |
| | **Other** | |
| | *Flex Parki | 115.00- |
| | *401K | 200.00- |
| | Net Pay | $ 2,125.37 |
| | Checking 1 | 2,125.37- |
| | Net Check | $ 0.00 |

**Important Notes**
Rate Type:  Salaried

Other Benefits and

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

| | |
|---|---|
| **Advice number:** | **0000440245** |
| Period Beginning: | 10/16/2020 |
| Period Ending: | 10/31/2020 |
| Pay Date: | 10/30/2020 |
| Employee ID: | 209132 |

Pay to the
order of     **BRYCE O CARRASCO**

This Amount:  NO AND 00/100 DOLLARS                                    $0.00

# NON-NEGOTIABLE
## (THIS IS NOT A CHECK)

CONFIDENTIAL

OPCO_0124

# Earnings Statement

Period Beginning:      11/01/2020
Period Ending:      11/15/2020
Pay Date:      11/13/2020

Taxable Marital Status:      Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| | Gross Pay | $ | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 414.38– | |
| | Social Security Tax | 199.57– | |
| | Medicare Tax | 46.67– | |
| | MD Withholding Tax | 232.34– | |

| | Other | | |
|---|-------|---|---|
| | *Flex Parki | 115.00– | |
| | *401K | 200.00– | |
| | Net Pay | $ | 2,125.37 |
| | Checking 1 | 2,125.37– | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type:  Salaried

| Other Benefits and Information | this period | year to date |
|--------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number:      0000460246
Period Beginning:      11/01/2020
Period Ending:      11/15/2020
Pay Date:      11/13/2020
Employee ID:      209132

Pay to the
order of    **BRYCE O CARRASCO**

This Amount:    NO AND 00/100 DOLLARS      $0.00

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

OPCO_0125

# Earnings Statement

Period Beginning:     11/16/2020
Period Ending:        11/30/2020
Pay Date:             11/30/2020

Taxable Marital Status:     Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| | Gross Pay | $ | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 414.38– | |
| | Social Security Tax | 199.56– | |
| | Medicare Tax | 46.67– | |
| | MD Withholding Tax | 232.34– | |
| | | | |
| | Other | | |
| | *Flex Parki | 115.00– | |
| | *401K | 200.00– | |
| | Net Pay | $ | 2,125.38 |
| | Checking 1 | 2,125.38– | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type:  Salaried

**Other Benefits and**

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number:        0000480246
Period Beginning:     11/16/2020
Period Ending:        11/30/2020
Pay Date:             11/30/2020
Employee ID:          209132

Pay to the
order of     **BRYCE O CARRASCO**

This Amount:  **NO AND 00/100 DOLLARS**                    | **$0.00** |

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

OPCO_0126

# Earnings Statement

Period Beginning: 12/01/2020
Period Ending: 12/15/2020
Pay Date: 12/15/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| Gross Pay | | $ | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 414.38– | |
| | Social Security Tax | 199.57– | |
| | Medicare Tax | 46.68– | |
| | MD Withholding Tax | 232.34– | |

| Other | | |
|-------|---|---|
| *Flex Parki | 115.00– | |
| *401K | 200.00– | |
| Net Pay | $ | 2,125.36 |
| Checking 1 | 2,125.36– | |
| Net Check | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000500245
Period Beginning: 12/01/2020
Period Ending: 12/15/2020
Pay Date: 12/15/2020
Employee ID: 209132

Pay to the
order of **BRYCE O CARRASCO**

This Amount: NO AND 00/100 DOLLARS | $0.00

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning: 12/16/2020
Period Ending: 12/31/2020
Pay Date: 12/31/2020

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| Gross Pay | | $ | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 414.38- | |
| | Social Security Tax | 199.57- | |
| | Medicare Tax | 46.67- | |
| | MD Withholding Tax | 232.34- | |

| | Other | | |
|--|-------|---|---|
| | *Flex Parki | 115.00- | |
| | *401K | 200.00- | |
| | Net Pay | $ | 2,125.37 |
| | Checking 1 | 2,125.37- | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

**Other Benefits and**

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000520247
Period Beginning: 12/16/2020
Period Ending: 12/31/2020
Pay Date: 12/31/2020
Employee ID: 209132

Pay to the order of **BRYCE O CARRASCO**

This Amount: **NO AND 00/100 DOLLARS** | **$0.00**

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning: 01/01/2021
Period Ending: 01/15/2021
Pay Date: 01/15/2021

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| Gross Pay | $ | | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Federal Withholding Tax | 384.42– | |
| | Social Security Tax | 192.01– | |
| | Medicare Tax | 44.91– | |
| | MD Withholding Tax | 222.64– | |
| | **Other** | | |
| | *Medical | 117.50– | |
| | *Flex Parki | 115.00– | |
| | *Dental | 4.50– | |
| | *401K | 200.00– | |
| | Net Pay | $ | 2,052.35 |
| | Checking 1 | 2,052.35– | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|--------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000020247
Period Beginning: 01/01/2021
Period Ending: 01/15/2021
Pay Date: 01/15/2021
Employee ID: 209132

Pay to the order of    **BRYCE O CARRASCO**

This Amount:    NO AND 00/100 DOLLARS                                    $0.00

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning: 01/16/2021
Period Ending: 01/31/2021
Pay Date: 01/29/2021

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| Gross Pay | | $ | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 384.42- | |
| | Social Security Tax | 192.01- | |
| | Medicare Tax | 44.90- | |
| | MD Withholding Tax | 222.64- | |
| | **Other** | | |
| | *Medical | 117.50- | |
| | *Flex Parki | 115.00- | |
| | *Dental | 4.50- | |
| | *401K | 200.00- | |
| | Net Pay | $ | 2,052.36 |
| | Checking 1 | 2,052.36- | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|--------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000040245
Period Beginning: 01/16/2021
Period Ending: 01/31/2021
Pay Date: 01/29/2021
Employee ID: 209132

Pay to the
order of    **BRYCE O CARRASCO**

This Amount:  **NO AND 00/100 DOLLARS**                                    **$0.00**

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

OPCO_0130

# Earnings Statement

Period Beginning: 02/01/2021
Period Ending: 02/15/2021
Pay Date: 02/12/2021

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| Gross Pay | | $ | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 384.42– | |
| | Social Security Tax | 192.01– | |
| | Medicare Tax | 44.91– | |
| | MD Withholding Tax | 222.64– | |
| | | | |
| | **Other** | | |
| | *Medical | 117.50– | |
| | *Flex Parki | 115.00– | |
| | *Dental | 4.50– | |
| | *401K | 200.00– | |
| | Net Pay | $ | 2,052.35 |
| | Checking 1 | 2,052.35– | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

Other Benefits and

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000060245
Period Beginning: 02/01/2021
Period Ending: 02/15/2021
Pay Date: 02/12/2021
Employee ID: 209132

Pay to the
order of **BRYCE O CARRASCO**

This Amount: **NO AND 00/100 DOLLARS** | **$0.00**

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning: 02/16/2021
Period Ending: 02/28/2021
Pay Date: 02/26/2021

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| Gross Pay | | $ | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 384.42– | |
| | Social Security Tax | 192.01– | |
| | Medicare Tax | 44.90– | |
| | MD Withholding Tax | 222.47– | |
| | | | |
| | Other | | |
| | *Medical | 117.50– | |
| | *Flex Parki | 115.00– | |
| | *Dental | 4.50– | |
| | *401K | 200.00– | |
| | Net Pay | $ | 2,052.53 |
| | Checking 1 | 2,052.53– | |
| | Net Check | $ | 0.00 |

**Important Notes**
Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000080244
Period Beginning: 02/16/2021
Period Ending: 02/28/2021
Pay Date: 02/26/2021
Employee ID: 209132

Pay to the
order of **BRYCE O CARRASCO**
This Amount: **NO AND 00/100 DOLLARS** | **$0.00**

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

| | |
|---|---|
| Period Beginning: | 03/01/2021 |
| Period Ending: | 03/15/2021 |
| Pay Date: | 03/15/2021 |

Taxable Marital Status:     Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| Gross Pay | | $ | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 384.42– | |
| | Social Security Tax | 192.01– | |
| | Medicare Tax | 44.91– | |
| | MD Withholding Tax | 222.47– | |
| | | | |
| | Other | | |
| | *Medical | 117.50– | |
| | *Flex Parki | 115.00– | |
| | *Dental | 4.50– | |
| | *401K | 200.00– | |
| | Net Pay | $ | 2,052.52 |
| | Checking 1 | 2,052.52– | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type:  Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

| | |
|---|---|
| Advice number: | 0000100248 |
| Period Beginning: | 03/01/2021 |
| Period Ending: | 03/15/2021 |
| Pay Date: | 03/15/2021 |
| Employee ID: | 209132 |

Pay to the
order of     **BRYCE O CARRASCO**

This Amount:   NO AND 00/100 DOLLARS                    $0.00

# NON-NEGOTIABLE
## (THIS IS NOT A CHECK)

# Earnings Statement

Period Beginning:        03/16/2021
Period Ending:           03/31/2021
Pay Date:                03/31/2021

Taxable Marital Status:        Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
| --- | --- | --- | --- | --- |
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| | Gross Pay | $ | 3,333.33 | |

| Deductions | Statutory | | |
| --- | --- | --- | --- |
| | Federal Withholding Tax | 384.42– | |
| | Social Security Tax | 192.01– | |
| | Medicare Tax | 44.90– | |
| | MD Withholding Tax | 222.47– | |
| | | | |
| | Other | | |
| | *Medical | 117.50– | |
| | *Flex Parki | 115.00– | |
| | *Dental | 4.50– | |
| | *401K | 200.00– | |
| | Net Pay | $ | 2,052.53 |
| | Checking 1 | 2,052.53– | |
| | Net Check | $ | 0.00 |

**Important Notes**
Rate Type:  Salaried

| Other Benefits and Information | this period | year to date |
| --- | --- | --- |

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number:          0000120246
Period Beginning:        03/16/2021
Period Ending:           03/31/2021
Pay Date:                03/31/2021
Employee ID:             209132

Pay to the order of        **BRYCE O CARRASCO**

This Amount:    **NO AND 00/100 DOLLARS**                    **$0.00**

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning: 04/01/2021
Period Ending: 04/15/2021
Pay Date: 04/15/2021

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| Gross Pay | | $ | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 384.42- | |
| | Social Security Tax | 192.06- | |
| | Medicare Tax | 44.92- | |
| | MD Withholding Tax | 222.47- | |
| | | | |
| | **Other** | | |
| | *Medical | 117.50- | |
| | *Flex Parki | 115.00- | |
| | *Dental | 4.50- | |
| | *401K | 200.00- | |
| | Net Pay | $ | 2,052.46 |
| | Checking 1 | 2,052.46- | |
| | Net Check | $ | 0.00 |

**Important Notes**
Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000150251
Period Beginning: 04/01/2021
Period Ending: 04/15/2021
Pay Date: 04/15/2021
Employee ID: 209132

Pay to the order of **BRYCE O CARRASCO**

This Amount: **NO AND 00/100 DOLLARS** | $0.00 |

# NON-NEGOTIABLE
## (THIS IS NOT A CHECK)

# Earnings Statement

Period Beginning: 04/16/2021
Period Ending: 04/30/2021
Pay Date: 04/30/2021

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD 21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| | **Gross Pay** | | **$ 3,333.33** | |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Federal Withholding Tax | 384.42– | |
| | Social Security Tax | 192.07– | |
| | Medicare Tax | 44.92– | |
| | MD Withholding Tax | 222.47– | |
| | **Other** | | |
| | *Medical | 117.50– | |
| | *Flex Parki | 115.00– | |
| | *Dental | 4.50– | |
| | *401K | 200.00– | |
| | **Net Pay** | **$ 2,052.45** | |
| | Checking 1 | 2,052.45– | |
| | **Net Check** | **$ 0.00** | |

**Important Notes**
Rate Type: Salaried

| Other Benefits and Information | this period | year to date |
|--------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000170245
Period Beginning: 04/16/2021
Period Ending: 04/30/2021
Pay Date: 04/30/2021
Employee ID: 209132

Pay to the order of **BRYCE O CARRASCO**

This Amount: **NO AND 00/100 DOLLARS** | **$0.00**

# NON-NEGOTIABLE
(THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning: 05/01/2021
Period Ending: 05/15/2021
Pay Date: 05/14/2021

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| | Gross Pay | $ | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|--|--|
| | Federal Withholding Tax | 384.42- | |
| | Social Security Tax | 192.06- | |
| | Medicare Tax | 44.92- | |
| | MD Withholding Tax | 222.47- | |
| | | | |
| | Other | | |
| | *Medical | 117.50- | |
| | *Flex Parki | 115.00- | |
| | *Dental | 4.50- | |
| | *401K | 200.00- | |
| | Net Pay | $ | 2,052.46- |
| | Checking 1 | 2,052.46- | |
| | Net Check | $ | 0.00 |

**Important Notes**

Rate Type: Salaried

**Other Benefits and**

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000190244
Period Beginning: 05/01/2021
Period Ending: 05/15/2021
Pay Date: 05/14/2021
Employee ID: 209132

Pay to the
order of    **BRYCE O CARRASCO**

This Amount:    NO AND 00/100 DOLLARS                    $0.00

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning: 05/16/2021
Period Ending: 05/31/2021
Pay Date: 05/28/2021

Taxable Marital Status: Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 3333.3300 | 86.67 | 3,333.33 | |
| Gross Pay | | $ | 3,333.33 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 384.42– | |
| | Social Security Tax | 192.07– | |
| | Medicare Tax | 44.92– | |
| | MD Withholding Tax | 222.47– | |
| | | | |
| | Other | | |
| | *Medical | 117.50– | |
| | *Flex Parki | 115.00– | |
| | *Dental | 4.50– | |
| | *401K | 200.00– | |
| | Net Pay | $ | 2,052.45 |
| | Checking 1 | 2,052.45– | |
| | Net Check | $ | 0.00 |

**Important Notes**
Rate Type:  Salaried

| Other Benefits and Information | this period | year to date |
|-------------------------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

Advice number: 0000210243
Period Beginning: 05/16/2021
Period Ending: 05/31/2021
Pay Date: 05/28/2021
Employee ID: 209132

Pay to the
order of      **BRYCE O CARRASCO**

This Amount:  **NO AND 00/100 DOLLARS**                    | **$0.00** |

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

# Earnings Statement

Period Beginning: 06/01/2021
Period Ending: 06/15/2021
Pay Date: 06/15/2021

Taxable Marital Status:     Single

**BRYCE O CARRASCO**
**100 EAST REDWOOD STREET**
**APT 2013**
**BALTIMORE, MD  21202**

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Straight O/t | | | 1,538.46 | |
| **Gross Pay** | | $ | 1,538.46 | |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Withholding Tax | 135.06– | |
| | Social Security Tax | 95.38– | |
| | Medicare Tax | 22.30– | |
| | MD Withholding Tax | 114.52– | |
| | **Other** | | |
| | **Net Pay** | $ | 1,171.20 |
| | **Net Check** | $ | 1,171.20 |

**Important Notes**

Rate Type:  Salaried

**Other Benefits and**

| Information | this period | year to date |
|-------------|-------------|--------------|

Note: This is only a record of a prior payment/adjustment. This is not an image of the actual statement. The actual statement may be found in iReports

| | |
|---|---|
| **Payroll check number:** | 0000463823 |
| Period Beginning: | 06/01/2021 |
| Period Ending: | 06/15/2021 |
| Pay Date: | 06/15/2021 |
| Employee ID: | 209132 |

Pay to the
order of     **BRYCE O CARRASCO**

This Amount:   ONE THOUSAND ONE HUNDRED SEVENTY-ONE AND 20/100 DOLLARS        | $1,171.20

# NON-NEGOTIABLE
### (THIS IS NOT A CHECK)

CONFIDENTIAL

| BANKERS | ANALYST YEAR | RANKING | OVERALL RATING AVERAGE | OVERALL RATING MEDIAN | OVERALL RATING LOW SCORE | OVERALL RATING HIGH SCORE | TRACK RATING AVERAGE | TRACK RATING MEDIAN | TRACK RATING LOW SCORE | TRACK RATING HIGH SCORE |
|---|---|---|---|---|---|---|---|---|---|---|
| BRYCE CARRASCO | 1st Year | 7 | 4.50 | 4.50 | 4.00 | 5.00 | 1.25 | 1.00 | 1.00 | 2.00 |

REDACTED



| BANKERS | ANALYST YEAR | RANKING | OVERALL RATING AVERAGE | OVERALL RATING MEDIAN | OVERALL RATING LOW SCORE | OVERALL RATING HIGH SCORE | TRACK RATING AVERAGE | TRACK RATING MEDIAN | TRACK RATING LOW SCORE | TRACK RATING HIGH SCORE |
|---|---|---|---|---|---|---|---|---|---|---|
| BRYCE CARRASCO | 2nd Year | 15 | 3.42 | 3.54 | 2.33 | 4.13 | 2.17 | 2.00 | 2.00 | 3.00 |

REDACTED

| BANKERS | ANALYST YEAR | OVERALL RATING AVERAGE | OVERALL RATING AVERAGE | OVERALL RATING MEDIAN | OVERALL RATING HIGH SCORE | OVERALL RATING LOW SCORE | TRACK RATING AVERAGE | TRACK RATING MEDIAN | TRACK RATING HIGH SCORE | TRACK RATING LOW SCORE |
|---|---|---|---|---|---|---|---|---|---|---|
| BRYCE CARRASCO | 1st Year | 16 | 3.55 | 3.44 | 4.83 | 3.00 | 2.31 | 2.25 | 3.00 | 1.00 |

REDACTED

## INVESTMENT BANKING YEAR-END REVIEWS 2019 – FEEDBACK TEARSHEET

| PERSON TO BE REVIEWED: | Bryce Carrasco |
|---|---|
| TITLE: | Analyst - 1st Yr |

**STRENGTHS SUMMARY**
Based on all available information, indicate and comment on this individual's top strengths.

**1. Team player and strong desire to learn**

*"Has all of the tools necessary to be an excellent analyst, and I am confident he will continue to hone his skills and develop an understanding of the dynamics, processes and procedures we have to complete the work."*

*"Bryce is a great asset to the Rental Services team and performs well above the level of a first year analyst today."*

*"Interacts well with the deal team and clients."*

*"Demonstrates an interest in learning and consistently goes above and beyond to meet expectations and client deliverables."*

*"He is always willing to put in many late nights and weekend hours to complete client projects."*

*"Bryce is a remarkably intelligent person with a real passion for finance."*

**2. Strong prioritization and communication skills**

*"In terms of written communication, Bryce demonstrated superior performance preparing the McGrath convert pitch, designing clear and well-thought out pages to explain a nuanced concept in a short time with very limited senior guidance."*

*"Bryce is proactive about setting priorities and constantly communicating with the deal team to ensure deliverables are completed on time."*

**AREAS FOR DEVELOPMENT SUMMARY**
Based on all available information, list and comment on development areas this individual needs to focus on in order to move to the next level. Each individual must have at least two areas of development.

**1. Focus on attention to detail as well as understanding the big picture**

*"Focus on catching errors/typos."*

*"After working on a CIM or pitch book, take the time to go through the finished product to ensure everything makes sense. If it doesn't, ask questions and discuss with others on the team."*

**2. Continue to work on technical knowledge and gain sector expertise**

*"Continue to develop modeling skills and build financial understanding."*

*"Continue to learn about Rental Services companies, sectors and processes as he advances to the next year."*

*"Attend pitches and listen in on client and buyer calls if possible."*

**OVERALL PERFORMANCE SUMMARY:**
Provide an overall performance summary based on all this individual's feedback and self-evaluation.

Bryce is a valued member of the Rental Services team, who consistently goes above and beyond to meet expectations and deliverables. Bryce prioritizes his work well and exhibits strong communication skills. Bryce should focus on his attention to detail as well as continue to build financial and industry knowledge. Continue to seek out opportunities to become more familiar with our processes (i.e. drafting marketing materials and deal documents). Overall, Bryce is a great addition to the team.

**2019 YEAR-END PERFORMANCE RATING**

| **FINAL OVERALL YEAR-END RATING:** | **Ahead-of-Track** - Greatly Exceeds Expectations<br> - Consistently strong across all categories<br> - Performs above title-level in all regards |
|---|---|

| PERSON TO BE REVIEWED: | Bryce Carrasco |
|---|---|
| TITLE: | Analyst - 1st Yr |

## STRENGTHS SUMMARY

**1. Strong intellectual curiosity**

*"Bryce is eager to learn and has come quickly up the learning curve on the importance of providing high quality work product and providing qualitative and quantitative analysis."*

*"Intellectually curious, solid problem solving skills, motivated to keep learning and continue improving, unafraid to speak up."*

*"Bryce is a remarkably intelligent person with a real passion for finance."*

**2. Good understanding of the industry**

*"Bryce has all the building blocks necessary to succeed as an analyst at Oppenheimer; he is thoughtful regarding companies in the Rental Services industry and broader industrial equipment section as well as a sufficient understanding of technicals. Additionally, Bryce has shown a firm grasp of industry-specific metrics and KPIs."*

*"He has a good grasp on the rental services industry and its nuance."*

**3. Shows initiative when focused**

*"He has shown initiative to create improved, informative equity and debt comp materials for our team's regular review during the Corona quarantine and has regularly kept us apprised of relevant news and updates."*

*"When Bryce is focused and attentive, he is a strong analyst. He takes good initiative in solving certain problems."*

## AREAS FOR DEVELOPMENT SUMMARY

**1. Improve communication, responsiveness and availability**

*"There have been numerous occasions where Bryce has been unreachable and work streams he has been tasked with had to be completed by other team members when we cannot reach him."*

*"Bryce has performed well… he has had worked hard and effectively but there have been hiccups of unexplained absence at key times. I hope that he has learned the importance of always being reachable or communicating in advance of necessary absence."*

*"He is a hard worker but sometimes we find that he is unavailable or unresponsive to emails for blocks of time."*

*"I would like Bryce to focus on his overall availability and responsiveness as there were numerous instances where he was unreachable via email or phone. The lack of communication puts unnecessary stress on team cohesiveness and workflow."*

*"Improve communication skills - ask questions, provide timing updates, convey workload on other parallel projects."*

*"Work on improving responsiveness, understanding of expectations and attitude toward work product."*

*"Bryce has all of the tools necessary to be an excellent analyst and really just needs to apply himself, make himself available / be more responsive, learn that the analyst role isn't always glamorous."*

**2. Be more consistent; check work thoroughly**

*"Bryce's work product varies in quality depending on his level of interest; will rush certain items but go above and beyond on others."*

*"Bryce should strive to check work product for "nit" items such as syncing formations between pages, word-flow and grammar. He should takes pride in tasks and assignments that can be tedious in order to greatly improve the overall quality of his work product."*

*"Inconsistency in his work product casts doubt on his reliability resulting in multiple people processing the same work streams at the same time and longer times between request and work product completion."*

*"Check work carefully. If he has questions, keep a running list and get on a call to discuss them one by one."*

*"Demonstrate ability to show more initiative in the little things; "whatever the team needs" kind of attitude."*

**3. Follow directions and take ownership on all assignments**

*"Bryce needs to work on following instructions. He often deviates from the work plan which creates inefficiencies and delays."*

*"Respect others' time and do all work given to you to a high level of quality."*

*"Be more open to taking instruction from other analysts (and not just EDs and MDs)."*

**4. Be a team player**

*"Demonstrate ability to be more of a team player and have a better attitude and be more respectful towards other team members."*

*"Needs to be more of a team player, communicate with others in a less combative and challenging manner, be more proactive and show more initiative in doing the little things that normally fall on junior analysts."*

*"Work on his personal skills working with teammates within the group and in other groups."*

## OVERALL PERFORMANCE SUMMARY:

Bryce remains a valued member of the Rental Services team and over the past 12 months he has demonstrated his strong understanding of the rental services industry. He is intelligent, curious, and passionate about finance. Going forward, Bryce should continue to be a team player and make sure he is communicative and available. He is also encouraged to check his work thoroughly and follow directions in order to deliver consistent work across various projects. The team is confident that Bryce will succeed as an analyst at Oppenheimer if he focuses and commits to improving the above areas of development.

## 2020 YEAR-END PERFORMANCE RATING

| | **On-Track** |
|---|---|
| **FINAL OVERALL YEAR-END RATING:** | - Good Overall Performance/Meets Expectations |
| CONFIDENTIAL | - Exceeds expectations in some categories |
| | - Needs improvement in select categories |

OPCO_0144

## INVESTMENT BANKING YEAR-END REVIEWS 2020 – FEEDBACK TEARSHEET

| PERSON TO BE REVIEWED: | Bryce Carrasco |
|---|---|
| TITLE: | Analyst - 2nd Yr |

### STRENGTHS SUMMARY

**1. Strong passion for finance**

*"Bryce is a remarkably intelligent person with a real passion for finance. He has all of the tools necessary to be an excellent analyst and really just needs to continue to push himself, make himself available / be more responsive, learn that the analyst role isn't always glamorous and work on his personal skills working with teammates within the group and in other groups."*

**2. Shows initiative when focused**

*"Demonstrated superior performance preparing sections of the initial drafts of the Ram marketing materials, designing clear and well-thought out pages with very limited senior guidance."*

*"Proactive about working on aspects of assignments he is passionate about and views as additive."*

*"When Bryce takes an interest in something, he demonstrates a high level of commitment and produces a quality work product."*

### AREAS FOR DEVELOPMENT SUMMARY

**1. Improve communication, responsiveness and availability**

*"I have had numerous occasions where he is unreachable or not in contact where work streams he has been tasked with have to be completed by other team members when we cannot reach him. He remains inconsistent, which casts doubt on his reliability resulting in multiple people processing the same work streams at the same time and longer times between request and work product completion."*

*"He has taken a step backward setting priorities and communicating with the deal team to ensure deliverables are completed on time and I often find myself waiting on materials and wondering if he is choosing to complete assigned work or not. In many cases, I wind up pulling in more senior members of the team or completing the work myself to ensure the standard of quality and timeliness is met."*

*"Continue to develop a sense of management and keeping team members in the loop."*

*"Improve responsiveness and availability."*

**2. Focus on consistency**

*"Bryce's 2020 performance has been mixed, punctuated by the emergence of some important shortcomings."*

*"Issues with Bryce more ebb and flow instead of being a consistent problem."*

**3. Take ownership on assignments / entire processes**

*"Turns in subpar performance on tasks he feels are not as value add."*

*"It can sometimes be tough to get him to show level of commitment for tasks that do not interest him."*

*"Continue to seek opportunities to draft client marketing materials and deal documents (CIM, MP)."*

*"Continue to develop a sense of initiative."*

**4. Be a team player and work collaboratively**

*"Work on improving internal relationships across Oppenheimer's groups."*

*"He interacts poorly with many deal team members and I need to spend significantly more time on deal team interpersonal relationships."*

*"Work constructively with Directors and Executive Directors on a pitch."*

### OVERALL PERFORMANCE SUMMARY:

Bryce is smart and has the tools necessary to be a good analyst. He performs well if he is interested in a particular project, but struggles to show the same level of commitment and initiative on more mundane tasks. Going forward, Bryce should continue to focus on key areas for development including improving communication with deal teams on timing of deliverables, taking full ownership of assignments from beginning to end with the same level of work quality and enthusiasm, and improving working relationship with team members. If Bryce would like to continue on the investment banking career path, these are all skills which he will need to significantly and consistently improve upon.



| | | | Jewelry Store | | | | Ratios | EPS | | | Cost/Equity | | | Equity/Cons | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 78 | 5 | 5 | 5 | 123 | 3 | 5 | 8 | 10 | 6 | 7 | 4 | 4 | 263 | | |
| First Name | Last Name | Grader | # | IS | BS | CF | # | 3.1 | 3.2 | 3.3 | 4.1 | 4.2 | 4.3 | 4.4 | 4.5 | Grade | % | Rank |
| Bryce | Carrasco | Diana | 4 | 5 | 5 | 5 | 115 | 0 | 0 | 5 | 0 | 3 | 0 | 4 | 2 | 115 | 43.7% | 16 |

Average 202 76.9%    St Dev 36 | 166 − 202 |

| | | |
|---|---|---|
| jewelry store | 93.0 | 35.4% |
| ratios | 123.0 | 46.8% |
| eps | 16.0 | 6.1% |
| cost/equity | 23.0 | 8.7% |
| equity/cons | 8.0 | 3.0% |
| | 263.0 | 100.0% |



## Financial Modeling & Valuation

| Name | Bal? | Circs? | Format? | Close? | BP | IS | BS | CF | Debt | Trading | DCF | Comps | Ref Rng* | Subtotal | % Subtotal |
|------|------|--------|---------|--------|----|----|----|----|----|---------|-----|-------|----------|----------|------------|
| | | | | | | | | | | | | | | 42 | |
| Bryce Carrasco | 2 | 2 | 1 | 2 | 1 | 3.75 | 3.5 | 3.5 | 2 | 4 | 3 | 3.5 | 1 | 32.25 | 76.8% |

| | | **Basic Merger Model** | 12 | | | | 54 | |
|------|------|-------|----------|------------|-------|---------|------|
| Name | AccDi | ISx2 | Merger | Subtotal | % Subtotal | Total | % Total | Rank |
| Bryce Carrasco | 2 | 2.5 | 2 | 6.5 | 54.2% | 38.8 | 71.8% | 13 |

**Legend**

| | |
|------|------|
| Bal? | Model Balance (0 or 2) |
| Circs? | Circs other than interest (0 or 2) |
| Format? | Formatting ok? (0-3) |
| Close? | Closeness of final answer (0-3) |
| BP | Best Practices (0-3) |

0 = flat out incorrect
1 = not really correct
2 = partly correct
3 = mostly correct
4 = all formulas correct
BONUS: 5 = all correct

* 0 = no credit, 1 = credit

**SUMMARY**

| Rank | Name | FMV | FMV% | M&A | M&A % | Total | % Total |
|------|------|-----|------|-----|-------|-------|---------|
| 13 | Bryce Carrasco | 32.25 | 76.8% | 6.5 | 54.2% | 38.8 | 71.8% |

# OpCo 2019 Financial Modeling Exam Grades 

| | 12 | 4 | 13 | 15 |
|---|---|---|---|---|
| **Rank** | | | **13** | **15** |
| | | | Bryce Carrasco | |
| Did model balance | | | Yes | |
| Circs other than interest? | | | No | |
| Formatting mistakes? | | | Tremendous | |
| **2011 Total Assets: $38,184** | | | 40,522 | |
| **2011 EPS: $4.97** | | | 4.88 | |
| Best Practices | | | Named ranges | |
| | | | SUM formulas | |
| | | | Non-WST practices (IF=0, etc.) | |
| IS | | | Amort input should be in support | |
| | | | Historical S/Out (2006) wrong | |
| | | | *"circ breaker" totally unnecessary* | |
| BS | | | Proj. APIC lacks Stock Issued | |
| | | | Est. (2007) numbers rounded | |
| | | | Ratios not dynamic | |
| CF | | | Wrong share repurchase input | |
| | | | Hardcoded capex not truly | |
| | | | constant | |
| Debt | | | Wrong mandatory debt pmts | |
| | | | Hardcoded tranche 2 | |
| | | | MDR total only includes Tranche 1 | |
| | | | Missing Current Portion | |
| Steps to Balance or | | | Fix above | |
| Steps to Remove Circ or | | | | |
| Steps to Match Master | | | | |
| TradingStats | | | OK | |
| DCF | | | NPV formula incorrect | |
| | | | Use of discount factor | |
| BeverageComps | | | Incorrect input (1) | |
| | | | Extra cells (sloppy CTRL+R/D) | |
| Ref Range | | | OK | |
| **2010 PEP EPS: $4.18** | | | 4.19 | |
| **2010 TAP EPS: $6.67** | | | 6.70 | |
| **2010 Merger EPS: $4.84** | | | 5.03 | |
| **2010 Merger Acc/Dil %: 15.9%** | | | 15.8% | |
| AccDil (correct answers?) | | | BE and Acc Dil answers wrong | |
| | | | Where is Stock and Cash BE? | |
| | | | GW / IAD and tax credit wrong | |
| | | | Incorrect TAP options inputs | |
| PEP, TAP | | | PEP: Some formulas hardcoded | |
| | | | PEP: Missing some multiples | |
| | | | PEP: Some incorrect inputs | |
| | | | TAP: Many formulas hardcoded | |
| | | | TAP: EBITDA Margin denominator | |
| Merger | | | PF debt missing Deal Fees | |
| | | | Deal Fees negative | |
| | | | SG&A formula lacks Amort. | |
| | | | 2006 Interest should follow proj. | |
| **Pass/Fail** | | | **Pass** | |
| | | | y correct, 4 = all formulas correct B | |
| **Financial Modeling & Valuation** | | | | |
| Model Balance (0 or 2) | | | 2 | |
| Circs other than interest (0 or 2) | | | 2 | |
| Formatting ok? (0-3) | | | 1 | |
| Closeness of final answer (0-3) | | | 2 | |
| Best Practices (0-3) | | | 1 | |
| IS | | | 3.75 | |
| BS | | | 3.5 | |
| CF | | | 3.5 | |
| Debt | | | 2 | |
| TradingStats | | | 4 | |
| DCF | | | 3 | |
| BeverageComps | | | 3.5 | |
| Ref Range * | | | 1 | |
| **Subtotal (Full Score: 42)** | | | **32.25** | |
| **% of Subtotal** | | | **76.8%** | |
| **Basic Merger Model** | | | | |
| AccDil | | | 2 | |
| PEP & TAP IS | | | 2.5 | |
| Merger | | | 2 | |
| **Subtotal (Full Score: 12)** | | | **6.5** | |
| **% of Subtotal** | | | **54.2%** | |
| **Total (Full Score: 54)** | | | **38.75** | |
| **% of Total** | | | **71.8%** | |

CONFIDENTIAL

**OpCo 2019 Financial Modeling Exam Grades** REDACTED

| Rank | 4 | 7 | 14 | 8 |
|---|---|---|---|---|
| Did model balance | | | | |
| Circs other than interest? | | | | |
| Formatting mistakes? | | | | |
| **2011 Total Assets: $38,184** | | | | |
| **2011 EPS: $4.97** | | | | |
| Best Practices | | | | |
| IS | | | | |
| BS | | | | |
| CF | | | | |
| Debt | | | | |
| Steps to Balance or Steps to Remove Circ or Steps to Match Master | | | | |
| TradingStats | | | | |
| DCF | | | | |
| BeverageComps | | | | |
| Ref Range | | | | |
| **2010 PEP EPS: $4.18** | | | | |
| **2010 TAP EPS: $6.67** | | | | |
| **2010 Merger EPS: $4.84** | | | | |
| **2010 Merger Acc/Dil %: 15.9%** | | | | |
| AccDil (correct answers?) | | | | |
| PEP, TAP | | | | |
| Merger | | | | |
| **Pass/Fail** | | | | |

**Financial Modeling & Valuation**
Model Balance (0 or 2)
Circs other than interest (0 or 2)
Formatting ok? (0-3)
Closeness of final answer (0-3)
Best Practices (0-3)
IS
BS
CF
Debt
TradingStats
DCF
BeverageComps
Ref Range *
**Subtotal (Full Score: 42)**
**% of Subtotal**

**Basic Merger Model**
AccDil
PEP & TAP IS
Merger
**Subtotal (Full Score: 12)**
**% of Subtotal**

**Total (Full Score: 54)**
**% of** CONFIDENTIAL

REDACTED

| Rank | 11 | 10 | 16 | 6 |
|---|---|---|---|---|
| Did model balance | | | | |
| Circs other than interest? | | | | |
| Formatting mistakes? | | | | |
| **2011 Total Assets: $38,184** | | | | |
| **2011 EPS: $4.97** | | | | |
| Best Practices | | | | |
| IS | | | | |
| BS | | | | |
| CF | | | | |
| Debt | | | | |
| Steps to Balance or Steps to Remove Circ or Steps to Match Master | | | | |
| TradingStats | | | | |
| DCF | | | | |
| BeverageComps | | | | |
| Ref Range | | | | |
| **2010 PEP EPS: $4.18** | | | | |
| **2010 TAP EPS: $6.67** | | | | |
| **2010 Merger EPS: $4.84** | | | | |
| **2010 Merger Acc/Dil %: 15.9%** | | | | |
| AccDil (correct answers?) | | | | |
| PEP, TAP | | | | |
| Merger | | | | |
| **Pass/Fail** | | | | |

**Financial Modeling & Valuation**

| | | | | |
|---|---|---|---|---|
| Model Balance (0 or 2) | | | | |
| Circs other than interest (0 or 2) | | | | |
| Formatting ok? (0-3) | | | | |
| Closeness of final answer (0-3) | | | | |
| Best Practices (0-3) | | | | |
| IS | | | | |
| BS | | | | |
| CF | | | | |
| Debt | | | | |
| TradingStats | | | | |
| DCF | | | | |
| BeverageComps | | | | |
| Ref Range * | | | | |
| **Subtotal (Full Score: 42)** | | | | |
| **% of Subtotal** | | | | |

**Basic Merger Model**

| | | | | |
|---|---|---|---|---|
| AccDil | | | | |
| PEP & TAP IS | | | | |
| Merger | | | | |
| **Subtotal (Full Score: 12)** | | | | |
| **% of Subtotal** | | | | |

| | | | | |
|---|---|---|---|---|
| **Total (Full Score: 54)** | | | | |
| % of | | | | |

| Rank | 2 | | 3 | 8 | 1 |
|---|---|---|---|---|---|
| Did model balance | | | | | |
| Circs other than interest? | | | | | |
| Formatting mistakes? | | | | | |
| **2011 Total Assets: $38,184** | | | | | |
| **2011 EPS: $4.97** | | | | | |
| Best Practices | | | | | |
| IS | | | | | |
| BS | | | | | |
| CF | | | | | |
| Debt | | | | | |
| Steps to Balance or | | | | | |
| Steps to Remove Circ or | | | | | |
| Steps to Match Master | | | | | |
| TradingStats | | | | | |
| DCF | | | | | |
| BeverageComps | | | | | |
| Ref Range | | | | | |
| **2010 PEP EPS: $4.18** | | | | | |
| **2010 TAP EPS: $6.67** | | | | | |
| **2010 Merger EPS: $4.84** | | | | | |
| **2010 Merger Acc/Dil %: 15.9%** | | | | | |
| AccDil (correct answers?) | | | | | |
| PEP, TAP | | | | | |
| Merger | | | | | |
| **Pass/Fail** | | | | | |

| Financial Modeling & Valuation | |
|---|---|
| Model Balance (0 or 2) | |
| Circs other than interest (0 or 2) | |
| Formatting ok? (0-3) | |
| Closeness of final answer (0-3) | |
| Best Practices (0-3) | |
| IS | |
| BS | |
| CF | |
| Debt | |
| TradingStats | |
| DCF | |
| BeverageComps | |
| Ref Range * | |
| **Subtotal (Full Score: 42)** | |
| **% of Subtotal** | |

| Basic Merger Model | |
|---|---|
| AccDil | |
| PEP & TAP IS | |
| Merger | |
| **Subtotal (Full Score: 12)** | |
| **% of Subtotal** | |

| | |
|---|---|
| **Total (Full Score: 54)** | |
| **% of Total** | |



| First Name | Last Name | Date of Submission | Company Overview | | Basic FM | | Advanced FM | | | | Complex Comps | | | Deal Comps | | Quick Dirty Comps | Relative Valuation | Total Marks | Pass/ Fail |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Fin Sum | Trading | IS | DCF | IS | BS | CF | DS | Inp | Mult | WACC | Inp | Mult | Comps | Valuation | Marks | Fail |
| Bryce | Carrasco | | | | | | | | | | | | | | | | | | |

| | |
|---|---|
| **From:** | Kingsley, Beth |
| **Sent:** | Wednesday, May 26, 2021 3:34 PM |
| **To:** | Bridges, Jaime; Decker, Kristen; Lezotte, Debbie; Ali, Bebe |
| **Cc:** | Chan, Jenny; Locke, Patrick; Cheung, Alina; Cevallos, Carissa |
| **Subject:** | RE: Bryce Carrasco |
| **Attachments:** | Carrasco, Bryce - PCN - 5.3.2021.pdf |

All,

Just reminder Bryce Carrasco's last day on payroll is May 31st.

Thanks,
Beth

**From:** Kingsley, Beth
**Sent:** Monday, May 3, 2021 2:18 PM
**To:** Bridges, Jaime ; Decker, Kristen ; Lezotte, Debbie ; Ali, Bebe
**Cc:** Chan, Jenny ; Locke, Patrick ; Cheung, Alina ; Cevallos, Carissa
**Subject:** RE: Bryce Carrasco

Attached is the PCN. Bryce's last day for access is close of business today and will remain on payroll until May 31st. Legal has prepared a separation agreement which will be forwarded when executed.

Thanks,
Beth

**From:** Cheung, Alina <Alina.Cheung@opco.com>
**Sent:** Friday, April 30, 2021 12:58 PM
**To:** Bridges, Jaime <Jaime.Bridges@opco.com>; Chan, Jenny <Jenny.Chan@opco.com>; Decker, Kristen <Kristen.Decker@opco.com>
**Cc:** Kingsley, Beth <Beth.Kingsley@opco.com>; Locke, Patrick <Patrick.Locke@opco.com>
**Subject:** RE: Bryce Carrasco

Jaime and Jenny,

I wanted to provide an update here.

We have communicated to Bryce Carrasco (2nd year analyst in Baltimore) regarding his termination. His last day of access to our systems will be this coming Monday, May 3rd. That said, we are keeping him on payroll until May 31, and will offer a total severance payment of $10,000 (all approved by Rob and the group head). Legal has been in the loop and will send him the severance agreement closer to May 31st.

Beth will be following up with the PCN. Let us know if you have any questions or need anything else from our end.

Thank you,
Alina

CONFIDENTIAL

**From:** Bridges, Jaime <Jaime.Bridges@opco.com>
**Sent:** Tuesday, April 13, 2021 1:00 PM
**To:** Cheung, Alina <Alina.Cheung@opco.com>; Decker, Kristen <Kristen.Decker@opco.com>
**Cc:** Kingsley, Beth <Beth.Kingsley@opco.com>
**Subject:** RE: personnel questions

Yes $6500 is correct

*Jaime Bridges*
*Managing Director*
*Human Resources and Benefits*
*248-637-8338*

**From:** Cheung, Alina <Alina.Cheung@opco.com>
**Sent:** Tuesday, April 13, 2021 12:59 PM
**To:** Bridges, Jaime <Jaime.Bridges@opco.com>; Decker, Kristen <Kristen.Decker@opco.com>
**Cc:** Kingsley, Beth <Beth.Kingsley@opco.com>
**Subject:** RE: personnel questions

Hi Jaime –

We're going to move forward with exiting Bryce Carrasco (2nd year analyst in Baltimore) at the end of May. Can you please confirm the $6,500 amount is still accurate?

Thank you,
Alina

**From:** Bridges, Jaime <Jaime.Bridges@opco.com>
**Sent:** Monday, February 8, 2021 12:33 PM
**To:** Cheung, Alina <Alina.Cheung@opco.com>; Decker, Kristen <Kristen.Decker@opco.com>
**Subject:** RE: personnel questions

See below for amounts

CA we would have to have a check in their hand for their final paycheck (not severance) so we will need a couple days' notice.

*Jaime Bridges*
*Managing Director*
*Human Resources and Benefits*
*248-637-8338*

**From:** Cheung, Alina <Alina.Cheung@opco.com>
**Sent:** Monday, February 8, 2021 11:46 AM
**To:** Bridges, Jaime <Jaime.Bridges@opco.com>; Decker, Kristen <Kristen.Decker@opco.com>
**Subject:** personnel questions

Hi Jaime / Kristen –

Could you please let me know what the severance would be for the below two analyst, and if there is anything we need to take into consideration given their locations?

CONFIDENTIAL

Bryce Carrasco (Baltimore) $6500



Thank you,
Alina

CONFIDENTIAL

# OPPENHEIMER

## PERSONNEL CHANGE NOTICE (PCN)

| NAME CARRASCO BRYCE | | JOB TITLE ANALYST | BUSINESS TITLE | EMPLOYEE ADP # |
|---|---|---|---|---|
| (LAST) (FIRST) (MIDDLE INITIAL) | | | | |

| DATE OF BIRTH | SEX | EEO | ☒ Non-Nominal Employee (Refer to the Compliance Manual for clarification) | IMMEDIATE SUPERVISOR MATT HUDSON |
|---|---|---|---|---|

| STREET ADDRESS | CITY, STATE, ZIP | APT. # |
|---|---|---|

| HOME TELEPHONE (INCLUDE AREA CODE) ( ) | DEPT./CODE IB-RSG-DEPT BC | BRANCH OFFICE BALTIMORE | CRD # | FA/FC # |
|---|---|---|---|---|

---

**HIRE**

- [ ] NEW EMPLOYEE
  - ORIGINAL EMPLOYMENT DATE
- [ ] REHIRE
- [ ] LEAVE OF ABSENCE
- [ ] RETURN FROM LEAVE OF ABSENCE
- [ ] ADDITION [ ] REPLACEMENT
  - NAME OF EMPLOYEE REPLACED:
  - _____
- [ ] MARITAL STATUS: [ ] SINGLE [ ] MARRIED [ ] DIVORCED
- [☒] Exempt [ ] Non Exempt

**TERMINATION**

- [ ] RESIGNED
  - [ ] VOLUNTARY [ ] INVOLUNTARY*
- [☒] DISCHARGED* (detail below or attach explanation)
- [ ] SUSPENDED*

\* COPY MUST BE SENT TO REGISTRATION IMMEDIATELY @DL-REGISTRATIONDEPT@OPCO.COM

- [ ] LAID OFF
- [ ] AUTHORIZED LEAVE WITHOUT PAY
- [ ] DECEASED
- [ ] OTHER_____
  - PAY_____DAYS VACATION

**SALARY**

STARTING AT: $_____PER YEAR

**SALARY CHANGE (STATE REASON BELOW)**

FROM $_____PER YEAR

TO $_____PER YEAR

**TRANSFER \***

FROM _____

TO _____

\* Manager must e-mail support@opco.com if employees email review group is changing

**TERMS**

**STATUS**

- [ ] FINANCIAL ADVISOR/FINANCIAL CONSULTANT
- [ ] STAFF
  - [☒] REGISTERED_____
  - [ ] NON-REGISTERED_____

**NOTES & EXPLANATIONS**

WILL STAY ON PAYROLL UNTIL 5/31/2021.

---

| EFFECTIVE DATE OF ABOVE ACTIONS 5/3/2021 + 5/31/2021 | FINAL APPROVAL: _____ |
|---|---|

| 5/3/2021 | Beth Kingsley | |
|---|---|---|
| DATE | DEPARTMENT OR BRANCH MANAGER | HUMAN RESOURCES |

ABOVE EMPLOYEE HAS CHANGED: [ ] NAME [ ] ADDRESS [ ] PHONE [ ] MARITAL STATUS

**RETURN COMPLETED FORM TO:** DL-HumanResources@opco.com or Fax: 248-637-8390

| | |
|---|---|
| **From:** | Cheung, Alina |
| **Sent:** | Tuesday, June 1, 2021 4:13 PM |
| **To:** | 'bocarrasco47@outlook.com' |
| **Cc:** | Hudson, Matt; Kingsley, Beth; Locke, Patrick |
| **Subject:** | RE: Follow-up to your conversation |
| **Attachments:** | Separation Agreement and Release - Bryce Carrasco.pdf |

Bryce,

Attached please find your Separation and Release Agreement. Once you have had a chance to review, please return a signed and notarize copy.

Thank you,
Alina

---

**From:** Carrasco, Bryce <Bryce.Carrasco@opco.com>
**Sent:** Thursday, April 22, 2021 11:03 AM
**To:** Cheung, Alina <Alina.Cheung@opco.com>
**Cc:** Hudson, Matt <Matt.Hudson@opco.com>
**Subject:** RE: Follow-up to your conversation

Understood. This all reads fine to me.

Thank you,


**Bryce Carrasco**
Oppenheimer & Co. | Investment Banking
100 International Drive | Baltimore, MD 21202
Mobile: +1 410-858-7432 | Work: +1 410-223-1931
Email: bryce.carrasco@opco.com

---

**From:** Cheung, Alina <Alina.Cheung@opco.com>
**Sent:** April 2021 8:54 PM
**To:** Carrasco, Bryce <Bryce.Carrasco@opco.com>
**Cc:** Hudson, Matt <Matt.Hudson@opco.com>
**Subject:** Follow-up to your conversation

Bryce,

Further to your conversation with Matt yesterday, please see the below from HR/Legal:

To confirm, your final day of employment at Oppenheimer will be May 31, 2021. Until then, Oppenheimer will continue to pay you your normal salary and provide medical insurance coverage (and any other benefits) in normal due course. From today through May 3, 2021, you will be required to conduct yourself in the normal course of business. From May 4, 2021 through May 31, 2021, you will be required to remain away from Oppenheimer's premises and will not be permitted to perform any duties on behalf of Oppenheimer or contact any entities that were clients of Oppenheimer during your employment at Oppenheimer or with which Oppenheimer sought to do business while you

CONFIDENTIAL

were employed at Oppenheimer.  Furthermore, until your employment terminates on May 31, 2021, you will continue to be subject to Oppenheimer's policies and procedures applicable to Analysts in the Investment Banking Department.  These policies include, but are not limited to, those addressing the pre-clearance of trades, the requirement to disclose all outside activities and business, the maintenance of your Form U-4 and a prohibition on communications with the media without prior approval.

In the event that you abide by the foregoing (or act as otherwise directed by me), and do not make any remarks, comments, or statements, written or oral, in any medium (including without limitation on Facebook, Twitter, or any blog or electronic bulletin board) or to any person or entity (including, without limitation, the press or the media), that defame, disparage, criticize, or otherwise reflect adversely on Oppenheimer, we expect to offer you a $10,000 severance payment, subject to the terms of a Separation and Release Agreement and your execution thereof.  A copy of the Separation and Release Agreement will be provided to you under separate cover closer to your final day of employment.

Please contact me with any questions.

Thanks,
Alina

**Alina Cheung**
Investment Banking | Business Strategy & Development
Oppenheimer & Co. Inc.
85 Broad Street | New York, NY 10004
Office: 212-667-7310 | Email: alina.cheung@opco.com

CONFIDENTIAL

# SEPARATION AGREEMENT AND RELEASE

This Separation Agreement and Release ("Agreement") is being entered into between **Bryce Carrasco** (hereinafter referred to as "**Mr. Carrasco**") and **Oppenheimer & Co. Inc**. (hereinafter referred to as "**Oppenheimer**").

Whereas, Mr. Carrasco's employment with Oppenheimer ended on May 31, 2021 (hereinafter known as the "Separation Date"); and

Whereas, the parties to this Agreement wish to resolve any and all potential claims that Mr. Carrasco may have or does have.

NOW THEREFORE, in return for the consideration set forth below, for other good and valuable consideration, the sufficiency of which is hereby acknowledged, and the representations contained hereinafter, the parties agree as follows:

1. <u>Separation Payment/Benefits/Consideration</u>.

(a)     Oppenheimer will provide Mr. Carrasco with a gross payment of **TEN THOUSAND DOLLARS** ($**10,000.00**), less applicable payroll deductions. This payment will not include any wages or salary owed to the employee, which will be payable separately pursuant to Oppenheimer's normal and customary procedures. This payment shall be mailed to Mr. Carrasco, at the address contained in Oppenheimer's personnel files, on the next available payroll date following Oppenheimer's receipt of an executed original of this Agreement, subject to any applicable review/revocation period as described in Paragraph 3 hereinbelow.

(b)     Mr. Carrasco understands and agrees that the foregoing consideration provided to him under the terms of this Agreement is in addition to anything of value to which Mr. Carrasco is otherwise entitled. Mr. Carrasco represents, warrants and acknowledges that Oppenheimer owes him no salary, wages, incentive compensation, bonuses, sick or other medical or disability-related pay, personal or other leave-of-absence pay, severance pay, notice pay, vacation pay, or other compensation or payments or form of remuneration of any kind or nature, other than that specifically provided for in this Agreement.

(c)     Mr. Carrasco represents that prior to the Separation Date, Mr. Carrasco submitted all outstanding business expense requests, for reimbursement, to Oppenheimer, along with supporting documentation, and has paid all outstanding personal expenses that Mr. Carrasco may owe to Oppenheimer.

(d)     Mr. Carrasco will be contacted by Oppenheimer's Benefits Administrator regarding the option of receiving medical coverage pursuant to COBRA. If Mr. Carrasco chooses to receive health care coverage pursuant to COBRA, payments shall be the responsibility of Mr. Carrasco and shall be made by check payable to: "BRI COBRA, LLC", P.O. Box 3850, Omaha, NE 68103-3850. Oppenheimer reserves the right to alter, modify or change its group medical plan, including but not limited to its medical coverage. If such group medical plan or medical coverage does change, then the coverage provided pursuant to this Agreement, to the extent Mr. Carrasco has elected to receive the same, will change consistent with the coverage or benefits

CONFIDENTIAL                                                                                                                    OPCO_0159

available to other Oppenheimer employees.

(e)     Mr. Carrasco's contributions to and participation in Oppenheimer's 401K will cease as of the Separation Date.  Mr. Carrasco should contact Oppenheimer's 401K Plan External Administrator:

John Hancock Retirement Plan Services
690 Canton Street
Westwood, Massachusetts  02090
Telephone Number:  1 (800) 294-3575
mylife.jhrps.com

regarding any distribution options available to Mr. Carrasco with respect to Mr. Carrasco's 401K account. Any amounts payable to Mr. Carrasco will be distributed in accordance with the terms of Oppenheimer's 401K Plan.

2.  <u>Release</u>.

(a)     In return for the above-described severance payment being made by Oppenheimer, which Mr. Carrasco acknowledges and agrees is in addition to anything of value to which he is otherwise entitled, Mr. Carrasco hereby releases and forever discharges Oppenheimer, and each of its representatives, including, without limitation each of its agents, employees, servants, directors, officers, managers, department heads, representatives, insurers, trustees, fiduciaries, shareholders, benefit plans, attorneys, whether now employed or previously employed, as well as each and any of their respective subsidiaries, affiliates, predecessors, successors and assigns and each and any of their respective agents, employees, servants, directors and officers, managers, department heads, representatives, insurers, trustees, fiduciaries, shareholders, benefit plans, and attorneys, in both their individual and representative capacities, and any and all other related individuals and entities, jointly and individually (collectively referred to as "Releasees"), to the fullest extent permitted by law, from any and all actions, causes of action, suits, debts, dues, sums of money, actions for emotional distress and mental anguish, accounts, reckoning, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, liabilities, rights, claims and demands of any kind whatsoever, whether known or unknown, asserted or unasserted, in law, or in equity, Mr. Carrasco and Mr. Carrasco's heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may have against Releasees for, upon or by any reason of any matter, cause or thing whatsoever existing, arising or occurring at any time from the beginning of the world to the day of the date Mr. Carrasco executes this Separation Agreement and Release including, without limitation, any and all claims arising out of or in any manner whatsoever, directly or indirectly, based on, connected with or relating to Mr. Carrasco's employment, compensation, and benefits with Oppenheimer and termination thereof ("Release").

(b)     This Release and waiver includes, but is not limited to, any and all claims based on, arising under or relating in any way to any federal, state or local law, statute, rule or regulation or principle of contract law or common law, and claims for costs, expenses and attorneys' fees with respect thereto including, but not limited to, claims for wrongful or abusive discharge, for breach of contract, or for discrimination based on race, color, ethnicity, sex, age,

CONFIDENTIAL

national origin, religion, disability or any other lawful criterion or circumstance, retaliation claims, breach of fiduciary duty claims, equitable claims, tort claims, defamation claims, personal injury claims, emotional distress claims, invasion of privacy claims, fraud claims, quantum meruit claims, public policy claims, and claims based on, arising under or relating in any way to Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866, as amended, the Equal Pay Act, as amended, the Uniform Services Employment and Re-employment Rights Act ("USERRA"), as amended, the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, the Americans with Disabilities Act ("ADA"), as amended, the Family And Medical Leave Act ("FMLA"), as amended, the Employee Retirement Income Security Act ("ERISA"), as amended, the Civil Rights Act of 1991, as amended, the Rehabilitation Act of 1973, as amended, the Older Workers Benefit Protection Act ("OWBPA"), as amended, the Worker Adjustment and Retraining Notification Act ("WARN"), as amended, the Occupational Safety and Health Act of 1970 ("OSHA"), as amended. Mr. Carrasco's signature below will also constitute confirmation that Mr. Carrasco has been advised prior to signing this agreement to consult with an attorney, or any personal or financial advisor Mr. Carrasco chooses, and that Mr. Carrasco has so consulted with an attorney.

(c)     This Agreement is not intended to, and does not, release any rights or claims that may arise after the date Mr. Carrasco signs the Agreement, any claim for worker's compensation benefits, unemployment benefits, or any rights or claims that cannot be released as a matter of law. This Agreement also is not intended to, and does not prevent Mr. Carrasco from seeking to enforce his rights under this Agreement or from challenging the validity or enforceability of this Agreement or this Release. This Agreement also is not intended to, and does not prevent or bar Mr. Carrasco from filing an administrative charge with any federal, state or local administrative agency, including the Equal Employment Opportunity Commission or any state or local fair employment practices agency, or from communicating or cooperating with or participating in any investigation or proceeding conducted by any such administrative agency. Mr. Carrasco acknowledges and agrees, however, that, to the fullest extent permitted by law, Mr. Carrasco is waiving and releasing any claim or right to recover from Oppenheimer or Releasees any monetary damages or any other form of personal relief based upon any such charge, investigation or proceeding to the extent it is based on any claim, charge, complaint or action against Oppenheimer or Releases covered by this Release. If it is determined that any right or claim covered by this Release cannot be released as a matter of law, Mr. Carrasco expressly agrees that this Agreement and this Release will nevertheless remain valid and fully enforceable as to all other released rights and claims.

(d)     To the fullest extent permitted by law, Mr. Carrasco agrees that if any claim, charge, complaint or action against Oppenheimer or Releasees covered by this Release is filed or brought against Oppenheimer or Releasees by Mr. Carrasco, for Mr. Carrasco's benefit or on Mr. Carrasco's behalf, Mr. Carrasco expressly waives and releases any claim or right to recover from Oppenheimer or Releasees any monetary damages, or any other form of personal relief, including attorneys' fees and costs, based upon any such claim, charge, complaint or action. To the extent Mr. Carrasco receives any monetary damages or any other form of personal relief from Oppenheimer or Releasees based upon any such claim, charge complaint or action, Oppenheimer and Releasees will be entitled to an offset for the payments made pursuant to this Agreement, to the fullest extent permitted by law. Mr. Carrasco further agrees that, if any claims covered by this Release are now pending or at any time are asserted in any court litigation or arbitration, he will take all actions necessary to dismiss such claims with prejudice.

(e)     In addition, nothing in this Agreement precludes Mr. Carrasco from (i) receiving and retaining a monetary award from a government-administered award program for providing information directly to a government agency or (ii) benefiting from classwide injunctive relief awarded in any fair employment practices case brought by any governmental agency, provided such classwide injunctive relief does not result in Mr. Carrasco receiving any monetary benefit or equivalent thereof from Oppenheimer or Releasees.

3.   <u>Time for Review and Right of Revocation.</u>

(a)     Mr. Carrasco shall have twenty-one (21) days from his receipt of this Agreement to review and consider it, and may sign and return the Agreement to Jaime Bridges, Senior Director, Human Resources, 3310 W. Big Beaver Road, Suite 260, Troy, MI 48084, at any time before the expiration of this twenty-one (21) day period.  Mr. Carrasco has been advised to seek legal counsel with respect to this Agreement.  Mr. Carrasco acknowledges and agrees that he had sufficient time in which to consider and understand the Agreement, and to consult with counsel or another representative of his choice prior to executing the Agreement, and that he has executed this Agreement voluntarily.  Mr. Carrasco further represents that he has made an appropriate investigation of the events referenced and covered by this Agreement, and does not, and has not, relied upon any statement, representation, omission or promise of any other party in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement.  Mr. Carrasco further represents that Mr. Carrasco is aware that Mr. Carrasco may hereafter discover claims or facts in addition to or different from those Mr. Carrasco now knows or believes to be true with respect to the matters related herein. Nevertheless, it is Mr. Carrasco's intention to fully, finally and forever settle and release all matters covered by the Release set forth in Paragraph 2 above. In furtherance of such intention, the Release given herein shall be and remain in effect as a full and complete release of all such matters, notwithstanding the discovery or existence of any additional or different claims or facts relative hereto.

4.   <u>Return of Property, Confidentiality, and Non-Disclosure</u>.  Mr. Carrasco agrees to immediately return to Oppenheimer, all property and materials of Oppenheimer in Mr. Carrasco's possession, including without limitation, identification badges, customer lists, computers, documents, files, tapes, etc.  Except as permitted under the "Exceptions" provisions in Paragraph 13 below, and to the fullest extent permitted by law, Mr. Carrasco further agrees not to use or disclose in any manner any confidential or proprietary information Mr. Carrasco may have obtained, become aware of, or come in contact with while at Oppenheimer, nor may Mr. Carrasco remove any confidential or proprietary information from Oppenheimer. Mr. Carrasco acknowledges and agrees that any breach of any of the provisions of this Paragraph 4 shall be considered a material breach and that it would be extremely difficult to ascertain the actual damages resulting from a breach of the provisions of this Paragraph 4.  Accordingly, Mr. Carrasco agrees that he shall be liable to Oppenheimer for liquidated damages in the sum of $3,000.00 for each breach of this provision.

5.   <u>Cooperation and Assistance</u>.  Mr. Carrasco agrees to cooperate with Oppenheimer in connection with any investigation, regulatory matter, litigation or potential litigation or arbitration in which Oppenheimer is a subject, target, or party and as to which he may have

CONFIDENTIAL                                                        OPCO_0162

pertinent information by providing the necessary information or cooperation, including but not limited to meeting with Oppenheimer's attorneys and making himself fully available for preparation for hearings, proceedings or litigation and for attendance at any pre-trial discovery and trial sessions. Mr. Carrasco further agrees to perform all acts and execute any and all documents that may be necessary to carry out the provisions of this Paragraph.

6. <u>Non-Disparagement</u>. Except as permitted under the "Exceptions" provisions in Paragraph 13 below, and to the fullest extent permitted by law, Mr. Carrasco agrees that he will not make any remarks, comments, or statements, written or oral, in any medium (including without limitation on Facebook, Twitter, or any blog or electronic bulletin board) or to any person or entity (including, without limitation, the press or the media), without limitation in time, that defame, disparage, criticize, or otherwise reflect adversely on Oppenheimer or any other Releasee, or its or their businesses, products, business plans, practices, policies, customers, investors, or personnel without limitation in time. Nothing in this Paragraph is intended to: (i) limit in any way Mr. Carrasco's ability to compete fairly with Oppenheimer in the future; or (ii) prevent Mr. Carrasco from conferring in confidence with his legal representatives or testifying truthfully or making truthful statements or submissions in litigation or other legal, administrative or regulatory proceedings or internal investigations.

7. <u>Agreement Not to Recruit</u>. Mr. Carrasco agrees that for a period of two (2) years, he will not directly or indirectly, solicit any employee, agent or representative of Oppenheimer or its affiliates (collectively "Opco") with whom Mr. Carrasco has worked with in the twelve (12) months leading up to his Separation Date to (a) terminate his or her relationship with Opco; (b) become an employee, agent or representative of another entity; or (c) in any manner interfere with the business of Opco. Mr. Carrasco also agrees that for the duration of this period, he will not directly or indirectly hire any person who is employed by Opco as of the Separation Date with whom he has worked with in the twelve (12) months leading up to his Separation Date. In the event that Mr. Carrasco breaches this Paragraph, Mr. Carrasco acknowledges and agrees that Oppenheimer would be subject to irreparable harm entitling Oppenheimer to seek all available remedies, including provisional remedies, such as immediate temporary and preliminary injunctive relief in aid of arbitration or to maintain the status quo pending arbitration from a court of competent jurisdiction, without waiver of any other rights or remedies, and without the posting of a bond.

8. <u>Non-Competition Agreement</u>. Mr. Carrasco agrees that he will not contact or solicit, either directly or indirectly, or accept the accounts of any of the clients of Oppenheimer whom he serviced or other clients of Oppenheimer or its affiliates whose names became known to him while in the employ of Oppenheimer for a period of two (2) years from the Separation Date. In addition, Mr. Carrasco agrees that in no event will he retain or take any client information of any account of Oppenheimer that was given or introduced to him by Oppenheimer during his employment at Oppenheimer. The aforementioned notwithstanding, Oppenheimer is a member of the Broker Protocol. Employees of Oppenheimer whose employment terminates are obligated to follow certain procedures with respect to the retention of certain customer information and solicitation of clients. Mr. Carrasco agrees and acknowledges that he is familiar with such procedures.

9. <u>Non-Admission</u>. The parties agree that (i) neither this Agreement nor anything contained

herein is or shall be construed to be an admission of liability to Mr. Carrasco or anyone else or an admission of the violation of any equal employment or any other law, order, statute, rule or regulation, and (ii) this Agreement may not be used as evidence in any subsequent proceeding except in a proceeding to enforce or obtain relief from a breach of this Agreement.

10.   Miscellaneous.

(a)   Successors, Assigns, Heirs, Beneficiaries.  This Agreement shall be enforceable against, and is intended to cover Mr. Carrasco and Mr. Carrasco's successors, assigns, heirs, beneficiaries and estate.

(b)   Counterparts.  This Agreement may be executed in one or more counterparts, PDF, or facsimile copies, each of which shall be deemed effective and binding as an original, but all of which together shall constitute one and the same agreement.

(c)   Headings.  The paragraph headings in this Agreement have been inserted for convenience only and do not modify, explain, enlarge, or restrict any of the provisions set forth herein.

11.   Governing Law and Enforcement.  This Agreement and Release shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and wholly to be performed in that state, without regard to any choice of law principles, except that the Arbitration Agreement referenced in this Paragraph 11 shall be governed by and interpreted in accordance with the Federal Arbitration Act. Except as provided in this Paragraph 11 or in Paragraph 2 above, any dispute or claim between Mr. Carrasco and Oppenheimer or any Releasee (as defined in Paragraph 2 above) based on, arising out of or relating in any way to this Agreement, the enforceability of this Agreement, or the parties' respective rights and obligations under this Agreement, or to enforce or obtain relief from a breach of this Agreement, and any other Covered Claim as defined in the parties' Arbitration Agreement, shall be resolved by final and binding arbitration on a non-class action, non-collective action, and non-representative action basis in accordance with and subject to the terms of the parties' Arbitration Agreement, except that either party may seek temporary or preliminary injunctive relief in aid of arbitration or to maintain the status quo pending arbitration from a court of competent jurisdiction.  In the event Mr. Carrasco breaches or threatens to breach any of his obligations set forth in Paragraphs 4, 6 or 12 of this Agreement, Mr. Carrasco acknowledges that such breach or threatened breach shall cause irreparable harm to Oppenheimer, entitling Oppenheimer, at its option, to seek immediate temporary and preliminary injunctive relief in aid of arbitration or to maintain the status quo pending arbitration from a court of competent jurisdiction, without waiver of any other rights or remedies, and without the posting of a bond.  This Agreement may be specifically enforced and may be used as evidence in any proceeding in which any of the parties seek to enforce or alleges a breach of this Agreement. The aforementioned Arbitration Agreement applies to all covered claims, including any covered claims based on, arising out of, or which arose out of or in any way relate to acts and omissions that occurred before Mr. Carrasco and Oppenheimer entered into this Agreement.

12.   Confidentiality of Agreement.  Except as permitted under the "Exceptions" provisions in Paragraph 13 below, and to the fullest extent permitted by law, Mr. Carrasco agrees to keep

CONFIDENTIAL                                                                    OPCO_0164

confidential, and not divulge or discuss, or cause Mr. Carrasco's counsel or anyone in privity with Mr. Carrasco to discuss, either directly or indirectly, the amount or terms of this Agreement and Release, or the facts or circumstances related thereto. Mr. Carrasco acknowledges and agrees that any breach of the provisions of this Paragraph 12 shall be considered a material breach, and that it would be extremely difficult to ascertain the actual damages resulting from a breach of this provision. Accordingly, Mr. Carrasco agrees that Mr. Carrasco shall be liable to Oppenheimer for liquidated damages in the sum of $3,000.00 for the breach of this provision. Nothing in this provision or this Agreement shall prohibit or restrict Mr. Carrasco or Mr. Carrasco's attorneys from responding to any inquiry about this Agreement or its underlying facts and circumstances by any governmental agency, regulatory body or self-regulatory organization ("SRO"), or official, including without limitation, the Securities and Exchange Commission ("SEC") or FINRA.

13. <u>Exceptions</u>. Nothing in this Agreement shall prohibit or restrict Mr. Carrasco from lawfully (A) initiating communications directly with, cooperating with, providing relevant information to or otherwise assisting in an investigation by the SEC, FINRA, or any other governmental agency or regulatory body or official or SRO regarding a possible violation of any applicable law, rule or regulation; (B) responding to any inquiry from any such governmental or regulatory body or official or SRO or governmental authority, including an inquiry about the existence of this Agreement or its underlying facts or circumstances; or (C) testifying, participating or otherwise assisting in an action or proceeding relating to a possible violation of any such law, rule or regulation. Further, nothing in this Agreement shall prohibit or restrict Mr. Carrasco (or Mr. Carrasco's attorney) from initiating communications directly with, or responding to any inquiry from, or providing testimony before, the SEC, FINRA, or any other SRO or any other federal or state regulatory authority, regarding this settlement or its underlying facts or circumstances, or regarding any potentially fraudulent or suspicious activities, nor does this Agreement require Mr. Carrasco to notify Oppenheimer of any such communications, cooperation, assistance, responses to inquiries, testimony or participation as described in this paragraph. Mr. Carrasco acknowledges and agrees, however, that, to the fullest extent permitted by law, Mr. Carrasco is waiving and releasing any claim or right to recover from Oppenheimer or Releasees any monetary damages or any other form of personal relief based upon any claim, charge, complaint or action against Oppenheimer or Releasees covered by the Release set forth in Paragraph 2 above.

14. <u>Severability</u>. If any term, clause or provision of this Agreement should ever be determined to be invalid or unenforceable, that will not affect the enforceability of the remainder of such term, clause or provision or of any other term, clause or provision of this Agreement, and all such terms, clauses and provisions shall be binding and enforceable to the fullest extent permitted by law as though such terms, clauses and provisions had been written in such a manner and to such an extent as to be enforceable under the circumstance. If a particular term, clause or provision of this Agreement is determined to be invalid or unenforceable under the applicable law of a particular jurisdiction, such term, clause or provision shall remain effective and enforceable in all other jurisdictions. Mr. Carrasco and Oppenheimer further agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be applied to the construction or interpretation of this Agreement.

15. <u>Amendments and Waivers</u>. This Agreement may not be amended, changed or modified,

except by written instrument executed by the parties executing this Release. The failure of a party to insist upon strict adherence to any term of this Agreement on any occasion shall not be considered a waiver thereof or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

16. _Entire Agreement_. This Agreement represents the entire agreement between Mr. Carrasco and Oppenheimer and supersedes any and all existing agreements, oral or written, between the Parties, except for the Parties' Arbitration Agreement, any and all clawback agreements or provisions and Mr. Carrasco's prior commitments and obligations concerning confidential information, trade secrets, copyrights, patents, or other intellectual property and the like, which shall continue in effect in accordance with their terms.

**PLEASE READ THIS SEPARATION AGREEMENT AND RELEASE CAREFULLY. IT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**


OPPENHEIMER & CO. INC

_____ By:_____

**Bryce Carrasco** Title:_____

Date:_____


State of _____ )

) ss.:

County of _____ )

On the \_\_\_ day of _____, in the year 20\_\_, before me, the undersigned, a Notary Public in and for said State, personally appeared, **Bryce Carrasco,** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or person upon behalf of which the individual acted, executed the instrument.

_____

Notary Public

**OPPENHEIMER & CO. INC.(**249**)**

**Rev. Form U5 (05/2009)**

**Individual Name: CARRASCO, BRYCE (6969159)**

**U5 Full - Filing ID: 56626297**

**Filing Date: 06/28/2021**

### NOTICE TO THE INDIVIDUAL WHO IS THE SUBJECT OF THIS FILING

Even if you are no longer registered you continue to be subject to the jurisdiction of regulators for at least two years after your registration is terminated and may have to provide information about your activities while associated with this firm. Therefore, you must forward any residential address changes for two years following your termination date or last Form U5 amendment to: CRD Address Changes, P.O. Box 9495, Gaithersburg, MD 20898-9495.

### 1. General Information

| First Name: | Middle Name: | Last Name: | Suffix: |
|---|---|---|---|
| BRYCE | | CARRASCO | |

| **Firm** CRD #: | **Firm** Name: | **Firm** NFA #: | |
|---|---|---|---|
| 249 | OPPENHEIMER & CO. INC. | | |

| Individual CRD #: | Individual SSN: | Individual NFA #: | **Firm** Billing Code: |
|---|---|---|---|
| 6969159 | xxx-xx-xxxx | | BC |

**Office of Employment Address:**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Address | Private Residence | Type of Office | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| 492607 | A832 | A832 | 85 BROAD STREET 23RD FLOOR NEW YORK, NY 10004 United States | No | Supervised From | 07/08/2019 | 05/31/2021 |
| 358097 | EC | EC | 100 INTERNATIONAL DRIVE SUITE 19200 BALTIMORE, MD 21202 United States | No | Located At | 07/08/2019 | 05/31/2021 |

### 2. Current Residential Address

| From | To | Street Address |
|---|---|---|
| 07/2019 | PRESENT | 100 EAST REDWOOD STREET BALTIMORE, MD 21202 United States |

### 3. Full Termination

**Is this a FULL TERMINATION?** ◉ Yes ○ No

Note: A "Yes" response will terminate ALL registrations with all SROs and all *jurisdiction*s.

**Reason for Termination:** Other

**Termination Explanation:**

If the Reason for Termination entered above is Permitted to Resign, Discharged or Other, provide an explanation below:

Did not meet the requirements of the position. Not sales practice related.

## 4. Date of Termination

### Date Terminated (MM/DD/YYYY): 05/31/2021

A complete date of termination is required for *full termination*. This date represents the date the *firm* terminated the individual's association with the *firm* in a capacity for which registration is required.

For *partial termination*, the date of termination is only applicable to post-dated termination requests during the renewal period.

Notes: For *full termination*, this date is used by *jurisdictions*/SROs to determine whether an individual is required to requalify by examination or obtain an appropriate waiver upon reassociating with another *firm*.

The *SRO/jurisdiction* determines the effective date of termination of registration.

## 6. Affiliated Firm Termination

Is this a *multiple termination* with one or more *firms affiliated* with the *filing firm*?
If "yes" to the above question and the termination requests for the *filing firm* are identical to the termination requests of each *affiliated firm*, then mark the same termination request for each affiliate.
If the termination requests of the *affiliated firm(s)* differ from those of the *filing firm*, complete the *SRO* and/or *jurisdiction* sections for each *affiliated firm*.

     ○   ○ No
     Yes

## 7. Disclosure Questions

IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IN SECTION 7 IS 'YES', COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S). IF THE INFORMATION IN SECTION 7 HAS ALREADY BEEN REPORTED ON FORM U4 OR FORM U5, DO NOT RESUBMIT DRPS FOR THESE ITEMS. REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U5 INSTRUCTIONS FOR EXPLANATION OF ITALICIZED WORDS.

**Disclosure Certification Checkbox (optional):** ☑

By selecting the Disclosure Certification Checkbox, the *firm* certifies that (1) there is no additional information to be reported at this time; (2) details relating to Questions 7A, 7C, 7D and 7E have been previously reported on behalf of the individual via Form U4 and/or amendments to Form U4 (if applicable); and (3) updated information will be provided, if needed, as it becomes available to the *firm*. Note: Use of "Disclosure Certification Checkbox" is optional

### Investigation Disclosure

                                                      **Yes No**

**7A.** Currently is, or at termination was, the individual the subject of an *investigation* or *proceeding* by a domestic or foreign governmental body or *self-regulatory organization* with jurisdiction over *investment-related* businesses? (Note: Provide details of an *investigation* on an Investigation Disclosure Reporting Page and details regarding a *proceeding* on a Regulatory Action Disclosure Reporting Page.)
   ○    ○

### Internal Review Disclosure

                                                      **Yes No**

**7B.** Currently is, or at termination was, the individual under internal review for fraud or wrongful taking
   ○    ○

of property, or violating *investment-related* statutes, regulations, rules or industry standards of conduct?

## Criminal Disclosure

                                                                    **Yes No**

**7C.** While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual:

   **1.** convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any *felony*?     ○ ○

   **2.** *charged* with any *felony*?     ○ ○

   **3.** convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business, or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses?     ○ ○

   **4.** *charged* with a *misdemeanor* specified in 7(C)(3)?     ○ ○

## Regulatory Action Disclosure

                                                                     **Yes No**

**7D.** While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual *involved* in any *disciplinary action* by a domestic or foreign governmental body or *self-regulatory organization* (other than those designated as a "*minor rule violation*" under a plan approved by the U.S. Securities and Exchange Commission) with jurisdiction over the *investment-related* businesses?     ○ ○

## Customer Complaint/Arbitration/Civil Litigation Disclosure

                                                                     **Yes No**

**7E.**  **1.** In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations* and which:

   **(a)** is still pending, or;     ○ ○

   **(b)** resulted in an arbitration award or civil judgment against the individual, regardless of amount, or;     ○ ○

   **(c)** was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;     ○ ○

   **(d)** was settled, on or after 05/18/2009, for an amount of $15,000 or more?     ○ ○

   **2.** In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated (written or oral) complaint, which alleged that the individual was *involved* in one or more *sales practice violations*, and which

   **(a)** was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;     ○ ○

   **(b)** was settled, on or after 05/18/2009, for an amount of $15,000 or more?     ○ ○

   **3.** In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under questions 7(E)(2) above, which:

   **(a)** would be reportable under question 14I(3)(a) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*; or     ○ ○

CONFIDENTIAL

(b) would be reportable under question 14I(3)(b) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*.

**Answer questions (4) and (5) below only for arbitration claims or civil litigation filed on or after 05/18/2009**

4. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, arbitration claim or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations*, and which:

   (a) was settled for an amount of $15,000 or more, or;

   (b) resulted in an arbitration award of civil judgment against any named respondent(s)/defendant(s), regardless of amount?

5. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an investment-related, consumer-initiated, arbitration claim or civil litigation not otherwise reported under question 7E(4) above, which:

   (a) would be reportable under question 14I(5)(a) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*; or

   (b) would be reportable under question 14I(5)(b) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*.

**Termination Disclosure**

                                                                                          Yes  No

**7F.** Did the individual voluntarily *resign* from your *firm*, or was the individual discharged or permitted to *resign* from your *firm*, after allegations were made that accused the individual of:

   1. violating *investment-related* statutes, regulations, rules or industry standards of conduct?

   2. fraud or the wrongful taking of property?

   3. failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct?

---

## 8. Signature

Please Read Carefully

All signatures required on this Form U5 filing must be made in this section.

A "Signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

8A.  FIRM ACKNOWLEDGMENT

   This section must be completed on all U5 form filings submitted by the *firm*.

8B.  INDIVIDUAL ACKNOWLEDGMENT AND CONSENT

   This section must be completed on amendment U5 form filings where the individual is submitting changes to Part II of the INTERNAL REVIEW DRP or changes to Section 2 (CURRENT RESIDENTIAL ADDRESS).

### 8A. FIRM ACKNOWLEDGMENT

CONFIDENTIAL
OPCO_0170

I VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN AND WITH THIS FORM.

**Person to contact for further information**

WILLIAM CASSARINI

**Telephone # of person to contact**

212-667-6814

**Signature of *Appropriate Signatory***

BEBE ALI

**Signature** _____

**Date (MM/DD/YYYY)**

06/28/2021

## Criminal DRP

No Information Filed

## Customer Complaint DRP

No Information Filed

## Internal Review DRP

No Information Filed

## Investigation DRP

No Information Filed

## Regulatory Action DRP

No Information Filed

## Termination DRP

No Information Filed

© 2021 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.

Privacy | Legal | Terms & Conditions