If you have issues viewing or accessing this file contact us at NCJRS.gov.



# The Analysis and Decision of Summary Judgment Motions

## A Monograph on Rule 56 of the Federal Rules of Civil Procedure

134865

**Judicial Center** 

The Federal Judicial Center

Board
The Chief Justice of the United States, *Chairman*

Judge Edward R. Becker
U.S. Court of Appeals for the Third Circuit

Judge J. Harvie Wilkinson III
U.S. Court of Appeals for the Fourth Circuit

Judge Martin L.C. Feldman
U.S. District Court for the Eastern District of Louisiana

Judge Diana E. Murphy
U.S. District Court for the District of Minnesota

Judge David D. Dowd, Jr.
U.S. District Court for the Northern District of Ohio

Judge Sidney B. Brooks
U.S. Bankruptcy Court for the District of Colorado

Honorable L. Ralph Mecham
Director of the Administrative Office of the U.S. Courts

Director
Judge William W Schwarzer

Deputy Director
Russell R. Wheeler

Division Directors
Steven A. Wolvek, Court Education Division
Denis J. Hauptly, Judicial Education Division
Sylvan A. Sobel, Publications & Media Division
William B. Eldridge, Research Division

Federal Judicial Center, 1520 H Street, N.W., Washington, DC 20005

NCJRS

MAR 4 1992

ACQUISITIONS

134865

# The Analysis and Decision of Summary Judgment Motions

*A Monograph on Rule 56 of the Federal Rules of Civil Procedure*

William W Schwarzer
Alan Hirsch
David J. Barrans

Federal Judicial Center
1991

This publication was produced in furtherance of the Center's statutory mission to conduct and stimulate research and development on matters of judicial administration. The statements, conclusions, and points of view are those of the authors. This work has been reviewed by Center staff, and publication signifies that it is regarded as responsible and valuable. It should be emphasized, however, that on matters of policy the Center speaks only through its Board.

*Cite as* Schwarzer, Hirsch & Barrans, The Analysis and Decision of Summary Judgment Motions (Federal Judicial Center 1991)

134865

**U.S. Department of Justice**
**National Institute of Justice**

This document has been reproduced exactly as received from the person or organization originating it. Points of view or opinions stated in this document are those of the authors and do not necessarily represent the official position or policies of the National Institute of Justice.

Permission to reproduce this ~~copyrighted~~ material has been granted by

Public Domain

Federal Judicial Center

to the National Criminal Justice Reference Service (NCJRS).

Further reproduction outside of the NCJRS system requires permission of the ~~copyright~~ owner.

To the late Alvin B. Rubin,
Judge of the United States Court of Appeals for the Fifth Circuit,
in appreciation of his great contributions to the
administration of justice.

# Contents

Introduction .......................................................................... vii
1. History of Summary Judgment ......................................... 1
2. The Elements of Rule 56 ................................................. 9
3. Identifying Issues of Fact ............................................... 13
    General Principles ........................................................... 13
    Applications .................................................................... 21
        Admiralty and Maritime ........................................... 22
        Antitrust ................................................................. 23
        Civil Rights and Constitutional Law ....................... 25
        Contracts ................................................................ 28
        Corporations .......................................................... 29
        Insurance ................................................................ 30
        Intellectual Property ............................................... 31
        Labor ..................................................................... 32
        Limitations ............................................................. 33
        Personal Injury and Products Liability .................... 34
        Securities Fraud ...................................................... 34
        Torts ...................................................................... 35
4. Summary Judgment in Bench Trials ................................ 39
5. Determining Materiality ................................................. 43
6. Determining Genuine Disputes ...................................... 45
    The Burden on the Moving Party ................................... 45
    The Burden on the Nonmoving Party ............................ 47
        General Requirements ............................................. 47
        Admissibility of Evidence ....................................... 50
        Expert Affidavits ................................................... 52
    The Judicial Function .................................................... 57
        Historical Facts ...................................................... 57
        Ultimate Facts ....................................................... 58
        Choosing Among Inconsistent Inferences ............... 64
7. Procedural Issues .......................................................... 69
    Partial Summary Judgment and Case Management ........ 69
    Cross-Motions for Summary Judgment .......................... 73
    Timing of Motion and Discovery: Rule 56(f) ................. 74
    Sanctions: Rule 56(g) ................................................... 76
    Appeals ......................................................................... 77
        Appealable Orders ................................................. 77
        Scope of Review ..................................................... 79
Appendix: Fed. R. Civ. P. 56 ............................................. 83
Table of Cases ................................................................... 89
Table of Authorities .......................................................... 97

# Introduction

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure has been a source of controversy and confusion. Some have viewed it as a meretricious shortcut depriving litigants of their right to trial by jury, while others have seen it as a powerful docket-clearing device essential to overburdened courts. Disparities in judicial attitudes have contributed to widely differing interpretations and applications, resulting in much confusion over proper use of the summary judgment procedure.

In its 1986 trilogy of summary judgment decisions, the Supreme Court infused Rule 56 with new legitimacy and opened the way toward a clearer and more coherent jurisprudence. Growing concern over cost and delay in civil litigation has focused increased attention on Rule 56 as a vehicle to implement the objectives of Fed. R. Civ. P. 1—the just, speedy, and inexpensive resolution of litigation. Achieving these objectives requires informed and sophisticated use of the rule.

This monograph is intended to improve understanding and use of Rule 56. It does not claim to be a definitive statement. The decisions in this field, far from offering a set of ready answers, provoke lively differences of opinion. While we suggest what we believe to be reasonable interpretations of the cases, we recognize that they may not be the only interpretations. The value of this exercise lies less in explicating a particular approach than in encouraging reflection on the critical issues. We suggest ways of thinking about summary judgment that can help judges and lawyers work more effectively with the rule. Better understanding of Rule 56 can reduce cost and delay in civil litigation by promoting a sounder and less error-prone application of the rule (which should lead to greater confidence in its use) and by reducing the frequency of wasteful summary judgment proceedings.

We first recount the history of summary judgment (Chapter 1) and parse the elements of Rule 56 (Chapter 2). We then address the three major elements of summary judgment analysis: What is an issue of fact? What makes an issue of fact material? What makes an issue of fact genuine? Chapter 3 takes up the first of these questions, drawing from case law a functional approach to distinguishing between issues of fact and issues of law for purposes of the rule. After a brief discus-

sion (Chapter 4) of the court's options in addressing summary judgment motions in bench trials, Chapters 5 and 6 explore the next two questions in the analytical process: if there is an issue of fact, what makes it "material," i.e., an issue that must be resolved for the dispute to be adjudicated; and when is a dispute over a material fact "genuine," i.e., requiring a trial to be decided. Chapter 7 discusses procedural issues arising under Rule 56.

Although Rule 56 may be amended, we expect that the basic elements of the procedure and the controlling analysis will remain unchanged.

# Chapter 1
# History of Summary Judgment

The origins of modern summary judgment procedure are found in nineteenth-century English law. The 1855 Summary Procedure on Bills of Exchange Act sanctioned summary decisions on the merits in actions to collect on bills of exchange and promissory notes. The Judicature Act of 1873 extended this procedure to actions involving liquidated money demands arising out of contract, bond, statutory penalty, guarantee, trust, and landlord–tenant relations. This procedure was available only to plaintiffs, enabling creditors to collect debts that they could prove by documentary evidence. Its purpose was to reduce delay and expense resulting from frivolous defenses.[1]

Summary judgment statutes based on the English model came to be enacted in several states in the late 1800s.[2] Like the English rule, these early statutes were limited to plaintiffs' claims and generally to transactions susceptible of documentary proof. Under most of the statutes, plaintiffs were required to submit an affidavit demonstrating that they were entitled to a summary judgment. Some statutes required the defendant to submit an affidavit in opposition to the motion, while others permitted opposition "by affidavit or other proof."

Courts often approached the procedure under these statutes with reluctance. Many judges viewed summary judgment as a drastic remedy to be used only sparingly, presaging the debate decades later under the more expansive text of Rule 56. Nonetheless, a study of motions for summary judgment under the New York rule in 1926 and 1927 showed that more than half were granted.[3]

The first recorded federal court case invoking summary procedure was *Smoot v. Rittenhouse,* decided by the Supreme Court in 1876.[4] The decision upheld the 75th rule of the District of Columbia

---

1. For an extensive discussion of the early experience with summary procedures, see Clark & Samenow, *The Summary Judgment,* 38 Yale L.J. 423 (1929).
2. Forms of summary proceedings existed in this country as early as 1769, when the colony of South Carolina passed a rule allowing a judge to decide summarily any civil case involving less than £20, unless one of the parties demanded a jury. *See* Millar, *Three American Ventures in Summary Civil Procedure,* 38 Yale L.J. 193, 195–203 (1928).
3. Clark & Samenow, *supra* note 1, at 455 n.230.
4. 27 Wash. L. Rep. 741 (1876).

Supreme Court, which authorized a court to enter judgment for plaintiff in a contract action on the basis of an affidavit showing plaintiff to be entitled by law to recover unless defendant submitted, along with its plea, an affidavit stating in precise terms the grounds of its defense.

The 75th rule came before the Supreme Court again in the 1902 case of *Fidelity & Deposit Co. v. U.S.*[5] The defendant, arguing that he did not know of the construction contract out of which the obligation on a bond arose, had demanded a jury trial. The Court rejected the defendant's argument that the rule deprived him of the right to trial by jury, saying that the summary procedure essentially

> prescribes the means of making an issue. The issue made as prescribed, the right of trial by jury accrues. The purpose of the [75th] rule is to preserve the court from frivolous defences and to defeat attempts to use formal pleading as means to delay the recovery of just demands.[6]

The Court pointed out that the rule required the defendant merely to produce a sworn statement of defense; the defendant did not have to come forward with admissible evidence.

In 1929 Professors Clark (later judge of the Second Circuit) and Samenow published their seminal article advocating the use of summary judgment as a remedy for excessive delay and congestion in the courts.[7] The authors observed that although summary judgment had been hailed as a salutary innovation to relieve docket congestion, judicial caution severely limited its use. They predicted, however, that it would have a more important position in future practice than merely that of a prod to delinquent debtors.

Their prediction came true in 1938 with the adoption of the Federal Rules of Civil Procedure, of which Judge Clark was the principal author. Rule 56 established a summary judgment procedure far more advanced than the one approved by the Supreme Court in *Fidelity*. First, the new rule enabled defendants as well as plaintiffs to move for summary resolution.[8] Second, it required the party opposing the

---

5. 187 U.S. 315 (1902).

6. *Id.* at 320.

7. *Supra* note 1.

8. A review of the legislative history of Rule 56 provides a glimpse into why the drafters broadened the summary judgment procedure. They took note of an emerging trend in the states to permit summary judgment in far more situations than did the En-

motion to do more than come forward with a sworn statement of the grounds for opposition. Because the rule called on the court to determine on the basis of affidavits and discovery responses whether there was a genuine issue of material fact, it contemplated presentation and review of the relevant evidence. A 1963 amendment to Rule 56(e) made explicit that a party opposing a motion could not rest on the pleadings but had to come forward by affidavit or otherwise with specific facts showing that there was a genuine issue for trial.

Thus, by 1963 summary judgment procedure had progressed significantly from its origins in the 75th rule and English practice less than a hundred years earlier. But despite the dramatic changes, the new rule caused not a ripple in the decisional law. Review of the reported decisions in the first few years following adoption of Rule 56 shows that while the rule was frequently invoked, little was said about its purpose, meaning, or application, much less its validity.

Those decisions reflected continuing differences in judicial attitude toward the summary judgment procedure, with some judges using it aggressively and others cautiously. Five years after Rule 56 was enacted, Judge Clark wrote that on balance "the courts have been, if anything, overhesitant in granting the relief."[9] Hesitancy to grant summary judgment was largely attributable to an institutional concern with preserving parties' rights. An early Fifth Circuit opinion cautioned against using summary judgment as a "catch penny contrivance to take unwary litigants into its toils and deprive them of a trial."[10] In 1946 the Tenth Circuit warned that "[t]he power to pierce the flimsy and transparent factual veil should be temperately and cautiously used lest abuse reap nullification."[11] Similarly, in 1975 the Second Circuit remarked that summary judgment "is a drastic device

---

glish rule. New York not only permitted plaintiffs to seek summary judgment in a wide variety of actions but also permitted defendants to move for summary adjudication based on several affirmative defenses. The broader approach "proved so effective in speeding up the calendar that it drew to its support able jurists and writers who . . . provided leadership for its extension in New York and elsewhere throughout the country." Clark, *Summary Judgments—A Proposed Rule of Court*, 2 F.R.D. 364, 365 (1943). The drafters of Rule 56 were in possession of the *Report of the Commission on the Administration of Justice in New York State* (1934), recommending that summary judgment be available for all parties in all actions. *See* Fed. R. Civ. P. 56 advisory committee's notes (1937 Adoption).

9. Clark, *supra* note 8, at 366.

10. Whitaker v. Coleman, 115 F.2d 305, 307 (5th Cir. 1940).

11. Avrick v. Rockmont Envelope Co., 155 F.2d 568, 571 (10th Cir. 1946).

since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury."[12] This attitude led trial courts to err in favor of allowing cases to reach the jury; courts of appeals were perceived as rarely affirming summary judgments, leading district courts to fear reversal should they grant a motion.[13]

With the development of modern case management techniques in the 1960s, some judges saw summary judgment emerging as a useful tool for identifying and narrowing issues in antitrust and other complex litigation. There was also, however, widespread reluctance to grant summary judgment in such cases. In the 1962 case of *Poller v. Columbia Broadcasting System*, the Supreme Court stated that "summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot."[14] Although in a later case the Court rejected the view that summary judgment "should, in effect, be read out of antitrust cases,"[15] courts remained reluctant to grant summary judgment in antitrust[16] and other complex litigation.[17]

Rule 56's internal vagueness may also have played a role in limiting its use. Courts were unsure how to reconcile the procedural provisions of subparagraphs (c), (e), and (f) with the substantive requirement of subparagraph (c) that the court determine whether a "genuine issue as to any material fact" exists. Questions remained regarding such matters as who bore what burden when, how the burdens on a

---

12. Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975).

13. That perception, however, is not borne out by the facts. Statistical analysis indicates that the rate of affirmance of summary judgments is similar to the overall rate of affirmance of civil cases. *See* Cecil, *Trends in Summary Judgment Practice: A Summary of Findings*, FJC Directions, No. 1, Apr. 1991, at 1; Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 467 n.9 (1984). To be sure, the high rate of affirmance does not prove that appellate courts were more receptive to summary judgments than was believed. Precisely because of the perception of hostility, district courts may have been especially selective, granting summary judgment only in cases presenting little risk of reversal.

14. 368 U.S. 464, 473 (1962).

15. First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968).

16. *See* Vairo, *Through the Prism: Summary Judgment and the Trilogy*, at 7 (paper presented at a Federal Judicial Center Seminar, Nov.–Dec. 1988; on file at the Federal Judicial Center); Rogers, *Summary Judgment in Antitrust Conspiracy Litigation*, 10 Loy. U. Chi. L.J. 667 (1979).

17. *See, e.g.*, S. J. Groves & Sons Co. v. Ohio Turnpike Comm'n, 315 F.2d 235, 237 (6th Cir.), *cert. denied*, 375 U.S. 824 (1963).

motion for summary judgment aligned with the burdens at trial, and how the burdens were met. Moreover, the rule left considerable room for interpretation as to what constitutes a "genuine issue" and a "material fact." These uncertainties encouraged courts to adopt a restrictive standard for summary judgment. Several courts stated that so long as there was the "slightest doubt as to the facts," a genuine issue of material fact existed within the meaning of Rule 56(c) and summary judgment was inappropriate.[18] Some courts explained that even if the evidence favoring the nonmovant was so slight that at trial the court would be compelled to grant the movant's motion for a directed verdict or judgment notwithstanding the verdict, the evidence would nevertheless be sufficient to create a genuine issue for purposes of defeating a summary judgment motion.[19]

The availability of summary judgment for defendants was further restricted by a requirement imposed by some courts that a defendant demonstrate the absence of a genuine issue of material fact by disproving an essential element of the plaintiff's case. To prevail, then, a defendant needed to come forward with evidence negating the plaintiff's case. Together with the "slightest doubt" test, this requirement made it exceedingly difficult for defendants to win summary judgments. Even if the plaintiff's case was entirely devoid of proof, the defendant could not obtain summary judgment without proving the nonexistence of an essential element of that case.

The fountainhead for this requirement was the 1970 Supreme Court case of *Adickes v. S. H. Kress & Co.*[20] A white schoolteacher had gone to a lunch counter in a Kress store with six of her black students and was refused service. Upon leaving the store, she was arrested for vagrancy. She brought a civil rights suit under 42 U.S.C.

---

18. *See, e.g.,* Goodson-Todman Enters. v. Kellogg Co., 513 F.2d 913, 914 (9th Cir. 1975); Morrissey v. Procter & Gamble Co., 379 F.2d 675, 677 (1st Cir. 1967); National Screen Serv. Corp. v. Poster Exch., 305 F.2d 647, 651 (5th Cir. 1962); Moutoux v. Gulling Auto Elec., 295 F.2d 573, 576 (7th Cir. 1961); Armco Steel Corp. v. Realty Inv. Co., 273 F.2d 483, 484 (8th Cir. 1960); Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946).

19. *See, e.g.,* Morrissey v. Procter & Gamble Co., 379 F.2d 675, 677 (1st Cir. 1967); Pierce v. Ford Motor Co., 190 F.2d 910, 915 (4th Cir. 1951); United Rubber v. Lee Nat'l Corp., 323 F. Supp. 1181, 1187 (S.D.N.Y. 1971) (interpreting Second Circuit law to preclude grant of summary judgment even though a jury verdict for the nonmovant could not be supported); *see also* Louis, *Federal Summary Judgment Doctrine: A Critical Analysis,* 83 Yale L.J. 745, 761 (1974).

20. 398 U.S. 144 (1970).

§ 1983 alleging, among other things, that the police and storeowner had conspired to violate her civil rights. The defendant moved for summary judgment on the basis of affidavits and depositions denying the conspiracy. While offering no direct evidence of a conspiracy, the plaintiff noted that the defendant had failed to refute the allegation in her pleading that a police officer was present in the store at the time of the incident, and argued that a jury could infer a conspiracy from the officer's presence. The district court nevertheless granted summary judgment on the ground that the plaintiff had failed to allege facts from which a conspiracy might be inferred.

The Supreme Court reversed on the ground that the defendant had "failed to carry its burden of showing the absence of any genuine issue of fact."[21] The defendant had not carried its burden "because of its failure to foreclose the possibility that there was a policeman in the Kress store while [plaintiff] was awaiting service, and that this policeman reached an understanding with some Kress employee that [plaintiff] not be served."[22] Most courts and commentators read this decision as requiring the movant to disprove the plaintiff's claim in order to obtain summary judgment.[23] Thus, regardless of which party would have the burden of proof at trial, Rule 56 was interpreted as requiring the movant to carry the burden of proving its case or disproving the opposition's case.

Perceived judicial hostility to summary judgment motions and the onerous burdens of proof imposed on a moving party discouraged use of the summary judgment procedure, even in cases in which it might have been appropriate. Trial courts were concerned about the prospect of reversal on appeal, as well as the potential for harassment through unfounded summary judgment motions. As Rule 56 approached its fiftieth anniversary, it was encumbered by ambiguities, an overlay of restrictive interpretations, and considerable judicial aversion. At the same time, some courts and commentators thought the time ripe for recognizing the potential of summary judgments to deal with increas-

---

21. *Id.* at 153.

22. *Id.* at 157.

23. *See, e.g.,* Catrett v. Celotex Corp., 756 F.2d 181, 184 (D.C. Cir. 1985), *rev'd,* 477 U.S. 317 (1986); Louis, *Summary Judgment and the Actual Malice Controversy in Constitutional Defamation Cases,* 57 S. Cal. L. Rev. 707, 708–09 (1984); Nelkin, *One Step Forward, Two Steps Back: Summary Judgment After* Celotex, 40 Hastings L.J. 53, 64 n.57 (1988). However, this interpretation was later rejected by the Court. *See* note 26.

ingly crowded dockets and rising litigation costs.[24] It was in this context that the Supreme Court in 1986 decided three cases that addressed the critical issues under Rule 56.

In *Celotex Corp. v. Catrett*,[25] the Court held that a party moving for summary judgment and not bearing the burden of proof at trial need not negate the other party's case. Rather, the moving party could discharge its burden by demonstrating the absence of an essential element of the case of the opponent, who bears the burden of proof at trial.[26] That demonstration could be made without submission of affidavits, by reliance on the pleadings, depositions, answers to interrogatories, and admissions on file.

In *Anderson v. Liberty Lobby*,[27] the Court held that (1) only disputes over facts that might legitimately affect the outcome are material under Rule 56; (2) the test for determining whether a genuine issue of material fact exists is the same as the test for granting a directed verdict (i.e., whether the evidence is sufficient to sustain a verdict for the nonmoving party); and (3) in applying that test, the court must view the evidence in the light most favorable to the nonmovant and assess its sufficiency according to the evidentiary burden imposed by the controlling substantive law.[28]

Finally, in *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,[29] the Court affirmed a summary judgment for defendants in an antitrust case involving an alleged conspiracy to fix unreasonably low prices. The Court held that, as a matter of substantive antitrust law, a case may not go to a jury if plaintiffs produce no direct evidence of a conspiracy, and an inference of lawful conduct from the

---

24. *See, e.g.*, Fontenot v. Upjohn Co., 780 F.2d 1190, 1197 (5th Cir. 1986); Schwarzer, *supra* note 13, at 467.

25. 477 U.S. 317 (1986).

26. As noted, *Adickes* had been widely interpreted as requiring the defendant seeking summary judgment to disprove the plaintiff's case. That view rested on the notion that even though plaintiff in *Adickes* had produced no evidence of a conspiracy, summary judgment was denied because defendant had failed affirmatively to disprove one. *Adickes*, however, could be read as a case in which plaintiff *had* adduced sufficient evidence—the presence of a policeman in defendant's store—from which a jury could infer a conspiracy. In that context, defendants were not entitled to summary judgment absent evidence establishing that the policeman's presence could not support a verdict of conspiracy. In *Celotex*, the Court implied that the latter interpretation was correct. 477 U.S. at 325.

27. 477 U.S. 242 (1986).

28. *Anderson* is discussed in detail at pages 57–61.

29. 475 U.S. 574 (1986).

circumstantial evidence is at least as plausible as an inference of a conspiracy.[30]

This trilogy of cases clarified the summary judgment procedure and increased its utility.[31] These cases confirm that the moving party does not have to disprove the opponent's case and can establish the absence of a triable issue in the context of the controlling substantive law and under the same standard as on a motion for directed verdict.

Summary judgment has become recognized not only as a procedure for avoiding unnecessary trials on insufficient claims or defenses but also as an effective case management device to identify and narrow issues. The Supreme Court had it right almost ninety years ago when it said summary judgment "prescribes the means of making an issue."[32] Properly used, summary judgment helps strip away the underbrush and lay bare the heart of the controversy between the parties. It can offer a fast track to a decision or at least substantially shorten the track. But proper use of the rule is the sine qua non of its utility. In the following sections, we give an overview of the elements of the rule and then analyze its effective use.

---

30. *Matsushita* is discussed in detail at pages 62–64, 68.

31. *See* Brunet, *The Use and Misuse of Expert Testimony in Summary Judgment*, 22 U.C. Davis L. Rev. 94, 125–26 (1988) ("Courts now use rule 56 to dispose of specific types of cases formerly thought to be particularly inappropriate for rule 56 treatment.").

32. Fidelity & Deposit Co. v. U.S., 187 U.S. 315, 320 (1902).

# Chapter 2
# The Elements of Rule 56

A defendant, under Rule 56(b), may move for summary judgment at any time. Under Rule 56(a), a plaintiff or claimant may move for summary judgment "any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party." The twenty-day period was intended to give the defendant sufficient time to "secure counsel and determine a course of action."[33]

The original version of Rule 56(a) authorized the plaintiff to move for summary judgment only after the defendant had filed an answer to the pleaded claim. The changes adopted in a 1946 amendment were designed to expedite the hearing of summary judgment motions where practicable. Because Fed. R. Civ. P. 12(a) allows a minimum of twenty days in which to answer a claim, and Rule 56(c) requires at least ten days between the filing of the motion and a hearing, a moving plaintiff originally had to wait at least thirty days from the filing of the claim before the summary judgment motion could be heard. The current rule allows earlier disposition when the defendant, by moving for summary judgment, signifies readiness to proceed.

Under Rule 56(a) and (b), both the moving party and the party opposing summary judgment may file their motions "with or without supporting affidavits." This provision, however, must be read in light of Rule 56(e), which requires the opposing party to "set forth specific facts" that demonstrate the existence of a genuine issue for trial.

Subsection (c) contains four distinct statements concerning summary judgment procedure. The first requires that the motion be served at least ten days before the hearing on the motion. (Local rules generally provide for a longer period.[34]) The second sentence states that "[t]he adverse party prior to the day of hearing may serve oppos-

---

33. Fed. R. Civ. P. 56(a) advisory committee's notes. The rule actually does not serve this purpose because defendants generally receive notice of an action through service, which sometimes occurs more than thirty days after commencement of the action. *See* Schwarzer, *Summary Judgment: A Proposed Revision of Rule 56*, 110 F.R.D. 213, 215 (1986).

34. This presents a potential problem of inconsistency with the federal rules that seems not to have been considered. *See* Fed. R. Civ. P. 83.

ing affidavits." (Local rules often require a longer period.[35]) The third sentence specifies the standard for summary judgment: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[36] This provision raises the issues that lie at the heart of most summary judgment litigation: what is a "material fact" and how does the court determine whether a "genuine issue" exists. Because of the lack of specific guidance provided by the rule and the open-ended nature of these issues, they are the source of most of the conceptual and practical difficulties surrounding application of the rule. The final sentence of Rule 56(c) states that summary judgment may be rendered on the issue of liability even though a genuine issue exists as to the amount of damages.

Subsection (d) provides that when a summary judgment motion is denied, the court is to determine, "if practicable . . . what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." The court must then make an order specifying which facts are not in genuine dispute and which facts remain for trial. The advisory committee notes explain that such a "partial summary judgment" is "merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. . . . akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact."[37]

Subsection (e) specifies the requirements of properly made affidavits[38] and of the nonmovant's response to a properly made summary judgment motion. A party opposing such a motion may not rest on the allegations or denials of its pleadings but must set forth specific facts "by affidavits or as otherwise provided in this rule" showing that there is a genuine issue for trial. The subsection further

---

35. *See* note 34.

36. Although the provision seems mandatory, it has not been so construed. *See* the text accompanying notes 216–18.

37. Fed. R. Civ. P. 56(d) advisory committee's notes (amended 1946).

38. The statute governing declarations on penalty of perjury, 28 U.S.C. § 1746, applies to Rule 56(e) affidavits. Under the statute, a party required by a law or rule to submit a sworn statement may submit an unsworn statement instead if the party designates that it is made under penalty of perjury.

states that if the nonmovant fails to respond adequately, summary judgment, if appropriate, shall be entered against it. The last two sentences of this subsection were added in 1963 to overrule a line of cases that had denied summary judgment motions on the strength of well-pleaded allegations even though the opponent had produced little or no evidentiary matter. The advisory committee notes explain those cases were incompatible with the "very mission of the summary judgment procedure . . . to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."[39]

Subsection (f) provides that when the party opposing the motion cannot by affidavit present facts essential to justify its opposition, the court may decline to rule on the motion, may order a continuance to permit the party further time for discovery, or may "make such other order as is just." The rule requires, however, that the party seeking more time must present affidavits stating why it cannot present facts essential to its opposition. Implicit in this rule is the requirement that the applicant's showing satisfy the court that further discovery is likely to produce such facts.

Finally, subsection (g) authorizes the court to impose sanctions on a party presenting affidavits in bad faith or solely for the purpose of delay.

Although Rule 56 was drafted over fifty years ago, it has not undergone substantial change.[40] As the litigation landscape in which the rule functions changed significantly during this period, courts adapted the rule to changing conditions much as they would a common-law rule. Some of its provisions have become virtually obsolete while others have taken on a new interpretive gloss. Revisions of the rule are currently under consideration; they would change the procedure somewhat but would not affect the substantive provisions.

---

39. Fed. R. Civ. P. 56(e) advisory committee's notes (amended 1963).

40. It has been amended on three occasions. In 1946 subsections (a) and (c) underwent minor changes. In 1963 answers to interrogatories were added to the list of papers in 56(c) that a court is allowed to consider on a summary judgment motion. The last two sentences of 56(e) were added, describing the nonmovant's burden in opposing a motion. In 1987 the masculine pronouns in the text of the rule were replaced with gender-neutral terms.

# Chapter 3
# Identifying Issues of Fact

The principal issues that arise under Rule 56(c) are whether a *factual* dispute exists, whether the dispute is *material* to the outcome of the case, and whether the dispute is *genuine.* Depending on the record on which the motion is made, a court will not necessarily reach all of these issues in a given case. But the court must be prepared to address these issues if summary judgment law is to be properly administered.[41]

## General Principles

What is a "fact" for summary judgment purposes is neither intuitively obvious nor easily determined. The rule itself contains no definition or other guidance. But this is not unique to Rule 56. The distinction between fact and law has long bedeviled common-law courts. As the Supreme Court observed in *Pullman-Standard Co. v. Swint,* in a different context: "The Court has previously noted the vexing nature of the distinction between questions of fact and questions of law. . . . Nor do we yet know of any . . . rule or principle that will unerringly distinguish a factual finding from a legal conclusion."[42]

Although judicial opinions frequently characterize a particular matter as one of fact or one of law, purporting to distinguish categorically between the two, these characterizations rarely provide much guidance for future cases. They are generally made in the factual context of the particular case. When a court says, for example, that the definition of the relevant market is a question of fact, it may have reached that conclusion because it sees evidentiary disputes in the case that must be resolved to define the market. Conversely, a court may reach the opposite conclusion when it considers the question as

---

41. The interpretation and application of Rule 56 is a matter of federal law. Although the characterization of issues and the determination of materiality and of the sufficiency of the factual showing will often be intertwined with questions of state law, whether a trial is necessary is a matter of federal law. *See* Farmland Indus. v. Grain Bd. of Iraq, 904 F.2d 732, 736 n.7 (D.C. Cir. 1990) (and cases cited there).

42. 456 U.S. 273, 288 (1982).

presented open to only one reasonable answer, thus calling it a question of law (although a more precise characterization might be a "non-genuine" issue of fact).[43]

The presence or absence of an evidentiary dispute is not always apparent from a court's opinion in a summary judgment case. A careful parsing of a court's discussion may reveal the actual or assumed existence of a factual dispute. Often, however, the opinion is not informative. When a court is satisfied with the result it has reached, it may have little interest in spelling out its analysis so as to provide guidance and promote coherence in summary judgment law. The difficulty of determining the precise ratio decidendi of court opinions in this field complicates any attempt to develop a principled analysis of summary judgment law.

Another difficulty is the lack of any line of demarcation, let alone a bright line, between fact and law. Instead, there is a spectrum ranging from fact to law, in which a large continuum between the two extremes is occupied by mixed questions of law and fact and by questions of ultimate fact.

At one extreme of this spectrum lie so-called historical facts. A historical fact is a thing done, an action performed, or an event or occurrence. Some historical facts may be proved by direct evidence. Others, such as notice, intent, or other states of mind, are proved by inference from evidence of other facts. The resolution of disputes over historical facts or the inferences to be drawn from them is a jury function. A dispute over historical facts or inferences, if genuine and material within the meaning of Rule 56, precludes summary judgment.

At the other extreme of the spectrum lie issues of law. When the facts material to the application of a pure rule of law are undisputed, the application is a matter of law for the court, requiring no trial. For example, summary judgment is proper when undisputed facts establish that a requisite element of a claim or defense is lacking, as in *Celotex Corp. v. Catrett,* where the issue on summary judgment was whether plaintiff had adduced proof of exposure to products manufactured by defendant, an essential element of the claim. When there is no dispute over the sufficiency of evidence establishing the facts that control the application of a rule of law, summary judgment is the appropriate means of deciding the issue. Such issues include whether an

---

43. *See* the discussion of genuine disputes in Chapter 6.

action is barred by a statute of limitations,[44] by res judicata,[45] by collateral estoppel,[46] or by lack of standing[47] or jurisdiction.[48] They also include issues turning on statutory interpretation[49] and the evaluation of an administrative record,[50] such as whether the findings of an agency are supported by substantial evidence.[51]

When the application of a rule of law depends on the resolution of disputed historical facts, however, it becomes a mixed question of law and fact. Plaintiff's standing to sue, for example, may turn on activities of the plaintiff that are in dispute.[52] Whether the statute of limitations has run may depend on a dispute over when plaintiff received notice.[53] Such disputed facts normally preclude summary judgment.[54]

Mixed questions of law and fact arise in a variety of other forms. Normally, the legal questions presented are resolved by the court and the fact issues by the jury.[55] Contract disputes, though frequently questions of law, may present mixed questions;[56] when the court determines that a document is ambiguous, for example, the jury resolves evidentiary disputes such as what the parties intended. Consti-

---

44. *See, e.g.,* Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 125-29 (1st Cir. 1987).

45. *See, e.g.,* Springs v. First Nat'l Bank of Cut Bank, 835 F.2d 1293, 1295-96 (9th Cir. 1988).

46. *See, e.g.,* Ayers v. City of Richmond, 895 F.2d 1267, 1270-72 (9th Cir. 1990).

47. *See, e.g.,* Dellums v. U.S. Nuclear Regulatory Comm'n, 863 F.2d 968, 971 n.5 (D.C. Cir. 1988).

48. *See, e.g.,* Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 196-98 (2d Cir.), *cert. denied,* 111 S. Ct. 150 (1990).

49. *See, e.g.,* Edwards v. Aguillard, 482 U.S. 578 (1987).

50. *See, e.g., id.*

51. *See, e.g.,* Holley v. Seminole County School Dist., 755 F.2d 1492, 1499-1500 (11th Cir. 1985).

52. *See, e.g.,* Lujan v. National Wildlife Fed'n, 110 S. Ct. 3177, 3187-89 (1990).

53. *See, e.g.,* Durham v. Business Management Assocs., 847 F.2d 1505, 1509-10 (11th Cir. 1988).

54. Of course, summary judgment should not be denied simply on the strength of the nonmoving party's assertion of fact disputes. Such assertions should be put to the test to determine whether they raise a genuine and material issue sufficient to defeat summary judgment on the issue of law presented. *See* the discussion of material and genuine disputes in Chapters 5 and 6.

55. *See* Prosser and Keeton on the Law of Torts 236-37 (W. Keeton 5th ed. 1984). In such cases, special verdicts will often be used. *See* Fed. R. Civ. P. 49.

56. *See, e.g.,* Ransom v. U.S., 900 F.2d 242, 244 (Fed. Cir. 1990).

tutional issues, though generally questions of law, may be mixed questions when they turn on factual determinations.[57]

Although the terms are sometimes used interchangeably, it is useful to distinguish mixed questions of law and fact from questions of ultimate fact. Mixed questions generally require the resolution of disputes over historical fact. Ultimate facts present a different kind of "factual" inquiry, one involving a process that "implies the application of standards of law."[58] Like some historical facts, ultimate facts are derived by reasoning or inference from evidence, but, like issues of law, they incorporate legal principles or policies that give them independent legal significance. They often involve the *characterization* of historical facts, and their resolution is generally outcome-determinative.

Ultimate facts occupy a broad segment of the spectrum between fact and law. Where on that spectrum a particular ultimate fact belongs depends on whether it is predominantly factual or legal. For example, whether a defendant used due care in the operation of a vehicle[59] or was driving in the course of employment[60] or whether that person's acts were the proximate cause of plaintiff's injuries[61] are all questions of ultimate fact that are predominantly factual rather than legal and therefore clearly for the jury. Similarly, whether a person had reasonable cause,[62] acted within a reasonable time,[63] or can be charged with notice[64] are predominantly factual (though outcome-determinative) questions. The resolution of such questions turns on an assessment of human behavior and expectations within the com-

---

57. *Compare, e.g.,* Edwards v. Aguillard, 482 U.S. 578 (1987) *with* Foremaster v. City of St. George, 882 F.2d 1485 (10th Cir. 1989), *cert. denied,* 110 S. Ct. 1937 (1990). In *Edwards,* the determination whether a Louisiana statute violated the establishment clause of the Constitution depended on a finding of legislative intent, a matter in which the court has more expertise, so the decision was made by the court. In *Foremaster,* the determination whether a city's logo depicting the local Mormon temple violated the establishment clause turned on a determination of how a reasonable person would react in viewing the logo, and so was a question for the jury.

58. Baumgartner v. U.S., 322 U.S. 665, 671 (1944).

59. *See, e.g.,* Goosman v. Pyle, 206 F. Supp. 120, 124–28 (D. Md. 1962).

60. *See, e.g.,* Wilson v. Chicago, M., St. P. & P. R.R., 841 F.2d 1347, 1354–57 (8th Cir. 1988).

61. *See, e.g.,* Gregory v. City of Rogers, 921 F.2d 750, 757 (8th Cir. 1990).

62. *See, e.g.,* U.S. v. Warner, 855 F.2d 372, 374 (7th Cir. 1988).

63. *See, e.g.,* West Am. v. Aetna Casualty & Sur. Co., 915 F.2d 1181, 1184 (8th Cir. 1990).

64. *See, e.g.,* Century Indem. Co. v. Shakespeare, 74 F.2d 392, 394 (10th Cir. 1934).

mon experience of jurors. Concerning issues of this sort, traditionally resolved by juries, the Supreme Court said in 1873: "It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge."[65]

Near the opposite end of the spectrum lie those ultimate facts that, though nominally facts, have a high law content. Their resolution (in the absence of evidentiary disputes) turns on matters of law and policy and on technical issues underlying the legal scheme. The administration of the rules under which they arise benefits from consistency, uniformity, and predictability. Whether an instrument is a security,[66] whether a plaintiff is a public figure,[67] whether a publication is not copyrightable as historical,[68] whether an invention was reduced to practice,[69] and whether a carrier operated as a common carrier[70] are questions of ultimate fact calling for the interpretation and application of essentially legal standards.

Most of the difficulty is encountered in the middle range of the spectrum. Here considerations of public policy and individual justice overlap, making issues less susceptible to categorization. Although the decision involves the application of a legal (generally statutory) standard, the court must decide whether the context in which the question arises makes it more appropriate for decision by judge or by jury. For example, whether an employee whose duties bring him into contact with ocean-going vessels is a "seaman" within the meaning of the Jones Act is a question of ultimate fact because the finding has direct legal consequences, but in some circumstances it may be more appropriately decided by a jury.[71] A court faced with making such an allocation between judge and jury should not reach that issue until it

---

65. Railroad Co. v. Stout, 84 U.S. 657, 664 (1873).

66. *See, e.g.,* Schaafsma v. Morin Vt. Corp., 802 F.2d 629, 637 (2d Cir. 1986).

67. *See, e.g.,* Dameron v. Washington Magazine, 779 F.2d 736, 740 (D.C. Cir. 1985), *cert. denied,* 476 U.S. 1141 (1986).

68. *See, e.g.,* Hearn v. Meyer, 664 F. Supp. 832, 851 (S.D.N.Y. 1987).

69. *See, e.g.,* Barmag Barmer Maschinenfabrik AG v. Murata Mach., 731 F.2d 831, 837 (Fed. Cir. 1984).

70. *See, e.g.,* U.S. v. One Rockwell Int'l Commander, 754 F.2d 284, 287 (8th Cir. 1985).

71. *See, e.g.,* Gizoni v. S.W. Marine, 909 F.2d 385, 387–88 (9th Cir. 1990) (disputes over whether the ship was in navigation and whether the employee was actually a member of the ship's crew presented jury questions); *see also* text accompanying notes 88–89 (discussion of *McDermott Int'l v. Wilander*).

has determined whether historical facts material to the decision are in dispute. Thus, if a dispute exists over the terms or conditions of an employee's employment, summary judgment is generally inappropriate.[72] However, when the dispute is not over historical facts but over their legal significance, such as whether an employee's position should be characterized as "policy-making" for purposes of a claim under the civil rights laws, the issue may be appropriate for summary judgment.[73]

As noted, courts determining whether such a question should be treated as one of fact or law do not often find direct assistance in precedent. Not only do courts often fail to explicate reasoning on this aspect of summary judgment, but the question arises in the shadowy middle ground between fact and law where decisions may be too fact-driven to be entitled to much precedential weight. There are, however, a number of relevant factors and considerations that can provide useful guidance. Courts have generally used a functional test, assessing whether the question is more suitable for resolution by a court or a jury. The Supreme Court has endorsed such an inquiry in the allocation of functions between trial and appellate courts:

> [T]he appropriate methodology for distinguishing questions of fact from questions of law has been, to say the least, elusive.
> . . . Perhaps much of the difficulty in this area stems from the practical truth that the decision to label an issue a "question of law," a "question of fact," or a "mixed question of law and fact" is sometimes as much a matter of allocation as it is of analysis. At least in those instances in which Congress has not spoken and in which the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question.[74] (citations omitted)

As suggested above, the functional inquiry involves several factors, including whether the issue falls within the common experience of jurors, whether its resolution involves the kinds of decisions tradi-

---

72. *See, e.g.,* Heller v. Champion Int'l Corp., 891 F.2d 432, 435 (2d Cir. 1989).

73. *See, e.g.,* Horton v. Taylor, 767 F.2d 471, 478 (8th Cir. 1985).

74. Miller v. Fenton, 474 U.S. 104, 113–14 (1985). Implicit in such an allocation, of course, is also a judgment about the extent to which a determination at trial should be subject to review on appeal. Issues allocated to jury determination are far less susceptible to review than those decided by the court.

tionally entrusted to jurors, and whether a judgment of peers is desirable. Illustrative is a decision under the Buy American Act holding that the determination whether certain hacksaw blades were "domestic end products," exempt under the Act though manufactured from imported materials, presented a jury question.[75] To qualify, the blades had to be "manufactured in the United States substantially all from articles, materials or supplies . . . produced, or manufactured . . . in the United States." In holding the application of this standard to be a jury question, the court stated that it did "not mean to . . . reject the well established principle that application of standards set by statutes, regulations and precedent to undisputed facts will normally give rise to a 'question of law' for the court. That principle ensures that the law is applied in a uniform and predictable fashion."[76] The decision of that case, however, required an evaluation of the entire manufacturing process of the blades to arrive at a determination, on the peculiar facts of that case, whether it resulted in a domestic end product. This involved "a fact-intensive, case-by-case task of choosing between reasonable, conflicting inferences based on common sense judgment."[77] As a case involving complex facts and vague and individualized rules, it was held to fall on the fact side of the spectrum.

Where, on the other hand, a decision is likely to have significant precedential impact on the resolution of an issue imbued with the need for consistency and reasoned resolution, the balance tilts toward determination by the judge rather than the jury. The Supreme Court has stated, albeit in the context of allocation between trial and appellate courts, that "[r]egarding certain largely factual questions in some areas of the law, the stakes—in terms of impact on future cases and future conduct—are too great to entrust them finally to the judgment of the trier of fact."[78] If a decision will immediately affect a class of persons or groups, making it in the nature of judicial rule making, it generally should be treated as a question of law. For example, the question of whether homosexuals constitute a suspect or quasi-suspect class for purposes of the equal protection clause creates a widely

---

75. U.S. v. Rule Indus., 878 F.2d 535 (1st Cir. 1989).
76. *Id.* at 542.
77. *Id.*
78. Bose Corp. v. Consumers Union of U.S., 466 U.S. 485, 501 n.17 (1984).

applicable rule of law and should be decided by the court.[79] Similarly, whether transportation of explosives on the highways constitutes ultrahazardous activity for purposes of imposing strict liability is an issue for the court to decide, but whether a particular driver's conduct in driving a truck loaded with explosives at speeds barely within posted limits is a violation is a question for the jury.[80] The former has direct ramifications for many drivers and for society at large, whereas the latter is a fact-specific inquiry primarily affecting the one driver.[81]

The policy implications surrounding an issue may make summary judgment the preferred means of resolution. In *Anderson v. Creighton*, for example, the Supreme Court ruled that whether a government agent was entitled to qualified immunity could be decided as a matter of law, even though the decision turns on a determination whether a reasonable person in the defendant's position could have believed his or her actions to have been lawful.[82] The Court explained that the purpose of the rule is to protect government agents from having to submit to pretrial discovery, a public policy concern better addressed by courts than juries.[83] Similarly, although probable cause for arrest and reasonableness of force used are normally jury questions,[84] where there are no material disputes over what transpired and the case turns on a policy determination, courts may resolve these questions on summary judgment.[85] Causation, generally a jury issue, has been decided by a court in the context of a standing

---

79. *See, e.g.,* High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563 (9th Cir. 1990).

80. *See* Keeton, *Legislative Facts and Similar Things: Deciding Disputed Premise Facts,* 73 Minn. L. Rev. 1, 20 (1988).

81. *See also* Columbia Pictures Indus. v. Professional Real Estate Investors, 866 F.2d 278 (9th Cir. 1989) (court decides as a matter of law that the renting of movies by a hotel to its patrons does not violate the Copyright Act, an evaluative question that arguably would be proper for a jury except that it potentially affects a large segment of the public).

82. Anderson v. Creighton, 483 U.S. 635 (1987). *But see* Pleasant v. Lovell, 876 F.2d 787, 798–800 (10th Cir. 1989) (question of qualified immunity turns upon a jury determination whether the defendants conspired to deprive plaintiffs of their First Amendment rights).

83. *See also* Keeton, *Creative Continuity in the Law of Torts,* 75 Harv. L. Rev. 463, 503–05 (1962) (jurors are likely to disregard the law in order to achieve certain results, and thus should not always be allowed to decide questions with far-reaching results).

84. *See, e.g.,* Lynch v. Anderson, 880 F.2d 1003, 1004–05 (8th Cir. 1989); Blankenship v. Kerr County, 878 F.2d 893, 895–96 (5th Cir. 1989).

85. *See* Collins v. Nagle, 892 F.2d 489, 494–95 (6th Cir. 1989); Gramenos v. Jewel Co., 797 F.2d 432, 438 (7th Cir. 1986), *cert. denied,* 481 U.S. 1028 (1987).

challenge as a mixed question primarily involving policy.[86] And such antitrust policy issues as whether the exchange of price-related information or the maintenance of industry-wide licensing agreements constituted unlawful conspiracies have, in the absence of evidentiary disputes, been decided on summary judgment.[87]

Courts have not always employed or at least explicated the kind of reasoning discussed in this section. There has been, to begin with, a strong tendency to let all issues go to the jury without discriminating among them. Judges may see this not only as conventional, but also as convenient, because it reduces judicial effort and the risk of reversal. Moreover, judges are less inclined to write in detail about the disposition of procedural issues such as summary judgment. Nevertheless, the conscientious judge confronted with a motion for summary judgment, concerned not only with arriving at a correct and well-grounded decision but also with the sound administration of justice, will strive for a principled resolution of the court-versus-jury issue. The analysis in this section offers guidance for that task. The following section illustrates the application of this analysis in a range of decided cases.

## Applications

In this section, we explore courts' characterization of various disputes as questions of fact, law, ultimate fact, or mixed questions of fact and law, and their determination whether the disputes were appropriate for resolution by summary judgment. The sampling of the case law is illustrative rather than comprehensive, including only a small portion of all summary judgment cases. We have selected cases in which the court explicitly characterized the dispute or where the characterization is at least apparent from the opinion. In some of the cases, the court not only explicitly characterized the dispute but also explained the basis for its determination that the issue was better resolved by the court or jury. In other cases, we derive the court's reasoning from the context of the decision.

---

86. Dellums v. U.S. Nuclear Regulatory Comm'n, 863 F.2d 968, 971 n.5 (D.C. Cir. 1988) (involving causation or "redressability," the likelihood that plaintiff's alleged injuries would be redressed by a favorable decision).

87. *See, e.g.,* U.S. v. Container Corp., 393 U.S. 333 (1969); U.S. v. Gypsum Co., 340 U.S. 76 (1950).

Whether a person is a seaman for the purpose of the Jones Act has traditionally been considered a question of fact for the jury.[88] However, the Supreme Court recently classified it as a mixed question of law and fact that may, in appropriate circumstances, be resolved on summary judgment:

> [T]he question of who is a "member of crew," and therefore who is a "seaman," is better characterized as a mixed question of law and fact. When the underlying facts are established, and the rule of law is undisputed, the issue is whether the facts meet the statutory standard. . . .
>
> It is for the court to define the statutory standard. "Member of a crew" and "seaman" are statutory terms; their interpretation is a question of law. The jury finds the facts and, in these cases, applies the legal standard, but the court must not abdicate its duty to determine if there is a reasonable basis to support the jury's conclusion. If reasonable persons, applying the proper legal standard, could differ as to whether the employee was a "member of a crew," it is a question for the jury. . . . The inquiry into seaman status is of necessity fact-specific; it will depend on the nature of the vessel, and the employee's precise relation to it. . . . Nonetheless, summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.[89]

In a recent Ninth Circuit admiralty case,[90] the appellate court found that the trial court had improperly resolved several issues by summary judgment. Whether a provision in defendant's marine insurance policy constituted a warranty depended on the intentions of the parties, raising a question of fact that should have gone to trial.[91] Whether a broker was an "agent" of the insurer depended on what he was doing for whom; this too presented a factual issue, subject to a genuine dispute, and thus precluded summary judgment.[92] Finally, whether the insurer was estopped from asserting a breach of warranty by the insured because it had not promptly denied coverage upon learning of the alleged breach depended on when the insurer received notice of the insured's claim, a question of fact precluding summary

---

88. *See, e.g.,* Gizoni v. S.W. Marine, 909 F.2d 385, 387 (9th Cir. 1990).
89. McDermott Int'l v. Wilander, 111 S. Ct. 807, 818 (1991).
90. Suydam v. Reed Stenhouse of Wash., 820 F.2d 1506 (9th Cir. 1987).
91. *Id.* at 1508–09.
92. *Id.* at 1510.

judgment.[93] All these issues involved disputes over historical facts, not appropriate for summary judgment.

*Antitrust*

The Eighth Circuit recently held that whether the transfer of a product from a parent corporation to its wholly owned subsidiary was a "sale" subject to the Robinson–Patman Act is a question of law, and therefore affirmed summary judgment for defendants.[94] Antitrust policy considerations, and desire for coherence in the law, lay behind the court's decision to treat this as a matter of law rather than a case-by-case factual determination:

> The relationship between "buyer" and "seller" must be considered, for the Robinson–Patman Act, like the Sherman Act, is designed to protect competition, and it should not reach activity that has no economic consequence.
> . . . [I]t would, in our opinion, be completely anomalous to hold, on the one hand, that the cooperative is a single enterprise which cannot conspire with itself under the Sherman Act, and, on the other hand, that the same single enterprise cannot enjoy the fruits of vertical integration by transferring goods between its constituent units at a "price" below what it charges outsiders.[95]

Most courts considering the question have held that a dispute over the definition of the relevant product market is a "factual inquiry for the jury."[96] But it is critical to determine whether the dispute is over historical facts or matters of policy. Thus, the Second Circuit recently resolved a dispute over the relevant product market by summary judgment.[97] The plaintiff's claim that the relevant market comprised "general interest daily newspapers directed primarily to upscale readers" was rejected on a summary judgment motion because "[plaintiff's] market definition is implausible as a theoretical matter."[98] The court found the proposed market definition far too

---

93 *Id.* at 1510–11.

94. City of Mount Pleasant v. Associated Elec. Co-op, 838 F.2d 268 (8th Cir. 1988).

95. *Id.* at 278–79.

96. Thurman Indus. v. Pay 'N Pak Stores, 875 F.2d 1369, 1374 (9th Cir. 1989). *See also* Stone v. William Beaumont Hosp., 782 F.2d 609, 615 n.5 (6th Cir. 1986); General Indus. Corp. v. Hartz Mountain Corp., 810 F.2d 795, 805 (8th Cir. 1987).

97. Belfiore v. New York Times Co., 826 F.2d 177 (2d Cir. 1987), *cert. denied*, 484 U.S. 1067 (1988).

98. *Id.* at 180.

narrow to reflect commercial realities.[99] This determination was supported by case law and involved antitrust principles more familiar to a court than to a jury.

The Ninth Circuit, one of the courts to hold that a dispute over product market is a jury question, has held that the geographical boundaries of a market present a question of law.[100] The court did not elaborate, but its analysis of the actual boundaries suggests why it regarded this as a legal question unsuited for a jury. The boundaries dispute involved esoteric cost–benefit analyses, concerning not only the products currently produced by the parties but also products they might yet produce. The inquiry went far beyond the straightforward finding of historical facts or commonsense judgments for which juries are best suited.

Whether defendants had the "capacity to conspire" was characterized by the Second Circuit as a mixed question of law and fact that "requires a thorough application of the [legal] principles to the facts."[101] The court acknowledged that the district court "correctly noted that capacity to conspire is determined by the economic realities of the alleged coconspirators' relationship, and accurately recited the applicable rationale and underlying elements we articulated in [an earlier case]."[102] However, this legal analysis does not proceed in a vacuum; it must be applied to the facts of the given case. The Second Circuit noted several facts that needed to be ascertained: "the number and nature of the agent's functions, whether the agent acts in its own interests or in the supplier's, and whether the alleged coconspirators are in reality under the control of a single individual or entity."[103] (Genuine disputes over such matters would have precluded summary judgment, but because plaintiff lacked evidence of a conspiracy, summary judgment was properly granted.[104])

The Third Circuit has implicitly agreed that capacity to conspire presents a mixed question of law and fact, with the court resolving le-

---

99. *Id.*

100. R. C. Dick v. Thermogenics, 890 F.2d 139, 143 (9th Cir. 1989).

101. Belfiore v. New York Times Co., 826 F.2d 177, 182 (2d Cir. 1987), *cert. denied,* 484 U.S. 1067 (1988).

102. *Id.*

103. *Id.* (citations omitted).

104. *Id.* at 182–83.

gal questions in its charge to the jury, which then makes the necessary factual determinations.[105]

Whether actions by defendants constituted an "unreasonable" restraint of trade was implicitly treated by the Ninth Circuit as a question of law.[106] Thus, where there was no dispute over the actual conduct of defendants—making its facilities available for only a single trade show and leasing it to the highest bidder—summary judgment for defendants was appropriate because the trial court found that it did not constitute an unreasonable restraint on trade.[107]

In a case involving a movie theater's claim that distributors and competitor theaters conspired to keep it from obtaining licenses to show movies, the court reversed a summary judgment, holding that the following disputes were factual in nature and should have gone to trial: whether bids from various theaters were "superior" to those offered by plaintiff; whether one of plaintiff's competitors possessed monopoly power; whether monopoly power, if any, was "willfully" acquired through predatory or anticompetitive conduct; and whether plaintiff suffered a causal antitrust injury.[108]

## Civil Rights and Constitutional Law

Whether a police arrest was reasonable under the circumstances presented a question of ultimate fact, fraught with policy considerations transcending the particular case.[109]  Therefore, the Seventh Circuit

---

105. Weiss v. York Hosp., 745 F.2d 786, 813 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985). The court recounted the trial court's approach with approval:

> The district court concluded, and instructed the jury, that the medical staff was an "unincorporated division" of the hospital, and as such the two were legally a "single entity" incapable of conspiring. In addition, the court instructed the jury that the hospital, as a corporation, could act only through its "officers and agents," and that in proving that York had so acted, the plaintiffs had not shown the existence of a "contract, combination . . . or conspiracy." The court also instructed the jury, however, that if they found that some or all of the individual defendants took action against the plaintiffs "in whole or in part in their individual capacities . . . then such individual-named defendants are, under the law . . . legally capable of conspiring with York Hospital. . . ." (footnote omitted)

*Id.*

106. Ferguson v. Greater Pocatello Chamber of Commerce, 848 F.2d 976 (9th Cir. 1988).

107. *Id.* at 982.

108. Movie 1 & 2 v. United Artists Communications, 909 F.2d 1245 (9th Cir. 1990).

109. Gramenos v. Jewel Co., 797 F.2d 432 (7th Cir. 1986), *cert. denied*, 481 U.S. 1028 (1987).

held, it was best decided by the court rather than a jury, and summary judgment was properly granted. The court said:

> [We cannot] conclude that 195 years after the fourth amendment was added to the Constitution there must be a jury trial every time the police arrest a person accused by a store guard who says he saw the person shoplifting, a trial in which the jury will decide whether the police used the right investigative techniques. Each jury will have its own view of appropriate investigation, and the burden of trials will be a substantial tax on police for the privilege of doing their already difficult jobs.[110]

Whether a district is "safe" and therefore not susceptible to challenge under section 2 of the Voting Rights Act presents a question of fact that should have precluded summary judgment.[111] The trial court had held that, as a matter of law, where blacks constituted sixty percent of the voting age population, the district was immune from a section 2 suit. The Fifth Circuit reversed. A safe district is one where blacks are likely to elect the representatives of their choice, and whether such an election was indeed likely in the challenged district presented a fact issue for the jury.[112]

Whether the Central Intelligence Agency had a blanket policy of denying security clearances to homosexuals should not have been decided on summary judgment.[113] This was a question of historical fact within the province of a jury. Whether such a blanket policy, if it existed, violates the equal protection clause would present a question of law for the court.[114]

In *Horton v. Taylor*,[115] the Eighth Circuit provided a thoughtful discussion concerning the proper characterization of a dispute over whether a government employee is in a policy-making position for purposes of *Branti v. Finkel*[116] analysis. The court noted that such a

---

110. *Id.* at 438.

111. Monroe v. City of Woodville, 819 F.2d 507 (5th Cir. 1987), *cert. denied*, 484 U.S. 1042 (1988).

112. *Id.* at 511.

113. Dubbs v. CIA, 866 F.2d 1114, 1118–19 (9th Cir. 1989).

114. *Id.* at 1119.

115. 767 F.2d at 471.

116. 445 U.S. 507 (1980). In the *Branti* line of cases, the Court established criteria for determining which government employees may be replaced because of their political affiliations. The analysis often turns on whether the position involves making policy.

dispute often poses a mixed question of law and fact, involving both factual determinations concerning the nature of the employee's position and application of the legal standard mandated by Supreme Court law. Under ordinary circumstances, the court may apply the legal standard after the jury has done the necessary fact-finding. As the court stated, "In many, perhaps most, cases the dispute will lie over the nature of the specific job involved, and such factual determinations will resolve the case."[117] Therefore, summary judgment will often be inappropriate in cases of this sort.

However, the case at hand presented a different situation. The plaintiffs discharged because of their political affiliations were road-grader operators for the county. Given the undisputed nature of the jobs, summary judgment was appropriate:

> Here, however, the nonpolicymaking, nonconfidential nature of the plaintiffs' jobs as such is clear from the record, as is the irrelevance of party affiliation to the effective operation of a road-grading machine. The district court's conclusions depend not on factual findings regarding particular jobs but, rather, on the general implications of the plaintiffs' public employment within the *Elrod-Branti* constitutional framework . . . . Thus, in this case we believe that we properly may rule on the issue as a matter of law.[118]

Whether an allegedly defamatory statement was false was treated by the Ninth Circuit as a question of fact.[119] Because plaintiff would have borne the burden of proof at trial as to falsity, however, summary judgment for defendant was appropriate where plaintiff's evidence "at best, created ambiguity" as to the truth or falsity of defendant's remarks.[120] Whether a statement addresses a matter of public concern for purposes of a defamation suit was held to be a question of law properly decided by the court.[121]

While the court did not elaborate on why these issues presented questions of law or fact, its classification comports with the analysis in the previous section. Whether a statement is false is a question of historical fact, requiring the kinds of credibility determinations and weighing of evidence suitable for juries. By contrast, the question of

---

117. Horton v. Taylor, 767 F.2d 471, 478 (8th Cir. 1985).
118. *Id.*
119. Unelko Corp. v. Rooney, 912 F.2d 1049 (9th Cir. 1990).
120. *Id.* at 1057.
121. *Id.* at 1056.

what constitutes a matter of public concern involves questions of public policy and First Amendment jurisprudence better resolved by a court.

## Contracts

Whether the phrase "of motor fuel" as used in the Petroleum Marketing Practices Act applies only to branded motor fuel or to both branded and unbranded motor fuel is a matter of law properly decided on summary judgment.[122] The question involved pure statutory interpretation better handled by a court than a jury.

Whether a franchisor breached an implied covenant of good faith in its relationship with a franchisee was treated as a matter of law properly decided on summary judgment.[123] The alleged bad faith involved Texaco's franchising other stations in the vicinity of one of plaintiff's stations. Under governing Oregon law, a "good faith" clause requires parties to adhere to the "reasonable expectations" at the time a contract is made. Plaintiff offered no evidence that either party expected Texaco to remove the preexisting franchises, but urged the court to adopt a broader reading of the "good faith" clause to require Texaco to remove this preexisting condition. The case presented pure statutory interpretation in the face of undisputed facts, with the appropriate inquiry drawing on precedent and setting a standard for future cases.

In a contract dispute concerning factual disagreement over whether the agreed terms were met, not simply a dispute over interpretation of the contract, summary judgment was improperly granted.[124] The contract between an employee trust fund and an insurance company provided for coverage against claims after the expiration of the policy only if the wrongful act occurred during the policy period and the insured gave the insurer written notice of the wrongful acts during that time. After the policy had expired, suit for wrongful acts was brought against the fund, and the insurer refused to provide representation and coverage. The fund argued that it had given notice during the policy period by submitting a renewal application, a Department of Labor form, and an internal audit, all of which contained

---

122. Pride v. Exxon Corp., 911 F.2d 251, 253–56 (9th Cir. 1990).
123. *Id.* at 256.
124. United Ass'n Local 38 Pension Trust Fund v. Aetna Casualty & Sur. Co., 790 F.2d 1428 (9th Cir. 1986).

information bearing on the alleged wrongful acts. The insurance company argued that summary judgment was proper because "the language of the policy was clear and unambiguous and . . . the determination of ambiguity was a question of law."[125] The Ninth Circuit reversed the summary judgment, stating:

> If the interpretation of the language of the contract were the sole issue, the court might be able to resolve the matter on summary judgment for only questions of law would be in controversy. . . . [But] [w]hether the renewal application together with the [Department of Labor] form and the audit complied with the terms of Clause VII so as to constitute notice is a material issue of fact . . . . The specific issue here is the meaning or interpretation to be given the material furnished to defendants by plaintiffs. To put it slightly differently, what should the insurance company have understood from the information it was given.[126]

Whether a contract existed constitutes a mixed question of law and fact,[127] involving the application of contract law to the particular documents or circumstances that allegedly gave rise to a contract. Where there were no disputes over the facts, and the case turned on the application of the law of contract formation, summary judgment was appropriate.[128]

## Corporations

Where suit was brought against a successor corporation for defective products manufactured and sold by its predecessor, some of plaintiff's theories presented factual disputes that precluded summary resolution; others posed purely legal questions that were properly decided by the trial court.[129] The claim that defendant expressly or impliedly assumed its predecessor's liabilities raised both questions of law (contract interpretation) and fact (involving conduct of the parties). In light of disputes over the latter, summary judgment was inappropriate.[130] Plaintiff's claim that defendant breached its independent duty to warn also raised questions of law (concerning when

---

125. *Id.* at 1430.
126. *Id.*
127. Ransom v. U.S., 900 F.2d 242, 244. (Fed. Cir. 1990)
128. *Id.*
129. Florom v. Elliott Mfg., 867 F.2d 570 (10th Cir. 1989).
130. *Id.* at 575–76.

such a duty arises) and fact (because the duty can arise from the relationship between the successor and the predecessor's customers), and summary judgment was inappropriate.[131] However, plaintiff's claims that defendant was liable because it continued the same "product line" as its predecessor and constituted a "continuity of enterprise" both involved only matters of law. These claims presented no factual disputes; they required application of the relevant legal doctrines to the undisputed facts. Therefore, they were properly decided on summary judgment.[132]

*Insurance*

The materiality of a nondisclosure[133] is ordinarily a jury question.[134] However, the Second Circuit held that if on undisputed facts a jury could reach only one possible outcome, the question of materiality should be considered a matter of law resolvable on summary judgment.[135] The insured's failure to disclose that a previous insurer had voided its coverage of the insured's shipment because it suspected that the shipment was highly overvalued was clearly material. Therefore, summary judgment was properly granted to the insurer that had refused his claim.[136]

The reasonableness of an insurance company's policies or of its actions on a particular occasion is normally a factual issue requiring a jury determination.[137] However, "reasonableness becomes a question of law appropriate for determination on motion for summary judgment when only one conclusion about the conduct's reasonableness is possible."[138] Where the insurance company denied the insured's claim because he refused to submit to questioning under oath as required by the policy, both the policy itself and the company's ef-

---

131. *Id.* at 576–77.

132. *Id.* at 577–81.

133. Here, "materiality" refers not to whether an issue is material to a cause of action but to whether the nondisclosure by an insured was material; that is, whether it might reasonably have led the insurer not to offer the coverage.

134. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 14 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987).

135. *Id.* at 14.

136. *Id.*

137. West v. State Farm Ins. Co., 868 F.2d 348, 350 (9th Cir. 1989).

138. *Id.* at 351.

forts to enforce it were unquestionably reasonable, so summary judgment was appropriate.[139]

An insurance company refused to defend or indemnify an insured against a claim for child molestation.[140] His policy did not provide coverage for bodily injury that he "expected or intended." The trial court granted summary judgment for the insurer, holding that the insured's actions were willful as a matter of law. The Ninth Circuit reversed, citing evidence that the insured intended no harm and holding that the presence or absence of mens rea posed a factual dispute that should have been left for the jury to resolve.[141]

## Intellectual Property

The precise scope and nature of a patent claim presents a mixed question of law and fact.[142] Or, as one court put it, "claim interpretation is ultimately a question of law, but resolution of that question turns in significant part on underlying facts."[143] Where the question was whether the omission of certain words in a reissue claim served to broaden the scope of the patent, disagreements over "the specification, the prosecution history, and the alleged industry practice[s]"[144] rendered summary judgment inappropriate.

Whether a patent has been infringed presents a question of ultimate fact, with "the ultimate finding of infringement"[145] resting on factual determinations, such as the likelihood that a purchaser would be deceived. In the absence of a factual dispute, the issue may be decided on summary judgment.[146]

Whether a patent is invalid because the invention would have been obvious to people in the art presents a mixed question of law and fact: "the ultimate question is one of law" but is "based on . . . factual inquiries,"[147] such as the differences between the prior art and the

---

139. *Id.* at 351–52.
140. State Farm Fire & Casualty Co. v. Estate of Jenner, 856 F.2d 1359 (9th Cir. 1988).
141. *Id.* at 1364–65.
142. Tillotson, Ltd. v. Walbro Corp., 831 F.2d 1033, 1039 (Fed. Cir. 1987).
143. *Id.*
144. *Id.*
145. Avia Group Int'l v. L.A. Gear Cal., 853 F.2d 1557, 1565 (Fed. Cir. 1988).
146. *Id.*
147. Custom Accessories v. Jeffrey-Allan Indus., 807 F.2d 955, 958 (Fed. Cir. 1986).

claim at issue. When there are no disputes over the relevant facts, summary judgment is appropriate.[148]

Whether a copyrighted work was performed "publicly" for purposes of 17 U.S.C. § 106 was properly decided on summary judgment (no fact dispute being asserted) as a question of policy and statutory interpretation.[149]

Whether two works have "substantial similarity" for purposes of copyright infringement is a question of fact inappropriate for summary judgment as long as reasonable minds could differ.[150] The Ninth Circuit used a two-part test for determining substantial similarity: the "extrinsic" test, concerning objective comparison of the elements (plot, theme, dialogue, and so on) in the two works, and the "intrinsic" test, involving a subjective impression of overall similarity. The court announced the rule that whenever there is a triable issue as to the extrinsic test, summary judgment is inappropriate. The court stated that "[t]o conclude otherwise would allow a court to base a grant of summary judgment on a purely subjective determination of similarity,"[151] and thus usurp the jury's role.

*Labor*

Whether an employer violated the overtime provisions of the Fair Labor Standards Act required credibility determinations inappropriate for summary judgment.[152] The Secretary of Labor brought an action alleging violations over a two-year period and moved for summary judgment. The motion included photocopies of defendant's payroll records, showing that for a two-week period the defendant failed to make proper overtime payments. Defendant's opposition included an affidavit asserting that he made appropriate payments throughout the two-year period with the exception of the two weeks during which the government investigated him. (He blamed the lapse on the mistaken advice of an accountant.) The district court found this con-

---

148. Constant v. Advanced Micro-Devices, 848 F.2d 1560, 1572 (Fed. Cir.), *cert. denied*, 488 U.S. 892 (1988).

149. Columbia Pictures Indus. v. Professional Real Estate Investors, 866 F.2d 278 (9th Cir. 1989).

150. Shaw v. Lindheim, 908 F.2d 531, 533 (9th Cir. 1990).

151. *Id.* at 537. However, the Ninth Circuit subsequently clarified that this holding is limited to literary works. Pasillas v. McDonald's Corp., 927 F.2d 440 (9th Cir. 1991).

152. McLaughlin v. Liu, 849 F.2d 1205 (9th Cir. 1988).

tention "implausible" and granted summary judgment to the Secretary.

The Ninth Circuit reversed because credibility determinations are inappropriate at the summary judgment stage, even if the trial court regards the claims in an affidavit as implausible. The court noted that *Matsushita's* holding concerning the appropriateness of summary judgment in the face of "implausible" claims concerns only inferences from circumstantial evidence, not evaluations of the credibility of direct testimony.[153]

Whether an employer's denial of benefits to his employee under an ERISA disability plan was proper was appropriately decided on summary judgment where the case turned entirely on interpretation of the plan.[154] Similarly, a denial of benefits under ERISA severance and retirement plans was properly decided on summary judgment where only interpretation of the plans was involved.[155]

Whether a collective bargaining agreement required an employer to arbitrate a dispute with a union was properly decided on summary judgment where it involved interpreting the agreement and applying principles of labor law.[156]

*Limitations*

In an action against a labor union for breach of the duty of fair representation,[157] deciding whether an employee's action was time-barred required determining when the employee knew her grievance was denied (or should have known had she exercised due diligence). Because this factual matter was disputed, the trial court erred in granting summary judgment for defendant.[158]

Similarly, in a securities law action,[159] whether plaintiff's claim was time-barred depended on when plaintiff discovered the alleged violations (or would have discovered them by exercising reasonable diligence). This presented a question of fact that precluded summary judgment.[160] When plaintiff actually discovered the violations was an

---

153. *Id.* at 1206–08. *See* note 279.
154. Jordan v. Cameron Iron Works, 900 F.2d 53, 55–58 (5th Cir. 1990).
155. Johnson v. Enron Corp., 906 F.2d 1234, 1239–40 (8th Cir. 1990).
156. International Union v. Young Radiator Co., 904 F.2d 9, 10 (7th Cir. 1990).
157. Hersh v. Allen Prods. Co., 789 F.2d 230 (3d Cir. 1986).
158. *Id.* at 232–34.
159. Durham v. Business Management Assocs., 847 F.2d 1505 (11th Cir. 1988).
160. *Id.* at 1509–10.

issue of historical fact for the jury. When plaintiff should have discovered the violations falls within the common experience of jurors.

Whether plaintiff's untimely filing of his retaliatory discharge claim should be excused under the equitable estoppel doctrine in light of alleged threats of retaliation by defendant presented an issue of fact: whether plaintiff's failure to file a timely claim did indeed result from defendant's coercion.[161] In this particular case, plaintiff raised insufficient evidence to create a triable issue; summary judgment was properly granted.[162]

### Personal Injury and Products Liability

Whether a store customer assumed the risk when she stepped on a slippery floor was the "type of inquiry [that] is a textbook example 'of an issue of fact' inappropriate for determining through summary judgment."[163] The trial court erred in finding as a matter of law that the customer had assumed the risk.[164] This issue falls squarely within the experience of most jurors and has traditionally been entrusted to them. The jury's determination involves primarily common sense and knowledge of human affairs.

By contrast, the propriety of imposing strict liability on a manufacturer for the defective design of a product resulting from a substantial modification by the distributor is a question of law, properly decided by the court on summary judgment.[165] This determination is assisted by precedent and has implications for society at large.

### Securities Fraud

Whether defendant could be held personally liable for the acts of his corporation as a "controlling person" or "aider and abetter" was appropriately resolved on summary judgment.[166] Because, under the law of the Ninth Circuit, a corporate officer must personally participate in the alleged misconduct in order to be liable under these causes of action, and plaintiffs did not allege defendant's direct involvement (and defendant denied it), there was no triable issue. All that was left

---

161. Felty v. Graves-Humphreys Co., 818 F.2d 1126 (4th Cir. 1987).
162. *Id.* at 1130.
163. Didier v. J. C. Penney Co., 868 F.2d 276, 281 (8th Cir. 1989).
164. *Id.*
165. Trevino v. Yamaha Motor Corp., 882 F.2d 182, 184 (5th Cir. 1989).
166. Orloff v. Allman, 819 F.2d 904 (9th Cir. 1987).

was the legal determination that, even accepting plaintiffs' allegations as true, they could not establish liability.[167] Thus, summary judgment was appropriate.[168]

Whether alleged misrepresentations or omissions in a proxy statement are "material," i.e., would likely have affected the decision of reasonable shareholders, is generally a jury question.[169] However, in the rare case when "reasonable minds cannot differ . . . the issue of materiality [is] appropriately . . . resolved as a matter of law by summary judgment."[170]

## Torts

Whether an airline's policy forbidding the transfer of "frequent flier" coupons violated the rights of a company that brokered such coupons raised legal issues appropriately resolved by summary judgment but also factual disputes that should have gone to trial.[171]

The airline adopted a tariff restricting use of the coupons to persons who had "earned" them, and sought a declaratory judgment that the tariff was reasonable; the broker sought a declaratory judgment that the policy was an unreasonable restraint on property. The trial court issued a declaratory judgment that the tariff was reasonable, but the Ninth Circuit found that this question of ultimate fact could not be decided without a full factual record. The court nevertheless affirmed the grant of summary judgment on this cause of action, determining that the coupons were a contractual item rather than "property" and thus the broker's claim of unreasonable restriction on the alienation of property was inapposite. The court treated this determination as a pure matter of law.[172]

The trial court had also granted summary judgment for the airline on a claim of tortious interference, despite the broker's affirmative

---

167. *Id.* at 907.

168. This case underscores the interplay between law and facts in the summary judgment context. On the identical facts, summary judgment would have been inappropriate in those circuits where one may be a "controlling person" even without direct participation. *See, e.g.,* Metge v. Baehler, 762 F.2d 621, 632 (8th Cir. 1985), *cert. denied,* 474 U.S. 1057 (1986). In those circuits, one may be liable as a controlling person if one was in a position to control the transaction. Good faith and lack of participation are affirmative defenses.

169. Berg v. First Am. Bankshares, 796 F.2d 489, 495 (D.C. Cir. 1986).

170. *Id.*

171. Transworld Airlines v. American Coupon Exch., 913 F.2d 676 (9th Cir. 1990).

172. *Id.* at 686–88.

defenses of justification, "unclean hands," and laches. The unclean hands defense involved the application of a legal concept to undisputed facts (concerning the airline's having tolerated the brokering of its coupons for some time before adopting the tariff). Therefore, it was properly decided on summary judgment.[173] The court noted that the defense of privilege or justification generally hinges on factual determinations, but because the broker had failed to adduce any evidence, summary judgment was appropriate.[174] However, the court held that the defense of equitable estoppel turned on a factual inquiry best decided by a jury. Because there was a genuine dispute over whether the broker had reasonably relied on the airline's seeming acquiescence in the brokering of the coupons, summary judgment was inappropriate.[175]

Whether the Navy violated the Privacy Act by submitting documents embarrassing to plaintiff in a Claims Court proceeding was properly decided on summary judgment.[176] Although disputes over intent or willfulness usually require trial, they may be resolved by summary judgment if there is no disagreement over the events that transpired and no reasonable jury could reach a conclusion in favor of the nonmoving party.[177] Here, the Navy's submissions were made in response to similar submissions by plaintiff and were permitted by explicit order of the Claims Court. Under the circumstances, no reasonable jury could find the kind of "willful" misconduct necessary for a violation of the Privacy Act.[178]

Whether the Bureau of Alcohol, Tobacco and Firearms owed a duty to the general public to place warnings on explosive devices that it distributed was a question of law properly decided by summary judgment.[179] The issue of what duty a defendant owes a plaintiff, involving interpretation of the common law or statutes, is usually treated as a question of law.[180] Here, there was an even stronger case for treating it as such: the duty owed by a government agency to the general public involves important public policy questions.

---

173. *Id.* at 694.
174. *Id.*
175. *Id.* at 696–97.
176. Laningham v. U.S. Navy, 813 F.2d 1236 (D.C. Cir. 1987).
177. *Id.* at 1242.
178. *Id.* at 1242–44.
179. Tindall v. U.S., 901 F.2d 53, 56 (5th Cir. 1990).
180. *See* note 55.

Whether an airline was justified in refusing to permit a passenger to deplane or was guilty of false imprisonment was properly decided on summary judgment where there was no disagreement about what transpired.[181] This question of ultimate fact implicated public policy concerns better addressed by the court than a jury:

> Abourezk argues that the detention became unlawful once he revoked his consent to remain a passenger, and that the airline must demonstrate a reason why it was *unable* to deplane Abourezk once he had revoked his consent to remain aboard the plane.
>
> The utter impracticality of such an approach is manifest. Although this notion of withdrawing consent might work in many other false imprisonment contexts, the special concerns that attend the incredibly busy and dangerous business of common-carrier air transport requires the sort of approach fashioned by the trial judge here.[182]

---

181. Abourezk v. New York Airlines, 895 F.2d 1456 (D.C. Cir. 1990).
182. *Id.* at 1458.

# Chapter 4
# Summary Judgment in Bench Trials

Rule 56 makes no explicit distinction between jury and bench trials. However, the rule is designed as a pretrial mechanism for "assess[ing] the proof in order to see whether there is a genuine need for trial,"[183] and whether there is such a need may in some cases depend on whether trial would be to the court or to a jury.[184]

When evidentiary facts are in dispute, when the credibility of witnesses may be in issue, when conflicting evidence must be weighed, a full trial is clearly necessary regardless of whether it is a bench or jury trial. Such disputes are not appropriately resolved on the basis of affidavits. Witnesses should be heard and observed, on direct and cross-examination. But when the question for decision concerns drawing inferences from undisputed evidence, or interpreting and evaluating evidence to derive legal conclusions, a trial may not add to the judge's ability to decide. Thus, when the disputed issue is one of ultimate fact, a bench trial is often unnecessary; the considerations that militate in favor of trial if it is to a jury do not apply. Even if a judge faced with such a situation wants to hear witnesses in order to question them or develop the record, a limited evidentiary hearing may be held for this purpose under Fed. R. Civ. P. 43(e).

Some courts have resisted this analysis because the text of Rule 56 makes no distinction between jury and bench trials.[185] The issue, however, need not be framed in terms of whether a different standard for summary judgment applies in bench trials. What is clear is that

---

183. Fed. R. Civ. P. 56(e) advisory committee's notes (amended 1963).

184. The Supreme Court has suggested as much, albeit in a different context. In upholding the Food and Drug Administration's use of a summary procedure for rejecting new drug applications, the Court observed: "If this were a case involving trial by jury as provided in the Seventh Amendment, there would be sharper limitations on the use of summary judgment." Weinberger v. Hynson, 412 U.S. 609, 622 (1973).

185. *See* Farmland Indus. v. Grain Bd. of Iraq, 904 F.2d 732, 738 (D.C. Cir. 1990); Medical Inst. of Minn. v. National Ass'n of Trade & Technical Schools, 817 F.2d 1310, 1315 (8th Cir. 1987); U.S. v. J. B. Williams Co., 498 F.2d 414, 430 n.19 (2d Cir. 1974). One court implicitly acknowledged the logic behind treating jury and non-jury cases differently, but felt constrained by the text of Rule 56. *Farmland*, 904 F.2d at 738 ("The district judge has examined virtually all the evidence it would have before it at a bench trial. . . . Nevertheless, we must decide this case just as if there were a jury available, for the law of summary judgment does not vary with this circumstance.").

bench trials present different options consistent with the court's proper function. A court may determine that a full trial would add nothing to the paper record and, after proper notice, decide a case on that record, making a decision on a "trial without witnesses" rather than on summary judgment. However one interprets Rule 56, courts have considerable discretion in fashioning a procedure for factual development other than a full trial.

Several courts of appeals have recognized that a decision on the paper record may be appropriate in non-jury cases when, on the identical record, it would be inappropriate in a jury case.[186] The Eleventh Circuit affirmed a grant of summary judgment when the issue was the sufficiency of an expert affidavit to prove causation.[187] If this had been a jury trial, summary resolution of the causation issue would have been inappropriate. However, there was no reason for the court to hold a full trial. Both parties had the opportunity to offer their evidence, there were no issues of credibility or historical fact, and the dispute was in a posture for decision. Similarly, the Fifth Circuit affirmed a grant of summary judgment when the issue was whether a party's delay in carrying out its contractual obligations was "justifiable" and therefore not a breach of contract.[188] As this question of ultimate fact did not require further factual development or turn on any dispute over credibility, there was no reason for a full trial. The court stated:

> If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved. . . . A trial on the merits would reveal no additional data. . . . The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.

---

186. *See* Transworld Airlines v. American Coupon Exch., 913 F.2d 676, 684 (9th Cir. 1990); Posadas de P.R. v. Radin, 856 F.2d 399, 400–01 (1st Cir. 1988); Coats & Clark v. Gay, 755 F.2d 1506, 1509–10 (11th Cir.), *cert. denied*, 474 U.S. 903 (1985); Nunez v. Superior Oil Co., 572 F.2d 1119, 1124 (5th Cir. 1978).

187. Coats & Clark v. Gay, 755 F.2d 1506, 1509–10 (11th Cir.), *cert. denied*, 474 U.S. 903 (1985).

188. Nunez v. Superior Oil Co., 572 F.2d 1119, 1124 (5th Cir. 1978).

... But, where a jury is called for, the litigants are entitled to have the jury draw those inferences or conclusions that are appropriate grist for juries.[189] (citations omitted)

Bench trials offer various opportunities for streamlining the disposition of a case. For example, the court may conduct a bifurcated bench trial on a potentially dispositive non-jury issue under Fed. R. Civ. P. 42(b) and avoid a lengthy, unnecessary trial. Or it may expedite trial by receiving direct testimony in the form of written narrative statements. Those statements may be received at trial, subject to objections or motions to strike and cross-examination of a witness unless waived.[190]

---

189. *Id.* at 1123–24. *See also* Transworld Airlines v. American Coupon Exch., 913 F.2d 676, 684 (9th Cir. 1990) ("where the ultimate fact in dispute is destined for decision by the court rather than by a jury, there is no reason why the court and the parties should go through the motions of a trial if the court will eventually end up deciding on the same record"). One Fifth Circuit panel went further. In Professional Managers v. Fawer, 799 F.2d 218, 223 (5th Cir. 1986), the court held that the standard for summary judgment in non-jury trials mirrors the standard for involuntary dismissals under Fed. R. Civ. P. 41(b). The court rested this position on the holding in *Anderson v. Liberty Lobby* that the standard for summary judgment mirrors the standard for a directed verdict. However, in Phillips Oil v. OKC Corp., 812 F.2d 265 (5th Cir.), *cert. denied*, 484 U.S. 851 (1987), the Fifth Circuit suggested that the *Fawer* court erred, noting that the standards governing directed verdicts and Rule 41(b) dismissals are different. 812 F.2d at 273–74 n.15. A court considering a directed verdict may not make credibility determinations or resolve factual disputes and may direct a verdict only if plaintiff is not entitled to recover as a matter of law. By contrast, Rule 41(b) authorizes the court in a non-jury trial to dismiss plaintiff's case, at its conclusion, if upon the facts or law the plaintiff has shown no right to relief. Under Rule 41(b), the court may resolve disputed issues of fact and may make credibility judgments against the plaintiff.

190. See Richey, *A Modern Management Technique for Trial Courts to Improve the Quality of Justice: Requiring Direct Testimony To Be Submitted in Written Form Prior to Trial*, 72 Geo. L.J. 73 (1983).

# Chapter 5
# Determining Materiality

To preclude summary judgment, a fact dispute must be "material." A fact issue is material if it must be decided in order to resolve the substantive claim or defense to which the motion is directed. As the Supreme Court explained in *Anderson v. Liberty Lobby*, "Only disputes over facts that might affect the outcome of the suit" preclude summary judgment.[191] The opinion in *Anderson* further observes that "the materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."[192]

When confronted with an asserted factual dispute, therefore, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Materiality is a question of law. That a jury's verdict on an issue might be influenced by disputed evidence legally relevant only to other issues cannot be taken into account in deciding materiality.[193]

Lawsuits frequently present several issues and, at least potentially, numerous disputes over historical facts and inferences relevant to those issues. But if a suit is resolvable without the necessity of reaching and deciding some of those issues, then summary judgment may still be appropriate. In *Celotex Corp. v. Catrett*, for example, although there were many issues concerning defendant's liability for death allegedly caused by its product, the threshold issue was whether the decedent had been exposed to that product. If that essential element could not be proved, summary judgment was appropriate regardless of disputes over other issues. Similarly, when the plaintiff in a civil rights action claimed that a police officer had lied to a judge to obtain an arrest warrant, the court's finding that the judge would have issued the warrant regardless of the allegedly false statements rendered im-

---

191. 477 U.S. 242, 248 (1986).
192. *Id.* at 248.
193. It is not sufficient to preclude summary judgment that a jury, on hearing the entire case, might reach a different outcome. *See* the dissent of Justices Black and Douglas from the 1963 amendment to Rule 56. 31 F.R.D. 617, 618 (1963).

material the dispute over whether false statements had been made.[194] Likewise, a dispute over plaintiffs' contention that an aircraft crash was caused by metal fatigue was not material when undisputed evidence established that the crash would have occurred as a result of natural forces, regardless of the state of the metal.[195] Or if the nonmovant's version of the facts, although disputed, could not support a verdict as a matter of law, the dispute is immaterial because the legal sufficiency of the alleged facts can be decided on the assumption that they are true.[196]

The determination of materiality, therefore, requires analyzing the logic of the case. Issues must be identified clearly and ordered in relation to each other. By this process, courts can ascertain which issues may be dispositive of the case, rendering other factual disputes immaterial.

---

194. Yancey v. Carroll County, 876 F.2d 1238, 1244 (6th Cir. 1989).

195. British Airways Bd. v. Boeing Co., 585 F.2d 946, 952–53 (9th Cir. 1978), *cert. denied,* 440 U.S. 981 (1979).

196. *See, e.g.,* Burkevich v. Air Line Pilots Ass'n, 894 F.2d 346, 352 (9th Cir. 1990); Wilson v. Seiter, 893 F.2d 861, 864–67 (6th Cir. 1990).

# Chapter 6
# Determining Genuine Disputes

When the papers in support of and opposition to a summary judgment motion establish a dispute over a fact, and the fact is material, the court must then determine whether the dispute is genuine within the meaning of Rule 56. Because the rule does not define "genuine," courts have been left to do so.

As noted in Chapter 1, there was a time when a mere scintilla of evidence supporting the nonmovant's case, or the slightest doubt as to the facts, was considered cause for denying a motion. The 1986 trilogy of summary judgment decisions rejected that approach. These cases, proceeding from the premise that Rule 56 is intended to avoid unnecessary trials,[197] establish that the test of a dispute is whether a reasonable jury could find for the nonmovant. That, in turn, means that the facts in the nonmovant's opposition, if proved at trial, would have to be sufficient to support a verdict—in other words, sufficient to survive a motion for directed verdict or judgment notwithstanding the verdict. In the absence of such a showing, a trial would be pointless.

## The Burden on the Moving Party

Rule 56 (a) and (b) establish that the party moving for summary judgment must come forward with an initial showing that it is entitled to judgment. When the moving party bears the burden of persuasion on the issue at trial, its showing must sustain that burden as well as demonstrate the absence of a genuine dispute.[198] Thus, it must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim—by

---

197. *See* Fed. R. Civ. P. 56(e) advisory committee's notes (amended 1963).
198. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 331–32 (1986) (Brennan, J., dissenting). Although Justice Brennan dissented, he agreed with the majority's analysis of Rule 56. He believed, however, that the majority did not adequately explain what is required of the moving party.

showing that it would be entitled to a directed verdict at trial.[199] The showing may consist of pleadings filed by the opponent, depositions, answers to interrogatories, admissions, and affidavits made on personal knowledge and setting forth facts admissible in evidence, although the facts need not be presented in admissible form.[200]

The matter is less straightforward when the moving party does not bear the burden of proof at trial. The traditional view was that it must offer affidavits or similar materials *negating* the other party's case. In *Celotex*, the Supreme Court rejected this view. The Court held that the burden on a moving party that does not bear the burden of proof at trial "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[201] As Justice White's concurring opinion points out, however, "It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case."[202]

The showing required depends on the thrust of the motion. If the motion asserts that the opponent lacks proof to establish a requisite element of its case, as in *Celotex*, the movant must show the absence of facts, usually by producing relevant excerpts from the opponent's discovery responses, supplemented as needed by affidavits. If the motion purports to negate an essential element of the nonmovant's case, for example, to establish that no reasonable jury could return a verdict for the nonmovant, a more elaborate showing on affidavits may be necessary.

It is important, however, to the court's efficient and informed consideration of a motion that the supporting showing be confined to that which is necessary to make the essential point. Attempts to argue the merits of the case or to urge extralegal considerations serve only to confuse. At the same time, the movant owes a duty of candor to the court; it may not present only the portions of the record supporting its position while knowingly omitting evidence to the contrary that may raise a genuine issue of material fact. Such conduct ar-

---

199. *See, e.g.,* U.S. v. One 107.9 Acre Parcel of Land Located in Warren Township, 898 F.2d 396, 398 (3d Cir. 1990); U.S. v. O'Connell, 890 F.2d 563, 567 (1st Cir. 1989).
200. *Celotex,* 477 U.S. at 324.
201. *Id.* at 325.
202. *Id.* at 328 (White, J., concurring).

guably warrants the imposition of sanctions under Fed. R. Civ. P. 11 or Rule 56(g).[203]

The summary judgment procedure, although designed to expedite the resolution of cases and reduce cost and delay, can impose burdens of its own. On occasion, motions are made whose lack of merit is apparent on their face.[204] The cost of contesting such a motion can be avoided if judges first subject all motions to summary review to determine whether they sufficiently meet the facial test to call for a response. Without devoting much time, the experienced judge can quickly form an impression whether the motion should be denied as clearly without merit or deferred as premature (when, for example, critical discovery is incomplete).

# The Burden on the Nonmoving Party

*General Requirements*

Once the movant makes a properly supported motion, the burden shifts to the nonmovant to demonstrate the existence of a genuine dispute. Under Rule 56(e), "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial" (emphasis added).[205] Nor is it sufficient for the nonmovant simply to attack the credibility of the movant's affiants without a supporting factual showing.[206]

The nonmovant may set forth specific facts by submitting affidavits or relevant excerpts from depositions, answers to interrogatories, or admissions showing a genuine issue for trial. When appropriate, it may simply demonstrate to the court that the record on the motion contains sufficient specific facts to establish the existence of a genuine issue.[207] It may show, for example, that the movant, by ig-

---

203. *See* discussion of sanctions on pp. 76–77.

. 204. Baseless summary judgment motions are subject to Fed. R. Civ. P. 11 sanctions. *See, e.g.,* Melrose v. Shearson/Am. Express, 898 F.2d 1209 (7th Cir. 1990); *see also* pp. 76–77.

205. *See* the text accompanying notes 38–40 and note 40 (discussing affidavits).

206. *See* Bose Corp. v. Consumers Union of U.S., 466 U.S. 485, 512 (1984). *See also* Fed. R. Civ. P. 56(e) advisory committee's notes (amended 1963).

207. *See, e.g.,* Isquith v. Middle S. Utils., 847 F.2d 186, 199 (5th Cir.), *cert. denied,* 488 U.S. 926 (1988).

noring or mischaracterizing relevant facts in the record raising a genuine dispute, failed to meet its initial burden.[208]

Rule 56(e) requires that affidavits be "made on personal knowledge . . . and shall show affirmatively that the affiant is competent to testify to the matters stated therein." It is not sufficient, therefore, that the affidavit merely recite facts to which a competent witness will testify at trial.[209] Nor can the affidavit consist only of conjecture, conclusory allegations as to ultimate facts, or conclusions of law.[210] The same qualifications apply to interrogatory answers submitted in opposition to a motion; they should be made on personal knowledge, set forth facts admissible in evidence, and be signed by a party competent to testify to them.[211]

Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. The court cannot discount a nonmovant's affidavit for lack of credibility, and it must draw all reasonable inferences and resolve all genuine factual disputes in favor of the nonmovant. There are limits, however, to a party's ability to raise a dispute by submitting testimony contradicted by that party's other evidence.[212] A party normally will not be able to defeat summary judgment with an affidavit that directly contradicts that party's earlier affidavit or sworn testimony, unless the affidavit is accompanied by a credible explanation for the contradiction.[213] (Newly acquired information or the witness's confusion as to the facts might constitute legitimate explanations.[214]) Similarly, an affidavit will not defeat summary judgment if it contains no more than a scintilla of evidence insufficient to support a jury verdict.[215]

The nonmovant's failure to respond to a summary judgment motion in conformity with the requirements of Rule 56(e) does not automatically entitle the moving party to judgment. The rule provides

---

208. *See, e.g., id.*

209. *See, e.g.,* Garside v. Osco Drug, 895 F.2d 46, 49 (1st Cir. 1990).

210. *See, e.g.,* Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989).

211. *See* note 209.

212. *See, e.g.,* U.S. v. One 107.9 Acre Parcel of Land, 898 F.2d 396, 399–400 (3d Cir. 1990); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128–29 (4th Cir. 1987).

213. *See, e.g.,* Richardson v. Bonds, 860 F.2d 1427, 1433 (7th Cir. 1988); Martin v. Merrell Dow Pharmaceuticals, 851 F.2d 703, 706 (3d Cir. 1988).

214. *See* Miller v. A. H. Robins Co., 766 F.2d 1102, 1104 (7th Cir. 1985).

215. *See, e.g.,* Perez de la Cruz v. Crowley Towing & Transp. Co., 807 F.2d 1084, 1086 (1st Cir. 1986), *cert. denied,* 481 U.S. 1050 (1987).

that summary judgment shall be entered only "if appropriate." The court must determine on the basis of the parties' submissions whether the movant is entitled to judgment as a matter of law.[216] In *Anderson v. Liberty Lobby*, moreover, the Court recognized that there may be cases where there is no manifest material factual dispute but the trial judge nevertheless "believe[s] that the better course would be to proceed to a full trial,"[217] presumably because in the circumstances of the case a fuller record might afford a more substantial basis for decision.[218] When a court denies summary judgment on that ground, it is well to inform the parties of its reasons and explain in what respects the record should be augmented.

Some courts have read Rule 56(c) to require the trial court to make an independent search of the record for evidence of a genuine dispute.[219] Requiring the trial judge to read through the depositions, interrogatory answers, and other papers in the court file, however, would often impose an unmanageable burden. (Indeed, the opposing party should specifically identify the portions of the record relied on to enable the court to readily find them.[220]) Moreover, such a reading of an unorganized mass of material would provide a poor basis for determining whether a trial is necessary. The admonition that summary judgment be "appropriate" merely requires that the judgment have a basis in law. Courts can avoid misunderstandings on this point by adopting a local rule explaining their procedure for reviewing summary judgment motions.[221]

---

216. *See, e.g.,* Mendez v. Banco Popular de P.R., 900 F.2d 4, 7 (1st Cir. 1990); Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989).

217. 477 U.S. 242, 255 (1986).

218. *See* Atchison, T. & S.F. Ry. v. Buell, 480 U.S. 557, 567–71 (1987); Anderson v. Hodel, 899 F.2d 766, 770–71 (9th Cir. 1990); Veillon v. Exploration Servs., 876 F.2d 1197, 1200 (5th Cir. 1989).

219. *See* Tippens v. Celotex Corp., 805 F.2d 949, 952 (11th Cir. 1986); Stepanischen v. Merchants Dispatch Transp. Corp., 722 F.2d 922, 930 (1st Cir. 1983); Keiser v. Coliseum Properties, 614 F.2d 406, 410 (5th Cir. 1980).

220. *See* Schneider v. TRW, 1991 LEXIS 14213, n.2 (9th Cir. 1991). Parties making cross-motions for summary judgment are not relieved from filing materials in opposition to the other party's motion. *See* discussion of cross-motions on pp. 73–74.

221. *See, e.g.,* Local Rules of the United States District Court for the District of Columbia 108 (1986). *See also* Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 110 S. Ct. 1839 (1990); Stepanischen v. Merchants Dispatch Transp. Corp., 722 F.2d 922, 931–32 (1st Cir. 1983). The rule should instruct opposing parties how to bring before the court and identify materials in the court files. Instructions may call on parties to identify depositions by name of the deponent, date and place taken, and the relevant page numbers; similar detailed identification should be

The facts on which the nonmovant may rely must be admissible at trial,[222] but need not be in admissible form as presented in the opposition. In *Celotex*, the Supreme Court stated:

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.[223]

While one court relied on this language to hold that inadmissible evidence may be considered on a motion for summary judgment, apparently without regard to whether the facts can be proved at trial,[224] the better view is that *Celotex* merely clarifies the nonmovant's right to oppose a summary judgment motion with any of the materials listed in Rule 56(c),[225] including affidavits of its own witnesses that may contain testimony in a form not admissible at trial.[226] The fact that a witness affidavit is hearsay does not make the testimony it contains inadmissible when offered at trial by that witness. That such affidavits are permitted, therefore, does not justify considering evidence that would be inadmissible at trial.[227]

To permit an opposition to be based on evidence that would not be admissible at trial would undermine the goal of the summary judg-

provided for interrogatory answers, admissions, and other materials. When feasible, it is best to attach copies of relevant excerpts to the moving or opposition papers.

222. *See, e.g.,* Leonard v. Dixie Well Serv. & Supply, 828 F.2d 291, 295 (5th Cir. 1987).

223. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

224. Offshore Aviation v. Transcon Lines, 831 F.2d 1013, 1015 (11th Cir. 1987). The court reversed a grant of summary judgment because the district court erred in refusing to consider a letter submitted in opposition to the motion, even though the letter was inadmissible hearsay. The Eleventh Circuit stated that "[c]onsideration of the letter does not turn on admissibility at trial." *Id.*

225. *See* Aguilera v. Cook County Police & Corrections Merit Bd., 760 F.2d 844, 849 (7th Cir.), *cert. denied,* 474 U.S. 907 (1985); Property Management & Invs. v. Lewis, 752 F.2d 599, 604 n.4 (11th Cir. 1985).

226. *See, e.g.,* Financial Timing Publications v. Compugraphic Corp., 893 F.2d 936, 942 n.6 (8th Cir. 1990); Canada v. Blain's Helicopters, 831 F.2d 920, 925 (9th Cir. 1987).

227. *See* Nelkin, *supra* note 23, at 72.

ment procedure to prevent unnecessary trials, since inadmissible evidence could not support a jury verdict. A distinction must be drawn, therefore, between the affidavit of a party's own witness—which can be converted into admissible testimony at trial—or an opponent's admission, and a statement reciting the testimony of an independent or adverse witness that would be barred as hearsay. (The testimony of such a witness would normally have to be submitted in the form of a deposition.)

Of course, a nonmovant's mere promise to produce admissible evidence will not suffice to defeat summary judgment.[228] And unauthenticated documents or hearsay evidence should not be considered without adequate assurance that their contents can be proved by admissible evidence at trial.[229] To overcome these evidentiary hurdles, the nonmovant may resort to discovery under Rule 56(f) to convert inadmissible evidence into admissible form or to discover admissible evidence.[230]

Courts have occasionally bypassed the rule forbidding consideration of inadmissible evidence on a motion for summary judgment on the ground that the movant did not object.[231] To deny summary judgment because of such evidence is to equate the movant's failure to object with a waiver of the objection at trial. There is no basis for doing so, because making an objection at the time of the motion is not required to preserve the objection for trial.

A court may consider any admissible evidence submitted by the parties on a motion for summary judgment.[232] It may refer to the testimony and exhibits binding on a party from a prior trial,[233] ad-

---

228. *See* Garside v. Osco Drug, 895 F.2d 46, 49 (1st Cir. 1990).

229. *See, e.g.,* Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990); *Garside,* 895 F.2d at 50.

230. *See* discussion of discovery on pp. 74–76.

231. *See, e.g.,* Walker v. Wayne County, 850 F.2d 433, 435 (8th Cir. 1988), *cert. denied,* 488 U.S. 1008 (1989); Catrett v. Johns-Manville Sales Corp., 826 F.2d 33, 37–38 (D.C. Cir. 1987), *cert. denied,* 484 U.S. 1066 (1988). In his dissent in *Catrett,* Judge Bork characterized the "waiver" rule with respect to inadmissible evidence as widespread. He dissented from the majority's consideration of hearsay documents, however, because he felt that the defendant had indeed objected to the proffered evidence. *Id.* at 42.

232. *See* note 225.

233. *See, e.g.,* U.S. v. O'Connell, 890 F.2d 563, 567 (1st Cir. 1989). The court noted that "because depositions and answers to interrogatories may be considered on a motion for summary judgment, 'there is no sensible rationale which would preclude reliance on sworn testimony faithfully recorded during the conduct of a judicially-super-

missions in answers to the complaint or interrogatories,[234] or admissions imputed to a party because of its failure to respond to requests for admission.[235] The court may, however, refuse to consider materials submitted after the established filing deadline.[236] The materials should be excluded when their consideration would prejudice the other party or encourage abuse of the summary judgment process.[237]

### Expert Affidavits

Nonmovants may rely on affidavits of expert witnesses to oppose summary judgment.[238] The court must initially determine whether the material included in the experts' affidavits would be admissible at trial.[239] This entails applying the Federal Rules of Evidence, especially Rules 402, 403, 702, and 703. Under these rules, expert testimony may be excluded on various grounds—if it is irrelevant (402), or more prejudicial than probative (403),[240] or the "expert" is not qualified (702), or the opinion is not based on data reasonably relied on by experts in the field (703).

Even if an expert affidavit contains material that would be admissible at trial and contradicts a material factual claim made by the

---

vised adversarial proceeding.'" 890 F.2d at 567 (quoting Advance Fin. Corp. v. Isla Rica Sales, 747 F.2d 21, 27 (1st Cir. 1984)).

234. *See, e.g., id.*

235. *See* U.S. v. Kasuboski, 834 F.2d 1345, 1349 (7th Cir. 1987).

236. *See, e.g.,* Pfeil v. Rogers, 757 F.2d 850, 857–58 (7th Cir. 1985), *cert. denied,* 475 U.S. 1107 (1986).

237. *Id.*

238. For thoughtful discussions of the use of expert evidence at the summary judgment stage, *see* Brunet, *supra* note 31; Weinstein, *Improving Expert Testimony,* 20 U. Rich. L. Rev. 473 (1986).

239. *See, e.g.,* Washington v. Armstrong World Indus., 839 F.2d 1121, 1123–24 (5th Cir. 1988) (summary judgment affirmed when trial court correctly ruled that testimony of physician who had not examined or interviewed plaintiff would be inadmissible under Fed. R. Evid. 703). As the discussion concerning the supplementation of inadequate expert testimony shows (*see* pages 55–57), an in limine hearing under Fed. R. Evid. 104(a) may be preferable to the summary judgment procedure for determining the admissibility of expert testimony.

240. However, the Third Circuit cautions against a pretrial determination that evidence is more prejudicial than probative, regarding that as an assessment that should be made only in the context of a full record. *In re* Paoli R.R. Yard PCB Litig., 916 F.2d 829, 859–60 (3d Cir. 1990). *Paoli* is discussed in detail at pages 54–57.

moving party, it may fail to defeat summary judgment.[241] This seeming incongruity stems from the rigor of Fed. R. Civ. P. 56(e) in combination with the latitude of Fed. R. Evid. 703–705 governing expert testimony. Rule 703 permits experts to base their opinions on data or facts not in evidence; Rule 704 permits expert testimony on the ultimate issue of the case; and Rule 705 authorizes experts to give testimony "in terms of opinion or inference" even "without prior disclosure of the underlying facts or data, unless the court requires otherwise." These rules provide substantial leeway for the admission at trial of expert testimony. However, Rule 56(e) requires the party opposing summary judgment to "set forth *specific facts*" (emphasis added) establishing the presence of a genuine issue. As a result, a number of courts have held that an expert's naked opinions,[242] although admissible at trial, may not suffice to defeat summary judgment.

In the recent antitrust case of *Mid-State Fertilizer Co. v. Exchange National Bank*, plaintiff opposed summary judgment with an affidavit by a finance professor who opined that defendant's practices were unreasonable and inappropriate. The court granted summary judgment for defendant and the Seventh Circuit affirmed, noting that the affiant "presented nothing but conclusions—no facts, no hint of an inferential process, no discussion of hypotheses," whereas expert affidavits can defeat summary judgment only if they show "a process of reasoning beginning from a firm foundation."[243] Similarly, other courts have said that to defeat summary judgment, expert affidavits must be "based upon specific facts"[244] and cannot involve "mere speculation or idiosyncratic opinion"[245] or "conclusory allegations."[246]

---

241. *See, e.g.,* Mid-State Fertilizer Co. v. Exchange Nat'l Bank, 877 F.2d 1333, 1339 (7th Cir. 1989); *In re* Agent Orange Prod. Liab. Litig., 818 F.2d 187, 193 (2d Cir. 1987), *cert. denied,* 487 U.S. 1234 (1988); Evers v. General Motors Corp., 770 F.2d 984, 986–87 (11th Cir. 1985); U.S. v. Various Slot Machs. on Guam, 658 F.2d 697, 700–01 (9th Cir. 1981); State Farm Fire & Casualty Co. v. Miles, 730 F. Supp. 1462, 1473 (S.D. Ind. 1990); Estate of Detwiler v. Offenbecher, 728 F. Supp. 103, 139–40 (S.D.N.Y. 1989).

242. *See, e.g.,* Mid-State Fertilizer Co. v. Exchange Nat'l Bank, 877 F.2d 1333, 1339 (7th Cir. 1989).

243. *Id.*

244. Estate of Detwiler v. Offenbecher, 728 F. Supp. 103, 140 (S.D.N.Y. 1989).

245. *In re* Agent Orange Prod. Liab. Litig., 818 F.2d 187, 193 (2d Cir. 1987), *cert. denied,* 487 U.S. 1234 (1988).

246. Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985).

Because an expert affidavit may fail to defeat summary judgment for either of two distinct reasons—its inadmissibility at trial or its insufficient specificity or concreteness—the reviewing court's task is facilitated if the trial court identifies its basis for rejecting the expert affidavit.[247] Two recent appellate court decisions help spell out useful procedures for trial courts to follow when dealing with expert affidavits at the summary judgment stage.

In *In re Paoli*,[248] plaintiffs alleged that they contracted illnesses from exposure to PCBs on defendant's property. Defendant moved for summary judgment, citing the absence of exposure and causation. Plaintiffs' opposition included an array of expert affidavits concerning both exposure and causation. The trial court granted summary judgment and issued an opinion that discussed the shortcomings and inadmissibility of plaintiffs' expert affidavits.

In reversing, the Third Circuit noted various problems with the trial court's approach to the expert affidavits. First, the trial court failed to spell out exactly which federal rule supported its rejection of some of the proffered affidavits[249] and appears to have conflated the different rules.[250] In other instances, the trial court stated which rule provided the basis for its rejection of evidence, but failed to explain adequately the grounds for its determination:

> Although certain factual findings may be implicit in the court's discussion . . . the court never explained the basis for its decision to exclude [the expert] opinion.
> . . . The court's analysis of other experts . . . was comparable in that it elucidated the potential flaws in the doctors' testimony but failed to make definitive admissibility findings. [251]

---

247. *See In re* Paoli R.R. Yard PCB Litig., 916 F.2d 829, 835 n.3, 847–48, 852–53 (3d Cir. 1990) (repeatedly criticizing the trial court for failure to clarify whether nonmovants' expert affidavits were inadmissible or simply inadequate to defeat summary judgment).

248. *Id.*

249. *See, e.g., id.* at 849 ("Again, it is unclear whether the court was excluding this evidence, and if so, for lack of qualification or on some other ground.").

250. Thus, for example, the trial court appeared to reject some evidence on the basis of Rule 703, yet in its discussion observed that the experts' opinions were based on "irrelevant" studies. The Third Circuit expressed uncertainty "why the relevancy of the studies pertains to their reliability under Rule 703." *Id.* at 846.

251. *Id.* at 846–47.

The Third Circuit found this omission particularly serious with respect to the trial court's Rule 703 determinations that plaintiffs' experts used data not reasonably relied on by experts in the field:

> [T]he district court must have a proper and reviewable foundation for making its admissibility findings. We can identify no such foundation here. . . . [T]he court did not make specific reference to the evidence in the voluminous record it has chosen to credit, did not reveal the theory on which it has rejected opinions to the contrary. . . . Thus, we have no way of evaluating the district court's legal conclusion that the evidence was inadmissible under Rule 703.[252]

Finally, and critically, the Third Circuit objected to the trial court's failure to provide plaintiffs an adequate opportunity to respond to the alleged shortcomings in their proffered expert testimony:

> [The law] requires adequate process at the evidentiary stage, particularly when a summary judgment may flow from it. The district court did not afford that process here.
> . . . First, the court failed to conduct an *in limine* hearing. Second, it denied oral argument on the evidentiary issues and on the related summary judgment motion. . . . Of particular significance is the plaintiffs' inability to contest the reasonableness of the data and techniques relied on by defendants' experts. Having no foreknowledge of the direction that the district court's opinion might take, the plaintiffs should have been given an opportunity to be heard on the critical issues before being effectively dispatched from court. An *in limine* hearing would have been quite manageable. At least some process should have been devised to afford plaintiffs a surrogate for that trial scenario where the equivalent evidentiary exclusion and adverse judgment might occur.[253] (footnote omitted)

The concern with giving the nonmovant an adequate opportunity to address the alleged deficiencies in its expert affidavits also motivated the Ninth Circuit in *Bulthius v. Rexall Corp.*[254] In *Bulthius* it was unclear whether the trial court granted summary judgment because the nonmovant's expert testimony was inadmissible or because it failed to set forth a specific factual basis sufficient to raise a genuine issue.[255] The Ninth Circuit explained that in either event the

---

252. *Id.* at 853.
253. *Id.* at 854–55.
254. 789 F.2d 1315 (9th Cir. 1985).
255. *Id.* at 1317.

trial court should have notified the nonmoving party of the inadequacy of her affidavits and given her an opportunity to remedy the deficiencies.

Plaintiff in *Bulthius* had alleged that she contracted cancer as a result of her mother's ingestion of DES manufactured by defendant. Defendant produced evidence that plaintiff's mother had not taken DES while pregnant, and moved for summary judgment. In opposition, plaintiff offered two affidavits from doctors: one testified that he observed changes in plaintiff's vaginal tissues that he believed were caused by her mother's ingestion of DES; the other stated that plaintiff showed changes commonly seen in DES-exposed offspring and rarely seen in anyone else. The trial court granted summary judgment to defendant.

The Ninth Circuit reversed, finding that the affidavits set forth sufficient factual bases for the doctors' inferences and raised a genuine issue concerning exposure. The court regarded as decisive that neither the trial court nor defendant had asked for a more detailed explanation of the affiants' factual bases or inferences. The court noted that Fed. R. Evid. 705 permits experts to give their opinions without supporting facts "unless the court requires otherwise." The Ninth Circuit proceeded to graft this clause onto Rule 56(e), holding that if a court finds an expert affidavit too conclusory to defeat summary judgment, it should give the nonmoving party an opportunity to have its expert flesh out its statement. The court distinguished an earlier Ninth Circuit decision[256] that affirmed a summary judgment in the face of conclusory affidavits by the nonmoving party's experts. There the nonmoving party's counsel, advised of the inadequacies of the affidavits, had stated that nothing more specific would be offered.[257]

*Paoli* and *Bulthius* suggest that determinations of the sufficiency or admissibility of expert affidavits at the summary judgment stage should be treated with care equivalent to that expected at trial. Before holding an expert affidavit insufficient to defeat summary judgment, courts should consider giving the nonmoving party an opportunity to respond and cure deficiencies. The technical nature of the subject matter of such affidavits and the fluid state of the law governing their sufficiency and admissibility justify such a procedure. The court's

---

256. U.S. v. Various Slot Machs. on Guam, 658 F.2d 697 (9th Cir. 1981).
257. *Id.* at 700–01.

final ruling should specify its factual and legal basis, including the rules of evidence relied on.

Of course, if the moving party attacked the expert testimony in specific terms, the nonmovant may already have had ample opportunity in its response to cure any defect. And, in any event, there is no reason for the court to allow the nonmovant to start over by looking for more qualified experts.

# The Judicial Function

## Historical Facts

The question whether a party having the burden of persuasion on an issue has come forward with sufficient evidence to go to the jury is neither novel nor arcane. Courts have been deciding it in trials—on motions for directed verdicts—since long before the adoption of Rule 56. The judge ruling on a summary judgment motion faces the same question. As the Supreme Court stated in *Anderson v. Liberty Lobby*, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[258] In making that determination, the court is bound by the traditional allocation of functions between judge and jury:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.[259]

This is an unambiguous and conventional statement of the judge's function in dealing with a summary judgment motion. It should present no difficulty for judges confronted with a dispute over historical facts. For example, when the dispute is over which driver entered the intersection first, or whether the defendant made a particular statement, conflicting testimony will normally raise a genuine dispute. In such cases, a bare denial under oath (even if impeached) suffices to preclude summary judgment.

---

258. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).
259. *Id.* at 255.

In other contexts, however, the question whether the nonmovant having the burden of proof on the issue has produced sufficient evidence to go to trial requires more searching analysis, discussed in the following sections.

*Ultimate Facts*

*Anderson* held that in determining whether evidence presents a jury question, the court must apply the evidentiary standard that would govern if the case went to trial. Thus, since plaintiffs could prevail at trial only if they established their claim by "clear and convincing proof,"[260] it was proper for the court, at the summary judgment stage, to apply that standard in assessing whether a reasonable jury could find for plaintiffs. This approach, which courts also take when ruling on motions for directed verdicts,[261] would seem to be a matter of logic and common sense. The substantive law governing a case is as material when the sufficiency of the evidence for submission to the jury is determined as it is when the jury deliberates. To take an obvious illustration, if the law provided that conviction of a certain offense required the testimony of two witnesses, it would be pointless to go to trial with only one witness. Or, in *Anderson* itself, a trial would have been pointless if a reasonable jury could not find that plaintiffs' evidence met the applicable burden. Had the case gone to trial, the court would either have directed a verdict for defendants or, if a jury found for plaintiffs, granted a judgment notwithstanding the verdict.

The dissenting justices and others have argued that *Anderson* authorizes courts to assume a task inappropriate at the summary judgment stage: to evaluate the evidence presented by the party bearing the burden of persuasion by considering contradictory and impeaching evidence and assessing credibility. While the majority opinion

---

260. Under New York Times Co. v. Sullivan, 376 U.S. 254, 285–86 (1964), a public figure bringing a libel action must establish actual malice with "convincing clarity." In Gertz v. Welch, 418 U.S. 323, 342 (1974), the Court said the plaintiff must offer "clear and convincing proof."

261. *See, e.g.,* U.S. Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306, 311 (3d Cir. 1985) (directed verdict should have been granted because plaintiffs did not present the clear and convincing evidence required by controlling law). Likewise, on motions for judgment of acquittal (the equivalent of directed verdicts in criminal cases), courts apply the "reasonable doubt" standard. *See* 2 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Criminal 2d § 467 (1982).

explicitly rejected this approach, instructing trial courts to eschew credibility determinations and to resolve all conflicts and draw all proper inferences in favor of the nonmoving party,[262] the dissenters and critics contend that the Court's holding and dicta undermine this instruction. A close examination of the facts of the case helps sort out this disagreement.

Liberty Lobby and others sued columnist Jack Anderson and others for libel on the basis of magazine articles portraying plaintiffs as neo-Nazi, racist, anti-Semitic, and fascistic. Defendants moved for summary judgment, contending that an essential element of plaintiffs' case—actual malice—was lacking as a matter of law. The motion was supported by the author's affidavit stating that he had spent substantial time researching and writing the articles and that his facts were obtained from various sources, set forth in a detailed appendix. He also stated that he believed the articles to be accurate. In their opposition, plaintiffs cited evidence they considered sufficient to establish actual malice: numerous inaccuracies in the articles, the author's use of unreliable sources, his failure to verify information adequately, and a statement by an editor of the defendant magazine that the articles were ridiculous. However, plaintiffs did not dispute the author's sworn statement that he believed the articles to be accurate.

The district court granted summary judgment[263] on the ground that plaintiffs could not establish actual malice by the requisite clear and convincing evidence.[264] The D.C. Circuit reversed,[265] holding that the convincing clarity standard should not be applied at the summary judgment stage. The Supreme Court vacated the appellate decision, agreeing with the district court that the evidentiary standard that would apply at trial also applies at the summary judgment stage. (The Court remanded the case to the D.C. Circuit to review the summary judgment in light of that standard.) The Court stated that "[w]hen determining if a genuine factual issue as to actual malice exists . . . a trial judge must bear in mind the actual quantum and qual-

---

262. *Anderson*, 477 U.S. at 249, 255.

263. Liberty Lobby v. Anderson, 562 F. Supp. 201 (D.D.C. 1983), *rev'd*, 746 F.2d 1563 (D.C. Cir. 1984), *rev'd*, 477 U.S. 242, 249 (1986).

264. *See* note 260.

265. Liberty Lobby v. Anderson , 746 F.2d 1563 (D.C. Cir. 1984), *rev'd*, 477 U.S. 242, 249 (1986).

ity of proof necessary to support liability"[266] under the legal standard of clear and convincing evidence.

This holding has been criticized as directing judges to invade the province of the jury. In separate dissents, Justices Rehnquist and Brennan argued that applying the "clear and convincing" standard at the summary judgment stage will make no difference *unless* the trial court evaluates the evidence in a manner traditionally reserved for juries. The dissents, however, did not take into account that *Anderson* involved a dispute over an ultimate fact—actual malice—and not over historical facts. Thus, Justice Rehnquist posed a hypothetical in which the party opposing summary judgment submits a witness affidavit saying that the author told him she had not checked the story and doubted that it was correct. The motion in support of summary judgment offers substantial evidence contradicting this account, and other evidence indicates that the witness had previously been convicted of perjury. If the heightened evidentiary standard were to apply, Justice Rehnquist reasoned, it would make a difference only if the court evaluated the credibility of the witness's testimony. He concluded that the majority's approach either directs the judge to perform a traditional jury function or accomplishes nothing.

The dispute in the hypothetical, however, is over a historical fact—what, if anything, the author said to the witness. *Anderson*, in contrast, involved the determination whether undisputed (for the purposes of the motion) evidence was sufficient to support a finding of liability. Evaluating the opponent's evidence in light of "the actual quantum and quality of proof necessary to support liability" did not call on the judge to assess witness credibility or select from among disputed inferences. Application of the heightened evidentiary standard in *Anderson*, therefore, involved not a jury question but a question of law or policy—whether conduct amounting to no more than negligence can sustain a jury verdict premised on clear and convincing evidence of actual malice.[267] (The determination that such evidence could not sustain liability was an application of the principle enunciated in *Monsanto Co. v. Spray-Rite Service Corp.*[268] that the

---

266. 477 U.S. at 254.

267. Of course, the grant of summary judgment was proper in this case only if the district court's legal conclusion was correct. The Supreme Court did not address that issue, instead remanding the case to the D.C. Circuit.

268. 465 U.S. 752, 764 (1984).

substantive law can limit the range of inferences that a jury may draw.)

The foregoing analysis does not suggest that *Anderson* is confined to issues of ultimate fact raising matters of law and policy. The sufficiency of historical facts to support a verdict arises regularly on motions for directed verdict and for judgment notwithstanding the verdict, and it therefore applies in the summary judgment context as well. *Anderson* holds that the controlling standard is the same.[269] When the Court said that the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff,"[270] it called up the customary directed verdict and judgment notwithstanding the verdict standard.[271] This statement does not direct judges to resolve questions of credibility or conflicting inferences. What it does is to require judges to assess the sufficiency of the evidence as a matter of law, resolving all factual disputes in favor of the opponent—as would be the case on directed verdict or judgment notwithstanding the verdict. Thus, *Anderson* is consistent with the purpose of Rule 56 to avoid trials that are pointless because they would end in a directed verdict or judgment notwithstanding the verdict.

As a practical matter, application of the heightened standard of proof may make a difference in only the rare case. *Anderson* illustrates one in which it may have made a difference: facts sufficient to support a finding of negligence are not sufficient to support a finding of actual malice when it must be shown by clear and convincing evidence.

In sum, *Anderson* tells trial courts to treat motions for summary judgment as they do motions for directed verdict and judgment notwithstanding the verdict: resolving all evidentiary disputes in favor of the opponent and determining whether under the substantive law, including the governing evidentiary standard, the opponent's evidence could support a verdict.

---

269. 477 U.S. at 250 (summary judgment standard "mirrors the standard for a directed verdict").

270. 477 U.S. at 252.

271. *See, e.g.,* Worsham v. A. H. Robins Co., 734 F.2d 676, 681 (11th Cir. 1984) (case based on mere scintilla of evidence will not survive motion for directed verdict); Marcoux v. Mid-States Livestock, 429 F. Supp. 155, 158 (N.D. Iowa 1977) (same with respect to judgment notwithstanding the verdict).

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.* reflects the same rationale as *Anderson.* Plaintiffs, a group of American electronics manufacturers, charged Japanese manufacturers with a conspiracy to fix and maintain unreasonably low prices on their products sold in the United States. The evidence, in substance, established pricing at levels that succeeded in taking business from plaintiffs and the existence of agreements and arrangements that restrained competition among the defendants in various respects other than the sale of their goods in the United States. The district court granted summary judgment for defendants.[272] The Third Circuit reversed,[273] finding that a reasonable jury could infer a conspiracy. The Supreme Court vacated the Third Circuit's decision, agreeing with the district court that the evidence was insufficient to support an inference of an antitrust violation. Defendants' price-cutting was "as consistent with permissible competition as with illegal conspiracy"[274] and such evidence "does not, standing alone, support an inference of antitrust conspiracy."[275] (The Court remanded the case to the Third Circuit to consider whether other evidence created a genuine issue for trial.)

Whether the alleged conduct could sustain an inference of conspiracy was analogous to the question whether defendants' conduct in *Anderson* could sustain an inference of actual malice. As in *Anderson,* the trial court decided the issue not by resolving factual disputes but by determining, as a matter of substantive law and policy, the requisite evidence to sustain a verdict. Because price-cutting is the essence of competitive conduct, the policies underlying the antitrust laws required evidence tending to exclude the possibility that in cutting prices defendants were engaged in lawful competition.[276] And, as in *Anderson,* the Court held that the controlling substantive law applies at the summary judgment stage. While the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmovant, "antitrust law limits the range of permis-

---

272. Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 513 F. Supp. 1100 (E.D. Pa. 1981), *rev'd,* 723 F.2d 238 (3d Cir. 1983), *rev'd,* 475 U.S. 574, 588 (1986).

273. *In re* Japanese Elec. Prods., 723 F.2d 238 (3d Cir. 1983), *rev'd,* 475 U.S. 574, 588 (1986).

274. *Matsushita,* 475 U.S. at 588.

275. *Id.*

276. *Id.* at 597–98.

sible inferences from ambiguous evidence in a [claim under section 1 of the Sherman Act]."[277]

Some language in *Matsushita* suggests that summary judgment is appropriate where a plaintiff's case rests on "implausible" inferences.[278] Courts should use care in accepting this language at face value when ruling on summary judgment motions. In the context of the case, the *Matsushita* Court was addressing not the credibility of disputed historical evidence but whether it was plausible to infer a conspiracy from normal business conduct.[279]

As the Court made clear, its analysis rested on substantive antitrust law, not generally applicable summary judgment principles.[280] Indeed, *Matsushita* culminates a line of antitrust cases establishing limitations on the inferences juries are permitted to draw from acts consistent with lawful business conduct. In *First National Bank v. Cities Service Co.*,[281] the Court held that a jury could not be permitted to infer that defendant had conspired to boycott plaintiff, which was selling oil from Iran's nationalized oil company, since defendant itself was pressured by its suppliers who were boycotting sellers of Iranian oil; undisputed evidence established that defendant's interest was aligned with plaintiff's rather than that of the boycotting oil companies. In *Monsanto Co. v. Spray-Rite Service Corp.*,[282] the Court held that a jury would not be permitted to find a vertical price-fixing conspiracy between a manufacturer and its dealers on evidence that showed only that the manufacturer had terminated one of its dealers after having received complaints about his price cutting.

This line of cases defines the limits of permissible inferences to be drawn from circumstantial evidence where the imposition of antitrust liability would deter procompetitive conduct and threaten disruption of markets.[283] Its rationale may apply in other areas in which the

---

277. *Id.* at 588.

278. *Id.* at 593.

279. *See* McLaughlin v. Liu, 849 F.2d 1205, 1206–08 (9th Cir. 1988) (interpreting *Matsushita* to apply only to the plausibility of inferences, not direct evidence); *see also* pages 64–68 (discussing "inconsistent inferences" doctrine).

280. *Matshushita*, 475 U.S. at 588, 593–95.

281. 391 U.S. 253 (1968).

282. 465 U.S. 752 (1984).

283. *See In re* Coordinated Pretrial Proceedings in Petroleum Antitrust Litig., 906 F.2d 432, 438 (9th Cir. 1990), *cert. denied*, 111 S. Ct. 2274 (1991). Whether the court's decision reversing summary judgment for defendants was entirely consistent with *Matsushita* is debatable. In *Matsushita*, plaintiffs offered no evidence of a conspiracy

drawing of adverse inferences from ambiguous conduct may have undesirable social or economic consequences. In the area of employment discrimination, for example, the failure to hire, promote, or retain an employee in a statutorily protected class, standing alone, is insufficient to raise a triable issue of fact in the face of evidence of legitimate business reasons for the action.[284] Whether an employer's actions unlawfully discriminated is again a question of ultimate fact implicating both historical facts and legal and policy considerations, placing the responsibility on courts to assess the adequacy of the evidence to sustain a verdict of liability.

### Choosing Among Inconsistent Inferences

In deciding summary judgment motions, the court must draw inferences in favor of the nonmovant, provided they are "justifiable" or "reasonable." The question arises whether an inference is justifiable or reasonable, and thus suffices to defeat a summary judgment motion, when it is one of two plausible but inconsistent inferences that might be drawn from the given facts. The courts appear divided on what might be called the "inconsistent inferences" doctrine. This doctrine acquired immediacy after *Matsushita* because the Court limited the jury's choice among inconsistent inferences. Although this

---

other than defendants' prices and non-price collateral agreements. In *Pretrial Proceedings*, plaintiffs offered several items of evidence—including the manner in which defendants disseminated pricing information—that the court found probative. This was not a case, then, in which plaintiffs' entire case depended on an inference from a set of facts at least equally consistent with lawful conduct. In dicta, however, the Ninth Circuit interpreted *Matsushita* as permitting summary judgment for defendants only where "on the evidence presented, the protection of innocent independent conduct outweighs the costs associated with the potential decrease in strict antitrust enforcement." *Id.* at 439. Therefore, the Ninth Circuit requires defendants moving for summary judgment to establish that "permitting an inference of conspiracy would pose a significant deterrent to beneficial procompetitive behavior." *Id.* at 440. *Matsushita* did not explicate such a burden on defendants.

284. In this connection, it is critical to distinguish between two types of situations that arise when an employer advances a business justification for its actions. If plaintiff offers evidence suggesting that the proffered justification is pretextual, a triable issue exists. *See, e.g.*, Chipollini v. Spencer Gifts, 814 F.2d 893, 898–900 (3d Cir.), *cert. denied*, 483 U.S. 1052 (1987). But if plaintiff concedes (or offers no evidence rebutting) that the employer's justification was its actual motivation and argues that this justification does not warrant the adverse action, only a question of law remains: whether, under employment discrimination law, the employer's reasons constitute a legitimate basis for its actions. That issue may be properly decided by summary judgment. *See, e.g.*, Abbot v. Federal Forge, 912 F.2d 867, 875–76 (6th Cir. 1990).

decision turned on substantive antitrust law, it raised the issue of how courts should deal with inconsistent inferences in summary judgment cases generally.

Under one view, seemingly supported by the 1933 Supreme Court case of *Pennsylvania Railroad v. Chamberlain*, when two competing inferences are of equal strength, the choice between them is mere speculation and therefore not a basis for a verdict. The *Chamberlain* Court said:

> [This is] a case belonging to that class of cases where proven facts give equal support to each of two inconsistent inferences; in which event, neither of them being established, judgment, as a matter of law, must go against the party upon whom rests the necessity of sustaining one of these inferences as against the other.[285]

Another view rejects this doctrine as no longer good law. In two cases decided after *Chamberlain*, the Court, without mentioning *Chamberlain*, seemed to overrule it implicitly.[286] In these cases, the Court held that when opposing inferences seemed equally reasonable, the jury could choose either. Lower courts have followed one rule or the other, without acknowledging the doctrinal split.[287] Commentators, too, have split on whether the *Chamberlain* rule is good law (in both senses of the term).[288]

Most of the cases, however, can be reconciled. Juries may be permitted to choose from among inconsistent inferences when there is

---

285. 288 U.S. 333, 339 (1933). In *Chamberlain*, a brakeman who was transferring a string of defendant's cars was run over and killed. His estate maintained that the death resulted from a collision between his cars and another string of cars. Three eyewitnesses testified that no such collision took place. Petitioner's case rested on a witness's testimony that he heard a loud noise at a time close to the brakeman's death. Given the surrounding circumstances, and the witness's confessed ignorance about the source and nature of the noise, it was wholly speculative whether the noise stemmed from a crash involving the brakeman's cars. *See* note 293.

286. Lavender v. Kurn, 327 U.S. 645, 652–53 (1946); Tennant v. Peoria & P.U. Ry., 321 U.S. 29, 35 (1944).

287. *Compare, e.g.*, Transco Leasing Corp. v. U.S., 896 F.2d 1435, 1445–46 (5th Cir. 1990) (where there was no way of determining which of two pilots was negligent in midair collision, issue could not be submitted to jury) *with* Pacific Serv. Station Co. v. Mobil Oil Corp., 689 F.2d 1055, 1064 (Temp. Emer. Ct. App. 1982) (summary judgment inappropriate where "evidence is equally consistent with two alternative inferences").

288. *Compare, e.g.*, Note, *Summary Judgment and Circumstantial Evidence*, 40 Stan. L. Rev. 491, 502 (1988) (*Chamberlain* doctrine no longer good law) *with* James, *Proof of the Breach in Negligence Cases (Including Res Ipsa Loquitur)*, 37 Va. L. Rev. 179, 185–86 (1951) (*Chamberlain* doctrine good law).

an evidentiary basis for the choice. Absent such a basis, juries should not be permitted to make a choice. This is simply another way of saying that plaintiff must prove its case by a preponderance of the evidence; if there is insufficient evidence to sustain a preponderance, summary judgment for defendant is appropriate. Consider, for example, a two-car collision occurring at right angles in the middle of an intersection with a two-way traffic light. The circumstances support an inference that one of the drivers ran a red light, yet there is no evidence (in the absence of any controlling presumptions) tending to show which party ran the light. Assuming there were no eyewitnesses and the parties died in the crash, no credibility determinations can be made. In this case of conflicting inferences, the jury can only guess who the negligent party was; a coin flip would be as valid a method as any other for deciding this case. Courts generally would not allow such a case to go to a jury.

*James v. Otis Elevator Co.* is illustrative. A worker injured in a malfunctioning elevator alleged negligence on the part of the elevator company. The case hinged on whether the malfunction was present during the last inspection by defendant's maintenance man. There was no evidence on this point, nor any discernible grounds for drawing one inference rather than the other. The court observed that "to decide the case in James' favor, the jury would have to 'flip a coin.' A fact that can only be decided by a coin toss . . . cannot be submitted to the jury."[289]

As the coin-flip metaphor suggests, the "inconsistent inferences" doctrine justifies keeping a case from the jury only when there is no evidentiary basis for drawing one inference rather than another. It does not follow that a court's determination that two inferences are equally valid is necessarily a ground for granting summary judgment to defendant. If there are any non-frivolous grounds for choosing between the competing inferences, the jury should be permitted to choose. A court's judgment that two inferences are equally strong is no substitute for a jury's.

This limitation on the "inconsistent inferences" doctrine is illustrated by the Supreme Court's decision in *Tennant v. Peoria & Pacific Union Railway*.[290] An employee in defendant's railroad yard was hit by defendant's train and killed. The case turned on whether the

---

289. 854 F.2d 429, 432 n.3 (11th Cir. 1988).
290. 321 U.S. at 29.

failure of defendant's engineer to ring the warning bell was the cause of the accident. Testimony established that if the employee had been performing his duties, he would not have been killed but for the failure of the engineer to ring the bell. However, defendant suggested several plausible scenarios in which the employee's own negligence might have prevented him from hearing or responding to the bell. The evidentiary dispute, therefore, centered on whether the employee or the engineer had been negligent, and there was no direct evidence on this point. The jury found for plaintiff, but the trial court granted a judgment notwithstanding the verdict on the ground that, in the face of reasonable conflicting inferences, the jury verdict was unsupportable. Indeed, the trial court indicated that it seemed more likely that the employee had fallen asleep than that he was killed because the bell was not rung.[291] The Supreme Court reversed. The Court held that a reasonable jury might presume, in the absence of evidence to the contrary, that the employee performed his duties and exercised due care for his own safety. Moreover, the very fact that the ringing of the bell was an established rule and custom could give rise to the inference that employees depended on it and would not have put themselves in a position where they could not have heard or responded to it.[292]

The evidence to support an inference of negligence was slight but sufficient to sustain a verdict. The fact that the trial court may have found other inferences equally strong, or even stronger, did not justify taking the case away from the jury. Because the verdict was not simply a random choice, but was supported by evidence, or at least presumptions entitled to evidentiary weight, it was permitted to stand.[293] The "inconsistent inferences" doctrine requires keeping a case from the jury only when there is no evidentiary basis to support the jury's choice of one inference over competing inferences.

---

291. *Id.* at 34.

292. *Id.* at 33–34.

293. *Compare* Pennsylvania R.R. v. Chamberlain, 288 U.S. 333 (1933), the case that gave rise to the "inconsistent inferences" doctrine. There the court stated that "*At most* there was an inference to that effect drawn from observed facts which gave equal support to the opposite inference that the crash was occasioned by the coming together of other strings of cars entirely away from the scene of the accident." *Id.* at 339 (emphasis added). There was no evidence from which a reasonable jury could find it more likely than not that plaintiff's version of events actually occurred.

The question arises whether *Matsushita* is inconsistent with the foregoing analysis. Does the case stand for the proposition that summary judgment is in order whenever two inconsistent inferences can be drawn and the court considers them of equal force or finds no evidence tending to exclude one or the other? It seems highly doubtful that the Court intended to go that far, permitting usurpation of the jury's function. Rather, as discussed in the previous section, *Matsushita's* holding concerning impermissible inferences is based on substantive antitrust law. Because reducing prices below those of competitors is inherent in the operation of unrestrained markets, the inference of a conspiracy (absent evidence tending to exclude the possibility of independent action) "ma[de] no practical sense"[294] and hence would not be permitted to support a verdict.

---

294. *Matshushita*, 475 U.S. at 597.

# Chapter 7
# Procedural Issues

## Partial Summary Judgment and Case Management

After *Celotex*, there can be no doubt that summary judgment should be regarded as a helpful device in appropriate cases for the just, speedy, and inexpensive resolution of litigation.[295] A summary judgment motion can advance these aims, even when the motion is denied (although we do not suggest that a motion should be made absent substantial grounds for believing it will succeed).[296] Preparing the moving and opposition papers should lead the parties to analyze the case, define the legal and factual issues with precision, and marshal the relevant evidence. This process helps to clarify the triable issues and, therefore, the scope of appropriate discovery.[297] The court's explanation for denying the motion may further these objectives.

Equally important, summary judgment is not an all-or-nothing proposition: Rule 56 permits courts to grant "partial summary judgment"[298]—resolving certain issues or claims while leaving others for trial. Because Rules 56(a) and 56(b) speak of summary judgment "upon all or any part" of a claim, some courts have said that parties may move for partial summary judgment pursuant to these subsections.[299] Other courts, reading these subsections in the context of the entire rule, reject the concept of motions for partial summary

---

295. *Celotex*, 477 U.S. at 327. Some cases, of course, may be resolved more efficiently by simply going to trial.

296. *See* discussion of sanctions on pp. 76–77.

297. *See* Manual for Complex Litigation § 21.34 (2d ed.).

298. Partial summary judgment is actually a misnomer. When, pursuant to Rule 56, a court resolves some claims or issues but less than the entire case, its rulings are considered interlocutory and not immediately appealable. In addition, the trial court may generally modify or vacate them at any point prior to entry of judgment. Therefore, these rulings are in essence pretrial orders rather than judgments.

299. *See, e.g.*, American Nurses Ass'n v. State of Ill., 783 F.2d 716, 729 (7th. Cir. 1986); Wright v. Credit Bureau of Ga., 548 F. Supp. 591, 593 (D. Ga. 1982); Blackford v. Action Prods., 92 F.R.D. 79, 79–80 (W.D. Miss. 1981).

judgment.[300] Rules 56(c) and 56(d), however, by their terms authorize courts to adjudicate less than the entire case. Rule 56(c) permits judgment to be rendered on liability even if there is a genuine issue as to damages, and Rule 56(d) permits a court, when denying a summary judgment motion, to specify the material facts that appear without substantial controversy.[301]

Partial adjudications under Rules 56(c) and 56(d) can be valuable devices for defining, narrowing, and focusing the issues to be litigated, thus conserving judicial resources. Their utility is manifest in some of the situations in which partial summary adjudications have been made.

*Leasing Service Corp. v. Graham*[302] involved a lessor's failure to make rental and other payments. The lessee brought a breach of contract claim and moved for summary judgment. The lessor raised several defenses: unconscionability, fraudulent inducement and misrepresentation, and usury. Finding no material factual disputes pertaining to these defenses, the court granted summary judgment for the lessee on liability. However, the court ruled that the amount of damages remained a triable issue. There was a genuine dispute—concerning the amount plaintiff had bid for an item at an auction—that had a bearing on the amount of damages. Absent the lessee's summary judgment motion, and the availability of a partial disposition under Rule 56(c), a long and complicated—and largely unnecessary—trial

---

300. *See, e.g.,* Kendall McGaw Laboratory v. Community Memorial Hosp., 125 F.R.D. 420, 421 (D.N.J. 1989); Strandell v. Jackson County, 648 F. Supp. 126, 136 (S.D. Ill. 1986); Capitol Records v. Progress Record Distrib., 106 F.R.D. 25, 28 (D. Ill. 1985).

301. On its face, it is unclear whether Rule 56(c) authorizes a party to move for summary judgment on liability alone, or simply clarifies that a court may grant summary judgment as to liability when, in ruling on a Rule 56(a) or (b) motion, it finds a triable issue as to damages only. The one court to consider the issue directly concluded that Rule 56(c) authorizes a motion for summary judgment with respect to liability alone. Capitol Records v. Progress Record Distrib., 106 F.R.D. 25, 30 (D. Ill. 1985). Other courts have entertained and granted such motions without discussing the matter. *See, e.g.,* Artesian Water Co. v. Government of New Castle County, 659 F. Supp. 1269 (D. Del. 1987), *aff'd,* 851 F.2d 643 (3d Cir. 1988). By contrast, most courts to address the question have held that Rule 56(d) comes into play only when a party has unsuccessfully moved for full summary judgment pursuant to Rule 56(a) or (b). *See, e.g.,* Warner v. U.S., 698 F. Supp. 877, 878 (S.D. Fla. 1988); *Capitol Records,* 106 F.R.D. at 29; SFM Corp. v. Sundstrand Corp., 102 F.R.D. 555, 558 (N.D. Ill. 1984); *but see* Freeman v. Minnesota Mining & Mfg. Co., 675 F. Supp. 877, 891 (D. Del. 1987) (permitting direct Rule 56(d) motion because it "would save judicial resources and be economical" since the parties had already briefed and argued the disputed issue).

302. 646 F. Supp. 1410 (S.D.N.Y. 1986).

would have ensued. Instead, if the case went to trial, it would no longer involve the complex matrix of facts raised by the affirmative defenses, but only a straightforward adjudication as to the amount plaintiff bid at the auction. Moreover, there was reason to believe that the damage issue could be settled once liability had been established.

*Fraser v. Doubleday & Co.*[303] shows how courts can use Rule 56(d) to simplify the ensuing trial. Defendant had published a book written by plaintiffs, and plaintiffs became dissatisfied with defendant's advertising and promotion of the book. Plaintiffs brought suit, charging racial discrimination in violation of 42 U.S.C. § 1981, conversion, breach of contract, and fraud. They sought punitive as well as compensatory damages. Defendant moved for summary judgment on all of the claims. The court granted summary judgment on the claim of racial discrimination because it rested on conclusory statements unsupported by evidence. The court also granted summary judgment with respect to the charge of conversion, holding that, as a matter of law, a conversion cause of action cannot be maintained when the only damages sought are for breach of contract. The court denied summary judgment with respect to the contract claim, identifying several material factual disputes that precluded summary disposition. It also ruled that, as a matter of law, punitive damages were not available for breach of contract. With respect to the fraud claim, the court found that plaintiffs' complaint did not comply with the requirements of Fed. R. Civ. P. 9 and permitted plaintiffs leave to amend their complaint.

Before the summary judgment motion, the litigation involved four causes of action and a prayer for both compensatory and punitive damages. Had defendant not sought summary judgment, or had the court simply denied it outright (since triable issues remained), a major trial would have ensued. Instead, the court dismissed most of the claims, including the claim for punitive damages. Moreover, the court clarified what factual disputes remained to be tried. A potentially complex trial, involving numerous legal claims and factual determinations, was converted into a straightforward contract dispute.[304]

---

303. 587 F. Supp. 1284 (S.D.N.Y. 1984).

304. It should not be assumed that the nonmoving party was disadvantaged by the use of summary dispositions in *Fraser* and *Graham*. More likely than not, that party would have lost at trial on the issues that were summarily decided. For example, in *Fraser*, at the conclusion of plaintiffs' case the court presumably would have directed a verdict for defendant on the claim of racial discrimination (or granted defendant a

While Rule 56(d) is most often used to decide entire claims as in *Fraser*, it is also available for more modest purposes. The rule enables courts to resolve some factual matters while leaving others for trial.[305] In so doing, the court narrows the issues and focuses the remaining litigation. The case of *Belinsky v. Twentieth Restaurant*[306] is illustrative. Plaintiff alleged that he had suffered injuries from eating particles of glass embedded in food served to him by defendant and moved for summary judgment. The court, while denying plaintiff's motion, made the following determinations:

> Pursuant to Rule 56, I find the following facts:
> (1) . . . [P]laintiff entered and was served food in defendant's restaurant, which he consumed.
> (2) This food contained particles of a foreign substance, glass.
> (3) After eating some jello and discovering the presence of the impurity, plaintiff notified the manager. . . .
> The issues involving the injuries to plaintiff resulting from the consumption of the deleterious jello are reserved for trial.[307]

The trial court's order exemplifies the potential of Rule 56(d) to simplify litigation.

Rule 56(d) generally comes into play when a court denies a motion for summary judgment.[308] However, the process of narrowing and defining issues and focusing litigation, useful in nearly every case, can and should be pursued before a summary judgment motion is made or

---

judgment notwithstanding the verdict if plaintiffs prevailed). The party that loses at the partial summary judgment stage, no less than the party that prevails, is often spared the time and expense of litigating meritless claims. To be sure, the losing party is denied the chance to make a settlement based on the costs of trial to the movant and the remote possibility of success. But public policy considerations counsel against a court deferring ruling on issues ripe for resolution in order to help a party extract a settlement on the strength of meritless claims.

305. On its face, Rule 56(d) seems to permit courts only to resolve factual matters, not to rule on legal issues. However, courts have generally not insisted on such a narrow application of the rule. *See* Figueroa-Olmo v. Westinghouse Elec. Corp, 616 F. Supp. 1439, 1440 (D.P.R. 1985) ("wooden application" of 56(d) would defeat the purpose of the rules to achieve speedier and less expensive litigation).

306. 207 F. Supp. 412 (S.D.N.Y. 1962).

307. *Id.* at 414. It may be thought that the court made findings of fact that are improper at the summary judgment stage. However, the defendant had not denied these factual claims, only averred that it was without knowledge as to them, and produced no countervailing facts in opposition to the motion. The court was doing exactly what Rule 56(d) authorizes: "ascertain[ing] what material facts exist without substantial controversy and what material facts are actually and in good faith controverted."

308. *See* note 301.

even contemplated. Conferences under Fed. R. Civ. P. 16 serve this purpose, since the rule specifies as one agenda item the formulation and simplification of issues, including the elimination of frivolous claims or defenses.[309] Rule 16 can be used in tandem with Rule 56 to identify issues susceptible to summary judgment and those requiring trial.[310]

## Cross-Motions for Summary Judgment

Because Rule 56 authorizes both plaintiffs and defendants to move for summary judgment, parties sometimes file cross-motions. Even absent a cross-motion, the court may grant summary judgment for either party: it may do so sua sponte in the absence of any motion[311] or may grant summary judgment for the nonmovant by treating its opposition as a cross-motion.[312] In such circumstances, the court must ensure that the losing party had notice that summary judgment was contemplated and had an opportunity to respond.[313]

The filing of cross-motions does not ensure that summary judgment is in order. Each motion must be considered on its own merits, and both may be denied.[314] Even though each party believes it is entitled to recover as a matter of law, genuine factual disputes may remain. Courts are no more permitted to resolve such disputes on cross-motions for summary judgment than on a single motion.[315]

---

309. Rule 16 and pretrial conferences can help accomplish numerous goals germane to the effective use of summary judgment motions. *See* 3 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice (2d ed. 1985) § 16.04 at 16-22–16-23. First, they may clarify which issues are suited for a summary judgment motion and what factual basis will be needed to decide the motion. This, in turn, will enable the parties to conduct discovery with more precision and economy (and give the court a better basis for ensuring that this is done). Indeed, the parties can agree on various cooperative measures that will make discovery quicker and less expensive. Moreover, this process will sometimes clarify that there are genuine factual disputes and thus save the parties and the court the time and expense of preparing and considering summary judgment motions. In other cases it may hasten the recognition that summary judgment *should* be sought and thus prevent superfluous discovery and other pretrial activity.

310. *See* Manual for Complex Litigation §§ 21.24–21.34 (2d ed.).

311. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986).

312. *See, e.g.,* Cool Fuel v. Connett, 685 F.2d 309, 311 (9th Cir. 1982).

313. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); Cool Fuel v. Connett, 685 F.2d 309, 312 (9th Cir. 1982).

314. *See* Shook v. U.S., 713 F.2d 662, 665 (11th Cir. 1983).

315. *See, e.g.,* ITCO Corp. v. Michelin Tire Corp. Commercial Div., 722 F.2d 42, 45 n.3 (4th Cir. 1983), *cert. denied*, 469 U.S. 1215 (1985).

Consider, for example, a case in which plaintiff moves for summary judgment and defendant's opposition disputes the claim of negligence. Defendant's cross-motion argues that even assuming that defendant was negligent,[316] plaintiff is barred from recovery by assumption of risk; the plaintiff's opposition counters that plaintiff was unaware of the risk involved because defendant concealed it. There may be triable issues with respect to each motion, in which case both should be denied.

Indeed, when parties make cross-motions for summary judgment, they are not thereby relieved from filing materials in opposition to the other party's motion. If one party's materials in support of its motion contain specific facts that answer the other party's motion, the court may choose to treat them as opposition to the motion. When, however, a party's cross-motion does not adequately respond to the other party's motion, the cross-movant must file an opposition or risk a judgment against it for failure to oppose a properly supported motion.[317]

When cross-motions are filed, the question will arise whether the parties thereby waived their right to a trial with live testimony. The court should not assume such a waiver but should inquire on the record what the parties intend and may suggest such a waiver where appropriate. Even if, with the parties' consent, the case is submitted on cross-motions, the court may hold a limited hearing to receive evidence under Fed. R. Civ. P. 43(e).

## Timing of Motion and Discovery: Rule 56(f)

The appropriate time for filing a summary judgment motion depends on the circumstances of the case. When the issue is one purely of law, requiring little or no discovery, the motion should be filed early. As suggested on page 73, the Rule 16 conference should identify the dispositive issues and help determine whether they are potentially resolvable on summary judgment. When such issues become apparent, discovery should be focused on them in order to lay the foundation for filing a motion before much potentially unnecessary

---

316. It is permissible to concede an issue arguendo for the purposes of one's summary judgment motion while disputing the issue in opposition to a cross-motion. *See, e.g.,* Mingus Constr. Co. v. U.S., 812 F.2d 1387, 1391 (Fed. Cir. 1987).

317. *See, e.g.,* International Union v. Rancho Trucking Co., 897 F.2d 1248, 1253–55 (3d Cir. 1990).

activity has occurred. Deferring the filing of summary judgment motions until just before the final pretrial conference or the trial date obviously diminishes the value of such motions. On the other hand, a motion should not be filed prematurely. It is counterproductive for parties to rush into court with their motions (perhaps to educate the court or burden the opponent) until the requisite record has been developed.

Some courts have said that summary judgment "should not . . . ordinarily be granted before discovery has been completed."[318] Rule 56 requires not that all discovery be completed but that the opponent have adequate time for discovery.[319] Because it must present specific facts to show the existence of a genuine dispute, the opponent must be given time to conduct discovery to enable it to meet that burden. This does not mean that discovery must have been completed on all issues in the case.

Rule 56(f) permits the opponent to obtain more time for discovery by submitting an affidavit stating why it "cannot for reasons stated present by affidavit facts essential to justify the party's opposition." The court may then grant a continuance for further discovery. Denial of a continuance will be upheld unless found to be an abuse of discretion.[320] Courts will deny requests for continuances supported by no more than conclusory assertions that additional discovery will uncover material facts.[321] An application must set out the nature of the discovery to be undertaken, the kinds of evidence likely to be uncovered, and how this new evidence will create a material factual dispute.[322] An application may be denied not only for insufficiency but also if the party already had ample opportunity for discovery and failed to exercise due diligence, if the information on the allegedly disputed issue is actually in that party's hands, or if for any reason it does not appear plausible that the proposed discovery will yield material facts.[323]

---

318. Alabama Farm Bureau Mut. Casualty Co. v. American Fidelity Life Ins. Co., 606 F.2d 602, 609 (5th Cir. 1979), *cert. denied*, 449 U.S. 20 (1980).

319. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

320. *See, e.g.*, U.S. v. One 1985 Mercedes, 917 F.2d 415, 418 (9th Cir. 1990).

321. *See, e.g.*, Dowling v. City of Philadelphia, 855 F.2d 136, 139–40 (3d Cir. 1988).

322. *See, e.g., id.*

323. *See, e.g.*, Barfield v. Brierton, 883 F.2d 923, 931–32 (11th Cir. 1989); Small Business Admin. v. Light, 766 F.2d 394, 398 (8th Cir. 1985); Pfeil v. Rogers, 757 F.2d 850, 857 (7th Cir. 1985), *cert. denied*, 475 U.S. 1107 (1986).

When granting continuances, courts will ordinarily limit the amount and nature of permitted discovery to matters likely to raise a material factual issue.[324] Note that Rule 56(f) speaks of "facts essential to justify the party's opposition." Thus, appropriate use of Rule 56(f) serves the goal of judicial economy. When the court permits additional discovery, it can tailor it and maintain control while deferring a ruling on the summary judgment motion.

## Sanctions: Rule 56(g)

Rule 56(g) directs the court to impose sanctions for improper affidavits. The rule applies to affidavits submitted pursuant to either Rule 56(e) or (f) and to parties either seeking or opposing summary judgment.

As amended in 1983, Fed. R. Civ. P. 11 requires the imposition of sanctions on anyone signing a paper filed in court not "well-grounded in fact" or warranted by law or a reasonable argument for a change of law.[325] By contrast, Rule 56(g) provides for sanctions against parties employing affidavits "presented in bad faith or solely for the purpose of delay." It is limited to instances in which parties are found to have acted in *subjective* bad faith.[326] However, under the Supreme Court's recent decision in *Business Guides v. Chromatic Communications*

---

324. *See, e.g.*, First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 297–98 (1968).

325. The original Rule 11 authorized sanctions against attorneys only. However, the 1983 amendment to Rule 11 changed the rule to apply to anyone who signs a paper filed with the court.

326. As a result, Rule 56(g) sanctions have been assessed only in the case of patently improper affidavits, usually those contradicting other statements or evidence offered by the affiant, particularly if advanced at the last minute as a stalling tactic. *See* Barticheck v. Fidelity Union Bank, 680 F. Supp. 144, 147 (D.N.J. 1988) (last-minute affidavit that "clearly contradicts . . . prior sworn testimony"); Acrotube v. J. K. Fin. Group, 653 F. Supp. 470, 478 (N.D. Ga. 1987) (affidavit "flatly at odds with facts indisputably within [affiant's] knowledge"); Dardanell v. U.S., 634 F. Supp. 186, 190 (D. Minn. 1986), *aff'd*, 822 F.2d 1094 (8th Cir. 1987) (affidavit conflicts with information contained in accompanying brokerage statement). Courts have refrained from imposing sanctions when the improprieties in an affidavit resulted from negligence rather than willful misconduct. *See* Fort Hill Builders v. National Grange Mut. Ins., 866 F.2d 11, 16 (1st Cir. 1989); United Energy Corp. v. U.S., 622 F. Supp. 43, 47 (N.D. Cal. 1985) (affidavit contained factual errors but party's explanation—memory lapses—was reasonable and did not involve bad faith); Lowell v. Wantz, 85 F.R.D. 290, 291–92 (E.D. Pa. 1980) (although affidavit improperly includes conclusions of law, it does not constitute bad faith); Mathis v. Philadelphia Newspapers, 455 F. Supp. 406, 418 (E.D. Pa. 1978) (portions of affidavit were "affirmatively misleading" but they resulted from counsel's inadequate investigation rather than party's bad faith).

*Enterprises*,[327] parties are subject to sanctions under Fed. R. Civ. P. 11 in accordance with the same "reasonableness" test as attorneys. The Court held, moreover, that Rule 11 "establish[es] a more stringent standard *for all affidavits* and other papers" (emphasis added).[328] Hence, Rule 11 appears to have effectively swallowed up Rule 56(g) with respect to affidavits signed by litigants and their attorneys. Rule 56(g) presumably continues to apply to affidavits signed by non-parties.

## Appeals

### Appealable Orders

In a case involving only two parties and one claim, an order granting summary judgment to either party, pursuant to Rule 56(a) or (b), normally concludes the litigation. As such, it is a final judgment and therefore appealable under 28 U.S.C. § 1291. Conversely, the denial of summary judgment determines that a case will proceed; it is, therefore, an interlocutory order that is generally not immediately appealable. Similarly, a so-called partial summary judgment,[329] pursuant to Rule 56(c) and (d), is normally not appealable.[330]

The situation is more complex when there are multiple parties and summary judgment ends the litigation with respect to some but not all of them. Is the summary judgment a final order, immediately appealable, or must the losing party await termination of the entire litigation before appealing? The matter is generally governed by the same rule as in two-party/one-issue lawsuits: orders that do not terminate the litigation are interlocutory and not appealable until the conclusion of the litigation.[331] Thus, if a plaintiff sues defendants *A*, *B*, and *C* and is granted summary judgment against *A* but not against *B* and *C*, defendant *A* cannot appeal until the completion of the trial involving defendants *B* and *C*.

---

327. 111 S. Ct. 922 (1991).

328. *Id.* at 932.

329. *See* discussion of partial summary judgment on pp. 69–73. *See also* Rule 56(d) advisory committee's notes (amended 1946).

330. *See* 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice § 56.20 at 56-708–56-711.

331. *See* 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 2715 at 627 (1983).

While this rule prevents piecemeal appeals, it serves little purpose in cases where the claim against defendant *A* involves facts and issues substantially different from the claims against *B* and *C*. In addition, delay of a final resolution may cause undue hardship to one of the parties. Accordingly, under Rule 54(b), the trial court may enter a final judgment as to some of the parties or claims even though litigation remains pending as to other parties or claims if it finds "that there is no just reason for delay." The standards governing both trial courts and reviewing courts under Rule 54(b) are the same in summary judgment cases as in other cases.[332]

Apart from Rule 54(b), the general rule that partial summary judgments or denials of summary judgment are not immediately appealable is subject only to such exceptions as Congress or the courts have carved out: 28 U.S.C. § 1292(a) gives appellate courts jurisdiction over various matters that might otherwise be non-appealable, such as rulings on injunctions, and certain non-final determinations in admiralty and patent infringement suits. Under 28 U.S.C. § 1292(b), trial courts may certify for appeal an otherwise non-appealable interlocutory order that involves a disputed and controlling matter of law, the resolution of which will materially advance the litigation. In addition, the denial of a defendant's motion for summary judgment on a defense of qualified immunity is immediately appealable.[333] Finally, in particular cases appellate courts will exercise their equitable powers to review non-final judgments where, because of the peculiar circumstances of the case, injustice would otherwise result.[334]

---

332. The Supreme Court has said that a trial court may enter a final judgment pursuant to Rule 54(b) whenever doing so is in the "interest of sound judicial administration," and that such a determination is subject to great deference by the reviewing court. Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 10 (1979) (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437 (1956)). The circuits differ over exactly what the trial court must do when making a Rule 54(b) certification. A few courts require only that the district court recite the language of Rule 54(b); that is, declare that it "expressly determines that there is no just reason for delay." *See, e.g.,* Loyd v. Loyd, 731 F.2d 393, 399 (7th Cir. 1984). The majority of the circuits hold that the trial court must give its reasons for making that determination so the court of appeals has some basis for review. *See, e.g.,* Cemar, Inc. v. Nissan Motor Corp., 897 F.2d 120, 122–23 (3d Cir. 1990).

333. Harlow v. Fitzgerald, 457 U.S. 800 (1982).

334. *See, e.g.,* Pioche Mines Consol. v. Fidelity-Philadelphia Trust Co., 191 F.2d 399 (9th Cir. 1951) (order directing parties to perform settlement agreement reviewable because it required immediate disposition of property, even though trial court reserved power to make further orders).

*Scope of Review*

The prevailing rule is that appellate courts automatically exercise de novo review of orders granting summary judgment.[335] This is partly because summary judgment, by definition, entails a determination that no material factual disputes exist and, hence, decides only questions of law.[336] As discussed in Chapter 3, however, summary judgments are not confined to pure questions of law; they frequently involve determinations of ultimate fact. While de novo review is clearly required when a summary judgment decides a pure question of law, deferential review may arguably be appropriate when a summary judgment decides an ultimate fact.[337] This conclusion is suggested by *Pullman-Standard Co. v. Swint* (although not a summary judgment case), in which the Supreme Court held that a finding of intent to discriminate in violation of Title VII, *"whether an ultimate fact or not . . . is a factual matter subject to the clearly-erroneous standard of Rule 52(a)"* (emphasis added).[338]

Courts have generally not applied that holding to review of summary judgments because of the assumption that when findings are based on documentary evidence and involve no credibility judgments, a trial court is no better situated than an appellate court.[339] However,

---

335. *See, e.g.,* Riley v. Brown & Root, 896 F.2d 474, 476 (10th Cir. 1990) ("[W]e do not examine the trial court's rulings under the 'clearly erroneous' standard, despite the fact that the trial court conducted a rather extensive evidentiary hearing. . . . We review the entire record on summary judgment *de novo."*).

336. *See, e.g.,* Amsden v. Moran, 904 F.2d 748, 752 (1st Cir. 1990) ("Because granting summary judgment necessarily involves applying a legal standard to facts which must by definition be undisputed, appellate review of the district court's order is plenary."), *cert. denied,* 111 S. Ct. 713 (1991); Irons v. FBI, 811 F.2d 681, 684 (1st Cir. 1987) ("appellants come before us seeking review of the grant of partial summary judgment, and Fed. R. Civ. P. 56(c) bars the nisi prius court from resolving any controverted *factual* issues at the summary judgment stage. So, however one slices the loaf, the scope of our review on this appeal is plenary.").

337. A few courts have deferentially reviewed summary judgments or at least some findings made in the course of a summary judgment decision. *See* Stephens v. Department of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir.), *cert. denied,* 111 S. Ct. 555 (1990); Bechtel v. Robinson, 886 F.2d 644, 647 (3d Cir. 1989); Sheet Metal Workers v. Los Alamos Constr. Co., 550 F.2d 1258, 1265 (10th Cir. 1977).

338. 456 U.S. 273, 293 (1982). The Court did not regard this as a radical departure from prior law, a number of appellate courts having applied deferential review to findings of ultimate fact. To be sure, others had maintained that such findings must be reviewed de novo. *See* 9 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil § 2589 (1971) (collecting cases on both sides).

339. *See, e.g.,* Shields v. Eli Lilly & Co., 895 F.2d 1463, 1466 (D.C. Cir. 1990) ("Since pretrial summary judgment decisions are rendered exclusively on the basis of a 'paper'

the Supreme Court cast doubt on this assumption in *Anderson v. Bessemer*.[340] Although that case, too, did not involve a summary judgment, it addressed the question of deference to trial court findings based on documentary evidence and inferences from other facts:

> The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much.[341]

Some commentators have added another consideration: the erosion of respect for trial courts when appellate courts substitute their own fact-finding.[342] Closely related are considerations supporting the optimal division of labor between trial courts and appellate courts. The Seventh Circuit has said in this regard:

> Fact-intensive disputes, those whose resolution is unlikely to establish rules of future conduct, are reviewed under a deferential standard because the role of appellate courts in establishing and articulating rules of law is not at stake. District judges have the best information about the patterns of their cases, information [available] only at great cost in time. . . . Even when the dispute may be resolved by

---

record, an appellate court is equally well-positioned as a trial judge to assess the evidence at issue.").

340. 470 U.S. 564 (1985).

341. *Id.* at 574–75 (1985). The Court recently held that a trial court's legal and factual determinations in a Rule 11 sanctions decision should be reviewed deferentially. It reasoned that such cases involve "issues rooted in factual determinations" and deferential review would "free . . . appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court." Cooter & Gell v. Hartmarx Corp., 110 S. Ct. 2447, 2459–60 (1990).

342. 9 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil § 2587 (1971).

examining documents, the claim that the court of appeals is in as good a position as the district judge to review a written record disregards the division of labor (why should three judges redo the work of one?), [and] the sense of the situation that is valuable on all occasions.[343]

For these reasons, it may be appropriate to reconsider the practice of automatically reviewing all summary judgments de novo. That is not to suggest that all rulings turning on ultimate facts should be reviewed deferentially. Indeed, some of the considerations inclining a trial court to resolve a question of ultimate fact on summary judgment—the importance of uniformity or precedent in the area, high legal content in the law–fact mix, the policy implications of the decision, or the likelihood that it will affect a large class—may counsel de novo review by the appellate court. Nevertheless, an appellate court may well consider the basis for the trial court's ruling and the nature of the case before selecting the appropriate scope of review (as the Supreme Court has directed in cases under Fed. R. Civ. P. 52).[344]

---

343. Mars Steel Corp. v. Continental Bank, 880 F.2d 928, 933–34 (7th Cir. 1989) (en banc). In another Seventh Circuit case, Judge Richard Posner made much the same point, observing that deference to district court's fact-finding based only on documentary evidence makes sense because "district judges are specialists in finding facts, as we are not, and . . . our primary function, which is to maintain the uniformity and coherence of the law, is not engaged by a judgment so dependent on the specific circumstances of each case." Brock v. TIC Int'l Corp., 785 F.2d 168, 171 (7th Cir. 1986). *See also* Pierce v. Underwood, 487 U.S. 552, 560 (1988) ("By reason of settlement conferences and other pretrial activities, the district court may have insights not conveyed by the record."); Sotelo v. Indiana State Prison, 850 F.2d 1244, 1253–55 (7th Cir. 1988) (Easterbrook, J., concurring) (arguing that a trial court's findings on the voluntariness of confessions should be reviewed deferentially).

344. *See* Bose Corp. v. Consumers Union of U.S., 466 U.S. 485, 500–01 (1984).

# Appendix: Fed. R. Civ. P. 56

### Rule 56. Summary Judgment

**(a) For Claimant.** A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

**(b) For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

**(c) Motion and Proceedings Thereon.** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**(d) Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

**(e) Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's re-

sponse, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

(f) **When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(g) **Affidavits Made in Bad Faith.** Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987.)

## NOTES OF ADVISORY COMMITTEE ON RULES
## 1937 ADOPTION

This rule is applicable to all actions, including those against the United States or an officer or agency thereof.

Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact. It has been extensively used in England for more than 50 years and has been adopted in a number of American states. New York, for example, has made great use of it. During the first nine years after its adoption there, the records of New York county alone show 5,600 applications for summary judgments. Report of the Commission on the Administration of Justice in New York State (1934), p. 383. See also Third Annual Report of the Judicial Council of the State of New York (1937), p. 30.

In England it was first employed only in cases of liquidated claims, but there has been a steady enlargement of the scope of the remedy until it is now used in actions to recover land or chattels and in all other actions at law, for liquidated or unliquidated claims, except for a few designated torts and breach of promise of marriage. English Rules Under the Judicature Act (The Annual Practice, 1937) O. 3, r. 6; Orders 14, 14A, and 15; see also O. 32, r. 6, authorizing an application for judgment at any time upon admissions. In Michigan (3 Comp.Laws (1929) § 14260) and Illinois (Smith-Hurd Ill.Stats. c. 110, §§ 181, 259.15, 259.16), it is not limited to liquidated demands. New York (N.Y.R.C.P. (1937) Rule 113; see also Rule 107) has brought so many classes of actions under the operation of the rule that the Commission on Administration of Justice in New York State (1934) recommend that all restrictions be removed and that the remedy be available "in any action" (p.

287). For the history and nature of the summary judgment procedure and citations of state statutes, see Clark and Samenow, The Summary Judgment (1929), 38 Yale L.J. 423.

**Note to Subdivision (d).** See Rule 16 (Pre-Trial Procedure; Formulating Issues) and the **Note** thereto.

**Note to Subdivisions (e) and (f).** These are similar to rules in Michigan. Mich. Court Rules Ann. (Searl, 1933) Rule 30.

### 1946 AMENDMENT

**Note to Subdivision (a).** The amendment allows a claimant to move for a summary judgment at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party. This will normally operate to permit an earlier motion by the claimant than under the original rule, where the phrase "at any time after the pleading in answer thereto has been served" operates to prevent a claimant from moving for summary judgment, even in a case clearly proper for its exercise, until a formal answer has been filed. Thus in *Peoples Bank* v. *Federal Reserve Bank of San Francisco*, Cal. 1944, 58 F.Supp. 25, the plaintiff's countermotion for a summary judgment was stricken as premature, because the defendant had not filed an answer. Since Rule 12(a) allows at least 20 days for an answer, that time plus the 10 days required in Rule 56(c) means that under original Rule 56(a) a minimum period of 30 days necessarily has to elapse in every case before the claimant can be heard on his right to a summary judgment. An extension of time by the court or the service of preliminary motions of any kind will prolong that period even further. In many cases this merely represents unnecessary delay. See *United States* v. *Adler's Creamery, Inc.*, C.C.A.2, 1939, 107 F.2d 987. The changes are in the interest of more expeditious litigation. The 20-day period, as provided, gives the defendant an opportunity to secure counsel and determine a course of action. But in a case where the defendant himself makes a motion for summary judgment within that time, there is no reason to restrict the plaintiff and the amended rule so provides.

**Subdivision (c).** The amendment of Rule 56(c), by the addition of the final sentence, resolves a doubt expressed in *Sartor* v. *Arkansas Natural Gas Corp.*, 1944, 64 S.Ct. 724, 321 U.S. 620, 88 L.Ed. 967. See also Commentary, Summary Judgment as to Damages, 1944, 7 Fed. Rules Serv. 974; *Madeirense Do Brasil S/A* v. *Stulman-Emrick Lumber Co.*, C.C.A.2d, 1945, 147 F.2d 399, certiorari denied 65 S.Ct. 1201, 325 U.S. 861, 89 L.Ed. 1982. It makes clear that although the question of recovery depends on the amount of damages, the summary judgment rule is applicable and summary judgment may be granted in a proper case. If the case is not fully adjudicated it may be dealt with as provided in subdivision (d) of Rule 56, and the right to summary recovery determined by a preliminary order, interlocutory in character, and the precise amount of recovery left for trial.

**Subdivision (d).** Rule 54(a) defines "judgment" as including a decree and "any order from which an appeal lies." Subdivision (d) of Rule 56 indicates

clearly, however, that a partial summary "judgment" is not a final judgment, and, therefore, that it is not appealable, unless in the particular case some statute allows an appeal from the interlocutory order involved. The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication is more nearly akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact. See *Leonard v. Socony-Vacuum Oil Co.,* C.C.A.7, 1942, 130 F.2d 535; *Biggins v. Oltmer Iron Works,* C.C.A.7, 1946, 154 F.2d 214; 3 Moore's Federal Practice, 1938, 3190–3192. Since interlocutory appeals are not allowed, except where specifically provided by statute, see 3 Moore, op. cit. supra, 3155–3156, this interpretation is in line with that policy, *Leonard v. Socony-Vacuum Oil Co.,* supra. See also *Audi-Vision, Inc. v. RCA Mfg. Co.,* C.C.A.2, 1943, 136 F.2d 621; *Toomey v. Toomey,* App. D.C. 1945, 149 F.2d 19, 80 U.S. App. D.C. 77; *Biggins v. Oltmer Iron Works,* supra; *Catlin v. United States,* 1945, 65 S.Ct. 631, 324 U.S. 229, 89 L.Ed. 911.

## 1963 AMENDMENT

**Subdivision (c).** By the amendment "answers to interrogatories" are included among the materials which may be considered on motion for summary judgment. The phrase was inadvertently omitted from the rule, see 3 Barron & Holtzoff, Federal Practice & Procedure 159–60 (Wright ed. 1958), and the courts have generally reached by interpretation the result which will hereafter be required by the text of the amended rule. See Annot., 74 A.L.R.2d 984 (1960).

**Subdivision (e).** The words "answers to interrogatories" are added in the third sentence of this subdivision to conform to the amendment of subdivision (c).

The last two sentences are added to overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. In this situation Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are "well-pleaded," and not suppositious, conclusory, or ultimate. See *Frederick Hart & Co., Inc. v. Recordgraph Corp.,* 169 F.2d 580 (3d Cir. 1948); *United States ex rel. Kolton v. Halpern,* 260 F.2d 590 (3d Cir. 1958); *United States ex rel. Nobles v. Ivey Bros. Constr. Co., Inc.,* 191 F.Supp. 383 (D.Del. 1961); *Jamison v. Pennsylvania Salt Mfg. Co.,* 22 F.R.D. 238 (W.D. Pa. 1958); *Bunny Bear, Inc. v. Dennis Mitchell Industries,* 139 F.Supp. 542 (E.D. Pa. 1956); *Levy v. Equitable Life Assur. Society,* 18 F.R.D. 164 (E.D. Pa. 1955).

The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule. See 6 Moore's Federal Practice 2069 (2d ed. 1953); 3 Barron & Holtzoff, supra, § 1235.1.

It is hoped that the amendment will contribute to the more effective utilization of the salutary device of summary judgment.

The amendment is not intended to derogate from the solemnity of the pleadings. Rather it recognizes that, despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary.

Nor is the amendment designed to affect the ordinary standards applicable to the summary judgment motion. So, for example: Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgement is not appropriate. Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented. And summary judgment may be inappropriate where the party opposing it shows under subdivision (f) that he cannot at the time present facts essential to justify his opposition.

### 1987 AMENDMENT
The amendments are technical. No substantive change is intended.

# Table of Cases

Abbot v. Federal Forge, 912 F.2d 867 (6th Cir. 1990), 64.

Abourezk v. New York Airlines, 895 F.2d 1456 (D.C. Cir. 1990), 37.

Acrotube v. J. K. Fin. Group, 653 F. Supp. 470 (N.D. Ga. 1987), 76.

Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970), 5–7.

Advance Fin. Corp. v. Isla Rica Sales, 747 F.2d 21 (1st Cir. 1984), 52.

Agent Orange Prod. Liab. Litig., In re, 818 F.2d 187 (2d Cir. 1987),cert. denied, 487 U.S. 1234 (1988), 53.

Aguilera v. Cook County Police & Corrections Merit Bd., 760 F.2d 844 (7th Cir.), cert. denied, 474 U.S. 907 (1985), 50.

Alabama Farm Bureau Mut. Casualty Co. v. American Fidelity Life Ins. Co., 606 F.2d 602 (5th Cir. 1979), cert. denied, 449 U.S. 20 (1980), 75.

American Nurses Ass'n v. State of Ill., 783 F.2d 716 (7th. Cir. 1986), 69.

Amsden v. Moran, 904 F.2d 748 (1st Cir. 1990), cert. denied, 111 S. Ct. 713 (1991), 79.

Anderson v. Bessemer, 470 U.S. 564 (1985), 80.

Anderson v. Creighton, 483 U.S. 635 (1987), 20.

Anderson v. Hodel, 899 F.2d 766 (9th Cir. 1990), 49.

Anderson v. Liberty Lobby, 562 F. Supp. 201 (D.D.C. 1983), rev'd, 746 F.2d 1563 (D.C. Cir. 1984), rev'd, 477 U.S. 242 (1986), 7, 41, 43, 49, 57–62.

Armco Steel Corp. v. Realty Inv. Co., 273 F.2d 483 (8th Cir. 1960), 5.

Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946), 5.

Artesian Water Co. v. Government of New Castle County, 659 F. Supp. 1269 (D. Del. 1987), aff'd, 851 F.2d 643 (3d Cir. 1988), 70.

Atchison, T. & S. F. Ry. v. Buell, 480 U.S. 557 (1987), 49.

Avia Group Int'l v. L.A. Gear Cal., 853 F.2d 1557 (Fed. Cir. 1988), 31.

Avrick v. Rockmont Envelope Co., 155 F.2d 568 (10th Cir. 1946), 3.

Ayers v. City of Richmond, 895 F.2d 1267 (9th Cir. 1990), 15.

Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194 (2d Cir.), cert denied, 111 S. Ct. 150 (1990), 15.

Barfield v. Brierton, 883 F.2d 923 (11th Cir. 1989), 75.

Barmag Barmer Maschinenfabrik AG v. Murata Mach., 731 F.2d 831 (Fed. Cir. 1984), 17.

Bartichek v. Fidelity Union Bank, 680 F. Supp. 144 (D. N.J. 1988), 76.

Baumgartner v. U.S., 322 U.S. 665 (1944), 16.

Bechtel v. Robinson, 886 F.2d 644 (3d Cir. 1989), 79.

Belfiore v. New York Times Co., 826 F.2d 177 (2d Cir. 1987), cert. denied, 484 U.S. 1067 (1988), 23–24.

Belinsky v. Twentieth Restaurant, 207 F. Supp. 412 (S.D. N.Y. 1962), 72.

Berg v. First Am. Bankshares, 796 F.2d 489 (D.C. Cir. 1986), 35.

Blackford v. Action Prods., 92 F.R.D. 79 (W. D. Miss. 1981), 69.

Blankenship v. Kerr County, 878 F.2d 893 (5th Cir. 1989), 20.

Bose Corp. v. Consumers Union of U.S., 466 U.S. 485 (1984), 19, 47, 81.

Branti v. Finkel, 445 U.S. 507 (1980), 26.

British Airways Bd. v. Boeing Co., 585 F.2d 946 (9th Cir. 1978), cert. denied, 440 U.S. 981 (1979), 44.

Brock v. TIC Int'l Corp., 785 F.2d 168 (7th Cir. 1986), 81.

Bulthius v. Rexall Corp., 789 F.2d 1315 (9th Cir. 1985), 55–56.

Burkevich v. Air Line Pilots Ass'n, 894 F.2d 346 (9th Cir. 1990), 44.

Business Guides v. Chromatic Communications Enters., 111 S. Ct. 922 (1991), 76–77.

Canada v. Blain's Helicopters, 831 F.2d 920 (9th Cir. 1987), 50.

Capitol Records v. Progress Record Distrib., 106 F.R.D. 25 (D. Ill. 1985), 70.

Catrett v. Celotex Corp., 756 F.2d 181 (D.C. Cir. 1985), rev'd, 477 U.S. 317 (1986), 6–7, 14, 43, 45–46, 50, 69, 73, 75.

Catrett v. Johns-Manville Sales Corp., 826 F.2d 33 (D.C. Cir. 1987), cert. denied, 484 U.S. 1066 (1988), 51.

Cemar, Inc. v. Nissan Motor Corp., 897 F.2d 120 (3d Cir. 1990), 78.

Century Indem. Co. v. Shakespeare, 74 F.2d 392 (10th Cir. 1934), 16.

Chipollini v. Spencer Gifts, 814 F.2d 893 (3d Cir.), cert. denied, 483 U.S. 1052 (1987), 64.

City of Mount Pleasant v. Associated Elec. Co-op, 838 F.2d 268 (8th Cir. 1988), 23.

Coats & Clark v. Gay, 755 F.2d 1506 (11th Cir.), cert. denied, 474 U.S. 903 (1985), 40.

Collins v. Nagle, 892 F.2d 489 (6th Cir. 1989), 20.

Columbia Pictures Indus. v. Professional Real Estate Investors, 866 F.2d 278 (9th Cir. 1989), 20, 32.

Constant v. Advanced Micro-Devices, 848 F.2d 1560 (Fed. Cir.), cert. denied, 488 U.S. 892 (1988), 32.

Cool Fuel v. Connett, 685 F.2d 309 (9th Cir. 1982), 73.

Coordinated Pretrial Proceedings in Petroleum Antitrust Litig., In re, 906 F.2d 432 (9th Cir. 1990), cert. denied, 111 S. Ct. 2274 (1991), 63–64.

Cooter & Gell v. Hartmarx Corp., 110 S. Ct. 2447 (1990), 80.

Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1 (1979), 78.

Custom Accessories v. Jeffrey-Allan Indus., 807 F.2d 955 (Fed. Cir. 1986), 31.

Dameron v. Washington Magazine, 779 F.2d 736 (D.C. Cir. 1985), cert. denied, 476 U.S. 1141 (1986), 17.

Dardanell v. U.S., 634 F. Supp. 186 (D. Minn. 1986), aff'd, 822 F.2d 1094 (8th Cir. 1987), 76.

Dellums v. U.S. Nuclear Regulatory Comm'n, 863 F.2d 968 (D.C. Cir. 1988), 15, 21.

Didier v. J. C. Penney Co., 868 F.2d 276 (8th Cir. 1989), 34.

Dowling v. City of Philadelphia, 855 F.2d 136 (3d Cir. 1988), 75.

Dubbs v. CIA, 866 F.2d 1114 (9th Cir. 1989), 26.

Durham v. Business Management Assocs., 847 F.2d 1505 (11th Cir. 1988), 15, 33.

Edwards v. Aguillard, 482 U.S. 578 (1987), 15–16.

Estate of Detwiler v. Offenbecher, 728 F. Supp. 103 (S.D. N.Y. 1989), 53.

Evers v. General Motors Corp., 770 F.2d 984 (11th Cir. 1985), 53.

Farmland Indus. v. Grain Bd. of Iraq, 904 F.2d 732 (D.C. Cir. 1990), 13, 39.

Felty v. Graves-Humphreys Co., 818 F.2d 1126 (4th Cir. 1987), 34, 48.

Ferguson v. Greater Pocatello Chamber of Commerce, 848 F.2d 976 (9th Cir. 1988), 25.

Fidelity & Deposit Co. v. U.S., 187 U.S. 315 (1902), 2, 8.

Figueroa-Olmo v. Westinghouse Elec. Corp., 616 F. Supp. 1439 (D. P.R. 1985), 72.

Financial Timing Publications v. Compugraphic Corp., 893 F.2d 936 (8th Cir. 1990), 50.

First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253 (1968), 4, 63, 76.

Florom v. Elliott Mfg., 867 F.2d 570 (10th Cir. 1989), 29–30.

Fontenot v. Upjohn Co., 780 F.2d 1190 (5th Cir. 1986), 7.

Foremaster v. City of St. George, 882 F.2d 1485 (10th Cir. 1989), cert. denied, 110 S. Ct. 1937 (1990), 16.

Fort Hill Builders v. National Grange Mut. Ins., 866 F.2d 11 (1st Cir. 1989), 76.

Fraser v. Doubleday & Co., 587 F. Supp. 1284 (S.D. N.Y. 1984), 71–72.

Freeman v. Minnesota Mining & Mfg. Co., 675 F. Supp. 877 (D. Del. 1987), 70.

Garside v. Osco Drug, 895 F.2d 46 (1st Cir. 1990), 48, 51.

General Indus. Corp. v. Hartz Mountain Corp., 810 F.2d 795 (8th Cir. 1987), 23.

Gertz v. Welch, 418 U.S. 323 (1974), 58.

Gizoni v. S.W. Marine, 909 F.2d 385 (9th Cir. 1990), 17, 22.

Goodson-Todman Enters. v. Kellogg Co., 513 F.2d 913 (9th Cir. 1975), 5.

Goosman v. Pyle, 206 F. Supp. 120 (D. Md. 1962), 16.

Gramenos v. Jewel Co., 797 F.2d 432 (7th Cir. 1986), cert. denied, 481 U.S. 1028 (1987), 20, 25.

Gregory v. City of Rogers, 921 F.2d 750 (8th Cir. 1990), 16.

Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542 (9th Cir. 1990), 51.

Harlow v. Fitzgerald, 457 U.S. 800 (1982), 78.

Hearn v. Meyer, 664 F. Supp. 832 (S.D. N.Y. 1987), 17.

Heller v. Champion Int'l Corp., 891 F.2d 432 (2d Cir. 1989), 18.

Hersh v. Allen Prods. Co., 789 F.2d 230 (3d Cir. 1986), 33.

Heyman v. Commerce and Indus. Ins. Co., 524 F.2d 1317 (2d Cir. 1975), 4.

High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563 (9th Cir. 1990), 20.

Holley v. Seminole County School Dist., 755 F.2d 1492 (11th Cir. 1985), 15.

Horton v. Taylor, 767 F.2d 471 (8th Cir. 1985), 18, 26–27.

International Union v. Rancho Trucking Co., 897 F.2d 1248 (3d Cir. 1990), 74.

International Union v. Young Radiator Co., 904 F.2d 9 (7th Cir. 1990), 33.

Interroyal Corp. v. Sponseller, 889 F.2d 108 (6th Cir. 1989), cert. denied, 110 S. Ct. 1839 (1990), 49.

Irons v. FBI, 811 F.2d 681 (1st Cir. 1987), 79.

Isquith v. Middle S. Utils., 847 F.2d 186 (5th Cir.), cert. denied, 488 U.S. 926 (1988), 47–48.

ITCO Corp. v. Michelin Tire Corp. Commercial Div., 722 F.2d 42 (4th Cir. 1983), cert. denied, 469 U.S. 1215 (1985), 73.

James v. Otis Elevator Co., 854 F.2d 429 (11th Cir. 1988), 66.

Japanese Elec. Prods., In re, 723 F.2d 238 (3d Cir. 1983), rev'd, 475 U.S. 574 (1986), 62.

Jaroma v. Massey, 873 F.2d 17 (1st Cir. 1989), 49.

Johnson v. Enron Corp., 906 F.2d 1234 (8th Cir. 1990), 33.

Jordan v. Cameron Iron Works, 900 F.2d 53 (5th Cir. 1990), 33.

Keiser v. Coliseum Properties, 614 F.2d 406 (5th Cir. 1980), 49.

Kendall McGaw Lab. v. Community Memorial Hosp., 125 F.R.D. 420 (D. N.J. 1989), 70.

Knight v. U.S. Fire Ins. Co., 804 F.2d 9 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987), 30.

Laningham v. U.S. Navy, 813 F.2d 1236 (D.C. Cir. 1987), 36.

Lavender v. Kurn, 327 U.S. 645 (1946), 65.

Leasing Service Corp. v. Graham, 646 F. Supp. 1410 (S.D. N.Y. 1986), 70–71.

Leonard v. Dixie Well Serv. & Supply, 828 F.2d 291 (5th Cir. 1987), 50.

Lowell v. Wantz, 85 F.R.D. 290 (D.C. Pa. 1980), 76.

Loyd v. Loyd, 731 F.2d 393 (7th Cir. 1984), 78.

Lujan v. National Wildlife Fed'n, 110 S. Ct. 3177 (1990), 15.

Lynch v. Anderson, 880 F.2d 1003 (8th Cir. 1989), 20.

Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179 (1st Cir. 1989), 48.

Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123 (1st Cir. 1987), 15.

Marcoux v. Mid-States Livestock, 429 F. Supp. 155 (N.D. Iowa. 1977), 61.

Mars Steel Corp. v. Continental Bank, 880 F.2d 928 (7th Cir. 1989), 80–81.

Martin v. Merrell Dow Pharmaceuticals, 851 F.2d 703 (3d Cir. 1988), 48.

Mathis v. Philadelphia Newspapers, 455 F. Supp. 406 (E.D. Pa. 1978), 76.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 513 F. Supp. 1100 (E.D. Pa. 1981), rev'd, 723 F. 2d 238 (3d Cir. 1983), rev'd, 475 U.S. 574 (1986), 7, 62–64, 68.

McDermott Int'l v. Wilander, 111 S. Ct. 807 (1991), 22.

McLaughlin v. Liu, 849 F.2d 1205 (9th Cir. 1988), 32–33, 63.

Medical Inst. of Minn. v. National Ass'n of Trade & Technical Schools, 817 F.2d 1310 (8th Cir. 1987), 39.

Melrose v. Shearson/Am. Express, 898 F.2d 1209 (7th Cir. 1990), 47.

Mendez v. Banco Popular de P.R., 900 F.2d 4 (1st Cir. 1990), 49.

Metge v. Baehler, 762 F.2d 621 (8th Cir. 1985), cert. denied, 474 U.S. 1057 (1986), 35.

Mid-State Fertilizer Co. v. Exchange Nat'l Bank, 877 F.2d 1333 (7th Cir. 1989), 53.

Miller v. A. H. Robins Co., 766 F.2d 1102 (7th Cir. 1985), 48.

Miller v. Fenton, 474 U.S. 104 (1985), 18.

Mingus Constr. Co. v. U.S., 812 F.2d 1387 (Fed. Cir. 1987), 74.

Monroe v. City of Woodville, 819 F.2d 507 (5th Cir. 1987), cert. denied, 484 U.S. 1042 (1988), 26.

Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752 (1984), 60–61, 63.

Morrisey v. Procter & Gamble Co., 379 F.2d 675 (1st Cir. 1967), 5.

Moutoux v. Gulling Auto Elec., 295 F.2d 573 (7th Cir. 1961), 5.

Movie 1 & 2 v. United Artists Communications, 909 F.2d 1245 (9th Cir. 1990), 25.

National Screen Serv. Corp. v. Poster Exch., 305 F.2d 647 (5th Cir. 1962), 5.

New York Times Co. v. Sullivan, 376 U.S. 254 (1964), 58.

Nunez v. Superior Oil Co., 572 F.2d 1119 (5th Cir. 1978), 40–41.

Offshore Aviation v. Transcon Lines, 831 F.2d 1013 (11th Cir. 1987), 50.

Orloff v. Allman, 819 F.2d 904 (9th Cir. 1987), 34–35.

Pacific Serv. Station Co. v. Mobil Oil Corp., 689 F.2d 1055 (Temp. Emer. Ct. App. 1982), 65.

Paoli R.R. Yard PCB Litig., In re, 916 F.2d 829 (3d Cir. 1990), 52, 54–56.

Pasillas v. McDonald's Corp., 927 F.2d 440 (9th Cir. 1991), 32.

Pennsylvania R.R. v. Chamberlain, 288 U.S. 333 (1933), 65, 67.

Perez de la Cruz v. Crowley Towing & Transp. Co., 807 F.2d 1084 (1st Cir. 1986), cert. denied, 481 U.S. 1050 (1987), 48.

Pfeil v. Rogers, 757 F.2d 850 (7th Cir. 1985), cert. denied, 475 U.S. 1107 (1986), 52, 75.

Phillips Oil v. OKC Corp., 812 F.2d 265 (5th Cir.), cert. denied, 484 U.S. 851 (1987), 41.

Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir. 1951), 5.

Pierce v. Underwood, 487 U.S. 552 (1988), 81.

Pioche Mines Consol. v. Fidelity-Philadelphia Trust Co., 191 F.2d 399 (9th Cir. 1951), 78.

Pleasant v. Lovell, 876 F.2d 787 (10th Cir. 1989), 20.

Poller v. Columbia Broadcasting Sys., 368 U.S. 464 (1962), 4.

Posadas de P.R. v. Radin, 856 F.2d 399 (1st Cir. 1988), 40.

Pride v. Exxon Corp., 911 F.2d 251 (9th Cir. 1990), 28.

Professional Managers v. Fawer, 799 F.2d 218 (5th Cir. 1986), 41.

Property Management & Invs. v. Lewis, 752 F.2d 599 (11th Cir. 1985), 50.

Pullman-Standard v. Swint, 456 U.S. 273 (1982), 13, 79.

Railroad Co. v. Stout, 84 U.S. 657 (1873), 17.

Ransom v. U.S., 900 F.2d 242 (Fed. Cir. 1990), 15, 29.

R. C. Dick v. Thermogenics, 890 F.2d 139 (9th Cir. 1989), 24.

Richardson v. Bonds, 860 F.2d 1427 (7th Cir. 1988), 48.

Riley v. Brown & Root, 896 F.2d 474 (10th Cir. 1990), 79.

Schaafsma v. Morin Vt. Corp., 802 F.2d 629 (2d Cir. 1986), 17.

Schneider v. TRW, 1991 LEXIS 14213 (9th Cir. 1991), 49.

Sears, Roebuck & Co. v. Mackey, 351 U.S. 427 (1956), 78.

SFM Corp. v. Sundstrand Corp., 102 F.R.D. 555 (N.D. Ill. 1984), 70.

Shaw v. Lindheim, 908 F.2d 531 (9th Cir. 1990), 32.

Sheet Metal Workers v. Los Alamos Constr. Co., 550 F.2d 1258 (10th Cir. 1977), 79.

Shields v. Eli Lilly & Co., 895 F.2d 1463 (D.C. Cir. 1990), 79–80.

Shook v. U.S., 713 F.2d 662 (11th Cir. 1983), 73.

S. J. Groves & Sons Co. v. Ohio Turnpike Comm'n, 315 F.2d 235 (6th Cir.), cert. denied, 375 U.S. 824 (1963), 4.

Small Business Admin. v. Light, 766 F.2d 394 (8th Cir. 1985), 75.

Smoot v. Rittenhouse, 27 Wash. L. Rep. 741 (1899), 1.

Sotelo v. Indiana State Prison, 850 F.2d 1244 (7th Cir. 1988), 81.

Springs v. First Nat'l Bank of Cut Bank, 835 F.2d 1293 (9th Cir. 1988), 15.

State Farm Fire & Casualty Co. v. Estate of Jenner, 856 F.2d 1359 (9th Cir. 1988), 31.

State Farm Fire & Casualty Co. v. Miles, 730 F. Supp. 1462 (S.D. Ind. 1990), 53.

Stepanischen v. Merchants Dispatch Transp. Corp., 722 F.2d 922 (1st Cir. 1983), 49.

Stephens v. Department of Health & Human Servs., 901 F.2d 1571 (11th Cir.), cert. denied, 111 S. Ct. 555 (1990), 79.

Stone v. William Beaumont Hosp., 782 F.2d 609 (6th Cir. 1986), 23.

Strandell v. Jackson County, 648 F. Supp. 126 (S.D. Ill. 1986), 70.

Suydam v. Reed Stenhouse of Wash., 820 F.2d 1506 (9th Cir. 1987), 22–23.

Tennant v. Peoria & P. U. Ry., 321 U.S. 29 (1944), 65–67.

Thurman Indus. v. Pay 'N Pak Stores, 875 F.2d 1369 (9th Cir. 1989), 23.

Tillotson, Ltd. v. Walbro Corp., 831 F.2d 1033 (Fed. Cir. 1987), 31.

Tindall v. U.S., 901 F.2d 53 (5th Cir. 1990), 36.

Tippens v. Celotex Corp., 805 F.2d 949 (11th Cir. 1986), 49.

Transco Leasing Corp. v. U.S., 896 F.2d 1435 (5th Cir. 1990), 65.

Transworld Airlines v. American Coupon Exch., 913 F.2d 676 (9th Cir. 1990), 35–36, 40–41.

Trevino v. Yamaha Motor Corp., 882 F.2d 182 (5th Cir. 1989), 34.

Unelko Corp. v. Rooney, 912 F.2d 1049 (9th Cir. 1990), 27.

United Ass'n Local 38 Pension Trust Fund v. Aetna Casualty & Sur. Co., 790 F.2d 1428 (9th Cir. 1986), 28–29.

United Energy Corp. v. U.S., 622 F. Supp. 43 (D.C. Cal. 1985), 76.

United Rubber v. Lee Nat'l Corp., 323 F. Supp. 1181 (S.D. N.Y. 1971), 5.

U.S. v. Container Corp., 393 U.S. 333 (1969), 21.

U.S. v. Gypsum Co., 340 U.S. 76 (1950), 21.

U.S. v. J. B. Williams Co., 498 F.2d 414 (2d Cir. 1974), 39.

U.S. v. Kasuboski, 834 F.2d 1345 (7th Cir. 1987), 52.

U.S. v. O'Connell, 890 F.2d 563 (1st Cir. 1989), 46, 51–52.

U.S. v. One 107.9 Acre Parcel of Land Located in Warren Township, 898 F.2d 396 (3d Cir. 1990), 46, 48.

U.S. v. One 1985 Mercedes, 917 F.2d 415 (9th Cir. 1990), 75.

U.S. v. One Rockwell Int'l Commander, 754 F.2d 284 (8th Cir. 1985), 17.

U.S. v. Rule Indus., 878 F.2d 535 (1st Cir. 1989), 19.

U.S. v. Various Slot Machs. on Guam, 658 F.2d 697 (9th Cir. 1981), 53, 56.

U.S. v. Warner, 855 F.2d 372 (7th Cir. 1988), 16.

U.S. Fire Ins. Co. v. Royal Ins. Co., 759 F.2d 306 (3d Cir. 1985), 58.

Veillon v. Exploration Servs., 876 F.2d 1197 (5th Cir. 1989), 49.

Walker v. Wayne County, 850 F.2d 433 (8th Cir. 1988), cert. denied, 488 U.S. 1008 (1989), 51.

Warner v. U.S., 698 F. Supp. 877 (S.D. Fla. 1988), 70.

Washington v. Armstrong World Indus., 839 F.2d 1121 (5th Cir. 1988), 52.

Weinberger v. Hynson, 412 U.S. 609 (1973), 39.

Weiss v. York Hosp., 745 F.2d 786 (3d Cir. 1984), cert. denied, 470 U.S. 1060 (1985), 25.

West v. State Farm Ins. Co., 868 F.2d 348 (9th Cir. 1989), 30–31.

West Am. v. Aetna Casualty & Sur. Co., 915 F.2d 1181 (8th Cir. 1990), 16.

Whitaker v. Coleman, 115 F.2d 305 (5th Cir. 1940), 3.

Wilson v. Chicago, M., St. P. & P. R.R., 841 F.2d 1347 (7th Cir. 1988), 16.

Wilson v. Seiter, 893 F.2d 861 (6th Cir. 1990), 44.

Worsham v. A. H. Robins Co., 734 F.2d 676 (11th Cir. 1984), 61.

Wright v. Credit Bureau of Ga., 548 F. Supp. 591 (D. Ga. 1982), 69.

Yancey v. Carroll County, 876 F.2d 1238 (6th Cir. 1989), 44.

# Table of Authorities

Black's Law Dictionary.

Brunet, *The Use and Misuse of Expert Testimony in Summary Judgment*, 22 U.C. Davis L. Rev. 94 (1988), 8, 52.

Cecil, *Trends in Summary Judgment Practice: A Summary of Findings* FJC Directions, No. 1, Apr. 1991, at 11, 4.

Clark, *Summary Judgments—A Proposed Rule of Court*, 2 F.R.D. 364 (1943), 3.

Clark & Samenow, *The Summary Judgment*, 38 Yale L.J. 423 (1929), 1.

James, *Proof of the Breach in Negligence Cases (Including Res Ipsa Loquitur)*, 37 Va. L. Rev. 179 (1951), 65.

Keeton, *Creative Continuity in the Law of Torts*, 75 Harv. L. Rev. 463 (1962), 20.

Keeton, *Legislative Facts and Similar Things: Deciding Disputed Premise Facts*, 73 Minn. L. Rev. 1 (1988), 20.

Louis, *Federal Summary Judgment Doctrine: A Critical Analysis*, 83 Yale L.J. 745 (1974), 5.

Louis, *Summary Judgment and the Actual Malice Controversy in Constitutional Defamation Cases*, 57 S. Cal. L. Rev. 707 (1984), 6.

Manual for Complex Litigation, Second, 69, 73.

Millar, *Three American Ventures in Summary Civil Procedure*, 38 Yale L.J. 193 (1928), 1.

J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice (2d ed. 1985), 73, 77.

Nelkin, *One Step Forward, Two Steps Back: Summary Judgment After Celotex*, 40 Hastings L.J. 53 (1988), 6, 50.

Note, *Summary Judgment and Circumstantial Evidence*, 40 Stan. L. Rev. 491 (1988), 65.

Prosser and Keeton on the Law of Torts (W. Keeton 5th ed. 1984), 15.

Richey, *A Modern Management Technique for Trial Courts to Improve the Quality of Justice: Requiring Direct Testimony to Be Submitted in Written Form Prior to Trial*, 72 Geo. L.J. 73 (1983), 41.

Rogers, *Summary Judgment in Antitrust Conspiracy Litigation*, 10 Loy. U. Chi. L.J. 667 (1979), 4.

Schwarzer, *Summary Judgment: A Proposed Revision of Rule 56*, 110 F.R.D. 213 (1986), 9.

Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465 (1984), 4, 7.

Vairo, Through the Prism: Summary Judgment and the Trilogy, Federal Judicial Center Seminar, Nov.–Dec. 1988, 4.

Weinstein, *Improving Expert Testimony*, 20 U. Rich. L. Rev. (1986), 52.

C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, 58, 77, 79–80.

## About the Federal Judicial Center

The Federal Judicial Center is the continuing education and research arm of the federal judicial system. It was established by Congress in 1967 (28 U.S.C. §§ 620–629) on the recommendation of the Judicial Conference of the United States.

By statute, the Chief Justice of the United States is chairman of the Center's Board, which also includes the director of the Administrative Office of the U.S. Courts and six judges elected by the Judicial Conference. The Board appoints the Center's director and deputy director, who supervise the Center's operations. The Center is organized into five divisions.

The Court Education Division provides educational programs and services for non-judicial court personnel, including clerk's office personnel and probation officers.

The Judicial Education Division provides educational programs and services for judges. These include orientation seminars and special continuing education workshops.

The Publications & Media Division is responsible for the development and production of educational audio and video media as well as editing and coordinating the production of all Center publications, including research reports and studies, educational and training publications, reference manuals, and periodicals. The Center's Information Services Office, which maintains a specialized collection of materials on judicial administration, is located within this division.

The Research Division undertakes empirical and exploratory research on federal judicial processes, court management, and sentencing and its consequences, often at the request of the Judicial Conference and its committees, the courts themselves, or other groups in the federal system.

The Center also houses the Federal Judicial History Office, which was created at the request of Congress to offer programs relating to judicial branch history.