# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

```
-------------------------------------------   x
BRYCE CARRASCO,                    :              Civil Action
        Plaintiff,                 :
    v.                             :              Case No. 21-532 (SAG)
M&T BANK,                          :
        Defendant.                 :
-------------------------------------------   x
```

**PLAINTIFF'S MEMORANDUM SUPPORTING HIS REQUESTS TO TAKE THE DEPOSITIONS OF LAURA O'HARA AND RENE JONES ON JULY 8, 2021**

This discussion and analysis seeks to clarify the analytical framework utilized in forming an estimate of the appropriate punitive damages award in the above-styled action against M&T Bank Corporation. A sound valuation methodology is critical in assessing punitive damages, especially when larger corporations are involved. The core principle guiding the sound fundamental analysis must maintain the proper perspective with a keen focus on the relative nature of corporate finance. First, the legal and regulatory framework will be reviewed, followed by an analysis of precedent cases relevant in establishing an appropriate benchmark, starting with *Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008) to lay the foundation which is built upon by the application in the more recent case of *Daugherty v. Ocwen Loan Servicing*, 701 F. App'x 246 (4th Cir. 2017). These two cases provide an appropriate universe of analogous precedents for benchmarking punitive damages imposed against furnishers who willfully violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2(b) in the Fourth Circuit Court of Appeals. The valuation methodology employs a relative analytical framework based on a metric which accounts for relative differences in the asset base of the companies involved,

which is achieved by calculating the percent ratio of punitive damages awards to the net worth,

or shareholders' equity of the defendants in *Saunders* and *Daugherty*, and then taking the

average of those two percentages and applying it to the reported book value of shareholder's

equity of M&T Bank as of December 31, 2020. The net worth, which is often used

interchangeably with the shareholders' equity line item on the balance sheet, is pulled from the

most recent audited financial statements, filed with Securities and Exchange Commission (SEC)

on Form 10-K, pursuant to the disclosure requirements set forth in the Securities and Exchange

Act of 1934.

Sarbanes-Oxley was enacted in 2002 after the bankruptcy of Enron which exposed the

plethora of corporate accounting gimmicks which obfuscated the financial position of large

publicly traded corporations. The Sarbanes-Oxley act is also known as the "Public Company

Accounting Reform and Investor Protection Act" and "Corporate and Auditing, Accountability,

Responsibility, and Transparency Act."

The corporate CEOs and CFOs are directly responsible to ensure SOX compliance, and

they are also obligated to assure that financial records are accurate and that reports submitted to

the SEC are accurate. Failure to comply renders the executives personally liable. The act added

mandatory financial disclosures including insider trading and off balance sheet transactions.

As well, the act specifies that the CEO must be the one to sign the corporate tax return –

and is therefore responsible for any misstatements to the IRS. Attached as Exhibit A is a signed

certification regarding the financial statements for M&T Bank Corporation for the fiscal year

ending December 31, 2020. Rene Jones signed the statement under 18 U.S.C. § 1350, which was

passed as part of the Sarbanes-Oxley Act of 20020. The statute sets forth the CEOs obligations to

certify financial reports, and sets forth the following requirements:

**18 U.S. Code § 1350.Failure of corporate officers to certify financial reports.**

(a) **Certification of Periodic Financial Reports**.—

Each periodic report containing financial statements filed by an issuer with the Securities Exchange Commission pursuant to section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a) or 78o(d)) shall be accompanied by a written statement by the chief executive officer and chief financial officer (or equivalent thereof) of the issuer.

(b) **Content**.—

The statement required under subsection (a) shall certify that the periodic report containing the financial statements fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act pf [1] 1934 (15 U.S.C. 78m or 78o(d)) and that information contained in the periodic report fairly presents, in all material respects, the financial condition and results of operations of the issuer.

(c) **Criminal Penalties**.  —Whoever—

(1) certifies any statement as set forth in subsections (a) and (b) of this section knowing that the periodic report accompanying the statement does not comport with all the requirements set forth in this section shall be fined not more than $1,000,000 or imprisoned not more than 10 years, or both; or

(2) willfully certifies any statement as set forth in subsections (a) and (b) of this section knowing that the periodic report accompanying the statement does not comport with all the requirements set forth in this section shall be fined not more than $5,000,000, or imprisoned not more than 20 years, or both.

(Added Pub. L. 107–204, title IX, § 906(a), July 30, 2002, 116 Stat. 806.)

Plaintiff must be given the opportunity to obtain discovery through deposing Rene Jones because he is responsible for overseeing the procedures and controls in preparing M&T Bank's audited financial statements, and it is necessary to obtain his testimony as to the financial position of the defendant M&T Bank so that the factual record can be developed as it relates to the building a case for the proper levy of punitive damages in the event the court finds defendant liable for willful noncompliance of the FCRA. Rene Jones is the party who plaintiff has the right to examine through deposition testimony or else the question of the defendant's net worth could be subject to questions once discovery concludes and the case proceeds to the next stage. This would be impermissible curtailment of plaintiff's right to discovery as a civil litigant.

The purpose of punitive damages is to punish and deter the wrongdoer from repeating the same actions in the future, and therefore the analysis as to the appropriate amount necessary to achieve the twin purposes of punitive awards requires consideration of a defendant's financial position and net worth. *See e.g., TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 n.28 (1993) (noting that it is well settled that a defendant's net worth is typically considered in assessing punitive damages); *Johansen v. Combustion Engine Inc.*, 170 F.3d 1320, 1338-39 (11th Cir. 1999) (allowing $4.35 million punitive damages award because a larger award is needed to attract the attention of large corporations); *accord Saunders v. Branch Banking & Trust Co. of VA.*, 526 F.3d 142, 154-55 (4th Cir. 2008).

Plaintiff also must be provided the opportunity to depose Laura O'Hara as she is a key decision maker in M&T's legal division and therefore it is necessary to obtain testimony on the stance she has taken with respect to plaintiff's account and underlying legal rationale for failing to uphold her employer's statutorily mandated obligations. The Eleventh Circuit Court of Appeals recently issued instructive guidance as to the broad scope of discovery and the right of civil litigants to obtain full discovery in civil actions in the United States trial courts. The opinion is attached hereto.

## SIGNATURE PAGE

UNDER PENALTY OF PERJURY, I hereby certify that the foregoing statements are true and correct based on current belief, understanding and knowledge, and are not being filed for any improper purpose. Respectfully submitted.


SIGNED BY:                                            DATED: 6/26/2021

X _____