# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

-------------------------------------------------- x

BRYCE CARRASCO,            :               Civil Action

      Plaintiff,          :

   v.                    :               Case No. 21-532 (SAG)

M&T BANK,              :

      Defendant.      :

-------------------------------------------------- x

## PLAINTIFF'S REPLY MEMORANDUM SUPPORTING
## HIS MOTION FOR SUMMARY JUDGMENT

_____

Plaintiff filed his motion for summary judgment on July 1, 2021 and Defendant M&T Bank filed its response on July 15, 2021. M&T has had ample opportunity to make the required evidentiary showing and has failed to make a showing which would preclude this Court from granting judgment as a matter of law in Plaintiff's favor. The factual record is established and the Court has been presented with all evidence available to both parties in this case. Supreme Court jurisprudence established the threshold for allowing a case to proceed to the trier of fact over 100 years ago, explaining that summary procedure essentially "prescribes the means of making an issue; the issue made as prescribed, the right of trial by jury accrues." *Fidelity & Deposit Co. of Maryland v. United States*, 187 U.S. 315, 320 (1902).

Plaintiff submits this memorandum to show that no genuine dispute as to any material fact exists in this case, and that Plaintiff is entitled to judgment as a matter of law. Summary judgment is the proper dispositive vehicle to resolve the controversy at hand as there is no evidentiary basis for a jury to return a verdict in favor of the non-moving party. Furthermore, Plaintiff rescinds his prior request to schedule a hearing on the question of punitive damages.

## I.     Introduction

Rule 56 requires that Plaintiff show that no genuine dispute exists as to whether M&T

failed to uphold its obligations as a furnisher of information under the Fair Credit Reporting Act

(FCRA), 15 U.S.C. 1681s-2(b), and that its noncompliance was willful, which provides for the

recovery of punitive damages under 15 U.S.C. § 1681(n). The following question is presented:

> Was M&T obligated to report that Plaintiff was actively disputing the
> information about the credit account when it received dispute notifications from
> the credit reporting agencies?

M&T argues that Plaintiff failed to give M&T proper notice of his specific dispute and that his

alleged dispute was not a meritorious dispute that would trigger M&T's duties under FCRA

(ECF 22-1; ECF 31). M&T also says that Plaintiff's request for punitive damages is meritless,

and that punitive damages are normally for the jury to decide (ECF 81, ¶ 2). But this is not true

when no genuine dispute exists; for the issue to survive summary judgment, there must be

sufficient evidence such that the trier of fact could find in its favor.

These issues will be addressed in light of the factual record to determine whether a

genuine dispute of material fact exists.

## II.     Procedural Posture

On July 1, 2021, Plaintiff filed a motion for summary judgment (ECF 74). On July 12,

2021, discovery officially ended (ECF 79). On July 15, 2021, M&T filed its opposition to

Plaintiff's motion for summary judgment (ECF 81). This reply memorandum will address the

arguments set forth by M&T in its opposition, and will seek to discharge the burden of

persuasion on all claims remaining in this action.

The plaintiff respectfully asks this Court for leniency with respect to the aspects of the

local rules which concern form, in order to fairly accommodate his status as a self-represented litigant and allow him to be heard on the merits and treated equally under the law. Reasonable accommodations in this regard are wholly consistent with the spirit of the Federal Rules of Civil Procedure, which "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." (Fed.R.Civ.P. 1).

To clarify, Plaintiff is not requesting for the Court to advocate on his behalf; he only requests that his filings are interpreted fairly under his circumstances, and in a way that allows for his claims to be fairly considered based on their substantive merits, not based on their form. This is supported by Fed.R.Civ.P. 83(a)(2), which states that "a local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a non-willful failure to comply." Plaintiff has in good faith made his best effort to comply with the local rules of this Court, but he admits that is prone to mistakes due to his relative inexperience and limited resources, especially compared his adversary. Moreover, a trial is unnecessary in light of the factual record and absence of triable issues, and thus is no basis for allowing this case to proceed to a jury trial.

### III.    Rule 56

The principal issues that arise under Rule 56(c) are whether a factual dispute exists, whether the dispute is material to the outcome of the case, and whether the dispute is genuine. Rule 56 is intended to avoid unnecessary trials. The test of whether a dispute precludes entry of summary judgment is whether a reasonable jury could return a verdict in favor of the non-moving party based on the evidence presented. As the Supreme Court stated in *Anderson v. Liberty Lobby*, "there is no issue for trial unless there is sufficient evidence favoring the

3

nonmoving party for a jury to return a verdict for that party." 477 U.S. 242, 249 (1986).  To be sure, summary judgment is a threshold inquiry, and "there is no requirement that the trial judge make findings of fact." *Id.* at 250.

Summary judgment "prescribes the means of making an issue," *Fidelity & Deposit Co. v. U.S.*, 187 U.S. 315, 320 (1902), and helps to "strip away the underbrush and lay bare the heart of the controversy between the parties," and also can "offer a fast track to a decision." Schwarzer, Hirsch & Barrans, *The Analysis and Decision of Summary Judgment Motions*, at 8, Federal Judicial Center (FJC) (1991). A trial court must enter summary judgment if no dispute exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Furthermore, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 577 U.S. 557, 585-86 (2009); *see also, e.g., Gordon v. CIGNA Corp.*, 890 F. 3d 463, 470 (4th Cir. 2018). The Supreme Court has clarified the appropriate standard of review when deciding summary judgment motions. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law,"  and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, at 248. *See also CTB, Inc. v. Hog Slat, Inc.*, 954 F. 3d 647, 658 (4th Cir. 2020). Furthermore, summary judgment is appropriate if the evidence "is so one-sided that a party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

 "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F. 3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex*, 477 U.S. at 322-24.  Granting summary judgment is proper when "no genuine dispute of material fact exists for trial." *CYBERNET, LLC v. David*, 954 F.3d 162 (4th Cir. 2020). M&T has heretofore rested on the pleadings in opposing Plaintiff's motion for summary judgment, which is inadequate under Rule 56 of the Federal Rules of Civil Procedure. The purpose of Rule 56 is to "preserve the court from frivolous defenses, and to defeat attempts to use formal pleadings as means to delay the recovery of just demands." *Fidelity*, 187 U.S. 315, 320. Moreover, "the very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Fed.R.Civ.P. 56, Notes of Advisory Committee on Rules – 1963 Amendment.

## IV.     FCRA

Federal precedent has definitively established that a furnisher's duty under § 1681s-2(b)(1)(C) to "report the results of the investigation to the consumer reporting agency" incorporates the statutory obligation under § 1681s-2(a) "that furnishers have a general duty to provide accurate and complete information" to the CRAs when so responding. *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149-50 (4th Cir. 2008). Pursuant to § 1681s-2(b), once a furnisher of information, such as a credit card issuer, is given notice of a dispute about the completeness or accuracy of any information provided to a CRA, the furnisher shall "conduct an investigation with respect to the disputed information," "review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) of this title," and "report the results of the investigation to the [CRA.]" (15 U.S.C. § 1681s-2(b)(1)(A)-(C)). "Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading. Courts have held that a credit report is not accurate under [the] FCRA if it provides information in such a manner as to create a materially misleading impression." *Id.* at 148. In *Gorman v. Wolpoff & Abramson, LLP*, the Ninth Circuit Court of Appeals explained:

> The Fourth Circuit has recently held that after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s–2(b). See Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 150 (4th Cir.2008). […] This reasoning is persuasive. […] As the Fourth Circuit observed, holding otherwise would create a rule that, as a matter of law, an omission of the disputed nature of a debt never renders a report incomplete or inaccurate. See Saunders, 526 F.3d at 150. Not only might such a rule intimidate consumers into giving up bona fide disputes by paying debts not actually due to avoid damage to their credit ratings, but it also contravenes the purpose of the FCRA, to protect against "unfair credit reporting methods." See 15 U.S.C. § 1681(a)(1).

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162-63 (9th Cir. 2009). The Court of

Appeals for the Third Circuit reached a similar conclusion in *Seamans v. Temple Univ.*, stating

the following:

> The two Courts of Appeals to have considered this question have both answered
> it in the affirmative. In Saunders v. Branch Banking, discussed supra, the Fourth
> Circuit considered the interaction of § 1681s–2(a), which requires complete and
> accurate pre-dispute reporting of loan data, and is not privately enforceable, with
> § 1681s–2(b), which imposes investigative and corrective duties on furnishers,
> and is privately enforceable. 526 F.3d at 148–50. The panel noted that "[n]o
> court has ever suggested that a furnisher can excuse its failure to identify an
> inaccuracy when reporting pursuant to § 1681s–2(b) by arguing that it should
> have already reported the information accurately under § 1681s–2(a)." Id. at
> 149–50. In other words, the fact that a furnisher is affirmatively obligated to flag
> an account as disputed under § 1681s–2(a) does not undermine the conclusion
> that a failure to flag the account as disputed also constitutes a material
> inaccuracy under § 1681s– 2(b). See also Gorman, 584 F.3d at 1163 (explaining
> that where a dispute is bona fide, "the omission of the disputed nature of a debt
> could render the information sufficiently misleading so as to be 'incomplete or
> inaccurate' within the meaning of [§ 1681s–2(b) ]"); Van Veen, 844 F.Supp.2d
> at 606 (applying Saunders and Gorman). We agree with this assessment, and
> conclude that a private cause of action arises under 15 U.S.C. § 1681s–2(b)
> when, having received notice of a consumer's potentially meritorious dispute, a
> furnisher subsequently fails to report that the claim is disputed.

*Seamans v. Temple Univ.*, 744 F.3d 853, 867 (3d Cir. 2014). Despite the well established case

law on this issue, M&T has argued that the plaintiff did not dispute the accuracy of the data

furnished by M&T. However, M&T has provided no evidentiary material to support this

assertion and does not discharge its evidentiary burden by merely resting on its pleadings, and by

failing to make the proper showing it does not establish the presence of a genuine dispute when

viewed in light of the established factual record of this case with all justifiable inferences being

drawn in its favor. (*See e.g.*, ECF 15-6; ECF 16-1; ECF 21-3; ECF 27-1; ECF 28-1:28-6; ECF

29; ECF 30). To reiterate, Plaintiff made every possible effort to inform M&T of the basis of his

dispute and provided scores of documents to assist in their investigative process; also, M&T

never once called, emailed or attempted to contact Plaintiff to obtain additional information or learn more of the underlying basis of his dispute, which demonstrates that M&T did not conduct a substantive investigation, or ostensibly any investigation, upon receiving the dispute notices from the CRAs, and in addition to not conducting the required investigation, M&T failed to accurately the report the results of a lawful investigation (it is unclear if any investigation was performed), and therefore violated its substantive requirements under § 1681s-2 as a furnisher of consumer credit information.

Plaintiff contacted M&T directly on numerous occasions regarding the inaccurate information on his credit report, and he specifically identified information he was disputing as inaccurate and further explained the basis for the dispute despite never receiving any feedback or response from M&T (see Exhibit, selected dispute correspondence); (email sent by Plaintiff to M&T dated February 19, 2021, "I hereby demand that you disclose that I am actively disputing the delinquencies reported to all three credit agencies. Not disclosing that a consumer has initiated a dispute regarding information you furnished is a direct and explicit violation of federal law) (response from M&T on February 23, 2021, "we previously received similar correspondence from you, and M&T responded in letters dated February 5, 2021, and February 18, 2021. We feel that these responses adequately addressed all of your concerns") (letter dated February 18, 2021, stating "in keeping with our requirements under FCRA, M&T is not able to remove previous late reporting associated with your credit card"). To add insult to injury, M&T went on to advise the Plaintiff in the same letter on February 23, "lastly, if you feel that what M&T reports to the credit bureaus may be incorrect, you may wish to file a dispute directly with the credit reporting agencies," which nonsensically fails to acknowledge the eight disputes which

8

M&T had already received from the CRAs when it sent that letter, in addition to the four complaints filed by the Plaintiff with the Consumer Financial Protection Bureau.  (ECF 21-3). (*But see* ECF 28-3 (email sent by Plaintiff, attachment: Published Opinion rendered by the Fourth Circuit Court of Appeals in *Saunders v. BB&T*))("I am writing to ensure you are aware that there is a meritorious case that M&T willfully violated provisions of the FCRA, and each day that my credit score is adversely affected by information provided by M&T is support for the willful violation argument.") (MTB000224); (*see also* MTB000223) (email sent by Plaintiff on February 19) ("I just finished phone calls with all three credit reporting bureau's to see if they had received disclosure from M&T Bank that I am disputing the facts surrounding the information you have furnished. All 3 reporting agencies confirmed that you have not made any disclosure."). The undisputed evidence, viewed in the light most favorable to M&T, shows that M&T violated 15 U.S.C. § 1681s-2(b)(1)(C) by failing to accurately report the results of its investigations of Plaintiff's credit account to the credit reporting agencies because it repeatedly failed to disclose the disputed nature of the payment obligations underlying the account, and thus the Court must grant summary judgment on this issue because no genuine dispute exists based on the factual evidence; two reasonable minds could not differ as to whether Plaintiff's disputes met the threshold for being considered bona fide to give rise to M&T's liability under § 1681s-2(b) of the Fair Credit Reporting act.

This district has recently explained the standard of review for a plaintiff being entitled to judgment as a matter of law on claims against a furnisher of information under the FCRA:

> For Plaintiff to be entitled to summary judgment for failure to comply with § 1681s-2(b)(1)(A)'s investigation requirement, he must show that the undisputed facts establish (1) that he notified a CRA of the disputed information, (2) that the CRA notified the Defendant furnisher of the dispute, and (3) that the

furnisher then failed to reasonably investigate and modify the inaccurate information. *Johnson v. MBNA Am Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004). For Plaintiff to prevail on his § 1681s-2(b)(1)(C) claim that the furnisher reported inaccurate information to the CRAs, the undisputed evidence viewed in the light most favorable to the Defendant must show that [M&T] reported incorrect information or omitted details that rendered the reported information misleading.

*Long v. Pendrick Capital Partners II, LLC*, 374 F.Supp.3d 515, 527 (D. Md. 2019). M&T has not and cannot make the required evidentiary showing to preclude summary judgment on the question of whether it violated the FCRA. The evidence presented by Plaintiff on the record clearly demonstrates that no reasonable juror, drawing all reasonable inferences based on the evidence presented, could return a verdict in favor of M&T as to whether its actions constituted a violation of the FCRA, 15 U.S.C. § 1681s-2(b). Thus, there is no triable issue as to M&T's liability for violating the FCRA, and the court must grant summary judgment in favor of the plaintiff on the question of liability. Three elements are required to establish M&T's liability under the FCRA in this case: (1) that Plaintiff notified the CRAs that he disputed information on his credit report which had been furnished by M&T, (2) that M&T received notice of these disputes, and (3) that M&T failed to accurately report the results of its investigations with respect to such disputes. It is well established that information is inaccurate not only if it is patently incorrect but also if it is reported in such a way that renders the information misleading so as to adversely affect credit decisions. M&T's failure to report the debt as disputed was materially misleading and violated the FCRA, there exists no genuine dispute, and the factual evidence shows that Plaintiff is entitled to judgment as a matter of law on the question of liability. The record is devoid of the evidentiary basis needed for a reasonable jury to return a verdict in favor of M&T; there is no evidence to establish a genuine dispute as to whether the plaintiff's direct

10

disputes with M&T were *bona fide*, and furthermore two reasonable minds could not reach different conclusions as to whether his disputes were bona fide, so he is therefore entitled to summary judgment. As a matter of law, M&T was obligated to report the dispute in response to the dispute notifications it received from the credit reporting agencies, and it failed to do this.

M&T has not disputed that it received notice of the dispute from the CRAs. Indeed, eight ACDVs produced by M&T during discovery show that the defendant received proper notification of eight independent disputes lodged by Plaintiff with the credit reporting agencies, each of which concerned Plaintiff's credit account with M&T; the eight ACDVs which are attached as an exhibit to this memorandum serve as additional evidence that M&T consciously chose not to report the disputed nature of the account when it processed all eight ACDVs (see data field "CCC"; Consumer Compliance Code, data field intended for furnishers to report direct consumer disputes in compliance with furnisher's disclosure obligations under FCRA). As a result, there is no genuine dispute that can be established as to whether M&T received proper notification from the CRAs; nor can M&T establish a genuine dispute as to whether it reported Plaintiff's direct dispute when it responded to the CRAs via the eight ACDVs (see Exhibit, ACDV extract). Moreover, there is no question as to whether M&T was properly notified of the disputes to trigger its statutory obligations under FCRA, 15 U.S.C. § 1681s-2(b). The record establishes that M&T received three ACDVs on December 31, 2021; another ACDV on January 5, 2021; another ACDV on January 7, 2021; another ACDV on February 9, 2021; another ACDV on February 23, 2021 and another ACDV on February 23, 2021, for a total of eight independent ACDVs, all of which failed to report the disputed nature of the credit account.

The only defense that M&T has made in regard to its liability under FCRA is that Plaintiff's dispute was meritless and did not obligate disclosure in responding to the dispute notifications received by the CRAs. However, M&T has not produced any evidence supporting this statement and merely attempts to "rest on the pleadings" without any evidentiary support, and therefore the court must grant summary judgment since M&T merely relies on unsupported assertions in its pleadings, and has clearly failed to "set forth specific facts" as required to survive Plaintiff's motion for summary judgment.

The evidence which is on the record clearly shows that the plaintiff's disputes were bona fide and the statutory text of 15 U.S.C. § 1681s-2 lays bare the implausibility of M&T's contention that Plaintiff's dispute was "frivolous" and clearly fails as a matter of law. The evidence presented would not allow two reasonable minds to reach this inference even if viewed in the light most favorable to M&T, and moreover there exists no quantum of evidentiary material which supports that M&T made such a determination at the time it received and processed the eight dispute notifications from the credit reporting agencies. The first response Plaintiff received in response to his initial dispute on December 30, 2020 was the letter dated February 5, 2021, which demonstrably failed to address any of the substantive arguments raised by Plaintiff in his efforts to dispute the information on his credit report (see exhibit, selected dispute correspondence).

In the span of 56 days between December 31, 2020 and February 25, 2021, M&T processed eight automated dispute verification (ACDV) forms from the credit reporting agencies regarding information disputed by the plaintiff on his credit file (ECF 77-5); (also attached as an exhibit, ACDV extract). M&T asserts that it conducted an investigation concerning the disputes

12

Plaintiff provided to the credit reporting agencies (ECF 43, 6). However, a reasonable investigation would have shown that Plaintiff was actively disputing the information being reported and furthermore would have required M&T to report the disputed nature of the debt in processing the CRA disputes, which it conclusively failed to do and still fails to do.

M&T's only remaining defense that Plaintiff's dispute was "frivolous or irrelevant" is implausible on its face. Plaintiff's disputes with M&T were bona fide as a matter of law. §1681s-2(a)(3) sets forth a furnisher's statutory obligation to provide notice of a dispute if the information has been directly disputed to the furnisher by a consumer:

**15 U.S.C. 1681s–2(a)(3). Duty to provide notice of dispute.**
If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

Resting merely on conclusory statements in its pleadings, M&T asserts that Plaintiff failed to properly provide notice of his dispute, so it therefore was under no obligation since the dispute was determined to be "frivolous or irrelevant." However, § 1681s-2(a)(8)(F) outlines the proper procedure that a furnisher must follow if it makes a determination that a consumer's direct dispute is "frivolous or irrelevant":

**15 U.S.C. 1681s-2(a)(8)(F). Frivolous or irrelevant dispute.**
(i) *In General*. This paragraph shall not apply if the person receiving a notice of dispute from a consumer reasonably determines that the dispute is frivolous or irrelevant, including:

(1) By reason of the failure of a consumer to provide sufficient information to investigate the disputed information; or

(2) The submission by a consumer of a dispute that is substantially the same as a dispute previously submitted by or for the consumer, either directly to the person or through a consumer reporting agency under subsection (b), with respect to which the person has

already performed the person's duties under this paragraph or subsection (b), as applicable.

(ii) *Notice of determination*. Upon making any determination under clause (i) that a dispute is frivolous or irrelevant, the person shall notify the consumer of such determination not later than 5 business days after making such determination, by mail or, if authorized by the consumer for that purpose, by any other means available to the person.

(iii) *Contents of notice*. A notice under clause (ii) shall include—

(1) The reasons for the determination under clause (i); and

(2) Identification of any information required to investigate the disputed information, which may consist of a standardized form describing the general nature of such information.

[15 U.S.C. 1681s-2(a)(8)(F)].

Plaintiff submitted his first dispute to M&T on December 30, 2020 (ECF 15-6, 5) (*See also* Exhibit, Selected Dispute Correspondence). The email Plaintiff sent to M&T included three full credit reports which contained false, derogatory and misleading information about Plaintiff, each of which were generated on December 30, 2020, in order to permit M&T to identify the problem and conduct a reasonable investigation regarding the issues which were clearly identified by Plaintiff. (*Id.*). The dispute also included a two-page letter prepared by Plaintiff, which explained the basis of the dispute, and included all identifying information with respect to the account so that M&T could conduct a lawful investigation. (*Id, 2-3*). M&T confirmed it had received the dispute and was actively conducting an investigation of the dispute on December 31, 2021. (*Id., 7).* M&T never informed Plaintiff that it determined that the dispute was frivolous or irrelevant, as required by § 1681s-2(a)(8)(F). Plaintiff did not hear back from M&T until February 5, 2021 over thirty days after he had initially reached out to M&T regarding his

dispute. (*Id.*). Thus, the assertion that M&T was under no obligation to notify the CRAs of Plaintiff's dispute simply fails as a matter of law because it is implausible on its face.

The defendant is unable to set forth "specific facts" showing that the dispute was irrelevant or frivolous, and therefore, as a matter of law, M&T was obligated to disclose the disputed nature of the account in responding to the disputes from the credit reporting agencies. The court must grant summary judgment on the issue of whether M&T violated the FCRA by not reporting the Plaintiff's dispute when it reported the results of its "reasonable investigation" to the CRAs, in direct violation of its obligations pursuant to 15 U.S.C. § 1681s-2(b).

"Willfulness" under the FCRA includes "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007); See also *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001) (for a plaintiff to be entitled to punitive damages under the FCRA, the plaintiff must first prove that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights" of the consumer). M&T is unable to establish a genuine dispute as to whether it acted with conscious/reckless disregard for the rights of the plaintiff when it violated the FCRA, and the voluminous evidence related to plaintiff's communications with M&T regarding its violations of its statutory obligations are so one-sided such that a reasonable jury could only reach the conclusion that M&T acted willfully and therefore Plaintiff is entitled to judgment as a matter of law on the issue of M&T's liability under 15 U.S.C. § 1681(n). There is no evidentiary basis, let alone the evidentiary basis required to defeat a motion for summary judgment, by which a reasonable jury could return a verdict in M&T's favor on the question of whether it acted with "conscious disregard of the rights of the consumer." The evidence is so

15

one-sided that two reasonable minds could not differ with respect to its reckless violations of

FCRA, and a furthermore, a jury could reach only one reasonable conclusion on the question of

whether M&T acted willfully and is liable under 15 U.S.C. 1681(n). Evidence produced clearly

and definitively shows that M&T acted willfully. (ECF 28-1:28-6; ECF 27; ECF 29 and ECF

30). Between December 2020 and March 2021, the plaintiff called M&T over 50 times, sent over

twenty emails and submitted eight disputes with the CRAs, in addition to four disputes with the

Consumer Financial Protection Bureau. (ECF 43, ¶ 29) (in its response to Plaintiff's Complaint,

"M&T admits that Plaintiff filed a complaint with the CFPB…Plaintiff filed a complaint with the

CFPB on January 29, 2021 and then filed two additional complaints on the same issue on

February 1, 2021 and another complaint on February 9, 2021, for a total of four complaints on

the same issue."). Despite the numerous opportunities M&T was given to rectify its unlawful

credit reporting, it repeatedly failed to comply with its obligations under federal law, and

furthermore acted with reckless disregard for the rights of Plaintiff.

M&T claims that it "made several attempts to contact Plaintiff by telephone" between

September 2020 and December 2020, but the plaintiff has provided evidence that he received no

calls from M&T during this period. (ECF 77-6). Further, the plaintiff has provided evidence that

M&T had the wrong phone number in its internal record-keeping system and that the number it

had recorded for the plaintiff was not the phone number he provided when he completed the

application in July 2020 (ECF 16-3, 2).

In conclusion, the undisputed evidence, viewed in the light most favorable to M&T,

shows clearly and definitively that M&T violated § 1681s-2(b) by (1) failing to conduct a lawful

investigation after receiving notice from the CRAs of Plaintiff's disputes and (2) failing to

accurately report the results and not reporting the disputed nature of the information it verified on over eight separate ACDVs. Two reasonable minds could not differ as to whether Plaintiff is entitled to judgment as a matter of law on the question of M&T's willful noncompliance with FCRA and as such the Court must grant summary judgment on this issue.

### V.    Damages

The question of damages may also be properly adjudicated under Rule 56 when there is no genuine factual dispute as to a plaintiff's right to recover for the amount sought, which is relevant in this case as Plaintiff has set forth damages of a sum certain in his Amended Complaint, and the undisputed evidence, drawing all justifiable inferences in favor of M&T, shows that Plaintiff is entitled to judgment as a matter of law for compensatory damages, punitive damages and court costs, for an aggregate recovery of an amount not less than $6 million United States Dollars. Anything less than this amount is an inadequate remedy at law and will not provide the redress which justice mandates. The Court must grant summary judgment on the question of damages because M&T has cannot establish a genuine dispute which precludes entry of summary judgment.

Plaintiff has claimed actual damages of $160,000 which includes relief for emotional distress incurred as a result of M&T's conduct, and Plaintiff has presented evidence which entitles him to judgment as a matter of law. Recovery of punitive damages under 15 U.S.C. 1681(n) are well suited for summary judgment and Plaintiff has far exceeded the threshold requirement for fair notice to satisfy substantive due process under the 5th and 14th Amendments of the United States Constitution. Based on the undisputed evidence of record, Plaintiff argues that his burden has been properly discharged, and is thus entitled to judgment for the relief which

is fair, necessary and just. Plaintiff has suffered permanent damages as a result of M&T's inaccurate credit reporting and failure to rectify its willful violations of the Fair Credit Reporting Act. The harm incurred by Plaintiff includes damage to his reputation, deprivation of his earnings capacity, and has restraint of his inalienable right to the pursuit of happiness. M&T has caused Plaintiff to suffer injuries which are concrete, particularized and permanent. The factual record is totally devoid of evidence which precludes entry of summary judgment on this issue and as such Plaintiff is entitled to judgment as a matter of law.

Proof of injury most necessarily begins with capital constraints unfairly imposed on Plaintiff as a result of the misleading information furnished by M&T. On July 16, 2020, one day prior to opening his account with M&T, Plaintiff's credit score was 716 according to data generated by Experian (ECF 15-4). Prior to M&T's defamatory credit reporting, Plaintiff was able to access credit at a cost which fairly reflected his risk profile as a consumer. It is undisputed that Plaintiff had no adverse accounts on his credit report prior to the information furnished by M&T, and there is no genuine dispute that M&T directly cause Plaintiff's credit score to decrease by such a magnitude that it adversely affected credit decisions, prevented Plaintiff from seeking job opportunities and obstructed Plaintiff's right to the pursuit of happiness, resulting in demonstrative emotional distress substantiated by Plaintiff's sworn statement under penalty of perjury (ECF 77-11). The only adverse account reported on Plaintiff was the account opened with M&T. (ECF 77-3) (MTB00053).

On February 28, 2021, plaintiff's credit score was reported as 580 by Experian, representing a sharp decrease from his credit score of 716 prior to M&T furnishing derogatory and inaccurate information. Plaintiff was denied access to credit when he applied for a consumer

credit account with Discover on January 23, 2021, because of a "serious delinquency" reported by M&T without any justification for the delinquency whatsoever. Furthermore, actual damages have indisputably been caused by way of lost earnings potential, as Plaintiff was effectively rendered unemployable in the financial industry services industry due to the negative information furnished by M&T. The undisputed evidence shows that credit history is a substantive factor in evaluating Plaintiff's qualifications for employment in the finance industry. (See Oppenheimer Application for Employment pre-hire background verification report) (OPCO_0019-24).

In is undisputed that Plaintiff's income was $119,166.68 in 2020 (ECF-77-4; OPCO_0092) (See also Exhibit, W2). The defendant cannot establish a genuine dispute as to whether the negative information, which at all times was inaccurate and misleading, adversely affected Plaintiff's career, and two minds could not reach a different conclusion as to whether Plaintiff has lost earnings potential of at least $100,000 as a direct result of M&T's unlawful conduct. There is no genuine dispute as to whether Plaintiff is qualified notwithstanding his credit report. (*See* Resume). Plaintiff's credit score is a factor which affects his eligibility for employment (ECF 77-4; OPCO_0067-0082). Plaintiff was qualified as investment banking analyst prior to M&T's furnishing information regarding plaintiff's credit account (ECF 77-4; OPCO_0143-0145). It is undisputed that plaintiff worked as an investment banker at Oppenheimer & Co. for approximately two years, starting in July 2019 and ending on May 31, 2021. The plaintiff has not actively looked for new employment opportunities due to the derogatory information on his credit report, which makes looking for a similar job like the one held with Oppenheimer futile since they will require his consent to review his credit report as a condition for employment, as the credit history plays a substantial factor in plaintiff's eligibility

for employment.

Plaintiff's awareness that his credit report included inaccurate information and that he worked in an industry that requires a high level trust and financial responsibility deterred Plaintiff from pursuing new career opportunities, and continues to deter him from pursuing new career opportunities. For example, Plaintiff applied for a job in March 2021 at a different financial institution, and as part of the application the Plaintiff was required to provide the prospective employer access to his credit report, and plaintiff did not receive an offer following the interview process. This discouraged the plaintiff from actively pursuing new career opportunities despite being qualified and competent to work in a similar capacity in the finance industry where salaries normally are in excess of $100,000 per year.

Plaintiff's prior employer, Oppenheimer, obtained a credit report on the plaintiff as part of his hiring process. (ECF 77-4; OPCO_0082). The report included the procurement of a financial report from Trans Union. (*Id.*, OPCO_0070). The Trans Union report provided to Oppenheimer include information such as "Current Negative Accounts: 0", "Previous Negative Accounts: 0", "Previous Times Negative:0." (*Id.*, OPCO_0074). The evidence of record clearly shows that the plaintiff's credit report is a significant factor in his eligibility for employment, and for this reason he has not actively pursued new employment opportunities, despite being fully qualified and having positive references from his supervisors at Oppenheimer.

Furthermore, M&T cannot establish a genuine dispute as to whether his lack of focus due to the false credit reporting by M&T and the plaintiff's efforts to resolve the information being reported contributed to him not receiving a promotion with Oppenheimer, where his salary was $119,166.68 in 2020 and was likely to continue increasing if he continued in his role. M&T is

20

unable to make a showing that plaintiff is not qualified for a position where he would earn over

$100,000 if it were not for the derogatory information being reported by M&T, which is both

inaccurate and incomplete as a matter of law. There is no genuine dispute as to any material

fact on the question of economic damages of $100,000 and therefore the court must grant

summary judgment on this issue, as the plaintiff is entitled to judgment as a matter of law on

his claim for actual economic damages of $100,000 because there is no evidentiary basis to

return a verdict of any lesser amount with respect to concrete economic damages.

Further, a plaintiff successful at establishing a violation of the FCRA is entitled not only

to economic damages but damages for non-pecuniary harm resulting from the violation, 15

U.S.C. § 1681(o), which "may include not only economic damages, but also damages for

humiliation and mental distress," *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 500 (4th

Cir. 2007). Indeed, a plaintiff may be compensated if he is "merely deterred from accessing the

credit market because of inaccuracies on his credit report." *Long v. Pendrick Capital Partners

II, LLC*, 374 F. Supp. 3d 515, 529 (D. Md 2019); *See also Guimond v. Trans Union Credit

Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (finding that "no case has held that a denial of

credit is a prerequisite to recovery under the FCRA."). Further, a plaintiff's testimony can

support an emotional distress award when the plaintiff is able to reasonably explain the

circumstances of the "injury and does not resort to mere conclusory statements," so long as the

testimony "sufficiently articulates true demonstrable emotional distress." *Sloane*, 510 F.3d at

503 (citing *Price v. City of Charlotte*, 93 F.3d 1241, 1251 (4th Cir. 1996)); *accord Robinson v.

Equifax Info. Servs., LLC*, 560 F. 3d 235, 243 (4th Cir. 2009) (affirming actual damages award

of $200,000 for both economic loss and emotional distress resulting from inaccurate credit

reporting).

In this case, the plaintiff has provided evidence showing particularized and concrete distress resulting from the inaccuracies on his credit report, most notably in a sworn declaration under penalty of perjury. (See ECF 77-11) ("the task [of disputing the inaccurate information on my credit report] consumed my free time and eventually overtook my ability to focus on my full-time job") ("the decline in my ability to perform at work had a major impact on my self-esteem") ("I struggled focusing on anything other than my credit reports and this had a detrimental impact on my mental health") ("I have not been able to use any form of credit because the interest rates are simply unacceptable") ("as a financial professional this was especially troubling as my credit history plays a significant role in my suitability as an advisor to clients and has a significant negative impact on my perceived trustworthiness") ("I was in an agitated state of mind and emotionally unstable because of M&T's unwillingness to fix the inaccuracies on my credit report") ("the fact that my credit score is still 590 is an assault on my integrity and trustworthiness and it makes me simply unemployable in any financial services role") ("the damage this has done to my self-esteem and sense of purpose is beyond repair") ("the damage this has done especially at this early stage of my career cannot be encapsulated by a dollar figure"). Plaintiff has suffered irreparable harm as a result of the inaccurate credit reporting and furthermore M&T is unable to establish a genuine dispute as to whether plaintiff's emotional distress was caused substantially by the inaccuracies which M&T refused to correct for over six months. M&T has not established a genuine dispute for trial on the question of actual damages of $160,000 and therefore the court must grant summary judgment since there is no evidentiary basis by which a reasonable jury could return a verdict for any

lesser amount and thus the Plaintiff is entitled to judgment as a matter of law on the question of the amount of actual damages.

The purpose of punitive damages is to punish and deter the wrongdoer from repeating the same actions in the future, and therefore the analysis as to the appropriate amount necessary to achieve the twin purposes of punitive awards requires consideration of a defendant's financial position and net worth. *See e.g., TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 n.28 (1993) (noting that it is well settled that a defendant's net worth is typically considered in assessing punitive damages); *Johansen v. Combustion Engine Inc.*, 170 F.3d 1320, 1338-39 (11th Cir. 1999) (allowing $4.35 million punitive damages award because a larger award is needed to attract the attention of large corporations); accord *Saunders v. Branch Banking & Trust Co. of VA.*, 526 F.3d 142, 154-55 (4th Cir. 2008). A sound valuation methodology is critical in assessing punitive damages, especially when larger corporations are involved.

An analysis of two cases which were affirmed by the Fourth Circuit Court of Appeals provides support for the award which plaintiff has stated is fair and reasonable in his Amended Complaint. (ECF 62 ¶ 1).  The first case is *Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008) and the second and more recent case used as a benchmark for the punitive damages award is *Daugherty v. Ocwen Loan Servicing*, 701 F. App'x 246 (4th Cir. 2017). These two cases provide an appropriate universe of analogous precedents for benchmarking punitive damages imposed against furnishers who willfully violated the Fair Credit Reporting Act, 15 U.S.C. 1681s-2(b) in the Fourth Circuit Court of Appeals.

In *Saunders*, the Fourth Circuit Court of Appeals affirmed a verdict for punitive damages of $80,000, and in upholding the finding of willfulness, the court reasoned that "Saunders

presented that (1) BB&T's records reflected the ongoing dispute over the debt, (2) BB&T's reports to the CRAs did not reflect that ongoing dispute, and (3) BB&T *intended* not to report the ongoing dispute." *Id.* at 151. The same three elements can be established based on the evidence presented by Plaintiff in this case. The evidence presented by the plaintiff on the record show clearly that (1) M&T's records reflected the ongoing dispute over the debt. (ECF 16-1, 24, 17) ("we'd like to confirm that we have received your correspondence on December 31, 2020") ("we'd like to confirm that we have received your correspondence on February 1, 2021, via the CFPB portal"). The record also shows that (2) M&T's reports to the CRAs did not reflect that ongoing dispute. (ECF 21-2); (ECF 25-1); (ECF 77-3, 1-4, 6-7, 8-9, 26-27, 28-29, 30-32, 33-34, 35-36, 37-38, 53-54, 74, 84, 170-171, 183-185, 187) (ECF 77-5). And the record shows that (3) M&T intended not to report that ongoing dispute (ECF 21-3, 8-9, 25-27) ("please be advised that unless you have new information to refute M&T records, M&T will no longer respond to your requests, and considers this matter closed").

In this case the determination of the size of the punitive damages award is not better suited for a jury to decide, because the proper amount is a matter of public policy and must be decided as a matter of law, rather than left up to a jury which will provide the defendant with ammunition on appeal by saying that the jury was prejudicial. As a matter of law, punitive damages of $6 million is well within the bounds set by the Fourth Circuit Court of Appeals, and is not arbitrary or excessive, and M&T has not and cannot establish a genuine dispute on the question of punitive damages of $6 million. By allowing this question to proceed before a jury will prejudice the plaintiff because it will provide grounds on appeal based on frivolous arguments which are not applicable to this case but will be used if a jury determines the

amount of punitive damages rather than the Court making a determination as a matter of law. The framework used by the plaintiff in his claim for $6 million is supported by reasonable valuation procedures and is supported by case law in the Fourth Circuit Court of Appeals. Pursuant to 15 U.S.C. § 1681(n), if a person willfully fails to comply with the statute with respect to any consumer, they are liable for "any actual damages sustained by the consumer as a result of the failure," plus "such amount of punitive damages as the court may allow" as well as "the costs of the action together with reasonable attorney's fees as determined by the court." The plain statutory text states that the amount of punitive damages is appropriately determined by the court, and therefore when no genuine issue exists as to the fairness or standard in determining punitive damages, there is no requirement for a jury to resolve the question because the Court may determine or grant the amount if it deems it proper. While $6 million is large in absolute terms, in relative terms it is fairly conservative and is not grossly excessive based on the resources of M&T and furthermore, as a matter of public policy, any lesser amount would not serve the primary purpose of punitive damages in the deterrence of similar conduct in the future. It is undisputed that M&T has a net worth of ~$16 billion, and it is further undisputed that M&T is a Fortune 500 Company. The punitive damages award which plaintiff is claiming in this case is less than 0.04% of M&T Bank's net worth, less than one-half of one-tenth of one percent. The plaintiff has a net worth of about $40,000, and 0.04% of his net worth is ~$160.00, which is less than the filing fee he paid to initiate this lawsuit in federal court. Moreover, as a result of M&T's failure to comply with the FCRA, the plaintiff was forced to move in with his parents since he no longer has a source of income as a result of the derogatory information which was furnished by M&T, which continues to foreclose on any

25

possibility of finding a new job in the financial services industry, despite being qualified and highly competent in finance. The plaintiff is unable to earn the same salary he could prior to M&T's inaccurate credit reporting and is no longer able to afford monthly rent.

The sheer size of M&T cannot be overlooked when evaluating the fairness of the punitive damages award, and far larger awards have been affirmed involving companies which are much smaller and the penalty had a much more outsized impact on the financial condition of the defendant. Likewise, in the recent case of *Daugherty v. Ocwen*, the Fourth Circuit approved a punitive damages award of $600,000 based on Ocwen's net worth for the fiscal year ending December 31, 2015 of $855 million, which in terms of size is less than 1/16th of M&T Bank. The punitive damages which plaintiff has claimed were calculated by taking the average of the percentage penalty imposed in Saunders and Daugherty, 0.0025% and 0.07%, respectively, which equals 0.035% and multiplying that by the net worth of the defendant as of December 31, 2020 which results in the claimed amount of punitive damages in the Amended Complaint. (ECF 62; see also ECF 26, 2; ECF 71, 10-12; ECF 80). When the Fourth Circuit affirmed the punitive damages award of $80,000 in *Saunders v. BB&T*, the Court noted that BB&T had a net worth of $3.2 billion, or ~1/5th of M&T's net worth of $16 billion. The punitive damages award of $600,000 imposed against Ocwen represented 0.07% of its net worth at the time, and if adjusted for M&T's scale would equal a punitive damages award ~$11 million to have the same deterrent effect as the penalty imposed against Ocwen. M&T admitted in discovery that the financial data as shown on its 10-K filed with the SEC was an accurate reflection of its financial condition and thus there is no evidentiary basis which would support an amount less than $6 million. (See ECF 70-1) (counsel for M&T explaining "the financial position and/or

net worth of M&T Bank Corporation is publicly available…Indeed, your emails indicate you have already obtained M&T Bank Corporation's financial statements, which is more than sufficient at this time"). There is no evidentiary basis to support that the defendant was not on notice so as to satisfy the due process requirements of the constitution, as the plaintiff has notified the defendant well in advance of its liability and there is no excuse that they were no aware or that the penalty is excessive or violates the Due Process clause of the constitution. (ECF 26; ECF 30; ECF 62; ECF 77-2; ECF 80). M&T is unable to establish a genuine dispute as to the reasonableness of a punitive damages award of $6 million, or that the award was unfairly prejudiced by emotions or malice.

The punitive award claimed by the plaintiff was calculated based on accurate financial data and Fourth Circuit jurisprudence, and furthermore M&T has not set forth specific facts precluding the entry of summary judgment on the issue of the amount of punitive damages claimed by the plaintiff. In addition, the ratio of compensatory damages which have been established in this case is far below 100:1 which was the "outermost punitive damages award that could be sustained" on the evidence presented. In Daugherty, the evidence only supported actual damages of $6,128.39 which is far lower than $100,000 in this case and furthermore a jury, drawing all inferences in favor of M&T, would be unable to reach a conclusion that M&T's conduct with respect to plaintiff in this case was less reprehensible than Ocwen's. In the case of Daugherty, Ocwen recognized that it was obligated to disclose the disputed nature of the debt when it responded to the various ACDVs in received from the credit reporting agencies. M&T's actions were far more egregious in terms of clearly violating the rights of the plaintiff under the FCRA, and the evidence of its reckless disregard for the rights of the

27

consumer is far more supportable based on the evidence in this case than it was in Daugherty.

M&T is unable to make an evidentiary showing which would allow a jury to reach any other

conclusion, and the only conclusion which could be sustained based on the evidence would be

a larger award considering that the evidence is much more one-sided in this case than it was in

Daugherty. David Daugherty did not have a job in the financial services and the impact of the

derogatory reporting by Ocwen was far less than the affect of the negative information

furnished by M&T in this case. An award of anything less than $6 million would defeat the

underlying purpose of the punitive damages award which congress authorized for willful

noncompliance under the FCRA. It is undisputed that the four chief executives for M&T earn a

combined cash salary of over $16 million. (ECF 72). As well, it is undisputed that M&T's

CEO has sold $30 million of M&T stock; the COO has sold $33 million of M&T; the CFO has

sold $35 million of M&T stock and the Vice Chairman has sold $49 million of M&T stock.

(*Id.*) This is even more reprehensible when considering the indifference they have towards

consumers such as the plaintiff despite the fact that they destroyed his career in finance when

he was just starting at the age of 24. The defendant has not established a genuine dispute on the

issue of the amount of the punitive damages award, and the Court must enter summary

judgment to prevent the defendant from abusing the process and obstructing the inefficient and

inexpensive determination of these proceedings as is mandated by Rule 1 of the Federal Rules

of Civil Procedure. There are no genuine disputes as to the fairness of the damages claimed by

the plaintiff, and moreover there exist no genuine disputes as to whether constitutional due

process has been observed, so there can be no genuine dispute with respect to the

appropriateness of $6 million as damages in this case, and the Court is well within its proper

discretion to grant summary judgment on all issues in this case without the need for a trial; in avoiding an unnecessary trial where no genuine disputes exist, the Court will be able to avoid the tedious post-verdict motions practice which can only serve to delay and prolong timely disposition due to problematic jury verdicts susceptible to de novo review on appeal for awarding punitive damages without clear standards supporting the verdict, raising the issues such as "arbitrariness, uncertainty and lack of notice" *Phillip Morris v. Williams*, 549 US 346 (2007).

The Supreme Court has expressed that "punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568. Furthermore, the importance of having clear methods for determining the amount of punitive damages is one of the most important considerations in assessing the constitutional propriety of the amount imposed. *Phillip Morris*, at 1062 ("we have emphasized the need to avoid an arbitrary determination of an award's amount"). The undisputed facts on the record clearly show that the punitive award claimed by Plaintiff was not determined using arbitrary guesswork but rather was arrived at through sound analytical methods using accurate financial data, leveraging analogous Fourth Circuit jurisprudence to arrive at a fair determination of the punitive damages award. There is no genuine dispute as to whether the plaintiff is entitled to judgment as a matter of law on the issue of the amount of the punitive damages award. The defendant has not produced any evidence which establishes a triable issue for a jury with respect to punitive damages and therefore the Court must grant summary judgment on this issue pursuant to Rule 56.

Indeed, M&T has disclosed that it expects expenses related to money damages resulting

from legal proceedings, and in its annual report for 2020 M&T made the following disclosure:

> M&T and its subsidiaries are subject in the normal course of business to various pending and threatened legal proceedings in which claims for monetary damages are asserted. On an ongoing basis management assesses the Company's liabilities and contingencies in connection with such proceedings. The range of reasonably possible losses for such matters was between $0 and $25 million…the Company does not believe that the outcome of pending legal matters will be material to the Company's consolidated financial position.

(Form 10-K, for the fiscal year ending Dec. 31, 2020. Item 3, page 50). This illustrates the vast financial resources of M&T and the relatively minor impact that $6 million is to have on the Company's financial position, and provides ample justification for the punitive damages award which Plaintiff has claimed. No reasonable jury could reach a conclusion that $6 million is excessive, and the only reasonable conclusion that could be reached is that $6 million is too small to adequately serve as a meaningful deterrent to M&T. Furthermore, there is clearly no genuine dispute as to the imposition of punitive damages of $6 million, especially when viewed in light of the reprehensibility and irreparable harm caused by M&T's willful violations of FCRA. The conduct of M&T with respect to the plaintiff's disputes in this case shows the severe damage which results from false credit reporting, and M&T is likely not to take any measures to rectify its credit reporting procedures if the Court imposes any lesser amount than $6 million. M&T obviously is aware that it is subject to penalties in the ordinary course of business activities of $25 million, and $6 million is just a fraction of its already recorded allowance for legal damages incurred, so it is completely justified and must be granted as a matter of law to allow for an adequate remedy at law. Any lesser penalty would utterly fail in accomplishing the purpose of punitive damages which congress intended in deterring the inaccurate reporting of

consumer credit information when it set forth the duties of furnishers in reporting fair credit data regarding consumers.

### VI.     Valuation

M&T Bank Corporation has two consolidated subsidiaries: M&T Bank and Wilmington Trust. As of December 31, 2020, M&T Bank represented 99% of consolidated assets of the company. (See Form 10-K, Page 4, Item I). The consolidated company had total shareholders' equity of $16,187,283,000 as of December 31, 2020. (Form 10-K, page 120). Therefore, M&T Bank, the Defendant in the above-styled action, had shareholders' equity of ~16 billion as of December 31, 2020.

In Saunders v. BB&T, the Fourth Circuit Court of Appeals stated that BB&T had net worth of $3.2 billion. The court affirmed a punitive damages award of $80,000 despite no actual damages. The punitive damages award represented 0.0025% of the net worth of BB&T, based on the stated net worth in the published opinion (No. 07-1108). In Ocwen v. Daugherty, the $600,000 was confirmed by the Court, and the benchmark was Ocwen's 2015 financial statements. As of December 31, 2015, Ocwen had a net worth of $854,638,000. The punitive award of $600,000 represented 0.07% of Ocwen's net worth. The table below shows the underlying valuation used to determine the proper punitive award in this case against M&T.

*United States Court of Appeals for the Fourth Circuit - Analogous Precedent Dispositions*

| Case Name | Decided | Number | Company | Net Worth | Punitive | Punitive / Net Worth |
|---|---|---|---|---|---|---|
| Saunders v. BB&T | May 14, 2008 | 07-1108 | BB&T Corp. | $3,200,000,000 | $80,000 | 0.0025% |
| Daugherty v. Ocwen | July 26, 2017 | 16-2243 | Ocwen Fin. Corp. | $854,638,000 | $600,000 | 0.0702% |
| | | | | | Average | 0.0364% |

| | | | Company | Net Worth | Punitive | |
|---|---|---|---|---|---|---|
| | | | M&T Bank Corp. | $16,187,283,000 | $5,884,495 | |
| | | | M&T Bank (99% of Parent) | $16,025,410,170 | $5,825,650 | |

The total amount due and owing to the Plaintiff from M&T is the sum of punitive damages, actual damages, expenses, and a self-represented fee to compensate the Plaintiff for the time spent in litigation. The self-represented fee is justifiable because the plaintiff was unable to spend his time earning income by other means and therefore this is compensation for the opportunity cost. The table below presents the adequate remedy at law which is due and owing to the Plaintiff from M&T. The table below is the redress properly supported by the undisputed evidence on the record:

| | |
|---|---|
| Punitive Damages | $5,825,650 |
| Actual Damages | $160,000 |
| Expenses | $10,000 |
| Self-Represented Fee | $80,000 |
| Adequate Remedy at Law | $6,075,650 |

There is no genuine dispute as to any material fact and the plaintiff, having established the absence of any genuine dispute as to any material fact, is entitled to judgment as a matter of law for the adequate remedy to redress the injuries sustained due to M&T's conduct with respect to his credit account and the false reporting furnished with respect to said account.

## VII.    Conclusion and Certification

For the reasons stated above, it is requested that the Court grant summary judgment on all claims in favor of the Plaintiff and enter final judgment for the relief that the Court deems just and fair. The factual record lays bare the absence of a genuine dispute of material fact.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 26, 2021. /s/Bryce Carrasco.

**Bryce Carrasco**
334 Ternwing Drive
Arnold, Maryland 21012
bocarrasco47@outlook.com
410-858-7432