IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| **Bryce Carrasco,**<br>Plaintiff | * | |
| v. | * | Case No. 1:21-cv-00532-SAG |
| **M&T Bank,**<br>Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF'S RESPONSIVE BRIEF

**I.      Procedural Background**

1. On March 2, 2021, Plaintiff brought suit in the United States District Court, Northern District of Maryland, alleging certain practices by defendant M&T Bank ("M&T") in violation of Chapter 41 of Title 15 of the United States Code (ECF 1 *et seq*).

2. On March 4, 2021, a Summons was served on Ken Stewart, Manager of M&T Bank, at 1 Light Street, Baltimore, Maryland 21202. (ECF 10, 14). Upon serving the defendant, the deadline for a responsive pleading was March 25, 2021 (ECF 10).

3. On March 19, 2021, M&T, through its counsel of record, Brian L. Moffet, filed a motion for an extension of time to respond to the Complaint to April 9, 2021 (ECF 13).

4. On March 19, 2021, Plaintiff filed a response in opposition to the defendant's motion for an extension of time to respond to the Complaint (ECF 14).

5. On March 23, 2021, Plaintiff filed 11 exhibits, as evidence in support of the claims alleged in the Complaint (ECF 15 *et seq*; 16 *et seq* and 17 *et seq*).

6. Shortly after filing the above exhibits on March 23, Plaintiff filed a Memorandum in Further Support of the Opposition (*see* ECF 14) to an extension of the time to respond to the Complaint (ECF 18). Plaintiff alleged that defendant's counsel filed the motion for continuance in bad faith, for the purpose of causing unnecessary delay, based on plaintiff's phone call with Brian Moffet where he made the assumption that his request would be granted, despite having failed to show good cause in his motion asking for said extension. *Id* at ¶¶ *1-5* .

7. On March 24, the day before the responsive pleading was due, the Court granted defendant's motion in part, resulting in the new deadline for filing a responsive pleading to and including April 2, 2021 (ECF 20). Plaintiff respected the Court's judgement in extending the deadline by one week.

8. On March 25, Plaintiff filed 4 additional exhibits into evidence (ECF 21 *et seq*)

9. On April 2, 2021, defendant's attorney of record, Brian L. Moffet, filed a motion to dismiss for failure to state a claim upon which relief can be granted (ECF 22). Attached to the motion to dismiss was a "memorandum of law" in support of the motion to dismiss (ECF 22-1).

10. Plaintiff timely filed a motion to strike the motion to dismiss on the same day, pursuant to Rule 12(f), Fed. R. Civ. P. (ECF 24).

11. I will first provide a brief response to the motion by M&T.

**II.     Plaintiff's Response to M&T's Memorandum of Law**

*Introduction*

12.     ***First***, plaintiff's FCRA claim (Count 1) succeeds as a matter of law because he has alleged a bona fide dispute, and also filed evidence with the Court, which shows that the dispute with M&T is bona fide in all respects. ***Second***, Plaintiff's claim under the Truth in Lending Act (TILA) is not only *plausible* but proven by undisputed factual evidence filed with the Court. ***Third***, the Fair Credit Billing Act claim (Count 3) is valid and actionable but plaintiff will *voluntarily* dismiss this claim and focus on the FCRA and TILA claims in Counts 1 and 2. ***Fourth***, plaintiff will now *voluntary* dismiss the FDCPA claim (count 4). ***Finally***, plaintiff will *voluntarily* dismiss the FTC Act claim. ***Importantly***, those allegations set forth in the Complaint (Counts 3-5) are still to be incorporated by reference as to Counts 1 and 2 as they provide contextual support for the FCRA and TILA claims. Plaintiff will focus on FCRA and TILA claims in this lawsuit for the purpose of judicial economy.

*Count 1*

13.     Defendant argues that Plaintiff's FCRA claim fails as a matter of law because he cannot allege a "bona fide" dispute with M&T. This is a poorly constructed argument as a matter of common sense.

14.     Plaintiff has alleged that he made a bona fide dispute in his Complaint (ECF 1 at ¶ 37). Nothing on the record would support the conclusion that the dispute was not "bona fide" as alleged by M&T, and thus this argument lacks merit. Even if M&T could show that the dispute was not bona fide, this is a disputed question of material fact, and plaintiff preserves his right to jury trial for such findings of fact. The plaintiff acknowledges that he must shoulder the burden of proof through a preponderance of evidence.

3

15. The record shows that plaintiff notified M&T on numerous separate occasions that the reported information was inaccurate or incomplete in violation of the FCRA:

16. Plaintiff sent emails to M&T at the proper email address at all times between 12/31/2020 and 2/28/2021 (ECF 16-1).

17. M&T directly consented to the use of email for written correspondence and explicitly provided an email address for all communications in the email to Plaintiff on 12/31/2020:

> We'd like to confirm that we have received your correspondence on December 31, 2020 and are currently researching your concerns with the appropriate areas of M&T…Please know that we will respond to your concerns in writing, by sending you a secure e-mail…Should you have any questions in the meantime, feel free to reply to this email, officeofthepresident@mtb.com or call us at 716-635-4517."

ECF 27-1; 28,1-3.

18. Plaintiff sent a demand for an automatic stay to M&T on all payments until the investigations were concluded to the proper email address for such matters on January 17, 2021. See ECF 27-2, 27-3.

19. On February 5, 2021, Plaintiff directly cited inaccurate information reflected on his credit report in an email to M&T, "I have factual evidence that my account is still open and was never closed. My credit report also says that my account is still overdue which is false."

20. Plaintiff provided detailed information in his written correspondence to M&T citing specific instances of inaccurate reporting to the CRAs.

21. Plaintiff even cited relevant case law in this circuit notifying M&T that they were violating the interpretation of the statute as published by the 4th Circuit Court in *Saunders*.

ECF 28-3.

22. Plaintiff submitted 8 disputes with the CRAs between December 31, 2020 and February 25, 2021.

ECF 29.

23. Accordingly, it has been assumed that each of the eight disputes resulted in a notification sent to M&T of the dispute, likely through an automated consumer dispute verification form (ACDV), and thus triggering M&T's re-investigation obligations pursuant to 15 U.S.C. § 1681s-2(b).

24. Plaintiff disputed the account status as it was being reported ("closed by credit grantor"), payment history, past due amount, delinquencies reported and the balance reported. Therefore the ACDV should have reflected that the disputes were comprehensive and thus requiring M&T to perform a reasonable investigation as to the disputed information and report the results of the investigation to the CRA which includes any omissions which render the reported information misleading.

25. Each dispute initiated by the plaintiff was verified as accurate. The information verified as accurate, however, was inaccurate. The verified information showed that the account was still past due even though plaintiff has made a payment on December 17, 2020 for the billing cycle ending December 16, 2020. M&T even reversed the imposition of the late fee for that billing cycle (notable is the practice that M&T pre-emptively charges late fees on the same day as the closing date of each billing cycle, without any observation of the required 5-day grace period under TILA).

26. In *Gorman v. Wolpoff & Abramson*, 584 F. 3d 1147 (9th Cir. 2009), the Court re-affirmed the persuasive authority of the 4th Circuit's opinion in *Saunders V. Branch Banking & Trust Co. of Va.*, 526 F. 3d 142 (4th Cir. 2008) that verifying derogatory information upon

5

receipt of a ACDV from a CRA and then verifying the previously furnished information as accurate, without also reporting affirmative defenses raised by the consumer related to the underlying debt presents a cognizable claim under § 1681s-2(b).

27. As in *Gorman* and *Saunders,* plaintiff argues that M&T's verification delinquency and account status as reported, without a notation that the debt was disputed, represents an "incomplete or inaccurate" entry on his credit file that M&T failed to correct after its investigation. It is well established by *Saunders* and *Gorman* that after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute represents a cognizable claim under § 1681s-2(b).

28. The Fourth Circuit also noted that a consumer's failure to pay a debt that is not really due "does not reflect financial irresponsibility," and thus the omission of the disputed nature of a debt could render the information sufficiently misleading so as to be "incomplete or inaccurate" within the meaning of the statute.

29. However, in *Gorman,* the 9th Circuit added that holding that there is a private cause of action under § 1681s-2(b) does not mean that a furnisher could be held liable on the merits simply for a failure to report that a debt is disputed, "the consumer must still convince the finder of fact that the omission of the dispute was misleading," but rather it is the failure to report a *bona fide* dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s-2(b). In the current case at issue, plaintiff alleges that the dispute was *bona fide*, insofar as that term represents its Latin translation of "good faith" which the disputes currently presented before the Court reflect.

30. Black's Law Dictionary defines "Bona Fide" as meaning:

In or with good faith; honestly, openly and sincerely; without deceit or fraud. Truly; actually; without simulation or pretense.

6

Source: https://thelawdictionary.org/bona-fide/

31. Plaintiff, at all times, was disputing the debt in good faith, honestly and openly without deceit or any pretense. Plaintiff was genuinely disputing the reporting because he believed that the information on the credit reports was misrepresentative of the underlying debt and he argued that the way it was reported, especially without any notation that there was an ongoing dispute regarding the default previously reported, was misleading in such a way that it had an adverse effect.

32. The non-payment during the "three-month sojourn" was due to plaintiff's understanding that there would be a 0% APR during the first twelve months of the account. Therefore, the fact that plaintiff did not make payments on the account during the sojourn do not reflect financial irresponsibility but rather were the result of the inadequate representations made to the plaintiff regarding the underlying credit when the account was opened. As detailed in the analysis of Count 2, these arguments possess an abundance of merit when considering the pretext under which the account was opened, and the inferences that were made based on the disclosures regarding the account and its payment obligations.

33. In conclusion, the plaintiff has indeed pled a cognizable claim under § 1681s-2b and the argument by the defendant is thus lacking even slight merit. The evidence and the record support that the disputes were bona fide. Also, the record would support that (i) M&T did not have reasonable procedures in place to investigate consumer disputes from CRAs, (ii) M&T did not conduct a reasonable investigation after it received the 8 dispute notifications, (iii) M&T recklessly disregarded the rights of consumers in how it handled its re-investigation duties under commonly understood interpretations of the statute and (iv) M&T failed to uphold its duties as a furnisher of information by not reporting the disputed nature of the account when it verified the accuracy of the previously furnished information. Further, the fact that it verified the accuracy of

8 separate dispute notifications without including reference to said dispute further shows that M&T acted willfully and is thus liable for statutory and punitive damages under § 1681s-2b.

34. Thus, the plaintiff has pleaded an actionable claim and is entitled to the relief he seeks which includes:

    a. Statutory damages of $1,000

    b. Punitive Damages of $5,884,495.20

*Count 2*

35. Defendant is utterly mistaken in his motion to dismiss as to Count 2 for the alleged violation of the Truth in Lending Act. As it relates to 15 U.S.C. § 1663, the defendant is liable for its advertisements – this is quite clearly shown on the record (ECF 1-5 and 15-1). M&T is further liable for this action pursuant to 15 U.S.C. § 1640 as it relates to the account opening disclosure provisions of TILA, which is also reflected on the record, namely, by the credit application filed with the court (ECF 17-2). The account opening disclosures impose liability under 15 U.S.C. § 1640.

36. The account opening disclosures provide for the appropriate relief in *this* lawsuit as it was *these* inaccurate disclosures which caused the events leading up to *this* suit. *These* inaccurate account disclosures directly resulted in emotional distress, loss of sleep, foregone interest, time, and reputational injury. For such injuries, plaintiff prays for relief from the Court.

37. Thus, in response to defendant's counsel, plaintiff says that he has successfully stated a claim for TILA violations, has provided factual evidence in support thereof, and is thus entitled to the relief he now seeks.

38. To reiterate, M&T has in fact failed to post the written agreement which accurately describes the M&T Visa Credit Card with Rewards. The link provided by defendant's

8

### III. Prayer for Relief

WHEREFORE, Plaintiff seeks the following relief under FCRA and TILA:

| | |
|---|---:|
| FCRA Statutory damages of: | $1,000 |
| FCRA Punitive Damages of | $5,884,495.20 |
| TILA Actual Damages | $10,000.0 |
| TILA Statutory Damages | $5,000.0 |
| **Total** | **$5,900,495.20** |

*/s/Bryce Carrasco*

Bryce Carrasco

bocarrasco47@outlook.com

410-858-7432

14

| Schedule of Damages | |
|---|---:|
| *Statutory* | |
| FCRA 1681s-2(b) | $1,000.0 |
| TILA 1663 & 1666 | $5,000.0 |
| | |
| *Actual* | |
| Emotional, Fees and Foregone Interest | $2,500.0 |
| | |
| *Punitive* | |
| FCRA 1681s-2(b) | $5,884,495.2 |
| | |
| **Total** | **$5,892,995.24** |

### PUNITIVE DAMAGES ASSESSMENT

| **Saunders v. Branch Banking & Trust Co. of VA (4th Cir. 2007)** | |
|---|---:|
| Net Worth (12/31/2006) | $3,200,000,000 |
| Punitive Damages | 80,000 |
| % Net Worth | 0.00250% |
| | |
| **Daugherty v. Ocwen Loan Servicing (4th Cir. 2016)** | |
| Net Worth (12/31/2015) | 854,638,000 |
| Punitive Damages | 600,000 |
| % Net Worth | 0.0702% |
| | |
| **Carrasco v. M&T Bank (D. Maryland 2021)** | |
| Net Worth (12/31/2020) | 16,187,283,000 |
| M&T / BB&T | 5.1x |
| M&T / Ocwen | 18.9x |
| | |
| **Punitive Damages Valuation Range (Multiple of Awards)** | |
| Low - BB&T | $404,682.1 |
| High - Ocwen | $11,364,308.4 |
| Average 1681s-2(b) | $5,884,495.2 |

UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

| | |
|---|---|
| Bryce Carrasco,<br><br>　　　Plaintiff<br><br>V.<br><br>M&T Bank<br><br>　　　Defendant | CIVIL ACTION<br><br>CASE NO. 21-532 (SAG)<br><br><br><br>**AMENDED COMPLAINT NO. 1** |

## AMENDED COMPLAINT

COMES NOW Plaintiff **Bryce Carrasco**, ("Plaintiff"), to file this Amended Complaint against M&T Bank Corporation, for the reasons that follow.

## Summary

1. Plaintiff seeks relief as follows:

- Non-Economic Emotional Damages: $60,000.00

- Economic Damages – Lost Wages: $100,000.00

- Punitive Damages: $5,884,495.20

## Applicable Law

2. Fair Credit Reporting Act (FCRA); 15 U.S.C. § 1681s-2(b)

3. Truth in Lending Act (TILA); 15 U.S.C. §§ 1601-1667f

## Background and Statement of Facts

4. Plaintiff applied for an M&T Visa Credit Card with Rewards at the Light and Redwood Branch, located at 1 Light Street, Baltimore, MD 21202, and the credit card was opened on July 17, 2020.

5. A binding agreement was never executed in regard to the Credit Card.

6. On July 20, Plaintiff emailed an M&T Branch Manager named Drew Solstice, asking, "Is there a way I can look at documentation online?"

7. On July 21, the M&T Branch Manager replied to the email stating, "What documentation are you looking for there is a letter that comes separate from the card that has your approval information but typically with a credit card there isn't further documentation outside of what I gave when you filled out the application."

8. Plaintiff received an undated letter via mail from M&T Bank sometime around July 21, which, based upon belief and understanding, was the "letter that comes separate from the card that has your approval information" referred to in Drew Solstice's email in ¶ 7 of this

2

activation letter sent to me by Defendant which shows the misleading and unlawful representations of the terms of the credit card.

72. Plaintiff had a credit score of 715 on a report from July 16, 2020 compared to 575 average currently (as of 2/26/2021). The chart below illustrates the detrimental impact M&T's false and inaccurate reporting has had on Plaintiff's ability to obtain credit.



Source: 7/16/2020 data based on Exhibit 9. 2/26/2021 data via Experian (see ex. 9.1).

73. Prior to the reversal, total late fees charged to the account as of December 17, 2020 amounted to $130. $60 of the penalty still remains accrued to the outstanding balance. Plaintiff continues to dispute the legitimacy of this amount and demands payment from Defendant for $60 to be settled in due course. Thus, current outstanding balance is overstated by $60 in the view of Plaintiff.

74. M&T Bank is not using fair and equitable underwriting practices between its various customer groups, such as for commercial credit.

75. Further, M&T is employing a double standard to its covenants on revolving credits with a clear bias in favor of non-consumer borrowers. It is not in the name of commerce

20

monthly payments. Based on these assumptions, the outstanding balance would be repaid by December 2023, and the Defendant would have extracted an annualized rate of return of ~21%.

79. The attractive returns are a product of (i) penalty APRs of 24.99% imposed after the promotional period, and (ii) elimination of refinancing risk of the account by impairing the victim's credit to such an extent that the ability to obtain credit elsewhere is no longer feasible.

80. The damage this does to our overall economic productivity is severe when considering the potential scale of the Defendant's operations.

81. Plaintiff seeks immediate injunctive relief from this Honorable Court. Plaintiff is not the only victim of these activities and the harm can have potentially permanent consequences when considering missed employment opportunities as a result of poor credit history.

82. Most importantly, Defendant distorts the credit profile for reasons that are not financial irresponsibility but rather are the result of deceptive and unfair practices, which indeed affect commerce. While it may be implied that consumers do not have a private right of action for suits involving unfair and deceptive acts affecting commerce, it is nevertheless essential to include these violations so that they can be brought to the fore and Plaintiff strongly urges the FTC to take action to prevent M&T from causing harm to commerce.

**Prayer for Relief**

| Schedule of Damages | |
|---|---:|
| ***Statutory*** | |
| FCRA | $1,000.0 |
| TILA | $5,000.0 |
| ***Actual*** | |
| Emotional, Mental Anguish, and Fees | $60,000.0 |
| Economic - Lost wages | $100,000.0 |
| ***Punitive*** | |
| FCRA 1681s-2(b) | $5,884,495.2 |
| **Total** | **$6,050,495.24** |

**IN THE UNITED STATES OF AMERICA**

July 15, 2021

The Honorable Stephanie A. Gallagher,

I humbly ask for the Court to render a Judgment which is final and allows the plaintiff to move on with his life. All parties have had the opportunity to obtain discovery and the record has been established. The Defendant has been made fully aware of the claims which have been brought against him, and has been given the opportunity to make a defense against these claims. It has become necessary to swiftly conclude this case; justice will have been accomplished, and the Court will have properly and impartially administered these proceedings in a way that highlights the strength of our judicial branch. It has become clear that the Defendant has no further arguments, or any intention to reach a settlement. I have tried to contact Brian by phone and email, and I have made strenuous efforts to see if they would be willing to just make the payment and then file a stipulated dismissal of the case. Of course, they have been dead silent since discovery has ended, for obvious reasons including the fact that they have zero evidence to build any cognizable defense. In any event, there is no doubt what the outcome of this case will be. It was never close. As I directly stated to Brian in my various emails sent over the past few days, the payment which is forthcoming from M&T is fair, reasonable and justified. M&T Bank needs the Court to compel them to make this payment or they will continue to waste my time and the Court's time, which is not acceptable and cannot be allowed by the Court. Furthermore, a hard deadline must be set in place, because they will take advantage of the process if there is not a hard cut off. This company is managed by individuals who possess the maturity level of an indignant adolescent child, so the Court must treat them accordingly by forcing them to face the music. This Company literally has hundreds of millions of dollars at its disposal, and $6 million is virtually nothing. The Court must compel them by rendering Judgment in a swift and definite manner. If M&T has any quarrels they can take it up on appeal. Payoff instructions and the suggested hard deadline for wire transfer follow; there must be an appealable Judgment of this case which forces M&T to make this payment in the manner set out below. If they are given the license they will take advantage and continue in contempt of an efficient determination, so the payoff must be governed by strict timing requirements.

\*　　\*　　\*

The payoff amount is **$6,139,495.20**[1]. The routing number for the wire transfer is **026009593**.

Hard Deadline of **3:00 pm EST on July 16, 2021** with $100,000 per day ticking fee if they are late in satisfying the payment.

---

[1] Full accounting of this amount is available on request.

bocarrasco47@outlook.com

| | |
|---|---|
| **From:** | Bryce Carrasco |
| **Sent:** | Wednesday, July 14, 2021 1:52 PM |
| **To:** | Moffet, Brian L. |
| **Subject:** | Notice |

I am providing notice that I will file a SHOW CAUSE motion on Friday, July 16th 2021 if M&T does not make any representation to me that it consents to the reasonable settlement terms stipulated previously by the plaintiff to the counsel which would allow for a dismissal of all charges brought by the plaintiff in the present action. The settlement terms, including payment of $6,000,000 United States Dollars to the benefit of the plaintiff, remitted by M&T Bank Corporation, is not arbitrary, excessive, or unjustified based on fundamentally sound analytical methods which can be performed based on publicly available data and information which M&T has admitted to correct and true for all purposes of this action, including specifically its net worth in excess of $16 billion united states dollars, its executive officers compensation which is in excess of $6,000,000 by a material amount, when accounting for stock based compensation as laid out in the plaintiff's financial analysis and valuation, which have been filed on the docket and have been acknowledged and admitted as being true and correct data filed with the Securities and Exchange Commission for the fiscal year ending December 31, 2020.

I will allow you to advise your client of the options they have before them and the reasonable expectations they should have as to the outcome of these proceedings if this payment is not made and the case is not settled. This includes the negative publicity, reputational damage, and further public discovery of unlawful conduct by the agents of M&T Bank, all of which will necessarily be the result of unjustified delay of meeting plaintiff's terms of settlement. The payment in and of itself is not the only factor that needs to be considered when advising your client since the plaintiff can and will cause more damage to be done to the financial value of the defendant's business operations as a going concern by an amount which cannot be easily ascertained using precise quantitative methods, but can be fairly estimated using sound professional judgement by a financial professional with expertise in financial markets and security analysis. The plaintiff is a financial professional, having passed both Series 79 and Series 63 examinations to be a registered investment banking advisor with regulatory agencies affiliated with the United States government. Plaintiff's evaluation of the intangible asset impairment resulting from reputation injury if this case is prolonged, based on Plaintiff's evaluation of the financial position and operations of M&T Bank Corporation, exceeds $6,000,000 United States Dollars by a substantial amount of not less than $100,000,000 United States Dollars. The cumulative effect over a forecast period of five years would show that a valuation of the common equity of M&T Bank could deteriorate significantly if litigation matters involving consumers, especially since the matters involved may implicate a large number of similarly situated individuals who may have similar valid legal claims against M&T Bank if legal advisors assess the facts of this case and the statutory protections available if prosecuted in the courts of the United States of America.

As legal advisor to M&T Bank, you are responsible for providing competent guidance to your client as to the options available to them and also have a duty to examine these options in light of all the circumstances and facts which are relevant to this case. Since the risk of proceeding further in this case may represent a substantial risk factor to the financial condition of the defendant it is your responsibility to advise them that the settlement terms are reasonable and warranted, and that failing to meet the terms offered by the plaintiff represent a material risk to the operating results and financial condition of your client. It therefore falls upon you at the current time to diligently either seek outside counsel by a financial professional which could provide you with a similar analysis as the plaintiff has, which would include incurring investment banking related fees which also represent an additional expense and cash outlay, and the plaintiff advises, in his objective and professional judgement as an investment banking advisor, that this fee is avoidable since they would perform a valuation exercise similar to those used by the plaintiff, and would, if properly performed, arrive at the same conclusion that $6,000,000 represents an attractive exit price for this situation.

Brian, you will be doing a great disservice to M&T Bank by delaying the course of these proceedings further and would also be taking on career risk personally if you continue and attempt to make a summary judgment motion which in retrospect will be viewed as a mistake in legal counsel and would bring into question your ability to provide competent legal counsel to financial corporations. This is me speaking without any consideration of my own benefit or interest in the matter and I have tried to lay these facts out clearly for you as a show of good will that my terms of settlement are the best option at this stage. I am providing three days for you to consider this information and I hope that you make the correct professional decision in advising your client to make the necessary payment to the plaintiff and advise him of such prior to Friday. What I am telling you has not been affected in any way by the fact that I am a pro se party and have a direct interest in the matter, and I am in good faith telling you that you will be making a mistake by doing anything other than settling the case.

Signed and certified by the plaintiff this 14th day of July of the year 2021. /s/Bryce Carrasco