**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **BRYCE CARRASCO**, | * | |
| Plaintiff, | * | |
| v. | * | Case No.:  SAG-21-532 |
| **M&T BANK**, | * | |
| Defendant. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT M&T BANK'S CROSS MOTION FOR SUMMARY JUDGMENT**
**AND IN OPPOSITION TO PLAINTFF'S MOTION FOR SUMMARY JUDGMENT AND**

Defendant M&T Bank ("M&T"), through its undersigned counsel, respectfully submits this Memorandum of Law in support of its Cross Motion for Summary Judgment and in opposition to Plaintiff's Motion for Summary Judgment ("M&T's Cross Motion"). As explained below, there is no dispute as to any material fact, and M&T is entitled to judgment as a matter of law on all claims asserted in Plaintiff's First Amended Complaint ("Amended Complaint").

## I.        INTRODUCTION

Despite Plaintiff filing this case only five months ago, the docket reflects a tortured history. Plaintiff filed the initial Complaint on March 2, 2021, accusing M&T of violating five different federal statutes with respect to a credit card he received eight months earlier in August 2020. M&T moved to dismiss the Complaint pursuant to Rule 12(b)(6), and in response, Plaintiff voluntarily dismissed three of the claims. This Court found that the other two claims, alleging violations of the Fair Credit Reporting Act ("FCRA") and the Truth in Lending Act ("TILA"), met the "relatively low threshold of 'plausibility' required at the motion to dismiss stage" and allowed those claims to proceed. *Carrasco v. M&T Bank*, 2021 WL 1634711, at \*4 (D. Md. Apr. 27, 2021).

On June 11, 2021, Plaintiff amended the Complaint to include some new allegations but the claims and the theories of liability underlying the claims remained the same. That is, Plaintiff alleges that M&T willfully violated the FCRA, specifically, 15 U.S.C. § 1681s-2(b), "by failing to report the fact that plaintiff was disputing the underlying credit terms with the Defendant." ECF No. 62, ¶ 35. Plaintiff also contends that M&T did not "clearly and conspicuously set forth 'any minimum or fixed amount which could be imposed'" in violation of the credit advertising provisions of TILA, 15 U.S.C. § 1663. *Id.*, ¶ 46.[1]

Although initially scheduled to close on July 27, 2021, discovery closed two weeks early on July 12, 2021 at the request of the parties.[2] ECF No. 79. By this time, Plaintiff had already filed his first motion for summary judgment styled as a "Motion for Punitive Damages Hearing." *See* ECF No. 74. M&T opposed the motion, and Plaintiff responded with a 33-page reply and another 110 pages of exhibits, many of which are either irrelevant or are copies of pleadings and papers already filed in this case. *See* ECF No. 85. Because the reply is the first time Plaintiff "presents specific legal arguments in support of his contention that summary judgment is warranted," this Court re-docketed the reply as "Plaintiff's Motion for Summary Judgment" and denied the "Motion for Punitive Damages Hearing." ECF No. 84.

While Plaintiff's Motion for Summary Judgment may include some legal argument, it is devoid of any statement of material facts and instead only sets forth conclusory assertions of liability. Plaintiff accuses M&T of violating the FCRA, but nowhere in his motion does he set

---

[1] Plaintiff also accused M&T of violating TILA, 15 U.S.C. § 1632, regarding the posting of the credit card agreement on an Internet site, but Plaintiff voluntarily dismissed that claim on July 26, 2021. *See* ECF No. 84.

[2] M&T agreed with Plaintiff to conclude discovery on July 12, 2021, on the condition that M&T be entitled to take Plaintiff's deposition after dispositive motions, to the extent necessary. This conditional agreement was necessary because Plaintiff failed to appear for his deposition, which M&T scheduled at his request for July 8, 2021.

forth the specific information reported by M&T that he contends is inaccurate or misleading. Nor does Plaintiff provide any facts or law that would allow him to circumvent his repayment obligations in order to raise a bona fide dispute concerning the underlying credit terms.[3]

Plaintiff also misapprehends the standard for summary judgment by believing that M&T has the burden of proof. *See, e.g.*, ECF No. 85 at 7 ("M&T has provided no evidentiary material to support" its position). To the contrary, it is Plaintiff's burden to show that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law, and Plaintiff has failed in both respects. Plaintiff even goes so far as to try to amend his Amended Complaint to add new theories of liability[4] but that too is impermissible.[5] Plaintiff concludes his motion by asking "for the relief that the Court deems just and fair." *Id.* at 33. Such relief in this case is to deny Plaintiff's motion and grant summary judgment in favor of M&T on all claims.

Notwithstanding the filing of the Amended Complaint, Plaintiff's claims still arise out of: (1) Plaintiff's failure to understand and comply with his basic repayment obligations under the credit agreement he entered into with M&T; and (2) Plaintiff's failure to check his mail or otherwise monitor his account during a 3-month-long sojourn away from the address that he provided to M&T when he opened the credit card account—and to which address M&T sent all correspondence with Plaintiff. The undisputed material facts show that Plaintiff failed to make

---

[3] Although Plaintiff asks the Court to "grant summary judgment on all claims," (ECF No. 85 at 33), his motion does not mention, much less, address the TILA claim asserted in Count Two of the Amended Complaint. Accordingly, any request by Plaintiff for summary judgment on that claim must be denied.

[4] *See* fn. 19, *infra*.

[5] Plaintiff also spends nearly sixteen pages of his Motion for Summary Judgment addressing punitive damages. *See* ECF No. 85 at 17-32. Notwithstanding the fact that Plaintiff has not and cannot show that M&T violated the FCRA – let alone engaged in willful noncompliance – any argument concerning punitive damages at summary judgment is premature. "Punitive damages are normally for the jury to decide" *after* a determination of liability that would allow consideration of such damages. *Desrosiers v. MAG Indus. Automation Systems, LLC*, No. WDQ-07-2253, 2010 WL 4116991 (D. Md. Oct. 19, 2010) (citing *Owens-Corning Fiberglas Corp. v. Garrett*, 343 Md. 500, 540 (1996)).

the minimum required payments and, as a result, M&T reported his delinquency to the credit reporting agencies ("CRAs"). Plaintiff does not dispute the accuracy of the specific information reported by M&T but rather disputes having any payment obligation at all. That dispute is not credible nor bona fide given the clear and explicit terms of the credit agreement that Plaintiff accepted when he used the credit card.

Similarly without merit is Plaintiff's credit advertising disclosure claim. Not only is there no private cause of action for the violation alleged but neither TILA nor its implementing regulations, Regulation Z, require disclosure of the minimum required payment amount in the advertisement of credit.

Accordingly, for these reasons as discussed further below, M&T is entitled to entry of judgment as a matter of law on all claims asserted in the Amended Complaint, and the Court should deny Plaintiff's Motion for Summary Judgment.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.  Plaintiff's Credit Card Agreement.

On or about July 17, 2020, Plaintiff applied for an M&T Visa Credit Card with Rewards by completing an application similar to the one attached here as Exhibit 1.[6] ECF No. 62, ¶ 4. As part of the application, Plaintiff agreed that he would "comply with all of the terms contained in your M&T Bank Credit Card Agreement and Disclosures that [M&T] will provide to you" upon acceptance of the application. Exhibit 1 at 3.[7] M&T subsequently approved Plaintiff for the credit card.

---

[6] Plaintiff produced this credit card application in discovery, claiming that the application is the sole basis for his claim under TILA. *See* Exhibit 1.

[7] For the Court's convenience, M&T highlighted with a "red box" or in yellow the relevant portions of each exhibit. M&T also redacted Plaintiff's personal identifying information from certain exhibits in accordance with Fed. R. Civ. P. 5.2(a).

On or about July 21, 2020, Plaintiff received a letter from M&T that included the physical credit card, a disclosure identifying the various charges associated with the credit card, and the M&T Bank Visa Credit Card Agreement ("Credit Agreement"). ECF No. 62, ¶¶ 4, 8, 9, 20. *See* Introductory Letter and Disclosure (ECF No. 15-1) and Credit Agreement (ECF No. 15-5), attached hereto as Exhibits 2 and 3, respectively.[8]  M&T mailed these documents to Plaintiff at 100 East Redwood Street, Apt 2013, Baltimore, MD 21202 – Plaintiff's residence and "the address on file with M&T." *Id.*, ¶¶ 15, 17; *see also* Exs. 2 and 3.

Per its terms, the Credit Agreement "becomes effective as soon as You [Plaintiff] activate the Card or the Account." Ex. 3 at 3 ("Effective Date"). The Credit Agreement further provides that "[b]y applying for or using the Card, You [Plaintiff] accept, agree to, and are bound by these terms and conditions" and "promise to do everything this Agreement requires of You, and You promise to pay all amounts due on Your Account." *Id.* ("Responsibility").

Relevant here, the Credit Agreement requires Plaintiff to "pay at least the Minimum Monthly Payment shown on the statement" and further requires payment to be made "[b]y the date shown on any statement for [Plaintiff's] Account" *Id.* at 7 ("Method of Payment"). The Credit Agreement defines "Minimum Monthly Payment" as the greater of:

(a)  $15; or

(b)  2.5% of the Outstanding Balance[9] of Your Account at the end of a billing period plus the greater of (i) any amounts over limit or (ii) any past due amounts.

---

[8] The Credit Agreement attached as Exhibit 3 to the initial Complaint and referenced in the Amended Complaint is incomplete and illegible. However, Plaintiff filed a legible and complete version of the same Credit Agreement in the format in which it was received, as part of ECF No. 15. For purposes of clarity, M&T attaches and will cite to the Credit Agreement filed at ECF No. 15-5, rather than the illegible version attached to the Complaint and referenced in the Amended Complaint.

[9] Outstanding Balance is defined under the Credit Agreement as "the total dollar amount of Your obligation under this Agreement for all Transactions, interest, finance charges, fees, and any other costs." Ex. 3 at 3 ("Definitions").

*Id.* ("Monthly Minimum Payment"). The Credit Agreement – like the Disclosure included with the Introductory Letter – warns that "if any Minimum Monthly Payment is overdue" Plaintiff "must pay a late charge" which will be added to the balance owed on the account. *Id.* at 6 ("Fees and Charges").

Notably, the Agreement explains that Plaintiff will be in default if "You [Plaintiff] fail to make any payment when due under this Agreement…." *Id.* at 8 ("Default").

**B. Plaintiff's Use of the Credit Card.**

On or about August 3, 2020, Plaintiff activated the credit card by transferring to it a $2,200 balance that Plaintiff owed on a credit card account with Bank of America. ECF No. 62, ¶ 12; *see also* August 2020 Account Statement, attached as Exhibit 4. The balance transfer took place on August 3, 2020 and posted on Plaintiff's account on August 4, 2020, along with a balance transfer fee in the amount of $88.00.[10] Ex. 4.

The balance transfer of $2,200 along with the $88 fee appeared on the first account statement that M&T sent to Plaintiff in August 2020. *See* Ex. 4, August 2020 Account Statement. Consistent with the terms of the Credit Agreement,[11] M&T mailed this account statement – and all other account statements – to Plaintiff's "address on file with M&T." *Compare* ECF No. 62,

---

[10] The application Plaintiff completed to obtain the credit card, the Disclosure that accompanied the Introductory Letter, and the Credit Agreement each disclose a "balance transfer fee" equal to "4% of each balance transfer (minimum $10)". Exs. 1 and 2; *see also* Ex. 3 at 6 ("Balance Transfer"). Consistent with this term and Plaintiff's agreement to pay the fee, M&T charged Plaintiff a "balance transfer fee" of $88.00 – 4% of the $2,200 transferred from the credit card account with Bank of America. *See* Ex. 4.

[11] The Credit Agreement provides that "[s]tatements and notices . . . will be mailed to You at the most recent address You have given Us, as shown in our records concerning Your Account."   Ex. 3 at 8 ("Communication Regarding Account, Statements and Notices"). Notably, neither the Credit Agreement nor any federal or state statute or regulation obligates M&T to use any other methods of communication. While Plaintiff complains that he was not contacted by telephone or by email regarding his admitted failure to make monthly payments, he has not and cannot point to any legal requirement imposing such an obligation on M&T.

¶ 15 *to* Ex 4. The August 2020 Account Statement reflected a balance of $2,288 and required a minimum payment of $57.00 by September 13, 2020. *See* Ex. 4.

Plaintiff admittedly did not make the minimum payment due on September 13, 2020, and consequently, M&T sent Plaintiff a letter dated September 18, 2020, advising that his "account is currently past due" and warning that the "[f]ailure to make . . . payment may result in a late fee being assessed." Letter dated September 18, 2020, attached as Exhibit 5. M&T mailed the September 18, 2020 letter – as well as all other collection letters, *see* Exs. 7, 9, 11, 13-14, *infra*. – to Plaintiff's "address on file with M&T." *Compare* ECF No. 62, ¶ 15 *to* Ex. 5.

Thereafter, M&T sent Plaintiff the account statement for September 2020. This statement reflected the same outstanding balance of $2,288, indicated in red a past due amount of $57, and required a minimum payment of $114 by October 13, 2020. *See* September 2020 Account Statement, attached as Exhibit 6. M&T followed up the account statement with a letter dated September 25, 2020, informing Plaintiff that the bank is "temporarily suspending your right to use your card" and requiring Plaintiff "to pay the total amount due" of $57 "[i]n order to reinstate your account." *See* Letter dated September 25, 2020, attached as Exhibit 7.

Plaintiff did not take any action to cure the delinquency reflected in the September 2020 Account Statement or the collection letter dated September 25, 2020. *See* Ex. 8, Plaintiff's Responses to Request for Admission Nos. 5, 6. This prompted M&T to send Plaintiff another letter dated October 16, 2020, informing Plaintiff that his "account is now past due in the amount of $114.00" and that M&T is "temporarily suspending your right to use your card." *See* Letter dated October 16, 2020, attached as Exhibit 9.

Also in October 2020, M&T sent Plaintiff another account statement, reflecting a balance of $2,313 (including a $25 late fee) and, in red, a past due amount of $114. *See* October 2020 Account Statement, attached as Exhibit 10. The account statement also required a minimum payment of $172 by November 13, 2020 and informed Plaintiff "[d]ue to serious delinquency on your account, your Credit Line has been suspended." *Id.* Plaintiff still did not make any payment on his credit card account. *See* Ex. 8, Plaintiff's Responses to Request for Admission Nos. 6, 7.

At the beginning of November 2020, M&T sent Plaintiff a letter advising that his "account is 50 days past due" and requesting immediate payment of the past due amount of $114. *See* Letter dated November 5, 2020, attached as Exhibit 11. Shortly thereafter, M&T mailed Plaintiff the account statement for November, which reflected a balance of $2,348 (including a $35 late fee) and a past due amount of $172 and required a minimum payment of $231 by December 13, 2020. *See* November 2020 Account Statement, attached as Exhibit 12. M&T also sent Plaintiff a letter dated November 16, 2020, informing him that his credit card account "has been permanently terminated because you have not met the repayment terms set forth in the agreement." *See* Letter dated November 16, 2020, attached as Exhibit 13. M&T further demanded Plaintiff to pay the past due amount of $172 immediately "to prevent further damage to your credit." *Id.*; *see also* Letter dated December 1, 2020, attached as Exhibit 14. Plaintiff admittedly did not make any payment in November 2020 or by the December 13, 2020 due date. *See* Ex. 5, Plaintiff's Response to Request for Admission No. 7.

M&T then sent Plaintiff the account statement for December 2020, which included the assessment of another $35 late fee, bringing the account balance to $2,383. *See* December 2020 Account Statement, attached as Exhibit 15. The account statement reflected a past due amount of $231 and required a minimum payment of $291 by January 13, 2020. *Id.*

Despite M&T mailing Plaintiff all of the account statements and all of the collection letters to 100 East Redwood Street, Apt 2013, Baltimore, MD 21202 – Plaintiff's residence and "the address on file with M&T" – Plaintiff did not review any of these documents until sometime in December 2020. ECF No. 62, ¶¶ 15, 17; *see also* Exs 2, 4--7, 9-15. Apparently, in September 2020, Plaintiff "relocated" from his residence in Baltimore and moved in with his parents in Arnold, Maryland, but never advised M&T of his change in address. ECF No. 62, ¶ 15; Ex. 8, Plaintiff's Responses to Requests for Admission No. 10-13. Plaintiff lived with his parents for approximately three months, during which time he never returned to his residence to pick up his mail. *Id.*, ¶ 17. As a result, Plaintiff did not see any of the account statements or letters sent by M&T advising him that his credit card account was past due and that he was in default of his payment obligations until he returned to his apartment in mid-December 2020 and checked his mail for the first time in more than three months. *Id.*, ¶ 18. Soon thereafter, Plaintiff contacted M&T by telephone to make his first payment of $231, which did not post until December 23, 2020, and obtain the reversal of two late fees.[12] ECF No. 62, ¶ 21; *see also* January 2021 Account Statement, attached as Exhibit 16.

## C. Plaintiff's Disputes to the Credit Reporting Agencies.

Beginning in the end of December 2020 and continuing through the filing of this action, Plaintiff submitted no less than eight disputes relating to his M&T credit card to three different CRAs. Plaintiff first disputed the account information on December 31, 2020 and in response, M&T received automated consumer dispute verifications ("ACDVs") from TransUnion and Experian. *See* ACDV 1 (TransUnion) and ACDV 2 (Experian), attached as Exhibits 17 and 18,

---

[12] As a courtesy, M&T reversed the late fees assessed on November 17, 2020 and December 17, 2020.

respectively.[13] ACDV 1 indicated that Plaintiff is disputing all of the information that M&T reported and claiming that M&T "engaged in intimidation tactics without properly communicating with borrower regarding overdue payments." Ex. 17, ACDV 1. Plaintiff also reported that M&T "did not have accurate contact information" for him.[14] *Id.* ACDV 2 similarly indicated that Plaintiff is disputing all of the information reported by M&T, claiming "the information submitted by M&T was not in good faith." Ex. 18, ACDV 2 (all caps omitted). M&T investigated both disputes and timely responded to ACDV 1 on January 5, 2021 and to ACDV 2 on January 4, 2021, either verifying the accuracy of the information reported or updating the disputed information with more current account information. *Compare* Ex. 17 and 18, ACDV 1 and ACDV 2 *to* Ex. 13, Letter dated November 16, 2020, and Ex. 15, December 2020 Account Statement.[15] *See also* Ex. A to M&T's Cross Motion, Evans Aff., ¶ 11.

Between January 5, 2021 and January 7, 2021, Plaintiff filed three more disputes substantially similar to the first ones, all with Experian. *See* ACDV 3 (Experian), ACDV 4 (Experian), and ACDV 5 (Experian), attached as Exhibits 19, 20, and 21, respectively. *Id.* Much like the first disputes, Plaintiff continued to dispute all of the information reported by M&T but did not identify any specific information that he believed was inaccurate. *Id.* M&T investigated

---

[13] Because of the way the e-OSCAR system is set up, a watermark with the word "DRAFT" appears on the ACDV when a hard copy is printed by M&T. *See* Exs. 17-24. While the ACDVs attached as Exhibits 17 through 24 may bear the watermark "DRAFT", they are in fact the final document submitted in response to the dispute and were submitted on the date listed on the ACDV next to the employee's name. *See also* Affidavit of Kathleen Evans ("Evans Aff."), ¶ 11.a, fn. 1, attached as Ex. A to M&T's Cross Motion.

[14] Plaintiff's claims are patently incorrect and conflict with the undisputed fact that M&T sent all of the account statements and collection letters to Plaintiff at "the address on file with M&T" and that Plaintiff received all of the statements and letters sent to this address. *See* Ex. 27, *infra*.

[15] The December 2020 Account Statement reflects a balance of $2,383. Ex. 15, December 2020 Account Statement. Because Plaintiff did not pay the minimum amount of $231 by December 13, 2020 (*See* Ex. 12, November 2020 Account Statement), another $35 late fee was assessed on December 17, 2020 (*see* Ex. 16, January 2020 Account Statement), which brought the "high credit" on the credit card to $2,418.00 ($2,828 + $35).

the disputes and timely responded to ACDV 3 on January 5, 2021, ACDV 4 on January 6, 2021, and ACDV 5 on January 13, 2021. *Id.* In response to ACDV 3, M&T investigated and verified the accuracy of certain disputed account information and updated other account information with the same information provided in response to ACDV 2. *Compare* Ex. 19, ACDV 3 *to* Ex. 13, Letter dated November 16, 2020 and Ex. 15, December 2020 Account Statement. For ACDV 4 and ACDV 5, M&T investigated and verified that the disputed information was accurate and updated the information unrelated to the dispute to reflect that it closed the account on November 16, 2020. *Compare* Exs. 20 and 21, ACDV 4 and ACDV 5 *to* Ex. 13, Letter dated November 16, 2020, and Ex. 15, December 2020 Account Statement. *See also* Ex. A to M&T's Cross Motion, Evans Aff., ¶¶ 12, 13.

On February 9, 2021, Plaintiff submitted his fifth dispute to Experian, and like the others that came this one, Plaintiff continued to dispute all of the information reported by M&T without identifying any specific information he claimed was inaccurate. *See* ACDV 6 (Experian), attached as Exhibit 22. M&T investigated and timely responded on February 10, 2021, verifying the accuracy of the disputed information and updating other information unrelated to the dispute. *Compare* Ex. 22, ACDV 6 *to* Ex. 13, Letter dated November 16, 2020, Ex. 15, December 2020 Account Statement, and Ex. 16, January 2021 Account Statement. *See also* Ex. A to M&T's Cross Motion, Evans Aff., ¶ 14.

Two weeks later, on February 20, 2021 and again on February 23, 2021, Plaintiff filed more disputes with the CRAs. *See* ACDV 7 (Equifax) and ACDV 8 (Experian), attached as Exhibits 23 and 24, respectively. To Equifax, Plaintiff complained, "he was never late on his payment," "wanted to have the late payment . . . removed," and "there is no bills [sic] that was

sent to him."[16] Ex. 23, ACDV 7 (all caps omitted). M&T investigated the claim and verified the accuracy of the reported information. *Compare* Ex. 22 *to* February 2020 Account Statement, attached as Exhibit 25. To Experian, Plaintiff made the same claim as before and disputed all of the account information. Ex. 23, ACDV 8. M&T investigated and timely responded to Experian on February 23, 2021, verifying the accuracy of the disputed information and updating other information unrelated to the dispute. *Compare* Ex. 24, ACDV 6 *to* Ex. 13, Letter dated November 16, 2020, Ex. 15, December 2020 Account Statement, and Ex. 25, February 2021 Account Statement. *See also* Ex. A to M&T's Cross Motion, Evans Aff., ¶¶ 15, 16.

### D.  Plaintiff's Disputes to M&T.

Separate and apart but in addition to the disputes submitted to the CRAs, Plaintiff also sent M&T an email on December 30, 2020, claiming that the derogatory credit information M&T reported to the CRAs was "submitted in bad faith." ECF No. 62, ¶ 22; Email dated December 30, 2020, attached as Exhibit 26.[17] Plaintiff sent the email to Investor Relations at ir@mtb.com with copies to certain M&T employees. *Id.* Attached to the email was a "Personal Statement" from Plaintiff admitting that "the physical statements were delivered to my apartment located at 100 East Redwood Street, Baltimore, Maryland 21202 each month up to December 2020" and that he "found numerous statements and letters from M&T regarding the line of credit" when he returned to his apartment the first week of December 2020 to check on his mail. *See* Plaintiff's

---

[16] The latter statement that bills were never sent to Plaintiff is factually incorrect as Plaintiff concedes he received all of the statements and all of the collection letters at "the address on file with M&T." *See* Ex. 27, *infra*.

[17] Attached to Plaintiff's December 30, 2020 email are three credit reports, an email exchange with a bank branch employee and Plaintiff's "Personal Statement." M&T only attaches the December 30, 2020 email and the "Personal Statement" and does not attach the other documents because they either contain Plaintiff's personal financial information and/or are not material to this motion. To the extent the Court wants to review the other documents attached to Plaintiff's December 30, 2020 email, M&T will supplement this filing with those additional documents.

"Personal Statement" dated December 30, 2020, attached as Exhibit 27. Notwithstanding the fact that M&T mailed the account statements and the collection letters to the address Plaintiff provided when he opened the credit card, and Plaintiff received those statements and letters at that address, Plaintiff complained that M&T did not call or email him regarding his failure to make minimum payments. *Id.* Plaintiff also complained that M&T did not "make clear . . . that the account would be subject to minimum monthly payments of principal" despite disclosing that obligation in the Credit Agreement that was provided with the credit card. *Id; see also* Exs. 2 and 3. Nowhere on the Personal Statement did Plaintiff identify the specific information reported by M&T that he claimed was inaccurate; it was the reporting itself with which he took issue.

### III.    STANDARD OF REVIEW

As the Supreme Court noted:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Following *Celotex*, the Fourth Circuit emphasized that trial judges have "an affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

Pursuant to Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986). To avoid summary judgment, the nonmoving party must demonstrate there is a genuine dispute of material

fact that precludes the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *see also, e.g., Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat summary judgment. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e))*, cert. denied*, 541 U.S. 1042 (2004); *see Celotex*, 477 U.S. at 322-24. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson*, 477 U.S. at 252. Similarly, "a party's self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment." *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004).

Finally, although *pro se* pleadings are "held to less stringent standards than formal pleadings drafted by lawyers," (*Allen v. Brodie*, 573 F. Supp. 87, 89 (D. Md. 1983) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), this Court recently held in *Eastridge v. Fifth Third Bank*, 2021 WL 1530175, at *3 (D. Md. Apr. 19, 2021) that "pro se status does not lessen a party's burden with respect to the court's consideration of a summary judgment motion." Accordingly, pro se litigants "must still set forth facts sufficient to withstand summary

judgment." *Symeonidis v. Paxton Capital Group, Inc.*, 220 F. Supp. 2d 478, 480 n.4 (D. Md.

2002).

## IV.    ARGUMENT

### A.  M&T is Entitled to Summary Judgment on Plaintiff's FCRA Claim as Alleged in Count One of the Amended Complaint.

"'Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting,

promote efficiency in the banking system, and protect consumer privacy.'" *Alston v. United*

*Collections Bur., Inc.*, Case No. DKC 13-0913, 2014 WL 859013 (D. Md. Mar. 4, 2014)

(quoting *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008)).

"[T]he FCRA places distinct obligations on three types of entities: consumer reporting agencies,

users of consumer reports, and furnishers of information to consumer reporting agencies."

*Chipka v. Bank of Am.*, 355 F. App'x 380, 382 (11th Cir. 2009). Here, M&T is a furnisher of

information, and the FCRA imposes two sets of duties upon furnishers. *See* 15 U.S.C. § 1681s-

2(a) and (b).

*First*, § 1681s-2(a) imposes a duty upon the furnisher to provide accurate information. 15

U.S.C. § 1681s-2(a). However, there is no private right of action for a violation of § 1681s-2(a).

*See, e.g.,* 15 U.S.C. § 1681s-2(c)(1),6 (d); *Saunders*, 526 F.3d at 149 (interpreting § 1681s-2(c)

to conclude that the "FCRA explicitly bars private suits for violations of § 1681s-2(a)"); *Ausar v.*

*Barclay Bank Delaware*, Civ. No. PJM 12-0082, 2012 WL 3137151, at * 2 (D. Md. July 31,

2012) (dismissing claim that defendant violated the FCRA by failing to provide correct and

accurate information to consumer reporting agencies because the "FCRA makes clear that

federal and state authorities have exclusive enforcement powers over § 1681s-2(a)").

Accordingly, to the extent Plaintiff argues in his Motion for Summary Judgment that M&T failed

to report the debt as disputed in violation of § 1681s-2(a), that claim fails as a matter of law. ECF No. 85 at 12-14.[18]

    *Second*, upon receiving a dispute of inaccuracy from a CRA, § 1681s-2(b) imposes a duty upon the furnisher to conduct a reasonable investigation, report the results of that investigation to the CRA, and modify or delete any inaccurate information. 15 U.S.C. § 1681s-2(a) and (b). To bring a claim under § 1681s–2(b), "a plaintiff must establish three elements: (1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information." *Ausar-El v. Barclay Bank Delaware*, PJM-12-0082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012). The federal courts have recognized that only a "bona fide dispute" may give rise to liability under the FCRA. *See, e.g., Shap v. Cap. One Fin. Corp.*, 2012 WL 1080127, at *4 n. 27 (E.D. Pa. Mar. 30, 2012) (collecting cases). Section 1681s–2(a)(8)(D), which provides clear guidance to consumers seeking to dispute the accuracy of information furnished to the consumer reporting agencies, is instructive in determining whether a consumer dispute is "bona fide":

---

[18] Plaintiff spends several pages of his Motion for Summary Judgment setting forth his efforts to dispute the information directly with M&T. Specifically, Plaintiff references 50 telephone calls and more than twenty emails he sent between December 2020 and March 2021. ECF No. 85 at 12-14. Regardless of the substance or nature of these communications, Plaintiff's direct disputes to M&T do not trigger any duties under § 1681s–2(b). *See Shap v. Cap. One Fin. Corp.*, No. CIV.A. 11-4461, 2012 WL 1080127, at *5 (E.D. Pa. Mar. 30, 2012) ("A consumer's direct dispute to the furnisher does not trigger a furnisher's duties under § 1681s–2(b)."); *Groves v. U.S. Bank*, No. 10–2665, 2011 WL 2192821, at *5 (M.D. Fla. June 6, 2011) ("[A] direct dispute does not trigger the furnisher's duty under [§ ] 1681s–2(b)."). Moreover, Plaintiff's phone calls and emails are not properly considered direct disputes because they were not sent "directly to the [furnisher] at the address specified by the [furnisher] for such notices" as required by § 1681s–2(a)(8)(D). M&T's account statements specify the following address for direct disputes: "M&T Bank, P.O. Box 900, Millsboro, DE 19966," (*see, e.g.*, Ex. 4, August 2020 Account Statement), and based on the fact that Plaintiff contacted M&T by phone and by email, he clearly did not comply with the notice requirements for direct disputes so as to trigger any obligations under § 1681s–2(a).

> A consumer who seeks to dispute the accuracy of information shall provide a dispute notice directly to such person at the address specified by the person for such notices that—
>
> > (i) identifies the specific information that is being disputed;
> >
> > (ii) explains the basis for the dispute; and
> >
> > (iii) includes all supporting documentation required by the furnisher to substantiate the basis of the dispute.

15 U.S.C.A. § 1681s–2(a)(8)(D); *see also Palouian v. FIA Card Servs.*, 2013 WL 1827615, at *3 (E.D. Pa. May 1, 2013) (utilizing the statutory guidance to determine whether the dispute at issue was "bona fide").

Here, Plaintiff alleges that M&T willfully violated 15 U.S.C. § 1681s-2(b), "by failing to report the fact that plaintiff was disputing ***the underlying credit terms*** with the Defendant." ECF No. 62, ¶ 35 (emphasis added).[19] That is, Plaintiff never disputed the existence of the debt, the amount of the debt, the fact of his non-payment, or that the charges assessed were inconsistent with the terms of his Credit Agreement with M&T. Rather, as noted in the Court's Memorandum Opinion on M&T's Motion to Dismiss, Plaintiff disputed whether "he was properly notified of

---

[19] In his Motion for Summary Judgment, Plaintiff contends "that M&T violated § 1681s-2(b) by . . . failing to conduct a lawful investigation after receiving notice from the CRAs of Plaintiff's disputes." ECF No. 85 at 16. However, no such allegation or claim appears in the Amended Complaint. In fact, the word "investigation" is not even mentioned in any of the 82 separately numbered paragraphs that comprise Plaintiff's amended pleading. It is well established that a plaintiff cannot amend his complaint through summary judgment. *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013). That is true even if that theory is based on the same statute underlying other alleged purported theories of liability. *Jones v. Koons Auto., Inc*., No. CIV. A. DKC 09-3362, 2013 WL 3713845, at *5 (D. Md. July 15, 2013); *Noshafagh v. Leggett*, No. CIV. A. DKC 11-3038, 2013 WL 93345, at *6 (D. Md. Jan. 7, 2013). Accordingly, any argument by Plaintiff challenging the adequacy of M&T's investigation is not properly before this Court and must be rejected. *See Neal v. Pentagon Fed. Credit Union*, No. CV ELH-18-451, 2019 WL 4038564, at *14 (D. Md. Aug. 27, 2019) (rejecting plaintiff's attempt to assert new claim through briefing on summary judgment).

the terms and [whether] he is actually bound by the credit agreement."[20] *Carrasco*, 2021 WL 1634711, at *4. According to this Court, "[i]f Plaintiff was not actually bound by the agreement his 'failure to pay the debt [would] not reflect financial irresponsibility,' and M&T's failure to disclose the dispute would be misleading." *Id.* (citing *Saunders*, 526 F.3d at 150).

Thus, the critical question before this Court is whether Plaintiff is bound by the terms of the Credit Agreement because, if he is, his claim under the FCRA fails as a matter of law. Based on the undisputed material facts and the applicable law, not only is Plaintiff bound by the terms of the Credit Agreement but also he admittedly failed to make the required minimum monthly payments as reported by M&T to the CRAs. While Plaintiff may allege that he was not "properly notified" of the terms of the Credit Agreement, Plaintiff's receipt and acceptance of the Credit Card Agreement is clear.

Plaintiff received the Credit Agreement and the physical credit card in the same mailing on or about July 21, 2020. ECF No. 62, ¶¶ 4, 8, 9, 20; *see also* Exs. 2 and 3. Thereafter, Plaintiff used the credit card by transferring to the new card a $2,200 balance that Plaintiff owed on a credit card account with Bank of America. ECF No. 62, ¶ 12; Ex. 4. By using the credit card, Plaintiff accepted and agreed to be bound by the terms of the Credit Agreement and promised "to pay all amounts due on Your Account." Ex. 3 at 3 ("Responsibility"); *see also Grasso v. First USA Bank*, 713 A.2d 304, 308-09 (Del. 1998) (credit card holder accepted agreement's terms by using credit card); *Gaynoe v. First Union Direct Bank, N.A.,* 2001 WL 34000142, *6 (N.C. Super. Jan. 18, 2001) (cardholder's use of credit card issued by bank constituted acceptance of

---

[20] While Plaintiff contends that his credit card "was advertised as having no minimum payments within the first 12 months in addition to 0% APR without limitation during" the same period of time (*See* Ex. 27), he has failed to offer any evidence supporting this contention. Indeed, nowhere in any of the 85 docket entries in this case or in the 110 pages of exhibits attached to his Motion for Summary Judgment does Plaintiff provide the allegedly offending advertisement. While such omission may have allowed Plaintiff to avoid dismissal, it is fatal to his effort to defeat summary judgment.

the contract terms); *Mangahas v. Barclays Bank Del.*, No. SACV 16-00093 JVS (JCGx), 2016 WL 11002179, at *2 (C.D. Cal. May 9, 2016) ("[The plaintiff's] use of the credit card constituted assent to the terms of the cardmember agreement, including its arbitration provision."); *Kulig v. Midland Funding, LLC*, No. 13 Civ. 4715(PKC), 2013 WL 6017444, at *6 (S.D.N.Y. Nov. 13, 2013) ("[T]he use of a credit card constitutes acceptance of an offer of credit....").

Because the terms of his Credit Agreement bind Plaintiff as a matter of law, his disputes to the CRAs are not bona fide. It is undisputed that Plaintiff did not comply with his repayment obligations under the Credit Agreement and, specifically, did not make the required minimum monthly payments due in September, October, November and December 2020. As a result, Plaintiff incurred four late fees and had his credit card cancelled on November 16, 2020. M&T accurately reported this information to the CRAs in accordance with its obligations under the FCRA. That M&T did not also report that Plaintiff was disputing the underlying obligation to make payments on the credit card does not violate the FCRA. Under settled law, M&T "does not report 'incomplete or inaccurate' information within the meaning of §1681s-2(b) simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is dispute is unlikely to be materially misleading." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) (citing *Saunders*, 526 F.3d at 150).

Plaintiff cites *Saunders*, for the proposition that, regardless of the nature of the dispute, information about an account is "incomplete or inaccurate" if the information does not include an account holder's dispute. ECF No. 85 at 6. Plaintiff's reliance on *Saunders* is misplaced. In *Saunders*, the court held only that it was wrong to conclude that "reporting a debt without reporting its disputed nature can never be deemed inaccurate as a matter of law." *Saunders*, 526

F.3d at 149 (emphasis in original). The ultimate question is whether failing to report the dispute is "misleading in such a way and to such an extent that [it] can be expected to have an adverse effect." *Id.* at 150 (quoting *Dalton v. Capital Associated Industries*, 257 F.3d 409, 415 (4th Cir. 2001)). Bound by his Credit Agreement, Plaintiff admittedly did not make any of the payments required by the agreement for a period of more than four months. Thus, M&T's was under no obligation to report Plaintiff's account as disputed — particularly when it verified the accuracy of the reported information within a matter of days after receiving each dispute.[21] As this Court previously recognized, such an obligation would only exist "[i]f Plaintiff was not actually bound by the agreement" but that is not the case based on the undisputed facts of this matter. *Carrasco*, 2021 WL 1634711, at *4. Accordingly, M&T is entitled to entry of summary judgment on Count One of Plaintiff's Amended Complaint.

## B. M&T is Entitled to Summary Judgment on Plaintiff's TILA Claim under 15 U.S.C. § 1663 as Alleged in Count Two of the Amended Complaint.

Plaintiff alleges that M&T violated the advertising disclosure requirements of 15 U.S.C. § 1663 because it advertised an open-end credit plan with 0% APR for the first twelve months, but did not disclose the required minimum monthly payments. ECF No. 62, ¶ 44. In discovery, Plaintiff produced the offending advertisement – M&T's "Marketing Brochure with Application". *See* Ex. 1. Plaintiff's TILA fails at the threshold because there is no private right of action for allegedly violating the statute's credit advertising provisions.

---

[21] Plaintiff seems to argue that once he reports a dispute to a CRA, M&T is then required to mark his account "disputed" in perpetuity regardless of whether the bank's investigation confirms the accuracy of the reported information. *Saunders* does not stand for this position, and M&T is unaware of any authority – and Plaintiff has not cited any – that support this contention.

TILA is composed of five distinct parts: Part A-General Provisions (15 U.S.C. §§ 1601-1616); Part B-Credit Transactions (15 U.S.C. §§ 1631-1651); Part C-Credit Advertising and Limits on Credit Card Fees (15 U.S.C. §§ 1661-1665); Part D-Credit Billing (15 U.S.C. §§ 1666-1666j); and Part E-Consumer Leases (15 U.S.C. §§ 1667-1667f). According to the Amended Complaint, and by Plaintiff's own admission, Plaintiff's TILA claim falls under Part C. ECF No. 62, ¶ 46 (alleging "Defendant violated § 1663. . ."); *see also* Ex. 1.

Section 1640 of Title 15 states: "[e]xcept as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under [part B] or part D or E of this subchapter with respect to any person is liable to such person." 15 U.S.C. § 1640(a). This provision explicitly does not reference part C, relating to credit advertising. Moreover, Section 1663 does not itself contain any civil liability provision nor is a civil liability provision contained elsewhere in Part C.

The Eighth Circuit has addressed the similar question of whether a party who relied on advertisements that allegedly violated the credit advertising provisions of the TILA is entitled to maintain an action for civil liability under 15 U.S.C. § 1640. *Jordan v. Montgomery Ward & Co.*, 442 F.2d 78, 81 (8th Cir.), *cert. denied,* 404 U.S. 870 (1971). In analyzing the issue, the court quoted from the legislative history:

> The bill specifically exempts credit advertising from the application of civil penalties. This exemption has been written into the bill by your committee to avoid the possibility that anyone, not a party to an actual transaction, seeing an advertisement not complying with the disclosure requirements of the bill would attempt to seek civil penalties.

*Id.* (quoting H.R. Rep. No. 1040, 90th Cong., 2d Sess. (1968) quoting 1968 U.S.C.C.A.N., at 1976)). Based on this history, the Eighth Circuit concluded that "it was the intent of the Congress not to provide private civil relief for violations of the credit advertising provisions and therefore,

held that "authority to enforce compliance with the credit advertising requirements is relegated to administrative agencies as provided in . . . 15 U.S.C. § 1607." *Id.* Since the Eighth Circuit decided *Jordan*, every court addressing this issue has reached the same result.

For example, in *Smeyres v. General Motors Corp.*, 660 F. Supp. 31, 32-33 (N.D. Ohio 1986), *aff'd* 820 F.2d 782 (6th Cir. 1987), the court first reiterated *Jordan*'s holding that there are no civil penalties available for violation of TILA's advertising provisions. Next, *Smeyres* went even further by holding that there is not even a private cause of action implicit within any of the credit advertising provisions of TILA. *Id.* at 33 n.3, 34-35. In *Smeyres*, the court ruled on the defendants' motion to dismiss claims based on advertisements made by a car manufacturer, finance corporation, and dealer. The plaintiff in *Smeyres* claimed that the defendants' advertisements for certain financing terms induced him to purchase a car, but that the actual interest rate of the loan was considerably higher than advertised. The *Smeyres* court held that, as a matter of law, no private cause of action existed under any of the credit advertising provisions of TILA and dismissed all claims against the defendants.

Relying on *Jordan* and *Smeyres*, Judge Nickerson of this Court reached the same conclusion in *Rush v. Ameircna Home Mortgage, Inc.*, when he dismissed a TILA claim based on an alleged violation of the advertising disclosure requirements of 15 U.S.C. § 1664 and the corresponding regulation at 12 C.F.R. § 226.24. 2009 WL 4728971, at *15 (D. Md. Dec. 3, 2009) (citing *Jordon*, *Smeyres*). The same result obtains here and requires entry of judgment in favor of M&T on Plaintiff's TILA claim for violation of 15 U.S.C. § 1663, as a matter of law

Even if Plaintiff could pursue a claim for violation of TILAs' credit advertising provisions – and he cannot – his claim would still fail as a matter of law because neither TILA nor its implementing regulations, Regulation Z, require any disclosure in advertising of the

minimum monthly payment requirement. Specifically, Regulation Z identifies eleven (11) categories of information to be disclosed "on or with a solicitation or an application to open a credit or charge card account." 12 CFR § 1026.60. Nowhere in 12 CFR § 1026.60 or anywhere else in Regulation Z is it required to include any disclosure concerning the minimum required payment amount. In fact, in its last major set of revisions to Regulation Z in 2009, the Federal Reserve Board (which possessed rule-writing authority over TILA at the time) expressly rejected a proposal to require a disclosure concerning the minimum payment amount. Truth in Lending, 74 FR 5244-01 at 5300.  Accordingly, while the disclosure table included as part of Exhibit 1 contains all of the information required by 12 CFR § 1026.60, the fact that it does not include a reference to Plaintiff's obligation to make a minimum monthly payment is of no legal consequence.

There being no dispute of material fact, Plaintiff's TILA claim under 15 U.S.C. § 1663 fails as matter of law, and M&T is entitled to entry of judgment in its favor on Count 2 of the Amended Complaint.

## V.    CONCLUSION

For the foregoing reasons, this Court should grant summary judgment in favor of M&T and against Plaintiff on all claims asserted in the Amended Complaint and deny Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

*/s/ Brian L. Moffet*
Brian L. Moffet (Fed. Bar No. 13821)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
Tel: (410) 727-6464
bmoffet@milesstockbridge.com

Joshua R. Chazen (Fed. Bar No. 06837)
MILES & STOCKBRIDGE P.C.
1201 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20004
Tel: (202) 465-8388
jchazen@milesstockbridge.com

*Attorneys for Defendant M&T Bank*