IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
-------------------------------------------- x
BRYCE CARRASCO,                              :        Civil Action
        Plaintiff,                           :
    v.                                       :        Case No. 21-532 (SAG)
M&T BANK,                                    :
        Defendant.                           :
-------------------------------------------- x
```

**I.     Affidavit of Bryce Carrasco**

I, Bryce Carrasco, depose under penalty of perjury that the statements and facts set forth herein are true and correct based on personal knowledge—

I am twenty-four years old, am a citizen of the united states of America, a resident of the state of Maryland in Anne Arundel County. I graduated from Loyola University (Md.) with a Bachelor of Business Administration in Finance before starting my career in the investment banking business with Oppenheimer & Co. where I worked full time until May 30, 2021. I obtained Series 63 and 79 licensure with the Financial Industry Regulatory Authority (FINRA) in August 2019. On March 2, 2021, I filed a complaint at the federal district courthouse located at 101 West Lombard Street.

In July 2020, I visited a M&T Bank branch office location situated on the corner of Light and Redwood Street in Baltimore City, which was located in the same building where I lived at the time. I met with Drew Solstice after I told him that I was interested in learning about

obtaining a term sheet for $3,500 revolving credit facility.[1] He told me that M&T had a special promotion for 0% APR and no monthly fees for twelve months. I directly asked him if there would be any minimum payment requirement, and he told me there would be no minimum payment requirement. He recommended that I complete an application to request any balance transfers, and I provided basic contact information and requested a $2,200 balance transfer per his advice. I was not provided with a copy of the application during the meeting with Solice.

     After the first meeting with Drew Solice, I did not receive any communications from him or M&T for approximately two weeks, so I revisited the M&T branch and asked if there were any updates they could provide regarding the application status. I was informed that my application was on hold and that Drew had attempted to call me and left a voicemail, to which I replied that I never received a voicemail from him. He then told me that M&T needed to more information before approving the application, and requested that I provide him with my two most recent pay stubs, which I did on July 13, 2020 via electronic mail. See exhibit A, 001. On July 19, I emailed Drew again to follow up on the application status, as I had not heard back regarding its status since providing him with the pay stubs the week before. On July 20, 2020, Drew Solice sent an email saying 'the application is approved and the card is on the way." Later the same day, I emailed him again asking if there was a way I could look at documentation online. He replied saying that with a credit card there was no further documentation and that I would receive a letter in the mail with my approval information. Exhibit A, 007.

---

[1] For context, the credit card with Bank of America had a limit of $3,500 and was the first credit card Plaintiff had opened in his entire life (August 2019). BofA card was opened under a 12-month promotion and there was no minimum payment requirement under that account.

Thereafter, I received a one-page letter through the U.S. mail system which had a plastic M&T credit card glued to the front page. The letter was two-sided, and provided instructions on how to activate the credit card and on the reverse side included information about the interest rates and fees associated with the card. See exhibit B.

M&T's brochures, advertisements, and marketing materials stated that the card would be subject to 0% APR in the first twelve billing cycles, which means that the annualized cost of credit would be 0%, based on the definition of annual percentage rate pursuant to the Truth in Lending Act. Therefore, in retrospect of the subsequent dealings and debt collection letters sent by M&T, it is clear that M&T did not intend to actually provide the offer which was advertised, and thus the agreement was not enforceable as a result because it was illegal.

Under Maryland law, to establish a claim for fraudulent misrepresentation, a plaintiff must prove that (1) the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff took action in justifiable reliance on the misrepresentation, and (5) the plaintiff suffered damages as a result of the defendant's misrepresentation.

As to M&T, (1) the representation made by Drew Solice that there would not be minimum payment requirements was false, (2) the representation was made knowingly false, (3) the misrepresentation was made to defraud Plaintiff into entering into the credit transaction with M&T, whereas he would not have decided to enter into the transaction had M&T not made the misrepresentation that it did, (4) plaintiff was justified in relying on the representation and (5) the plaintiff suffered damages as a result of the misrepresentation, including harm to his reputation, invasion of his right to enter into honest contracts, invasion of federally protected interest in

making informed decisions with accurate information as to the cost of credit, in addition to emotional distress resulting therefrom.

The second instance of fraud occurred in a letter dated November 5, 2020, ECF 21-4 at 5, where M&T made a misrepresentation by saying that "if you do not resolve the payment default described above, we may pursue our remedies pursuant to your credit agreement," which was false as revealed by the fact that M&T had no documents which evidenced the credit agreement, and therefore made a statement of fact when it knew that the fact did not exist, for the purpose of causing Plaintiff to make payments which were not actually legally payable and had not been agreed to as required by law. Another instance of fraudulent misrepresentation occurred in a letter dated November 16, 2020, ECF 21-4 at 6, which made threat which represents an act of blackmail, "to comply with the terms of the credit agreement and to prevent further damage to your credit, $172.00 must be paid immediately," which amounts to both a threat of blackmail and a fraudulent misrepresentation of a non-existent fact, in asserting that there existed a credit agreement and there were repayment terms which the account was subject, both statements being false and knowingly so with the intent to induce Plaintiff into making a payment which was not legally owed.

Another fraudulent misrepresentation can be found in the account opening letter, which states that the annual percentage rate on the account is 0%, which the record proves was not true, as evidenced by the cash flow schedule below, which equates to a cost of credit equal to 17.9%, which is a material difference from 0%, which resulted in the defrauding of the plaintiff and causing him to enter into a credit transaction based on false advertisements, which also represent an unfair method of competition against lenders who do not use fraudulent misrepresentations and disclose all material terms and state the cost of borrowing correctly pursuant to federal law.

*Cash Flow Schedule (Actual)*

| Date | Description | Net Cash Flow |
|---|---|---|
| 8/4/2020 | Balance Transfer | ($2,200.00) |
| 12/23/2020 | Payment | $231.00 |
| 1/15/2021 | Payment | $60.00 |
| 2/8/2021 | Payment | $60.00 |
| 2/23/2021 | Payment | $60.00 |
| 3/23/2021 | Payment | $2,017.08 |
| **Internal Rate of Return:** | | **17.9%** |

Pursuant to regulation Z, the annual percentage rate "is a measure of the cost of credit, expressed as a yearly rate." 12 CFR § 1026.14. In other words, it is meant to represent an annualized rate of return as measured by cash flows to the lender throughout the course of the loan, and in this case, the cash flows to M&T produce an annualized internal rate of return equal to 17.9% when it was advertised as being 0%, which is a material and fraudulent misrepresentation.

As a result of the aforementioned established and undisputed facts, the contract entered into was delegitimized when it was revealed that the promises and representations made at the time the transaction was consummated were not in accordance with the truth and in violation of federal statute, thereby causing plaintiff to take an action which was detrimental and resulted in material harm being incurred.

## II.     Inadmissible Evidence

Plaintiff objects to the admissibility of the exhibits presented by M&T because of the fact that M&T has altered documents and has attempted to manipulate the record by presenting documents it has no personal knowledge of and because the exhibits are manipulated in a way that is highly prejudicial to Plaintiff (e.g., by highlighting certain portions selected items, which

misrepresents the information by selectively identifying facts while ignoring others which give context to the meanings).

1.	Exhibit 1 of M&T's cross motion should be disregarded because it is a manipulated version of a document which plaintiff offered in discovery, and is a document which M&T has no personal knowledge of the authenticity of. In addition, the exhibit poses a risk of confusing the issues and is cumulative, and therefore should be excluded because its risk of unfair prejudice substantially outweighs the probative value of the exhibit, and therefore Exhibit 1 should be disregarded by the Court pursuant to FRE 401, 402 and 403.

2.	Exhibit 2 of M&T's cross motion for summary judgment must be excluded because it is intentionally misleading, falsifies documents the contents of which it has no personal knowledge of and moreover should be disregard by the Court pursuant to FRE 403.

3.	Exhibit 3 of M&T's cross motion for summary judgment must be excluded under Federal Rule of Evidence 806 because it constitutes inadmissible hearsay; is not what the defendant represents it to be; is intentionally misleading; was already presented by the Plaintiff for the limited purpose of attacking M&T's credibility; has no probative value on the material facts of this action; attempts to falsify evidence; is sanctionable under the Federal Rules of Civil Procedure; represents improper circumstantial evidence used to draw special inferences; and most importantly M&T has no personal knowledge of its authenticity or genuineness. Therefore, it should be disregarded by the court under FRE 403. The document itself was originally presented by Plaintiff to show that M&T had no actual knowledge of the agreement governing the credit card and shows that the representations made when Plaintiff applied for the credit card were all based in fraud. The record shows that M&T and its counsel have intentionally engaged in an effort to perpetrate fraud on this Court.

4. Exhibits 4, 6, 10, 12, 15, 25 should be excluded because they are not relevant; are fraudulent and represent unlawful contract adhesion aimed at misrepresenting their authenticity and legitimacy using a cloak of "normal course" business records; are used to intentionally mislead by presenting information dishonestly; and constitute a knowing and intentional effort to defraud this Court and manipulate the public record. The court should disregard the exhibits under FRE 403 for lack of any probative value and will result in manifest injustice if admitted into evidence and allow for the fraudulent manipulation to cloud the record of a federal district court.

### III. Facts

The evidence on the record shows that M&T did not report that Plaintiff was disputing the reported information when reporting the results of its reinvestigation to the credit reporting agencies. This violates the FCRA as a matter of law. *Saunders v. Branch Banking & Trust Co. of VA* (4th Cir. 2008); *Gorman v. Wolpoff & Abramson, LLP*, (9th Cir. 2009); *Seamans v. Temple University* (3d Cir. 2014); *Long v. Pendrick Capital Partners II, LLC*, (D. Md. 2019); *Wood v. Credit One Bank* (E.D. Va. 2017); *Hrebal v. Nationstar Mortgage LLC* (D. Minn. 2019); *Ballinger v. Ocwen Loan Servs., LLC*, No. 15-cv-252 (JAJ/HCA), Doc. No. 190 at 12-15 (S.D. Iowa Sept. 25, 2017); *Vasquez-Estrada v. Collecto, Inc.*, No. 14-cv-1422 (ST), 2015 WL 6163971, at *5-6 (D. Or. Oct. 20, 2015).

M&T makes an assertion which is a knowingly false statement when it purports to make presumptions as to past events which it has no personal knowledge of, such as what the account application contained or consisted of, as suggested in the first sentence of M&T's cross motion under section with subtitle "Plaintiff's Credit Card Agreement," which asserts to form part of a "statement of undisputed material facts" which amounts to a compilation of inferences, one

building upon another, with no specific facts which are admissible in evidence, and repeatedly cites to pleadings in supporting the inferences, or otherwise citing to evidence which it has no personal knowledge regarding and instead superimposing a false presumption as to the authenticity of the underlying materials themselves, all of which in an effort to deceive and misrepresent factual matters in a federal lawsuit, intentionally and in bad faith.

M&T goes on to reach the conclusion that "because the terms of his credit agreement bind plaintiff as a matter of law, his disputes are not bona fide." While failing to provide citation to any supporting evidence or legal authorities.

Another baseless assertion follows directly after, "that M&T did not also report that Plaintiff was disputing the underlying obligation to make payments on the credit card does not violate the FCRA." This ostensibly seems to be based on pure opinions and has no basis in law or fact, and has no evidence which could possibly support the argument that the credit agreement was binding on Plaintiff in any way at all. One of the fundamental pre requisites to the formation of any contract is a meeting of the minds which reflects mutual assent of two parties, which is completely lacking in this case, as M&T has no evidence that such mutual assent ever took place with respect to any minimum payment requirement.

That M&T uses the credit agreement which Plaintiff filed as ECF 15-5 is not admissible because the document which it represents as being the credit agreement is a falsified copy of a document which was presented solely for the limited purpose of attacking the credibility of M&T since they had sent a different credit agreement from the one which was found in Plaintiff's apartment in February of 2021, showing that M&T had no record or documentary evidence to support any of the claims it made in the various debt collection letters and that it knowingly made repeated fraudulent misrepresentations of fact as part of its predatory lending strategy

which targeted Plaintiff via blackmail and defamation of his character and reputation through derogatory credit reporting.

The main thrust of the argument set forth by M&T is its assertion that "Plaintiff's receipt and acceptance of the credit card agreement is clear," which is completely without any evidence in support and relies on fabricated evidence without anyone from M&T subscribing to having personal knowledge of the contents of any credit agreement. To drive the point home, the senior management team in the consumer lending division of M&T tried to fabricate facts in the letter dated February 5, 2020 Re: CFPB Compl. No. 210129-5993986, where in the second bullet point M&T states "the enclosed M&T Bank Visa Credit Card Agreement would have been mailed to you with your credit card" – key words "would have" suggest that the presumption that the agreement was actually mailed to plaintiff has no basis in personal knowledge and the fact that there was not one single employee at M&T who could provide me with a copy of the credit agreement for my account reveals the fact that it essentially treats every consumer credit account the same way, using an automated system which does not take into account the nuances inherent in different agreements which is blatantly in violation of federal law and systematically violates the rights of consumers and does so with malicious intent for the sole object of unjust self-enrichment through coercive and deceptive means.

M&T has requested Plaintiff to provide another example of an illegal advertisement, which is attached hereto as exhibit C.

Reputations are ephemeral. If they are to be kept healthy and sound, they must be watered by good deeds and constant devotion. It is far easier to destroy a good reputation than to build one. The totality of M&T's conduct represents a long train of abuses and repeated injuries,

which is simply a reflection of the rapacious character of this enterprise and its utter lack of any consideration as to the irreparable harm it has caused Plaintiff to suffer.

Two reasonable minds could not differ as to whether M&T's omission of the disputed nature of the account was materially misleading so as to constitute a violation of § 1681s-2(b). Saunders v. Branching Banking & Trust Co. of VA., 526 F.3d 142, 149-150 (4th Cir. 2008); Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009); Seamans v. Temple University, 744 F.3d 853, 867 (3d Cir. 2014) ("the fact that a furnisher is affirmatively obligated to flag an account as disputed under § 1681s-2(a) does not undermine the conclusion that a failure to flag the account as disputed also constitutes a material inaccuracy under § 1681s-2(b)"); see also Hrebal v. Nationstar Mortg. L.L.C., 385 F. Supp. 3d 849 (D. Minn. 2019), on reconsideration, Hrebal v. Seterus, Inc., 598 B.R. 252 (D. Minn.) (reversing earlier opinion and granting consumer summary judgment for furnisher's failure to report consumer's bona fide dispute; while acknowledging the "fair point that furnishers should not be required to 'resolve' complex legal disputes as part of their 'reasonable investigation,' the mere existence of a complex legal dispute in the background of a consumer credit dispute does not prevent a furnisher's agent from thoroughly investigating that dispute and then determining that the dispute is 'bona fide' or 'potentially meritorious'").

For plaintiff to make a claim under the FCRA, 15 U.S.C. § 1681s-2(b), he must prove,

(1) He submitted a dispute with the consumer reporting agency,

(2) furnisher received notification of the dispute from the consumer reporting agency, and

(3) furnisher failed to modify or correct inaccurate information.

Long v. Pendrick (D. Md. 2019).

Plaintiff argues that he has shown the court that summary judgment is warranted, and furthermore identified the factual basis for the assertion in his motion for summary judgment. M&T has not properly established the existence of a genuine dispute of material fact and therefore the Court must grant summary judgment. A dispute is genuine if a reasonable jury could return a verdict for the adverse party. Moreover, the nonmoving party (M&T) must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 540 (4th Cir. 2015).

The credit agreement which M&T claims is binding as a matter of law is an illegal contract which violates the basic covenant of good faith and fair dealing requisite to any contract being formed and being enforceable as a matter of law. The contract does not have a date and Plaintiff did not receive the agreement until February 2021, and the terms were never actually binding on the plaintiff. The credit agreement is simply a pretext and an artifice of deceit used to perpetrate its program of fraud and coercion.

First, the Credit Agreement does not have a date and does not even have Plaintiff's name on it. There are no page numbers which makes the task of referencing sections of the Agreement unreasonably burdensome, which is intentional to obfuscate and confuse customers, in bad faith and not in the interest of commerce. "Payment Due Date" is defined under the heading "Paying Interest," so it creates the impression that the Payment Due Date is applicable to interest charges, and it is not reasonable to hold a card holder responsible for making the conclusion that the Payment Due Date also applies to amounts calculated as a percentage of the Outstanding Balance (mandatory amortization), and that failure to meet the same deadlines for interest expenses are also to be applied to those amounts which are effectively repayments of principal outstanding,

11

and would resemble a mandatory amortization provision, but there is not clear section outlining the mandatory amortization requirements and thus it is baseless to make the claim that events of default are triggered by failing to make mandatory amortization payments on the same terms as interest expenses.

According to the Agreement, you will be in default if "We [M&T] believe Your ability to pay what is owed under this Agreement has been substantially reduced" which means whenever the Defendant feels like saying you are in default, you are in default and they have the right to accelerate the outstanding balanced owed immediately. This is inequitable and unlawful and violates the most fundamental protections of consumers and their ability to make informed credit decisions. M&T basically blackmails its customers through defamatory reporting to the credit bureaus to unfairly ruin your credit and limit your economic opportunities, simply because they thought you might not be able to pay a certain amount which is ill-defined.

"Minimum Monthly Payment," as defined in the credit agreement, does not include a definition for the Payment Due Date associated with such a Minimum Monthly Payment, such as the "Payment Due Date" defined under the section "Paying Interest" so it is not reasonably possible to determine any date by which such payment, when not accounted for as an interest charge, shall be due, or when failure to pay such non-interest portion of the minimum monthly payment would give rise to an event of default. Therefore, Plaintiff was unfairly, unreasonably and irrationally expected to determine the dates which minimum payments, that are not interest charges, would be due, and to make such payments before a payment due date which is not defined in the credit agreement.

Summary judgment must be entered because M&T has not shown that there exists the presence of a genuine dispute of material fact. Indeed, M&T sets forth twenty-four pages of

and would resemble a mandatory amortization provision, but there is not clear section outlining the mandatory amortization requirements and thus it is baseless to make the claim that events of default are triggered by failing to make mandatory amortization payments on the same terms as interest expenses.

According to the Agreement, you will be in default if "We [M&T] believe Your ability to pay what is owed under this Agreement has been substantially reduced" which means whenever the Defendant feels like saying you are in default, you are in default and they have the right to accelerate the outstanding balanced owed immediately. This is inequitable and unlawful and violates the most fundamental protections of consumers and their ability to make informed credit decisions. M&T basically blackmails its customers through defamatory reporting to the credit bureaus to unfairly ruin your credit and limit your economic opportunities, simply because they thought you might not be able to pay a certain amount which is ill-defined.

"Minimum Monthly Payment," as defined in the credit agreement, does not include a definition for the Payment Due Date associated with such a Minimum Monthly Payment, such as the "Payment Due Date" defined under the section "Paying Interest" so it is not reasonably possible to determine any date by which such payment, when not accounted for as an interest charge, shall be due, or when failure to pay such non-interest portion of the minimum monthly payment would give rise to an event of default. Therefore, Plaintiff was unfairly, unreasonably and irrationally expected to determine the dates which minimum payments, that are not interest charges, would be due, and to make such payments before a payment due date which is not defined in the credit agreement.

Summary judgment must be entered because M&T has not shown that there exists the presence of a genuine dispute of material fact. Indeed, M&T sets forth twenty-four pages of

arguments concerning issues which are immaterial to its liability under the Fair Credit Reporting Act and constitutes an attempt to use formal pleading as a means to delay recovery of the just demands of Plaintiff.

### IV.     Conclusion and Certification

For the reasons stated above, it is requested that the Court grant summary judgment on all claims in favor of the Plaintiff and enter final judgment for the relief that the Court deems just and fair. The factual record lays bare the absence of a genuine dispute of material fact.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 23, 2021. /s/Bryce Carrasco.

**Bryce Carrasco**
334 Ternwing Drive
Arnold, Maryland 21012
bocarrasco47@outlook.com
410-858-7432
