## PLAINTIFF'S MEMORANDUM OF LAW

Plaintiff Bryce Carrasco hereby presents the following questions to the court in this

Response opposing Defendant M&T Bank's Cross Motion for Summary Judgment:

(1) Whether, based on the evidence presented, a jury could return a verdict that M&T failed to uphold its duties as a furnisher of information under the Fair Credit Reporting Act.

(2) Whether, based on the evidence presented, a jury could return a verdict that M&T failed to accurately disclose the cost of credit, in violation of the Truth in Lending Act.

Plaintiff does not believe it is highly value-additive to brief the Court on his claims under the

advertising provision of the Truth in Lending Act, but will do so anyhow to relieve the Court in

any potential reservations in may be harboring. On the other hand, it is fair to say that the

question of whether M&T violated 15 U.S.C. § 1663 is on the outer extremities of the law-fact

continuum, and as such is subject to the sound discretion of the Court, being concerned largely

with statutory interpretation. M&T has chosen to set forth a wide variety of creative and

irrelevant arguments in its Memorandum of Law advancing the same tired argument that

Plaintiff does not have standing to seek relief under the advertising provisions of the Truth in

Lending Act. Although this argument is not "technically incorrect", it is irrelevant to M&T

paying financial redress because Plaintiff's right to recover is not dependent on Count Two of

the Amended Complaint; on the contrary, the TILA claim may be fairly considered as a claim for

declaratory relief in requesting that the Court make a finding on the question. Moreover, the

question includes an important public policy component as to whether or not M&T violated

TILA, and as such has illegally disseminated credit advertisements, using the U.S. mail system,

not to mention on an interstate commercial basis, which do not comport with the advertising

provisions of TILA. Moreover, the claim under Count Two serves to reinforce the fact that

Plaintiff's disputes were at all time bona fide, as a matter of law, because of the fact that he was

misled by unlawful advertisements prepared by M&T, and thereby providing for additional legal support, as a supplement to the vast evidentiary basis contained in the record, to the substantive claim brought pursuant to the Fair Credit Reporting Act. Furthermore, because these violations of TILA were committed in a manner evincing true intent, based on calculated and pre-meditated programs of systematic deception, it may well be characterized as constituting a mass tort of fraudulent misrepresentation, which greatly frustrates the statutory purpose of TILA as a whole. In any event, it is worth stating that any purported attempt to seek appellate review would be welcomed by Plaintiff, as the public policy considerations underlying this case are compelling and supportable from both a legal as well as societal perspective.

## I.    Introduction

In July of 2020, Plaintiff met with Drew Solice, a relationship banker for M&T Bank to discuss opening a new credit card to refinance the outstanding balance on a credit card he held with Bank of America. Mr. Solice informed Plaintiff that M&T had a special promotion which was available to consumers with high credit quality, and Plaintiff completed a short application for the special promotion during the meeting – as a part of the application, Plaintiff tentatively requested a balance transfer contingent upon credit approval and if the terms offered were competitive in the market for credit cards of like-credit quality. Mr. Solice was confident that the terms which M&T would be willing to offer would be competitive in the market, and further stated that the offered credit card would be subject to a promotional offer whereby the APR would be 0% for the first twelve billing cycles upon account opening, with no monthly payment requirements during the promotional period. A few weeks later, Mr. Solice contacted Plaintiff notifying him that the application had been approved and that the credit card was on the way, and in response Plaintiff asked if he could review account documentation online, to which Mr. Solice

replied M&T did not typically have documentation for credit cards, and that a separate letter with approval information would be delivered along with the credit card in the mail. Plaintiff did receive a letter with the credit card shortly after, which described the terms and conditions governing the credit card – notably, the terms set forth on this letter did not mention minimum payment requirements, and only stated that the credit limit was $3,500 and that the APR for purchases and balance transfers was 0%. Shortly thereafter a balance transfer was completed for $2,200 on the credit card with Bank of America, and that credit card no longer carried a balance subsequent to the completion of this transaction.

In early September, Plaintiff temporarily relocated from his apartment in Baltimore to his parents' house in Arnold due to the COVID-19 pandemic, where he stayed until December. ECF 62 ¶ 15 at 4.  When he returned to his apartment, he found eight hostile debt collection letters from M&T Bank demanding immediate payment on the credit card, one of which stated that the delinquency had been reported to the credit reporting agencies and would be reflected on Plaintiff's credit report, and that to prevent further damage to his credit, he must send a payment to M&T immediately. See ECF 21-4 at 6; *See also* ECF 62 ¶¶ 18-19 *and* ECF 1-3 at 2. Shortly thereafter, on December 22nd, Plaintiff called M&T to make the payment which was claimed to be past due and explained that he was not delinquent and that he was never provided documentation when he opened the account, despite asking Mr. Solice, and as a result the claims made by M&T that the account was delinquent had no contractual basis, and as such he requested that the late fees imposed be reversed which M&T consented to and subsequently refunded on the same phone call. See ECF 62 ¶ 21-22 at 5.[1]

---

[1] In the Amended Complaint, Plaintiff inadvertently stated that the date of the call was December 17, 2020, but upon further review of his phone records, it was discovered that the call was actually made on December 22, 2020; the call lasted approximately 24 minutes.

On December 30th, Plaintiff checked his credit report and discovered that M&T had reported defamatory information regarding his account to all three major credit reporting agencies (CRAs), which he disputed was completely false, misleading and without any legal basis because no contract was ever delivered, and the only disclosure received was a one-page letter which include no requirement for any periodic payments and as a result any claimed default was inaccurate, misleading and needed to be removed from his credit report immediately. That same day, after submitting the three disputes with the CRAs, Plaintiff contacted M&T Bank, sending an email to the following recipients: Drew Solice, who was responsible for opening the credit card, Chris Kay, Head of Consumer Credit at M&T Bank, Scott Graham, Senior Public Relations Manager at M&T Bank, and Julia Berchou, Vice President and Public Relations Manager at M&T Bank. The email stated, in pertinent part, that:

> I am reaching out to notify you that I have submitted a dispute regarding data provided by M&T Bank regarding a revolving line of credit that I had opened in August 2020. I have attached a written statement memorializing this correspondence and I formally request a written apology and retraction of information that was submitted, in bad faith, regarding my credit strength. I am available if you have questions and I look forward to a prompt response to resolve the problem and rectify the misrepresentative information reported by M&T Bank to the credit reporting agencies.

Attached to this email were true copies of Plaintiff's credit reports retrieved on December 30th from Experian, Trans Union, and Equifax, in addition to a formal written statement memorializing the dispute, which explained that credit documentation was never delivered after the account was opened and as such the derogatory reporting was contractually and legally baseless, as well as defamatory and materially misleading, and needed to be rectified in a timely manner.

One day later, on December 31st, Plaintiff received a responsive email from the Office of the President at M&T Bank which stated, in pertinent part,

Dear Valued Customer:

We'd like to confirm that we have received your correspondence on December 31, 2020, and are currently researching your concerns with the appropriate areas of M&T. Please know that we will respond to your concerns in writing, by sending you a secure email, and additionally, as part of our research, we might need to contact you. Should you have any questions in the meantime, feel free to reply to this email, officeofthepresident@mtb.com, or call us at 716-635-4517.

ECF 27-1. Three weeks later, Plaintiff sought to obtain alternative financing by applying for a new credit card with Discover Bank to avoid further interactions with M&T, and on January 23rd he was starkly rejected by Discover, and his application was outright denied, the denial having been caused by his newfound entry into the sub-prime tier of FICO scores, which was 565 compared to 700+ only months earlier. ECF 83-8 at 3. Attached as **Exhibit A** is a credit score disclosure provided to Plaintiff by M&T Bank just before approving his credit card in July 2020.

M&T has moved for summary judgment, asserting that it is entitled to judgment as a matter of law. ECF 88. A court may award judgment as a matter of law only if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008). The standard of inquiry mirrors that of a motion for judgment as a matter of law pursuant to Rule 50(a), *Anderson v. Liberty Lobby*, 477 U.S. 242, 250-51 (1986), and thus the principal question before the court is whether, when viewing the record as a whole and drawing all justifiable inferences from the evidence presented in favor of Plaintiff, no reasonable jury could return a verdict finding that M&T violated the FCRA by failing to report the contested nature of the underlying credit obligation when responding to the CRAs following notification of Plaintiff's disputes.

## II.    Incontrovertible Facts

### (a)    Account History

The table below shows the various charges and payments affecting the reported

outstanding balance according to M&T's Online Banking Portal. Plaintiff continues to adamantly

dispute the legitimacy of the various late fees and transaction charges imposed by M&T, and

furthermore insists that all payments, principal included, which were made are fully refundable

because the account was opened based on fraud and should be subject to an equitable claw-back,

which should be included in the money judgment[2] allocation upon entry of judgment in this

matter.

| Date | Beginning Balance | Interest & Fees, Net | Payments | Balance, Carry-Forward |
|---|---|---|---|---|
| 8/3/2020 | $2,200.00 | $88.00 | - | $2,288.00 |
| 9/17/2020 | $2,288.00 | $25.00 | - | $2,313.00 |
| 10/19/2020 | $2,313.00 | $35.00 | - | $2,348.00 |
| 11/17/2020 | $2,348.00 | $35.00 | - | $2,383.00 |
| 12/17/2020 | $2,383.00 | $35.00 | - | $2,418.00 |
| 12/23/2020 | $2,418.00 | ($70.00) | ($231.00) | $2,117.00 |
| 1/15/2021 | $2,117.00 | - | ($60.00) | $2,057.00 |
| 2/9/2021 | $2,057.00 | - | ($60.00) | $1,997.00 |
| 2/24/2021 | $1,997.00 | - | ($60.00) | $1,937.00 |
| 3/16/2021 | $1,937.00 | $37.73 | - | $1,974.73 |
| 3/23/2021 | $1,974.73 | $42.35 | ($2,017.08) | - |

The payments in the table shown above are a result of the following reported ledger transactions:

(1) Balance Transfer on 8/3/2020 of $2,200.00; (2) Balance Transfer Fee imposed of $88.00 on

8/3/2020; (3) Late Fee of $25.00 on 9/17/2020; (4) Late Fee of $35.00 on 10/19/20; (5) Late Fee

of $35.00 on 11/17/2020; (6) Late Fee of $35.00 on 12/17/2020; (7) Refund of $70.00 and

---

[2] In addition to injunctive relief ordering that M&T retract all information it has ever submitted to any third party that relates to Plaintiff since the beginning of the world, with specific sanctions for incremental monetary relief upon failure to take the necessary action to retract all information within thirty days of docketing the order compelling retraction.

$231.00 payment posted on 12/23/2020; (8) Payment of $60 on 1/15/2021; (9) Payment of $60 on 2/9/2021; (10) Payment of $60 on 2/24/2021; (11) Interest Charge of $37.73 imposed on 3/16/2021; and (12) Payoff of $2,017.08 with an unallocated transaction fee of $42.35 concurrent with the closing of the account on 3/23/2021.

The actual cash flows which occurred throughout the tenure of the credit facility, which was paid off in full on March 23, 2021 (ECF 15-3), are as follows:

| Date | Description | Net Cash Flow |
|------|-------------|---------------|
| 8/4/2020 | Balance Transfer | ($2,200.00) |
| 12/23/2020 | Payment | $231.00 |
| 1/15/2021 | Payment | $60.00 |
| 2/8/2021 | Payment | $60.00 |
| 2/23/2021 | Payment | $60.00 |
| 3/23/2021 | Payment | $2,017.08 |

**_Internal Rate of Return (IRR):_**          **17.9%**

The Internal Rate of Return (IRR) is the discount rate that makes the net present value of a defined set of cash flows zero, and reflects the annualized effective compounded rate of return. This calculation is commonly employed in the context of savings and loans, where it is sometimes termed as the compound interest rate. In the fixed income market, the same method is used to calculate the Yield to Maturity (YTM), which is the discount rate at which the sum of all future cash flows from the bond (coupon and principal) is equal to the price of the bond, which in a perfectly efficient market should reflect the relative credit risk of the issuer of the bond. The variation in nomenclature employed arises from the various market conventions used by traders to efficiently communicate what assumptions are being used to reach a given quote of the yield (bonds are often quoted on a Yield basis by market makers trading bonds, as an alternative to quoting on a bid/ask price basis), the primary variable being the _compounding frequency_ underlying a given quotation, but also includes differences based on various repayment scenarios

(e.g., yield to call, yield to worst, etc.). For instance, standard US dollar denominated bonds are typically quoted assuming semi-annual compounding of the coupon payments associated with the bond; additionally, in theory, if a security was quoted based on a compounding frequency of once per year, or annual compounding frequency, the technically correct term would be the *annual percentage rate,* or APR. The rationale of these market conventions relate to the concept of compound interest, which is the interest in addition of interest to the principal sum of a loan or deposit, or in other words, interest on interest – it is the result of an accumulation function, which varies based on the compounding frequency of the cash flows over the time horizon encompassing the set of cash flows. If the compounding frequency is, for example, once per year, the rate is rightly termed Annual Percentage Rate (APR), which is of course relevant here. The relevancy can be explained by providing a high level view of the complexities and nuances in pricing credit, which the typical consumer likely would not be familiar with, which ultimately reveals the true fraud of M&T's mass-market advertisements for credit cards which broadcast the APR as 0%, which is knowingly false and intentionally used to induce the unsophisticated consumer to enter into a fraudulent credit transaction; this is a time tested scheme employed by loan sharks to charge usurious rates of interest through the use of deceit and subterfuge. Another common tactic of loan sharks is the use of blackmail to extract inordinate fees and interest, which is effectively what M&T did in refusing to rectify the false and defamatory information on Plaintiff's credit reports. The danger of this type of conduct continuing undetected for prolonged periods is based on the inherent vulnerability of the ordinary consumer targeted by loan sharks, as from the perspective of the loan shark (M&T Bank), the risk of defrauding consumers in this way is relatively low because the probability that a consumer will be able to see through the smoke screen of deceit is fairly low, and the potential returns are substantial, thereby presenting

an attractive risk/reward which can be quite lucrative, and low risk as consumers will typically bend to the will of a company like M&T Bank after being abused because of the fact that a large Fortune 500 company carries the perception of having superior knowledge in matters relating to the pricing of credit, but in the case of Plaintiff M&T Bank encountered what is often called a black swan, because they employed their scheme on a consumer who was able to discern the fraudulence of the strategy. M&T Bank miscalculated with respect to its sizing-up of Plaintiff, as he recognized the true criminality of this scheme almost immediately based on his knowledge of finance. As it turns out, the prudent choice in this instance would have been for M&T to issue the formal apology requested by Plaintiff in his first email on December 30, see *supra*. The incontrovertible facts expose M&T for systematic fraud, as the quick return of capital provided for by collecting immediate payments, through the mechanism of "minimum monthly payments" imposed strictly on a lump-sum balance transfer result in a significant increase in the effective rate of return generated, and by using the pretext of minimum monthly payment requirements along with various purported transaction fees, M&T Bank is able to produce highly attractive returns, as a result of the concept of the *time preference* of money on investments, such as a consumer loan. Of course, a Fortune 500 company whose primary business activity is lending out money is privy to this, thereby evincing the intentional character of these tortious acts, as M&T is effectively taking advantage of the typical consumer's lack of technical knowledge and sophistication to generate superior returns on investments it makes in consumer loans, like the account ending in 6414.

Pursuant to the Truth in Lending Act, the annual percentage rate is intended to reflect the actual cost of credit, and through basic cash flow analysis this can be quantified by calculating the internal rate of return using a spreadsheet program like Microsoft Excel. Furthermore, as the

stated purpose of the statute is for meaningful disclosure of what the actual cost of credit is on a given consumer credit offer, the credit card with M&T Bank proved that it was grossly misstating the economic reality of the credit card it advertised.

TILA was enacted to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices. [15 U.S.C. § 1601]. A separate but interrelated theme underlies the purpose of the FCRA, which was enacted to provide for a credit reporting process which is fair and equitable to the consumer, limits the dissemination of inaccurate credit reports and prevents unfair credit reporting methods, all of which serves to strengthen public confidence and enhance the overall efficiency of the banking system. [15 U.S.C. § 1681].

**(b)** **Credit Reports / Disputes**

As covered, *supra*, three credit reports were generated and forwarded to M&T when he emailed the investor relations department of M&T and the various named persons responsible for public relations and overseeing the consumer lending operations of M&T Bank proper. For convenience, the relevant portions of these three credit reports are attached as exhibits to this memorandum. The Experian Report is **Exhibit B**, the Equifax Report is **Exhibit C**, and the TransUnion Report is **Exhibit D**.

Some of the items reflected on Plaintiff's credit reports deserve special recognition in the pages of this memorandum. The first injurious falsehood can be found under the payment history section, which shows that the account was delinquent to the tune of thirty days in September, sixty days in November and ninety days in December, which is wholly baseless and ignores the incontrovertible fact that there was no contract in place which would allow M&T to make a

claim that the account was in default. As discussed in Plaintiff's Reply supporting his motion for

summary judgment, no contract ever existed, and this cannot be genuinely disputed by M&T,

and thus all of the derogatory information which was reported was inaccurate and in violation of

the FCRA. Moreover, the inaccurate information was verified as accurate eight separate times

based on the evidence on the record, constituting eight separate and discrete violations of the

FCRA, and this cannot be genuinely disputed by M&T Bank. In addition to reporting and

verifying inaccurate information, the information reported was also incomplete because it did not

disclose the fact that Plaintiff had disputed the legitimacy of the reported information, as

required pursuant to case law which is well established, especially in the Fourth Circuit. The

information was materially misleading, and it was inaccurate, but despite this M&T continued to

verify this information on eight separate occasions, which had a highly negative effect on

Plaintiff's credit score, which in turn affected his access to credit on satisfactory terms, and

impaired his eligibility for employment in the finance industry, while also negatively affecting

his performance as an analyst at Oppenheimer because he was so distracted and preoccupied

trying to rectify the false information being reported by M&T Bank. To this day, M&T continues

to report false information about Plaintiff and as a result he is unemployable in his line of work ,

and he is unable to use his Series 79 & 63 licenses in advising on corporate mergers and

acquisitions, despite having meaningful experience, and has worked on multiple sell-side M&A

processes, asset-based debt financings, as well as a corporate restructuring which involved a high

degree of complexity, contemplating a range of strategic transactions including a structured spin-

off of distressed assets while facilitating a marketing process tailored towards a buyer universe

comprised of opportunistic private equity funds, due to a challenging industry environment.

Unfortunately, this experience is of markedly diminished utility because of inaccurate and

incomplete information on Plaintiff's credit reports, as one of the first things that employers will look at in making a hiring a decision is my credit report.

The phone call was the first direct dispute made by Plaintiff to M&T regarding the legitimacy of the purported default, which was subsequently memorialized in his email on December 30, duly acknowledge and confirmed by M&T affirmatively stating on December 31 that it was conducting an investigation with the appropriate areas of the Company. All the events following the disputed with the credit reporting agencies form the basis for this suit and are the material facts upon which the resolution of this case most necessarily depend. The facts are incontrovertible based on evidence that was submitted by, surprisingly, M&T Bank, and provides indisputable evidence, already admitted into evidence, which directly proves that M&T violated the FCRA eight times, in sheer defiance of its duties as a furnisher of information under the FCRA.

The personal statement sent to M&T explained the basis of the underlying dispute, which should have been manifest but proved not to be from M&T's subsequent response and FCRA violations, in a manner properly befitting of a bona fide loan shark. Among other things, Plaintiff stated that "M&T Bank submitted information to all 3 major credit reporting agencies making a false allegation that I was delinquent and had not made minimum payments on the revolving line of credit I had opened in August 2020." ECF 15-6 at 3. Moreover, plaintiff asserted that "M&T did not make clear to me at time of opening the credit card that the account would be subject to minimum monthly payments of principal during the introductory 12 month period." *Id.* at 4. Thus, Plaintiff explicitly set forth a clear description of the information which was inaccurate and misleading, which M&T affirmatively acknowledged having received on December 30. *Id.* at 7.

The December 31 confirmation email is the proper touchstone in moving on to review the subsequent events, all of which relevant and actionable since they occurred after disputes had been initiated with the CRAs, whereby M&T was notified of each dispute pursuant to § 1681i(a)(2), and thereby exposing it to the privately enforceable liability pursuant to § 1681n, for willfully failing to uphold its responsibilities pursuant to § 1681s-2(b).

**(c)     Dispute Resolution**

According to the Affidavit of Kathleen Evans, submitted by M&T in support of its Cross Motion for Summary Judgment, M&T is registered with e-OSCAR. ECF 89 ¶6. The automated dispute resolution system maintained by the credit reporting industry, coined as e-OSCAR (Online Solution for *Complete* and *Accurate* Credit Reporting), is the application used by all furnishers of credit reporting information in the United States. When a consumer contacts a credit reporting agency with a dispute, the agency transmits the disputed information through e-OSCAR, and then the data furnisher proceeds to access the disputed information on a standardized form, known as an automated consumer dispute verification (ACDV). In the context of the automated credit reporting ecosystem, responding to disputes varies from automated data reporting because a furnisher may be required to update historical account information, for instance, dates and other account fields may need to be adjusted, which is separate and distinct from the regular manner in which a furnisher submits regular monthly updates regarding accounts it reports information on.[3]

The dispute resolution process is, in theory, designed to allow for furnisher to uphold those duties which are set forth in §1681s-2 of the FCRA. M&T failed to uphold these

---

[3] Source.

enumerated responsibilities when it processed eight ACDVs received from the credit reporting agencies related to disputes initiated by Plaintiff.

To prove this, let Facts be submitted to a candid world:

### ACDV No. 1

The first ACDV received on December 31, 2020, related to a dispute initiated by Plaintiff Bryce Carrasco, to TransUnion. The ACDV was coded as "Dispute Code 1:118: Disputes Current Balance and/or Amount Past Due. Verify Current Balance or Amount Past Due" and "Dispute Code: 2:106: Disputes present/previous Account Status/Payment Rating/Account History. Verify Account Status, Payment Rating and Account History." Joanna Massey investigated the dispute for M&T, including reviewing the account information, account status, payment history and account servicing records for the Account. ECF 89 ¶11a. As a result of her investigation, Ms. Massey submitted a responsive ACDV on January 5, 2021, "updating certain disputed information and verifying the accuracy of other information." *Id.*

Defendant M&T Bank verified the following as accurate: that the account was currently 90-119 days past the due date (Account Status Code: 80[4]); that the Balance was $2,383; and that the account was delinquent to the tune of 30 days in October and 60 days in November. M&T took the initiative to update the "Amount Past Due" data field to $231 from the previously reported amount of $172. All of this information which was verified as accurate, of course, was manifestly inaccurate. As well, this responsive ACDV was incomplete, as it contained no information regarding the disputed nature of the account, in violation of the FCRA.

---

[4] The Account Status code is defined by the Consumer Data Industry Association, which is a trade association comprised of the major nationwide CRAs, including Trans Union, Equifax and Experian. The CDIA also defines the meanings for the Payment History and Compliance Condition Code.

In addition to failing to disclose the dispute which was under investigation by M&T in responding to the ACDV from Trans Union, it reported factually incorrect information which would have easily been rectified by the slightest data conformity check, which the Fourth Circuit Court of Appeals has stated does not to meet the standard required pursuant to §1681s-2(b) in conducting a reasonable investigation, *Dalton v. Capital Associated Industries* (4th Cir. 2001); *Johnson v. MBNA Am. Bank* (4th Cir. 2004), as the account balance was $2,117 and not $2,383; the amount past due was $0 and not $231; and the account was current as of January 5, 2021 and was not delinquent from any cognizable viewpoint, and furthermore, M&T's account records would have revealed these facts, and thus M&T failed to uphold its duties pursuant to its responsibilities as a furnisher of information when it submitted ACDV No. 1 to Trans Union on January 5th.

A reasonable jury, drawing all inferences in favor of Plaintiff, could reach the conclusion that the ACDV submitted by M&T was inaccurate and incomplete, in violation of the FCRA. Indeed, two minds could not differ as to whether M&T violated the FCRA when it submitted this ACDV.

## ACDV No. 2

The second ACDV was also received on December 31, 2020, and related to a dispute made to Experian. The ACDV was coded as "Dispute Code 1:112: Consumer states inaccurate information. Provide or confirm complete ID and verify all account information." The ACDV also included the following comments made by Plaintiff: "the information submitted by M&T was not reported in good faith and I have notified M&T of this and expect they will address the error as soon as possible." Ajit Phulare, a "Contingent Worker," investigated the dispute for M&T, including reviewing the account information, account status, payment history and account

servicing records for the Account. As a result of this investigation, M&T Bank submitted a responsive ACDV on January 4, 2021, updating certain disputed information and verifying the accuracy of other information.

M&T Bank verified the accuracy of the following information: that the account was 90-119 days past due; that the Balance was $2,383; that the account was delinquent to the tune of 30 days in October and 60 days in November, and updated the amount past due to $231 from $172. All of this information which was inaccurate. As well, this responsive ACDV was incomplete, as it contained no information regarding the disputed nature of the account.

A reasonable jury, drawing all inferences in favor of Plaintiff, could reach the conclusion that the ACDV submitted by M&T was inaccurate and incomplete, in violation of the FCRA. Indeed, two minds could not differ as to whether M&T violated the FCRA when it submitted this ACDV.

### **ACDV No. 3**

The third ACDV was received by M&T on January 5, 2021, and was coded as "Dispute Code 1:112: Consumer states inaccurate information. Provide or confirm complete ID and verify all account information." M&T "investigated" the dispute and submitted a responsive ACDV on the same day it was received, less than twenty-four hours later, on January 5, 2021, verifying the accuracy of the information.

M&T Bank verified the following information as accurate: that the account was 90-119 days past the due date; that the Balance was $2,383; and that the account was delinquent by 30 days in October and 60 days in November, and updated the Amount Past Due from to $231 from $172 and even went so far as to take the initiative to add a new piece of false data, inserting for the "Scheduled Payment" field $291, the rationale of which may never be confirmed, but the fact

remains that it was false, just like all of the other information verified as accurate. In addition to being patently false, the ACDV was incomplete because, once again, it did not include any notation that the legitimacy of the underlying debt obligation was disputed by Plaintiff.

A reasonable jury, drawing all inferences in favor of Plaintiff, could reach the conclusion that the third ACDV submitted by M&T was inaccurate and incomplete, in violation of the FCRA. Indeed, two minds could not differ as to whether M&T violated the FCRA when it submitted this ACDV.

**ACDV No. 4**

The fourth ACDV was received by M&T on January 5, 2021, with the following codes: "Disputes present/previous Account Status/Payment Rating/Account History. Verify Account Status, Payment Rating, and Account History."

M&T Bank "investigated" once more, including reviewing the account information, account status, payment history and account servicing records for the Account. As a result of this investigation, M&T submitted a responsive ACDV on January 6, 2021, verifying the accuracy of the disputed information: that the account was 90-119 days past due; that the Balance was $2,383; that the account was delinquent by 30 days in October and 60 days in November; and that the Amount Past Due was $231. Like the prior three ACDVs, this was all inaccurate. As well, the responsive ACDV did not include any information with respect to the disputed nature of the account, similar to the three ACDVs which came before it. The ACDV was submitted the day after it was received, on January 6th, replete with factual inaccuracies and material omissions.

A reasonable jury, drawing all inferences in favor of Plaintiff, could reach the conclusion that the third ACDV submitted by M&T was inaccurate and incomplete, in violation of the

FCRA. Indeed, two minds could not differ as to whether M&T violated the FCRA when it submitted this ACDV.

<u>**ACDV No. 5**</u>

The fifth ACDV was received by M&T on January 7th, which was coded as "Consumer States inaccurate information. Provide or confirm complete ID and verify all account information." Shivanand Patil, a "Contingent Worker," investigated the dispute for M&T Bank, including "reviewing the account information, account status, payment history and account servicing records for the Account." A responsive ACDV was submitted on January 13th. Notably, Mr. Patil "updated Mr. Carrasco's name with his middle initial and his address and telephone number with the information on record with M&T," the telephone number being factually incorrect, offset partially by the address being technically correct. Conversely, all of the remaining information was verified as accurate, although it all remained inaccurate in similar fashion to the prior four ACDVs. Also worth noting, Mr. Patil seized the initiative by reporting new inaccurate information, *viz.*, that the account was delinquent by 90 days in December, in supplementation of the inaccurate 30 and 60 day delinquencies reported, and verified as accurate for the preceding two months. All of which remained inaccurate, and still incomplete with no mention of the disputed nature of the account.

Drawing all justifiable inferences in favor of Plaintiff, a reasonable jury could plausibly make a finding that M&T failed to uphold its duties as a furnisher of information when it submitted the fifth ACDV on January 13th, replete with factual inaccuracies and material omissions. Could two reasonable minds differ? Perhaps, in a universe divorced from substantive reality, similar to the one which M&T Bank currently occupies.

### ACDV No. 6

On February 9, 2021, M&T received the sixth ACDV from e-OSCAR regarding another dispute by Plaintiff Bryce Carrasco The ACDV was coded as "Consumer states inaccurate information. Provide or confirm complete ID and verify all Account Information." M&T submitted a responsive ACDV on February 10 , 2021, verifying the accuracy of the disputed information, replete with inaccuracies and material omissions. The responsive ACDV did not include any notation or data entry stating that the legitimacy of the underlying debt obligation was disputed by Plaintiff. The sixth ACDV represented the sixth violation of the FCRA. M&T Bank is not entitled to Judgment as a matter of law.

### ACDV No. 7

On February 20, 2021, M&T received the seventh ACDV from e-OSCAR regarding a dispute by Plaintiff Bryce Carrasco. The ACDV was coded as "Disputes present/previous Account Status/Payment Rating/Account History. Verify Account Status, Payment Rating and Account History. " In addition, the ACDV included instructive guidance made by Plaintiff, to aid M&T's investigative efforts, "Consumer states that he was never late…and wanted to have the late payments removed." M&T responded in kind on February  25 by "verifying  the accuracy of the information as of the date reported." All of this information was inaccurate, and failed to mention the disputed nature of the account. A jury could return a verdict for Plaintiff.

### ACDV No. 8

On February 23, 2021, M&T received the eighth ACDV from e-OSCAR regarding a dispute by Plaintiff Bryce Carrasco The ACDV was coded as: "Consumer states inaccurate information.  Provide or confirmed  complete ID and verify all Account Information." As a result of his investigation, M&T submitted a responsive ACDV on February 23, 2021, updating yet

again Mr. Carrasco's name with his middle initial and his address and telephone number with the information on record with M&T (which was inaccurate). Still no mention of the contested nature of the account. A jury would likely return a verdict for Plaintiff based on this ACDV.

**(d)    Credit Denial**

As proof of the negative credit decisions flowing from the inaccurate and incomplete information reported and verified eight times by M&T Bank, it is worthwhile to review the outright rejection of an application Plaintiff submitted to Discover Bank. A letter from Discover dated January 23 disclosed the underlying rationale for the rejection, "our credit decision was based in whole or in part on information obtained in a report from a consumer reporting agency. We also obtained your credit score from this consumer reporting agency and used it in making our credit decision. Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes. Your Credit Score is 565 as of January 23, 2021. Key Factors affecting your credit score include a serious delinquency on an account held with M&T Bank. A jury could find that the primary factor influencing this adverse credit decision was the derogatory and inaccurate, as well as incomplete credit information reported and verified eight separate times as accurate, by Defendant M&T Bank. As such, a reasonable jury, drawing all justifiable inferences in favor of the plaintiff, may perhaps conclude that the inaccurate and incomplete information reported, and verified as accurate by M&T was misleading in such a way and to such an extent that it had a negative impact on credit decisions. It would be difficult for two thinking human beings to differ, under any cognizable set of inferences made in favor of any party, that M&T's false reporting, and subsequent verification of inaccurate information constitutes a willful failure to uphold its duties as a furnisher of information pursuant to the FCRA.

(e)     **CFPB Complaint**

On January 29, plaintiff filed a complaint with the Consumer Financial Protection Bureau

(CFPB), stating, in relevant part,

> In August of 2020, I opened a revolving line of credit with M&T Bank at a local branch
> office location in Baltimore, Maryland. The credit card was subject to a promotional offer
> which advertised 0% APR for the first twelve billing cycles. I was never provided
> documentation for the credit card despite requesting for it directly when I opened the
> account. I had relocated to my parent's domicile beginning in September 2020 and thus
> was not at my apartment which was the address provided to M&T for physical credit
> statement delivery. In the first week of December 2020, I visited my apartment to check
> my mail and I found numerous statements and eight letters from M&T Bank regarding
> the line of credit which were hostile in nature, claiming that i was delinquent and
> demanding immediate payment to prevent further damage to my credit. I was also
> charged excessive fees and M&T escalated the effective interest rate to usurious levels.
> Upon reading the 8 letters, I called M&T at the number listed on the letters and submitted
> a check by phone for $231 which was the amount currently due. I submitted a dispute
> with M&T Bank and received an email confirmation that the dispute was under
> investigation on December 31, 2020. I also submitted online disputes with Experian,
> Equifax and Transunion, as my credit report included derogatory and false information
> with respect to the credit card with M&T Bank. My credit report stated that M&T had
> closed my account and that i never repaid the debt that was due, which is incorrect as no
> documentation was delivered and therefore no contractual basis existed to be making
> such drastic claims. Nevertheless, my disputes with all three credit reporting agencies
> were deemed resolved with no changes to the information on the credit report. M&T has
> also failed to disclose that I am contesting the legitimacy of the purported delinquencies.
> This has severely affected my credit score, which was over 700 and now is 565. Despite
> all of this, M&T verified inaccurate and incomplete information in response to all of my
> disputes made with the credit reporting agencies, which has had an adverse effect on
> credit decisions and impairs my eligibility for employment because I work in the
> investment banking industry and my credit history is a major consideration in hiring
> decisions in the finance industry.

(f)     **Correspondence**

After being stonewalled by M&T regarding the original dispute which was claimed to be

under investigation on December 31st, Plaintiff sent additional correspondence to the Office of

the President of M&T Bank, providing more evidence of the various violations of the Fair Credit

Reporting Act that were actively being committed in reckless disregard of the rights of Plaintiff.

The email included the updated credit reports showing that M&T made no changes to the

information when it reported the results of its investigations, and did not make any mention of the disputed nature of the account. The email was brief, "see attached credit reports showing that you have neglected your responsibility under the FCRA. I will file a civil action if I do not hear from you." M&T provided its first response since informing Plaintiff that it was in receipt of his correspondence on February 5th. This response was embodied in a letter from Caitlin Severino at the Office of the President at M&T Bank:

> February 5, 2021
>
> Dear Mr. Carrasco:
>
> I am writing in response to your correspondence to M&T's Executive Offices and the Consumer Financial Protection Bureau (CFPB) regarding your M&T Visa Credit Card with Rewards ending-6414. Thank you for the opportunity to respond to your concerns.
>
> As of the date of this letter, we do not have record of a request to update your address. As such, your monthly statements, which would have indicated a minimum payment was due, and collections notices, were and continue to be mailed to this address.
>
> *Other important information about your credit card.*
>
> After a review of your account, we have determined that no bank error occurred in this case. As such, we are unable to remove the late reporting associated with your credit card. Please be advised that under the Fair Credit Reporting Act, M&T is required to report all factual information to the various credit bureaus.
>
> Sincerely,
>
> Caitlin Severino
> *Office of the President*

The February 5 Letter reflects an attitude of true indifference, and reckless disregard for the rights of consumers under the FCRA, as M&T Bank fails to even acknowledge its affirmative duty to provide complete and accurate information, and incorrectly presumes that the FCRA allows for a unilateral credit reporting process which gives no credence to the legitimate disputes of the consumer when reporting information to the credit reporting agencies upon receiving

disputes pursuant to § 1681i(a)(2). The unfair and inequitable credit reporting methods used by

M&T Bank resulted in Plaintiff having no recourse to contest information on his credit report

and was in contravention of the underlying purpose of the FCRA. Despite having total assets in

excess of $140 billion, M&T failed to respect the rights of Plaintiff as a consumer when he

disputed information furnished to the credit reporting agencies, in defiance of its obligations

pursuant to 15 U.S.C. 1681s-2(b).

　　　　To make matters worse, when Plaintiff objected that the response was inadequate and

needed further attention to rectify the falsehoods shown on his credit report, he was met with

further disdain. M&T intentionally chose not to respect the rights of Plaintiff. Another letter from

the Office Of The President was received on February 18th,

> February 18, 2021
>
> Dear Mr. Carrasco:
>
> I am in receipt of your follow up correspondence to M&T's Executive Offices
> and the Consumer Financial Protection Bureau (CFPB) regarding your M&T
> Visa Credit Card with Rewards ending -6414. Additionally, I am writing as a
> follow up from our phone conversation from February 8, 2021. Thank you for
> the opportunity to respond to your concerns.
>
> We received similar correspondence from you, and M&T responded to your
> concerns in a letter dated February 5, 2021, which I have enclosed. To reiterate
> some of the information contained in this letter, M&T sent statements and
> letters pertaining to your account to the address that you supplied to M&T
> Bank.
>
> Additionally, we have confirmed that the above-referenced credit line was
> cancelled, as the minimum monthly payments were not received by M&T.
> Notification of this was included on the enclosed monthly statements, and this
> information was, and currently is being reported accurately to the credit
> bureaus.
>
> Finally, you indicated that your account contained a promotional offer whereby
> you would be charged a 0% APR on purchases and balance transfers for 12
> months. Please note that this promotional offer did not relieve you of the
> responsibility to make minimum monthly payments.

As mentioned in our previous response, our records show your most recent payment made for $60.00 posted on February 8, 2021, and your account is no longer delinquent. As such, the account will be reported as current in accordance with M&T's requirement under the Fair Credit Reporting Act (FCRA) to report accurate information to the various credit bureaus. In keeping with our requirements under FCRA, M&T is not able to remove the previous late reporting associated with your credit card.

Lastly, if you feel that what M&T reports to the credit bureaus may be incorrect, you may wish to file a dispute directly with the credit reporting agencies: Experian www.experian.com), Equifax (www.equifax.com), and TransUnion www.transunion.com).

I hope this clarifies the matter.

Sincerely,

Caitlin Severino
*Office of the President*

M&T Bank leaves no room for doubt, as its repeated tortious acts meant only to harm Plaintiff demonstrate a level of pretentiousness rarely seen in the course of human social interactions, due to commonly understood notions of human decency and contemporary business ethics. But, in typical form, and characteristic of the most rapacious loan sharks, M&T cares not for the rights of its neighbor, and is motivated solely by the desire for self-enrichment, actively utilizing illegal methods of extortion to extract usurious interest income from vulnerable consumers, like Plaintiff. In a letter received on February 23, this is made clear,

February 23, 2021

Dear Mr. Carrasco:

I am in receipt of your follow up correspondence to M&T's Executive Offices, LinkedIn, and other email channels regarding your M&T Visa Credit Card with Rewards ending -6414.

We previously received similar correspondence from you, and M&T responded in letters dated February 5, 2021, and February 18, 2021. We feel that these responses adequately addressed all of your concerns; I have enclosed these responses for your records.

Additionally, you mentioned in an email on February 19, 2021, that you never used the referenced credit card. We'd like to clarify that this is not accurate, as

our records indicate a balance was transferred from another Financial Institution to the credit card, and you have acknowledged completing said balance transfer.

If you have any additional concerns, you may contact me directly at 716-630-4934, Monday- Friday 8:00am - 4:30pm, ET. Please be advised that unless you have new information or information to refute M&T records, M&T will no longer respond to your requests, and considers this matter closed.
Sincerely,

Michael Rosenberry
*Office of the President*

## III.    Evidentiary Considerations

Plaintiff objects to the admissibility of selected exhibits presented by M&T which are set forth below in more detail. The thrust of the basis for striking these exhibits from the record are that they are irrelevant, but the Court also has a variety of choices pursuant to the Federal Rules of Evidence, which provides for exclusion based on the fact that they include inadmissible hearsay, documents which lack any proof of authenticity or personal knowledge and for want of any cognizable probative value in reaching a determination of this action.

Exhibit 1 of M&T's cross motion should be disregarded because it is cumulative and irrelevant and M&T has no personal knowledge of its authenticity. Moreover, the exhibit poses a risk of confusing the issues, and therefore presents a risk of prejudicing Plaintiff inequitably and as such should be excluded because its risk of unfair prejudice substantially outweighs its probative value. In summary, Exhibit 1 should be disregarded by the Court pursuant to FRE 401, 402 and 403.

Exhibit 2 of M&T's cross motion should be excluded because it is intentionally misleading, falsifies documents the contents of which it has no personal knowledge of and moreover is not relevant, cumulative and with no probative value in reaching a just disposition of

this case, and presents a risk of unfairly prejudicing Plaintiff by confusing the issues, and the exhibit is clearly absent of any probative value which would justify its admissibility. As a result, the Court should disregard this exhibit pursuant to FRE 401, 402 and 403.

Exhibit 3 of M&T's cross motion for summary judgment must be excluded under Federal Rule of Evidence 806 because it constitutes inadmissible hearsay; and was presented for the limited purpose of attacking M&T's credibility and should be restricted to only serving that purpose as any other application only serves to provide M&T with another potential avenue to confuse the core issues underlying a proper disposition of this case. The exhibit has no probative value on the material facts of this action as M&T is attempting to improperly superimpose a perception that this exhibit is based on their own records which is clearly not the case, as M&T has zero personal knowledge of this document or its authenticity. M&T has made an effort to leapfrog inference upon inference in its presentation of this document, despite knowing nothing of its actual contents, which is impermissible under the Federal Rules of Evidence as well as the Federal Rules of Civil Procedure. Therefore, this exhibit should be disregarded by the court under FRE 401, 402 and 403.

Exhibits 4, 6, 10, 12, 15, 25 should be excluded because they are not relevant; are fraudulent and represent unlawful contract adhesion aimed at giving the false impression of legitimacy under the cloak of "normal course" business records, despite clearly being unreliable, inaccurate and based on obsolete data systems used by M&T because of their lack of regard for federal law concerning consumer protection. These exhibits constitute an effort to confuse the issues and prejudice plaintiff while providing absolutely zero probative value in this case. There is no justification for allowing these exhibits to be admitted because they are utterly irrelevant and are nothing but another artifice of deceit in M&T's loan sharking strategies. This cannot be

permitted lest this case turns into a contest of which party can compile the largest compilation of irrelevant documents, elongating the trial and certainly posing a substantial risk of confusing the jury. The court should without hesitation disregard the exhibits under FRE 401, 402 and 403.

## IV.    Argument

Plaintiff argues that M&T's repeated errors, inaccuracies, omissions and indifference to its statutory duties as a furnisher of information would provide a jury with plenty of evidence by which it could return a verdict in his favor. The evidence presented and incontrovertible facts make it clear that M&T has no regard for the rights of consumers, and recklessly and intentionally continues to defy its statutory obligations, threatening the livelihoods of the citizenry, and having already cause irreparable harm to be incurred by Plaintiff. The evidence, facts and applicable law in the fourth circuit clearly allow for a jury to return a verdict in Plaintiff's favor as to M&T's liability under the Fair Credit Reporting Act, and therefore summary judgment does not lie.

M&T Bank violated the FCRA and TILA, and the evidence truly speaks for itself on both counts, all of which has been filed on the record for posterity. M&T Bank must pay for the permanent injuries inflicted on the Plaintiff. Its conduct at all times was illegal and in contempt of federal law. The Court should not hesitate to use its proper discretion in entering final judgment under Rule 56 in favor of the *Plaintiff*, as it is manifest that Plaintiff is entitled to Judgment as a Matter of Law.

The incontrovertible facts, supported fully by the evidence on the record, would justify trebling the $6+ million of monetary damages claimed by plaintiff, in order to "up the ante" in terms of the deterrence effect which is required in this case. M&T Bank continues employing its immoral loan sharking schemes to this day, to the detriment of the citizens of the United States.

M&T's conduct evinces the purest form of contempt for Plaintiff's federally protected rights, and it is necessary to send a clear message to M&T that this type of conduct is not tolerated in the United States. If the Court adds special damages in its sound discretion, Plaintiff consents and recommends special damages of $20 million as a starting point, provided that incremental special damages are to be applied in addition to the $6+ million already requested. This also serves to provide notice to M&T that such an award is actually contemplated in this action. Plaintiff argues that $25 million is still quite modest and will likely need to be reinforced through penalties closer to $500+ million, perhaps imposed by the state, or granted by the court to Plaintiff, to actually have any deterrent effect. Just to put these numbers in the proper perspective, $500 million would have an immaterial effect on the financial condition of M&T Bank, a company with assets of $140+ billion, and is far from the death penalty for this company as a going concern.

For reference, Plaintiff has attached a **Valuation Appendix**, which includes selected civil penalties imposed by the Consumer Financial Protection Bureau since 2010, which may serve as helpful guidance for the Court's review. The Valuation Appendix is intended to reinforce the confidence of the Court that the outcome which is contemplated is well within the range of comparable civil penalties imposed for similar tortious acts against the consumer. The Valuation Appendix also is instructive as to the magnitude of penalties which actually are needed to deter a company as large as M&T Bank.

## V.     Conclusion

As a preliminary matter, if the Court remains unsure of any of the issues in this case, or is not persuaded on certain questions relevant to making a determination, Plaintiff requests that the court provide guidance as to what remains left to be clarified and what is necessary in order to

reach a disposition of this action, and whether a jury trial is contemplated. If the Court is already persuaded, then such guidance is unnecessary. However, if unpersuaded, plaintiff requests that the Court issue an interim report of findings setting forth remaining issues in need of further clarification.

Plaintiff has put forth his best effort to provide this Court with a record which will withstand appellate review, in order to alleviate any potential reservations in entering a final appealable judgment. If M&T envisions that the Fourth Circuit will provide recourse from the judgment Plaintiff seeks, he stands ready to argue if needed, and strongly holds the view that a higher penalty than $6 million is justified and would serve the interests of the state, and accords with societal advancement and ultimately is aligned with the interests of the good citizens of the united states of America. A proposed order will be filed in the days to come for the Court to review.

In conclusion, based on the incontrovertible facts on the record, this Court must reject M&T Bank's attempt to seek relief pursuant to Rule 56. Simply put, summary judgment does not lie for M&T Bank in this case and the cross motion for summary judgment is without merit.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct. Executed on August 27, 2021. /s/Bryce Carrasco.

**Bryce Carrasco**
334 Ternwing Drive
Arnold, Maryland 21012
bocarrasco47@outlook.com
410-858-7432