IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRYCE CARRASCO**, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: SAG-21-532 |
| **M&T BANK**, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT M&T BANK'S CONSOLIDATED
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AND
REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS**

Defendant M&T Bank ("M&T"), through its undersigned counsel, respectfully submits this Consolidated Response in Opposition to Plaintiff's Motion to Strike (ECF No. 24) and Reply Memorandum in Further Support of M&T's Motion to Dismiss (ECF No. 22).

**I.   Plaintiff's Motion to Strike Should Be Denied Because It Fails to Establish Any Factual or Legal Basis for the Relief Requested.**

Despite its surprised and excited tone, nothing in Plaintiff's Motion to Strike even remotely suggests any factual or legal basis on which to grant such relief. To the contrary, as Plaintiff's subsequently-filed "Responsive Brief" (hereinafter, "Response") (ECF No. 30) concedes, three of the causes of action alleged in the Complaint are facially deficient and never should have been pled in the first place. With respect to the two claims that Plaintiff has not voluntarily dismissed (*Id.* at ¶ 12), the infirmities and implausibility of those claims are set forth in M&T's Motion and further explained in the instant Reply. Regardless, even if Plaintiff were able to state a plausible claim, there still would be no basis on which to strike any portion of M&T's Motion, as it was timely filed and contains nothing "redundant, immaterial, impertinent,

or scandalous" so as to warrant relief under Rule 12(f). Accordingly, Plaintiff's Motion to Strike should be DENIED.

## II. Plaintiff Agrees That Counts Three, Four, and Five of His Complaint Should Be Dismissed; The Dismissal Should Be With Prejudice.

Despite his decision to voluntarily dismiss Counts Three (Fair Credit Billing Act), Four (Fair Debt Collection Practices Act), and Five (FTC Act) of his Complaint, Plaintiff appears to argue that these claims are nevertheless "valid and actionable". (ECF No. 30 at ¶ 12). Because Plaintiff is not only incorrect as a matter of law (as explained in M&T's Motion), but also because Plaintiff has not responded to M&T's arguments on these counts—yet has forced M&T to respond to these frivolous claims—the dismissal of Counts Three, Four, and Five should be *with prejudice*.

## III. Plaintiff's Effort to Re-Plead His FCRA Claim (Count One) Fails Under Plaintiff's Admission That He Misunderstood His Obligations as a Borrower; Because Plaintiff Made No Payment for Months, the Reporting Was Accurate.

While the Complaint generally complains about the terms of Plaintiff's credit relationship with M&T (Compl. ¶ 37), Plaintiff's Response artfully seeks to re-cast his FCRA allegations against M&T as involving "the account status as it was being reported ('closed by credit grantor'), payment history, past due amount, delinquencies reported, and the balance reported." (ECF No. 30 at ¶ 24). Even if these new allegations somehow were treated as part of his actual pleading,[1] Plaintiff still would not be entitled to any relief based on his admission that he misunderstood his basic repayment obligations under the Credit Card Agreement. [False, M&T misunderstands the terms, not the plaintiff.] As explained below, Plaintiff's own ~~misunderstanding~~ [understanding] of his obligation to make Minimum Monthly Payments

---

[1] It is well-established, however, that "a plaintiff may not amend her complaint via briefing." *Hurst v. D.C.*, 681 F. App'x 186, 194 (4th Cir. 2017)[Completely irrelevant for the current case].

2

on his account is the central fact underlying Plaintiff's pre-suit correspondence with M&T and his allegations in this case.

Plaintiff's Response admits that (1) Plaintiff did not make any payments during the "three-month sojourn" and (2) his failure to make those payments was based on Plaintiff's (now obvious) ~~misunderstanding~~[understanding] of his repayment obligations as a borrower and credit card user[never used the credit card per se; initiated a one-time balance transfer]. (ECF No. 30 at ¶ 32). That is, Plaintiff seems to have interpreted the fact "that there would be a 0% APR during the first twelve months of the account," (*id.*), as meaning that he would not be required to make *any payments*—including Minimum Monthly Payments—during that twelve- month period[should have been disclosed in the Appendix G-10 disclosure as a minimum charge]. Plaintiff's apparent belief that the credit card's introductory 0% APR excused him from making any payment during the first year not only strains common sense—after all, are banks really in the business of giving money away and deferring repayment for a year or more?[surprisingly yes, due to the current interest rate environment and quantitative easing program of the Federal Reserve]—but also is plainly inconsistent with the terms of Plaintiff's Credit Card Agreement, a document which he received and which states, among other things[but not disclosed in the account application or G-10 Tabular disclosure per Reg Z]:

> **Monthly Minimum Payment**
> The "Minimum Monthly Payment" is the greater of:
> (a) $15; or
> (b) 2.5% of the Outstanding Balance of Your Account at the end of a billing period plus the greater of (i) any amounts over limit or (ii) any past due amounts.
> Your Minimum Monthly Payment will be rounded to the nearest dollar.

(ECF No. 15-5 at 7). Outstanding Balance is defined under the Credit Card Agreement as "the total dollar amount of Your obligation under this Agreement for all Transactions, interest, finance charges, fees, and any other costs." (*Id.* at 3). Notably, the Agreement explains that

3

"You will be in default if" "You fail to make any payment when due under this Agreement…" (*Id*. at 8). In light of the unambiguous language [the language is ambiguous as explained in the Complaint. There is no Due Date defined in association with the Minimum Monthly Payments. Not possible to determine the relevant timing of payments based on the plain language in the credit agreement–the agreement which M&T is unable to locate or reproduce] of the Credit Card Agreement, Plaintiff's admission that he did not make the Minimum Monthly Payments owed on the account renders

3

his purported "disputes" about M&T's reporting of the account as delinquent entirely without merit[M&T reported the account as being in default, which is not supportable based on the plain language in the credit agreement. M&T is the one that seems to misunderstand its own credit documents. Not surprising given the fact that M&T does not even know which document governs the underlying obligation]. *See, e.g.*, *Alston v. Wells Fargo Home Mortgage,* TDC-13-3147, 2016 WL 816733, at *10 (D. Md. Feb. 26, 2016) (holding that "a plaintiff cannot prevail on a claim against a credit furnisher under 15 U.S.C. § 1681s-2(b) [of the FCRA] without 'a showing of actual inaccuracy.'").[the record shows many inaccuracies in the credit reports, namely, the lack of notation of the underlying dispute, which is bona fide as a matter of law.]

Notwithstanding Plaintiff's admitted ~~misunderstanding~~ [understanding] of his obligations as a borrower and credit card user, his Response tries to re-write the allegations in the Complaint to show why his disputes were "bona fide" for purposes of the FCRA. (ECF No. 30 at ¶¶ 29-31). *See Shap v. Cap. One Fin. Corp.*, 2012 WL 1080127, at *4, n. 27 (E.D. Pa. Mar. 30, 2012) ("Section 1681s–2(b) does not expressly require a furnisher to notify a CRA that an account is disputed when verifying the account. … [W]hether Capital One may be held liable for failing to notify the CRAs that Plaintiff disputed her account depends on whether the Court finds that the failure to mark an account as disputed affects the completeness or accuracy of the information provided to the CRAs…"); *Palouian v. FIA Card Servs.*, 2013 WL 1827615, at *3 (E.D. Pa. May 1, 2013) (same). Yet, neither Plaintiff's new allegations nor his varied correspondence with M&T (ECF Nos. 27, 28, 29) tends to show that Plaintiff's disputes were "bona fide" as a matter of law.[this is simply dishonest and could be grounds for sanctions]

First, while Plaintiff's January 17, 2021 email (ECF No. 27-2) asked M&T to cease debt collection activities because he believed his statement showed an incorrect "Minimum Payment Due," Plaintiff failed to explain the basis for the dispute[this is blatantly dishonest, and further

4

grounds for sanctions] and failed to include any documentation substantiating his dispute[again, if the defendant's counsel actually reviewed the relevant email on the record, than he could not make this claim in good faith and could further be construed as a downright lie, which is truly grounds for sanctions; These are multiple dishonest statements which twist the facts in bad faith and violate standards of conduct for barred attornies].[2] In fact, and as explained above, Plaintiff's contention that his account was being misreported as having a minimum payment due was based on his ~~mistaken~~

---

[2] Notably, Plaintiff does not argue that he disputed M&T's calculation of the Minimum Monthly Payment; rather, his only dispute concerned the obligation to make a minimum monthly repayment of principal as required under the Credit Card Agreement.

4

belief that he was not required to make any payments during the introductory 0% APR period. (ECF No. 30 at ¶ 32 (alleging that "[t]he non-payment during the 'three-month sojourn' was *due to plaintiff's understanding* that there would be a 0% APR during the first twelve months of the account") (emphasis added)).

Similarly, while Plaintiff's February 19, 2021 email states that Plaintiff disputed the "Closed" account designation and "essentially every piece of information [M&T] provided," he failed to explain why the "Closed" designation was factually incorrect[again, false and grounds for sanctions] and provided no documentation in support of his position[false, a blatant lie; grounds for sanctions]. (ECF No. 28-5). Instead, Plaintiff argued that "the term Closed is distinct from 'cancelled'" and that the account should not have been reported as Closed or cancelled "since it was never charged off". [this is utterly unethical and blatantly dishonest; based on the repeated dishonest statements, I see it as proper to move for 11(b) sanctions]*Id*. Yet, as other documents that Plaintiff has submitted in support of his Complaint reflect, M&T did in fact terminate Plaintiff's credit line on November 16, 2020. (ECF No. 21-4 at 6). On that date, M&T wrote to Plaintiff stating:

> We regret to inform you that *your privilege to use the available credit* on your M&T VISA WITH REWARDS Credit Card account *has been permanently terminated* because you have not met the repayment terms set forth in the agreement for your account.

(*Id*.) (emphasis added). This letter followed a series of prior letters advising Plaintiff of his past due status (*id*. at 2) and temporarily suspending (*id.* at 3-4) the account. The closure[twisting the words not so subtly, fabricating statements and misstating facts on the record which is a violation of Rule 11(b)] of Plaintiff's account also was communicated to him in a letter dated February 18, 2021. (ECF No. 21-3 at 25) ("Additionally, we have confirmed that the above-referenced credit line was cancelled in November 2020, as the minimum monthly payments were not received by M&T.").[3]

5

Thus, Plaintiff's February 19, 2021 "dispute" that the account could not have been "Closed"

---

[3] The closure of the credit line is also reflected in correspondence Plaintiff received from Equifax in response to his dispute. (ECF No. 29-1 at 4) ("ADDITIONAL INFORMATION: Account Closed By Credit Grantor" and "Activity Designator" fields reflecting "Closed" in November 2020, December 2020, and January 2021).

because it was not "charged off"[4] [this is not true and another lie]is not only factually mistaken[lie], but appears to be based on Plaintiff's misunderstanding of applicable nomenclature. That is, as the Equifax consumer website explains:

- A charge-off means a lender or creditor has written the account off as a loss, and *the account is closed to future charges*
- It may be sold to a debt buyer or transferred to a collection agency
- You are still legally obligated to pay the debt

Equifax, Knowledge Center, "What is a Charge-Off?" (accessed April 13, 2021) (emphasis added).[5] Thus, Plaintiff's contention that the account could not have been "closed" because it was not "charged off" is factually mistaken and evidences Plaintiff's misunderstanding of relevant terminology.[6] There simply was no error in M&T's reporting that the account was "closed".M&T's counsel has demonstrated pattern of intentionally distorting facts in bad faith and should be placed under investigation to evaluate these Rule 11(b) violations; this unethical pattern of dishonesty is simply unacceptable].

In sum, because the Complaint failed to allege a "bona fide" dispute, and because Plaintiff's efforts to 'save' his claims are entirely without merit, the FCRA claim should be dismissed with prejudice.[Defendant's counsel should be disqualified, sanctioned, and placed under review by the appropriate governing body]

---

[4] As numerous federal courts have recognized, a "charge off" is an accounting term that means to "treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." *Lehman v. Denmark Bancshares Inc.*, 2017 WL 5151687, at *2 (E.D. Wis. Nov. 6, 2017) (quoting Black's Law Dictionary (10th ed. 2014)). However, "charging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016).

[5] Available at: https://www.equifax.com/personal/education/credit/report/charge-offs-faq/#:~:text= A%20 charge%2Doff%20means%20a,is%20closed%20to%20future%20charges (accessed April 13, 2021). A copy of the website is attached for ease of reference as **Exhibit C**.

6

[6] The documents on which Plaintiff now relies confirm that whether an account is open or closed is distinct from whether it is "charged off". (ECF No. 29-1 at 3) (stating that "This section includes open and closed accounts reported by credit grantors" and showing Account History Status Code L for "Charge Off"). The same document shows that Plaintiff's account never was charged off, but was only reported as "Past Due". (*Id*. at 4) (showing Account History with Status Codes 3, 2, and 1 for "Past Due").

### IV. Even If Plaintiff's Response Could Be Used to Re-Write His TILA Claim (Count Two), His Efforts Nevertheless Fail to State a Plausible Claim for Relief.

Rather than respond to M&T's arguments, the Response once again tries to re-write the Complaint. Even if Plaintiff were permitted to amend his pleading via his present brief, he nevertheless fails to state a plausible claim for relief. *See Hurst*, 681 F. App'x at 194.[Again, dishonestly citing case law in bad faith; the pattern of dishonesty is clear]

### A. Like the Terms & Conditions governing Plaintiff's credit card, the Credit Card Agreement governing Plaintiff's account also is available online; Plaintiff's claim under 15 U.S.C. § 1632(d)(1) fails as a matter of law.

In an effort to save his TILA claim, Plaintiff's Response argues that paragraph 41 of his Complaint was not intended to refer to the Terms & Conditions governing the M&T Visa Credit Card with Rewards, but, rather to the Credit Card Agreement governing his account. (ECF No. 30 at ¶ 38). Nevertheless, Plaintiff chooses to insult M&T's Counsel for their failure to appreciate what document was contemplated in this paragraph of the Complaint. (*Id.*).[7]

Despite Plaintiff's present argument that he "searched far and wide to locate an internet accessible agreement for the M&T Visa Credit Card with Rewards," (ECF No. 30 at ¶ 39), it is apparent that Plaintiff did not look all that far or all that wide. The "M&T Bank VISA Credit Card Agreement" which "governs the use of Your M&T Visa® Credit Card, M&T Visa® Credit Card with Rewards…" is available online at: https://asset.mtb.com/documents/pdf/visa-credit-cards-agreement.pdf (accessed April 13, 2021).[8] Plaintiff's allegations under 15 U.S.C.

§ 1632(d)(1) thus fail as a matter of law and should be dismissed.[The document is dated 4/1/2016, so this claim still holds up and is supported by three failed attempts to show that the agreement is on the internet. It seems clear that it is not]

---

[7] Given that paragraph 41 specifically referenced a single card type, coupled with the fact that Plaintiff attached a copy of the Credit Card Agreement to his Complaint, M&T understood Plaintiff to be referring to the Terms & Conditions that apply to the M&T Visa Credit Card with Rewards, the document reflected as Exhibit A to M&T's Motion and available at: https://www.rewards.mtb.com/ProgramInfo/4216/media/MT_Bank_Rewards_TCs.pdf.

[8] A copy of this website is attached for ease of reference as **Exhibit D**. The Agreement begins on page 3

of the linked PDF document; the preceding two pages are mandatory disclosures governing M&T credit cards. Notably, this website was the very first search result when undersigned Counsel searched on Google for "m&t credit card agreement".

Case 1:21-cv-00532-SAG Document 45 Filed 04/20/21 Page 12 of 17

B. **The Response includes new TILA allegations that do not appear in the Complaint; these allegations fail as a matter of law.**

    i.    The purported non-compliance with Regulation Z, Appendix G-10.

Nowhere in his Complaint does Plaintiff refer to Appendix G-10 to TILA Regulation Z. Yet, Plaintiff now argues that M&T violated TILA by using a different disclosure than that which appears in Appendix G-10(A). Plaintiff attaches to his Response (ECF No. 30 at p. 15) a copy of the model form that appears in Appendix G-10(A) and a printout of what Plaintiff represents to be M&T's disclosure (*id.* at p. 16). Whether intentional or an oversight, the printout attached as an exhibit to the Response is incomplete. For a complete version of the credit card solicitation disclosures provided to Plaintiff, M&T refers the Court to ECF No. 21-3 at pp. 10-11 and ECF No. 17-2 at p. 2. Both sets of disclosures were filed by Plaintiff and are substantially similar to Appendix G-10(A). The only difference between Appendix G-10(A) and M&T's disclosures is that M&T's do not include a row for a Minimum Interest Charge [OR "Minimum Charge"]. (*Compare* ECF No. 30 at p. 15, *to* ECF No. 21-3 at pp. 10-11 and ECF No. 17-2 at p. 2). The reason that M&T's disclosures do not include that row is because M&T does not charge a Minimum Interest Charge [But does impose a minimum charge, thus the section is required for compliance with Regulation Z] on the credit card—a fact confirmed by the Credit Card Agreement. (ECF No. 15-5). Thus, there was nothing for M&T to disclose [FALSE; the Minimum charge is required to be disclosed]. Regardless, Regulation Z (12 CFR § 1026.60) only requires M&T to make disclosures "substantially similar in sequence and format to" the model in Appendix G-10(A)—and it indisputably did so here [this is a stretch; the whole section which refers to the minimum charge is missing and the minimum charge was the sole basis for negative information furnished to CRAs; M&T violated TILA in spades]. 12 C.F.R. § Pt. 1026, Supp. I, Part 5. Thus, Plaintiff's new allegations regarding Appendix G-10(A) fail to save his TILA claim.

8

### ii. The purported miscalculation of Plaintiff's APR.

While the Complaint does not allege any TILA violation based on the alleged miscalculation of the APR, the Response argues that M&T misstated the APR on Plaintiff's

account and, in so doing, violated an unspecified section of TILA Regulation Z. (ECF No. 30 at ¶¶ 50-64). Plaintiff appears to assert that the $57 Minimum Monthly Payment that he owed should be construed as a "finance charge" for purposes of calculating his APR. (*Id.* ¶ 57). This assertion is legally incorrect and is inconsistent with the terms of his Credit Card Agreement (ECF No. 15-5). This amount ($57) is equivalent to 2.5% of Plaintiff's outstanding balance of $2,288, consisting of the $2,200 balance he transferred from Bank of America (ECF No. 30 at ¶ 55) and the $88 balance transfer fee assessed in connection with that transaction (*id.* ¶ 56). The $2,200 is the principal amount of the debt and is neither a finance charge nor a periodic rate of interest for purposes of calculating the APR. *See* 12 C.F.R. § 1026.6(2)(i). The $88 balance transfer fee, while a disclosed finance charge, is not a periodic rate of interest for purposes of the APR calculation. *See* 12 C.F.R. § 1026.6(2)(i) and (x) (distinguishing between APR and balance transfer fee). Thus, the $57 referred to in the Complaint has nothing to do with the APR but, rather, reflects the Minimum Monthly Payment of the outstanding balance owed on Plaintiff's credit card pursuant to the Credit Card Agreement. Because Plaintiff's calculations are premised on a fundamentally flawed understanding of the terms of his account, his new allegations of a TILA violation are factually incorrect and legally implausible. Accordingly, even if Plaintiff's new allegations were treated as comprising or supplementing his Complaint, they still would fail to state a plausible claim for relief and should be dismissed.[This entire paragraph is false, and fails to respond to the substance of any of the claims].

    **C. Plaintiff fails to plausibly allege any actual injury as a result of M&T's alleged disclosure violations; Plaintiff lacks standing to pursue a claim under TILA.**

Even if Plaintiff's TILA claims were not otherwise doomed, Plaintiff's TILA claim still should be dismissed because he has not alleged any actual injury resulting from the purported disclosure violations. While the Complaint seeks the imposition of a financial penalty against M&T pursuant to 15 U.S.C. § 1611 (ECF No. 1, ¶¶ 40, 47), such penalties are not recoverable in

9

civil actions. *See* M&T Mot., ECF No. 22-1 at p. 10. Plaintiff does not dispute this in his Response, but instead claims that the alleged disclosure violations caused him "emotional distress" and caused him to incur a debt with M&T in the amount of $2,200. (ECF No. 30, ¶ 65). Plaintiff's new claim of emotional distress is not supported by any allegation in the Complaint or in the Response and, under the circumstances, simply is not plausible. *See* Fed. R. Civ. P. 9(g) (requiring special damages, such as emotional distress, to be specifically stated). As for the $2,200 debt, Plaintiff owed this amount regardless of whether he kept this balance on his Bank of America credit card or transferred the amount to his new M&T credit card. Plaintiff does not dispute incurring the debt and there is no basis on which Plaintiff's pre-existing debt obligation would be recoverable as damages. Notably, Plaintiff has not and cannot allege paying M&T any interest on the admitted debt because, despite having the right to charge Plaintiff a "Penalty APR" for non-payment, M&T has not charged or collected any interest from Plaintiff. Nevertheless, Plaintiff claims that "these disclosure violations resulted in the entitlement to financial relief from M&T of $10,000." (ECF No. 30, ¶ 65). Even if the Court were willing to accept this statement as supplementing the Complaint, the claim of $10,000 is just as conclusory as Plaintiff's claim of emotional distress and is insufficient to plausibly allege actual damages.

---

For the foregoing reasons and for those set forth in M&T's Motion to Dismiss, Plaintiff's Motion to Strike (ECF No. 24) should be DENIED, M&T's Motion to Dismiss should be GRANTED, and the Complaint should be DISMISSED WITH PREJUDICE.

Respectfully submitted,

*/s/ Brian L. Moffet*
Brian L. Moffet (Fed. Bar No. 13821)
Michael B. Brown (Fed. Bar No. 19641)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
Tel: (410) 727-6464
bmoffet@milesstockbridge.com
mbbrown@milesstockbridge.com

*Attorneys for Defendant M&T Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2021, a copy of the foregoing was served on the following via CM/ECF and via first class mail, postage prepaid:

Bryce Carrasco
334 Ternwing Drive
Arnold, MD 21012

*/s/ Brian L. Moffet*
Brian L. Moffet