IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRYCE CARRASCO,

    Plaintiff,

       -against-

M&T BANK,

    Defendant.

Civil Action

No. 21-532-SAG

PLAINTIFF'S SURREPLY MEMORANDUM

    M&T relies on undated "account statements" in its attempt to prove the accuracy of its reporting on the eight ACDVs submitted to the credit reporting agencies in response to the disputes it received in regard to plaintiff's account. These account statements are insufficient in proving the accuracy, and obviously they match what was submitted on the various ACDVs because these account statements represent the only source of information used in the reinvestigations. This is wholly inadequate in establishing the accuracy of the information submitted on the various ACDVs because these account statements are unreliable and irrelevant, and based on obsolete data systems employed by M&T, as demonstrated by the various inaccuracies reflected in the customer profile screen provided by M&T, such as ECF 16-3 (Customer Profile) and ECF 16-4 (Account Profile).

    For example, on the Customer Profile screen provided by M&T on March 23, 2021, it is shown that the telephone number of the Plaintiff is 410-544-4138. This information is factually incorrect as Plaintiff's phone number has never been 410-544-4138 and this illustrates the inherent unreliability of M&T's customer relationship management platform. Plaintiff's phone number is 410-858-7432 and he has had the same telephone number since 2012. Plaintiff has never had a different telephone number and this information is wholly incorrect and thus any

purported information generated by M&T as reflected in the various account statements is manifestly unreliable and lacks any indicia of trustworthiness.

M&T asserts that its cross-motion "addresses each ACDV in detail and establishes the accuracy of the reported information" which is utterly unsubstantiated and based on the manifestly incompetent testimony of "Kathleen Evans" who oversees a call center and has no credibility to prove anything other than the fact that the account statements exist. The Evans Affidavit is inadequate to establish that the ACDVs reported accurate information and thus the exhibits offered to prove the accuracy of the information reported by M&T in responding to credit reporting disputes is insufficient to create a genuine dispute as to the accuracy of the information reported on those ACDVs.

M&T claims that Plaintiff's assertion that the responsive ACDV dated January 5, 2021 inaccurately reported the account balance as $2,383 is "demonstrably false" which is manifestly false and unsubstantiated by any admissible evidence. M&T's online banking platform directly contradicts M&T's assertion that it reported accurate information, as evidenced by the account detail screen reflected on its own online banking portal on December 30, 2020, five days before submitting the inaccurate ACDV where it reported the wrong account balance. See **Exhibit E**, showing that the account balance on December 30th was $2,117, which directly proves the inaccuracy of the verified information reported on the January 5 ACDV that the account balance was $2,383 (ECF 88-19). That the information reflected "Date of Account Information" as "12-16-2020" is irrelevant in determining whether M&T adhered to its responsibilities to report complete and accurate information, which it utterly failed to do eight times. The fact that it relied on its own erroneous account statements simply proves that M&T willfully fails to comply with its duties as a furnisher of information under the FCRA as a matter of course.

M&T's online banking portal reflected that a payment of $60 was received on January 15, 2021, and that the account balance was $2,057 as a result. See **Exhibit F**. Reports generated on January 31, 2021 from all three credit reporting agencies showed that the account balance was $2,117 which is factually incorrect. See **Exhibit G** for Experian, **Exhibit H** for Trans Union, and **Exhibit I** for Equifax, all of which were after disputes were processed, and all of which contain no disclosure pertaining to the disputed nature of the account, based on M&T's failure to provide documentary evidence. For example, the Experian report generated on January 31, 2021 stated that the date for which the balance was updated was January 16, 2021, and inaccurately showed that the account balance as of that date was $2,117 when in fact it was $2,057 as a result of the $60 payment that was posted to the account ledger on January 15, 2021. See Exhibit F. Nevertheless, M&T maintains that its verification of factually inaccurate information is somehow accurate, ignoring incontrovertible evidence contradicting its assertion, based on its own online reporting systems. In addition, the report contained no indication that Plaintiff was vehemently disputing the account, including the purported delinquencies reflected, and acknowledged by M&T on December 31, 2021, but nevertheless M&T still persists in its belief that somehow its reporting was accurate and complete in compliance with the Fair Credit reporting act. The Trans Union report generated on January 31 (**Exhibit H**) showed that the $231 payment was made in January 2021, which is factually inaccurate because the payment was posted to the account ledger on December 22 of 2021. See **Exhibit E** (showing that payment of $231 was posted to the account on December 22). The Equifax Report dated January 31, following the verification by M&T following a dispute received on December 31, also failed to notate the disputed nature of the account, and incorrectly stated that the account was 90 days past due, and that the date of the reported information was January 19, 2021, which means that the

3

account balance would have been $2,057, however, the report reflected that the account balance was $2,117 as of January 19, which was factually inaccurate, and it also reported that the "Date Closed" was November 1 which is inconsistent with the information reported to the other credit reporting agencies that the account was closed on November 16, 2020. The account was never closed, but even if it was closed, M&T failed to consistently report data in a uniform manner across Equifax, Trans Union and Experian, because Equifax reported that the account was closed on November 1 whereas Trans Union and Experian reported that the account was closed on November 16. Compare **Exhibit G** and **H** with **Exhibit I** "Date closed." As well, in the notification evincing the completion of M&T's reinvestigation as a result of a dispute initiated with Experian, dated January 14, attached as **Exhibit J**, Experian relayed that "the information you disputed has been verified as accurate" including that the status of the account was "$231 past due as of January 2021," that no payment had been made despite the fact that $231 was received and posted to the account ledger on December 22, as reflected by M&T's own online banking portal. The balance was reported as $2,383 as of 1/13/2021 which was factually inaccurate and contradicted by M&T's own reporting systems, which reflected that the balance was $2,117 as of December 22 on a roll forward basis and furthermore that the account balance was $2,057 on January 15 on a roll forward basis, none of which was correctly reported by M&T in processing the various disputes it received from the three credit reporting agencies. There is no argument that can be made that it reported accurate information in processing the disputes it received on December 31 from all three reporting agencies and even less defensible is the assertion that the information verified on each Form ACDV was complete within the meaning of 15 U.S.C. § 1681s-2(b), and there is utterly no supportable basis by which M&T can maintain

that it correctly fulfilled its duties as a furnisher of information when it processed any of the disputes it received regarding Plaintiff's account.

Furthermore, M&T tries to assert that somehow Plaintiff was contractually obligated to make payments, but fails to establish any corroborating evidence which is not inadmissible hearsay to prove the truth of that statement, and any representation to the contrary is false and unsupportable as a matter of substantive evidence law. On February 19, 2021 Plaintiff sent a message to the Office of the President regarding the failure to deliver documentation for the account, which as a result rendered all reported information regarding the purported delinquencies unverifiable within the meaning of the fair credit reporting act. Plaintiff never received a response after sending the following:

> Please confirm receipt and acknowledgement of my request for documentary evidence of the legal obligation between myself and M&T Bank. I will hold you accountable for attempting to enforce a legal obligation without any certificate or proof of an executed agreement if you are unable to provide a copy of the application or proof of delivery of the terms and conditions specific to the promotional offer. Since I did not use the card at any point, I did not indirectly consent to the terms of the agreement through the use of the card.

See **Exhibit K**. M&T posits that Plaintiff affirmatively assented to the terms of some imaginary credit agreement by initiating a balance transfer to the account. However, M&T has not provided any evidence that Plaintiff affirmatively initiated the balance transfer. As Plaintiff's own testimony on the record indicates, the balance transfer was tentatively requested when he completed the application in-person in the first week of July 2020, prior to even being approved for the credit account. M&T speculates that Plaintiff then caused the balance transfer to be completed, but this is utterly without any evidence, as the balance transfer was actually initiated by M&T on its own accord after it approved the account, and plaintiff took no affirmative action to transfer the $2,200 to Bank of America, therefore the inference that Plaintiff assented to a non-

5

existent credit agreement is false and without any admissible evidence to corroborate it. M&T relies on an incoherent and indefensible grouping of inferences without offering any corroborating evidence, and somehow persists with the notion that it is entitled to judgment as a matter of law. M&T failed to disclose the dispute in processing all of Plaintiff's disputes initiated with the CRAs, and to prove this plaintiff hereby testifies that on February 19, I placed phone calls to all three credit reporting agencies to see if M&T Bank had notified them that I was disputing the facts surrounding the information that was previously furnished and verified as accurate over eight times. I spoke with representatives from Experian, Trans Union and Equifax on February 19, 2021, and each credit reporting agency confirmed that M&T had not made any disclosure of this fact at any point, and furthermore plaintiff notified M&T Bank of this in an email dated February 19, addressed to **Chris Kay**, Head of Consumer Credit, **Caitlin Janker**, and the Office of the President, which is attached as **Exhibit L**, which stated

> I just finished phone calls with all three reporting bureau's to see if they had received disclosure from M&T Bank that I am disputing the facts surrounding information you have furnished. All three reporting agencies confirmed that you have not made any disclosure and I recorded all three conversations for the record to support my civil cause of action against M&T Bank. Your inaction in making the required disclosures under federal law will be used against you in the court of law.

*Id*. Despite this notice and clear indication of what was required pursuant to well-settled case law, M&T continued to omit the material information that the account was subject to active dispute, and thereby willfully failed to meet its burden under the fair credit reporting act as a furnisher of credit information.[1]

---

[1] See also for inaccurate credit reports: Exhibit M, Trans Union Report dated 1/22/2021; Exhibit N, Equifax Report dated 1/22/2021; Exhibit O, Experian Report dated 1/22/2021.

6

To the extent that M&T tries to say that the various credit reports are unauthenticated, it is simply mistaken, as all of the exhibits can be found in the bates-stamped document provided by M&T during discovery and filed on the record as ECF 77-3. For example: **Exhibit D** (ECF 91-4) of Plaintiff's response (ECF 91), can be found at ECF 77-3 at 91 [MTB00091]; **Exhibit C** (ECF 91-3) of Plaintiff's response (ECF 91) can be found at ECF 77-3 at 124, 136-38 [MTB00124, 136-38]; **Exhibit B** (ECF 91-2) of Plaintiff's response (ECF 91) can be found at ECF 77-3 at 41, 53-54 [MTB00043, 53-54]. Inexplicably, M&T makes a statement in reference to these reports which were actually provided by M&T during discovery as being "reports apparently issued by third parties (ECF No. 91 at 10) and attaches select pages from these reports without an authenticating affidavit." This ignores the fact that these exact same reports were disclosed by M&T Bank as part of its Rule 26 disclosures, and bates-stamped and filed on the record in this lawsuit on the docket.

\*  \*  \*

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct BASED ON PERSONAL KNOWLEDGE, JUST LIKE ALL OTHER DOCUMENTS I HAVE FILED IN THIS CASE. Executed on September 6, 2021. /s/Bryce Carrasco.

Bryce Carrasco
334 Ternwing Drive
Arnold, Maryland 21012
bocarrasco47@outlook.com
410-858-7432

7