IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BRYCE CARRASCO, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: SAG-21-532 |
| M&T Bank, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Bryce Carrasco, who is self-represented, filed an Amended Complaint alleging that Defendant M&T Bank ("M&T") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b) (Count One), and the Truth In Lending Act ("TILA"), 15 U.S.C. § 1633 (Count Two).[1]  ECF 62.  Mr. Carrasco's arguments arise out of his contention that he never owed M&T a debt on his credit account because M&T allegedly offered him promotional terms that did not require him to make minimum monthly payments on his balance.  *Id.*  The parties agree that discovery is closed.  ECF 79.  Mr. Carrasco has filed a Motion for Summary Judgment (the "Motion"), ECF 85, and M&T has filed a Cross-Motion for Summary Judgment (the "Cross-Motion"), ECF 88.  While those motions were pending, Mr. Carrasco filed the following additional motions: (1) a Motion for Sanctions, ECF 94; (2) a Motion for Leave to File a Surreply, ECF 95; (3) a Motion for Entry of Judgment under Rule 54(b), ECF 97; (4) a Motion for More Definite Statement, ECF 101; (5) a Motion for Other Relief, ECF 102; (6) an Emergency Motion to

---

[1] Mr. Carrasco's Amended Complaint also alleged a violation of TILA's disclosure requirements under 15 U.S.C. § 1632.  ECF 62 at ¶ 45.  However, he moved to voluntarily dismiss that claim on July 1, 2021, ECF 74, and the Court granted his motion on July 26, 2021.  ECF 84.

Reassign the Case, ECF 103; (7) a Motion "Apologizing to the Presiding Judge," ECF 105; and (8) an Emergency Motion to Disqualify Counsel, ECF 112.  M&T, for its part, filed a Motion for Leave to File an Answer to the Amended Complaint, ECF 106.  The Court has reviewed all of these motions, the oppositions to them, ECF 90, 91, 107, 115, 116, 117, 118, 119, 120, and any replies, ECF 92, 93, 108, 121, along with the exhibits accompanying those filings.  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons that follow, Mr. Carrasco's Motion will be DENIED; M&T's Cross-Motion will be GRANTED; Mr. Carrasco's Motion for Leave to File a Surreply will be GRANTED; M&T's Motion for Leave to File an Answer will be GRANTED; and all other pending motions will be DENIED.

## I.      FACTUAL BACKGROUND

On July 17, 2020, Mr. Carrasco applied for and received an M&T Visa Credit Card with Rewards.  ECF 62 ¶ 4.  According to Mr. Carrasco, an M&T representative told him at this meeting that he was being offered promotional terms and would not be required to pay any minimum monthly payments.  ECF 90 at 2.  Three days later, Mr. Carrasco emailed an M&T Branch Manager requesting to look at account documentation online.  ECF 62 ¶ 6.  He was told that he would receive a letter "that comes separate from the card that has your approval information but typically with a credit card there isn't further documentation outside of what I gave when you filled out the application."  *Id.* ¶ 7.  On or about July 21, 2020, Mr. Carrasco received his physical card, along with a letter providing certain information about the credit terms and "a generic-looking and undated pamphlet, which defendant has represented as being the Credit Agreement."[2]  *Id.* ¶¶ 8-9.

---

[2] Mr. Carrasco attached a copy of the credit agreement to the initial Complaint as Exhibit 3 and references the same exhibit in the Amended Complaint.  Exhibit 3 to the initial Complaint was largely illegible due to its format.  ECF 1-4 ("M&T Bank Visa Credit Card Agreement").  However, Mr. Carrasco re-filed a legible version of the same document as part of a "Proposed

Shortly after receiving the card, Mr. Carrasco used it to pay off the balance on a credit card he held with another bank.  *Id.* ¶ 12.  The balance transfer, in the amount of $2,200, was completed on August 3, 2020.  *Id.* ¶¶ 12-13.

In September, 2020, Mr. Carrasco temporarily moved from his Baltimore residence, which was his address on file with M&T, to his parents' home in Arnold, Maryland.  *Id.* ¶ 15.  He did not return to his Baltimore address until December, 2020.  *Id.*  During that time, he did not receive email or telephone correspondence from M&T.  *Id.* ¶ 16.  Upon his return, he discovered six letters in his mail from M&T, stating that he had a past-due debt on the account.  *Id.* ¶¶ 17-18.  One such letter, dated November 5, 2020, stated that M&T had "told a credit bureau about a late payment, missed payment, or other default on your account."  *Id.* ¶ 18.  The letter further warned, "This information may be reflected in your credit report."  *Id.*

On December 22, 2020, Mr. Carrasco called M&T and made full payment by telephone of the amount M&T claimed to be overdue.  *Id.* ¶ 21; ECF 91 at 3 n.1 (clarifying date).  The M&T representative also agreed to reverse the late fee charges on the account.  ECF 62 ¶ 21.  On December 30, 2020, Mr. Carrasco emailed M&T to:

> notify them that disputes had been submitted to Experian, Transunion and Equifax in regard to information reflected on Plaintiff's credit reports from all three agencies, based on information furnished by [M&T].  In addition to notifying M&T of disputes with [credit reporting agencies ("CRAs")], Plaintiff also provided a formal statement describing why such furnished information was misleading and overall misrepresentative based on the underlying terms of credit.

*Id.* ¶ 22.  M&T confirmed receipt of the email on December 31, 2020 and informed Mr. Carrasco that it was investigating his concerns.  *Id.* ¶ 23.  Mr. Carrasco continued to send correspondence

---

Exhibit List."   ECF 15-5 ("Supplementing Ex. 3 M&T Bank Visa Credit Card Agreement, colorized (for readability)").

to M&T about his disputes. *Id.* ¶¶ 24-26. However, after its investigation, M&T did not make any material changes to the reporting made to the CRAs. *Id.* at ¶ 27. M&T also did not indicate to the CRAs that the underlying debt was being disputed. *Id.* ¶¶ 28. Mr. Carrasco filed a complaint with the Consumer Financial Protection Bureau in February, 2021, and notified M&T of that complaint. *Id.* ¶ 29. A few days later, M&T responded to Mr. Carrasco that "After a review of your account, we have determined that no bank error occurred in this case." *Id.* ¶ 33.

## II.     MOTIONS FOR SUMMARY JUDGMENT

### A.  Legal Standard[3]

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th

---

[3] With sensitivity to Mr. Carrasco's requests that the Court not treat him differently in light of his *pro se* status, the Court is required to explain the legal standards under which it must evaluate a *pro se* litigant's pleadings. While self-represented litigants' pleadings must be "liberally construed" and "held to less stringent standards than [those filed] by lawyers[,]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), courts may not advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, courts cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *see also Maryland v. School Bd.*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint). Moreover, "a self-represented litigant is not excused from following the Federal Rules of Civil Procedure or the Local Rules." *Qiydaar v. People Encouraging People, Inc.*, No. CV ELH-17-1622, 2020 WL 4286831, at *3 (D. Md. July 27, 2020). That said, Mr. Carrasco clearly needs no help expressing his factual and legal arguments. Mr. Carrasco has done substantial legal research, presented his arguments in clear writing, and zealously advocated for himself.

Cir. 1987)).  If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial.  *Id.*  The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial."  *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)).  The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor.  *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another."  *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case.  *Id.* at 352.  The non-moving party "must produce competent evidence on each element of [its] claim."  *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671).  If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial."  *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)).  In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### B.  Analysis

#### i.  Evidentiary Objections

This Court begins by evaluating which evidence it can appropriately consider in evaluating the parties' cross-motions.  Mr. Carrasco attacks the evidentiary value of numerous documents on which M&T relies, several of which were filed on this Court's docket by Mr. Carrasco himself. At the summary judgment stage, evidence may only be excluded if it "cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Insofar as they relate to the exhibits cited, and relied on herein, the Court will address each of Mr. Carrasco's objections in turn.

#### a.  Exhibit 2 (ECF 88-4)

Mr. Carrasco argues that Exhibit 2 is "intentionally misleading," falsified, irrelevant, cumulative, and unfairly prejudicial.  ECF 91 at 25-26.  The exhibit purports to be the letter to which Mr. Carrasco's physical credit card was affixed when M&T sent it to him.  ECF 88-4.  As M&T points out, Mr. Carrasco filed this document himself as ECF 15-1.

The document is unquestionably relevant since it relates to the credit card at issue in this case.  Moreover, M&T could present it in admissible form as a self-authenticating admission of a party opponent (among other potential avenues to its admission).  *Jones v. Chapman*, No. ELH-14-2627, 2017 WL 1546432, at *3 (D. Md. Apr. 28, 2017) (collecting cases).  Although Mr. Carrasco does not explain his conclusions that the document has been "falsified" by M&T or used by it in a way that is "intentionally misleading," the Court assumes those arguments refer to the alterations M&T has placed on the document to: (1) label it as "Exhibit 2"; (2) create a red box around Mr. Carrasco's name and address; (3) and highlight portions of the document M&T deems relevant.  ECF 88-4.  These alterations were unquestionably offered for emphasis, and for the

Court's convenience, and they do not render the exhibit "falsified" or "intentionally misleading." Finally, the Court finds that the exhibit, if offered into evidence, would neither be cumulative nor unduly prejudicial to Mr. Carrasco under Federal Rule of Evidence 403.

### b. Exhibit 3 (ECF 88-5)

Mr. Carrasco argues that Exhibit 3 constitutes "inadmissible hearsay" and was "presented for the limited purpose of attacking M&T's credibility and should be restricted to only serving that purpose[.]"  ECF 91 at 26.  He also argues that the exhibit should be disregarded under Federal Rules of Evidence 401, 402, and 403.

The exhibit contains a cover page with a purported "summary" that identifies the attached document as the "original" "M&T Bank Visa Credit Card Agreement."  ECF 88-5.  Like Exhibit 2, above, Mr. Carrasco filed Exhibit 3 himself as ECF 15-5 (except that M&T again appears, for purposes of its use as an exhibit to these motions, to have labeled the document "Exhibit 3," drawn several red boxes around relevant information, and highlighted one sentence).  *Id.*

For the same reason explained above, Exhibit 3 could be presented in admissible, unaltered form as an admission by a party opponent.  *Jones*, 2017 WL 1546432, at *3 (collecting cases). Moreover, admissions by party opponents are, by rule, not hearsay.  Fed. R. Evid. 801(d)(2). Again, the exhibit is relevant because it sets forth the contractual terms at issue in this case.  There would also be no basis to exclude the exhibit under Federal Rule of Evidence 403 because it is not unfairly prejudicial to Mr. Carrasco.

### c. Exhibits 4, 6, 10, 12, 15 (ECF 88-6, 88-8, 88-12, 88-14, 88-17)

These exhibits are account summaries that appear to have been sent by M&T to Mr. Carrasco.  Mr. Carrasco argues that they should be excluded because they are irrelevant, fraudulent, unduly prejudicial, and "represent unlawful contract adhesion[.]"  ECF 91 at 26.  Like

the other exhibits described above, they are relevant because they directly relate to Mr. Carrasco's credit account with M&T; they could be presented in admissible form as M&T's business records (Fed. R. Evid. 803(6)); they are not unduly prejudicial to Mr. Carrasco; and M&T's minimal alterations to label the documents and draw attention to certain portions of them does not render them fraudulent.

### ii.  FCRA Claim

With those evidentiary objections resolved, this Court turns to the substantive claims.  Mr. Carrasco argues that he is entitled to summary judgment on his FCRA claim because the undisputed evidence shows that M&T fell short of the obligations imposed on it as a furnisher of credit reporting information under 15 U.S.C. § 1681s-2(b).  *See* ECF 85 at 10.  "Furnishers of information," like issuers of credit cards, have several affirmative obligations under the FCRA that are aimed at ensuring CRAs are provided complete and accurate information.  15 U.S.C. § 1681s-2.  There is no dispute here that M&T is a furnisher and is, therefore, subject to the requirements set forth in Section 1681s-2.  ECF 88-2 at 15.

Section 1681s-2(b) explains the steps furnishers are required to take once they are notified by a CRA of a consumer's dispute related to inaccurately reported information.  That subsection requires furnishers to investigate the dispute and, if any reported information is found to be inaccurate, incomplete, or cannot be verified, the furnisher must modify that item of information.  15 U.S.C. § 1681s-2(b).  As part of those obligations, several courts including the Fourth Circuit have found that furnishers must report a debt as disputed after they receive notice from a CRA that a consumer has disputed the accuracy of the reported information.  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162-63 (9th Cir. 2009) ("[A] furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s-2(b).") (citing *Saunders*, 526 F.3d at 150); *Seamans v. Temple Univ.*, 744 F.3d 853, 867 (3d

Cir. 2014) ("[A] private cause of action arises under 15 U.S.C. § 1681s-2(b) when, having received notice of a consumer's potentially meritorious dispute, a furnisher subsequently fails to report that the claim is disputed."). However, "a furnisher does not report 'incomplete or inaccurate' information within the meaning of § 1681s-2(b) simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading." *Gorman*, 584 F.3d at 1163 (citing *Saunders*, 526 F.3d at 150); *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 853 (E.D. Va. 2017); *Shap v. Capital One Financial Corp.*, No. 11-4461, 2012 WL 1080127, at *4 n.27 (E.D. Pa. Mar. 30, 2012) (collecting cases).

Thus, to prevail on a claim under Section 1681s-2(b), a plaintiff must establish: "(1) that he . . . notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information." *Long v. Pendrick Capital Partners II, LLC*, 374 F. Supp. 3d 515, 527 (D. Md. 2019); *Ausar-El*, 2012 WL 3137151, at *3. However, a plaintiff's claim fails if the consumer's dispute is meritless. *Saunders*, 526 F.3d at 150; *Gorman*, 584 F.3d at 1162-63; *Shap*, 2012 WL 1080127, at *4 n.27.

Here, the parties do not meaningfully dispute the first two elements of Mr. Carrasco's FCRA claim—Mr. Carrasco did, in fact, lodge complaints with the CRAs disputing the information M&T had reported about his account, and M&T acknowledges that it received notification of Mr. Carrasco's disputes from each of the three major CRAs. ECF 88-19-26 (Automated Consumer Dispute Verification ("ACDV") notices to M&T from the three major CRAs). Rather, the parties contest whether M&T had an obligation under Section 1681s-2(b) to report Mr. Carrasco's debt as disputed once it received notice of his dispute from the CRAs. That question depends on whether Mr. Carrasco's dispute was meritorious; if it was, then M&T had an

obligation to report it as disputed, but if the dispute lacked merit then M&T did not violate Section 1681s-2(b) by failing to report it as such.  *Saunders*, 526 F.3d at 150; *Gorman*, 584 F.3d at 1162-63; *Shap*, 2012 WL 1080127, at *4 n.27.

Mr. Carrasco argues that his dispute was meritorious because he was never obligated to make minimum monthly payments and, therefore, did not owe M&T any debt at all.  *See* ECF 90 at 5; ECF 91 at 4.  According to Mr. Carrasco, an M&T branch representative told him during an in-person meeting that M&T was offering a credit card with promotional terms that did not require any minimum monthly payments for 12 months.  ECF 91 at 2-3.  Shortly after that meeting, he contacted the representative again to inquire about those terms.  *Id.*  Therefore, he argues, no matter the terms of any credit agreement M&T ultimately sent him, he never accepted any terms that obligated him to make minimum monthly payments on his account.  ECF 90 at 5; ECF 91 at 4.

Application of the law to the undisputed facts, however, compels the Court to conclude otherwise.  Mr. Carrasco admits that in July, 2020, after he completed a credit card application, M&T sent him a physical credit card along with a credit agreement.  ECF 62 ¶ 8-9; ECF 15-5, ECF 88-5 ("Summary" written by Mr. Carrasco explaining that the attached credit agreement was sent to him "when they sent the physical card in the mail.").  That credit agreement unambiguously states that "[b]y applying for or using the Card, You accept, agree to, and are bound by the terms and conditions[,]" ECF 15-5, ECF 88-5 at 3, that balance transfers are subject to a transfer fee, ECF 15-5, ECF 88-5 at 6, and that "[b]y the date shown on any statement for Your Account, You must pay at least the Minimum Monthly Payment shown on the statement."  ECF 15-5, ECF 88-5 at 7.  Mr. Carrasco also admits he used the card to initiate a balance transfer.[4]  ECF 62 ¶ 12-13

---

[4] At times Mr. Carrasco appears to deny that he initiated the balance transfer after receiving the physical card in the mail along with the credit agreement, even going so far as to say that "the balance transfer was initiated by M&T on its own accord after it approved the account, and plaintiff

("Plaintiff initiated a balance transfer with M&T to repay a previous credit card account with Bank of America of $2,200 shortly after receiving the Letter.  The balance transfer was completed by M&T and $2,200 was sent to Bank of America on August 3, 2020."); ECF 88-6 (August, 2020 Account Summary).  Finally, Mr. Carrasco admits that he did not make any payments on the account until December 22, 2020.  ECF 62 ¶ 21; ECF 91 at 3.[5]

These undisputed facts are sufficient to establish that Mr. Carrasco was legally bound by the terms of the credit agreement and, therefore, agreed to make minimum monthly payments on his account.  Even crediting his assertions that an M&T representative told him he would not be required to make minimum monthly payments on his credit card, the credit agreement he admits receiving after that conversation clearly states that minimum monthly payments are required.  ECF 15-5, ECF 88-5 at 7.  That agreement, along with settled case law, establishes that Mr. Carrasco's

---

took no affirmative action to transfer the $2,200 to Bank of America[.]"  ECF 95.  However, the Amended Complaint itself states that "*Plaintiff initiated* a balance transfer with M&T . . . *shortly after receiving the Letter*."  ECF 62 ¶ 12 (emphasis added).  Moreover, on the same day that Mr. Carrasco denied having initiated the bank transfer and accused M&T of initiating it on its own accord, he filed a motion for sanctions against M&T's counsel.  ECF 94.  In support of that motion, Mr. Carrasco redlined a document that had been filed by M&T in April, 2021, purporting to show that M&T made inaccurate representations to the Court.  ECF 94-1.  But in the redlines Mr. Carrasco wrote: "never used the credit card per se; *initiated a one-time balance transfer*."  ECF 94-1 (emphasis added).  Similarly, at times Mr. Carrasco asserts that he did not "discover the existence" of the credit agreement until February, 2021.  ECF 88-10 at 3 (Responses to M&T's Requests for Admission).  Again, though, Mr. Carrasco clearly stated the opposite in both the Amended Complaint and the cover letter "summary" he filed along with the credit agreement.  ECF 62 ¶ 8-9; ECF 15-5.  While it is axiomatic that the Court may not make credibility determinations at this stage, *see Anderson*, 477 U.S. at 255, Mr. Carrasco's conclusory denials of basic facts are not only unsupported by any evidence he puts forth, but are clearly disproven by M&T's evidence and, most importantly, his own admissions.

[5] *See* ECF 88-6 (August, 2020 Account Summary showing no payments); ECF 88-8 (September, 2020 Account Summary showing no payments); ECF 88-12 (October, 2020 Account Summary showing no payments); ECF 88-14 (November, 2020 Account Summary showing no payments); ECF 88-17 (December, 2020 Account Summary showing no payments); ECF 88-18 (January, 2021 Account Summary showing one payment that was transferred on December 22, 2020 which posted on December 23, 2020).

use of his credit card to initiate a bank transfer constituted acceptance of the terms in the credit agreement.  ECF 15-5, ECF 88-5 at 3 ("By applying for or using the Card, You accept, agree to, and are bound by the terms and conditions."); *see Whitman v. Capital One Bank (USA), N.A.*, No. WMN-09-1737, 2009 WL 4018523, at *2 (D. Md. Nov. 19, 2009) ("Courts have consistently held that 'the use of credit cards amounts to acceptance of the terms of the cardholder agreements.'") (alterations omitted) (quoting *Fahey v. U.S. Bank National Assoc.*, Civ. No. 05-1453, 2006 WL 2850529, at *2 (E.D. Mo. Sept. 26, 2006)) (collecting cases).  Accordingly, Mr. Carrasco was bound by the terms of the credit agreement, which required him to make minimum monthly payments, and he failed to make those payments.  Therefore, his subsequent disputes to the CRAs suggesting that he was not required to make minimum monthly payments were meritless and did not trigger M&T's obligation under Section 1681s-2(b) to report his debt as disputed.

To the extent Mr. Carrasco's disputes could be construed as disputes related to M&T's efforts to contact him regarding his debt, those disputes also prove meritless and, thus, did not trigger M&T's duty under Section 1681s-2(b) to report the debt as disputed.  For example, Mr. Carrasco submitted a complaint to TransUnion on December 31, 2020, stating that "[t]he creditor has engaged in intimidation tactics without properly communicating with borrower regarding overdue payments[.]  The creditor did not have accurate contact information and did not contact me ever[.]"  ECF 88-19.  The undisputed facts show that this complaint was false—Mr. Carrasco admits that he provided M&T with his correct address, that M&T sent him a credit card and credit agreement at that address, and that they then contacted him at that same address to notify him that his payments were overdue.  ECF 62 ¶¶ 15-17; ECF 15-1 and ECF 88-4 (letter sent with credit card showing recipient's address); ECF 15-5 and ECF 88-5 ("Summary" written by Mr. Carrasco explaining that the attached credit agreement was sent to him "when they sent the physical card in

12

the mail.").  To be sure, Mr. Carrasco argues that he did not *receive* the letters M&T sent to that address until several months after they were sent, but the fact that he did not check his mail for several months does not mean that M&T had inaccurate contact information or that M&T failed to contact him.

Mr. Carrasco's Motion also appears to attack the adequacy of the investigation M&T conducted in response to his disputes.  ECF 85 at 16.  M&T responds that these arguments constitute an improper attempt by Mr. Carrasco to amend his Amended Complaint.  ECF 88-2 n.19.  M&T argues that "no such allegation or claim appears in the Amended Complaint."  It also incorrectly argues that "the word 'investigation' is not even mentioned in any of the 82 separately numbered paragraphs that comprise Plaintiff's amended pleading."  *Id.*  (In fact, the word "investigation" appears seven times in the Amended Complaint.)  M&T should not claim surprise that Mr. Carrasco would challenge the adequacy of its investigation—he has argued from the beginning of this lawsuit that his disputes were meritorious and that, therefore, M&T's investigation should have revealed its alleged errors.  Nevertheless, the Court agrees with M&T's broader point that the allegations in the Amended Complaint, and the arguments Mr. Carrasco makes in his Motion, present a challenge to M&T's alleged failure to modify or correct the information it had reported to the CRAs (which includes its alleged failure to report the debt as disputed), rather than a challenge to the adequacy of M&T's internal investigation.  Even if Mr. Carrasco had properly challenged the adequacy of M&T's investigation, however, the undisputed facts demonstrate that M&T conducted an investigation that reaffirmed the accuracy of its reports to the CRAs.  *See* ECF 91 at 22-24 (Mr. Carrasco's memorandum of law quoting, in their entirety,

three letters from M&T responding to his disputes and explaining the results of its investigation).

Mr. Carrasco has not presented any facts—disputed or not—that undermine that investigation.[6]

In light of the above analysis, summary judgment must be granted for M&T on the FCRA claim in Count One.

### iii.  TILA Claim

Mr. Carrasco admits that his remaining TILA claim is barred as a matter of law because there is no private right of action under 15 U.S.C. § 1663.  ECF 91 at 1.  Mr. Carrasco brings his TILA claim under that section,  ECF 62 ¶¶ 46-82, which is included in "Part C" of TILA governing "Credit Advertising and Limits on Credit Card Fees."  15 U.S.C. § 1661-1665e.  TILA's civil liability provision in Section 1640(a) states: "[e]xcept as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part [part B], including any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E of this subchapter with respect to any person is liable to such person[.]"  15 U.S.C. § 1640(a).  Notably, that provision excludes "Part C," under which Mr. Carrasco brings his claim. Numerous courts have found, therefore, that TILA does not provide a private right of action with respect to claims under "Part C."  *Jordan v. Montgomery Ward & Co.*, 442 F.2d 78, 81 (8th Cir.

---

[6] Generally, "whether a furnisher conducted a reasonable investigation is a question of fact for the jury."  *Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 581 (D. Md. 2015).  However, summary judgment in favor of a defendant furnisher is appropriate where the "reasonableness of the defendant's procedures is beyond question and if the plaintiff has failed to adduce evidence that would tend to prove the investigation was unreasonable."  *Alston v. United Collections Bureau, Inc.*, No. DKC-13-0913, 2014 WL 859013, at *6 (D. Md. Mar. 4, 2014).  There are no facts in the record here, or even alleged in the Amended Complaint, that call into question the adequacy of M&T's investigation.   Mr. Carrasco's only argument for why M&T's investigation was unreasonable is that, in his view, he was never obligated to make minimum monthly payments in the first place.  But because he was, in fact, obligated to make such payments, M&T's investigation confirming that basic fact was unquestionably reasonable, and Mr. Carrasco has not adduced any evidence to the contrary.  *Id.*

1971) ("In fact it appears that it was the intent of the Congress not to provide private civil relief for violations of the credit advertising provisions."), *cert. denied* 404 U.S. 870 (1971); *Smeyres v. General Motors Corp.*, 660 F. Supp. 31, 32-33 (N.D. Ohio 1986) ("[N]o private cause of action exists under Part C of Subchapter I of the Truth In Lending Act[.]"), *aff'd* 820 F.2d 782 (6th Cir. 1987); *Rush v. American Home Mortgage, Inc.*, No. WMN-07-CV-0854, 2009 WL 4728971, at *15 (D. Md. Dec. 3, 2009) (relying on *Jordan* and *Smeyres* and holding that no private right of action exists under TILA's credit advertising provisions in "Part C").

While he acknowledges his TILA claim is barred, Mr. Carrasco asks the Court to consider it "as a claim for declaratory relief[,]" emphasizing that his TILA claim "includes an important public policy component as to whether or not M&T violated TILA[.]"  ECF 91 at 1.  This Court may not decide Mr. Carrasco's TILA claim as a request for a declaratory judgment.  It is well settled that a declaratory judgment is a remedy, not an independent source of liability, and that the Declaratory Judgment Act does not extend the jurisdiction of federal courts to decide cases that they could not otherwise decide.  *See CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 55 (4th Cir. 2011) (the Declaratory Judgment Act "is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights.").  Mr. Carrasco may well be right that his claims present important issues of public policy.  However, federal courts may only decide actual cases and controversies properly within their jurisdiction, and, absent a substantive claim to pursue against M&T related to Mr. Carrasco's credit advertising arguments, the Court must grant M&T's Cross-Motion no matter the importance of the public policy issues Mr. Carrasco's claims raise.

Accordingly, the Court will grant M&T's Cross-Motion, and deny Mr. Carrasco's Motion, with respect to his TILA claim in Count Two.

### iv.  Fraudulent Misrepresentation Arguments

In his reply, Mr. Carrasco argues that M&T has violated the elements of fraudulent misrepresentation under Maryland law.  ECF 90 at 3.  The Amended Complaint, however, does not allege a claim of fraudulent misrepresentation, and a party may not assert new legal claims in a reply brief in support of a motion for summary judgment.  *Barclay White Skanska, Inc. v. Battelle Memorial Institute*, 262 F. App'x 556, 563 (4th Cir. 2008) (unpublished) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)).  The Court, therefore, declines to address these arguments as they are not relevant to the claims Mr. Carrasco has alleged.

### v.  Motion for Leave to File Surreply

Despite filing an opening brief in support of his Motion for Summary Judgment, ECF 85, a reply in support of that Motion, ECF 90, an improper and separately-filed opposition to M&T's Cross-Motion (which the Court has, nonetheless, considered), ECF 91, and several subsequent filings that seek to rehash the arguments on the motions for summary judgment, Mr. Carrasco also filed a surreply brief under the docket entry "Motion for Leave to File Surreply."  ECF 95.  As an initial matter, Mr. Carrasco did not seek the Court's permission before filing his surreply brief and, therefore, he violated Local Rule 105.2(a).  Loc. R. 105.2(a) (D. Md. 2021) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed.").

Surreplies may be appropriate when the party seeking to file a surreply "would be unable to contest matters presented to the court for the first time in the opposing party's reply."  *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).  Courts may deny leave to file a surreply, however, where a party "seek[s] merely to re-open briefing on issues" already raised.  *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 467 (D. Md. 2008).

Mr. Carrasco has not demonstrated any need to file a surreply; specifically, he has not pointed to any facts or arguments that were raised for the first time in M&T's reply to which he needs an opportunity to respond. *See Stoyanov v. Mabus*, No. CIV WDQ-07-1764, 2009 WL 4884518, at *8 (D. Md. Dec. 9, 2009) (denying surreply where movant failed to show need). Instead, he both rehashes the issues and exhibits addressed above, and introduces new arguments based on new exhibits for the first time. Nevertheless, as explained in more detail below, the Court has reviewed and considered the surreply, and the exhibits attached thereto. And in the interest of deciding all of the issues in this case on their substantive merit rather than their procedural propriety, the Court will grant Mr. Carrasco's Motion for Leave to File a Surreply.

Turning to the surreply's substance, however, the Court finds nothing in it that would alter the decisions on the parties' motions discussed herein. Mr. Carrasco relies on exhibits that, in his view, demonstrate that M&T was inaccurately reporting the balance on his account to the CRAs. ECF 95 at 2-4. Although M&T has not had an opportunity to respond substantively to these arguments or exhibits, even if Mr. Carrasco is right, it is not clear to the Court how these arguments advance his legal theories in this case. The Amended Complaint here does not allege that M&T was simply reporting the wrong dollar-figure to the CRAs when it reported Mr. Carrasco's debt; rather, it alleges that Mr. Carrasco did not have *any debt at all* and that, correspondingly, when he disputed M&T's reports, M&T was thereafter required to report the debt as disputed. While the Court does not, in any way, diminish the importance of a furnisher's obligation to report accurate information to the CRAs, even under the most generous construction of these new arguments and exhibits, the Court's conclusions would remain the same.

### III.    M&T's MOTION FOR LEAVE TO FILE ANSWER

On June 11, 2021, Mr. Carrasco filed an Amended Complaint against M&T.  ECF 62. Under Federal Rule of Civil Procedure 15(a)(3), "[u]nless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."  Fed. R. Civ. P. 15(a)(3).  M&T's response, therefore, was due on June 25, 2021.  According to M&T, M&T prepared its answer and believed that the answer had been filed, but, due to "a miscommunication between counsel and staff[,]" the answer was not filed.  ECF 108.  Once Mr. Carrasco raised this issue in his briefing on his motion for sanctions, M&T realized its mistake and, the same day, moved for leave to file an answer.  ECF 106.

With limited exceptions not relevant here, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b).  Excusable neglect includes "inadvertence, mistake, or carelessness."  *CDC-LCGH, LLC v. Mayor & City Council of Baltimore*, No. WDQ-06-2235, 2007 WL 9728951, at *4 (D. Md. Apr. 23, 2007) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388-89 (1993)). In the context of Federal Bankruptcy Rule 9006(b)(1), which is substantively similar to Rule 6(b), the Supreme Court has explained that, when deciding what constitutes "excusable neglect," courts should make an "equitable" determination that considers:

> All relevant circumstances . . . includ[ing] . . . the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 388-89).

The Court finds that excusable neglect exists here and that, in the interest of fairness, M&T's motion for leave should be granted. M&T's failure to respond to the Amended Complaint appears to be due to an administrative error, rather than any disregard for this case. ECF 108. Moreover, M&T timely answered Mr. Carrasco's initial Complaint. ECF 43. Given the substantial similarity between Mr. Carrasco's initial Complaint and his Amended Complaint, *see* ECF 62-1 (redline), M&T's proposed answer to the Amended Complaint is nearly identical to the Answer it originally filed. Therefore, Mr. Carrasco has not been prejudiced by M&T's delay. Mr. Carrasco asserts otherwise, ECF 107, but fails to present any cognizable basis for that assertion. Indeed, this case has proceeded through discovery and the parties' cross-motions for summary judgment despite M&T's failure to timely file its answer. *See CDC-LCGH, LLC*, 2007 WL 9728951, at *4 (granting motion for leave to file answer after it was due and finding "no evidence of [the defendant's] bad faith, prejudice to [the plaintiff], or . . . a significant[] impact[] [on] these proceedings[.]").

Finally, the Fourth Circuit "has repeatedly expressed its strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993); *see Kyles v. Wendy's International, LLC*, No. 8:18-cv-02822-PX, 2019 WL 3253404, at *6 (D. Md. July 19, 2019) (granting motion for leave to file answer out of time); *Munoz v. Baltimore Cnty., Md.*, No. RDB-11-2693, at *1 (D. Md. Nov. 20, 2012) (same). Accordingly, the Court will grant M&T's Motion for Leave to File an Answer. The Clerk is directed to accept Exhibit 1 to M&T's motion, ECF 106-1, as M&T's Answer to the First Amended Complaint.

## IV.     MOTION FOR SANCTIONS

Mr. Carrasco asks that the Court impose sanctions against M&T's counsel for "lying in his statements and making representations to the court which he knows are untrue." ECF 94. While the parties' disagreements and personality conflicts are well-documented, Mr. Carrasco has not come close to meeting the standard for Rule 11 sanctions.

Rule 11(b) of the Federal Rules of Civil Procedure requires attorneys or self-represented parties to certify that "to the best of the person's knowledge, information, and belief" that, among other things, "the factual contentions" in the submissions to the court "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3). Factual assertions violate Rule 11(b)(3) when they are "unsupported by any information obtained prior to filing." *Scott v. Lori*, No. ELH-19-2014, 2020 WL 906351, at *2 (D. Md. Feb. 24, 2020) (quoting *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2016)). Rule 11(c) allows courts to impose sanctions for the violation of Rule 11. However, motions for sanctions are only appropriate "in instances of egregious misconduct." *Scott*, 2020 WL 906351, at *2. "The Court expects that motions for sanctions will not be filed as a matter of course." Loc. R. 105.8(a) (D. Md. 2021). Indeed, the filing of frivolous motions for sanctions—even by *pro se* litigants—is itself sanctionable conduct. *Scott*, 2020 WL 906351, at *2 (collecting cases).

Mr. Carrasco has, undoubtedly expressed his strong disagreement with M&T's, and its counsel's, legal and factual arguments. But his accusations that M&T's counsel has lied or has made "representations to the court which he knows are untrue," ECF 94, are simply baseless. In addition to accusing M&T's counsel of lying in his briefing throughout this matter, Mr. Carrasco argues that an affidavit filed in support of M&T's Cross-Motion was "clearly fraudulent, falsified,

and doctored." ECF 105 at 2.[7] His only support for this contention is his assertion that the affiant is "a back office call center employee" with no relevant expertise (despite her sworn statement that she is an "Administrative Vice President, Operations Manager" who oversees, among other things, M&T's "Credit Bureau Research Group"), and that the signature on her affidavit "is nearly identical to the default e-signature for Adobe PDF[.]" *Id.* None of this is supported by anything other than Mr. Carrasco's say-so. Simply put, the Court has not found any evidence in the record that any assertions by M&T or its counsel were filed in bad faith or otherwise rise to the level of sanctionable conduct. Accordingly, Mr. Carrasco's Motion for Sanctions will be denied.

## V.      MOTION TO DISQUALIFY

Mr. Carrasco has filed a Motion to Disqualify M&T's counsel because "there are over 60 full time lawyers working for M&T and they have not once entered an appearance on a federal docket, and in each lawsuit they use a lawyer like [M&T's counsel] to shift their liability to a third party while they commit fraud on the court." ECF 112. Like his Motion for Sanctions, Mr. Carrasco falls far short of the showing required to justify disqualification of a party's chosen lawyer.

When deciding a motion to disqualify a lawyer, courts must balance "the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community." *Buckley v. Airshield Corp.*, 908 F. Supp. 299, 304 (D. Md. Dec. 1, 1995) (quoting *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990)). In doing so,

---

[7] The filing in which Mr. Carrasco makes this argument was docketed as a "Motion Apologizing to the Presiding Judge of this Case for Jumping the Gun." ECF 105. The filing, however, began with two sentences of apology related to Mr. Carrasco's improper filings the previous day, and then continued with six pages of additional improper and untimely briefing on his Motion for Sanctions. While the Court appreciates Mr. Carrasco's apology, to the extent ECF 105 constitutes a motion in need of adjudication, it is denied as moot.

courts must "avoid overly-mechanical adherence to disciplinary canons at the expense of litigants' rights freely to choose their counsel." *Id.* (quoting *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992), *cert. denied*, 506 U.S. 1021 (1992)).  Because disqualification is a drastic measure, the movant "bears a high standard of proof to show that disqualification is warranted." *Id.* (quoting *Tessier*, 731 F. Supp. at 729).

Mr. Carrasco's motion appears motivated by the fundamental misconception that a party with in-house lawyers cannot hire outside counsel.  There is nothing disqualifying, unethical, or otherwise improper about M&T's decision to retain an outside law firm to represent it in this case. In fact, almost every corporate entity appearing in this Court appears through outside counsel, whether or not it also maintains an in-house legal department.  Therefore, and for the additional reasons explained in the Court's analysis of Mr. Carrasco's Motion for Sanctions above, there is no basis to disqualify M&T's counsel.  Mr. Carrasco's Motion to Disqualify will be denied.

## VI.    MOTION FOR ENTRY OF JUDGMENT

Mr. Carrasco's Motion for Entry of Judgment is not actually a motion for entry of judgment, but, instead, two separate motions asking the Court: (1) for expedited ruling on his Motion for Summary Judgment and (2) to take judicial notice of several of Mr. Carrasco's opinions that he asserts as "facts."  ECF 97.

Mr. Carrasco's Motion for Expedited ruling was addressed by this Court's September 14, 2021 Letter Order explaining the Court's plan to resolve all pending motions together.  ECF 114. That motion is, therefore, denied as moot.

The motions to take judicial notice will also be denied.  A court may take judicial notice of "'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"  *Loya v. Wexford Health Sources, Inc.*, No. ELH-20-1946, 2020

WL 5877266, at *5 (D. Md. Oct. 2, 2020) (quoting *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)).  None of the information Mr. Carrasco presents as judicially noticeable "facts" is either a matter of public record or an adjudicative fact.  Rather, the information is purely opinion, improper legal arguments on the already-briefed cross-motions for summary judgment, and baseless attempts to disparage M&T and its counsel.  Accordingly, Mr. Carrasco's Motion for Entry of Judgment—and the other motions he raises within it—will be denied.

### VII.   EMERGENCY MOTION TO REASSIGN CASE

In this motion, Mr. Carrasco expresses an intent to seek reassignment if "the Presiding Judge does not provide clear standards and guidelines to the parties by the end of the day[.]"  ECF 103.  Later the same day, however, in an email to the Court's Chambers address, Mr. Carrasco apologized and stated that he "will not be requesting . . . reassignment or disqualification."  *See* ECF 119 at 1-2.  The Motion to Reassign the Case will, therefore, be denied as moot.

### VIII.   MOTION FOR MORE DEFINITE STATEMENT

Mr. Carrasco abandons his Motion for More Definite Statement, ECF 101, as moot.  ECF 121.  Because the clarification it sought was ultimately provided in the Court's September 14, 2021 Letter Order, ECF 114, this Court agrees with Mr. Carrasco that the Motion for More Definite Statement should be denied as moot.

### IX.   MOTION FOR OTHER RELIEF

Mr. Carrasco's Motion for Other Relief asks the Court to "regard" emails that he sent to the Court's Chambers email address.   ECF 102.   The emails were improper *ex parte* communications that violated the Local Rules and this Court's repeated orders to limit the parties' submissions to motions, oppositions to motions, replies or other correspondence to the Court seeking particular relief.  ECF 73; ECF 56; ECF 39.  They also violated this Court's order to

comply "with the rules and decorum of this forum," ECF 73, as they are replete with ad hominem attacks about M&T and its lawyers and officers.  As Mr. Carrasco later admitted, ECF 121, the emails are "not material."  The Court agrees, and his Motion for Other Relief will be denied.

## X.    CONCLUSION

For the reasons set forth above, the Plaintiff's Motion for Summary Judgment, ECF 85, will be DENIED; Defendant's Cross-Motion for Summary Judgment, ECF 88, will be GRANTED; Plaintiff's Motion for Sanctions, ECF 94, will be DENIED; Plaintiff's Motion for Leave to File a Surreply, ECF 95, will be GRANTED; Plaintiff's Motion for Entry of Judgment Under Rule 54(b), ECF 97, will be DENIED as moot; Plaintiff's Motion for a More Definite Statement, ECF 101, will be DENIED as moot; Plaintiff's Motion for Other Relief, ECF 102, will be DENIED; Plaintiff's Emergency Motion to Reassign the Case, ECF 103, will be DENIED as moot; Plaintiff's Motion Apologizing to the Presiding Judge, ECF 105, will be DENIED as moot; Defendant's Motion for Leave to File an Answer, ECF 106, will be GRANTED; and Plaintiff's Emergency Motion to Disqualify Counsel, ECF 112, will be DENIED.  A separate order follows.


Dated: October 18, 2021                                          _____/s/_____
                                                                Stephanie A. Gallagher
                                                                United States District Judge